COPY

1 | Gregory C. Nuti (Bar No. 151754)
SCHNADER HARRISON SEGAL & LEWIS LLP
2 | One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501
3 | Telephone: 415-364-6700      **E-FILING**
Facsimile: 415-364-6785
4

ORIGINAL
FILED

5 | Beverley Hazlewood Lewis
Trial Attorney, Office of General Counsel
U.S. Small Business Administration
6 | 409 3rd Street, S.W., Suite 7200      **ADR**
Washington, D.C. 20416
7 | Telephone (202) 619-1605
Facsimile (202) 481- 0468

OCT 1 9 2007

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

8

9 | Attorney for Plaintiff,
United States Small Business Administration in Its Capacity
as Receiver for Aspen Ventures III

10

11 |                UNITED STATES DISTRICT COURT

12 |               NORTHERN DISTRICT OF CALIFORNIA

13 |                      SAN JOSE DIVISION

Case No.:

14 | United States Small Business Administration in
its capacity as Receiver for Aspen Ventures III,

**COMPLAINT  C07  05350 JW**

**PVT**

15 |                    Plaintiff,

16 | vs.

17 | Redleaf Group, Inc.,

18 |                    Defendant.

19

20

21

22 |        Plaintiff, the United States Small Business Administration ("SBA") in its capacity as

23 | Receiver for Aspen Ventures III, L.P. ("Aspen Ventures") alleges as follows:

24 |                           **PARTIES**

25 |        1.      SBA is the duly appointed receiver for Aspen Ventures ("Plaintiff" or "Receiver")

26 | pursuant to the terms of that certain Stipulation for Consent Order of Receivership dated October

27 | 4, 2006 ("Consent Order) issued by this Court in the related action captioned *United States of*

28 | *America v. Aspen Ventures III, L.P.* case number C06-04032 JW, pending in this Court

SCHNADER HARRISON SEGAL & LEWIS LLP
601 CALIFORNIA STREET, SUITE 1200
SAN FRANCISCO, CA 94108-2817
(415) 364-6700
FAX: (415) 364-6785

PHDATA 3019889_1                                                        COMPLAINT

SCHNADER HARRISON SEGAL & LEWIS LLP
601 CALIFORNIA STREET, SUITE 1200
SAN FRANCISCO, CA 94108-2817
(415) 364-6700
FAX: (415) 364-6785

1  ("Receivership Action"). A copy of the Consent Order is attached hereto as **Exhibit A** and

2  incorporated herein by reference.

3        2.     The Receiver was appointed for the purpose of among other things pursuing

4  claims and claimants of Aspen Ventures. The Receiver maintains its principal place of business

5  at 666 11th Street N.W., Washington, D.C. 20001.

6        3.     Aspen Ventures is a limited partnership formed under the laws of the State of

7  Delaware pursuant to that certain Amended and Restated Limited Partnership Agreement dated

8  and effective as of August 20, 1999, as amended (the "Partnership Agreement"). A copy of the

9  Partnership Agreement is attached hereto as **Exhibit B.**

10        4.     Defendant Redleaf Group, Inc. ("Redleaf") is a Delaware corporation with its

11  principal place of business located at 650 Smithfield Street, Pittsburgh, Pennsylvania.

12                                       **JURIDICTION AND VENUE**

13        5.     This action arises under 15 U.S.C. § 687c, the Small Business Investment Act of

14  1958 (the "Act") as implemented by 13 CFR Part 107 (the "Regulations") and related state

15  statutes. The Court has jurisdiction over this action pursuant to the Consent Order, 28 U.S.C §

16  1331, 15 U.S.C. §§ 687c and 687h, 28 U.S.C. §§ 754, 1692 and 1367. Those causes which arise

17  under the laws of the States of California and Delaware are pendent or ancillary causes under 28

18  U.S.C. § 1367 to the Receivership Action referred to in Paragraph 1 above.

19        6.     Venue is proper in the Northern District of California pursuant to 28 U.S.C.

20  §1391 because the Defendants maintain offices, transact business, and reside within the District.

21  Venue is also proper pursuant to 28 U.S.C. § 754 as this action is ancillary to this Court's

22  exclusive jurisdiction over the Receivership Estate of Aspen Ventures.

23                                       **COMMON ALLEGATIONS**

24        7.     Congress passed the Act to encourage the growth of small businesses by

25  compensating for the difficulty they may have in obtaining financing from conventional lenders.

26  To accomplish this objective, the Act authorizes the SBA to license Small Business Investment

27  Companies ("SBICs") to provide capital to qualified small business concerns in strict

28  conformance with the Act. The Act authorizes the SBA to prescribe regulations governing the

2

1  operations of SBICs, 15 U.S.C.§ 687(c). SBA has exercised that authority and has promulgated

2  regulations reported in Part 107 of Title 13 of the Code of Federal Regulations (the

3  "Regulations").

4       8.      Under the Receivership Order and consistent with the Act and Regulations, this

5  Court has charged the Receiver with pursuing and preserving all claims of Aspen Ventures. The

6  Receiver has determined that certain of the acts and omissions described herein provide private,

7  civil causes of action in favor of Aspen Ventures.

