thereof. If such default continues for ten (10) or more days after notice thereof, the General Partner shall notify the Optionees of the default within twenty (20) days after the expiration of the aforesaid ten (10) day notice period. Such notice shall advise each Optionee of the portion and the price of the Optionor's interest available to it. The portion available to each Optionee shall be that portion of the Optionor's interest that bears the same ratio to the Optionor's entire interest as each Optionee's Partnership Percentage bears to the aggregate Partnership Percentages of all the Limited Partners other than the Optionor. The aggregate price for the Optionor's interest shall be the lesser of (A) an amount equal to (1) the balance that would have been in the Optionor's Partnership Capital Account as of the due date of the additional contribution if the Partnership had terminated on such date and all allocations necessary to determine the closing Partnership Capital Accounts of the Partners under Paragraph 8.2 had been effected less (2) the aggregate amount of any distributions made to the Optionor (with such distributions being valued at fair market value on the date of distribution pursuant to Paragraph 9.2(c)) under this Agreement which are effected from and after such due date to the date of purchase (which shall be the date of delivery of payment to Optionor in accordance with Paragraph 3.5(b)(v) below) of Optionor's interest hereunder, but in no event less than zero or (B) an amount equal to (1) the aggregate amount of the Optionor's capital contributions less (2) the aggregate amount of any distributions made to the Optionor (with such distributions being valued at fair market value on the date of distribution pursuant to Paragraph 9.2(c)) from inception of the Partnership through the date of purchase of Optionor's interest hereunder, but in no event less than zero. The price for each Optionee shall be prorated according to the portion of the Optionor's interest purchased by each such Optionee. The option granted hereunder shall be exercisable at any time within forty-five (45) days after the date of the notice from the General Partner by delivery to the Optionor in care of the General Partner of a notice of exercise of option together with payment therefor and, if applicable, a security agreement in accordance with Paragraph 3.5(b)(v) below, which notice and documents the General Partner shall promptly forward to the Optionor.

(ii)    Should any Optionee not exercise its option within said forty-five (45) day period provided in Paragraph (i), the General Partner shall immediately notify the other Optionees, who shall have the right and option ratably among them to acquire the portion of the Optionor's interest not so acquired (the "Remaining Portion") within forty-five (45) days after the date of the notice specified in this Paragraph on the same terms as provided in Paragraph (i).

(iii)   The amount of the Remaining Portion not acquired by the Optionees pursuant to Paragraph (ii) may be acquired by the General Partner within forty-five (45) days of the expiration of the forty-five (45) day period specified in Paragraph (ii) on the same terms as set forth in Paragraph (i); provided, however, that the General Partner may not acquire any amount of a Remaining Portion that would cause the aggregate amount of all Remaining Portions cumulatively so acquired by the General Partner to exceed twenty-five percent (25%) of the total Limited Partners' interests. In the event that the General Partner acquires a Limited Partner interest in the Partnership pursuant to this Paragraph 3.5(b)(iii) the General Partner will not be entitled to vote such interest with respect to any matter submitted to the vote of Limited Partners pursuant to this Agreement.

(iv)    The amount of the Remaining Portion not acquired by the Optionees and the General Partner may, if the General Partner deems it in the best interests of the Partnership, be sold to any other individuals or entities on terms not more favorable to such parties than those applicable to the Optionees' option.  Any consideration received by the Partnership for such amount of the Optionor's interest in excess of the price payable to the Optionor therefor shall be retained by the Partnership.  In lieu of the foregoing, the General Partner may, if the General Partner deems it in the best interests of the Partnership, cause the Partnership to (A) repurchase on the same terms applicable to the Optionees' options some or all of the amount of the Remaining Portion not acquired by the Optionees and the General Partner (the "Unpurchased Remaining Portion") and (B) issue to any other individuals or entities (on terms not more favorable to such parties than those applicable to the Optionee's option) a Limited Partnership interest in the Partnership substantially identical in all respects to the Unpurchased Remaining Portion repurchased pursuant to clause (A) hereof; provided, however, that the Partnership Capital Account balance of such newly admitted Limited Partner shall be determined without reference to the Partnership Capital Account balance of the Optionor.  Such newly admitted Limited Partner shall be deemed, solely for purposes of computing such Limited Partner's Partnership Percentage pursuant to Paragraph 4.2(i) hereof, to have contributed to the capital of the Partnership the sum of the amount the Optionor had previously contributed to the Partnership with respect to the Unpurchased Remaining Portion that such Limited Partner's interest replaced plus any amounts actually contributed to the capital of the Partnership pursuant to Paragraph 3.5(b)(vi) (or any corresponding provision applicable to such Limited Partner).  In the event that not all of the Remaining Portion is sold as provided herein, then (x) notwithstanding any other provision of this Agreement, the Optionor shall be entitled only to receive an amount equal to the portion of its Partnership Capital Account balance representing the Unpurchased Remaining Portion (with such balance being determined at the time of its failure to make one of the capital contributions required of it hereunder, without adjustment for any unrecognized gains but adjusted for any unrecognized losses as of such date and further adjusted from time to time as set forth in clause (z) hereof)) such amount to be payable upon termination of the Partnership, without interest, as provided in Paragraph 8.1(d), (y) notwithstanding the provisions of Article IV and Paragraph 8.2(d), items of Net Income and Loss and Capital Transaction Gain and Loss shall be allocated to the Partnership Capital Account of the Optionor so as to cause its positive Partnership Capital Account balance to equal at all times the amount it is entitled to receive pursuant to clause (x) hereof and (z) as of the first day of each Fiscal Quarter of the Partnership commencing after any such default, there shall be deducted from the Partnership Capital Account of the Optionor an amount equal to the excess of the quarterly management fee that would have been payable pursuant to Paragraph 5.1(b) for such Fiscal Quarter had the Defaulting Partner not defaulted over the quarterly management fee actually payable pursuant to Paragraph 5.1(b) for such Fiscal Quarter, and the amount so deducted shall be paid to the General Partner or its designee in lieu of the management fee which would otherwise have been due on such unpaid Capital Commitment, so that the aggregate amount payable to the General Partner or its designee pursuant to this clause (z) and pursuant to Paragraph 5.1 shall not be less than the amount that would have been paid had there been no default by the Optionor.

(v)    The price due from each of the General Partner and the Optionees shall, at the separate elections of the General Partner and each Optionee, be payable to the Optionor either in cash (or cash equivalent) or by a noninterest bearing, nonrecourse

promissory note in the form of Exhibit A, due six (6) months after the Date of Termination of the Partnership. Each such note shall be secured by the portion of the Optionor's Partnership interest purchased by its maker pursuant to a security agreement in the form of Exhibit B and shall be enforceable by the Optionor only against such security.

(vi)    Upon exercise of any option hereunder, each Optionee shall be obligated (A) to contribute to the Partnership that portion of the additional capital then due from the Optionor equal to the percentage of the Optionor's interest purchased by such Optionee and (B) to pay the same percentage of any further contributions otherwise due from such Optionor.

(vii)   Upon the General Partner's purchase of a limited partnership interest pursuant to Paragraph 3.5(b)(iii) above, the General Partner shall be treated to that extent as a Limited Partner, and the Optionor's Partnership Capital Account shall be transferred to the General Partner to the extent of its purchase.

(viii)  Notwithstanding anything herein to the contrary, no purchase and sale of an Optionor's partnership interest pursuant to Paragraph 3.5 shall be permitted if the General Partner shall reasonably determine that such purchase and sale may result in a violation of the Securities Act of 1933, as amended, or the provisions of the Employee Retirement Income Security Act of 1974, as amended.

(c)    If, pursuant to Paragraph 10.18, a Limited Partner is released from its obligation to make an additional capital contribution (the "Released Amount"), the other Limited Partners shall have the right to agree to contribute the Released Amount pro rata in accordance with their then existing Partnership Percentages. Should any of the other Limited Partners elect not to agree to contribute its pro rata portion of the Released Amount or elect to agree to contribute less than its pro rata share, then the other Limited Partners agreeing to contribute under this Paragraph 3.5(c) shall have the right to contribute such amount ratably in accordance with their then existing Partnership Percentages. Thereafter, any portion of the Released Amount not agreed to be contributed by the Limited Partners may be agreed to be contributed by the General Partner. Any portion of the Released Amount not agreed to be contributed by the Limited Partners or the General Partner may, if the General Partner deems it in the best interest of the Partnership, be made available to any other entities, corporations, partnerships or individuals. Partners contributing capital under this Paragraph 3.5(c) shall not be obligated to make additional capital contributions otherwise due then or later from the Limited Partner being released from its obligation to make an additional capital contribution, except to the extent that they elect to be so obligated. This Paragraph 3.5(c) shall apply separately to continuing and successive applications of Paragraph 10.18

## ARTICLE IV

## CAPITAL ACCOUNTS AND ALLOCATIONS

4.1    Partnership Capital Accounts.  A Partnership Capital Account shall be maintained on the Partnership's books for each Partner. In the event any interest in the Partnership is transferred in accordance with the terms of this Agreement, the transferee shall

succeed to the Partnership Capital Account of the transferor to the extent it relates to the transferred interest.

