(6)    Only distributions made to the General Partner in its capacity as general partner of the Partnership shall be considered for purposes of the foregoing computations (such distributions shall, however, in no way be construed so as to include amounts paid or otherwise received by the General Partner pursuant to Article V hereof);

(7)    In the event that the foregoing calculations are based on or refer to the excess of one number over another and no such excess exists, the amount to be used for purposes of such calculation shall be zero (0) (e.g., for purposes of the foregoing calculations the excess of twenty (20) over fifty (50) shall be deemed to be zero (0); and

(8)    In the event that the percentage interest of the General Partner (in its capacity as General Partner of the Partnership) in Capital Transaction Gain and Loss or Net Income and Loss changes, appropriate adjustments shall be made to the computation of Total General Partner Net Gain and Total General Partner Net Loss pursuant to clause (i) above.

Notwithstanding the foregoing, in no event will the General Partner be required to pay or contribute an amount to the Partnership pursuant to Paragraph 8.3 if such payment or contribution would not benefit the Limited Partners.

(b)    If the assets of the General Partner are insufficient to satisfy the contribution obligation of the General Partner required by subparagraph (a) hereof (hereinafter the "Lookback Liability"), the members and former members of the General Partner shall be obligated to contribute amounts to the General Partner to provide funds to satisfy such contribution obligation; provided, however, that no member or former member of the General Partner will in any event be obligated either to recontribute to the Partnership (on behalf of the General Partner or as a result of being a member of the General Partner) pursuant to this Paragraph 8.3 or contribute to the General Partner (to provide amounts to fund the General Partner's obligation pursuant to this Paragraph 8.3) an amount in excess of such member's or former member's pro rata share of the Lookback Liability. For purposes of the preceding sentence, a member's or former member's pro rata share of such obligation shall be determined based on the amount of distributions received by such member from the General Partner (other than any distribution of management fees received by the General Partner) and shall be calculated such that the sum of the pro rata shares of all members and former members of the General Partner equals the amount of the Lookback Liability. The General Partner shall keep such records as are necessary to determine each individual member's and former member's pro rata share of the Lookback Liability.

## ARTICLE IX

## FINANCIAL ACCOUNTING AND REPORTS

9.1    Financial and Tax Accounting and Reports. The General Partner shall cause the Partnership's tax return and IRS Form 1065, Schedule K-1, to be prepared and delivered in a timely manner to the Limited Partners (but in no event later than ninety (90) days after the close of each of the Partnership's Fiscal Years). The books and records of the Partnership and the General Partner shall be kept in accordance with the provisions of this

Agreement and otherwise in accordance with generally accepted accounting principles consistently applied. The Partnership's financial statements for each Fiscal Year shall be prepared in accordance with generally accepted accounting principles consistently applied and shall be audited at the end of each Fiscal Year by an independent certified public accountant of recognized national standing selected by the General Partner.

9.2    Valuation of Securities and Other Assets Owned by the Partnership.

(a)    The Partnership hereby adopts verbatim Section III of the SBA's Model Valuation Guidelines as published in the Federal Register on June 2, 1994 (the "Valuation Guidelines") attached hereto as Annex B; provided, however, that for the purposes of Paragraphs 9.4 and 9.5, the valuation of the Partnership's investments shall be based on the Valuation Guidelines as adjusted by the General Partner where appropriate, provided that no such adjustment shall be inconsistent with the Valuation Guidelines or the SBIC Act.

9.3    Supervision; Inspection of Books.    Proper and complete books of account of the affairs of the Partnership and the General Partner shall be kept under the supervision of the General Partner at the principal office of the Partnership. Such books shall be open to inspection by a Limited Partner, at any reasonable time, upon reasonable notice, during normal business hours.

9.4    Quarterly Reports.    Beginning with the Fiscal Quarter ending December 31, 1998, the General Partner shall transmit to each Limited Partner within forty-five (45) days after the close of each of the first three Fiscal Quarters of each Fiscal Year, financial statements of the Partnership prepared in accordance with generally accepted accounting principles from its books without audit and subject to year-end adjustments, a valuation of each of the Partnership's investments, a valuation of the Partnership interests of the Limited Partner (based upon the interest of the Limited Partner in the Partnership's assets), and a list of investments then held.

9.5    Annual Report; Financial Statements of the Partnership, Federal Income Tax Return. The General Partner shall transmit to each Limited Partner within ninety (90) days after the close of each of the Partnership's Fiscal Years, beginning with the Fiscal Year ending December 31, 1998, audited financial statements of the Partnership prepared in accordance with generally accepted accounting principles, including an income statement for the year then ended and balance sheet as of the end of such year, a statement of changes in Partners' Partnership Capital Accounts, and a list of investments then held. The financial statements shall be audited by an independent public accounting firm of recognized national standing. The financial statements shall be accompanied by (i) a report from the General Partner to the Limited Partners, which shall include a status report on investments then held, a valuation of each such investment, and a brief statement on the affairs of the Partnership during the Fiscal Year then ended and (ii) a copy of the Partnership's federal income tax return for Fiscal Year then ended.

9.6    Confidentiality.    The financial statements of the Partnership and other information provided to Limited Partners under this Article IX shall be used by Limited Partners in furtherance of their interests as Limited Partners and, subject to disclosures required by

applicable law, each Limited Partner hereby agrees to maintain the confidentiality of such financial statements and other information provided to such Partner hereunder.

      9.7   <u>Information Meetings</u>. An information meeting of the Partners shall be held at least once during each of the Partnership's Fiscal Years beginning with the Fiscal Year ending December 31, 1999, at such time and place as the General Partner may designate in a notice to the Limited Partners delivered at least thirty (30) days in advance of the scheduled date of such meeting. The purpose of such meetings shall be to discuss the Partnership's affairs and shall be purely informational in nature. No Limited Partner shall have any right to take part in or control any aspect of the management of the Partnership or its affairs.

      9.8   <u>Advisory Committee</u>.

      (a)   The Partnership shall have an advisory committee (the "Advisory Committee") comprised of representatives of no less than three and no more than five limited partners selected by the General Partner from time to time. The Advisory Committee shall be responsible for reviewing the General Partner's determination of the fair market value of the Partnership's assets and liabilities and for this purpose may request such information concerning the Partnership's assets and liabilities as is reasonable. The Advisory Committee shall also provide the Partnership and the General Partner with such counsel and advice as the General Partner shall reasonably request, including advice to the General Partner with respect to any potential conflicts of interest between the General Partner and the Partnership.

      (b)   The Advisory Committee shall conduct its affairs in such manner and by such procedures as the members unanimously deem appropriate. Special meetings of the Advisory Committee may be called at any time by the General Partner. All actions taken by the Advisory Committee shall be taken by a majority of the members. The Advisory Committee shall not be required to meet more than twice a year. Notices to Advisory Committee members shall be made pursuant to the procedures set forth in paragraph 10.5 hereto.

      (c)   Subject to the provisions hereof, the General Partner shall have the power at any time to determine, for all purposes of this Agreement, the fair market value of any assets and liabilities of the Partnership. For each such determination, a statement setting forth in writing in reasonable detail the fair market value of the Partnership's portfolio, with necessary explanations thereof, shall be sent to each member of the Advisory Committee, who shall have fifteen (15) business days after the transmittal of such notice to make known any objections to the valuation of specific assets and liabilities. Any such objection shall be made in writing and shall indicate briefly the reasons for such objection. If within fifteen (15) business days of the transmittal of such statement the Advisory Committee fails to notify the General Partner of any objection of such determination, such determination shall be final and conclusive. If within the fifteen (15) business day period the Advisory Committee members unanimously notify the General Partner of their specific objections to such determination, the General Partner shall either submit a new determination in place of the one disapproved or request a meeting with the Committee to discuss a mutually satisfactory valuation. If within fifteen (15) business days of the end of such first-mentioned fifteen (15) day period values satisfactory to the General Partner and the Advisory Committee shall not have been determined, the General Partner shall submit the dispute to arbitration in accordance with Paragraph 10.15 hereof.

(d)    The Advisory Committee shall take no part in the control or management of the Partnership's affairs, nor shall the Advisory Committee have any power or authority to act for or on behalf of the Partnership. No member of the Advisory Committee shall be liable to any Partner for any action taken or omitted to be taken in good faith by it in connection with his participation on the Advisory Committee.

