JESSICA L. GRANT (SBN 178138)
NICHOLAS G. CAMPINS (SBN 238022)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone:  (415) 788-8200
Facsimile:   (415) 788-8208
E-mail: jgrant@tcolaw.com
E-mail: ncampins@tcolaw.com

Attorneys for Third-Party Defendants
ALEXANDER P. CILENTO and
DAVID CROCKETT

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION in its capacity as Receiver for Aspen Ventures, III,<br><br>    Plaintiffs,<br><br>v.<br><br>REDLEAF GROUP, INC.,<br><br>    Defendant and Third-Party Plaintiff,<br><br>v.<br><br>ASPEN VENTURES MANAGEMENT III, LLC, a Delaware Limited Liability Company, ALEXANDER P. CILENTO, a California resident, and DAVID CROCKETT, a California resident, and DOES 1-10,<br><br>    Third-Party Defendants. | Case No.: C-07-05350 JW (PVT)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT**<br><br>**[FED. RULE CIV. PROC. 12(b)(6)]**<br><br>Date:  April 14, 2008<br>Time:  9:00 a.m.<br>Place:  Courtroom 8, 4th Floor<br><br>Honorable James Ware |

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT: CASE NO. C-07-05350 JW (PVT)

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. SUMMARY OF ALLEGATIONS ....................................................................................... 2

    A. Aspen Ventures Becomes An SBIC ........................................................................... 2

    B. Redleaf Becomes a Limited Partner of Aspen Ventures ............................................ 2

    C. Redleaf Discovers "Irregularities and Problems" ...................................................... 3

    D. The "Disastrous Nature of the Aspen/Redleaf Relationship" Becomes Clear to Redleaf ................................................................................... 4

    E. June 30, 2004 to the Present ....................................................................................... 4

III. ARGUMENT ......................................................................................................................... 4

    A. LEGAL STANDARD FOR MOTION TO DISMISS ............................................... 4

    B. SIX OF REDLEAF'S EIGHT CAUSES OF ACTION ARE TIME BARRED ........ 5

        1. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing ...................................................................... 5

        2. Fraud, Negligent Misrepresentation and Conspiracy to Commit Fraud .............................................................................................. 6

        3. Breach of Fiduciary Duty ............................................................................... 8

    C. REDLEAF'S FIFTH CAUSE OF ACTION FOR EQUITABLE INDEMNITY SHOULD BE DISMISSED AS A MATTER OF LAW ................... 9

    D. REDLEAF'S SIXTH CAUSE OF ACTION FOR DECLARATORY RELIEF SHOULD BE DISMISSED ....................................................................... 10

IV. CONCLUSION .................................................................................................................... 11

i.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT: CASE NO. C-07-05350 JW (PVT)

# TABLE OF AUTHORITIES

**CASES**

*Ayres v. Jacobs & Crumplar, P.A.*,
    1996 Del. Super. LEXIS 565 (Del. Super. Ct. 1996) .................................................. 6

*Balistreri v. Pacifica Police Dep't.*,
    901 F.2d 696, 699 (9th Cir. 1990) ............................................................................... 4

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955, 1965 (2007) .................................................................................... 10

*BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.*,
    119 Cal. App. 4th 848 (2004) ...................................................................................... 9

*Bowden v. Robinson*,
    67 Cal. App. 3d 705 ..................................................................................................... 7

*Certainteed Corp. v. Celotex Corp.*,
    2005 Del. Ch. LEXIS 11, *8 (Del. Ch. 2005) ............................................................ 10

*David B. Lilly Co. v. Fisher*,
    18 F.3d 1112 (3d Cir. 1994) ......................................................................................... 7

*Earnest v. Lowentritt*,
    690 F.2d 1198 (5th Cir. 1982) ................................................................................... 11

*General Signal Corp. v. MCI Telecommunications Corp.*,
    66 F.3d 1500 (9th Cir. 1995) .................................................................................. 7, 8

*Gravquick A/S v. Trimble Navigation Int'l.*,
    323 F.3d 1219 (9th Cir. 2003) ..................................................................................... 6

*Hatch v. Collins*,
    225 Cal. App. 3d 1104 (1990) ..................................................................................... 7