8       9.      Aspen Ventures was formed for the purpose operating as a venture capital fund

9  licensed as a SBIC under the Act and the Regulations. Aspen Ventures at all relevant times

10  obtained and held U.S. Small Business Administration Small Business Investment Company

11  License No. 0979-0420.

12       10.     At all relevant times, Aspen Ventures Management III, LLC ("AVM") was a

13  Delaware limited liability corporation operating pursuant to the terms of that certain Second

14  Amended and Restated Limited Liability Company Agreement dated August 20, 1999 ("AVM

15  LLC Agreement"). AVM at all relevant times was Aspen Ventures' managing general partner.

16  The management and operations of Aspen Ventures, including without limitation, the

17  formulation of the investment policy vested exclusively in AVM, which authority was governed

18  and regulated by the Act and Regulations.

19       11.     On or about April 1, 2002, Aspen Ventures and AVM entered into that certain

20  First Amendment to Amended and Restated Limited Partnership Agreement. (First

21  Amendment"). A copy of the First Amendment is attached hereto as **Exhibit C.** Under the

22  terms of the First Amendment, Aspen Ventures and AVM agreed to admit Redleaf as a new

23  limited partner to Aspen Ventures in exchange for a capital contribution.

24       12.     On April 1, 2002, consistent with the terms of the First Amendment, Redleaf

25  executed and delivered to Aspen Ventures that certain Series B Admission and Amendment

26  Agreement ("Admission Agreement"). Under the terms of the Admission Agreement, Redleaf,

27  among other things, (1) agreed to become a Series B limited partner of Aspen Ventures; (2)

28  acknowledged and agreed to be bound by the terms of the Partnership Agreement and First

SCHNADER HARRISON SEGAL & LEWIS LLP
601 CALIFORNIA STREET, SUITE 1200
SAN FRANCISCO, CA 94108-2817
(415) 364-6700
FAX: (415) 364-6785

3

1  Amendment and (3) agreed to a capital commitment of $15,000,000 (Capital Commitment"). A

2  copy of the Admission Agreement is attached hereto as **Exhibit D.**

3       13.    Article III of the Partnership Agreement governs the terms by which the limited

4  partners must make their capital contributions. Paragraph 3.2 of the Partnership Agreement

5  provides that "[e]ach Limited Partner's Capital Commitment represents the aggregate amount of

6  capital that such Partner has agreed to contribute to the Partnership in accordance with the terms

7  hereof" and "each Limited Partner shall make additional capital contributions, in cash, to the

8  Partnership, payable by wire transfer or check, upon fifteen (15) days' prior written notice from

9  the General Partner (the "Drawdown Notice") at such time (the "Drawdown Date") and in such

10 amount (the "Drawdown Amount") as shall be specified in the Drawdown Notice."

11      14.    Paragraph 3.5(a) of the Partnership Agreement provides that "[t]he Partnership

12 shall be entitled to enforce the obligations of each Partner to make the contributions to capital

13 specified in this Article, and the Partnerships shall have all remedies available at law or in equity

14 in the event any such contribution is not so made."

15      15.    Pursuant to the terms of the Consent Order, the Receiver was authorized to

16 operate Aspen Ventures, take possession of its books and records, and to pursue all of its claims.

17      16.    The books and records contain information on the amount of the aggregate capital

18 contributions made by each limited partner.

19      17.    Based upon Aspen Ventures books and records, Redleaf owes Aspen Ventures an

20 unfunded capital commitment balance of $10,600,000.

21      18.    By letter dated May 9, 2007 the Receiver made demand upon Redleaf to pay its

22 unfunded capital commitment of $10,600,000.

23      19.    Redleaf has failed and refused to pay its unfunded capital commitment.

24                              **COUNT I**

25         **BREACH OF CONTRACT AGAINST REDLEAF GROUP, INC.**

26      20.    Plaintiff hereby refers to Paragraphs 1 through 19, inclusive, and by such

27 reference hereby incorporates and re-alleges them herein.

28

SCHRADER HARRISON SEGAL & LEWIS LLP
601 CALIFORNIA STREET, SUITE 1200
SAN FRANCISCO, CA 94108-2817
(415) 364-6700
FAX: (415) 364-6785

4

1        21.     On or about April 1, 2002, Redleaf entered into the Partnership Agreement, First

2  Amendment and Admission Agreement (collectively "Agreements") with Aspen Ventures.

3        22.     The Receiver and Aspen Ventures have performed all conditions, covenants and

4  promises required of them under the Agreements, except where performance was prevented or

5  excused by Redleaf's conduct.

6        23.     Redleaf breached the terms of the Agreements by, among other things, failing and

7  refusing to pay to Aspen Ventures the unfunded capital commitment balance of $10,600,000.00.

8        24.     As the Receiver of Aspen Ventures, the Receiver has suffered damages legally

9  caused by the Redleaf's breach of the Agreements as alleged herein, including, but not limited to

10  monetary damages of not less than $10,600,000.00.