4.2    Definitions. Unless the context requires otherwise, the following terms have the meanings specified in this Paragraph:

(a)    Book Value. The Book Value with respect to any asset shall be the asset's adjusted basis for federal income tax purposes, except as follows:

(i)    The initial Book Value of any asset contributed by a Partner to the Partnership shall be the fair market value of such asset at the time of contribution, as determined by the contributing Partner and the Partnership. The preceding sentence shall not be interpreted as authorizing the General Partner to contribute to the Partnership any asset other than cash or to accept other than cash contributions from any Limited Partner.

(ii)    In the discretion of the General Partner, the Book Values of all Partnership assets may be adjusted to equal their respective fair market values, as determined by the General Partner, and the resulting unrecognized gain or loss allocated to the Partnership Capital Accounts of the Partners pursuant to the provisions of this Article IV as Capital Transaction Gain or Loss or Net Income or Loss, as the case may be, in the same manner as though each such asset had been sold for an amount of consideration equal to its respective fair market value, immediately prior to the following times: (A) the acquisition of an additional interest in the Partnership by any new or existing Partner (other than pursuant to Paragraph 7.6(b)) in exchange for more than a de minimis capital contribution; and (B) the distribution by the Partnership to a Partner of more than a de minimis amount of Partnership assets, unless all Partners receive simultaneous distributions of either undivided interests in the distributed property or identical Partnership assets in proportion to their interests in the Partnership.

(iii)    The Book Values of all Partnership assets shall be adjusted to equal their respective fair market values, as determined by the General Partner, and the resulting unrecognized gain or loss allocated to the Partnership Capital Accounts of the Partners pursuant to the provisions of this Article IV as Capital Transaction Gain or Loss or Net Income or Loss, as the case may be, in the same manner as though each such asset had been sold for an amount of consideration equal to its respective fair market value, as of the following times: (A) the date the Partnership is liquidated within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(g); and (B) the termination of the Partnership pursuant to the provisions of this Agreement.

(iv)    The Book Values of Partnership assets shall be increased or decreased to the extent required under Treasury Regulation Section 1.704-1(b)(2)(iv)(m) in the event that the adjusted tax basis of Partnership assets is adjusted pursuant to Code Sections 732, 734 or 743.

(v)    The Book Value of a Partnership asset shall be adjusted by the depreciation, amortization or other cost recovery deductions, if any, taken into account by the

Partnership with respect to such asset in computing Net Income or Loss or Capital Transaction Gain or Loss.

(b)    Capital Transaction Gain or Loss:  An amount computed for any relevant period, as of the last day thereof, that is equal to the total of (i) the aggregate amount recognized on the Sale or Exchange of securities or other assets held by the Partnership during such period less the sum of (A) the Book Value of such securities or other assets as of the date of such sale or exchange, (B) the Partnership's expenses associated with the sale or exchange of such securities or other assets; (ii) the Partnership's distributive share of income, gain, loss, deduction or credit (or item thereof) derived from its interest in partnerships, provided such amount would have been Capital Transaction Gain or Loss if realized directly by the Partnership; (iii) dividend income, royalty income and interest income and similar amounts (including, without limitation, income with respect to points, loan commitment fees, original issue discount and market discount) of the Partnership, whether derived from actual or constructive distributions of cash or property but excluding amounts derived from Money Market Investments; and (iv) the aggregate adjustment to the Book Value of Partnership assets computed under Paragraphs 4.2(a) (ii), (iii) and (iv) (except to the extent such adjustments result in Net Income or Loss); and (v) any other amount specifically designated as Capital Transaction Gain or Loss hereunder including, without limitation, amounts so designated pursuant to Paragraphs 6.4(c) and 8.2(b).

(c)    Contingent Loss:  That part of the General Partner's share of Partnership Capital Transaction Loss or Net Loss that is allocated to the Limited Partners' Partnership Capital Accounts pursuant to Paragraph 4.5 below.

(d)    Fiscal Quarter:  The Fiscal Quarters of the Partnership shall begin on January 1, April 1, July 1, and October 1, and end on March 31, June 30, September 30, and December 31, respectively.

(e)    Fiscal Year:  The Partnership's first Fiscal Year shall begin on the date hereof and end on December 31, 1998.  Thereafter, the Partnership's Fiscal Year shall commence on January 1 of each year and end on December 31 of such year or, if earlier, the date the Partnership terminated during such year pursuant to Paragraph 2.2 or otherwise.  The General Partner at any time may elect a different Fiscal Year if permitted by the Code and the applicable Treasury Regulations.

(f)    Interim Period:  If a Partnership interest is transferred, the General Partner converts to a Limited Partner, the Partnership Percentage of any Partner changes, or a Partner withdraws or a new Partner is admitted to the Partnership other than on the first day of any Fiscal Quarter during the Partnership Term or if the General Partner shall so elect, then the date of such event or election (the "Interim Date") shall commence an Interim Period.  An Interim Period shall end on the last day of the Fiscal Quarter in which the Interim Period began or on the day immediately preceding the beginning of a new Interim Period, whichever is earlier.

(g)    Net Income and Net Loss:  Net Income and Net Loss shall be the net book income or loss of the Partnership for any relevant period computed without taking into account items comprising Capital Transaction Gain or Loss.  The net book income or loss of the

Partnership shall be computed in accordance with Federal income tax principles; (i) under the method of accounting elected by the Partnership for federal income tax purposes, (ii) as applied without regard to any recharacterization of transactions or relationship that might otherwise be required under such tax principles and (iii) as otherwise adjusted pursuant to the following provisions. The net book income or loss of the Partnership shall be computed, *inter alia*, by:

        (i)     including as income or deductions, as appropriate, any tax-exempt income and related expenses that are neither properly included in the computation of taxable income nor capitalized for federal income tax purposes;

        (ii)     including as a deduction when paid or incurred (depending on the Partnership's method of accounting) any amounts utilized to organize the Partnership or to promote the sale of (or to sell) an interest in the Partnership, except that amounts for which an election is properly made by the Partnership under Section 709(b) of the Code shall be accounted for as provided therein;

        (iii)     including as a deduction any losses incurred by the Partnership in connection with the sale or exchange of property notwithstanding that such losses may be disallowed to the Partnership for federal income tax purposes under the related party rules of Code Sections 267(a)(1) or 707(b) or otherwise; and

        (iv)     calculating the gain or loss on disposition of Partnership assets and the depreciation, amortization or other cost recovery deductions, if any, with respect to Partnership assets by reference to their Book Value rather than their adjusted tax basis.

Any expense (including, without limitation, processing and commitment fees) paid or incurred with respect to the Preferred Limited Partnership Interests issued pursuant to the SBA Annex shall be treated as an item of Net Income or Net Loss and not as an item of Capital Transaction Gain or Loss.

        (h)     <u>Partnership Capital Account</u>: The Partnership will maintain with respect to each Partner a Partnership Capital Account in accordance with this Paragraph 4.2(h). In addition, the Partnership will maintain with respect to each Partner a Capital Account in accordance with Article V of the SBA Annex, solely for the purposes of determining the amount and timing of allocations of Net Total Profits and Net Total Losses to be made to the Preferred Limited Partners and shall accordingly have no effect on the determination of the apportionment between the General Partner and the Private Limited Partners of amounts available for distribution to such Partners. Such apportionment shall be based on the Partnership Capital Account balances maintained in accordance with the following provisions:

The Partnership Capital Account of each Partner shall be increased by:

Partner,        (i)     the amount of money contributed to the Partnership by such

        (ii)     such Partner's share of Capital Transaction Gain and Net Income (or items thereof) allocated to its Partnership Capital Account pursuant to this Agreement, and

(iii)    any other amounts required by Treasury Regulation Section 1.704-1(b), provided that the General Partner determines that such increase is consistent with the economic arrangement among the Partners as expressed in this Agreement.

and shall be <u>decreased</u> by:

(i)    the amount of money and the fair market value of any property distributed by the Partnership (with such distributions being valued at fair market value on the date of distribution pursuant to Paragraph 9.2), net of any liabilities secured by such property that such Partner is considered to assume or hold subject to for purposes of Section 752 of the Code,

(ii)    such Partner's share of Capital Transaction Loss and Net Loss (or items thereof) allocated to its Partnership Capital Account pursuant to this Agreement, and

(iii)    any other amounts required by Treasury Regulation Section 1.704-1(b), provided that the General Partner determines that such decrease is consistent with the economic arrangement among the Partners expressed in this Agreement.