(e)    The General Partner shall promptly notify the Advisory Committee in the event that the SBA takes any action with respect to its rights to remove and replace the General Partner in accordance with SBIC Regulation § 107.1810(i).

## ARTICLE X

## OTHER PROVISIONS

10.1    <u>Execution and Filing of Documents</u>.  Concurrently with the execution of this Agreement, the General Partner shall execute and file a Certificate of Limited Partnership conforming to the requirements of the Delaware Revised Uniform Limited Partnership Act in the office of the Secretary of State of the State of Delaware and shall execute a fictitious business name statement and file or cause such statement to be filed if required by Delaware law.

10.2    <u>Other Instruments and Acts</u>.  The Partners agree to execute any other instruments or perform any other acts that are or may be necessary to effectuate and carry on the partnership created by this Agreement.

10.3    <u>Binding Agreement</u>.  This Agreement shall be binding upon the transferees, successors, assigns, and legal representatives of the Partners.

10.4    <u>Governing Law</u>.  This Agreement shall be governed by and construed under the laws of the State of Delaware as applied to agreements among Delaware residents made and to be performed entirely within Delaware.

10.5    <u>Notices</u>.

(a)    <u>Procedure</u>.  Any notice or other communication that a Partner desires to give to another Partner shall be in writing, and shall be deemed effectively given upon personal delivery or upon deposit in any United States mail box, by registered or certified mail, postage prepaid, or upon transmission by telegram or telecopy, addressed to the other Partner at the address shown on the Schedule of Partners or at such other address as a Partner may designate by fifteen (15) days' advance written notice to the other Partners.

(b)    <u>Notices With Respect to Representations by Private Limited Partners; Best Efforts to Avoid Change In Status</u>. Each Private Limited Partner shall use its best efforts to ensure that the representations initially made by such Partner in Sections 4.8(a), (b), (c) and (d) of the SBA Annex (including any separate written representation initially provided by such Partner to the Partnership as provided in such Sections) (i) shall continue to be true and accurate and (ii) as of the date of any transfer in whole or in part of such Partner's interest in the Partnership, can be and are in fact made to the Partnership by any transferee of such interest. In

the event a Limited Partner breaches its obligations provided for in the foregoing sentence, the General Partner may declare such Private Limited Partner (and, in the case of a transfer of an interest, the transferee of such interest) to be in default within the meaning of Paragraph 3.5(b) of this Agreement whereupon such Partner (and such transferee, where applicable) will be treated as an Optionor for all purposes of this Agreement (including for purposes of such Paragraph 3.5) and, accordingly and without limitation, (i) such Partner (and such transferee) will have no right to vote on any matters presented to the Limited Partners for a vote and (ii) some or all of the other Limited Partners and the General Partner shall have the right and option to acquire the Partnership interest of such Limited Partner (and such transferee) as set forth in Paragraph 3.5.

    10.6    Power of Attorney. By signing this Agreement, the Limited Partners designate and appoint the General Partner its true and lawful attorney, in its name, place and stead to make, execute, sign, and file such instruments, documents, or certificates that may from time to time be required of the Partnership by the laws of the United States of America, the laws of the State of Delaware, or any other state in which the Partnership shall conduct its investment activities in order to qualify or otherwise enable the Partnership to conduct its affairs in such jurisdictions; provided, however, that in no event shall the General Partner be deemed to have the authority under this Paragraph 10.6 to take any action that would result in any Limited Partner losing the limitation on liability afforded by Paragraph 10.14 hereunder. Such attorney is not hereby granted any authority on behalf of the Limited Partner to. amend this Agreement except that as attorney for each Limited Partner, the General Partner shall have the authority to amend this Agreement and the Certificate of Limited Partnership as may be required to effect:

    (a)    Admissions of additional partners pursuant to Paragraphs 7.6 or 7.7 above;

    (b)    Causing the General Partner to bear the economic burden of the management or other fees and the disproportionate profit and loss allocations referred to in Paragraph 7.2(b); or

    (c)    Transfers of Limited Partnership interests pursuant to Paragraph 7.7 above.

    10.7    Amendment.

    (a)    Procedure. This Agreement may be amended only with the written consent of the General Partner and Two-Thirds in Interest of the Limited Partners, provided that the provisions of Article III, Article IV, Article VI, and Article VIII may not be amended so as to adversely affect any Limited Partner or Limited Partners in a manner different from all Limited Partners without the consent of Two-Thirds in Interest of the Limited Partners so affected. No term or condition contained in the exhibits to this Agreement or in any note or security agreement entered into pursuant to this Agreement may be waived, discharged, terminated, or modified without the consent of the General Partner and Two-Thirds in Interest of the Limited Partners. Notwithstanding the foregoing, to the extent required by the SBA for the Partnership to become a Licensee, this Agreement and the SBA Annex may be amended in the sole discretion of the General Partner; provided, however, that no such amendment shall affect the economic rights (including, without limitation, the amount or timing of distributions or allocations) of the

General Partner relative to those of the Limited Partners or the economic rights of any Limited Partner relative to those of any other Limited Partner.

(b)    Waiver. Notwithstanding the above, the Partnership's or General Partner's (or its partners' or employees') noncompliance with any provision hereof in any single transaction or event may be waived in writing by Two-Thirds in Interest of the Limited Partners. No waiver shall be deemed a waiver of any subsequent event of noncompliance.

10.8    Effective Date. The Limited Partnership Agreement shall be effective on the date that the Certificate of Limited Partnership of the Partnership is filed with the office of the Secretary of State of the State of Delaware.

10.9    Entire Agreement. This Agreement constitutes the entire agreement of the Partners and supersedes all prior agreements between the Partners with respect to the Partnership.

10.10    Titles; Subtitles. The titles and subtitles used in this Agreement are used for convenience only and shall not be considered in the interpretation of this Agreement.

10.11    Partnership Name. The Partnership shall have the exclusive ownership and right to use the Partnership name (and any name under which the Partnership shall elect to conduct its affairs) as long as the Partnership continues and thereafter the General Partner shall have such ownership and right. No value shall be placed upon the name or the goodwill attached to it for the purposes of determining the value of any Partner's Partnership Capital Account or interest in the Partnership.

10.12    Exculpation. The exculpation provisions applicable to persons dealing with the Partnership shall be as set forth in Article VIII of the SBA Annex; provided, however, that notwithstanding any provision of such Article VIII to the contrary, the provisions thereof shall not be construed so as to relieve (or attempt to relieve) any person of any liability by reason of recklessness, intentional wrongdoing or gross negligence (except that such exclusion for gross negligence shall not apply to liability arising out of or relating to the service of a member or agent of the General Partner as a director or officer (or the equivalent) of a company in which the Partnership has or had an investment) or to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed so as to effectuate the provisions of such Article VIII to the fullest extent permitted by law.

10.13    Indemnification.

(a)    Standard of Care.

(i)    Neither the General Partner, any Investment Advisor/Manager (as defined in the SBA Annex) nor any partner, member, shareholder, director, officer or employee nor any Affiliate of any thereof shall be liable to the Partnership or any Partner for any action taken or omitted to be taken by it or any other Partner or other person in good faith and in a manner they reasonably believed to be in or not opposed to the best interests of the Partnership, and, with respect to any criminal action or proceeding, had no reasonable cause to believe their conduct was unlawful.

(ii)     Neither any Private Limited Partner, nor any member of any Partnership committee or board who is not an Affiliate of the General Partner, shall be liable to the Partnership or any Partner as the result of any decision made in good faith by such Private Limited Partner or member, in his capacity as such.

(iii)     The General Partner and any Investment Advisor/Manager, the stockholders, directors, officers, employees, members and partners of either thereof, any Private Limited Partner and any member of a Partnership committee or board, may consult with reputable legal counsel selected by them and shall be fully protected, and shall incur no liability to the Partnership or any Partner, in acting or refraining to act in good faith in reliance upon the opinion or advice of such counsel.

(iv)     This Paragraph 10.13(a) shall not constitute a modification, limitation or waiver of Section 314(b) of the SBIC Act, or a waiver by the SBA of any of its rights pursuant to such § 314(b).

(b)     Indemnification.