*Huynh v. Chase Manhattan Bank*,
    465 F.3d 992 (9th Cir. 2006) ....................................................................................... 4

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922, 926 (9th Cir. 1996) ................................................................................. 5

*In re Tyson Foods, Inc. Consol. S'holder Litig.*,
    919 A.2d 563 (Del. Ch. 2007) ..................................................................................... 7

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) ....................................................................................... 5

*Krahmer v. Christie's, Inc.*,
    911 A.2d 399, 407 (Del. Ch. 2006),
    aff'd, 2007 Del. LEXIS 177 (Del. Apr. 25, 2007) ....................................................... 7

ii.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT: CASE NO. C-07-05350 JW (PVT)

*Major Clients Agency v. Diemer*,
    67 Cal. App. 4th 1116 (1998) .................................................................................. 10

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ..................................................................................... 5

*MedImmune, Inc. v. Genentech, Inc.*,
    127 S. Ct. 764 (2007) ............................................................................................... 10

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459, 465 (1992) ................................................................................. 6, 7, 9

*Niehoff v. Maynard*,
    299 F.3d 41, 48 (1st Cir. 2002) ............................................................................... 6, 9

*Walker v. W. Mich. Nat'l Bank & Trust*,
    324 F. Supp. 2d 529 (D. Del. 2004) ........................................................................... 7

*Wedderien v. Collins*,
    2007 Del. LEXIS 492 at *11 (Del. 2007) ................................................................... 6

*Williams v. Chrysler Corp.*,
    991 F. Supp. 383, *aff'd*, 163 F.3d 183 (3d Cir. 1998) (D. Del.) ................................. 6

**STATUTES AND RULES**

Cal. Civ. Proc. § 338(d) ........................................................................................................ 7

Del. Code Ann. tit. 10, § 8106 ....................................................................................... 6, 7, 9

**OTHER AUTHORITIES**

Rest. 2d of Conflict of Laws, § 187(1) ................................................................................. 6

iii.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT: CASE NO. C-07-05350 JW (PVT)

Third-party defendants David Crockett ("Crockett"), Alexander P. Cilento ("Cilento') and Aspen Ventures Management III, LLC ("AVM") (collectively, "defendants") hereby move to dismiss the Third-Party Complaint filed by Redleaf Group, Inc. ("Redleaf") on December 17, 2007 ("Complaint").

## I. INTRODUCTION

Each of Redleaf's causes of action is legally deficient and should be dismissed without leave to amend. First, the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, breach of fiduciary duty and conspiracy to commit fraud are all time barred. Specifically, the Complaint alleges that "Redleaf discovered irregularities and problems at Aspen in 2002-2003." *See* Complaint, ¶ 36. Moreover, by early 2004, *"the disastrous nature of the Aspen/Redleaf relationship became clear to Redleaf."* *Id.* at ¶ 39 (emphasis added). Finally, the Complaint does not allege a single wrongful act or omission after June 30, 2004, which is not surprising given that Redleaf had already discovered all of the relevant facts that give rise to its claims of misconduct. Because Redleaf had actual knowledge of the alleged wrongdoing more than three years before it filed the Complaint on December 17, 2007, the deficiencies in the foregoing causes of action cannot be cured, and they should be dismissed without leave to amend.

Redleaf's remaining claims for equitable indemnity and declaratory relief are also legally deficient and should be dismissed without leave to amend. Since Redleaf has not yet incurred an actual monetary loss through payment of a judgment or settlement, its claim for equitable indemnity is both premature and improper as a matter of law. In addition, Redleaf has failed to allege that defendants owed a duty to plaintiff United States Small Business Administration ("SBA") to cover capital commitments *Redleaf* promised to make. Finally, Redleaf's claim for declaratory relief lacks merit since it is wholly derivative and dependent upon Redleaf's legally deficient claims.