11        Wherefore, the Receiver prays for a judgment as set forth below.

12  ///

13  ///

14  ///

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHNADER HARRISON SEGAL & LEWIS LLP
601 CALIFORNIA STREET, SUITE 1200
SAN FRANCISCO, CA 94108-2817
(415) 364-6700
FAX: (415) 364-6785

5

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks this Court for a judgment in favor of the Plaintiff, as follows:

1.    Judgment against defendant Redleaf in the principal amount of $10,600,000.00;

2.    Awarding prejudgment and post-judgment interest against Redleaf;

3.    Awarding the Plaintiff reasonable attorneys' fees and its costs; and

4.    For such other and further relief as this Court deems just and proper.

Dated: October 18, 2007

SCHNADER HARRISON SEGAL & LEWIS LLP

By: _____

Gregory C. Nuti
Attorney for Plaintiff,,
United States Small Business
Administration in Its Capacity as Receiver
for Aspen Ventures III, L.P.

Dated: October 18, 2007

U.S. SMALL BUSINESS ADMINISTRATION

By: _____

Beverley Hazlewood Lewis
Office of General Counsel
Attorneys for Plaintiff,
United States Small Business
Administration in its capacity as Receiver
for Aspen Ventures III, L.P.

SCHNADER HARRISON SEGAL & LEWIS LLP
601 CALIFORNIA STREET, SUITE 1200
SAN FRANCISCO, CA 94108-2817
(415) 364-6700
FAX: (415) 364-6785

6

# EXHIBIT A

1  KEVIN V. RYAN (SBN 118321)
   United States Attorney
2  JOANN M. SWANSON (SBN 88143)
   Chief, Civil Division
3  EDWIN L. JOE (SBN 112328)
   Special Assistant United States Attorney
4

5         455 Market Street, 6th Floor
          San Francisco, California  94105-2420
6         Telephone:    (415) 744-8494
          Facsimile:    (202) 481-1810 or (415) 744-6812
7         Email:        edwin.joe@sba.gov

8
   Attorneys for Federal Plaintiff
9

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                     SAN JOSE DIVISION

13

14  UNITED STATES OF AMERICA,          )
           Plaintiff,                  )      E-Filing
15                                     )
                                       )
16         v.                          )      Civil Case No.  C06 -04032 JW
                                       )
17  ASPEN VENTURES III, L.P            )
                                       )
18         Defendant.                  )      (Cover Page)
                                       )
19  _____ )

20

21  //

22  //

23  //

24  //

25  //

26  //

27

28

    C06 –04032 JW – STIPULATION FOR RECEIVERSHIP ORDER                    0

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,       )
      Plaintiff,              )
                        )

      v.                   )      Civil Case No.
                        )

ASPEN VENTURES III, L.P.       )
                        )

      Defendant.           )
                        )
_____)

## STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP

WHEREAS, Plaintiff, United States of America, on behalf of its agency, the

United States Small Business Administration, has filed and caused to be served upon

defendant, ASPEN VENTURES III, L.P., a complaint; and

WHEREAS, the parties desire to resolve the matter amicably and without further

proceedings, trial or adjudication of any issue, and stipulate as follows:

     1.      That defendant ASPEN VENTURES III, L.P. ("Licensee"), the holder of

the U.S. Small Business Administration's ("SBA") Small Business Investment Company

License No. 0979-0420, has a condition of Capital Impairment, as that term is defined

under Title 13 of the Code of Federal Regulations, Part 107;

     2.      That this Court has jurisdiction over the subject matter of this action and

over defendant;

     3.      That the only mutually agreeable method by which to distribute the assets

of the Licensee to the appropriate creditors and SBA is through the appointment of SBA

## STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP       1

1  as the receiver of the Licensee pursuant to the following Consent Order of Receivership

2  without further proceedings; and

3
4          4.      To the entry of the following Consent Order of Receivership without

5  further proceedings.

6

7  **IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

8          1.      Pursuant to the provisions 15 U.S.C. § 687c, this Court hereby takes

9
10 exclusive jurisdiction of the Licensee, and all of its assets and property, of whatever kind

11 and wherever located, and the SBA is hereby appointed Receiver of the Licensee

12 ("Receiver") to serve without bond until further order of this Court. The Receiver is

13 appointed for the purpose of marshaling and liquidating all of the Licensee's assets and

14 satisfying the claims of creditors therefrom in the order of priority as determined by this

15
16 Court.

17         2.      The Receiver shall have all powers, authorities, rights and privileges

18 heretofore possessed by the officers, directors, managers and general and limited partners

19 of the Licensee under applicable state and federal law, by the Limited Partnership

20 Agreement, and By-Laws of said limited partnership, in addition to all powers and

21
22 authority of a receiver at equity, and all powers and authority conferred upon the

23 Receiver by the provisions of 15 U.S.C. § 687c and 28 U.S.C. § 754. The trustees,

24 directors, officers, managers, employees, investment advisors, accountants, attorneys and

25 other agents of the Licensee are hereby dismissed and the powers of any general partners

26 are hereby suspended during the pendency of the receivership. Such persons and entities

27
28 shall have no authority with respect to the Licensee's operations or assets, except to the

**STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP**            2

1  extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume

2  and control the operation of the Licensee and shall pursue and preserve all of its claims.