One Partnership Capital Account shall be maintained for the General Partner in its capacity as general partner of the Partnership, and another wholly separate Partnership Capital Account shall be maintained for the General Partner in its capacity as a Limited Partner of the Partnership, if any. Any reference in this Agreement to the "General Partner's Partnership Capital Account," the "Partnership Capital Account of the General Partner" or the like shall refer to the Partnership Capital Account maintained for the General Partner in its capacity as general partner of the Partnership. In addition, for purposes of this Agreement, allocations and distributions made to the General Partner in its capacity as a Limited Partner of the Partnership, if any, shall be treated as having been made to a Limited Partner and, accordingly, shall not be treated as having been "made to the General Partner."

(i)    <u>Partnership Percentage</u>: The Partnership Percentage for each Partner shall be determined by dividing the sum of the amount of each Partner's capital contributions (including the capital contribution of any predecessor Partners but excluding the capital contribution attributable to any portion of a Partner's interest that such Partner has transferred) plus the amount of such Partner's unpaid Capital Commitment by the sum of the aggregate capital contributions of all of the Partners (including the capital contributions of any predecessor Partners and capital contributions attributable to interests (or portions thereof) that have been transferred) plus the unpaid Capital Commitment of all of the Partners. The sum of the Partners' Partnership Percentages shall be one hundred percent (100%). The aggregate Partnership Percentage of the Limited Partners as a group shall be the sum of the Partnership Percentages of each of the Limited Partners. For purposes of computing any Partner's Partnership Percentage, any capital contribution made by an Optionor (as defined in Paragraph 3.5(b)) with respect to any Unpurchased Remaining Portion described in clause 3.5(b)(iv)(x) shall be disregarded.

(j)    <u>Sale or Exchange</u>: A Sale or Exchange shall be a sale, exchange, liquidation or similar transaction, event, or condition with respect to any assets (except

realizations of purchase discounts on commercial paper, certificates of deposit, or other money-market instruments) of the Partnership of the type that would cause any realized gain or loss to be recognized for income tax purposes under the Code (as determined without giving effect to the related party rules of Code Sections 267(a)(1), 707(b) and any other provision that defers or eliminates recognition or gain or loss based solely upon the relationship between transferor and transferee).

    4.3    <u>Allocation of Capital Transaction Gain or Loss.</u>

    (a)    <u>Allocation of Capital Transaction Gain</u>.  Except as otherwise provided in Paragraph 8.2, Capital Transaction Gain of the Partnership for each Fiscal Quarter or Interim Period shall be allocated as follows:

    (i)    Twenty percent (20%) of the Partnership's Capital Transaction Gain shall be allocated to the Partnership Capital Account of the General Partner; provided, however, that if the Partnership Capital Accounts of one or more of the Limited Partners contain a Contingent Loss, then one percent (1%) of the Partnership's total Capital Transaction Gain shall be allocated to the Partnership Capital Account of the General Partner and any remaining Partnership Capital Transaction Gain that would otherwise be allocated entirely to the Partnership Capital Account of the General Partner pursuant to this subparagraph shall instead be allocated first to the Partnership Capital Accounts of the Limited Partners (in proportion to the amount of Contingent Loss in their respective Partnership Capital Accounts) until the Limited Partners receive up to an aggregate amount equal to the previously allocated Contingent Loss that has not been restored by prior allocations pursuant to this subparagraph and then any such remaining Partnership Capital Transaction Gain shall be allocated to the Partnership Capital Account of the General Partner.

    (ii)    The remaining eighty percent (80%) of the Partnership's Capital Transaction Gain shall be allocated to the Partnership Capital Accounts of all Partners as a group.

    (b)    <u>Allocation of Capital Transaction Loss</u>.  Except as otherwise provided in Paragraph 8.2, Capital Transaction Loss of the Partnership for each Fiscal Quarter or Interim Period shall be allocated as follows:

    (i)    Twenty percent (20%) of the Partnership's Capital Transaction Loss shall be allocated to the Partnership Capital Account of the General Partner.

    (ii)    The remaining eighty percent (80%) of such Capital Transaction Loss shall be allocated to the Partnership Capital Accounts of all Partners as a group.

    (c)    <u>Allocation Adjustments</u>.  Notwithstanding anything in this Agreement to the contrary, in connection with allocations to the Partners' Capital Accounts pursuant to Section 5.3 of the SBA Annex, it is the intention of the General Partner and Limited Partners that the economic burden of any amount paid or distributed to the Preferred Limited Partners or the SBA in excess of the aggregate Commitments (as defined in the SBA Annex) of the Preferred Limited Partners shall be borne by the General Partner and Private Limited Partners, in proportion to their respective Partnership Percentages. Accordingly, for purposes of

this Agreement (i) any amounts of Net Profits or Net Losses (as such terms are defined in the SBA Annex) allocated to the Capital Accounts of the Preferred Limited Partners pursuant to the SBA Annex hereunder with respect to any fiscal period shall be treated as being comprised of a pro-rata share of each item of Capital Transaction Gain or Capital Transaction Loss (as the case may be) and Net Income or Net Loss (as the case may be) of the Partnership for such fiscal period, (ii) the amount of each such item that is allocated to the Capital Accounts of the Preferred Limited Partners shall result in a corresponding decrease in the aggregate amount of such item that is available to be allocated pursuant to the provisions of this Agreement to the Partnership Capital Accounts of the General Partner and each of the Private Limited Partners, and (iii) the amount of such decrease shall be apportioned among the General Partner and each Private Limited Partner in proportion to their respective Partnership Percentages (e.g., if at any point in time the General Partner has a Partnership Percentage of one percent (1%), the Private Limited Partners in the aggregate have a Partnership Percentage of ninety-nine percent (99%), and the Capital Accounts of the Preferred Limited Partners are treated pursuant to this clause (B) as being allocated one hundred dollars ($100.00) of Partnership capital gain from the sale of a security, the Partnership Capital Account of the General Partner will be allocated one dollar ($1.00) less Partnership capital gain from the sale of such security than it would have been allocated had no such gain been treated pursuant to this as allocated to the Capital Accounts of the Preferred Limited Partners and the Partnership Capital Accounts of the Limited Partners, excluding the Preferred Limited Partners, in the aggregate will be allocated ninety-nine dollars ($99.00) less Partnership capital gain from the sale of such security than they would have been allocated had no such gain been treated pursuant to this clause (B) as being allocated to the Capital Accounts of the Preferred Limited Partners). In the event that the allocation scheme set forth in the preceding sentence does not achieve the intention of the General Partner and Limited Partners as set forth in the second sentence of this clause (B), the General Partner may vary such allocation scheme or the method of maintaining Capital Account balances to the extent necessary to achieve such intention.

4.4    Allocation of Net Income or Loss.    Except as otherwise provided in Paragraph 8.2, Net Income or Loss of the Partnership for each Fiscal Quarter or Interim Period shall be allocated to the Partnership Capital Accounts of all Partners as a group.

4.5    Reallocation of Contingent Losses.    If for any Fiscal Quarter or Interim Period after the Partnership's Capital Transaction Gain or Loss and Net Income or Loss has been allocated pursuant to Paragraphs 4.3 and 4.4, the closing Adjusted Partnership Capital Account Balance (as defined in Paragraph 6.4(i)) of the General Partner has been reduced below zero by more than the amount necessary to properly reflect the General Partner's obligation to recontribute amounts to the Partnership pursuant to Paragraph 8.3 upon termination of the Partnership (as determined by disregarding clause (iii) of the first sentence of Paragraph 8.3)), then an amount of Net Loss and, to the extent necessary, Capital Transaction Loss (collectively, the "Contingent Loss") shall be reallocated from the General Partner's Partnership Capital Account to the Partnership Capital Accounts of the Limited Partners as a group so that the General Partner's closing Adjusted Partnership Capital Account Balance is not reduced below zero by more than the amount necessary to properly reflect the General Partner's obligation to recontribute amounts to the Partnership pursuant to Paragraph 8.3 upon termination of the Partnership (as determined by disregarding clause (iii) of the first sentence of Paragraph 8.3)). A Contingent Loss may be restored only from future Net Income and Capital Transaction Gain

(including all amounts treated under Paragraphs 6.4(c), 8.2(b) and any other provisions of this Agreement as Capital Transaction Gain).