(i)     The Partnership shall indemnify and hold harmless, but only to the extent of Assets Under Management (as defined in the SBA Annex), the General Partner, the members of the General Partner, any Investment Advisor/Manager and any partner, member, shareholder, director, officer, employee or any Affiliate of any thereof from any and all costs, expenses, damages, claims, liabilities, fines and judgments (including the reasonable cost of the defense of any claim or action and any sums which may be paid with the consent of the Partnership in settlement thereof) which may be incurred by or asserted against such person or entity, by reason of any action taken or omitted to be taken on behalf of the Partnership and in furtherance of its interests.

(ii)     The Partnership shall indemnify and hold harmless, but only to the extent of Assets Under Management, the Private Limited Partners, and members of any Partnership committee or board who are not Affiliates of the General Partner or any Investment Advisor/Manager from any and all costs, expenses, damages, claims, liabilities, fines and judgements (including the reasonable cost of the defense of any claim or action and any sums which may be paid with the consent of the Partnership in settlement thereof) which may be incurred by or asserted against such person or entity, by any third party on account of any matter or transaction of the Partnership, which matter or transaction occurred during the time that such person has been a Private Limited Partner or such member.

(iii)     The Partnership shall have power, in the discretion of the General Partner, to agree to indemnify on the same terms as set forth in Paragraph 10.13(b)(ii) any person who is or was serving, pursuant to a prior written request from the Partnership, as a consultant to, agent for or representative of the Partnership as a director, officer, employee, agent of or consultant to another corporation, partnership, limited liability company, joint venture, trust or other enterprise, against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such.

(iv)    No person shall be entitled to claim any indemnity or reimbursement under Paragraphs 10.13(b)(i), (ii), or (iii) in respect of any cost, expense, damage, liability, claim, fine, judgment (including any cost of the defense of any claim, action, suit, proceeding or investigation, by or before any court or administrative or legislative body or authority) that may be incurred by such person which results from the failure of such person to act in accordance with the provisions of this Agreement and the applicable standard of care set forth in Paragraph 10.13(a). The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, preclude a determination that such person acted in accordance with the applicable standard of care set forth in Paragraph 10.13(a).

(v)    To the extent that a person claiming indemnification under Paragraphs 10.13(b)(i), (ii), or (iii) has been successful on the merits in defense of any action, suit or proceeding referred to in Paragraphs 10.13(b)(i), (ii), or (iii) or in defense of any claim, issue or matter therein, such person shall be indemnified with respect to such matter as provided in such Section.    Except as provided in the foregoing sentence and as provided in Paragraph 10.13(b)(viii) with respect to advance payments, any indemnification under this Paragraph 10.13(b) shall be paid only upon determination that the person to be indemnified has met the applicable standard of conduct set forth in Paragraphs 10.13(a)(i) or (ii).

(vi)    A determination that a person to be indemnified under this Paragraph 10.13(b) has met the applicable standard set forth in Paragraphs 10.13(a)(i) or (ii) shall be made by (x) the General Partner, with respect to the indemnification of any person other than a person claiming indemnification under Paragraphs 10.13(a)(i), (y) a committee of the Partnership chosen by the Advisory Committee whose members are not affiliated with the General Partner or any Investment Advisor/Manager with respect to indemnification of any person indemnified under Paragraphs 10.13(a)(i) or (z) at the election of the General Partner, independent legal counsel selected by the General Partner, with respect to the indemnification of any person indemnified under Paragraphs 10.13(a), in a written opinion.

(vii)    In making any such determination with respect to indemnification under Paragraphs 10.13(b)(vi), the General Partner, a committee of the Partnership whose members are not affiliated with the General Partner or any Investment Advisor/Manager or independent legal counsel, as the case may be, shall be authorized to make such determination on the basis of its evaluation of the records of the General Partner, the Partnership or any Investment Advisor/Manager to the Partnership and of the statements of the party seeking indemnification with respect to the matter in question and shall not be required to perform any independent investigation in connection with any such determination. Any party making any such determination is authorized, however, in its sole discretion, to take such other actions (including engaging counsel) as it deems advisable in making such determination.

(viii)    Expenses incurred by any person in respect of any such costs, expenses, damages, claims, liabilities, fines, and judgments (including any cost of the defense of any claim, action, suit, proceeding or investigation, by or before any court or administrative or legislative body or authority) may be paid by the Partnership in advance of the final disposition of any such claim or action upon receipt of an undertaking by or on behalf of such person to repay such amount unless it shall ultimately be determined as provided in

Paragraphs 10.13(b)(v) and (vi) that such person is entitled to be indemnified by the Partnership as authorized in this Section.

(ix)    The rights provided by this Paragraph 10.13(b) shall inure to the benefit of the heirs, executors, administrators, successors, and assigns of each person eligible for indemnification hereunder.

(x)    The rights to indemnification provided in this Paragraph 10.13(b) shall be the exclusive rights of all Partners to indemnification by the Partnership. No Partner shall enter into, or make any claim under, any other agreement with the Partnership (whether direct or indirect) providing for indemnification. The General Partner shall not enter into any agreement with any person which is an employee, officer, director, partner or shareholder, or an Affiliate, Associate or Control Person of any of the foregoing, providing for indemnification of any such person unless such agreement provides for a determination with respect to such indemnification as provided under Paragraph 10.13(b)(vi)(y) or (z). The provisions of this Paragraph 10.13(b) shall not apply to indemnification of any person which is not at the expense (whether in whole or in part) of the Partnership.

(xi)    The Partnership may purchase and maintain insurance on its own behalf, or on behalf of any person or entity, with respect to liabilities of the types described in this Paragraph 10.13(b) . The Partnership may purchase such insurance regardless of whether such person is acting in a capacity described in this Paragraph 10.13(b) or whether the Partnership would have the power to indemnify such person against such liability under the provisions of this Paragraph 10.13(b).

10.14    Limitation of Liability of the Limited Partners. Except as required by law, no Limited Partner shall be bound by, nor be personally liable for, the expenses, liabilities, or obligations of the Partnership. Each Limited Partner shall be obligated and liable to the Partnership (i) to make capital contributions to the Partnership pursuant to Article III, (ii) for any obligation or liability of such Limited Partner to the Partnership or the General Partner or any Member thereof pursuant to Paragraph 12.7, and (iii) for damages and any other remedies available at law or in equity for a breach of this Agreement by such Limited Partner.

10.15    Arbitration. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, except any controversy or claim arising out of or relating to the SBA's rights under the SBA Annex, the SBIC Act, the SBIC Regulations or the terms of the Participating Securities (as defined in the SBA Annex), shall be settled by arbitration in Palo Alto, California, in accordance with the rules, then obtaining, of the American Arbitration Association. Judgment upon the award rendered may be entered in any court having jurisdiction thereof.

10.16    Passive Income; Prohibited Transaction.

(a)    So long as the Partnership has any ERISA Partner (as defined in Paragraph 10.18), the Partnership shall use its best efforts to conduct its affairs so that all of its gross income is from dividends, interest, and capital gains and losses from the disposition of property, and rents and royalties, but only such rents and royalties as are excluded, pursuant to

Section 512(b)(2) and (3) of the Code in calculating unrelated business taxable income to ensure that no tax-exempt Partner shall be deemed to have unrelated business taxable income. The General Partner shall use its best efforts to ensure that the Partnership shall not enter into any transaction, not otherwise exempt, that would constitute participation by the Partnership or any Limited Partner in a "prohibited transaction" as defined in Section 4975 of the Code.

(b)    Notwithstanding subparagraph (a) of this Paragraph 10.16, each Limited Partner hereby acknowledges that the Partnership will be issuing interests to Preferred Limited Partners and incurring other indebtedness as provided in this Agreement and, as a result, the Limited Partners may be allocated unrelated business taxable income by reason of Section 514 of the Code.