///

///

1.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT: CASE NO. C-07-05350 JW (PVT)

## II. SUMMARY OF ALLEGATIONS

### A. Aspen Ventures Becomes An SBIC

In September 1999, after undergoing a rigorous qualification process and meeting certain minimum capital requirements, Aspen Ventures III, LP ("Aspen Ventures") a private venture capital fund, was licensed as a Small Business Investment Company ("SBIC") by the SBA. Complaint, ¶ 12. Third-party defendant AVM was Aspen Ventures' managing general partner and Thaddeus Whalen ("Whalen"), Crockett and Cilento were managing members of AVM. Complaint, ¶¶ 7, 8. The primary advantage to becoming an SBIC is that the SBIC's private venture capital fund is leveraged with funds provided by the SBA up to a 2:1 ratio. Complaint, ¶ 13. This means that for every dollar of private capital invested in Aspen Ventures, the fund could draw an additional two dollars in leveraged capital from the SBA. *Id.*

The SBA's leverage, however, is not without risks. Should losses occur, the SBIC's investors will share those losses with the SBA, and they can also be liable to repay any SBA leverage to the extent of their capital commitments if the SBIC fails, as Aspen Ventures did. Complaint, ¶ 15. Where, as here, an SBIC is liquidated, the SBA has liquidation preference in relation to the other investors, and the SBIC must repay the SBA's leverage in full before any other investors can receive any funds. *Id.* In addition, the SBA can demand that investors remit funds to the SBIC to the extent of their unfunded capital commitments. *Id.*

### B. Redleaf Becomes a Limited Partner of Aspen Ventures

In mid-2001, Redleaf was approached by defendants and their now deceased partner, Whalen, about becoming a limited partner in Aspen Ventures. Complaint, ¶ 17. Although Redleaf was interested in the opportunity to invest in Aspen Ventures and thereby gain the benefit of its SBA leverage, "Redleaf was also cognizant of the risks of SBA leverage ..." *Id.* at ¶ 18. *After conducting its own due diligence*, Redleaf decided to make a $15 million capital commitment to Aspen Ventures and subsequently became a limited partner in Aspen Ventures effective April 1, 2002. *Id.* at ¶¶ 18, 19, 27, 32.

2.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT: CASE NO. C-07-05350 JW (PVT)

TAYLOR & CO.
LAW OFFICES, LLP

In connection with this transaction, two Agreements – the Amended and Restated Limited Partnership Agreement of Aspen Ventures, dated August 20, 1999 (the "LP Agreement"), and the Second Amended and Restated Limited Liability Company Agreement of AVM, dated August 20, 1999, (the "GP Agreement") – were amended (collectively, "Agreements"). *Id.* at ¶¶ 27, 28. In the time period just before the Agreements were amended, defendants and Whalen are alleged to have made misrepresentations to Redleaf regarding the legal effect of the Agreements. *Id.* at ¶¶ 29, 30. Redleaf further claims that it was fraudulently induced by defendants and Whalen to invest and become a limited partner in Aspen Ventures, because defendants and Whalen allegedly concealed the fact that Aspen Ventures faced regulatory capital impairment under the SBA's regulations prior to the date on which Redleaf made its $15 million capital commitment. *Id.* at ¶¶ 17-25.

### C.   Redleaf Discovers "Irregularities and Problems"

Between April 2002 and December 2003, Redleaf met capital calls totaling almost $3 million. Complaint, ¶ 32. During this time period, defendants and Whalen allegedly continued to conceal crucial information from Redleaf. *Id.* at ¶ 33. Significantly, Redleaf alleges that it *"discovered irregularities and problems at Aspen in 2002-2003."* *Id.* at ¶ 36 (emphasis added). These irregularities included the discovery that "Aspen II was capitally impaired." *Id.* at ¶ 36. Redleaf was so concerned about this capital impairment that in March 2003, it negotiated a release from its capital commitment that was approved by the SBA. *Id.* at ¶ 36. However, Redleaf's board of directors decided in late 2003 not to accept the terms of that negotiated release. *Id.* at ¶ 36.

Redleaf further alleges that between April 2002 and January 2004, defendants and Whalen allegedly failed to provide Redleaf with "quarterly financial reports regarding the value of the Series A Investments" that would have purportedly shown Aspen Venture's capital impairment. *Id.* at ¶¶ 34, 35. Redleaf also claims that in January 2004, defendants and Whalen misrepresented the status of the fund's "failing portfolio." *Id.* at ¶¶ 37, 38. Nevertheless, in January 2004 Redleaf made another capital contribution to Aspen Ventures in the amount of $1.5 million. *Id.* at ¶ 37.