3         3.    The Receiver is entitled to take immediate possession of all assets, bank

4
5  accounts or other financial accounts, books and records and all other documents or

6  instruments relating to the Licensee. The past and/or present officers, directors, agents,

7  managers, general and limited partners, trustees, attorneys, accountants, and employees

8  of the Licensee, as well as all those acting in their place, are hereby ordered and directed
9
10  to turn over to the Receiver forthwith all books, records, documents, accounts and all

11  other instruments and papers of and relating to the Licensee and all of the Licensee's

12  assets and all other assets and property of the limited partnership, whether real or

13  personal. The Licensee's general partner shall furnish a written statement within five (5)

14  days after the entry of this Order, listing the identity, location and estimated value of all
15
16  assets of the Licensee, a list of all employees (and job titles thereof), other personnel,

17  attorneys, accountants and any other agents or contractors of the Licensee, as well as the

18  names, addresses and amounts of claims of all known creditors of the Licensee. Within

19  thirty (30) days following the entry of this Order, the Licensee's general partner shall also
20
21  furnish a written report describing all assets. All persons and entities having control,

22  custody or possession of any assets or property of the Licensee are hereby directed to turn

23  such assets and property over to the Receiver.

24         4.    The Receiver shall promptly give notice of its appointment to all known

25  officers, directors, agents, employees, shareholders, creditors, debtors, managers and
26
27  general and limited partners of the Licensee, as the Receiver deems necessary or

28  advisable to effectuate the operation of the receivership. All persons and entities owing

**STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP**          3

1   any obligation, debt, or distribution, with respect to a partnership interest to the Licensee,

2   shall, until further ordered by this Court, pay all such obligations in accordance with the

3

4   terms thereof to the Receiver and its receipt for such payments shall have the same force

5   and effect as if the Licensee had received such payments.

6       5.       The Receiver is hereby authorized to open such Receiver's accounts at

7   banking or other financial institutions to extend credit on behalf of the Licensee, to utilize

8   SBA personnel, and to employ such other personnel as it may deem necessary to

9

10   effectuate the operation of the receivership including, but not limited to, attorneys,

11   accountants, consultants and appraisers, and is further authorized to expend receivership

12   funds to compensate such personnel in such amounts and upon such terms as the

13   Receiver shall deem reasonable in light of the usual fees and billing practices and

14   procedures of such personnel. The Receiver is not required to obtain Court approval

15

16   prior to the disbursement of receivership funds for payments to personnel employed by

17   the Receiver or for expenses that the Receiver deems advantageous to the orderly

18   administration and operation of the receivership. In addition, the Receiver is authorized

19   to reimburse the SBA for travel expenses incurred by SBA personnel in the establishment

20

21   and administration of the receivership. The Receiver may, without further order of this

22   Court, transfer, compromise, or otherwise dispose of any claim or asset in the ordinary

23   course of business, other than real estate.

24       6.       The Licensee's past and/or present officers, directors, agents, attorneys,

25   managers, shareholders, employees, accountants, debtors, creditors, managers and

26   general and limited partners of the Licensee, and other appropriate persons or entities

27

28   (including without limitation, the defendant's portfolio of small business concerns and

**STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP**      4

financial institutions doing business with defendant and/or defendant's portfolio of small business concerns) shall answer under oath to the Receiver all questions which the Receiver may put to them and produce any documents as required by the Receiver regarding the business of said limited partnership, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Licensee.  In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery request(s) in accordance with the Federal Rules of Civil Procedure.

       7.      The parties to any and all civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving the Licensee or any assets of the Licensee, including subsidiaries and partnerships, wherever located, and excluding the instant proceeding, involving the Licensee, the Receiver, or any of the Licensee 's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise, are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding or any such asset.  All civil legal proceedings of any nature, including but not limited to bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other action of any nature involving the Licensee or any assets of the Licensee, including subsidiaries and partnerships, wherever located, and excluding the instant proceeding, involving the Licensee, the Receiver, or any of the Licensee's past or present officers,

**STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP**     5

1    directors, managers, agents, or general or limited partners sued for, or in connection with,

2    any action taken by them while acting in such capacity of any nature, whether as plaintiff,

3    defendant, third-party plaintiff, third-party defendant, or otherwise, are stayed in their

4
5    entirety, and all Courts having any jurisdiction thereof are enjoined from taking or

6    permitting any action until further Order of this Court. Further, as to a cause of action

7    accrued or accruing in favor of the Licensee against a third person or party, any

8    applicable statute of limitation is tolled during the period in which this injunction against

9
10   commencement of legal proceedings is in effect as to that cause of action.

11        8.    The Licensee and its past and/or present directors, officers, managers,

12   general or limited partners, agents, employees and other persons or entities acting in

13   concert or participating therewith be, and they hereby are, enjoined from either directly or

14   indirectly taking any actions or causing any such action to be taken which would

15
16   dissipate the assets and/or property of the Licensee to the detriment of the Licensee or of

17   the Receiver appointed in this cause, including but not limited to destruction of corporate

18   records, or which would violate the Small Business Investment Act of 1958, as amended,

19   15 U.S.C. 661 et. seq., or the regulations promulgated thereunder, ("Regulations"), 13

20   C.F.R. §107.1 et. seq.

21
22        9.    The Receiver is authorized to borrow on behalf of the Licensee, from the

23   SBA, up to $1,000,000 and is authorized to cause the Licensee to issue Receiver's

24   Certificates of Indebtedness in the principal amounts of the sums borrowed, which

25   certificates will bear interest at or about 10 percent per annum and will have a maturity

26   date no later than 18 months after the date of issue. Said Receiver's Certificates of

27
28   Indebtedness shall have priority over all other debts and obligations of the Licensee,

**STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP**    6

1   excluding administrative expenses of the Receivership, whether currently existing or

2   hereinafter incurred, including without limitation any claims of general or limited

3   partners of the Licensee.