     4.6    Allocation Among Partners. Except as otherwise specifically provided in this Agreement, all Capital Transaction Gain and Loss and Net Income and Loss (and items thereof) allocated to the Partnership Capital Accounts of the Limited Partners as a group for any period shall be allocated among the Limited Partners in proportion to their respective Partnership Percentages as of the end of such period. Except as otherwise specifically provided in this Agreement, all Capital Transaction Gain and Loss and Net Income and Loss (and items thereof) allocated to the Partnership Capital Accounts of all Partners as a group for any period shall be allocated among the Partners in proportion to their respective Partnership Percentages as of the end of such period.

     4.7    Special Allocation Among Late-Entering Limited Partners of Organization and Operating Expenses. The following items of Net Income or Loss or Capital Transaction Gain or Loss are collectively referred to herein as "Operating Expenses":

     (i)    Payments of the management fee set forth in Paragraph 5.1;

     (ii)    All expenditures of the Partnership classified for federal income tax purposes as syndication or organization expenses; and

     (iii)    All expenditures specified in Paragraph 5.2(b), to the extent such expenditures would be included as items of Net Income or Loss rather than Capital Transaction Gain or Loss and also are not required to be added to the adjusted tax basis of any Partnership asset, the disposition of which would give rise to a Capital Transaction Gain or Loss.

All Operating Expenses allocated for any period to the Partnership Capital Accounts of the Limited Partners under Paragraph 4.4 (as a component of the Net Income or Loss so allocated) or under Paragraph 4.3 (as a component of the Capital Transaction Gain or Loss so allocated) shall be specially allocated among the Partnership Capital Accounts of the Limited Partners so that, after giving effect to the allocations provided for in Paragraph 4.8 hereof for such period, such Operating Expenses are allocated among the Partnership Capital Accounts of the Limited Partners in proportion to their respective Partnership Percentages as of the end of such period; provided, however, that if additional Limited Partners are admitted to the Partnership pursuant to Paragraph 7.6(b) hereof, such Operating Expenses shall be allocated among the Partnership Capital Accounts of the Original Limited Partners and the Limited Partners admitted pursuant to Paragraph 7.6(b) hereof from time to time so that, to the extent possible, after giving effect to the allocations provided for in Paragraph 4.8 hereof through such period, the cumulative Operating Expenses allocated with respect to such Limited Partners at any time is proportionate to their respective Partnership Percentages.

After giving effect to the allocations provided for in this Paragraph 4.7, any remaining items comprising the Net Income or Net Loss allocated to the Partnership Capital Accounts of the Limited Partners pursuant to Paragraph 4.4 or Capital Transaction Gain or Loss so allocated pursuant to Paragraph 4.3 shall be allocated among the Limited Partners as provided in

Paragraph 4.6.   In no event shall this Paragraph 4.7 be interpreted so as to authorize the reallocation of any items subject to allocation under Paragraph 4.8.

4.8   Special Allocation of Syndication Expenses.   Notwithstanding Paragraph 4.4, all expenditures classified as syndication expenses under Treasury Regulations Section 1.709-2(b) allocated for any period to the Partnership Capital Accounts of the Limited Partners under Paragraph 4.4 (as a component of the Net Income or Loss so allocated) shall be specially allocated among the Partnership Capital Accounts of the Limited Partners in proportion to their respective Partnership Percentages as of the end of such period; provided, however, that if additional Limited Partners are admitted to the Partnership pursuant to Paragraph 7.6(b) hereof, all such syndication expenses shall be allocated among the Partnership Capital Accounts of the Original Limited Partners and the Limited Partners admitted pursuant to Paragraph 7.6(b) hereof from time to time so that, to the extent possible, the cumulative syndication expenses allocated with respect to such Limited Partners at any time is proportionate to their respective Partnership Percentages.  In the event the General Partner shall determine that such result is not likely to be achieved through future allocations of such syndication expenses, the General Partner may allocate a portion of Net Income or Loss (or items thereof) so as to achieve the same effect on the Partnership Capital Accounts of such Limited Partners.

## ARTICLE V

## MANAGEMENT FEE; EXPENSES

5.1   Management Fee.

(a)   The General Partner or, if the General Partner elects, an entity or entities controlled by the Original Managing Members of the General Partner shall be compensated for services rendered to the Partnership until the Date of Termination for each Fiscal Quarter by the payment by the Partnership in cash to the General Partner (or its designee) on the first day of such Fiscal Quarter (or portion thereof) of a management fee; provided that the management fee for all Fiscal Quarters commencing prior to the Initial Contribution Date shall be paid on the Initial Contribution Date.

(b)   The management fee for each of the Partnership's Fiscal Quarters shall be an amount equal to the product of (i) 0.625% and (ii) the Regulatory Capital (as defined in the SBA Annex) of the Partnership as of the first day of each such Fiscal Quarter plus, if as of the first day of such Fiscal Quarter the Partnership is a Licensee, the lesser of (A) $60,000,000 or (B) two times the Regulatory Capital of the Partnership as of the first day of such Fiscal Quarter; provided, however, that the management fee for the Partnership's first Fiscal Quarter shall be based upon the ratio that the number of days in the period beginning on the Commencement Date and ending on the close of the Fiscal Quarter within which such Commencement Date falls bears to ninety (90).

(c)   The foregoing management fee shall be reduced for the twelve-month period commencing on January 1, 2005, and on each anniversary thereof as follows:

(i)    For the twelve-month period commencing on January 1, 2005, the management fee for each of the Partnership's Fiscal Quarters shall be calculated as set forth in subparagraph (b) except that the 0.625% figure set forth in clause (i) of the first sentence thereof shall be reduced to equal 0.5625%;

(ii)    For the twelve-month period commencing on January 1, 2006, the management fee for each of the Partnership's Fiscal Quarters shall be calculated as set forth in subparagraph (b) above except that the 0.625% figure set forth in clause (i) of the first sentence thereof shall be reduced to equal 0.5%;

(iii)    For the twelve-month period commencing on January 1, 2007, the management fee for each of the Partnership's Fiscal Quarters shall be calculated as set forth in subparagraph (b) above except that the 0.625% figure set forth in clause (i) of the first sentence thereof shall be reduced to equal 0.4375%;

(iv)    After January 1, 2008 the management fee for each of the Partnership's Fiscal Quarters shall be calculated as set forth in subparagraph (b) except that the 0.625% figure set forth in clause (i) of the first sentence thereof shall be reduced to equal 0.375%.

(v)    In the event that the Partnership Term is extended beyond ten (10) years after the Commencement Date pursuant to Paragraph 8.1(e), the management fee for each of the Partnership's Fiscal Quarters during any such extension period(s) shall be the lesser of (i) the product of (x) 0.375% and (y) three times the Regulatory Capital of the Partnership as of the first day of each such Fiscal Quarter or (ii) the product of (x) 0.625% and the Net Asset Value as of the first day of each such Fiscal Quarter. As used in this Paragraph, "Net Asset Value" as of a specified date means the amount by which the value of the assets of the Partnership exceed the liabilities of the Partnership as of that date, determined in accordance with Paragraph 9.2 of this Agreement.

(d)    Notwithstanding the foregoing provisions of this Section 5.1, if the Partnership is a Licensee on October 1, 2003, then commencing on such date, the management fee for such Fiscal Quarter and all subsequent Fiscal Quarters that the Partnership is a Licensee shall not exceed 0.625% of the Partnership's Combined Capital (as such term in defined in the SBIC Regulations and as determined as of the end of such Fiscal Quarter) plus, if the Partnership's Combined Capital is less than Twenty Million Dollars ($20,000,000), an additional Thirty-One Thousand Two Hundred Fifty Dollars ($31,250).

5.2    Expenses.

(a)    From the management fee, the General Partner (or its designee) shall bear all normal expenses incurred in connection with the management of the Partnership, except for those expenses borne directly by the Partnership set forth in Paragraph 5.2(b), (c), and (d). Such normal management expenses to be borne by the General Partner (or its designee) shall include (but not by way of limitation) expenditures on account of salaries, wages, travel, entertainment, and other expenses of the Partnership's employees, if any, and of the General Partner's (or its designee's) partners and employees; rentals payable for space used by the

General Partner (or its designee) or the Partnership; bookkeeping services and equipment, fees and expenses of independent consultants and investment advisers; liability and other insurance premiums (other than insurance premiums specified below); preparation of annual and other reports to the Partners; expenses incurred in investigating and evaluating investment opportunities and in managing investments of the Partnership; and membership dues for professional and trade associations of which the Partnership is or becomes a member. The General Partner shall also bear the cost of any private placement, finder's fees or similar fees incurred in connection with the formation of the Partnership and the purchase or sale of limited partnership interests therein.