10.17  Tax Matters Partner.  The General Partner shall be the Partnership's Tax Matters Partner ("TMP").  The TMP shall have the right to resign by giving thirty (30) days' written notice to the Limited Partners. Upon the resignation, dissolution or bankruptcy of the TMP, a successor TMP shall be elected by Two-Thirds in Interest of the Limited Partners. The TMP shall employ experienced tax counsel to represent the Partnership in connection with any audit or investigation of the Partnership by the Internal Revenue Service ("IRS") and in connection with all subsequent administrative and judicial proceedings arising out of such audit. The fees and expenses of such, and all expenses incurred by the TMP in serving as the TMP, shall be Partnership expenses pursuant to Paragraph 5.2 and shall be paid by the Partnership. Notwithstanding the foregoing, it shall be the responsibility of the General Partner and of each Limited Partner, at their expense, to employ tax counsel to represent their respective separate interests. If the TMP is required by law or regulation to incur fees and expenses in connection with tax matters not affecting each of the Partners, then the TMP may, in its sole discretion, seek reimbursement from or charge such fees and expenses to the Partnership Capital Accounts of those Partners on whose behalf such fees and expenses were incurred. The TMP shall keep the Limited Partners informed of all administrative and judicial proceedings, as required by Section 6223(g) of the Code, and shall furnish a copy of each notice or other communication received by the TMP from the IRS to each Limited Partner, except such notices or communications as are sent directly to such Partner by the IRS. The relationship of the TMP to the Limited Partners is that of a fiduciary, and the TMP has a fiduciary obligation to perform its duties as TMP in such manner as will serve the best interests of the Partnership and all of the Partnership's partners.  To the fullest extent permitted by law, the Partnership agrees to indemnify the TMP its agents and save and hold them harmless, from and in respect to all (i) reasonable fees, costs and expenses in connection with or resulting from any claim, action, or demand against the TMP, the General Partner or the Partnership that arise out of or in any way relate to the TMP's status as TMP for the Partnership, and (ii) all such claims, actions, and demands and any losses or damages therefrom, including amounts paid in settlement or compromise of any such claim, action, or demand; provided that this indemnity shall not extend to conduct by the TMP adjudged (i) not to have been undertaken in good faith to promote the best interests of the Partnership or (ii) to have constituted recklessness or intentional wrongdoing by the TMP.

10.18  ERISA Matters.

(a)    The General Partner, on behalf of the Partnership, shall use reasonable best efforts to ensure that the Partnership qualifies as a "venture capital operating company" and that none of the assets of the Partnership shall be deemed to be "plan assets" (within the meaning of the DOL Regulation) of any Limited Partner that is (i) an "employee benefit plan" subject to Part 4 of Subtitle B of Title I of ERISA or (ii) an entity whose underlying assets are considered "plan assets" of an employee benefit plan (an "ERISA Partner"). As used in the remainder of this Paragraph 10.18, all terms in quotation marks have the meanings assigned to them in the DOL Regulation.

(b)    In the event that either (i) the General Partner shall determine that it has become necessary for any ERISA Partner to withdraw from the Partnership or (ii) any ERISA Partner shall determine that it is necessary for it to withdraw from the Partnership, in either case (i) because there is a material risk of a material violation of, or breach of the fiduciary duties of any person (other than a breach of the fiduciary duties of any such person based upon the investment strategy or performance of the Partnership) under ERISA or the related provisions of the Code if such ERISA Partner continues as a Limited Partner of the Partnership, or (ii) because there is a material likelihood that the assets of the Partnership are or may be deemed to be "plan assets" of such ERISA Partner within the meaning of the DOL Regulation; then the General Partner or such ERISA Partner, as the case may be, shall deliver to the other a notice to that effect, accompanied by an opinion of counsel (which may be counsel retained or employed by the General Partner or such ERISA Partner, as the case may be, so long as such counsel shall be reasonably acceptable to such ERISA Partner and the General Partner) to that effect, which opinion shall be reasonably acceptable to such ERISA Partner and the General Partner and shall explain in reasonable detail the reasons therefor. In the case of such notice from the ERISA Partner, unless within 90 days after the date on which such notice was given, the General Partner, using reasonably practicable efforts, is able to eliminate the necessity for such withdrawal to the reasonable satisfaction of such ERISA Partner and its counsel, whether by correction of the condition giving rise thereto or amendment of this Agreement or otherwise, such ERISA Partner shall be entitled, at its election, upon written notice to the General Partner, to withdraw from the Partnership on the terms set forth in Paragraph 10.18(c) below. In that event, the effective date of withdrawal of the ERISA Partner shall be the date following the expiration of the ninety (90) day period referred to in the preceding sentence, or such other date as agreed to by the ERISA Partner and the General Partner and its counsel. In the case of such notice from the General Partner, such ERISA Partner shall be required to withdraw from the Partnership pursuant to Paragraph 10.18(c) below unless, within 90 days after the date on which notice was given, the General Partner, using reasonably practicable efforts, or the ERISA Partner, using reasonably practicable efforts, as appropriate, shall eliminate the necessity for such withdrawal to the reasonable satisfaction of the General Partner and its counsel whether by correction of the condition giving rise thereto or an amendment to this Agreement or otherwise. In the event of a withdrawal pursuant to the preceding sentence, the effective date of withdrawal of the ERISA Partner shall be the date following the expiration of the ninety (90) day period referred to in the preceding sentence, or such other date as agreed to by the ERISA Partner and the General Partner and its counsel. The obligation of the ERISA Partner to make additional capital contributions pursuant to Paragraph 3.2 shall be suspended during the above-referenced

ninety (90) day period and shall be terminated if such ERISA Partner withdraws pursuant to Paragraph 10.18(c).

(c)    The withdrawing Limited Partner shall be entitled to receive within ninety (90) days after the effective date of such withdrawal an amount equal to the excess, if any, of the positive closing Partnership Capital Account balance the Limited Partner would have had (computed as provided in Paragraph 8.2(b)) if such effective date had constituted a Date of Termination (as defined in Paragraph 8.2(a)) over the aggregate amount of distributions (with such distributions valued at fair market value pursuant to Paragraph 9.2 as of the date of such distribution) made to such Limited Partner from and after such effective date. The General Partner shall provide the withdrawing Limited Partner with a written explanation of its determination of the Partnership Capital Account of such withdrawing Limited Partner as computed pursuant to the preceding sentence within sixty (60) days of the effective date of such withdrawal. The withdrawing Limited Partner shall thereafter have ten (10) business days from the date of receipt of such notice to make known any objections to such determination. Any such objection made shall indicate briefly the reasons for such objection. If within ten (10) business days of the date of receipt of such determination, the withdrawing Limited Partner fails to notify the General Partner of any objection to such determination, such determination shall be final and conclusive. If within the ten (10) day period the withdrawing Limited Partner notifies the General Partner of its objection to such determination, the General Partner and the withdrawing Limited Partner shall attempt to agree upon a mutually acceptable determination. If within ten (10) days of the first-mentioned ten (10) day period a determination satisfactory to the General Partner and the withdrawing Limited Partner shall not have been agreed to, the General Partner shall submit the dispute between the General Partner and the withdrawing Limited Partner to arbitration in accordance with Paragraph 9.7(e). The fees and expenses of any arbitrators retained in accordance with the provisions hereof shall be borne equally by the Partnership and the withdrawing Limited Partner.

Any distribution or payment to a withdrawing Limited Partner pursuant to this subparagraph (c) may, in the sole discretion of the General Partner, be made in cash, in Securities (in which event the withdrawing Limited Partner shall not, without its express written consent, be distributed more than its pro rata interest in any type, class or portion of the Partnership's Securities), in the form of a promissory note, the terms of which shall be mutually agreed upon by the General Partner and the withdrawing Limited Partner, or any combination thereof. Notwithstanding anything in the foregoing sentence, if the distribution of any Security to the withdrawing Limited Partner would result in a violation of a law or regulation applicable to the Limited Partner or a tax penalty to the Limited Partner and the Limited Partner delivers a notice to such effect to the General Partner, such Limited Partner may designate a different entity to receive the distribution or designate, subject to the approval of the General Partner, an alternative distribution procedure. In the event that an ERISA Partner shall provide an opinion reasonably acceptable to the General Partner by counsel reasonably acceptable to the General Partner (which counsel may be employed by the ERISA Partner so long as such counsel is reasonably acceptable to the General Partner) that there is a material likelihood that the acceptance or retention of a promissory note by such ERISA Partner pursuant to this Paragraph 10.18 would result in a violation of ERISA or the related provision of the Code, then the General Partner shall use its reasonable best efforts to use an alternative means of making such payment or distribution.