3.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT: CASE NO. C-07-05350 JW (PVT)

### D. The "Disastrous Nature of the Aspen/Redleaf Relationship" Becomes Clear to Redleaf

Shortly after January 2004, "*the true status of the value of the Series A Investments and the disastrous nature of the Aspen/Redleaf relationship became clear to Redleaf.*" Complaint, ¶ 39 (emphasis added). Redleaf also alleges that by the Spring of 2004, it had "discovered that Aspen had used Redleaf's capital and the leverage Redleaf's capital supported for purposes other than Series B Investments and Series B management expenses." Complaint, ¶ 39. Redleaf also discovered that defendants and Whalen had allegedly provided Redleaf and the SBA with valuations of investments that were "grossly misstated" prior to Redleaf making its $15 million capital commitment and prior to the January 2004 capital call. Complaint, ¶ 40. Finally, Redleaf alleges that between March 31, 2004 and June 30, 2004, the value of Aspen Ventures' investment portfolio dropped from $29.2 million to $12.9 million, triggering an "incurable regulatory capital impairment of Aspen which caused [the] SBA to place Aspen in liquidation status." *Id.* at ¶ 41.

### E. June 30, 2004 to the Present

There is not a single allegation in the Complaint regarding any acts or omissions of defendants or Whalen that occurred after June 30, 2004. The Complaint was not filed until December 17, 2007 – *nearly six months after the statute of limitations expired.*

## III. ARGUMENT

### A. LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint and is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. The court, however, is not bound to assume the truth of legal conclusions merely because they are stated in the form of factual allegations. *See In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir.

4.

1996) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim").

The Court may treat any agreement necessarily relied on in the Complaint as a "part of the [C]omplaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also id.* ("A court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion"). The Agreements, attached to the Declaration of Jessica L. Grant as Exhibits A and B, are repeatedly referenced and characterized in the Complaint and are central to its allegations regarding breach of contract, breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty. *See, e.g.*, Complaint, ¶¶ 27, 28, 29, 43-46, 48-51, 80 (referring to the Agreements and their terms). Accordingly, the Court may treat the Agreements as part of the Complaint for purposes of defendants' Motion to Dismiss.

### B. SIX OF REDLEAF'S EIGHT CAUSES OF ACTION ARE TIME BARRED

Where "the running of the statute is apparent on the face of the complaint," dismissal of the complaint for failure to state a claim is proper. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (same). Since Redleaf's *own* allegations establish that its claims are time barred, dismissal without leave to amend is proper. *Id.*

#### 1. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

Both the LP Agreement and the GP Agreement are expressly governed by Delaware law. *See* Declaration of Jessica L. Grant in Support of Motion to Dismiss ("Grant Decl."), ¶ 2, Exhibit A at § 10.4; ¶ 4, Exhibit B at § 12.4; ¶ 5, Exhibit D at § 7; ¶ 6, Exhibit E, at § 10.[1] Under well-

---

[1] Redleaf expressly agreed to be bound by all terms of the LP Agreement in an April 1, 2002 Series B Admission and Amendment Agreement. *See* Grant Decl., Exhibit C. Redleaf expressly agreed to be bound by all terms of the LLC Agreement in an April 1, 2002 Assignment & Assumption Agreement. *See* Grant (footnote continued)

5.
TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT: CASE NO. C-07-05350 JW (PVT)

1   established choice of law doctrine, Delaware law supplies the relevant statute of limitations. *See*
2   *Gravquick A/S v. Trimble Navigation Int'l*, 323 F.3d 1219, 1222 (9th Cir. 2003); *see also Nedlloyd*
3   *Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465 (1992) (noting "strong policy favoring
4   enforcement of such provisions."); Rest. 2d of Conflict of Laws, § 187(1). Under Delaware law,
5   claims for breach of contract and breach of the implied covenant of good faith and fair dealing are
6   subject to a three year statute of limitations. Del. Code Ann. tit. 10, § 8106; *see Niehoff v.*
7   *Maynard*, 299 F.3d 41, 48 (1st Cir. 2002) (breach of contract actions subject to three year statute
8   of limitations); *Wedderien v. Collins*, 2007 Del. LEXIS 492, *11 (Del. 2007); *Williams v. Chrysler*
9   *Corp.*, 991 F. Supp. 383, 390 (D. Del. 1998) (same re breach of the implied covenant of good faith
10  & fair dealing claims); *Ayres v. Jacobs & Crumplar, P.A.*, 1996 Del. Super. LEXIS 565, *37 (Del.
11  Super. Ct. 1996).