4       10.    This Court determines and adjudicates that SBA has made a sufficient

5   showing that the Licensee has violated the Act and the Regulations, as alleged in the

6   Complaint filed against the Licensee in the instant action, to obtain the relief so

7   requested. After completing its activities in accordance with this Order, the Receiver

8   may submit a report to this Court recommending that the Licensee's SBIC license be

9   revoked.

10

11  **SEEN, STIPULATED AND AGREED:**

12

13  **Aspen Ventures III, L.P., through its authorized representative**

14  By:
        E. David Crockett
15  Title:  General Partner
        Aspen Ventures Management III, L.L.C.
16      General Partner of Aspen Ventures III, L.P.

17

18  Date:    _____

19  **United States Small Business Administration**

20  By:

21      Thomas G. Morris, Director
        Office of Liquidation
22  Date:    _____

23

24

25  **PURSUANT TO STIPULATION, IT IS SO ORDERED,**

26      DATED this    4th    day of    October    , 2006.

27

28
                    UNITED STATES DISTRICT COURT JUDGE

        **STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP**            7

1  excluding administrative expenses of the Receivership, whether currently existing or

2  hereinafter incurred, including without limitation any claims of general or limited

3  partners of the Licensee.

4
5        10.    This Court determines and adjudicates that SBA has made a sufficient

6  showing that the Licensee has violated the Act and the Regulations, as alleged in the

7  Complaint filed against the Licensee in the instant action, to obtain the relief so

8  requested. After completing its activities in accordance with this Order, the Receiver

9  may submit a report to this Court recommending that the Licensee's SBIC license be

10
11  revoked.

12  **SEEN, STIPULATED AND AGREED:**

13  **Aspen Ventures III, L.P., through its authorized representative**

14  By:  *E. David Crockett*

15        E. David Crockett
      Title:  General Partner
16        Aspen Ventures Management III, L.L.C.
17        General Partner of Aspen Ventures III, L.P.

18  Date:  4-27-06

19  **United States Small Business Administration**

20  By:  *Thomas G. Morris*

21        Thomas G. Morris, Director
        Office of Liquidation
22  Date:  04-28-06

23

24
25  **PURSUANT TO STIPULATION, IT IS SO ORDERED,**

26        DATED this _____ day of _____, 2006.

27                                    _____

28                                    UNITED STATES DISTRICT COURT JUDGE

**STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP**                    7

**EXHIBIT B**

ASPEN VENTURES III, L.P.,
a Delaware limited partnership

AMENDED AND RESTATED
LIMITED PARTNERSHIP AGREEMENT

August 20, 1999

# TABLE OF CONTENTS

Page

ARTICLE I  NAME, CHARACTER, AND PRINCIPAL OFFICE OF PARTNERSHIP ............ 1

1.1 Partnership Name............................................................................................... 1
1.2 Partnership Purpose .......................................................................................... 1
1.3 Principal Office; Registered Office ................................................................. 2

ARTICLE II  TERM AND TERMINATION OF THE PARTNERSHIP...................................... 2

2.1 Term of Partnership .......................................................................................... 2
2.2 Termination......................................................................................................... 2
2.3 Events Affecting a Member of the General Partner...................................... 2
2.4 Events Affecting a Limited Partner of the Partnership ............................... 3
2.5 SBA Rules and Regulations; SBA Annex ..................................................... 3

ARTICLE III  CAPITAL CONTRIBUTIONS.............................................................................. 3

3.1 Initial Capital Contribution of the Limited Partners ................................... 3
3.2 Subsequent Capital Contributions by the Limited Partners ....................... 3
3.3 Initial Capital Contribution of the General Partner..................................... 4
3.4 Subsequent Capital Contributions of the General Partner ......................... 4
3.5 Noncontributing Partners ................................................................................. 4

ARTICLE IV  CAPITAL ACCOUNTS AND ALLOCATIONS ................................................. 7

4.1 Partnership Capital Accounts........................................................................... 7
4.2 Definitions........................................................................................................... 8
4.3 Allocation of Capital Transaction Gain or Loss ........................................ 12
4.4 Allocation of Net Income or Loss................................................................ 13
4.5 Reallocation of Contingent Losses .............................................................. 13
4.6 Allocation Among Partners............................................................................ 14
4.7 Special Allocation Among Late Entering Limited Partners of Organization and
    Operating Expenses ......................................................................................... 14
4.8 Special Allocation of Syndication Expenses ............................................... 15

ARTICLE V  MANAGEMENT FEE; EXPENSES .................................................................... 15

5.1 Management Fee................................................................................................ 15
5.2 Expenses ............................................................................................................ 16

ARTICLE VI  WITHDRAWALS BY AND DISTRIBUTIONS TO THE PARTNERS ............ 18

6.1 Interest................................................................................................................ 18
6.2 Withdrawals by the Partners .......................................................................... 18
6.3 Mandatory Cash Distributions ...................................................................... 18
6.4 Discretionary Distributions............................................................................. 19