(b)     The Partnership shall bear costs and expenses incurred in the purchase, holding or Sale or Exchange of Securities, including, but not by way of limitation, processing and commitment fees paid or incurred with respect to Preferred Limited Partnership Interests, interest and other fees associated with Partnership borrowings, reasonable private placement and finder's fees paid to persons other than Affiliates of the General Partner or the members of the General Partner, real property or personal property taxes on investments, brokerage fees, taxes applicable to the Partnership on account of its operations, fees incurred in connection with the maintenance of bank or custodian accounts, legal, audit, and other expenses incurred in connection with the registration of the Partnership's Securities under the Securities Act, and legal fees and expenses incurred in the purchase or Sale or Exchange of Securities (whether or not such purchase, Sale or Exchange is ultimately consummated). The Partnership shall also bear legal costs incurred in connection with the operation of the Partnership and the fees of the independent certified public accountant referred to in Paragraph 9.1 hereof incurred in connection with the annual audit of the Partnership's books and the preparation of the Partnership's annual tax return, costs of independent appraisers, costs associated with Partnership information meetings contemplated by Paragraph 9.8 hereof, and all expenses that are not normal operating expenses, including all legal fees and expenses incurred in prosecuting or defending administrative or legal proceedings relating to the Partnership brought by or against the Partnership or the General Partner or its members or agents, including all costs and expenses arising out of or resulting from the Partnership's indemnification pursuant to Paragraph 10.13 hereof and subject to the limitations imposed therein. The General Partner shall obtain the approval of the Advisory Committee prior to causing the Partnership to voluntarily incur any unusual item of expense in excess of $50,000. The Partnership shall bear the costs of insurance premiums, if any, of insurance maintain insurance in the nature of directors and officers liability insurance covering the Partnership, the General Partner and the Members and Affiliates thereof, including the procurement of insurance for any potential indemnification liability of the Partnership under this Agreement, and to secure insurance for the Partnership against liability or other loss with respect to the activities and assets of the Partnership. The insurance referred to in the preceding sentence shall not be required but may be obtained in the sole discretion of the General Partner.

(c)     The Partnership shall bear all organization costs, fees, and expenses (which expenses to be borne by the Partnership shall not exceed $250,000 without the approval of the Advisory Committee) incurred by or on behalf of the General Partner or any affiliate thereof in connection with the formation and organization of the Partnership, the General Partner including without limitation, legal and accounting fees and expenses incident thereto.

(d)    The Partnership shall bear all liquidation costs, fees, and expenses incurred by the General Partner (or its designee) in connection with the liquidation of the Partnership's assets pursuant to Article VIII hereof, specifically including but not limited to legal and accounting fees and expenses.

ARTICLE VI

WITHDRAWALS BY AND DISTRIBUTIONS TO THE PARTNERS

6.1    Interest. No interest shall be paid to any Partner on account of its interest in the capital of, or on account of its investment in, the Partnership.

6.2    Withdrawals by the Partners. No Partner may withdraw any amount from its Partnership Capital Account unless such withdrawal is made pursuant to this Agreement.

6.3    Mandatory Cash Distributions.

(a)    Each Partner shall promptly (and in no event later than ninety (90) days after the end of a calendar year during the Partnership Term) be distributed in cash an amount equal to the amount of Net Operating Income (as such term is defined in Article XI) allocated to such Partner's Partnership Capital Account with respect to all periods during such calendar year, except to the extent the Partnership is unable to effect such a distribution under the provisions of the SBIC Act or the SBIC Regulations, as applicable.

(b)    Within ninety (90) days of the end of each calendar year during the Partnership Term, each Partner shall be distributed in cash out of any available cash of the Partnership an amount equal to the sum of (i) the product of (x) the amount of net ordinary income allocated to such Partner with respect to its interest in the Partnership (as shown on such Partners' Schedule K-1 to the Partnership's IRS Form 1065) for such calendar year and (y) the maximum marginal rate of federal and state income tax applicable to an individual residing in Palo Alto, California with respect to such income (as determined by taking into account any limitations on the ability of an individual to deduct any items of expense or loss shown on such Partner's Schedule K-1), and (ii) the product of (x) of the amount of net capital gain allocated to such Partner with respect to its interest in the Partnership (as shown on such Partners' Schedule K-1 to the Partnership's IRS Form 1065) for such calendar year and (y) the maximum marginal rate of federal and state income tax applicable to an individual residing in Palo Alto, California with respect to such income (as determined by taking into account any limitations on the ability of an individual to deduct any items of expense or loss shown on such Partner's Schedule K-1). In no event shall a distribution pursuant to this subparagraph (b) be required to the extent that the Partnership is unable to effect such a distribution under the provisions of the SBIC Act or the SBIC Regulations, if applicable.

(c)    Discretionary cash distributions effected pursuant to Paragraph 6.4 during any calendar year shall reduce the distribution otherwise required by this Paragraph with respect to such calendar year.

6.4    Discretionary Distributions.

(a)    Prior to the Date of Termination, the General Partner may in its discretion make additional distributions to the Partners of cash or Marketable Securities then held by the Partnership, including any amounts available for distribution to the General Partner and the Private Limited Partners pursuant to Article VI of the SBA Annex, with all such distributions being made pro rata to the Partners in accordance with their respective positive capital account balances, if any.

(b)    Whenever more than one type of Securities is being distributed in kind in a single distribution or whenever more than one class of Securities of a portfolio company (or a portion of a class of such Securities having a tax basis per share or unit different from other portions of such class) are distributed in kind by the Partnership, each Partner shall receive its ratable portion of each type, class or portion of such class of Securities distributed in kind (except to the extent that a disproportionate distribution is necessary to avoid distributing fractional shares).

(c)    Immediately prior to any distribution in kind of Securities (or other partnership assets) pursuant to any provision of this Agreement (including, if applicable, the provisions of the SBA Annex), the difference between the fair market value and the Book Value of any Securities (or other Partnership assets) distributed shall be allocated to the Partnership Capital Accounts of the Partners as a Capital Transaction Gain or Loss pursuant to Article IV.

(d)    Securities distributed in kind pursuant to this Paragraph 6.4 shall be subject to such conditions and restrictions as the General Partner determines are legally required. Such restrictions shall apply equally to the Securities distributed to all Partners.

(e)    At any time, the General Partner may distribute cash or Marketable Securities to all Partners in proportion to their Partnership Percentages, provided that, immediately after the proposed distribution the Adjusted Partnership Capital Account Balance (as defined in Paragraph 6.4(i) below) of the General Partner (as determined after adjusting such balance for the amount of such distribution and any Capital Transaction Gain or Loss deemed recognized by the Partnership pursuant to Paragraph 6.4(c) as a result thereof) will not be negative.

(f)    At any time, the General Partner may, in its sole discretion, distribute cash or Marketable Securities to all Limited Partners in proportion to their Partnership Percentages.

(g)    The General Partner may, in its sole discretion, elect to cause any distribution to a Partner under this Article VI to constitute an advance or draw against such Partner's distributive share of Partnership income provided that any such distribution shall, for purposes of determining the applicability of the limitations on distributions set forth in this Article VI, be deemed to result in a decrease in such Partner's Partnership Capital Account in accordance with Article IV hereof. The General Partner may, in its sole discretion, cause the Partnership to defer effecting, for a period of up to twelve months, any distribution of cash or cash equivalents to the General Partner that it would otherwise have been entitled to receive

pursuant to the provisions of this Article VI. In the event of a deferred distribution of assets pursuant to the preceding sentence, the General Partner shall be entitled to all amounts received by the Partnership with respect to the holding of such assets during the deferral period and, notwithstanding the provisions of Article IV, allocations of items of Net Income and Loss and Capital Transaction Gain and Loss shall be effected so that, upon distribution of such assets (and amounts received by the Partnership with respect to the holding of such assets during the deferral period) the Partnership Capital Account balances of all Partners are equal to the balances that would have existed had the distribution of such assets not been deferred. In no event shall such deferral be taken into account in determining the Partnership Percentage of the General Partner. The General Partner shall cause the Partnership to invest any funds available with respect to the deferral of a distribution as provided above only in Money-Market Investments.