(d)     In the event that either (i) the General Partner shall determine that it has become necessary for any ERISA Partner to discontinue making additional capital contributions pursuant to Paragraph 3.2 or (ii) any ERISA Partner shall determine that it is necessary for it to discontinue making such additional capital contributions, in either case (i) because there is a material risk of violation of, or breach of the fiduciary duties of any person (other than a breach of the fiduciary duties of any such person based upon the investment strategy or performance of the Partnership) under ERISA or the related provisions of the Code if the ERISA Partner were to make additional capital contributions to the Partnership, or (ii) because there is a material risk that the assets of the Partnership are or will be deemed to be "plan assets" of such ERISA Partner within the meaning of the DOL Regulation; then the General Partner or such ERISA Partner, as the case may be, shall deliver to the other a notice to that effect, accompanied by an opinion of counsel (which may be counsel retained or employed by the General Partner or such ERISA Partner, as the case may be, so long as such counsel shall be reasonably acceptable to such ERISA Partner and General Partner) to that effect, which opinion shall be reasonably acceptable to such ERISA Partner and the General Partner and shall explain in reasonable detail the reason therefor. In the case of such notice from the ERISA Partner, unless within ninety (90) days after the date on which such notice was given, the General Partner, using reasonably practicable efforts, is able to eliminate the necessity for such discontinuance to the reasonable satisfaction of such ERISA Partner and its counsel, whether by correction of the condition giving rise thereto or amendment of this Agreement or otherwise, such ERISA Partner shall be entitled to, at its election, upon written notice to the General Partner, be released from its obligation to make additional capital contributions pursuant to Paragraph 3.2. In the case of such notice from the General Partner, such ERISA Partner shall be required to discontinue making additional capital contributions pursuant to Paragraph 3.2 unless, within ninety (90) days after the date on which the notice was given, the General Partner, using reasonably practicable efforts, or the ERISA Partner, using reasonably practicable efforts, as appropriate, shall eliminate the necessity for such discontinuance of its obligation to make additional capital contributions to the reasonable satisfaction of the General Partner and its counsel, whether by correction of the condition giving rise thereto or an amendment to this Agreement or otherwise. The obligation of the ERISA Partner to make additional capital contributions pursuant to Paragraph 3.2 shall be suspended during the above referenced ninety (90) day period. An ERISA Partner who has been released of its obligation to make additional contributions shall not be treated as in default of its obligation to make such contributions, in which case such ERISA Partner's capital contribution obligation set forth in Paragraph 3.2 shall be reduced to the amount of capital actually contributed by such ERISA Partner to the Partnership.

(e)     In lieu of the procedures for redemption of an interest set forth in this Paragraph 10.18, the General Partner may cause some or all of the interest of the withdrawing Limited Partner to be sold to any other persons or entities in accordance with the procedures set forth in Paragraph 3.5, and the proceeds thereof to be remitted to the withdrawing Limited Partner; provided, however, that (i) the price at which such interest or any portion thereof may be sold shall be based on the amount due to the withdrawing Limited Partner as set forth in Paragraph 10.18(c), and (ii) the entire interest of the withdrawing Limited Partner must be sold and/or redeemed prior to ninety (90) days from the effective date of the withdrawal as provided in this Paragraph 10.18.

(f)    If the General Partner shall so elect, the General Partner and the Partnership shall no longer be required to comply with Paragraph 10.18(a) at any time after the General Partner determines (i) that the equity participation in the Partnership by "benefit plan investors" is not "significant" as such terms are defined in the DOL Regulation, and (ii) not to admit additional Limited Partners pursuant to Paragraph 7.6(b) or permit a transfer of interest in the Partnership or an interest in the Partnership's capital assets or property pursuant to Paragraph 7.7 if such admission or transfer would result in the equity participation in the Partnership by "benefit plan investors" being "significant". If the General Partner so elects to discontinue compliance of its obligations under Paragraph 10.18(a), then thereafter, notwithstanding any other provision of the Agreement, no transfer of Limited Partner interests to, or admission of, a "benefit plan investor" shall be permitted if the General Partner shall determine that such transfer or admission shall cause the equity participation of "benefit plan investors" to be "significant".

### 10.19  Avoidance of Trade or Business Status; Service-Related Income.

(a)    Except to the extent inconsistent with its obligations under this Agreement, (i) the General Partner will use its best efforts to conduct the affairs of the Partnership so as to avoid having the Partnership treated as engaged in a trade or business within the United States for purposes of Sections 875, 882, 884 and 1446 of the Code and (ii) shall cause the Partnership to be operated as follows:

(1)    the Partnership shall conduct its affairs in a manner that limits the Partnership's operations to investments and other related activities which, taken together, would not cause the Partnership to be treated for United States federal income tax purposes as engaged in a "trade or business within the United States," within the meaning of Section 864(b) of the Code, during any taxable year of the Partnership;

(2)    the Partnership shall not acquire either any direct interest in United States real estate or any other interest, including an interest in a corporation, which would be treated as a "United States real property interest" within the meaning of Section 897(c) of the Code at the time of its acquisition by the Partnership; provided, however, that in determining whether an interest in an entity would be treated at the time of acquisition as such a United States real property interest, the General Partner may reasonably rely (without any independent investigation or review) solely on representations provided to the General Partner by such entity and; provided, further, that in no event shall the foregoing be interpreted as preventing or limiting in any respect the Partnership from investing in Securities of companies operating primarily in the cable, communications, media, entertainment and related industries;

(3)    the Partnership shall not acquire an interest in any partnership, trust or other non-corporate entity, unless (A) the General Partner determines, after consultation with counsel to the Partnership, that such proposed acquisition will not cause the Partnership to be treated as engaged in a trade or business within the United States for United States tax purposes, and (B) such entity agrees to be bound contractually by restrictions substantially similar to those set forth in this Paragraph 10.19;

(4)    the Partnership shall not acquire and dispose of securities or other assets on a regular and frequent basis with a view to realizing short-term gains

from market fluctuations; provided, however, that the Partnership (A) may make temporary investments of its funds not yet invested in securities of Portfolio Companies or used to pay Partnership expenses, and (B) shall attempt to minimize the frequency of such investment transactions and otherwise to conduct such temporary investment activity in a prudent and conservative manner consistent with the Partnership's objectives as set forth in Paragraph 1.2.

        (5)    the Partnership shall not invest in or enter into contracts for the purchase or sale of commodities;

        (6)    the Partnership shall not invest in options or futures, including currency futures, except that the Partnership may invest in options or other contracts for the acquisition of securities of a portfolio company (including a company that would become a portfolio company upon the exercise of such options or other contracts) provided that such investment is permitted under applicable SBIC Regulations;

        (7)    the Partnership shall not make any investment with borrowed funds; provided however, that the limitation set forth in this Section shall not preclude the Partnership from borrowing from the SBA or others as expressly authorized in this Agreement and thereafter investing such borrowed funds or guaranteeing the obligations of a portfolio company to the extent expressly authorized in this Agreement; and

        (8)    the Partnership shall not engage in or hold itself out as engaging in the performance of services for compensation, or otherwise carry on directly a trade or business. Accordingly, the amount, if any, of any compensation for services paid to the General Partner or partners of the General Partner from any company or entity in which the Partnership may have an interest shall not be included in Partnership income or otherwise be payable to the Partnership. In no event shall the General Partner be liable for monetary damages resulting from or arising out of its breach of this Paragraph 10.19. In no event shall this Paragraph 10.19 or any other provision of this Agreement be interpreted as preventing (or limiting in any respect) the General Partner or the members of the General Partner from taking an active role in or receiving compensation for founding or serving on the boards of directors of companies.

        (b)    The restrictions set forth in the preceding subparagraph (a) are intended to ensure that the activities of the Partnership will be conducted so as to avoid United States federal income taxation on the income of the Partnership allocated to any non-United States Limited Partner (other than withholding tax on dividends and certain interest payments, original issue discount payments and similar types of payments received from United States sources). To this end, in addition to complying with the specific restrictions set forth in Section (a) above, the Partnership shall use its best efforts, to the extent practicable and consistent with its investment program (including without limitation its plans to issue Preferred Limited Partnership Interests as set forth in the SBA Annex):

        (1)    not to engage in any activity that would subject the income of the Partnership allocated to any non-United States Limited Partner to United States federal income taxation (other than withholding tax on dividends and certain interest payments received from United States sources); and

(2)    in the event that the Code or the regulations promulgated thereunder are from time to time amended so as to require additional or different restrictions on Partnership activities and investments in order to avoid such taxation, to observe such additional or different restrictions.

Notwithstanding the foregoing, in the event that legislative, judicial or regulatory changes occurring after the date hereof may cause Partners that are not United States Persons to become subject to United States federal, state or local income tax on their respective shares of capital gains realized by the Partnership that are not effectively connected with a trade or business within the United States, within the meaning of Section 864 of the Code, carried on by the Partnership, whether such income taxes are collection by withholding or otherwise, the preceding sentence shall not apply with respect to any such taxes.