12      Here, the Complaint establishes that by June 30, 2004 – *at the latest* – Redleaf had actual
13  knowledge of all the facts giving rise to its breach of contact claims. Indeed, the Complaint is
14  devoid of any allegations of misconduct after June 2004, which is not surprising given that in June
15  2004, Aspen had been placed into liquidation status by the SBA due to an "incurable regulatory
16  impairment." Complaint, ¶ 41. Therefore, the statute of limitations on Redleaf's contract claims
17  expired, *at the latest*, on June 30, 2007. Because the Complaint was not filed until December 17,
18  2007, six months *after* the applicable statute of limitations had expired, Redleaf's claims for
19  breach of contract and breach of the implied covenant of good faith and fair dealing are time
20  barred and should be dismissed without leave to amend.

21              **2.      Fraud, Negligent Misrepresentation and Conspiracy to Commit Fraud**
22      Under the parties' contractual choice of law provisions, Delaware law supplies the relevant
23  statute of limitations for Redleaf's claims for fraud, negligent misrepresentation and conspiracy to
24  commit fraud. All of these claims are substantially related to and arise out of the LP and GP
25  Agreements. *Nedlloyd*, 3 Cal. 4th at 466; *Walker v. W. Mich. Nat'l Bank & Trust*, 324 F. Supp. 2d

---

Decl., Exhibit E at § 2 ("Redleaf acknowledges receipt of, has read, and is familiar with, the LLC Agreement and agrees to be bound by the provisions thereof.").

6.

TAYLOR & CO.
LAW OFFICES, LLP

529, 535 (D. Del. 2004); *cf. General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995) (holding that choice of law applied to claims arising out of the contract). Therefore, Delaware's three-year statute of limitations applies to these claims. *See* Del. Code Ann. tit. 10, § 8106 (applying three-year limitations period to actions "based on a promise"); *Krahmer v. Christie's, Inc.*, 911 A.2d 399, 407 (Del. Ch. 2006), *aff'd*, 2007 Del. LEXIS 177 (Del. April 25, 2007) (applying "the general three year statute of limitations" of Section 8106 to claim of fraud). The limitations period of under Section 8106 runs "from the accruing of the cause of action." Del. Code Ann. tit. 10, § 8106; *David B. Lilly Co. v. Fisher*, 18 F.3d 1112, 1117 (3d Cir. 1994). Although the statute of limitations may be tolled when the defendant has fraudulently concealed the wrongful act, "no theory will toll the statute beyond the point where the plaintiff was objectively aware, or should have been aware, of facts giving rise to the wrong." *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 585 (Del. Ch. 2007).

Alternatively, all these claims are subject to a three-year statute of limitations under California law. *See* Cal. Civ. Proc. § 338(d); *see also Bowden v. Robinson*, 67 Cal. App. 3d 705 (negligent misrepresentation); *Hatch v. Collins*, 225 Cal. App. 3d 1104, 1110 (1990) (conspiracy to commit fraud). The statute runs from the date of discovery of the facts constituting the fraud or, in the case of conspiracy to commit fraud, from the last overt act of the conspiracy. *See Hatch*, 225 Cal. App. 3d at 1110-11.

Because the Complaint establishes that by March 2004 Redleaf was well aware of the facts constituting the alleged fraud, Redleaf's claims for fraud, negligent misrepresentation and conspiracy to commit fraud are time barred under both Delaware and California law. *See* Complaint, ¶ 36 (In early 2003 "Redleaf discovered irregularities and problems" and attempted to get a release from its capital commitment). Moreover, the Complaint expressly alleges that shortly after January 2004, "[t]he true nature of the Series A investments and the disastrous nature of the Aspen/Redleaf relationship became clear to Redleaf." Complaint, ¶ 39. In addition, the Complaint alleges that by Spring 2004, "Redleaf discovered that Aspen had used Redleaf's capital and the leverage Redleaf's capital supported for purposes other than Series B Investments and

7.