ARTICLE VII  MANAGEMENT, DUTIES, AND RESTRICTIONS ........................................ 21

    7.1  Management.................................................................................... 21
    7.2  Indebtedness; Restrictions; Reinvestments............................................ 21
    7.3  Investment Representation of the Limited Partners ................................ 22
    7.4  Accredited Investor and Investment Company Act Representations ...................... 22
    7.5  No Control by the Limited Partners...................................................... 22
    7.6  Admission of Additional Partners......................................................... 23
    7.7  Assignment or Transfer of Partnership Interests .................................... 23
    7.8  Investment Opportunities; Conflicts of Interest...................................... 25

ARTICLE VIII  DISSOLUTION AND LIQUIDATION OF THE PARTNERSHIP.................. 27

    8.1  Liquidation Procedures .................................................................... 27
    8.2  Closing Capital Account Balances; Final Allocations; Date of Termination ......... 28
    8.3  Lookback Liability of General Partner to Return Excess Distributions ................ 28

ARTICLE IX  FINANCIAL ACCOUNTING AND REPORTS ................................................ 30

    9.1  Financial and Tax Accounting and Reports............................................. 30
    9.2  Valuation of Securities and Other Assets Owned by the Partnership...................... 31
    9.3  Supervision; Inspection of Books ........................................................ 31
    9.4  Quarterly Reports........................................................................... 31
    9.5  Annual Report; Financial Statements of the Partnership, Federal Income Tax
        Return ......................................................................................... 31
    9.6  Confidentiality ............................................................................... 31
    9.7  Information Meetings........................................................................ 32
    9.8  Advisory Committee......................................................................... 32

ARTICLE X  OTHER PROVISIONS ..................................................................................... 33

    10.1  Execution and Filing of Documents ................................................... 33
    10.2  Other Instruments and Acts ............................................................. 33
    10.3  Binding Agreement........................................................................ 33
    10.4  Governing Law ............................................................................. 33
    10.5  Notices ....................................................................................... 33
    10.6  Power of Attorney.......................................................................... 34
    10.7  Amendment.................................................................................. 34
    10.8  Effective Date .............................................................................. 35
    10.9  Entire Agreement........................................................................... 35
    10.10  Titles; Subtitles .......................................................................... 35
    10.11  Partnership Name......................................................................... 35
    10.12  Exculpation ................................................................................ 35
    10.13  Indemnification ........................................................................... 35
    10.14  Limitation of Liability of the Limited Partners.................................... 38
    10.15  Arbitration.................................................................................. 38
    10.16  Passive Income; Prohibited Transaction ............................................ 38
    10.17  Tax Matters Partner...................................................................... 39
    10.18  ERISA Matters............................................................................ 40
    10.19  Avoidance of Trade or Business Status; Service-Related Income...................... 43

10.20  Taxation as Partnership...........................................................................45
10.21  Board Activity..........................................................................................45
10.22  Counsel to the Partnership ......................................................................45

ARTICLE XI  MISCELLANEOUS DEFINITIONS ...............................................46

11.1  Affiliate........................................................................................................46
11.2  Agreement....................................................................................................46
11.2  Agreement....................................................................................................46
11.4  Bankruptcy...................................................................................................46
11.5  Certificate of Limited Partnership .............................................................46
11.6  Code..............................................................................................................47
11.7  Date of Distribution ....................................................................................47
11.8  Holding Company Act .................................................................................47
11.9  Limited Partners..........................................................................................47
11.10  Majority in Interest of the Limited Partners .............................................47
11.11  Marketable; Marketable Securities; Marketability ..................................47
11.12  Money-Market Investments .......................................................................47
11.13  Net Operating Income ................................................................................47
11.14  Nonmarketable Securities ..........................................................................47
11.15  Original Managing Members of the General Partner .................................47
11.16  Original Limited Partners ..........................................................................48
11.19  Preferred Limited Partner ..........................................................................48
11.19  Preferred Limited Partnership Interest.......................................................48
11.20  Private Limited Partners .............................................................................48
11.21  Securities......................................................................................................48
11.22  Securities Act ..............................................................................................48
11.23  Treasury Regulations ..................................................................................48
11.24  Two-Thirds in Interest of the Limited Partners .........................................48
11.25  United States Person ...................................................................................48

ARTICLE XII  MISCELLANEOUS TAX COMPLIANCE PROVISIONS ...............48

12.1  Substantial Economic Effect........................................................................48
12.2  Other Allocations .........................................................................................49
12.3  Income Tax Allocations ...............................................................................51
12.4  Compliance with Timing Requirements of Regulations..............................51
12.5  Recharacterizations of Transactions ...........................................................53
12.6  Sharing Arrangement; Interest in Partnership Items...................................53
12.7  Withholding ..................................................................................................53

EXHIBIT A              Form of Promissory Note
EXHIBIT B              Form of Security Agreement
SCHEDULE A          Schedule of Partners
ANNEX A               SBA Annex PS
ANNEX B               Valuation Guidelines

ASPEN VENTURES III, L.P.,
A DELAWARE LIMITED PARTNERSHIP

AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT

This AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT entered into pursuant to the Act, effective as of August 20, 1999, by and among Aspen Venture Management III, L.L.C., a Delaware limited liability company (the "General Partner"), and each of the persons the names of which are set forth under the heading "Limited Partners" on the Schedule of Partners attached hereto (the "Limited Partners");