(h)    Notwithstanding any other provision in this Agreement, (i) if any Limited Partner would be distributed an amount of any Security that would cause such Limited Partner to own or control in excess of the amount of such Security that it may lawfully own or control or may own or control without tax penalty, then upon receipt of notice to such effect from a Limited Partner, the General Partner shall promptly notify all other Limited Partners thereof and the General Partner shall vary the method of distribution, in an equitable manner, or, in the discretion of the General Partner, sell such Security on behalf of the affected Partner and distribute the net proceeds therefrom to such Partner so as to avoid such excessive ownership or control (in which case, to the extent allowable, the taxable gain or loss attributable to such sale shall be allocated to such Partner) and (ii) the General Partner may decline to make a distribution to any Limited Partner if the Partnership Capital Account Balance of such Limited Partner (as determined after adjusting such balance for the amount of such distribution and any Capital Transaction Gain or Loss deemed recognized by the Partnership pursuant to Paragraph 6.4(c) as a result thereof) will be negative.

(i)    For purposes of this Agreement the "Adjusted Partnership Capital Account Balance" of the General Partner as of any date shall be the balance in the Partnership Capital Account of the General Partner as of such date computed without regard to any such balance created as a result of any interest as a Limited Partner held by such General Partner.

(j)    At any time after the aggregate amount distributed to the Limited Partners for all periods pursuant to any provision of this Agreement shall equal or exceed the aggregate amount of capital contributed to the Partnership by all Limited Partners for all periods, the General Partner may, in its sole discretion, distribute cash or Marketable Securities to the General Partner provided that, immediately after the proposed distribution, the Adjusted Partnership Capital Account Balance (as defined in Paragraph 6.4(i) above) of the General Partner (as determined after adjusting such balance for the amount of such distribution and any Capital Transaction Gain or Loss deemed recognized by the Partnership pursuant to Paragraph 6.4(c) as a result thereof) will not be less than twenty and eight-tenths percent (20.8%) of the aggregate Partnership Capital Account balances of all the Partners.

ARTICLE VII

## MANAGEMENT, DUTIES, AND RESTRICTIONS

7.1    Management. The General Partner shall have the sole and exclusive right to manage, control, and conduct the affairs of the Partnership and to do any and all acts on behalf of the Partnership (including exercise of rights to elect to adjust the tax basis of Partnership assets and to revoke such elections and to make such other tax elections as the General Partner shall deem appropriate).

7.2    Indebtedness; Restrictions; Reinvestments.

(a)    The General Partner may cause the Partnership to issue Preferred Limited Partnership Interests (and to become a Licensee in connection therewith); provided, however, that the aggregate amount of capital contributions received from Preferred Limited Partners pursuant to the SBA Annex shall not exceed two hundred percent (200%) of the aggregate Capital Commitments of the Partners (as determined at the time of the issuance). In addition, the General Partner may cause the Partnership to borrow money and to issue promissory notes or other evidences of indebtedness; provided, however, that the General Partner may not, without the approval of the Advisory Committee, (i) borrow money on behalf of the Partnership (other than amounts which are expected to be repaid within ninety (90) days) in an amount in excess, in the aggregate at any point in time, of twenty-five percent (25%) of the Partners' Capital Commitments to the Partnership or (ii) guaranty indebtedness of companies of which the Partnership holds Securities in an amount in excess, in the aggregate at any point in time, of twenty-five percent (25%) of the Partners' Capital Commitments to the Partnership. At any time that the Partnership is a Licensee, the General Partner may not cause the Partnership to borrow money or issue promissory notes or other evidences of indebtedness in violation of the SBA Act or the SBIC Regulations.

(b)    Without the consent of the Advisory Committee the Partnership shall not (i) invest in securities of a company if any class of such company's securities is traded on a national securities exchange or over-the-counter or (ii) invest in partnerships other than partnerships in which (A) all profits and losses are allocated pro-rata to capital contributions and (B) no management or other fees are payable to any partner of such partnership or any affiliate of any such partner, unless the General Partner makes appropriate arrangements to insure that the economic burden of such management or other fees and such disproportionate profit and loss allocation is borne solely by the General Partner rather than the Limited Partners. Notwithstanding the foregoing, in no event shall the Partnership invest amounts in any company if such investment would cause the Partnership to exceed the limits on such investment contained in the SBIC Regulations which are then in effect and applicable to the Partnership.

(c)    The Partnership shall not make total investments in or acquire Securities (other than Money-Market Investments) having an aggregate acquisition cost to the Partnership in excess of 110% of the sum of (i) the aggregate Capital Commitments of all of the Partners and (ii) the aggregate principal amount of Preferred Limited Partnership Interests issued by the Partnership (whether or not still outstanding), except to the extent necessary to avoid a violation of the SBIC Act or the rules or SBIC Regulations promulgated thereunder. In no event

will the purchase of Money Market Investments or other debt instruments providing for repayment in one hundred eighty (180) days or less be considered for purposes of the preceding sentence to be an investment or reinvestment in the Partnership's venture capital portfolio.

7.3    Investment Representation of the Limited Partners.    This Agreement is made with each Limited Partner in reliance upon such Limited Partner's representation to the Partnership, which by executing this Agreement the Limited Partner hereby confirms, that such Partner's interest in the Partnership is to be acquired for investment, and not with a view to the sale or distribution of any part thereof, and that such Partner has no present intention of selling, granting participation in, or otherwise distributing the same, but subject nevertheless to any requirement of law that the disposition of such Partner's property shall at all times be within such Partner's control. Each Limited Partner further represents that such Partner does not have any contract, undertaking, agreement, or arrangement with any person to sell or transfer to any third person such Partner's interest in the Partnership.

7.4    Accredited Investor and Investment Company Act Representations.    Each Limited Partner represents that such Partner has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Partnership and, unless otherwise disclosed in writing to the General Partner, that such Partner is (i) an accredited investor, as that term is defined in Regulation D promulgated by the Securities and Exchange Commission, and (ii) a "qualified purchaser" within the meaning of Section 2(a)(51)(A) of the Investment Company Act of 1940, as amended, and the rules promulgated thereunder (the "1940 Act"). Except as disclosed in writing to the General Partner, each Limited Partner further represents that (i) such Limited Partner is not, nor would be but for the exception provided in paragraph 3(c)(1) or 3(c)(7) of the 1940 Act, an investment company (as defined in the 1940 Act) (a "1940 Act Lookthrough Entity"); (ii) such Limited Partner's Capital Commitment does not exceed 40% of such Limited Partner's assets; (iii) such Limited Partner's shareholders, partners or other holders of equity or beneficial interests in such Limited Partner are not able to decide individually whether to participate, or the extent of the their participation, in such Limited Partner's investment in the Partnership; (iv) to the best of such Limited Partner's knowledge, such Limited Partner does not control, nor is controlled by or under common control with, any other Limited Partner; (v) such Limited Partner was not formed for the specific purpose of investing in the Partnership; (vi) such Limited Partner would be considered, and the interest in the Partnership held by the Limited Partner would be considered to be beneficially owned by, "one person" for purposes of Section 3(c)(1) of the 1940 Act; and (vii) no other person or persons will have a beneficial interest in such Limited Partner's interest in the Partnership other than as a shareholder, partner or other beneficial owner of equity interests in such Limited Partner.

7.5    No Control by the Limited Partners.    The Limited Partners shall take no part in the control or management of the affairs of the Partnership nor shall a Limited Partner have any authority to act for or on behalf of the Partnership except as is specifically permitted by this Agreement. The Partners hereby agree that no Limited Partner subject to the Holding Company Act shall have the power to vote on any matter for so long as such power to vote, in the opinion of counsel to such Limited Partner, would be inconsistent with the requirements of the Holding Company Act or any rules or regulations promulgated thereunder; provided, however, that in the event any Limited Partner shall not, in accordance with this Paragraph 7.5,

have the power to vote on any matter, it shall not be considered a Limited Partner for purposes of calculating whether the consent or approval of the requisite percentage in interest of the Limited Partners has been obtained.

7.6    Admission of Additional Partners.

(a)    Subject to Paragraph 7.7 and subparagraphs (b) and (c) below, no additional person may be admitted to the Partnership, either as a limited or general partner, without the prior written consent of both the General Partner and Two-Thirds in Interest of the Limited Partners.

(b)    On or before September 30, 1999, the General Partner may admit additional persons as additional Limited Partners without the consent of any of the then Limited Partners, provided that the Limited Partners' total Capital Commitments shall not exceed Thirty-Five Million Dollars ($35,000,000). Such subsequently admitted Limited Partners shall be deemed, except for purposes of determining such Limited Partners' Partnership Capital Account balance or otherwise to the extent expressly set forth herein to the contrary, to have been admitted as of the Commencement Date. Upon the admission of any additional Limited Partners to the Partnership pursuant to this Paragraph 7.6(b), the assets of the Partnership shall not be revalued.