(c)    In making temporary investments of idle Partnership funds, the General Partner shall use its best efforts to make such investments so as to minimize withholding of United States income tax at the source with respect to the shares of Partnership income and gains allocable to Partners that are not United States Persons. In this connection, the General Partner shall not invest in regulated investment companies that elect to be subject to Part I of Subchapter M of the Code.

10.20    <u>Taxation as Partnership</u>. The General Partner and each Limited Partner (in their respective capacities as such) agree that such partners shall not undertake any action, including (without limitation) making regular bid or offer quotes to buy or sell interests or derivative interests in the Partnership, that will cause the Partnership to be, or create a substantial risk that the Partnership will be, (i) classified as other than a partnership for federal income tax purpose, or (ii) treated as a "publicly treated partnership" within the meaning of Section 469 or 7704 of the Code. The General Partner (in its capacity as such) further agrees that, at the expense of the Partnership, it shall use commercially reasonable efforts to avoid taking, and to bar the undertaking of, any activity of which it has knowledge, including (without limitation) the public quotation of regular offers to buy or sell interests or derivative interests in the Partnership or causing the Partnership to recognize transfers effected pursuant to a transaction effected on an "established securities market" (within the meaning of Treasury Regulation Section 1.7704-1(b)) or a "secondary market or the equivalent thereof" (within the meaning of Treasury Regulation Section 1.7704-1(c)), that will cause the Partnership to be, or create a substantial risk that the Partnership will be, (i) classified as other than a partnership for federal income tax purposes, or (ii) treated as a "publicly traded partnership" within the meaning of Sections 469 or 7704 of the Code.

10.21    <u>Board Activity</u>. In no event shall any provision of this Agreement be interpreted as preventing (or limiting in any respect) the General Partner or the members of the General Partner from taking an active role in or receiving compensation for founding or serving on the boards of directors of companies.

10.22    <u>Counsel to the Partnership</u>. Counsel to the Partnership may also be counsel to the General Partner. The General Partner may execute on behalf of the Partnership and the Partners any consent to the representation of the Partnership that counsel may request pursuant to the California Rules of Professional Conduct or similar rules in any other jurisdiction

("Rules").   The Partnership has initially selected Gunderson Dettmer Stough Villeneuve Franklin & Hachigian, LLP ("Partnership Counsel") as legal counsel to the Partnership.  Each Limited Partner acknowledges that Partnership Counsel does not represent any Limited Partner in its capacity as a Limited Partner in the absence of a clear and explicit written agreement to such effect between the Limited Partner and Partnership Counsel (and then only to the extent specifically set forth in such written agreement), and that in the absence of any such written agreement Partnership Counsel shall owe no duties directly to a Partner.  Each Limited Partner further acknowledges that, whether or not Partnership Counsel has in the past represented or is currently representing such Limited Partner with respect to other matters, Partnership Counsel has not represented the interests of any Limited Partner in the preparation and negotiation of this Agreement.

## ARTICLE XI

### MISCELLANEOUS DEFINITIONS

11.1    <u>Affiliate</u>:  With reference to a member or employee of the General Partner, any corporation, association, partnership, or other entity of which such person has direct or indirect control or is, directly or indirectly, a general partner, member, officer, or director, and any other person controlling, controlled by, or under direct or indirect common control with such person.  With reference to a Limited Partner, any person controlling, controlled by, or under direct or indirect common control with such person.

11.2    <u>Agreement</u>:  This Limited Partnership Agreement of Aspen Ventures III, L.P., a Delaware limited partnership.

11.3    <u>Assets Under Management</u>.  As of any specified date, the value (as determined under Paragraph 9.2) of all assets owned by the Partnership, including capital contributions requested and due from the Partners and uncalled capital amounts of the Partner's Capital Commitments <u>less</u> the amount of any liabilities of the Partnership determined in accordance with generally accepted accounting principles.

11.4    <u>Bankruptcy</u>:  A person or entity shall be deemed bankrupt if:

(a)    any proceeding is commenced against such person or entity as "debtor" for any relief under bankruptcy or insolvency laws, or laws relating to the relief of debtors, reorganizations, arrangements, compositions, or extensions and such proceeding is not dismissed within ninety (90) days after such proceeding has commenced, or

(b)    such person or entity commences any proceeding for relief under bankruptcy or insolvency laws or laws relating to the relief of debtors, reorganizations, arrangements, compositions, or extensions.

11.5    <u>Certificate of Limited Partnership</u>:  The Certificate of Limited Partnership of Aspen Ventures III, L.P., a Delaware limited partnership.

11.6    Code: The Internal Revenue Code of 1986, as amended from time to time (and any corresponding provisions of succeeding law).

11.7    Date of Distribution:    The date on which all conditions precedent to making the distribution have been satisfied.

11.8    Holding Company Act:    The Bank Holding Company Act of 1956, as amended.

11.9    Limited Partners: Each of the persons the names of which are set forth, as of the date hereof, under the heading "Limited Partners" on the Schedule of Partners attached hereto and each other person duly admitted to the Partnership as a limited partner subsequent to the date hereof. A Preferred Limited Partner shall not be considered a Limited Partner.

11.10    Majority in Interest of the Limited Partners: Limited Partners having Partnership Percentages the sum of which exceeds fifty percent (50%) of the aggregate Partnership Percentages of the Partners (excluding, for the purpose of calculating such requisite percentage, the Partnership Percentage of the General Partner, to the extent attributable to its general partnership interest, and the Partnership Percentage of any Optionor (as defined in Paragraph 3.5)).

11.11    Marketable; Marketable Securities; Marketability: These terms shall refer to Securities that are (a) registered under the Securities Act, (b) traded on a national securities exchange or over-the-counter, (c) currently the subject of an issuer-filed Securities Act registration statement, (d) direct obligations of, or obligations guaranteed as to principal and interest by, the United States, certificates of deposit maturing within one year or less issued by an institution insured by the Federal Deposit Insurance Corporation, or similar Securities, or (e) transferable pursuant to SEC Rules 144 or 145.

11.12    Money-Market Investments: Commercial paper, certificates of deposit, treasury bills, and other money-market investments with maturities of less than twelve (12) months; provided, however, that for any and all periods during which the Partnership is a Licensee, Money-Market Investments shall mean "permitted investments" as defined in SBIC Regulation § 107.530.

11.13    Net Operating Income: The amount of Net Operating Income allocated to the Partnership Capital Account of a Partner for any period shall equal the excess (if any) of the amount of items of book income or gain over the amount of items of book loss or deduction allocated to such Partner's Partnership Capital Account for such period pursuant to Paragraphs 4.4, 4.7 or 4.8 (and Paragraph 4.6, to the extent items allocated pursuant thereto were initially allocated to the Partnership Capital Accounts of the Limited Partners as a group or to all Partners as a group pursuant to Paragraphs 4.4, 4.7 or 4.8).

11.14    Nonmarketable Securities:    All Securities other than Marketable Securities.

11.15    Original Managing Members of the General Partner:    Alexander P. Cilento, E. David Crockett and Thaddeus J. Whalen.

11.16 <u>Original Limited Partners</u>: Each of the persons the names of which are set forth, as of the commencement of the term of the Partnership, under the heading "Limited Partners" on the Schedule of Partners attached hereto, and any transferee of all or any portion of such Limited Partner's interest in the Partnership.

11.17 <u>Preferred Limited Partner</u>:  Preferred Limited Partner shall have the meaning set forth in the SBA Annex.

11.18 <u>Preferred Limited Partnership Interest</u>:  Preferred Limited Partnership Interest shall have the meaning set forth in the SBA Annex.

11.19 <u>Private Limited Partner</u>:  Private Limited Partner shall have the meaning set forth in the SBA Annex.

11.20 <u>Securities</u>:  Securities of every kind and nature and rights and options with respect thereto, including stock, notes, bonds, debentures, evidences of indebtedness, and other business interests of every type, including interests in partnerships, joint ventures, proprietorships, and other business entities.

11.21 <u>Securities Act</u>:  The Securities Act of 1933, as amended.