Series B management expenses." Complaint, ¶ 39. Redleaf further alleges that by March 2004, it had discovered that defendants had "grossly misstated" the valuations of Aspen's investments prior to Redleaf's $15 million capital commitment and its January 2004 capital contribution. Complaint, ¶ 40. Finally, the Complaint alleges that between March 31, 2004 and June 30, 2004, Redleaf discovered that the value of Aspen's investment portfolio dropped from $29.2 million to $12.9 million, triggering an "incurable regulatory capital impairment of Aspen which caused [the] SBA to place Aspen into liquidation status." Complaint, ¶ 41.

As the foregoing allegations make clear, by March 2004, Redleaf had discovered all of the relevant facts that give rise to defendants' alleged misconduct and by June 2004, it knew that Aspen had been placed into liquidation by the SBA due to its "incurable regulatory capital impairment." Accordingly, the statute of limitations for Redleaf's fraud-based claims expired, *at the latest*, on June 30, 2007 – six months before Redleaf filed its Complaint.

To the extent Redleaf pleaded its conspiracy to commit fraud claim in an attempt to lengthen the statutory period for the pursuit of this claim against Cilento and Crockett, Redleaf's claim is likewise time barred as to these third-party defendants. As noted above, the Complaint does not allege any misconduct whatsoever by Crockett and Cilento after June 2004.

Accordingly, from the facts alleged in the Complaint, Redleaf's third, fourth and eighth causes of action for fraud, negligent misrepresentation, and conspiracy to commit fraud are time barred and should be dismissed without leave to amend.

### 3. Breach of Fiduciary Duty

Redleaf alleges that it is owed fiduciary duties by defendants as a result of the GP and LP Agreements and defendants' related role at Delaware corporations Aspen and AVM. *See* Complaint; *see also* Grant Decl., ¶ 2, Exhibit A at § 10.4; ¶ 4, Exhibit B at § 12.4; ¶ 5, Exhibit D at § 7; ¶ 6, Exhibit E at § 10. Accordingly, the interpretation of the parties' fiduciary duties, if any, under the GP and LP Agreements is governed by Delaware law. *See General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995) (holding that choice of law applied to claims arising out of the contract); *see also Nedlloyd Lines B.V. v. Superior Court*, 3

8.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS'
CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT:
CASE NO. C-07-05350 JW (PVT)

Cal. 4th at 468-69 (express contractual choice of law provision supplies relevant law for fiduciary duty actions). Delaware law provides that claims for breach of fiduciary duty have a three year statute of limitations. *Niehoff v. Maynard*, 299 F.3d 41, 48 (1st Cir. 2002) (fiduciary duty actions subject to three year statute of limitations); Del. Code Ann. tit. 10, § 8106.

As discussed above, by June 30, 2004, Redleaf had actual knowledge of all alleged facts giving rise to the claims plead in its Complaint. Indeed, the Complaint specifically alleges that shortly after January 2004, *"the disastrous nature of the Aspen/Redleaf relationship became clear to Redleaf."* Complaint, ¶ 39 (emphasis added). Accordingly, Redleaf's claim for breach of fiduciary duty against defendants is time barred on its face.

### C. REDLEAF'S FIFTH CAUSE OF ACTION FOR EQUITABLE INDEMNITY SHOULD BE DISMISSED AS A MATTER OF LAW

Redleaf has failed to establish any of the requisite elements for equitable indemnity and its claim should therefore be dismissed without leave to amend. First, under California law, "a condition of equitable indemnity is that there must be some basis for tort liability against the proposed indemnitor, usually involving breach of a duty owed to the underlying plaintiff. The doctrine applies only among defendants who are jointly and severally liable *to the plaintiff.*" *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.*, 119 Cal. App. 4th 848, 852 (2004) (emphasis added). Similarly, Delaware courts have limited equitable indemnity to joint tortfeasors in five enumerated situations, none of which is applicable here. *New Zealand Kiwifruit Mktg. Bd. v. City of Wilmington*, 825 F. Supp. 1180, 1191 (D. Del. 1993) (citing *Ianire v. Univ. of Delaware*, 255 A.2d 687, 692 (Del. Super. Ct. 1969), *aff'd*, 269 A.2d 52 (Del. 1970)).