WHEREAS, the SBA requires that certain amendments be made to that certain Limited Partnership Agreement of Aspen Ventures III, L.P., a Delaware limited partnership (the "Partnership") dated as of November 10, 1998 (the "Original Limited Partnership Agreement") and Annex A thereto in order for the Partnership to become as Licensee (as defined below);

NOW THEREFORE, pursuant to Paragraph 10.7 of the Original Limited Partnership Agreement, the General Partner amends and restates the provisions of the Original Limited Partnership Agreement and Annex A thereto as follows:

ARTICLE I

NAME, CHARACTER, AND
PRINCIPAL OFFICE OF PARTNERSHIP

1.1    Partnership Name.   The name of the Partnership is Aspen Ventures III, L.P.  The partners of the Partnership are the General Partner and the Limited Partners (collectively, the "Partners") and any Preferred Limited Partners (as defined in the SBA Annex) admitted pursuant to the SBA Annex attached as Annex A hereto.  The affairs of the Partnership shall be conducted under the Partnership name or such other name as the General Partner may, in its discretion, determine.

1.2    Partnership Purpose.   At any time that the Partnership is a licensee, as such term is defined under Section 301(c) of the Small Business Investment Act of 1958, as amended (the "SBIC Act") and the regulations (the "SBIC Regulations") of the Small Business Administration (the "SBA") thereunder ("Licensee"), the sole purpose of the Partnership will be to operate as a Licensee.  The primary objective of the Partnership will be to make venture capital investments, principally by investing in equity or equity-oriented securities of privately held companies located in the Western United States, with a focus on information technology and related fields.  The Partnership may also participate in, among other things, leveraged acquisitions of privately held and publicly held corporations (or divisions, subsidiaries or other business units thereof) and investments in securities of publicly held corporations that appear to be undervalued or that offer the opportunity for significant capital appreciation; provided, however, that when the Partnership is a Licensee such participation will be subject to the SBIC Act and the SBIC Regulations, to the extent applicable.  The general purposes of the Partnership

are to buy, hold, sell, and otherwise invest in Securities, whether readily marketable or not; to exercise all rights, powers, privileges, and other incidents of ownership or possession with respect to Securities held or owned by the Partnership; to enter into, make, and perform all contracts and other undertakings; and to engage in all activities and transactions as may be necessary, advisable, or desirable, as determined by the General Partner, to carry out the foregoing.

      1.3    Principal Office; Registered Office.  The principal office of the Partnership shall be at 1000 Fremont Avenue Suite 200, Los Altos, California or such other place or places within the United States as the General Partner may from time to time designate. The Partnership's registered office in Delaware, and the name of the registered agent for service of process shall be, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 or such other place or persons as the General Partner may from time to time designate.

## ARTICLE II

## TERM AND TERMINATION OF THE PARTNERSHIP

      2.1    Term of Partnership.  The term of the Partnership shall commence upon the filing with the office of Secretary of State of the State of Delaware of the Certificate of Limited Partnership of the Partnership (the "Commencement Date") and shall continue until December 31, 2008, unless sooner terminated as provided in Paragraph 2.2 or extended as provided in Paragraph 8.1(e) (the "Partnership Term"); provided, however, that in no event shall the Partnership terminate before the earlier of: (i) two years after all Preferred Limited Partners, if any, have withdrawn from the Partnership and all Outstanding Leverage (as defined in the SBA Annex), if any, has matured, or (ii) all Outstanding Leverage, if any, has been paid or redeemed and all amounts due the Preferred Limited Partners, the SBA, its agents or trustee have been paid.  As of the commencement of the term of the Partnership the aggregate Capital Commitments of the Partners shall equal or exceed ten million dollars ($10,000,000).

      2.2    Termination.  The Partnership shall terminate prior to December 31, 2008:

      (a)    Upon the vote of Two-Thirds in Interest of the Limited Partners if, at any time, (i) more than two of the Original Managing Members of the General Partner cannot fulfill (or are not fulfilling) their duties under this Agreement due to retirement, death, bankruptcy, incompetency, insanity or permanent incapacity or failure to participate actively in the management of the affairs of the Partnership or (ii) the General Partner consents thereto.

      (b)    Sixty (60) days after the bankruptcy or dissolution of the General Partner.

      2.3    Events Affecting a Member of the General Partner.  Except as provided in Paragraph 2.2(a) above, the death, temporary or permanent incapacity, insanity, incompetency, bankruptcy, expulsion, retirement, withdrawal, or removal of any member of the General Partner or the admission of additional members to the General Partner shall not dissolve the Partnership.

2.4    Events Affecting a Limited Partner of the Partnership.    The death, temporary or permanent incapacity, insanity, incompetency, bankruptcy, liquidation, dissolution, reorganization, merger, sale of substantially all the stock or assets of, or other change in the ownership or nature of a Limited Partner shall not terminate the Partnership.

2.5    SBA Rules and Regulations; SBA Annex.    At any time that the Partnership is a Licensee, the provisions of this Agreement shall be subject to the SBIC Act and the SBIC Regulations to the extent applicable. At any time that the Partnership has outstanding Preferred Limited Partnership Interests, the provisions of the SBA Annex PS attached as Annex A to this Agreement (the "SBA Annex") shall be incorporated in this Agreement with the same force and effect as if fully set forth herein; provided, however, that Sections 4.8 and 4.9 of the SBA Annex are hereby incorporated into this Agreement effective as of November 10, 1998.