(c)    After attaining the status of a Licensee, the General Partner may at any time admit one or more Preferred Limited Partners or accept increased capital contributions from existing Preferred Limited Partners as provided in the SBA Annex; provided, however, that at no time shall the sum of the aggregate capital contributions of the Preferred Limited Partners exceed two hundred percent (200%) of the aggregate Capital Commitments of the Partners.

7.7    Assignment or Transfer of Partnership Interests.

(a)    The General Partner shall not sell, assign, pledge, mortgage, or otherwise dispose of or transfer its interest in the Partnership or in its capital assets or property or withdraw from the Partnership without the prior written consent of Two-Thirds in Interest of the Limited Partners; provided, however, that the admission of a new member to the General Partner or the transfer of interests in the General Partner shall not be deemed a sale, assignment or other disposition of the General Partner's interest in the Partnership or its capital assets or property.

(b)    No Limited Partner shall sell, assign, pledge, mortgage, or otherwise dispose of or transfer its interest in the Partnership or its interest in the Partnership's capital assets or property without the prior written consent of the General Partner nor, except as expressly provided in this Agreement, shall a Limited Partner be required to withdraw from the Partnership. Notwithstanding the foregoing, a Limited Partner may sell, assign, pledge, mortgage, or otherwise dispose of or transfer its interest in the Partnership without such consent (i) to any corporation directly or indirectly holding eighty percent (80%) or more of the shares of the Limited Partner or any corporation of which eighty percent (80%) or more of the shares are held directly or indirectly by such corporation, including any corporation of which the Limited Partner holds, directly or indirectly, eighty percent (80%) or more of the shares; (ii) to any entity pursuant to a merger, plan of reorganization, sale or other transfer, or pledge of, or other general

encumbrance on substantially all of the Limited Partner's stock or assets; (iii) as may be required by any law or regulation; (iv) to a successor trustee of any Limited Partner that is an employee benefit plan; or (v) with respect to a Limited Partner that is a corporation, to any entity controlled by, controlling or under common control with such corporation; provided, however, that the transferee in any such case may not be admitted to the Partnership as a substitute limited partner without the consent of the General Partner which consent shall be subject to the sole discretion of the General Partner and shall not be subject to challenge by any transferor or transferee.

(c)    Notwithstanding any other provision of this Agreement, no transfer or other disposition of the interest of a Limited Partner or Preferred Limited Partner shall be permitted until the General Partner shall have received, or waived receipt of, opinions of counsel satisfactory to it that the effect of such transfer or disposition would not:

(i)    result in a violation of the Securities Act;

(ii)    require the Partnership to register as an investment company under the Investment Company Act of 1940, as amended;

(iii)    require the Partnership, the General Partner, or any member of the General Partner to register as an investment adviser under the Investment Advisers Act of 1940, as amended;

(iv)    result in a termination of the Partnership for tax purposes;

(v)    result in a violation of the Act or the SBIC Regulations, to the extent applicable, or any other law, rule, or regulation by the Limited Partner, the Preferred Limited Partner, the Partnership, the General Partner, or any member of the General Partner;

(vi)    increase the number of Limited Partners;

(vii)    result in the assets of the Partnership being deemed to be "plan assets" (within the meaning of the Department of Labor Final Regulation Relating to the Definition of Plan Assets, 29 CFR §2510.3-101 (1987), as such regulation may be amended from time to time; or

(viii)    either (A) cause the representations initially made by such Partner in Sections 4.8(a), (b), (c) and (d) of the SBA Annex (including any separate written representation initially provided by such Private Limited Partner to the Partnership as provided in such Sections) to be not true and accurate or (B) decrease the Partnership's Regulatory Capital (as defined in the SBIC Regulations).

Such legal opinions shall be provided to the General Partner by the transferring Limited Partner or Preferred Limited Partner, as the case may be, or the proposed transferee, except that the opinion in Paragraph (v) regarding the Partnership, the General Partner, and the partners of the General Partner shall be rendered by counsel to the Partnership or the General Partner. All reasonable costs associated with such opinions shall be borne by the transferring Limited Partner or Preferred Limited Partner, as the case may be, or the proposed transferee.

(d)    Notwithstanding any other provision of this Agreement, (A) no assignment, pledge, mortgage, sale, transfer or other disposition of all or a portion of the interest of a Limited Partner (collectively, a "Transfer") shall be permitted if (i) the General Partner determines in its sole discretion that such transaction will either cause the Partnership to be characterized as a "publicly traded partnership" or will materially increase the risk that the Partnership will be so characterized or (ii) such transfer would occur in a transaction registered under the Securities Act and (B) in the case of any Transfer the transferee may not be admitted to the Partnership as a substitute limited partner without the consent of the General Partner which consent shall be subject to the sole discretion of the General Partner and shall not be subject to challenge by any transferor or transferee.  For purposes of this Paragraph 7.7(d) the phrase "publicly traded partnership" shall have the meanings set forth in Sections 7704(b) and 469(k) of the Code. In particular and without limiting the foregoing, no Transfer shall be permitted, given effect or otherwise recognized, and such Transfer (or purported Transfer) shall be void ab initio, if at the time of such Transfer (or as a result of such Transfer) interests in the Partnership are (or would become) traded on an "established securities market" (within the meaning of Treasury Regulation Section 1.7704-1(b)) or are (or would become) "readily tradable on a secondary market or the equivalent thereof" (within the meaning of Treasury Regulation Section 1.7704-1(c)).

### 7.8    Investment Opportunities; Conflicts of Interest.

(a)    The Limited Partners recognize and understand that the members of the General Partner make venture capital investments on behalf of Aspen Ventures West II, L.P. and Aspen Ventures, L.P. (collectively, the "Prior Funds") and manage the investment portfolios of these entities. The Limited Partners hereby agree that the General Partner may offer the right to participate in investment opportunities of the Partnership to other private investors, groups, partnerships, or corporations whenever the General Partner, in its discretion, determines that such would be in the best interests of the Partnership; provided, however, that all such investment opportunities appropriate for the Partnership shall also be presented to the Partnership, and the General Partner, the members of the General Partner and Affiliates thereof shall not participate in investment opportunities of the Partnership in which the Partnership participates other than pursuant to the interest of such General Partner or members of the General Partner or Affiliates thereof in the Partnership or the Parallel Funds (as defined below in Paragraph 7.8(b)).  Except with the prior approval of the Advisory Committee, none of the General Partner, any member of the General Partner or any Affiliate thereof shall enter into any transaction with respect to any Security that might reasonably be viewed as an investment opportunity of the Partnership but in which the Partnership has determined not to participate. For purposes of this Paragraph, in those cases where the Partnership is not afforded the opportunity to invest at least $100,000 or in which the Partnership lacks adequate unreserved funds to participate, such opportunity shall not be considered to be an investment opportunity of the Partnership. Except with the prior approval of the Advisory Committee, the General Partner will not invest the Partnership's funds in private companies the Securities of which are then held by the General Partner or any member or Affiliate thereof and the General Partner shall inform the Advisory Committee of the details of any purchase by the General Partner, or any member of Affiliate thereof, of any Securities of a company the Securities of which are then held by the Partnership. The Limited Partners hereby consent and agree to such activities and investments and further consent and agree that neither the Partnership nor any of its Partners shall have,

pursuant to this Agreement, any rights in or to such activities or investments, or any profits derived therefrom.

(b)     Each of the Limited Partners recognizes and understands that the members of the General Partner have various continuing obligations to the Prior Funds. Other than the time required to devote to the Prior Funds, the Parallel Fund (as defined below), or any subsequent venture capital fund formed in compliance with the requirements of this Paragraph 7.8, and except to the extent otherwise expressly permitted under this Agreement, from the date of the formation of the Partnership the managing members of the General Partner, for so long as they remain such, shall devote substantially all of their business time to the affairs of the Partnership until such time as the Partnership shall have invested or reserved for follow-on investments in existing portfolio companies or for expenses of the Partnership substantially all of the Partnership's available capital and shall thereafter devote to the Partnership such portion of their business time as is necessary so as to effectively manage the affairs of the Partnership. Except with the consent of the Advisory Committee, neither the General Partner nor the members of the General Partner (so long as they are members thereof) shall form or acquire any other entity with operations and objectives similar to those of the Partnership prior to December 31, 2000 or until such time as funds equal to at least seventy percent (70%) of the sum of the Partner's Capital Commitments and the aggregate Capital Contributions received with respect to Preferred Limited Partnership Interests issued by the Partnership (whether or not still outstanding) have been invested (excluding funds invested in Money-Market Instruments but including funds invested in investments that have been sold, distributed or otherwise disposed of), committed or reserved for investment  The foregoing notwithstanding, the members of the General Partner are hereby given express authority at any time to own and/or serve as partners or members of another partnership or limited liability company the sole purpose of which will be to act as general partner of one or more Delaware partnerships formed to invest in parallel with the Partnership (collectively the "Parallel Fund").    If established, the Parallel Fund will simultaneously invest in each Security purchased by the Partnership on the same terms as the investment made by the Partnership, provided, however, that the Parallel Fund shall not be required to make any such investment in a Security if it receives from the issuer thereof a written notice to the effect that the issuer will not permit such Parallel Fund to invest on the same terms as the Partnership's investment. The restrictions on the General Partner and the members of the General Partner contained in this Paragraph 7.8(b) shall not apply from and after the date that, due to a change in applicable law or the identity, status or financial circumstances of one or more Limited Partners, the amount of "Regulatory Capital" (as defined in applicable SBIC Regulations) of the Partnership is reduced to less than seventy-five percent (75%) of the amount of Regulatory Capital that the Partnership would have had in the absence of such change in applicable law or change in status or financial circumstances of the Limited Partners.  With respect to each purchase of Securities by the Parallel Fund, in lieu of investing through the Parallel Fund, an individual partner thereof may, to the extent permitted by the Parallel Fund, invest in such partner's individual capacity.