11.22 <u>Treasury Regulations</u>:  Treasury Regulations shall be the Income Tax Regulations promulgated under the Code, as such Regulations may be amended from time to time (including corresponding provisions of succeeding Regulations).

11.23 <u>Two-Thirds in Interest of the Limited Partners</u>:  Limited Partners having Partnership Percentages the sum of which equals at least sixty-six and two-thirds percent (66-2/3%) of the aggregate Partnership Percentages of the Partners (excluding, for the purpose of calculating such requisite percentage, the Partnership Percentage of the General Partner, to the extent attributable to its General Partnership Interest, and the Partnership Percentage of any Optionor (as defined in Paragraph 3.5).

11.24 <u>United States Person</u>:  The meaning set forth in Section 7701(a)(30) of the Code.

## ARTICLE XII

## MISCELLANEOUS TAX COMPLIANCE PROVISIONS

12.1 <u>Substantial Economic Effect</u>.  The provisions of Article IV and the other provisions of this Agreement relating to the maintenance of Partnership Capital Accounts and procedures upon liquidation of the Partnership are intended to comply generally with the provisions of Treasury Regulation Section 1.704-1, and shall be interpreted and applied in a manner consistent with such Regulation and, to the extent the subject matter thereof is otherwise not addressed by this Agreement, the provisions of Treasury Regulations Section 1.704-1 are hereby incorporated by reference unless the General Partner shall determine that such incorporation will result in economic consequences inconsistent with the economic arrangement

of the partners expressed in this Agreement. In the event the General Partner shall determine that it is prudent to modify the manner in which the Partnership Capital Accounts, or any debits or credits thereto, are computed or allocated or the manner in which distributions and contributions upon liquidation (or otherwise) of the Partnership (or any partner's interest therein) are effected in order to comply with such Regulations and other applicable tax laws, or to assure that the Partnership is treated as a partnership for tax purposes, or to achieve the economic arrangement of the partners as expressed in this Agreement, then notwithstanding Paragraph 10.7 hereof, the General Partner may make such modification, provided that it is not likely to have more than an insignificant detrimental effect on the tax consequences and total amounts distributable to any Limited Partner pursuant to Articles VI and VIII as applied without giving effect to such modification. The General Partner shall also (i) make any adjustments that are necessary or appropriate to maintain equality between the Partnership Capital Accounts of the partners and the amount of Partnership capital reflected on the Partnership's balance sheet, as computed for book purposes pursuant to this Agreement, in accordance with Regulations Section 1.704-1(b)(2)(iv)(g), and (ii) make any appropriate modifications in the event unanticipated events (such as the incurrence of partner nonrecourse debt within the meaning of Treasury Regulation Section 1.704-2(b)(4)) might otherwise cause the allocations under this Agreement to not comply with Treasury Regulations Section 1.704-1(b) (and in the case of the incurrence of partner nonrecourse indebtedness, Treasury Regulation Section 1.704-2) provided in each case that the General Partner determines that such adjustments or modifications shall not result in economic consequences inconsistent with the economic arrangement among the partners as expressed in this Agreement.

   12.2 <u>Other Allocations</u>. Notwithstanding the provisions of Article IV and Paragraph 8.2(d), the allocations provided therein shall be subject to the following exceptions:

     (a) <u>Qualified Income Offset; Prophylactic Offset Minimum-Gain Chargeback</u>. The following special allocations shall be made in the following order:

      (i) Except as otherwise provided in Treasury Regulation Section 1.704-2(f), if there is a net decrease in Partnership Minimum Gain (as defined in Treasury Regulations 1.704-2(b)(2) and 1.704-2(d)) during any Partnership fiscal year, each partner shall be specially allocated items of Partnership income and gain for such year (and, if necessary, subsequent years) in an amount equal to such Partner's share of the net decrease in Partnership Minimum Gain, determined in accordance with Treasury Regulations Section 1.704-2(g). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each partner pursuant thereto. The items to be so allocated shall be determined in accordance with Treasury Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2). This paragraph 6.3(a) is intended to comply with the minimum gain chargeback requirement in Treasury Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

      (ii) In the event any partner's Partnership Capital Account has an Unadjusted Excess Negative Balance (as defined in clause (viii) of this subparagraph (a)) at the end of any Fiscal Year such partner will be reallocated items of Net Income and Capital Transaction Gain for such Fiscal Year (and, if necessary, future Fiscal Years) in the amount necessary to eliminate such Unadjusted Excess Negative Balance as quickly as possible.

(iii)    In the event any partner unexpectedly receives any adjustments, allocations or distributions described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4) through (d)(6), items of Net Income and Capital Transaction Gain shall be specially allocated to such partner's Partnership Capital Account in an amount and manner sufficient to eliminate, to the extent required by Treasury Regulations Section 1.704-1(b)(2)(ii)(d), the Excess Negative Balance (as defined in clause (vii) of this subparagraph (a)) in such partner's Partnership Capital Account created by such adjustments, allocations or distributions as quickly as possible. This clause (iii) is intended to and shall in all events be interpreted so as to constitute a "qualified income offset" within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(d).

(iv)    A partner's Partnership Capital Account shall not be allocated any item of Net Loss or Capital Transaction Loss to the extent such allocation would cause such Partnership Capital Account to have an Excess Negative Balance (as defined in clause (vii) of this subparagraph (a)).

(v)    For any period (i) Nonrecourse Deductions (as defined in Treasury Regulations Section 1.704-2(b)(1)) that are treated as an item of Net Income or Loss shall be allocated to the partners as a component of such Net Income or Loss (and accordingly shall be allocated to the partners in the same proportion as such Net Income or Loss is allocated) and (ii) Nonrecourse Deductions (as defined in Treasury Regulations Section 1.704-2(b)(1)) that are treated as an item of Capital Transaction Gain or Loss shall be allocated to the partners as a component of such Capital Transaction Gain or Loss (and accordingly shall be allocated to the partners in the same proportion as such Capital Transaction Gain or Loss is allocated).

(vi)    Notwithstanding any provision of this Agreement to the contrary other than the foregoing provisions of this subparagraph (a), any allocations pursuant to this subparagraph (a) shall be taken into account as soon as possible in computing subsequent allocations, so that over the term of the Partnership the net amount of any items so allocated and the profit, gain, loss, income and expense and all other items allocated to each partner shall, to the extent possible, be equal to the net amount that would have been allocated to each such partner if such original allocations pursuant to this subparagraph (a) had not occurred. The General Partner shall have the discretion to effect allocations pursuant to this clause (vi) in such manner as the General Partner may deem appropriate to achieve the objective specified in the preceding sentence. In exercising its discretion under this clause (vi), the General Partner shall take into account future allocations under the foregoing provisions of this subparagraph (a) that, although not yet made, are likely to offset other allocations previously made thereunder.

(vii)    For purposes of this subparagraph (a), "Excess Negative Balance" shall mean the excess of the negative balance in a partner's Partnership Capital Account (computed with any adjustments which are required for purposes of Treasury Regulations Section 1.704-1(b)(2)(ii)(d)) over the amount such partner is obligated to restore to the Partnership (computed under the principles of Treasury Regulations Section 1.704-1(b)(2)(ii)(c)) inclusive of any addition to such restoration obligation pursuant to application of the provisions of Treasury Regulations Section 1.704-2 or any successor provisions thereto.

(viii)  For purposes of this subparagraph (a) "Unadjusted Excess Negative Balance" shall have the same meaning as Excess Negative Balance, except that the Unadjusted Excess Negative Balance of a partner shall be computed without effecting the reductions to such partner's Partnership Capital Account which are described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d).

(b)    Imputed Income.  To the extent the Partnership has taxable interest income or expense imputed with respect to any promissory note or other obligation between any partner and the Partnership, as maker and holder respectively, pursuant to Section 483, Sections 1271 through 1288, or Section 7872 of the Code, such imputed interest income shall be specially allocated to the partner to whom such promissory note or other obligation relates, and such partner's Partnership Capital Account shall be adjusted as appropriate to reflect the recharacterization as interest of a portion of the principal amount of such promissory note or other obligation and to reflect any deemed contribution or distribution of such interest income. The foregoing provision of this Paragraph 12.2(b) shall not apply to any interest or original issue discount expressly provided for in any such promissory note or other obligation.

12.3    Income Tax Allocations.

(a)    Except as otherwise provided in this Paragraph or as otherwise required by the Code and the rules and Treasury Regulations promulgated thereunder, Partnership income, gain, loss, deduction, or credit for income tax purposes shall be allocated in the same manner as the corresponding book items are allocated pursuant to this Agreement (including the SBA Annex).