Here, defendants do not owe a duty – in tort or otherwise – to the SBA for the capital commitment *Redleaf* pledged to pay Aspen Ventures in April 2002, and the Complaint is devoid of any such allegations. In fact, the SBA has sued Redleaf as a result of Redleaf's refusal to honor its *own* unfunded $10,600,000 capital commitment to Aspen Ventures. Second, "a fundamental prerequisite to an action for partial or total equitable indemnity is an *actual monetary loss through payment of a judgment or settlement.*" *Major Clients Agency v. Diemer*, 67 Cal. App. 4th 1116,

9.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT: CASE NO. C-07-05350 JW (PVT)

1126-27 (1998) (citations omitted) (emphasis added); *see also Certainteed Corp. v. Celotex Corp.*, 2005 Del. Ch. LEXIS 11, *8 (Del. Ch. 2005) ("Under Delaware law, claims for common law indemnity do not accrue until the indemnitee can 'be confident that any claim against him . . . has been resolved with certainty.' In other words, a cause of action accrues after the party seeking indemnification has made payment to the third party and the dispute with that party is finally concluded.") (footnote and citations omitted). Redleaf does not allege that it has suffered any "monetary loss" through payment of a judgment or settlement, and its equitable indemnity claim is therefore fatally defective. In addition, throughout the Complaint Redleaf expressly states that it is "unlikely" it will be forced to pay a money judgment or settlement of any kind to the SBA. *See* Complaint, ¶¶ 2, 46, 65; Prayer for Relief, ¶¶ B, C.[2] Two of these allegations, contained in Paragraphs 2 and 46 of the Complaint are expressly incorporated into Redleaf's equitable indemnity cause of action, foreclosing any possibility that Redleaf intended to plead in the alternative. *See* Complaint, ¶ 67. Because the Complaint fails to allege that defendants owed and breached a duty to the SBA, or that Redleaf has sustained an actual monetary loss, Redleaf's claim for equitable indemnity is legally deficient and should be dismissed.

### D. REDLEAF'S SIXTH CAUSE OF ACTION FOR DECLARATORY RELIEF SHOULD BE DISMISSED

To sustain its action for declaratory relief, Redleaf must allege the existence of an "actual controversy." 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.* 127 S.Ct. 764, 771 (2007) ("the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III"). There is an implicit requirement that the "actual controversy" at issue in a declaratory relief action relate to a claim upon which relief can

---

[2] To survive a motion to dismiss for failure to state a claim, factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds of his entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.* at 1965

10.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT: CASE NO. C-07-05350 JW (PVT)

TAYLOR & CO.
LAW OFFICES, LLP

be granted. *Earnest v. Lowentritt,* 690 F.2d 1198, 1203 (5th Cir. 1982). Here, Redleaf's declaratory relief claim is wholly derivative since whether or not an actual controversy exists depends on the legal sufficiency of the remaining causes of action. Therefore, to the extent Redleaf's Complaint fails to state a claim upon which relief can be granted, its declaratory relief cause of action also fails and should be dismissed as well.

## IV. CONCLUSION

For the foregoing reasons, defendants respectfully request that their consolidated motion to dismiss be granted, without leave to amend, as to each cause of action in the Complaint.

Dated: February 26, 2008            Respectfully submitted,

TAYLOR & COMPANY LAW OFFICES, LLP


By:     /s/ Jessica L. Grant
            Jessica L. Grant
Attorneys for Third-Party Defendants ALEXANDER P. CILENTO and DAVID CROCKETT


COBLENTZ, PATCH, DUFFY & BASS LLP


By:     /s/ William H. Orrick, III
            William H. Orrick, III
Attorney for Third-Party Defendant
ASPEN VENTURES MANAGEMENT, III

WILLIAM H. ORRICK, III (SBN 113252)
COBLENTZ, PATCH, DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, California 94111
Telephone: (415) 391-4800
Facsimile: (415) 989-1663
E-mail: who@cpdb.com

11.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD-PARTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS REDLEAF GROUP, INC.'S THIRD-PARTY COMPLAINT: CASE NO. C-07-05350 JW (PVT)