ARTICLE III

CAPITAL CONTRIBUTIONS

3.1    Initial Capital Contribution of the Limited Partners.    The General Partner shall give the Limited Partners fifteen (15) days' prior written notice of the date on which each Limited Partner shall be required to contribute capital, in cash, to the Partnership payable by wire transfer or check in an amount equal to ten percent (10%) (or such other percentage as shall be specified in such notice but in no event to exceed thirty percent (30%)) of such Limited Partner's capital commitment to the Partnership (such Limited Partner's "Initial Contribution"). The date on which such initial capital contribution is due is referred to hereinafter as the "Initial Contribution Date." The Initial Contribution Date shall be on or shortly before the date of the Partnership's first investment other than short-term investments pending long-term commitment, which first investment shall be in the Securities of a portfolio company which permits the Partnership to qualify as a "venture capital operating company" under Department of Labor final regulation relating to the definition of Plan Assets, 29 CFR § 2510.3-101, as such regulation may be or have been amended as of the date in question (the "DOL Regulation"); provided, however, that ERISA Partners (as defined in Paragraph 10.18(a)) shall not deliver Initial Contributions to the Partnership until such ERISA Partners have received written notification (by facsimile) from the General Partner that the first investment has been made.

3.2    Subsequent Capital Contributions by the Limited Partners.    Set forth opposite the name of each Partner on the Schedule of Partners attached hereto under the heading "Capital Commitment" is each Limited Partner's Capital Commitment to the Partnership. Each Limited Partner's Capital Commitment represents the aggregate amount of capital that such Partner has agreed to contribute to the Partnership in accordance with the terms hereof. No Limited Partner shall be obligated to contribute capital to the Partnership in an amount in excess of its Capital Commitment. Subject to the foregoing limitation, subsequent to the Initial Contribution Date each Limited Partner shall make additional capital contributions, in cash, to the Partnership, payable by wire transfer or check, upon fifteen (15) days' prior written notice from the General Partner (the "Drawdown Notice") at such time (the "Drawdown Date") and in such amount (the "Drawdown Amount") as shall be specified in the Drawdown Notice. Each Drawdown Notice shall be given to each Limited Partner of the Partnership. The Drawdown Amounts of the Limited Partners specified in any Drawdown Notice shall be proportional to their

respective Capital Commitments to the Partnership. Except with the written consent of Two-Thirds in Interest of the Limited Partners, the Limited Partners shall not be required to contribute capital to the Partnership in an aggregate amount greater than thirty-three and one-third percent (33-1/3%) of the Limited Partners' aggregate Capital Commitments to the Partnership for all periods up to the first annual anniversary of the Partnership Term nor in an aggregate amount greater than sixty-six and two-thirds percent (66-2/3%) of the Limited Partners' Capital Commitments to the Partnership for all period up to the second annual anniversary of the Partnership Term.

3.3    Initial Capital Contribution of the General Partner. On the Initial Contribution Date, the General Partner shall contribute capital, in cash, to the Partnership in an amount equal to one and one-ninety-ninth percent (1-1/99%) of the aggregate Capital Contributions of all the Limited Partners.

3.4    Subsequent Capital Contributions of the General Partner. The General Partner shall, on any date on which a Limited Partner makes a contribution to the capital of the Partnership pursuant to Paragraph 3.2, make an additional contribution, in cash, to the capital of the Partnership in an amount equal to one and one-ninety-ninth percent (1-1/99%) of the amount contributed by such Limited Partner or Partners on such date. The aggregate amount that the General Partner has contributed to the Partnership pursuant to this agreement plus any additional amounts the General Partner is obligated to contribute to the Partnership pursuant to this Paragraph 3.4 or elects to be obligated to contribute pursuant to Paragraph 3.5 shall constitute the Capital Commitment of the General Partner.

3.5    Noncontributing Partners.

(a)    The Partnership shall be entitled to enforce the obligations of each Partner to make the contributions to capital specified in this Article, and the Partnership shall have all remedies available at law or in equity in the event any such contribution is not so made.

(b)    Additionally, should any Limited Partner (the "Optionor") fail to make one of the contributions required of it under Paragraph 3.1 or 3.2 (unless the obligation to make such contributions is in suspension or has been terminated pursuant to Paragraph 10.18(c) in connection with the withdrawal of such Limited Partner), the General Partner, if it determines that the Optionor has not taken or is not taking appropriate action to remedy such failure, may, at its option, declare the Optionor to be in default, whereupon (x) the Optionor shall no longer have the right to vote on any matter presented to Limited Partners for a vote and (y) the other Limited Partners (the "Optionees") and the General Partner shall have the right and option to acquire the Partnership interest of any Optionor, as follows (provided, however, that in the case of an Optionor having a Capital Commitment of Five Hundred Thousand Dollars ($500,000) or less, then only Limited Partners having Capital Commitments of One Million Dollars ($1,000,000) or more shall have the right and option to acquire the Partnership interest of such Optionor and, accordingly only such Limited Partners shall be considered Optionees with respect to such default):

(i)    Should the General Partner declare an Optionor to be in default in making any such contribution, the General Partner shall promptly notify such Optionor