(c)     Neither the General Partner (or any members of the General Partner), nor the Limited Partners nor their Affiliates may buy from or sell to the Partnership any Securities without the prior written consent of a Majority in Interest of the Limited Partners.

(d)     No member of the General Partner (so long as he or she remains a member thereof) nor the General Partner shall do any act in contravention of this Agreement, or that would be detrimental to the best interests of the Partnership, or that would make it impossible to carry on the activities and affairs of the Partnership.

ARTICLE VIII

DISSOLUTION AND LIQUIDATION OF THE PARTNERSHIP

8.1     Liquidation Procedures.     Upon termination of the Partnership at the expiration of the Partnership Term or upon the occurrence of an event of termination described in Paragraph 2.2 above:

(a)     The affairs of the Partnership shall be wound up and the Partnership shall be dissolved.

(b)     Distributions in dissolution may be made in cash or in kind or partly in cash and partly in kind.  To the extent not inconsistent with Paragraph 12.4 of this Agreement, each Security (and each class of Securities, or portion of a class of Securities having a tax basis per share or unit different from other portions of such class) distributed in kind shall be distributed ratably in accordance with the General Partner and the Limited Partners' Partnership Capital Account balances (as adjusted pursuant to Paragraph 8.2) unless such distribution would result (i) in a violation of a law or regulation applicable to a Limited Partner or a tax penalty to a Limited Partner, in which event, upon receipt by the General Partner of notice to such effect, such Limited Partner may designate a different entity to receive the distribution, or designate, subject to the approval of the General Partner, an alternative distribution procedure or (ii) in a distribution of fractional shares.  Each such Security shall be valued at fair market value in accordance with Paragraph 9.2 as of the date of distribution and shall be subject to reasonable conditions and restrictions necessary or advisable in order to preserve the value of the assets distributed, or for legal reasons.

(c)     The General Partner shall use its best judgment as to the most advantageous time for the Partnership to sell investments or to make distributions in kind provided that any such sales shall be made as promptly as is consistent with obtaining the fair value thereof.

(d)     The proceeds of dissolution shall be applied to payment of liabilities of the Partnership and distributed to the Partners in the following order:

(i)     to the creditors of the Partnership, other than Partners, in the order of priority established by law;

(ii)     to the Partners, in repayment of any loans made to the Partnership;

(iii)     to the Partners, in respect of the positive balances in their Partnership Capital Accounts.

(e)    With the written consent of Two-Thirds in Interest of the Limited Partners, the General Partner may extend the Partnership term beyond December 31, 2008 by up to two (2) successive one (1) year periods if, at the end of the year immediately preceding each such one (1) year period, more than ten percent (10%) of the value of the assets of the Partnership (valued pursuant to Paragraph 9.2 hereof) consists of Nonmarketable Securities. During the term of any such extension the General Partner shall distribute Marketable Securities and any cash that is in excess of the Partnership's reasonable working capital requirements to the Partners.

8.2    Closing Partnership Capital Account Balances; Final Allocations; Date of Termination.

(a)    The "Date of Termination" shall mean the date on which the term of the Partnership terminates pursuant to Paragraph 2.1 above.

(b)    The closing Partnership Capital Accounts of all the Partners shall be computed as of the Date of Termination as if the Date of Termination were the last day of an Interim Period, and then adjusted in the following manner:

(i)    All assets and liabilities (including contingent liabilities) of the Partnership shall be valued as of the Date of Termination pursuant to Paragraph 9.2 below.

(ii)    The resulting net amount of the unrecognized gain or loss on the Partnership's assets and liabilities as of the Date of Termination shall be deemed to have been recognized (pursuant to a deemed Sale or Exchange of the Partnership's assets and deemed payment of the Partnership's liabilities) and shall be allocated to the Partnership Capital Accounts of the Partners in accordance with the provisions of Article IV (and corresponding adjustments shall be made to the Book Values of such assets). In addition, allocations of Capital Transaction Gain and Loss and Net Income and Loss shall be adjusted (and corresponding adjustments made to the Partnership Capital Accounts of the Partners) to the extent necessary, if any, so that over the life of the Partnership aggregate allocations of items of Capital Transaction Gain and Loss and Net Income and Loss shall have been effected in the manner specified in Article IV.

(c)    All allocations to the Partners of Net Income or Loss or Capital Transaction Gain or Loss or items thereof for all periods after the Date of Termination shall be as provided in Article IV.

8.3    Lookback Liability of General Partner to Return Excess Distributions.

(a)    If after effecting the distributions provided for in this Article VIII the Excess Distribution Amount (as that term is defined below) is greater than zero, then the General Partner shall forthwith contribute to the capital of the Partnership cash equal to the lesser of (i) the Excess Distribution Amount, (ii) the After-Tax Distribution Amount or (iii) the amount, if any, by which the sum of the Partnership Capital Account balances of all of the Limited Partners is positive. The assets received pursuant to any such contribution shall be considered proceeds of dissolution and, accordingly, shall be distributed as provided in Paragraph 8.1(d).

For purposes of this Paragraph 8.3:

(1)    Total General Partner Net Gain or Loss shall be calculated as follows:

(A)    First, the Partnership's aggregate Capital Transaction Gain for all accounting periods shall be netted against the Partnership's aggregate Capital Transaction Loss for all accounting periods and the result shall be multiplied by twenty and eight tenths percent (20.8%). The resulting product shall be considered a positive number if such aggregate Capital Transaction Gain exceeded aggregate Capital Transaction Loss and a negative number if such aggregate Capital Transaction Loss exceeded aggregate Capital Transaction Gain;

(B)    Second, the Partnership's aggregate Net Income for all accounting periods shall be netted against the Partnership's aggregate Net Loss for all accounting periods and the result shall be multiplied by one percent (1%). The result shall be considered a positive number if such aggregate Net Income exceeded such aggregate Net Loss and a negative number if such aggregate Net Loss exceeded such aggregate Net Income;

(C)    Third, the amount computed in clause (B) shall be added to the amount computed in clause (A). If the result of such computation is a positive number it shall be considered Total General Partner Net Gain and if the result of such computation is a negative number it shall be considered Total General Partner Net Loss;

(2)    The "After Tax Distribution Amount" shall be equal to the General Partner Distributions (as defined below) less all federal, state and local tax liabilities (net of refunds) that the General Partner would have incurred by reason of (A) having been a general partner of the Partnership (including, without limitation, by reason of receiving an allocable share of the Partnership's taxable income and by reason of receiving cash distributions from the Partnership (but excluding any tax liability attributable to the receipt of management fees or any tax deduction attributable to the expenditure of such fees or any other amount)) and (B) having sold for cash all assets received from the Partnership if (A) at all relevant times the General Partner had been an individual subject to tax at the combined maximum marginal rate of federal income tax and California state income tax applicable to individuals residing in Palo Alto California (as such rate may change from time to time) and (B) the General Partner had immediately sold for cash in a fully taxable transaction all assets received from the Partnership as a General Partner Distribution.

(3)    The "Excess Distribution Amount" shall equal the lesser of (A) the amount by which the General Partner Distributions (as defined below) exceed the sum of the Total General Partner Net Gain or Loss plus the aggregate contributions made to the Partnership by the General Partner or (B) the amount of General Partner Distributions;

(4)    "General Partner Distributions" shall equal the sum of all distributions received by the General Partner pursuant to Articles VI and VIII;

(5)    All in-kind distributions shall be valued as provided in Paragraph 9.2 as of the date of the distribution;