(b)    In accordance with Code Section 704(c) and the Treasury Regulations thereunder, income, gain, loss and deduction with respect to any asset contributed to the capital of the Partnership shall, solely for tax purposes, be allocated between the partners so as to take account of any variation between the adjusted basis of such property to the Partnership for federal income tax purposes and its initial Book Value.

(c)    In the event the Book Value of any Partnership asset is adjusted pursuant to the terms of this Agreement, subsequent allocations of income, gain, loss and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as under Code Section 704(c) and the Treasury Regulations thereunder.

(d)    If a distribution to a Partner results in taxable income or gain to the Partnership, then such taxable income or gain shall be allocated, to the extent permitted pursuant to Section 704(b) of the Code and the regulations promulgated thereunder, to the Partner who received the distribution.

12.4    Compliance with Timing Requirements of Regulations.

(a)    Notwithstanding any other provision of this Agreement, in the event the Partnership is "liquidated" within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g), (i) distributions shall be made pursuant to Article VIII to the partners who have positive Partnership Capital Accounts in compliance with Treasury

Regulations Section 1.704-1(b)(2)(ii)(b)(2) and (ii) if the General Partner's Partnership Capital Account has a deficit balance (after giving effect to all contributions, distributions and allocations for all taxable years, including the year during which such liquidation occurs), the General Partner shall contribute to the capital of the Partnership the amount required pursuant to Paragraph 8.3 hereof. Except as set forth in the immediately preceding sentence, the General Partner shall have no obligation at any time to repay or restore to the Partnership all or any part of any distribution made to it from the Partnership in accordance with the terms of Articles VI or VIII or make any contribution to the capital of the Partnership with respect to such deficit and such deficit shall not be considered a debt owed to the Partnership or to any other Person for any purpose whatsoever. If any Limited Partner has a deficit balance in his Partnership Capital Account (after giving effect to all contributions, distributions and allocations for all taxable years, including the year during which such liquidation occurs), then other than required by law or Paragraph 10.14, such Limited Partner shall have no obligation to repay or restore to the Partnership any distribution made to it from the Partnership in accordance with Article VI or VIII or make any contribution to the capital of the Partnership with respect to such deficit, and such deficit shall not be considered a debt owed to the Partnership or to any other Person for any purpose whatsoever. In the discretion of the General Partner, a pro rata portion of the distributions that would otherwise be made to the partners pursuant to this Paragraph 12.4 or Article VIII may be:

(i)    distributed to a trust established for the benefit of the partners for the purposes of liquidating Partnership assets, collecting amounts owed to the Partnership, and paying any contingent or unforeseen liabilities or obligations of the Partnership arising out of or in connection with the Partnership. The assets of any such trust shall be distributed to the partners from time to time, in the reasonable discretion of the General Partner, in the same proportions as the amount distributed to such trust by the Partnership would otherwise have been distributed to the partners pursuant to this Agreement; or

(ii)    withheld to provide a reasonable reserve for Partnership liabilities (contingent or otherwise) and to reflect the unrealized portion of any installment obligations owed to the Partnership, provided that such withheld amounts shall be distributed to the partners as soon as practicable.

(b)    Notwithstanding the provisions of Paragraph 12.4(a), in the event the Partnership is liquidated within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g) but a distribution of the Partnership's assets is not otherwise required pursuant to Article VIII hereof, the Partnership's assets shall not be distributed to the partners as set forth in Paragraph 12.4(a) and the General Partner shall not contribute any amount to the Partnership with respect to any deficit balance in its Partnership Capital Account as set forth in Paragraph 12.4. Instead, the Partnership shall be deemed to have contributed all of its assets and liabilities to a new partnership and distributed interests in the new partnership to the Partners and thereafter such new partnership will be treated as the Partnership. Notwithstanding any provision of this Agreement to the contrary, in no event shall such deemed contribution and distribution affect the economic arrangement among the Partners as expressed in this Agreement (including, without limitation, their Partnership Capital Account balances or rights to receive distributions).

12.5    Recharacterizations of Transactions. Any income, gain, loss or deduction (collectively, the "Recharacterization Items") realized as a direct or indirect result of the issuance (the "Issuance") of a Partnership interest by the Partnership to a partner or the recharacterization (the "Recharacterization") of a distribution as a payment for tax purposes shall be allocated among the partners so that (after effecting appropriate adjustments to the Partnership Capital Accounts of the partners to reflect the tax treatment of the Issuance or the Recharacterization) the aggregate amount (including any distributions recharacterized as payments for tax purposes and any amounts received upon liquidation of the Partnership) that each partner is entitled to receive from the Partnership over the life thereof (and each accounting period thereof) is equal to the aggregate amount that each such partner would have been entitled to receive had the Issuance resulted in no income, gain, loss or deduction to either the Partnership or any of its partners (including the recipient of the Partnership interest) or had the Recharacterization not occurred, as the case may be. In addition, to the extent possible without contravening the preceding sentence, the Recharacterization Items shall be allocated in a manner that puts each partner, as soon as possible, in the same after-tax position as they would have been in had the Issuance resulted in no income, gain, loss or deduction to either the Partnership or any of its partners (including the recipient of the Partnership interest) or had the Recharacterization not occurred, as the case may be. In no event shall the provisions of this Paragraph 12.5 be interpreted so as to alter in any manner the amount that a Preferred Limited Partner is entitled to receive pursuant to the SBA Annex.

12.6    Sharing Arrangement; Interest in Partnership Items. The Partners agree that the allocation and distribution provisions contained in this Agreement (including, without limitation, the SBA Annex) represent the sharing arrangement as between the Partners and represent their interests in such allocated items and, therefore, in the event that any transaction or relationship between the parties to this Agreement is recharacterized, allocations and adjustments hereunder shall be made in a manner which maintains the Partnership Capital Account balances of the Partners and the rights of the Partners to receive distributions at the same levels they would have been had no such recharacterization occurred. Accordingly, among other things, in the event the allocations of Net Income or Loss or Capital Transaction Gain or Loss, or items thereof, pursuant to Article IV and Paragraph 8.2(d) or any other provision of this Agreement are reallocated among the partners by the Internal Revenue Service for any reason, such reallocation shall have no effect on the distributions to the Partners pursuant to Paragraph 8.1 and 12.4 and the partners shall receive distributions pursuant to Paragraphs 8.1 and 12.4 based solely upon final Partnership Capital Account balances resulting from allocations as determined without regard to any Internal Revenue Service reallocation.

12.7    Withholding. The Partnership shall at all times be entitled to make payments with respect to any Partner in amounts required to discharge any obligation of the Partnership to withhold or make payments to any governmental authority with respect to any federal or state, tax liability of such Partner arising as a result of such Partner's interest. To the extent each such payment satisfies an obligation of the Partnership to withhold with respect to any distribution to a Partner on which the Partnership did not withhold or with respect to any Partner's allocable share of the income of the Partnership, each such payment shall be deemed to be a loan by the Partnership to such Partner (which loan shall be deemed to be immediately due and payable) and shall not be deemed a distribution to such Partner. The amount of such payments made with respect to such Partner, plus interest at an interest rate per annum equal to

the prime rate, from time to time in effect, of the Bank of California, San Francisco, California, on each such amount from the date of each such payment until such amount is repaid to the Partnership shall be repaid to the Partnership by (i) deduction from any distributions made to such Partner pursuant to this Agreement or (ii) earlier payment by such Partner to the Partnership, in each case as determined by the General Partner in its discretion. The General Partner may, in its discretion, defer making distributions to any Partner owing amounts to the Partnership pursuant to this Paragraph 12.7 until such amounts are paid to the Partnership and shall in addition exercise any other rights of a creditor with respect to such amounts. Each Partner agrees to indemnify the Partnership and the General Partner and each of the members of the General Partner, for any liability incurred for taxes, interest or penalties which may be asserted by reason of the failure to deduct and withhold tax on amounts distributable or allocable to said Partner. Any amount payable hereunder by a Partner shall be paid promptly to the Partnership upon request for such payment from the General Partner, and if not so paid, the General Partner and the Partnership shall be entitled to claim against and deduct from the Partnership Capital Account of, or from any distribution due to, the affected Partner for all such amounts.