# EXHIBIT A

ASPEN VENTURES III, L.P.,
a Delaware limited partnership

AMENDED AND RESTATED
LIMITED PARTNERSHIP AGREEMENT

August 20, 1999

GDSVF&H\107709.10

# TABLE OF CONTENTS

Page

ARTICLE I  NAME, CHARACTER, AND PRINCIPAL OFFICE OF PARTNERSHIP ............ 1

    1.1  Partnership Name ................................................................................... 1
    1.2  Partnership Purpose ............................................................................. 1
    1.3  Principal Office; Registered Office ..................................................... 2

ARTICLE II  TERM AND TERMINATION OF THE PARTNERSHIP ............................... 2

    2.1  Term of Partnership .............................................................................. 2
    2.2  Termination ........................................................................................... 2
    2.3  Events Affecting a Member of the General Partner ......................... 2
    2.4  Events Affecting a Limited Partner of the Partnership .................... 3
    2.5  SBA Rules and Regulations; SBA Annex ......................................... 3

ARTICLE III  CAPITAL CONTRIBUTIONS ................................................................... 3

    3.1  Initial Capital Contribution of the Limited Partners ...................... 3
    3.2  Subsequent Capital Contributions by the Limited Partners ........... 3
    3.3  Initial Capital Contribution of the General Partner ........................ 4
    3.4  Subsequent Capital Contributions of the General Partner ............. 4
    3.5  Noncontributing Partners .................................................................... 4

ARTICLE IV  CAPITAL ACCOUNTS AND ALLOCATIONS ....................................... 7

    4.1  Partnership Capital Accounts ............................................................. 7
    4.2  Definitions ............................................................................................. 8
    4.3  Allocation of Capital Transaction Gain or Loss ............................. 12
    4.4  Allocation of Net Income or Loss .................................................... 13
    4.5  Reallocation of Contingent Losses ................................................... 13
    4.6  Allocation Among Partners ............................................................... 14
    4.7  Special Allocation Among Late Entering Limited Partners of Organization and
       Operating Expenses ........................................................................... 14
    4.8  Special Allocation of Syndication Expenses ................................... 15

ARTICLE V  MANAGEMENT FEE; EXPENSES ........................................................ 15

    5.1  Management Fee .................................................................................. 15
    5.2  Expenses .............................................................................................. 16

ARTICLE VI  WITHDRAWALS BY AND DISTRIBUTIONS TO THE PARTNERS ............ 18

    6.1  Interest ................................................................................................. 18
    6.2  Withdrawals by the Partners ............................................................. 18
    6.3  Mandatory Cash Distributions .......................................................... 18
    6.4  Discretionary Distributions .............................................................. 19

ARTICLE VII  MANAGEMENT, DUTIES, AND RESTRICTIONS ............................... 21

    7.1  Management ............................................................................................ 21
    7.2  Indebtedness; Restrictions; Reinvestments .......................................... 21
    7.3  Investment Representation of the Limited Partners .............................. 22
    7.4  Accredited Investor and Investment Company Act Representations ...... 22
    7.5  No Control by the Limited Partners ....................................................... 22
    7.6  Admission of Additional Partners ........................................................... 23
    7.7  Assignment or Transfer of Partnership Interests ................................. 23
    7.8  Investment Opportunities; Conflicts of Interest .................................. 25

ARTICLE VIII  DISSOLUTION AND LIQUIDATION OF THE PARTNERSHIP ............ 27

    8.1  Liquidation Procedures .......................................................................... 27
    8.2  Closing Capital Account Balances; Final Allocations; Date of Termination ........ 28
    8.3  Lookback Liability of General Partner to Return Excess Distributions ......... 28

ARTICLE IX  FINANCIAL ACCOUNTING AND REPORTS ...................................... 30

    9.1  Financial and Tax Accounting and Reports ............................................ 30
    9.2  Valuation of Securities and Other Assets Owned by the Partnership ......... 31
    9.3  Supervision; Inspection of Books .......................................................... 31
    9.4  Quarterly Reports .................................................................................. 31
    9.5  Annual Report; Financial Statements of the Partnership, Federal Income Tax
        Return .................................................................................................... 31
    9.6  Confidentiality ....................................................................................... 31
    9.7  Information Meetings ............................................................................. 32
    9.8  Advisory Committee ............................................................................... 32

ARTICLE X  OTHER PROVISIONS ......................................................................... 33

    10.1  Execution and Filing of Documents ..................................................... 33
    10.2  Other Instruments and Acts ................................................................. 33
    10.3  Binding Agreement ............................................................................... 33
    10.4  Governing Law ...................................................................................... 33
    10.5  Notices .................................................................................................. 33
    10.6  Power of Attorney ................................................................................. 34
    10.7  Amendment ........................................................................................... 34
    10.8  Effective Date ....................................................................................... 35
    10.9  Entire Agreement .................................................................................. 35
    10.10  Titles; Subtitles ................................................................................... 35
    10.11  Partnership Name ............................................................................... 35
    10.12  Exculpation ......................................................................................... 35
    10.13  Indemnification ................................................................................... 35
    10.14  Limitation of Liability of the Limited Partners ................................... 38
    10.15  Arbitration .......................................................................................... 38
    10.16  Passive Income; Prohibited Transaction ............................................ 38
    10.17  Tax Matters Partner ........................................................................... 39
    10.18  ERISA Matters .................................................................................... 40
    10.19  Avoidance of Trade or Business Status; Service-Related Income ......... 43

10.20  Taxation as Partnership ............................................................. 45
10.21  Board Activity ........................................................................... 45
10.22  Counsel to the Partnership ........................................................ 45

ARTICLE XI  MISCELLANEOUS DEFINITIONS ........................................ 46

11.1  Affiliate ...................................................................................... 46
11.2  Agreement .................................................................................. 46
11.2  Agreement .................................................................................. 46
11.4  Bankruptcy ................................................................................. 46
11.5  Certificate of Limited Partnership ............................................. 46
11.6  Code ........................................................................................... 47
11.7  Date of Distribution ................................................................... 47
11.8  Holding Company Act ............................................................... 47
11.9  Limited Partners ......................................................................... 47
11.10  Majority in Interest of the Limited Partners .......................... 47
11.11  Marketable; Marketable Securities; Marketability ................. 47
11.12  Money-Market Investments .................................................... 47
11.13  Net Operating Income ............................................................. 47
11.14  Nonmarketable Securities ....................................................... 47
11.15  Original Managing Members of the General Partner .............. 47
11.16  Original Limited Partners ........................................................ 48
11.19  Preferred Limited Partner ....................................................... 48
11.19  Preferred Limited Partnership Interest .................................... 48
11.20  Private Limited Partners .......................................................... 48
11.21  Securities ................................................................................. 48
11.22  Securities Act .......................................................................... 48
11.23  Treasury Regulations ............................................................... 48
11.24  Two-Thirds in Interest of the Limited Partners ...................... 48
11.25  United States Person ............................................................... 48

ARTICLE XII  MISCELLANEOUS TAX COMPLIANCE PROVISIONS ........... 48

12.1  Substantial Economic Effect ..................................................... 48
12.2  Other Allocations ....................................................................... 49
12.3  Income Tax Allocations ............................................................. 51
12.4  Compliance with Timing Requirements of Regulations ........... 51
12.5  Recharacterizations of Transactions ......................................... 53
12.6  Sharing Arrangement; Interest in Partnership Items ................ 53
12.7  Withholding ............................................................................... 53

EXHIBIT A          Form of Promissory Note
EXHIBIT B          Form of Security Agreement
SCHEDULE A        Schedule of Partners
ANNEX A            SBA Annex PS
ANNEX B            Valuation Guidelines

ASPEN VENTURES III, L.P.,
A DELAWARE LIMITED PARTNERSHIP

AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT

This AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT entered into pursuant to the Act, effective as of August 20, 1999, by and among Aspen Venture Management III, L.L.C., a Delaware limited liability company (the "General Partner"), and each of the persons the names of which are set forth under the heading "Limited Partners" on the Schedule of Partners attached hereto (the "Limited Partners");

WHEREAS, the SBA requires that certain amendments be made to that certain Limited Partnership Agreement of Aspen Ventures III, L.P., a Delaware limited partnership (the "Partnership") dated as of November 10, 1998 (the "Original Limited Partnership Agreement") and Annex A thereto in order for the Partnership to become as Licensee (as defined below);

NOW THEREFORE, pursuant to Paragraph 10.7 of the Original Limited Partnership Agreement, the General Partner amends and restates the provisions of the Original Limited Partnership Agreement and Annex A thereto as follows:

ARTICLE I

NAME, CHARACTER, AND
PRINCIPAL OFFICE OF PARTNERSHIP

1.1    Partnership Name.    The name of the Partnership is Aspen Ventures III, L.P.  The partners of the Partnership are the General Partner and the Limited Partners (collectively, the "Partners") and any Preferred Limited Partners (as defined in the SBA Annex) admitted pursuant to the SBA Annex attached as Annex A hereto.  The affairs of the Partnership shall be conducted under the Partnership name or such other name as the General Partner may, in its discretion, determine.

1.2    Partnership Purpose.    At any time that the Partnership is a licensee, as such term is defined under Section 301(c) of the Small Business Investment Act of 1958, as amended (the "SBIC Act") and the regulations (the "SBIC Regulations") of the Small Business Administration (the "SBA") thereunder ("Licensee"), the sole purpose of the Partnership will be to operate as a Licensee.  The primary objective of the Partnership will be to make venture capital investments, principally by investing in equity or equity-oriented securities of privately held companies located in the Western United States, with a focus on information technology and related fields.  The Partnership may also participate in, among other things, leveraged acquisitions of privately held and publicly held corporations (or divisions, subsidiaries or other business units thereof) and investments in securities of publicly held corporations that appear to be undervalued or that offer the opportunity for significant capital appreciation; provided, however, that when the Partnership is a Licensee such participation will be subject to the SBIC Act and the SBIC Regulations, to the extent applicable.  The general purposes of the Partnership

are to buy, hold, sell, and otherwise invest in Securities, whether readily marketable or not; to exercise all rights, powers, privileges, and other incidents of ownership or possession with respect to Securities held or owned by the Partnership; to enter into, make, and perform all contracts and other undertakings; and to engage in all activities and transactions as may be necessary, advisable, or desirable, as determined by the General Partner, to carry out the foregoing.

        1.3    <u>Principal Office; Registered Office</u>.  The principal office of the Partnership shall be at 1000 Fremont Avenue Suite 200, Los Altos, California or such other place or places within the United States as the General Partner may from time to time designate. The Partnership's registered office in Delaware, and the name of the registered agent for service of process shall be, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 or such other place or persons as the General Partner may from time to time designate.

## ARTICLE II

## <u>TERM AND TERMINATION OF THE PARTNERSHIP</u>

        2.1    <u>Term of Partnership</u>.  The term of the Partnership shall commence upon the filing with the office of Secretary of State of the State of Delaware of the Certificate of Limited Partnership of the Partnership (the "Commencement Date") and shall continue until December 31, 2008, unless sooner terminated as provided in Paragraph 2.2 or extended as provided in Paragraph 8.1(e) (the "Partnership Term"); provided, however, that in no event shall the Partnership terminate before the earlier of: (i) two years after all Preferred Limited Partners, if any, have withdrawn from the Partnership and all Outstanding Leverage (as defined in the SBA Annex), if any, has matured, or (ii) all Outstanding Leverage, if any, has been paid or redeemed and all amounts due the Preferred Limited Partners, the SBA, its agents or trustee have been paid.  As of the commencement of the term of the Partnership the aggregate Capital Commitments of the Partners shall equal or exceed ten million dollars ($10,000,000).

        2.2    <u>Termination</u>.  The Partnership shall terminate prior to December 31, 2008:

        (a)    Upon the vote of Two-Thirds in Interest of the Limited Partners if, at any time, (i) more than two of the Original Managing Members of the General Partner cannot fulfill (or are not fulfilling) their duties under this Agreement due to retirement, death, bankruptcy, incompetency, insanity or permanent incapacity or failure to participate actively in the management of the affairs of the Partnership or (ii) the General Partner consents thereto.

        (b)    Sixty (60) days after the bankruptcy or dissolution of the General Partner.

        2.3    <u>Events Affecting a Member of the General Partner</u>.  Except as provided in Paragraph 2.2(a) above, the death, temporary or permanent incapacity, insanity, incompetency, bankruptcy, expulsion, retirement, withdrawal, or removal of any member of the General Partner or the admission of additional members to the General Partner shall not dissolve the Partnership.

2.4    <u>Events Affecting a Limited Partner of the Partnership</u>.    The death, temporary or permanent incapacity, insanity, incompetency, bankruptcy, liquidation, dissolution, reorganization, merger, sale of substantially all the stock or assets of, or other change in the ownership or nature of a Limited Partner shall not terminate the Partnership.

2.5.    <u>SBA Rules and Regulations; SBA Annex</u>.    At any time that the Partnership is a Licensee, the provisions of this Agreement shall be subject to the SBIC Act and the SBA Regulations to the extent applicable.    At any time that the Partnership has outstanding Preferred Limited Partnership Interests, the provisions of the SBA Annex PS attached as Annex A to this Agreement (the "SBA Annex") shall be incorporated in this Agreement with the same force and effect as if fully set forth herein; provided, however, that Sections 4.8 and 4.9 of the SBA Annex are hereby incorporated into this Agreement effective as of November 10, 1998.

ARTICLE III

CAPITAL CONTRIBUTIONS

3.1    <u>Initial Capital Contribution of the Limited Partners</u>.    The General Partner shall give the Limited Partners fifteen (15) days' prior written notice of the date on which each Limited Partner shall be required to contribute capital, in cash, to the Partnership payable by wire transfer or check in an amount equal to ten percent (10%) (or such other percentage as shall be specified in such notice but in no event to exceed thirty percent (30%)) of such Limited Partner's capital commitment to the Partnership (such Limited Partner's "Initial Contribution").    The date on which such initial capital contribution is due is referred to hereinafter as the "Initial Contribution Date."    The Initial Contribution Date shall be on or shortly before the date of the Partnership's first investment other than short-term investments pending long-term commitment, which first investment shall be in the Securities of a portfolio company which permits the Partnership to qualify as a "venture capital operating company" under Department of Labor final regulation relating to the definition of Plan Assets, 29 CFR § 2510.3-101, as such regulation may be or have been amended as of the date in question (the "DOL Regulation"); provided, however, that ERISA Partners (as defined in Paragraph 10.18(a)) shall not deliver Initial Contributions to the Partnership until such ERISA Partners have received written notification (by facsimile) from the General Partner that the first investment has been made.

3.2    <u>Subsequent Capital Contributions by the Limited Partners</u>.    Set forth opposite the name of each Partner on the Schedule of Partners attached hereto under the heading "Capital Commitment" is each Limited Partner's Capital Commitment to the Partnership.    Each Limited Partner's Capital Commitment represents the aggregate amount of capital that such Partner has agreed to contribute to the Partnership in accordance with the terms hereof.    No Limited Partner shall be obligated to contribute capital to the Partnership in an amount in excess of its Capital Commitment.    Subject to the foregoing limitation, subsequent to the Initial Contribution Date each Limited Partner shall make additional capital contributions, in cash, to the Partnership, payable by wire transfer or check, upon fifteen (15) days' prior written notice from the General Partner (the "Drawdown Notice") at such time (the "Drawdown Date") and in such amount (the "Drawdown Amount") as shall be specified in the Drawdown Notice.    Each Drawdown Notice shall be given to each Limited Partner of the Partnership.    The Drawdown Amounts of the Limited Partners specified in any Drawdown Notice shall be proportional to their

respective Capital Commitments to the Partnership. Except with the written consent of Two-Thirds in Interest of the Limited Partners, the Limited Partners shall not be required to contribute capital to the Partnership in an aggregate amount greater than thirty-three and one-third percent (33-1/3%) of the Limited Partners' aggregate Capital Commitments to the Partnership for all periods up to the first annual anniversary of the Partnership Term nor in an aggregate amount greater than sixty-six and two-thirds percent (66-2/3%) of the Limited Partners' Capital Commitments to the Partnership for all period up to the second annual anniversary of the Partnership Term.

      3.3    <u>Initial Capital Contribution of the General Partner</u>. On the Initial Contribution Date, the General Partner shall contribute capital, in cash, to the Partnership in an amount equal to one and one-ninety-ninth percent (1-1/99%) of the aggregate Capital Contributions of all of the Limited Partners.

      3.4    <u>Subsequent Capital Contributions of the General Partner</u>. The General Partner shall, on any date on which a Limited Partner makes a contribution to the capital of the Partnership pursuant to Paragraph 3.2, make an additional contribution, in cash, to the capital of the Partnership in an amount equal to one and one-ninety-ninth percent (1-1/99%) of the amount contributed by such Limited Partner or Partners on such date. The aggregate amount that the General Partner has contributed to the Partnership pursuant to this agreement plus any additional amounts the General Partner is obligated to contribute to the Partnership pursuant to this Paragraph 3.4 or elects to be obligated to contribute pursuant to Paragraph 3.5 shall constitute the Capital Commitment of the General Partner.

      3.5    <u>Noncontributing Partners</u>.

      (a)    The Partnership shall be entitled to enforce the obligations of each Partner to make the contributions to capital specified in this Article, and the Partnership shall have all remedies available at law or in equity in the event any such contribution is not so made.

      (b)    Additionally, should any Limited Partner (the "Optionor") fail to make one of the contributions required of it under Paragraph 3.1 or 3.2 (unless the obligation to make such contributions is in suspension or has been terminated pursuant to Paragraph 10.18(c) in connection with the withdrawal of such Limited Partner), the General Partner, if it determines that the Optionor has not taken or is not taking appropriate action to remedy such failure, may, at its option, declare the Optionor to be in default, whereupon (x) the Optionor shall no longer have the right to vote on any matter presented to Limited Partners for a vote and (y) the other Limited Partners (the "Optionees") and the General Partner shall have the right and option to acquire the Partnership interest of any Optionor, as follows (provided, however, that in the case of an Optionor having a Capital Commitment of Five Hundred Thousand Dollars ($500,000) or less, then only Limited Partners having Capital Commitments of One Million Dollars ($1,000,000) or more shall have the right and option to acquire the Partnership interest of such Optionor and, accordingly only such Limited Partners shall be considered Optionees with respect to such default):

      (i)    Should the General Partner declare an Optionor to be in default in making any such contribution, the General Partner shall promptly notify such Optionor

thereof. If such default continues for ten (10) or more days after notice thereof, the General Partner shall notify the Optionees of the default within twenty (20) days after the expiration of the aforesaid ten (10) day notice period. Such notice shall advise each Optionee of the portion and the price of the Optionor's interest available to it. The portion available to each Optionee shall be that portion of the Optionor's interest that bears the same ratio to the Optionor's entire interest as each Optionee's Partnership Percentage bears to the aggregate Partnership Percentages of all the Limited Partners other than the Optionor. The aggregate price for the Optionor's interest shall be the lesser of (A) an amount equal to (1) the balance that would have been in the Optionor's Partnership Capital Account as of the due date of the additional contribution if the Partnership had terminated on such date and all allocations necessary to determine the closing Partnership Capital Accounts of the Partners under Paragraph 8.2 had been effected less (2) the aggregate amount of any distributions made to the Optionor (with such distributions being valued at fair market value on the date of distribution pursuant to Paragraph 9.2(c)) under this Agreement which are effected from and after such due date to the date of purchase (which shall be the date of delivery of payment to Optionor in accordance with Paragraph 3.5(b)(v) below) of Optionor's interest hereunder, but in no event less than zero or (B) an amount equal to (1) the aggregate amount of the Optionor's capital contributions less (2) the aggregate amount of any distributions made to the Optionor (with such distributions being valued at fair market value on the date of distribution pursuant to Paragraph 9.2(c)) from inception of the Partnership through the date of purchase of Optionor's interest hereunder, but in no event less than zero. The price for each Optionee shall be prorated according to the portion of the Optionor's interest purchased by each such Optionee. The option granted hereunder shall be exercisable at any time within forty-five (45) days after the date of the notice from the General Partner by delivery to the Optionor in care of the General Partner of a notice of exercise of option together with payment therefor and, if applicable, a security agreement in accordance with Paragraph 3.5(b)(v) below, which notice and documents the General Partner shall promptly forward to the Optionor.

(ii)     Should any Optionee not exercise its option within said forty-five (45) day period provided in Paragraph (i), the General Partner shall immediately notify the other Optionees, who shall have the right and option ratably among them to acquire the portion of the Optionor's interest not so acquired (the "Remaining Portion") within forty-five (45) days after the date of the notice specified in this Paragraph on the same terms as provided in Paragraph (i).

(iii)     The amount of the Remaining Portion not acquired by the Optionees pursuant to Paragraph (ii) may be acquired by the General Partner within forty-five (45) days of the expiration of the forty-five (45) day period specified in Paragraph (ii) on the same terms as set forth in Paragraph (i); provided, however, that the General Partner may not acquire any amount of a Remaining Portion that would cause the aggregate amount of all Remaining Portions cumulatively so acquired by the General Partner to exceed twenty-five percent (25%) of the total Limited Partners' interests. In the event that the General Partner acquires a Limited Partner interest in the Partnership pursuant to this Paragraph 3.5(b)(iii) the General Partner will not be entitled to vote such interest with respect to any matter submitted to the vote of Limited Partners pursuant to this Agreement.

(iv)    The amount of the Remaining Portion not acquired by the Optionees and the General Partner may, if the General Partner deems it in the best interests of the Partnership, be sold to any other individuals or entities on terms not more favorable to such parties than those applicable to the Optionees' option.   Any consideration received by the Partnership for such amount of the Optionor's interest in excess of the price payable to the Optionor therefor shall be retained by the Partnership.   In lieu of the foregoing, the General Partner may, if the General Partner deems it in the best interests of the Partnership, cause the Partnership to (A) repurchase on the same terms applicable to the Optionees' options some or all of the amount of the Remaining Portion not acquired by the Optionees and the General Partner (the "Unpurchased Remaining Portion") and (B) issue to any other individuals or entities (on terms not more favorable to such parties than those applicable to the Optionee's option) a Limited Partnership interest in the Partnership substantially identical in all respects to the Unpurchased Remaining Portion repurchased pursuant to clause (A) hereof; provided, however, that the Partnership Capital Account balance of such newly admitted Limited Partner shall be determined without reference to the Partnership Capital Account balance of the Optionor.   Such newly admitted Limited Partner shall be deemed, solely for purposes of computing such Limited Partner's Partnership Percentage pursuant to Paragraph 4.2(i) hereof, to have contributed to the capital of the Partnership the sum of the amount the Optionor had previously contributed to the Partnership with respect to the Unpurchased Remaining Portion that such Limited Partner's interest replaced plus any amounts actually contributed to the capital of the Partnership pursuant to Paragraph 3.5(b)(vi) (or any corresponding provision applicable to such Limited Partner).   In the event that not all of the Remaining Portion is sold as provided herein, then (x) notwithstanding any other provision of this Agreement, the Optionor shall be entitled only to receive an amount equal to the portion of its Partnership Capital Account balance representing the Unpurchased Remaining Portion (with such balance being determined at the time of its failure to make one of the capital contributions required of it hereunder, without adjustment for any unrecognized gains but adjusted for any unrecognized losses as of such date and further adjusted from time to time as set forth in clause (z) hereof)) such amount to be payable upon termination of the Partnership, without interest, as provided in Paragraph 8.1(d), (y) notwithstanding the provisions of Article IV and Paragraph 8.2(d), items of Net Income and Loss and Capital Transaction Gain and Loss shall be allocated to the Partnership Capital Account of the Optionor so as to cause its positive Partnership Capital Account balance to equal at all times the amount it is entitled to receive pursuant to clause (x) hereof and (z) as of the first day of each Fiscal Quarter of the Partnership commencing after any such default, there shall be deducted from the Partnership Capital Account of the Optionor an amount equal to the excess of the quarterly management fee that would have been payable pursuant to Paragraph 5.1(b) for such Fiscal Quarter had the Defaulting Partner not defaulted over the quarterly management fee actually payable pursuant to Paragraph 5.1(b) for such Fiscal Quarter, and the amount so deducted shall be paid to the General Partner or its designee in lieu of the management fee which would otherwise have been due on such unpaid Capital Commitment, so that the aggregate amount payable to the General Partner or its designee pursuant to this clause (z) and pursuant to Paragraph 5.1 shall not be less than the amount that would have been paid had there been no default by the Optionor.

(v)    The price due from each of the General Partner and the Optionees shall, at the separate elections of the General Partner and each Optionee, be payable to the Optionor either in cash (or cash equivalent) or by a noninterest bearing, nonrecourse

promissory note in the form of Exhibit A, due six (6) months after the Date of Termination of the Partnership. Each such note shall be secured by the portion of the Optionor's Partnership interest purchased by its maker pursuant to a security agreement in the form of Exhibit B and shall be enforceable by the Optionor only against such security.

(vi)    Upon exercise of any option hereunder, each Optionee shall be obligated (A) to contribute to the Partnership that portion of the additional capital then due from the Optionor equal to the percentage of the Optionor's interest purchased by such Optionee and (B) to pay the same percentage of any further contributions otherwise due from such Optionor.

(vii)    Upon the General Partner's purchase of a limited partnership interest pursuant to Paragraph 3.5(b)(iii) above, the General Partner shall be treated to that extent as a Limited Partner, and the Optionor's Partnership Capital Account shall be transferred to the General Partner to the extent of its purchase.

(viii)    Notwithstanding anything herein to the contrary, no purchase and sale of an Optionor's partnership interest pursuant to Paragraph 3.5 shall be permitted if the General Partner shall reasonably determine that such purchase and sale may result in a violation of the Securities Act of 1933, as amended, or the provisions of the Employee Retirement Income Security Act of 1974, as amended.

(c)    If, pursuant to Paragraph 10.18, a Limited Partner is released from its obligation to make an additional capital contribution (the "Released Amount"), the other Limited Partners shall have the right to agree to contribute the Released Amount pro rata in accordance with their then existing Partnership Percentages. Should any of the other Limited Partners elect not to agree to contribute its pro rata portion of the Released Amount or elect to agree to contribute less than its pro rata share, then the other Limited Partners agreeing to contribute under this Paragraph 3.5(c) shall have the right to contribute such amount ratably in accordance with their then existing Partnership Percentages. Thereafter, any portion of the Released Amount not agreed to be contributed by the Limited Partners may be agreed to be contributed by the General Partner. Any portion of the Released Amount not agreed to be contributed by the Limited Partners or the General Partner may, if the General Partner deems it in the best interest of the Partnership, be made available to any other entities, corporations, partnerships or individuals. Partners contributing capital under this Paragraph 3.5(c) shall not be obligated to make additional capital contributions otherwise due then or later from the Limited Partner being released from its obligation to make an additional capital contribution, except to the extent that they elect to be so obligated. This Paragraph 3.5(c) shall apply separately to continuing and successive applications of Paragraph 10.18

## ARTICLE IV

## CAPITAL ACCOUNTS AND ALLOCATIONS

4.1    Partnership Capital Accounts.    A Partnership Capital Account shall be maintained on the Partnership's books for each Partner. In the event any interest in the Partnership is transferred in accordance with the terms of this Agreement, the transferee shall

succeed to the Partnership Capital Account of the transferor to the extent it relates to the transferred interest.

    4.2   <u>Definitions</u>.  Unless the context requires otherwise, the following terms have the meanings specified in this Paragraph:

    (a)   <u>Book Value</u>.  The Book Value with respect to any asset shall be the asset's adjusted basis for federal income tax purposes, except as follows:

    (i)   The initial Book Value of any asset contributed by a Partner to the Partnership shall be the fair market value of such asset at the time of contribution, as determined by the contributing Partner and the Partnership.  The preceding sentence shall not be interpreted as authorizing the General Partner to contribute to the Partnership any asset other than cash or to accept other than cash contributions from any Limited Partner.

    (ii)   In the discretion of the General Partner, the Book Values of all Partnership assets may be adjusted to equal their respective fair market values, as determined by the General Partner, and the resulting unrecognized gain or loss allocated to the Partnership Capital Accounts of the Partners pursuant to the provisions of this Article IV as Capital Transaction Gain or Loss or Net Income or Loss, as the case may be, in the same manner as though each such asset had been sold for an amount of consideration equal to its respective fair market value, immediately prior to the following times:  (A) the acquisition of an additional interest in the Partnership by any new or existing Partner (other than pursuant to Paragraph 7.6(b)) in exchange for more than a de minimis capital contribution; and (B) the distribution by the Partnership to a Partner of more than a de minimis amount of Partnership assets, unless all Partners receive simultaneous distributions of either undivided interests in the distributed property or identical Partnership assets in proportion to their interests in the Partnership.

    (iii)   The Book Values of all Partnership assets shall be adjusted to equal their respective fair market values, as determined by the General Partner, and the resulting unrecognized gain or loss allocated to the Partnership Capital Accounts of the Partners pursuant to the provisions of this Article IV as Capital Transaction Gain or Loss or Net Income or Loss, as the case may be, in the same manner as though each such asset had been sold for an amount of consideration equal to its respective fair market value, as of the following times: (A) the date the Partnership is liquidated within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(g); and (B) the termination of the Partnership pursuant to the provisions of this Agreement.

    (iv)   The Book Values of Partnership assets shall be increased or decreased to the extent required under Treasury Regulation Section 1.704-1(b)(2)(iv)(m) in the event that the adjusted tax basis of Partnership assets is adjusted pursuant to Code Sections 732, 734 or 743.

    (v)   The Book Value of a Partnership asset shall be adjusted by the depreciation, amortization or other cost recovery deductions, if any, taken into account by the

Partnership with respect to such asset in computing Net Income or Loss or Capital Transaction Gain or Loss.

(b)    Capital Transaction Gain or Loss:  An amount computed for any relevant period, as of the last day thereof, that is equal to the total of (i) the aggregate amount recognized on the Sale or Exchange of securities or other assets held by the Partnership during such period less the sum of (A) the Book Value of such securities or other assets as of the date of such sale or exchange, plus (B) the Partnership's expenses associated with the sale or exchange of such securities or other assets; (ii) the Partnership's distributive share of income, gain, loss, deduction or credit (or item thereof) derived from its interest in partnerships, provided such amount would have been Capital Transaction Gain or Loss if realized directly by the Partnership; (iii) dividend income, royalty income and interest income and similar amounts (including, without limitation, income with respect to points, loan commitment fees, original issue discount and market discount) of the Partnership, whether derived from actual or constructive distributions of cash or property but excluding amounts derived from Money Market Investments; and (iv) the aggregate adjustment to the Book Value of Partnership assets computed under Paragraphs 4.2(a) (ii), (iii) and (iv) (except to the extent such adjustments result in Net Income or Loss); and (v) any other amount specifically designated as Capital Transaction Gain or Loss hereunder including, without limitation, amounts so designated pursuant to Paragraphs 6.4(c) and 8.2(b).

(c)    Contingent Loss:  That part of the General Partner's share of Partnership Capital Transaction Loss or Net Loss that is allocated to the Limited Partners' Partnership Capital Accounts pursuant to Paragraph 4.5 below.

(d)    Fiscal Quarter:  The Fiscal Quarters of the Partnership shall begin on January 1, April 1, July 1, and October 1, and end on March 31, June 30, September 30, and December 31, respectively.

(e)    Fiscal Year:  The Partnership's first Fiscal Year shall begin on the date hereof and end on December 31, 1998.  Thereafter, the Partnership's Fiscal Year shall commence on January 1 of each year and end on December 31 of such year or, if earlier, the date the Partnership terminated during such year pursuant to Paragraph 2.2 or otherwise.  The General Partner at any time may elect a different Fiscal Year if permitted by the Code and the applicable Treasury Regulations.

(f)    Interim Period:  If a Partnership interest is transferred, the General Partner converts to a Limited Partner, the Partnership Percentage of any Partner changes, or a Partner withdraws or a new Partner is admitted to the Partnership other than on the first day of any Fiscal Quarter during the Partnership Term or if the General Partner shall so elect, then the date of such event or election (the "Interim Date") shall commence an Interim Period.  An Interim Period shall end on the last day of the Fiscal Quarter in which the Interim Period began or on the day immediately preceding the beginning of a new Interim Period, whichever is earlier.

(g)    Net Income and Net Loss:  Net Income and Net Loss shall be the net book income or loss of the Partnership for any relevant period computed without taking into account items comprising Capital Transaction Gain or Loss.  The net book income or loss of the

Partnership shall be computed in accordance with Federal income tax principles; (i) under the method of accounting elected by the Partnership for federal income tax purposes, (ii) as applied without regard to any recharacterization of transactions or relationship that might otherwise be required under such tax principles and (iii) as otherwise adjusted pursuant to the following provisions. The net book income or loss of the Partnership shall be computed, inter alia, by:

      (i)     including as income or deductions, as appropriate, any tax-exempt income and related expenses that are neither properly included in the computation of taxable income nor capitalized for federal income tax purposes;

      (ii)     including as a deduction when paid or incurred (depending on the Partnership's method of accounting) any amounts utilized to organize the Partnership or to promote the sale of (or to sell) an interest in the Partnership, except that amounts for which an election is properly made by the Partnership under Section 709(b) of the Code shall be accounted for as provided therein;

      (iii)     including as a deduction any losses incurred by the Partnership in connection with the sale or exchange of property notwithstanding that such losses may be disallowed to the Partnership for federal income tax purposes under the related party rules of Code Sections 267(a)(1) or 707(b) or otherwise; and

      (iv)     calculating the gain or loss on disposition of Partnership assets and the depreciation, amortization or other cost recovery deductions, if any, with respect to Partnership assets by reference to their Book Value rather than their adjusted tax basis.

Any expense (including, without limitation, processing and commitment fees) paid or incurred with respect to the Preferred Limited Partnership Interests issued pursuant to the SBA Annex shall be treated as an item of Net Income or Net Loss and not as an item of Capital Transaction Gain or Loss.

      (h)    Partnership Capital Account: The Partnership will maintain with respect to each Partner a Partnership Capital Account in accordance with this Paragraph 4.2(h). In addition, the Partnership will maintain with respect to each Partner a Capital Account in accordance with Article V of the SBA Annex, solely for the purposes of determining the amount and timing of allocations of Net Total Profits and Net Total Losses to be made to the Preferred Limited Partners and shall accordingly have no effect on the determination of the apportionment between the General Partner and the Private Limited Partners of amounts available for distribution to such Partners. Such apportionment shall be based on the Partnership Capital Account balances maintained in accordance with the following provisions:

The Partnership Capital Account of each Partner shall be increased by:

      (i)     the amount of money contributed to the Partnership by such Partner,

      (ii)     such Partner's share of Capital Transaction Gain and Net Income (or items thereof) allocated to its Partnership Capital Account pursuant to this Agreement, and

(iii)    any other amounts required by Treasury Regulation Section 1.704-1(b), provided that the General Partner determines that such increase is consistent with the economic arrangement among the Partners as expressed in this Agreement.

and shall be decreased by:

(i)    the amount of money and the fair market value of any property distributed by the Partnership (with such distributions being valued at fair market value on the date of distribution pursuant to Paragraph 9.2), net of any liabilities secured by such property that such Partner is considered to assume or hold subject to for purposes of Section 752 of the Code,

(ii)    such Partner's share of Capital Transaction Loss and Net Loss (or items thereof) allocated to its Partnership Capital Account pursuant to this Agreement, and

(iii)    any other amounts required by Treasury Regulation Section 1.704-1(b), provided that the General Partner determines that such decrease is consistent with the economic arrangement among the Partners expressed in this Agreement.

One Partnership Capital Account shall be maintained for the General Partner in its capacity as general partner of the Partnership, and another wholly separate Partnership Capital Account shall be maintained for the General Partner in its capacity as a Limited Partner of the Partnership, if any.  Any reference in this Agreement to the "General Partner's Partnership Capital Account," the "Partnership Capital Account of the General Partner" or the like shall refer to the Partnership Capital Account maintained for the General Partner in its capacity as general partner of the Partnership.  In addition, for purposes of this Agreement, allocations and distributions made to the General Partner in its capacity as a Limited Partner of the Partnership, if any, shall be treated as having been made to a Limited Partner and, accordingly, shall not be treated as having been "made to the General Partner."

(i)    Partnership Percentage:  The Partnership Percentage for each Partner shall be determined by dividing the sum of the amount of each Partner's capital contributions (including the capital contribution of any predecessor Partners but excluding the capital contribution attributable to any portion of a Partner's interest that such Partner has transferred) plus the amount of such Partner's unpaid Capital Commitment by the sum of the aggregate capital contributions of all of the Partners (including the capital contributions of any predecessor Partners and capital contributions attributable to interests (or portions thereof) that have been transferred) plus the unpaid Capital Commitment of all of the Partners.  The sum of the Partners' Partnership Percentages shall be one hundred percent (100%).  The aggregate Partnership Percentage of the Limited Partners as a group shall be the sum of the Partnership Percentages of each of the Limited Partners.  For purposes of computing any Partner's Partnership Percentage, any capital contribution made by an Optionor (as defined in Paragraph 3.5(b)) with respect to any Unpurchased Remaining Portion described in clause 3.5(b)(iv)(x) shall be disregarded.

(j)    Sale or Exchange:  A Sale or Exchange shall be a sale, exchange, liquidation or similar transaction, event, or condition with respect to any assets (except

realizations of purchase discounts on commercial paper, certificates of deposit, or other money-market instruments) of the Partnership of the type that would cause any realized gain or loss to be recognized for income tax purposes under the Code (as determined without giving effect to the related party rules of Code Sections 267(a)(1), 707(b) and any other provision that defers or eliminates recognition or gain or loss based solely upon the relationship between transferor and transferee).

    4.3  <u>Allocation of Capital Transaction Gain or Loss</u>.

      (a)  <u>Allocation of Capital Transaction Gain</u>. Except as otherwise provided in Paragraph 8.2, Capital Transaction Gain of the Partnership for each Fiscal Quarter or Interim Period shall be allocated as follows:

        (i)  Twenty percent (20%) of the Partnership's Capital Transaction Gain shall be allocated to the Partnership Capital Account of the General Partner; provided, however, that if the Partnership Capital Accounts of one or more of the Limited Partners contain a Contingent Loss, then one percent (1%) of the Partnership's total Capital Transaction Gain shall be allocated to the Partnership Capital Account of the General Partner and any remaining Partnership Capital Transaction Gain that would otherwise be allocated entirely to the Partnership Capital Account of the General Partner pursuant to this subparagraph shall instead be allocated first to the Partnership Capital Accounts of the Limited Partners (in proportion to the amount of Contingent Loss in their respective Partnership Capital Accounts) until the Limited Partners receive up to an aggregate amount equal to the previously allocated Contingent Loss that has not been restored by prior allocations pursuant to this subparagraph and then any such remaining Partnership Capital Transaction Gain shall be allocated to the Partnership Capital Account of the General Partner.

        (ii)  The remaining eighty percent (80%) of the Partnership's Capital Transaction Gain shall be allocated to the Partnership Capital Accounts of all Partners as a group.

      (b)  <u>Allocation of Capital Transaction Loss</u>. Except as otherwise provided in Paragraph 8.2, Capital Transaction Loss of the Partnership for each Fiscal Quarter or Interim Period shall be allocated as follows:

        (i)  Twenty percent (20%) of the Partnership's Capital Transaction Loss shall be allocated to the Partnership Capital Account of the General Partner.

        (ii)  The remaining eighty percent (80%) of such Capital Transaction Loss shall be allocated to the Partnership Capital Accounts of all Partners as a group.

      (c)  <u>Allocation Adjustments</u>. Notwithstanding anything in this Agreement to the contrary, in connection with allocations to the Partners' Capital Accounts pursuant to Section 5.3 of the SBA Annex, it is the intention of the General Partner and Limited Partners that the economic burden of any amount paid or distributed to the Preferred Limited Partners or the SBA in excess of the aggregate Commitments (as defined in the SBA Annex) of the Preferred Limited Partners shall be borne by the General Partner and Private Limited Partners, in proportion to their respective Partnership Percentages. Accordingly, for purposes of

this Agreement (i) any amounts of Net Profits or Net Losses (as such terms are defined in the SBA Annex) allocated to the Capital Accounts of the Preferred Limited Partners pursuant to the SBA Annex hereunder with respect to any fiscal period shall be treated as being comprised of a pro-rata share of each item of Capital Transaction Gain or Capital Transaction Loss (as the case may be) and Net Income or Net Loss (as the case may be) of the Partnership for such fiscal period, (ii) the amount of each such item that is allocated to the Capital Accounts of the Preferred Limited Partners shall result in a corresponding decrease in the aggregate amount of such item that is available to be allocated pursuant to the provisions of this Agreement to the Partnership Capital Accounts of the General Partner and each of the Private Limited Partners, and (iii) the amount of such decrease shall be apportioned among the General Partner and each Private Limited Partner in proportion to their respective Partnership Percentages (e.g., if at any point in time the General Partner has a Partnership Percentage of one percent (1%), the Private Limited Partners in the aggregate have a Partnership Percentage of ninety-nine percent (99%), and the Capital Accounts of the Preferred Limited Partners are treated pursuant to this clause (B) as being allocated one hundred dollars ($100.00) of Partnership capital gain from the sale of a security, the Partnership Capital Account of the General Partner will be allocated one dollar ($1.00) less Partnership capital gain from the sale of such security than it would have been allocated had no such gain been treated pursuant to this as allocated to the Capital Accounts of the Preferred Limited Partners and the Partnership Capital Accounts of the Limited Partners, excluding the Preferred Limited Partners, in the aggregate will be allocated ninety-nine dollars ($99.00) less Partnership capital gain from the sale of such security than they would have been allocated had no such gain been treated pursuant to this clause (B) as being allocated to the Capital Accounts of the Preferred Limited Partners). In the event that the allocation scheme set forth in the preceding sentence does not achieve the intention of the General Partner and Limited Partners as set forth in the second sentence of this clause (B), the General Partner may vary such allocation scheme or the method of maintaining Capital Account balances to the extent necessary to achieve such intention.

     4.4   <u>Allocation of Net Income or Loss</u>.  Except as otherwise provided in Paragraph 8.2, Net Income or Loss of the Partnership for each Fiscal Quarter or Interim Period shall be allocated to the Partnership Capital Accounts of all Partners as a group.

     4.5   <u>Reallocation of Contingent Losses</u>.  If for any Fiscal Quarter or Interim Period after the Partnership's Capital Transaction Gain or Loss and Net Income or Loss has been allocated pursuant to Paragraphs 4.3 and 4.4, the closing Adjusted Partnership Capital Account Balance (as defined in Paragraph 6.4(i)) of the General Partner has been reduced below zero by more than the amount necessary to properly reflect the General Partner's obligation to recontribute amounts to the Partnership pursuant to Paragraph 8.3 upon termination of the Partnership (as determined by disregarding clause (iii) of the first sentence of Paragraph 8.3)), then an amount of Net Loss and, to the extent necessary, Capital Transaction Loss (collectively, the "Contingent Loss") shall be reallocated from the General Partner's Partnership Capital Account to the Partnership Capital Accounts of the Limited Partners as a group so that the General Partner's closing Adjusted Partnership Capital Account Balance is not reduced below zero by more than the amount necessary to properly reflect the General Partner's obligation to recontribute amounts to the Partnership pursuant to Paragraph 8.3 upon termination of the Partnership (as determined by disregarding clause (iii) of the first sentence of Paragraph 8.3)). A Contingent Loss may be restored only from future Net Income and Capital Transaction Gain

(including all amounts treated under Paragraphs 6.4(c), 8.2(b) and any other provisions of this Agreement as Capital Transaction Gain).

4.6    Allocation Among Partners.  Except as otherwise specifically provided in this Agreement, all Capital Transaction Gain and Loss and Net Income and Loss (and items thereof) allocated to the Partnership Capital Accounts of the Limited Partners as a group for any period shall be allocated among the Limited Partners in proportion to their respective Partnership Percentages as of the end of such period.  Except as otherwise specifically provided in this Agreement, all Capital Transaction Gain and Loss and Net Income and Loss (and items thereof) allocated to the Partnership Capital Accounts of all Partners as a group for any period shall be allocated among the Partners in proportion to their respective Partnership Percentages as of the end of such period.

4.7    Special Allocation Among Late-Entering Limited Partners of Organization and Operating Expenses.  The following items of Net Income or Loss or Capital Transaction Gain or Loss are collectively referred to herein as "Operating Expenses":

(i)    Payments of the management fee set forth in Paragraph 5.1;

(ii)    All expenditures of the Partnership classified for federal income tax purposes as syndication or organization expenses; and

(iii)    All expenditures specified in Paragraph 5.2(b), to the extent such expenditures would be included as items of Net Income or Loss rather than Capital Transaction Gain or Loss and also are not required to be added to the adjusted tax basis of any Partnership asset, the disposition of which would give rise to a Capital Transaction Gain or Loss.

All Operating Expenses allocated for any period to the Partnership Capital Accounts of the Limited Partners under Paragraph 4.4 (as a component of the Net Income or Loss so allocated) or under Paragraph 4.3 (as a component of the Capital Transaction Gain or Loss so allocated) shall be specially allocated among the Partnership Capital Accounts of the Limited Partners so that, after giving effect to the allocations provided for in Paragraph 4.8 hereof for such period, such Operating Expenses are allocated among the Partnership Capital Accounts of the Limited Partners in proportion to their respective Partnership Percentages as of the end of such period; provided, however, that if additional Limited Partners are admitted to the Partnership pursuant to Paragraph 7.6(b) hereof, such Operating Expenses shall be allocated among the Partnership Capital Accounts of the Original Limited Partners and the Limited Partners admitted pursuant to Paragraph 7.6(b) hereof from time to time so that, to the extent possible, after giving effect to the allocations provided for in Paragraph 4.8 hereof through such period, the cumulative Operating Expenses allocated with respect to such Limited Partners at any time is proportionate to their respective Partnership Percentages.

After giving effect to the allocations provided for in this Paragraph 4.7, any remaining items comprising the Net Income or Net Loss allocated to the Partnership Capital Accounts of the Limited Partners pursuant to Paragraph 4.4 or Capital Transaction Gain or Loss so allocated pursuant to Paragraph 4.3 shall be allocated among the Limited Partners as provided in

Paragraph 4.6. In no event shall this Paragraph 4.7 be interpreted so as to authorize the reallocation of any items subject to allocation under Paragraph 4.8.

4.8    <u>Special Allocation of Syndication Expenses</u>.    Notwithstanding Paragraph 4.4, all expenditures classified as syndication expenses under Treasury Regulations Section 1.709-2(b) allocated for any period to the Partnership Capital Accounts of the Limited Partners under Paragraph 4.4 (as a component of the Net Income or Loss so allocated) shall be specially allocated among the Partnership Capital Accounts of the Limited Partners in proportion to their respective Partnership Percentages as of the end of such period; provided, however, that if additional Limited Partners are admitted to the Partnership pursuant to Paragraph 7.6(b) hereof, all such syndication expenses shall be allocated among the Partnership Capital Accounts of the Original Limited Partners and the Limited Partners admitted pursuant to Paragraph 7.6(b) hereof from time to time so that, to the extent possible, the cumulative syndication expenses allocated with respect to such Limited Partners at any time is proportionate to their respective Partnership Percentages. In the event the General Partner shall determine that such result is not likely to be achieved through future allocations of such syndication expenses, the General Partner may allocate a portion of Net Income or Loss (or items thereof) so as to achieve the same effect on the Partnership Capital Accounts of such Limited Partners.

ARTICLE V

<u>MANAGEMENT FEE; EXPENSES</u>

5.1 . <u>Management Fee</u>.

(a)    The General Partner or, if the General Partner elects, an entity or entities controlled by the Original Managing Members of the General Partner shall be compensated for services rendered to the Partnership until the Date of Termination for each Fiscal Quarter by the payment by the Partnership in cash to the General Partner (or its designee) on the first day of such Fiscal Quarter (or portion thereof) of a management fee; provided that the management fee for all Fiscal Quarters commencing prior to the Initial Contribution Date shall be paid on the Initial Contribution Date.

(b)    The management fee for each of the Partnership's Fiscal Quarters shall be an amount equal to the product of (i) 0.625% and (ii) the Regulatory Capital (as defined in the SBA Annex) of the Partnership as of the first day of each such Fiscal Quarter plus, if as of the first day of such Fiscal Quarter the Partnership is a Licensee, the lesser of (A) $60,000,000 or (B) two times the Regulatory Capital of the Partnership as of the first day of such Fiscal Quarter; provided, however, that the management fee for the Partnership's first Fiscal Quarter shall be based upon the ratio that the number of days in the period beginning on the Commencement Date and ending on the close of the Fiscal Quarter within which such Commencement Date falls bears to ninety (90).

(c)    The foregoing management fee shall be reduced for the twelve-month period commencing on January 1, 2005, and on each anniversary thereof as follows:

(i)      For the twelve-month period commencing on January 1, 2005, the management fee for each of the Partnership's Fiscal Quarters shall be calculated as set forth in subparagraph (b) except that the 0.625% figure set forth in clause (i) of the first sentence thereof shall be reduced to equal 0.5625%;

(ii)      For the twelve-month period commencing on January 1, 2006, the management fee for each of the Partnership's Fiscal Quarters shall be calculated as set forth in subparagraph (b) above except that the 0.625% figure set forth in clause (i) of the first sentence thereof shall be reduced to equal 0.5%;

(iii)      For the twelve-month period commencing on January 1, 2007, the management fee for each of the Partnership's Fiscal Quarters shall be calculated as set forth in subparagraph (b) above. except that the 0.625% figure set forth in clause (i) of the first sentence thereof shall be reduced to equal 0.4375%;

(iv)      After January 1, 2008 the management fee for each of the Partnership's Fiscal Quarters shall be calculated as set forth in subparagraph (b) except that the 0.625% figure set forth in clause (i) of the first sentence thereof shall be reduced to equal 0.375%.

(v)      In the event that the Partnership Term is extended beyond ten (10) years after the Commencement Date pursuant to Paragraph 8.1(e), the management fee for each of the Partnership's Fiscal Quarters during any such extension period(s) shall be the lesser of (i) the product of (x) 0.375% and (y) three times the Regulatory Capital of the Partnership as of the first day of each such Fiscal Quarter or (ii) the product of (x) 0.625% and the Net Asset Value as of the first day of each such Fiscal Quarter. As used in this Paragraph, "Net Asset Value" as of a specified date means the amount by which the value of the assets of the Partnership exceed the liabilities of the Partnership as of that date, determined in accordance with Paragraph 9.2 of this Agreement.

(d)      Notwithstanding the foregoing provisions of this Section 5.1, if the Partnership is a Licensee on October 1, 2003, then commencing on such date, the management fee for such Fiscal Quarter and all subsequent Fiscal Quarters that the Partnership is a Licensee shall not exceed 0.625% of the Partnership's Combined Capital (as such term in defined in the SBIC Regulations and as determined as of the end of such Fiscal Quarter) plus, if the Partnership's Combined Capital is less than Twenty Million Dollars ($20,000,000), an additional Thirty-One Thousand Two Hundred Fifty Dollars ($31,250).

5.2    Expenses.

(a)      From the management fee, the General Partner (or its designee) shall bear all normal expenses incurred in connection with the management of the Partnership, except for those expenses borne directly by the Partnership set forth in Paragraph 5.2(b), (c), and (d). Such normal management expenses to be borne by the General Partner (or its designee) shall include (but not by way of limitation) expenditures on account of salaries, wages, travel, entertainment, and other expenses of the Partnership's employees, if any, and of the General Partner's (or its designee's) partners and employees; rentals payable for space used by the

General Partner (or its designee) or the Partnership; bookkeeping services and equipment, fees and expenses of independent consultants and investment advisers; liability and other insurance premiums (other than insurance premiums specified below); preparation of annual and other reports to the Partners; expenses incurred in investigating and evaluating investment opportunities and in managing investments of the Partnership; and membership dues for professional and trade associations of which the Partnership is or becomes a member. The General Partner shall also bear the cost of any private placement, finder's fees or similar fees incurred in connection with the formation of the Partnership and the purchase or sale of limited partnership interests therein.

(b)    The Partnership shall bear costs and expenses incurred in the purchase, holding or Sale or Exchange of Securities, including, but not by way of limitation, processing and commitment fees paid or incurred with respect to Preferred Limited Partnership Interests, interest and other fees associated with Partnership borrowings, reasonable private placement and finder's fees paid to persons other than Affiliates of the General Partner or the members of the General Partner, real property or personal property taxes on investments, brokerage fees, taxes applicable to the Partnership on account of its operations, fees incurred in connection with the maintenance of bank or custodian accounts, legal, audit, and other expenses incurred in connection with the registration of the Partnership's Securities under the Securities Act, and legal fees and expenses incurred in the purchase or Sale or Exchange of Securities (whether or not such purchase, Sale or Exchange is ultimately consummated). The Partnership shall also bear legal costs incurred in connection with the operation of the Partnership and the fees of the independent certified public accountant referred to in Paragraph 9.1 hereof incurred in connection with the annual audit of the Partnership's books and the preparation of the Partnership's annual tax return, costs of independent appraisers, costs associated with Partnership information meetings contemplated by Paragraph 9.8 hereof, and all expenses that are not normal operating expenses, including all legal fees and expenses incurred in prosecuting or defending administrative or legal proceedings relating to the Partnership brought by or against the Partnership or the General Partner or its members or agents, including all costs and expenses arising out of or resulting from the Partnership's indemnification pursuant to Paragraph 10.13 hereof and subject to the limitations imposed therein. The General Partner shall obtain the approval of the Advisory Committee prior to causing the Partnership to voluntarily incur any unusual item of expense in excess of $50,000. The Partnership shall bear the costs of insurance premiums, if any, of insurance maintain insurance in the nature of directors and officers liability insurance covering the Partnership, the General Partner and the Members and Affiliates thereof, including the procurement of insurance for any potential indemnification liability of the Partnership under this Agreement, and to secure insurance for the Partnership against liability or other loss with respect to the activities and assets of the Partnership. The insurance referred to in the preceding sentence shall not be required but may be obtained in the sole discretion of the General Partner.

(c)    The Partnership shall bear all organization costs, fees, and expenses (which expenses to be borne by the Partnership shall not exceed $250,000 without the approval of the Advisory Committee) incurred by or on behalf of the General Partner or any affiliate thereof in connection with the formation and organization of the Partnership, the General Partner including without limitation, legal and accounting fees and expenses incident thereto.

(d)     The Partnership shall bear all liquidation costs, fees, and expenses incurred by the General Partner (or its designee) in connection with the liquidation of the Partnership's assets pursuant to Article VIII hereof, specifically including but not limited to legal and accounting fees and expenses.

## ARTICLE VI

### WITHDRAWALS BY AND DISTRIBUTIONS TO THE PARTNERS

6.1     _Interest_.  No interest shall be paid to any Partner on account of its interest in the capital of, or on account of its investment in, the Partnership.

6.2     _Withdrawals by the Partners_.  No Partner may withdraw any amount from its Partnership Capital Account unless such withdrawal is made pursuant to this Agreement.

6.3     _Mandatory Cash Distributions_.

(a)     Each Partner shall promptly (and in no event later than ninety (90) days after the end of a calendar year during the Partnership Term) be distributed in cash an amount equal to the amount of Net Operating Income (as such term is defined in Article XI) allocated to such Partner's Partnership Capital Account with respect to all periods during such calendar year, except to the extent the Partnership is unable to effect such a distribution under the provisions of the SBIC Act or the SBIC Regulations, as applicable.

(b)     Within ninety (90) days of the end of each calendar year during the Partnership Term, each Partner shall be distributed in cash out of any available cash of the Partnership an amount equal to the sum of (i) the product of (x) the amount of net ordinary income allocated to such Partner with respect to its interest in the Partnership (as shown on such Partners' Schedule K-1 to the Partnership's IRS Form 1065) for such calendar year and (y) the maximum marginal rate of federal and state income tax applicable to an individual residing in Palo Alto, California with respect to such income (as determined by taking into account any limitations on the ability of an individual to deduct any items of expense or loss shown on such Partner's Schedule K-1), and (ii) the product of (x) the amount of net capital gain allocated to such Partner with respect to its interest in the Partnership (as shown on such Partners' Schedule K-1 to the Partnership's IRS Form 1065) for such calendar year and (y) the maximum marginal rate of federal and state income tax applicable to an individual residing in Palo Alto, California with respect to such income (as determined by taking into account any limitations on the ability of an individual to deduct any items of expense or loss shown on such Partner's Schedule K-1). In no event shall a distribution pursuant to this subparagraph (b) be required to the extent that the Partnership is unable to effect such a distribution under the provisions of the SBIC Act or the SBIC Regulations, if applicable.

(c)     Discretionary cash distributions effected pursuant to Paragraph 6.4 during any calendar year shall reduce the distribution otherwise required by this Paragraph with respect to such calendar year.

6.4    Discretionary Distributions.

(a)    Prior to the Date of Termination, the General Partner may in its discretion make additional distributions to the Partners of cash or Marketable Securities then held by the Partnership, including any amounts available for distribution to the General Partner and the Private Limited Partners pursuant to Article VI of the SBA Annex, with all such distributions being made pro rata to the Partners in accordance with their respective positive capital account balances, if any.

(b)    Whenever more than one type of Securities is being distributed in kind in a single distribution or whenever more than one class of Securities of a portfolio company (or a portion of a class of such Securities having a tax basis per share or unit different from other portions of such class) are distributed in kind by the Partnership, each Partner shall receive its ratable portion of each type, class or portion of such class of Securities distributed in kind (except to the extent that a disproportionate distribution is necessary to avoid distributing fractional shares).

(c)    Immediately prior to any distribution in kind of Securities (or other partnership assets) pursuant to any provision of this Agreement (including, if applicable, the provisions of the SBA Annex), the difference between the fair market value and the Book Value of any Securities (or other Partnership assets) distributed shall be allocated to the Partnership Capital Accounts of the Partners as a Capital Transaction Gain or Loss pursuant to Article IV.

(d)    Securities distributed in kind pursuant to this Paragraph 6.4 shall be subject to such conditions and restrictions as the General Partner determines are legally required. Such restrictions shall apply equally to the Securities distributed to all Partners.

(e)    At any time, the General Partner may distribute cash or Marketable Securities to all Partners in proportion to their Partnership Percentages, provided that, immediately after the proposed distribution the Adjusted Partnership Capital Account Balance (as defined in Paragraph 6.4(i) below) of the General Partner (as determined after adjusting such balance for the amount of such distribution and any Capital Transaction Gain or Loss deemed recognized by the Partnership pursuant to Paragraph 6.4(c) as a result thereof) will not be negative.

(f)    At any time, the General Partner may, in its sole discretion, distribute cash or Marketable Securities to all Limited Partners in proportion to their Partnership Percentages.

(g)    The General Partner may, in its sole discretion, elect to cause any distribution to a Partner under this Article VI to constitute an advance or draw against such Partner's distributive share of Partnership income provided that any such distribution shall, for purposes of determining the applicability of the limitations on distributions set forth in this Article VI, be deemed to result in a decrease in such Partner's Partnership Capital Account in accordance with Article IV hereof. The General Partner may, in its sole discretion, cause the Partnership to defer effecting, for a period of up to twelve months, any distribution of cash or cash equivalents to the General Partner that it would otherwise have been entitled to receive

pursuant to the provisions of this Article VI. In the event of a deferred distribution of assets pursuant to the preceding sentence, the General Partner shall be entitled to all amounts received by the Partnership with respect to the holding of such assets during the deferral period and, notwithstanding the provisions of Article IV, allocations of items of Net Income and Loss and Capital Transaction Gain and Loss shall be effected so that, upon distribution of such assets (and amounts received by the Partnership with respect to the holding of such assets during the deferral period) the Partnership Capital Account balances of all Partners are equal to the balances that would have existed had the distribution of such assets not been deferred. In no event shall such deferral be taken into account in determining the Partnership Percentage of the General Partner. The General Partner shall cause the Partnership to invest any funds available with respect to the deferral of a distribution as provided above only in Money-Market Investments.

(h)    Notwithstanding any other provision in this Agreement, (i) if any Limited Partner would be distributed an amount of any Security that would cause such Limited Partner to own or control in excess of the amount of such Security that it may lawfully own or control or may own or control without tax penalty, then upon receipt of notice to such effect from a Limited Partner, the General Partner shall promptly notify all other Limited Partners thereof and the General Partner shall vary the method of distribution, in an equitable manner, or, in the discretion of the General Partner, sell such Security on behalf of the affected Partner and distribute the net proceeds therefrom to such Partner so as to avoid such excessive ownership or control (in which case, to the extent allowable, the taxable gain or loss attributable to such sale shall be allocated to such Partner) and (ii) the General Partner may decline to make a distribution to any Limited Partner if the Partnership Capital Account Balance of such Limited Partner (as determined after adjusting such balance for the amount of such distribution and any Capital Transaction Gain or Loss deemed recognized by the Partnership pursuant to Paragraph 6.4(c) as a result thereof) will be negative.

(i)    For purposes of this Agreement the "Adjusted Partnership Capital Account Balance" of the General Partner as of any date shall be the balance in the Partnership Capital Account of the General Partner as of such date computed without regard to any such balance created as a result of any interest as a Limited Partner held by such General Partner.

(j)    At any time after the aggregate amount distributed to the Limited Partners for all periods pursuant to any provision of this Agreement shall equal or exceed the aggregate amount of capital contributed to the Partnership by all Limited Partners for all periods, the General Partner may, in its sole discretion, distribute cash or Marketable Securities to the General Partner provided that, immediately after the proposed distribution, the Adjusted Partnership Capital Account Balance (as defined in Paragraph 6.4(i) above) of the General Partner (as determined after adjusting such balance for the amount of such distribution and any Capital Transaction Gain or Loss deemed recognized by the Partnership pursuant to Paragraph 6.4(c) as a result thereof) will not be less than twenty and eight-tenths percent (20.8%) of the aggregate Partnership Capital Account balances of all the Partners.

## ARTICLE VII

## MANAGEMENT, DUTIES, AND RESTRICTIONS

7.1    Management. The General Partner shall have the sole and exclusive right to manage, control, and conduct the affairs of the Partnership and to do any and all acts on behalf of the Partnership (including exercise of rights to elect to adjust the tax basis of Partnership assets and to revoke such elections and to make such other tax elections as the General Partner shall deem appropriate).

7.2    Indebtedness; Restrictions; Reinvestments.

(a)    The General Partner may cause the Partnership to issue Preferred Limited Partnership Interests (and to become a Licensee in connection therewith); provided, however, that the aggregate amount of capital contributions received from Preferred Limited Partners pursuant to the SBA Annex shall not exceed two hundred percent (200%) of the aggregate Capital Commitments of the Partners (as determined at the time of the issuance). In addition, the General Partner may cause the Partnership to borrow money and to issue promissory notes or other evidences of indebtedness; provided, however, that the General Partner may not, without the approval of the Advisory Committee, (i) borrow money on behalf of the Partnership (other than amounts which are expected to be repaid within ninety (90) days) in an amount in excess, in the aggregate at any point in time, of twenty-five percent (25%) of the Partners' Capital Commitments to the Partnership or (ii) guaranty indebtedness of companies of which the Partnership holds Securities in an amount in excess, in the aggregate at any point in time, of twenty-five percent (25%) of the Partners' Capital Commitments to the Partnership. At any time that the Partnership is a Licensee, the General Partner may not cause the Partnership to borrow money or issue promissory notes or other evidences of indebtedness in violation of the SBA Act or the SBIC Regulations.

(b)    Without the consent of the Advisory Committee the Partnership shall not (i) invest in securities of a company if any class of such company's securities is traded on a national securities exchange or over-the-counter or (ii) invest in partnerships other than partnerships in which (A) all profits and losses are allocated pro-rata to capital contributions and (B) no management or other fees are payable to any partner of such partnership or any affiliate of any such partner, unless the General Partner makes appropriate arrangements to insure that the economic burden of such management or other fees and such disproportionate profit and loss allocation is borne solely by the General Partner rather than the Limited Partners. Notwithstanding the foregoing, in no event shall the Partnership invest amounts in any company if such investment would cause the Partnership to exceed the limits on such investment contained in the SBIC Regulations which are then in effect and applicable to the Partnership.

(c)    The Partnership shall not make total investments in or acquire Securities (other than Money-Market Investments) having an aggregate acquisition cost to the Partnership in excess of 110% of the sum of (i) the aggregate Capital Commitments of all of the Partners and (ii) the aggregate principal amount of Preferred Limited Partnership Interests issued by the Partnership (whether or not still outstanding), except to the extent necessary to avoid a violation of the SBIC Act or the rules or SBIC Regulations promulgated thereunder. In no event

will the purchase of Money Market Investments or other debt instruments providing for repayment in one hundred eighty (180) days or less be considered for purposes of the preceding sentence to be an investment or reinvestment in the Partnership's venture capital portfolio.

7.3    Investment Representation of the Limited Partners.    This Agreement is made with each Limited Partner in reliance upon such Limited Partner's representation to the Partnership, which by executing this Agreement the Limited Partner hereby confirms, that such Partner's interest in the Partnership is to be acquired for investment, and not with a view to the sale or distribution of any part thereof, and that such Partner has no present intention of selling, granting participation in, or otherwise distributing the same, but subject nevertheless to any requirement of law that the disposition of such Partner's property shall at all times be within such Partner's control.    Each Limited Partner further represents that such Partner does not have any contract, undertaking, agreement, or arrangement with any person to sell or transfer to any third person such Partner's interest in the Partnership.

7.4    Accredited Investor and Investment Company Act Representations.    Each Limited Partner represents that such Partner has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Partnership and, unless otherwise disclosed in writing to the General Partner, that such Partner is (i) an accredited investor, as that term is defined in Regulation D promulgated by the Securities and Exchange Commission, and (ii) a "qualified purchaser" within the meaning of Section 2(a)(51)(A) of the Investment Company Act of 1940, as amended, and the rules promulgated thereunder (the "1940 Act").    Except as disclosed in writing to the General Partner, each Limited Partner further represents that (i) such Limited Partner is not, nor would be but for the exception provided in paragraph 3(c)(1) or 3(c)(7) of the 1940 Act, an investment company (as defined in the 1940 Act) (a "1940 Act Lookthrough Entity"); (ii) such Limited Partner's Capital Commitment does not exceed 40% of such Limited Partner's assets; (iii) such Limited Partner's shareholders, partners or other holders of equity or beneficial interests in such Limited Partner are not able to decide individually whether to participate, or the extent of the their participation, in such Limited Partner's investment in the Partnership; (iv) to the best of such Limited Partner's knowledge, such Limited Partner does not control, nor is controlled by or under common control with, any other Limited Partner; (v) such Limited Partner was not formed for the specific purpose of investing in the Partnership; (vi) such Limited Partner would be considered, and the interest in the Partnership held by the Limited Partner would be considered to be beneficially owned by, "one person" for purposes of Section 3(c)(1) of the 1940 Act; and (vii) no other person or persons will have a beneficial interest in such Limited Partner's interest in the Partnership other than as a shareholder, partner or other beneficial owner of equity interests in such Limited Partner.

7.5    No Control by the Limited Partners.    The Limited Partners shall take no part in the control or management of the affairs of the Partnership nor shall a Limited Partner have any authority to act for or on behalf of the Partnership except as is specifically permitted by this Agreement.    The Partners hereby agree that no Limited Partner subject to the Holding Company Act shall have the power to vote on any matter for so long as such power to vote, in the opinion of counsel to such Limited Partner, would be inconsistent with the requirements of the Holding Company Act or any rules or regulations promulgated thereunder; provided, however, that in the event any Limited Partner shall not, in accordance with this Paragraph 7.5,

have the power to vote on any matter, it shall not be considered a Limited Partner for purposes of calculating whether the consent or approval of the requisite percentage in interest of the Limited Partners has been obtained.

7.6    Admission of Additional Partners.

(a)    Subject to Paragraph 7.7 and subparagraphs (b) and (c) below, no additional person may be admitted to the Partnership, either as a limited or general partner, without the prior written consent of both the General Partner and Two-Thirds in Interest of the Limited Partners.

(b)    On or before September 30, 1999, the General Partner may admit additional persons as additional Limited Partners without the consent of any of the then Limited Partners, provided that the Limited Partners' total Capital Commitments shall not exceed Thirty-Five Million Dollars ($35,000,000). Such subsequently admitted Limited Partners shall be deemed, except for purposes of determining such Limited Partners' Partnership Capital Account balance or otherwise to the extent expressly set forth herein to the contrary, to have been admitted as of the Commencement Date. Upon the admission of any additional Limited Partners to the Partnership pursuant to this Paragraph 7.6(b), the assets of the Partnership shall not be revalued.

(c)    After attaining the status of a Licensee, the General Partner may at any time admit one or more Preferred Limited Partners or accept increased capital contributions from existing Preferred Limited Partners as provided in the SBA Annex; provided, however, that at no time shall the sum of the aggregate capital contributions of the Preferred Limited Partners exceed two hundred percent (200%) of the aggregate Capital Commitments of the Partners.

7.7    Assignment or Transfer of Partnership Interests.

(a)    The General Partner shall not sell, assign, pledge, mortgage, or otherwise dispose of or transfer its interest in the Partnership or in its capital assets or property or withdraw from the Partnership without the prior written consent of Two-Thirds in Interest of the Limited Partners; provided, however, that the admission of a new member to the General Partner or the transfer of interests in the General Partner shall not be deemed a sale, assignment or other disposition of the General Partner's interest in the Partnership or its capital assets or property.

(b)    No Limited Partner shall sell, assign, pledge, mortgage, or otherwise dispose of or transfer its interest in the Partnership or its interest in the Partnership's capital assets or property without the prior written consent of the General Partner nor, except as expressly provided in this Agreement, shall a Limited Partner be required to withdraw from the Partnership. Notwithstanding the foregoing, a Limited Partner may sell, assign, pledge, mortgage, or otherwise dispose of or transfer its interest in the Partnership without such consent (i) to any corporation directly or indirectly holding eighty percent (80%) or more of the shares of the Limited Partner or any corporation of which eighty percent (80%) or more of the shares are held directly or indirectly by such corporation, including any corporation of which the Limited Partner holds, directly or indirectly, eighty percent (80%) or more of the shares; (ii) to any entity pursuant to a merger, plan of reorganization, sale or other transfer, or pledge of, or other general

encumbrance on substantially all of the Limited Partner's stock or assets; (iii) as may be required by any law or regulation; (iv) to a successor trustee of any Limited Partner that is an employee benefit plan; or (v) with respect to a Limited Partner that is a corporation, to any entity controlled by, controlling or under common control with such corporation; provided, however, that the transferee in any such case may not be admitted to the Partnership as a substitute limited partner without the consent of the General Partner which consent shall be subject to the sole discretion of the General Partner and shall not be subject to challenge by any transferor or transferee.

(c)      Notwithstanding any other provision of this Agreement, no transfer or other disposition of the interest of a Limited Partner or Preferred Limited Partner shall be permitted until the General Partner shall have received, or waived receipt of, opinions of counsel satisfactory to it that the effect of such transfer or disposition would not:

(i)      result in a violation of the Securities Act;

(ii)      require the Partnership to register as an investment company under the Investment Company Act of 1940, as amended;

(iii)      require the Partnership, the General Partner, or any member of the General Partner to register as an investment adviser under the Investment Advisers Act of 1940, as amended;

(iv)      result in a termination of the Partnership for tax purposes;

(v)      result in a violation of the Act or the SBIC Regulations, to the extent applicable, or any other law, rule, or regulation by the Limited Partner, the Preferred Limited Partner, the Partnership, the General Partner, or any member of the General Partner;

(vi)      increase the number of Limited Partners;

(vii)      result in the assets of the Partnership being deemed to be "plan assets" (within the meaning of the Department of Labor Final Regulation Relating to the Definition of Plan Assets, 29 CFR §2510.3-101 (1987), as such regulation may be amended from time to time; or

(viii)    either (A) cause the representations initially made by such Partner in Sections 4.8(a), (b), (c) and (d) of the SBA Annex (including any separate written representation initially provided by such Private Limited Partner to the Partnership as provided in such Sections) to be not true and accurate or (B) decrease the Partnership's Regulatory Capital (as defined in the SBIC Regulations).

Such legal opinions shall be provided to the General Partner by the transferring Limited Partner or Preferred Limited Partner, as the case may be, or the proposed transferee, except that the opinion in Paragraph (v) regarding the Partnership, the General Partner, and the partners of the General Partner shall be rendered by counsel to the Partnership or the General Partner. All reasonable costs associated with such opinions shall be borne by the transferring Limited Partner or Preferred Limited Partner, as the case may be, or the proposed transferee.

(d)    Notwithstanding any other provision of this Agreement, (A) no assignment, pledge, mortgage, sale, transfer or other disposition of all or a portion of the interest of a Limited Partner (collectively, a "Transfer") shall be permitted if (i) the General Partner determines in its sole discretion that such transaction will either cause the Partnership to be characterized as a "publicly traded partnership" or will materially increase the risk that the Partnership will be so characterized or (ii) such transfer would occur in a transaction registered under the Securities Act and (B) in the case of any Transfer the transferee may not be admitted to the Partnership as a substitute limited partner without the consent of the General Partner which consent shall be subject to the sole discretion of the General Partner and shall not be subject to challenge by any transferor or transferee. For purposes of this Paragraph 7.7(d) the phrase "publicly traded partnership" shall have the meanings set forth in Sections 7704(b) and 469(k) of the Code. In particular and without limiting the foregoing, no Transfer shall be permitted, given effect or otherwise recognized, and such Transfer (or purported Transfer) shall be void ab initio, if at the time of such Transfer (or as a result of such Transfer) interests in the Partnership are (or would become) traded on an "established securities market" (within the meaning of Treasury Regulation Section 1.7704-1(b)) or are (or would become) "readily tradable on a secondary market or the equivalent thereof" (within the meaning of Treasury Regulation Section 1.7704-1(c)).

7.8    Investment Opportunities; Conflicts of Interest.

(a)    The Limited Partners recognize and understand that the members of the General Partner make venture capital investments on behalf of Aspen Ventures West II, L.P. and Aspen Ventures, L.P. (collectively, the "Prior Funds") and manage the investment portfolios of these entities. The Limited Partners hereby agree that the General Partner may offer the right to participate in investment opportunities of the Partnership to other private investors, groups, partnerships, or corporations whenever the General Partner, in its discretion, determines that such would be in the best interests of the Partnership; provided, however, that all such investment opportunities appropriate for the Partnership shall also be presented to the Partnership, and the General Partner, the members of the General Partner and Affiliates thereof shall not participate in investment opportunities of the Partnership in which the Partnership participates other than pursuant to the interest of such General Partner or members of the General Partner or Affiliates thereof in the Partnership or the Parallel Funds (as defined below in Paragraph 7.8(b)). Except with the prior approval of the Advisory Committee, none of the General Partner, any member of the General Partner or any Affiliate thereof shall enter into any transaction with respect to any Security that might reasonably be viewed as an investment opportunity of the Partnership but in which the Partnership has determined not to participate. For purposes of this Paragraph, in those cases where the Partnership is not afforded the opportunity to invest at least $100,000 or in which the Partnership lacks adequate unreserved funds to participate, such opportunity shall not be considered to be an investment opportunity of the Partnership. Except with the prior approval of the Advisory Committee, the General Partner will not invest the Partnership's funds in private companies the Securities of which are then held by the General Partner or any member or Affiliate thereof and the General Partner shall inform the Advisory Committee of the details of any purchase by the General Partner, or any member of Affiliate thereof, of any Securities of a company the Securities of which are then held by the Partnership. The Limited Partners hereby consent and agree to such activities and investments and further consent and agree that neither the Partnership nor any of its Partners shall have,

pursuant to this Agreement, any rights in or to such activities or investments, or any profits derived therefrom.

(b)    Each of the Limited Partners recognizes and understands that the members of the General Partner have various continuing obligations to the Prior Funds. Other than the time required to devote to the Prior Funds, the Parallel Fund (as defined below), or any subsequent venture capital fund formed in compliance with the requirements of this Paragraph 7.8, and except to the extent otherwise expressly permitted under this Agreement, from the date of the formation of the Partnership the managing members of the General Partner, for so long as they remain such, shall devote substantially all of their business time to the affairs of the Partnership until such time as the Partnership shall have invested or reserved for follow-on investments in existing portfolio companies or for expenses of the Partnership substantially all of the Partnership's available capital and shall thereafter devote to the Partnership such portion of their business time as is necessary so as to effectively manage the affairs of the Partnership. Except with the consent of the Advisory Committee, neither the General Partner nor the members of the General Partner (so long as they are members thereof) shall form or acquire any other entity with operations and objectives similar to those of the Partnership prior to December 31, 2000 or until such time as funds equal to at least seventy percent (70%) of the sum of the Partner's Capital Commitments and the aggregate Capital Contributions received with respect to Preferred Limited Partnership Interests issued by the Partnership (whether or not still outstanding) have been invested (excluding funds invested in Money-Market Instruments but including funds invested in investments that have been sold, distributed or otherwise disposed of), committed or reserved for investment. The foregoing notwithstanding, the members of the General Partner are hereby given express authority at any time to own and/or serve as partners or members of another partnership or limited liability company the sole purpose of which will be to act as general partner of one or more Delaware partnerships formed to invest in parallel with the Partnership (collectively the "Parallel Fund"). If established, the Parallel Fund will simultaneously invest in each Security purchased by the Partnership on the same terms as the investment made by the Partnership, provided, however, that the Parallel Fund shall not be required to make any such investment in a Security if it receives from the issuer thereof a written notice to the effect that the issuer will not permit such Parallel Fund to invest on the same terms as the Partnership's investment. The restrictions on the General Partner and the members of the General Partner contained in this Paragraph 7.8(b) shall not apply from and after the date that, due to a change in applicable law or the identity, status or financial circumstances of one or more Limited Partners, the amount of Regulatory Capital (as defined in applicable SBIC Regulations) of the Partnership is reduced to less than seventy-five percent (75%) of the amount of Regulatory Capital that the Partnership would have had in the absence of such change in applicable law or change in status or financial circumstances of the Limited Partners. With respect to each purchase of Securities by the Parallel Fund, in lieu of investing through the Parallel Fund, an individual partner thereof may, to the extent permitted by the Parallel Fund, invest in such partner's individual capacity.

(c)    Neither the General Partner (or any members of the General Partner), nor the Limited Partners nor their Affiliates may buy from or sell to the Partnership any Securities without the prior written consent of a Majority in Interest of the Limited Partners.

(d)    No member of the General Partner (so long as he or she remains a member thereof) nor the General Partner shall do any act in contravention of this Agreement, or that would be detrimental to the best interests of the Partnership, or that would make it impossible to carry on the activities and affairs of the Partnership.

## ARTICLE VIII

### DISSOLUTION AND LIQUIDATION OF THE PARTNERSHIP

8.1    Liquidation Procedures.    Upon termination of the Partnership at the expiration of the Partnership Term or upon the occurrence of an event of termination described in Paragraph 2.2 above:

(a)    The affairs of the Partnership shall be wound up and the Partnership shall be dissolved.

(b)    Distributions in dissolution may be made in cash or in kind or partly in cash and partly in kind.  To the extent not inconsistent with Paragraph 12.4 of this Agreement, each Security (and each class of Securities, or portion of a class of Securities having a tax basis per share or unit different from other portions of such class) distributed in kind shall be distributed ratably in accordance with the General Partner and the Limited Partners' Partnership Capital Account balances (as adjusted pursuant to Paragraph 8.2) unless such distribution would result (i) in a violation of a law or regulation applicable to a Limited Partner or a tax penalty to a Limited Partner, in which event, upon receipt by the General Partner of notice to such effect, such Limited Partner may designate a different entity to receive the distribution, or designate, subject to the approval of the General Partner, an alternative distribution procedure or (ii) in a distribution of fractional shares:  Each such Security shall be valued at fair market value in accordance with Paragraph 9.2 as of the date of distribution and shall be subject to reasonable conditions and restrictions necessary or advisable in order to preserve the value of the assets distributed, or for legal reasons.

(c)    The General Partner shall use its best judgment as to the most advantageous time for the Partnership to sell investments or to make distributions in kind provided that any such sales shall be made as promptly as is consistent with obtaining the fair value thereof.

(d)    The proceeds of dissolution shall be applied to payment of liabilities of the Partnership and distributed to the Partners in the following order:

(i)    to the creditors of the Partnership, other than Partners, in the order of priority established by law;

(ii)    to the Partners, in repayment of any loans made to the Partnership;

(iii)    to the Partners, in respect of the positive balances in their Partnership Capital Accounts.

(e)     With the written consent of Two-Thirds in Interest of the Limited Partners, the General Partner may extend the Partnership term beyond December 31, 2008 by up to two (2) successive one (1) year periods if, at the end of the year immediately preceding each such one (1) year period, more than ten percent (10%) of the value of the assets of the Partnership (valued pursuant to Paragraph 9.2 hereof) consists of Nonmarketable Securities. During the term of any such extension the General Partner shall distribute Marketable Securities and any cash that is in excess of the Partnership's reasonable working capital requirements to the Partners.

8.2     Closing Partnership Capital Account Balances; Final Allocations; Date of Termination.

(a)     The "Date of Termination" shall mean the date on which the term of the Partnership terminates pursuant to Paragraph 2.1 above.

(b)     The closing Partnership Capital Accounts of all the Partners shall be computed as of the Date of Termination as if the Date of Termination were the last day of an Interim Period, and then adjusted in the following manner:

(i)     All assets and liabilities (including contingent liabilities) of the Partnership shall be valued as of the Date of Termination pursuant to Paragraph 9.2 below.

(ii)     The resulting net amount of the unrecognized gain or loss on the Partnership's assets and liabilities as of the Date of Termination shall be deemed to have been recognized (pursuant to a deemed Sale or Exchange of the Partnership's assets and deemed payment of the Partnership's liabilities) and shall be allocated to the Partnership Capital Accounts of the Partners in accordance with the provisions of Article IV (and corresponding adjustments shall be made to the Book Values of such assets). In addition, allocations of Capital Transaction Gain and Loss and Net Income and Loss shall be adjusted (and corresponding adjustments made to the Partnership Capital Accounts of the Partners) to the extent necessary, if any, so that over the life of the Partnership aggregate allocations of items of Capital Transaction Gain and Loss and Net Income and Loss shall have been effected in the manner specified in Article IV.

(c)     All allocations to the Partners of Net Income or Loss or Capital Transaction Gain or Loss or items thereof for all periods after the Date of Termination shall be as provided in Article IV.

8.3     Lookback Liability of General Partner to Return Excess Distributions.

(a)     If after effecting the distributions provided for in this Article VIII the Excess Distribution Amount (as that term is defined below) is greater than zero, then the General Partner shall forthwith contribute to the capital of the Partnership cash equal to the lesser of (i) the Excess Distribution Amount, (ii) the After-Tax Distribution Amount or (iii) the amount, if any, by which the sum of the Partnership Capital Account balances of all of the Limited Partners is positive. The assets received pursuant to any such contribution shall be considered proceeds of dissolution and, accordingly, shall be distributed as provided in Paragraph 8.1(d).

For purposes of this Paragraph 8.3:

      (1)    Total General Partner Net Gain or Loss shall be calculated as follows:

      (A)    First, the Partnership's aggregate Capital Transaction Gain for all accounting periods shall be netted against the Partnership's aggregate Capital Transaction Loss for all accounting periods and the result shall be multiplied by twenty and eight tenths percent (20.8%). The resulting product shall be considered a positive number if such aggregate Capital Transaction Gain exceeded aggregate Capital Transaction Loss and a negative number if such aggregate Capital Transaction Loss exceeded aggregate Capital Transaction Gain;

      (B)    Second, the Partnership's aggregate Net Income for all accounting periods shall be netted against the Partnership's aggregate Net Loss for all accounting periods and the result shall be multiplied by one percent (1%). The result shall be considered a positive number if such aggregate Net Income exceeded such aggregate Net Loss and a negative number if such aggregate Net Loss exceeded such aggregate Net Income;

      (C)    Third, the amount computed in clause (B) shall be added to the amount computed in clause (A). If the result of such computation is a positive number it shall be considered Total General Partner Net Gain and if the result of such computation is a negative number it shall be considered Total General Partner Net Loss;

      (2)    The "After Tax Distribution Amount" shall be equal to the General Partner Distributions (as defined below) less all federal, state and local tax liabilities (net of refunds) that the General Partner would have incurred by reason of (A) having been a general partner of the Partnership (including, without limitation, by reason of receiving an allocable share of the Partnership's taxable income and by reason of receiving cash distributions from the Partnership (but excluding any tax liability attributable to the receipt of management fees or any tax deduction attributable to the expenditure of such fees or any other amount)) and (B) having sold for cash all assets received from the Partnership if (A) at all relevant times the General Partner had been an individual subject to tax at the combined maximum marginal rate of federal income tax and California state income tax applicable to individuals residing in Palo Alto California (as such rate may change from time to time) and (B) the General Partner had immediately sold for cash in a fully taxable transaction all assets received from the Partnership as a General Partner Distribution.

      (3)    The "Excess Distribution Amount" shall equal the lesser of (A) the amount by which the General Partner Distributions (as defined below) exceed the sum of the Total General Partner Net Gain or Loss plus the aggregate contributions made to the Partnership by the General Partner or (B) the amount of General Partner Distributions;

      (4)    "General Partner Distributions" shall equal the sum of all distributions received by the General Partner pursuant to Articles VI and VIII;

      (5)    All in-kind distributions shall be valued as provided in Paragraph 9.2 as of the date of the distribution;

(6)    Only distributions made to the General Partner in its capacity as general partner of the Partnership shall be considered for purposes of the foregoing computations (such distributions shall, however, in no way be construed so as to include amounts paid or otherwise received by the General Partner pursuant to Article V hereof);

(7)    In the event that the foregoing calculations are based on or refer to the excess of one number over another and no such excess exists, the amount to be used for purposes of such calculation shall be zero (0) (e.g., for purposes of the foregoing calculations the excess of twenty (20) over fifty (50) shall be deemed to be zero (0); and

(8)    In the event that the percentage interest of the General Partner (in its capacity as General Partner of the Partnership) in Capital Transaction Gain and Loss or Net Income and Loss changes, appropriate adjustments shall be made to the computation of Total General Partner Net Gain and Total General Partner Net Loss pursuant to clause (i) above.

Notwithstanding the foregoing, in no event will the General Partner be required to pay or contribute an amount to the Partnership pursuant to Paragraph 8.3 if such payment or contribution would not benefit the Limited Partners.

(b)    If the assets of the General Partner are insufficient to satisfy the contribution obligation of the General Partner required by subparagraph (a) hereof (hereinafter the "Lookback Liability"), the members and former members of the General Partner shall be obligated to contribute amounts to the General Partner to provide funds to satisfy such contribution obligation; provided, however, that no member or former member of the General Partner will in any event be obligated either to recontribute to the Partnership (on behalf of the General Partner or as a result of being a member of the General Partner) pursuant to this Paragraph 8.3 or contribute to the General Partner (to provide amounts to fund the General Partner's obligation pursuant to this Paragraph 8.3) an amount in excess of such member's or former member's pro rata share of the Lookback Liability. For purposes of the preceding sentence, a member's or former member's pro rata share of such obligation shall be determined based on the amount of distributions received by such member from the General Partner (other than any distribution of management fees received by the General Partner) and shall be calculated such that the sum of the pro rata shares of all members and former members of the General Partner equals the amount of the Lookback Liability. The General Partner shall keep such records as are necessary to determine each individual member's and former member's pro rata share of the Lookback Liability.

## ARTICLE IX

## FINANCIAL ACCOUNTING AND REPORTS

9.1    Financial and Tax Accounting and Reports.    The General Partner shall cause the Partnership's tax return and IRS Form 1065, Schedule K-1, to be prepared and delivered in a timely manner to the Limited Partners (but in no event later than ninety (90) days after the close of each of the Partnership's Fiscal Years). The books and records of the Partnership and the General Partner shall be kept in accordance with the provisions of this

Agreement and otherwise in accordance with generally accepted accounting principles consistently applied. The Partnership's financial statements for each Fiscal Year shall be prepared in accordance with generally accepted accounting principles consistently applied and shall be audited at the end of each Fiscal Year by an independent certified public accountant of recognized national standing selected by the General Partner.

9.2     Valuation of Securities and Other Assets Owned by the Partnership.

(a)     The Partnership hereby adopts verbatim Section III of the SBA's Model Valuation Guidelines as published in the Federal Register on June 2, 1994 (the "Valuation Guidelines") attached hereto as Annex B; provided, however, that for the purposes of Paragraphs 9.4 and 9.5, the valuation of the Partnership's investments shall be based on the Valuation Guidelines as adjusted by the General Partner where appropriate, provided that no such adjustment shall be inconsistent with the Valuation Guidelines or the SBIC Act.

9.3     Supervision; Inspection of Books. Proper and complete books of account of the affairs of the Partnership and the General Partner shall be kept under the supervision of the General Partner at the principal office of the Partnership. Such books shall be open to inspection by a Limited Partner, at any reasonable time, upon reasonable notice, during normal business hours.

9.4     Quarterly Reports.    Beginning with the Fiscal Quarter ending December 31, 1998, the General Partner shall transmit to each Limited Partner within forty-five (45) days after the close of each of the first three Fiscal Quarters of each Fiscal Year, financial statements of the Partnership prepared in accordance with generally accepted accounting principles from its books without audit and subject to year-end adjustments, a valuation of each of the Partnership's investments, a valuation of the Partnership interests of the Limited Partner (based upon the interest of the Limited Partner in the Partnership's assets), and a list of investments then held.

9.5     Annual Report; Financial Statements of the Partnership, Federal Income Tax Return. The General Partner shall transmit to each Limited Partner within ninety (90) days after the close of each of the Partnership's Fiscal Years, beginning with the Fiscal Year ending December 31, 1998, audited financial statements of the Partnership prepared in accordance with generally accepted accounting principles, including an income statement for the year then ended and balance sheet as of the end of such year, a statement of changes in Partners' Partnership Capital Accounts, and a list of investments then held. The financial statements shall be audited by an independent public accounting firm of recognized national standing. The financial statements shall be accompanied by (i) a report from the General Partner to the Limited Partners, which shall include a status report on investments then held, a valuation of each such investment, and a brief statement on the affairs of the Partnership during the Fiscal Year then ended and (ii) a copy of the Partnership's federal income tax return for Fiscal Year then ended.

9.6     Confidentiality. The financial statements of the Partnership and other information provided to Limited Partners under this Article IX shall be used by Limited Partners in furtherance of their interests as Limited Partners and, subject to disclosures required by

applicable law, each Limited Partner hereby agrees to maintain the confidentiality of such financial statements and other information provided to such Partner hereunder.

9.7 **Information Meetings.** An information meeting of the Partners shall be held at least once during each of the Partnership's Fiscal Years beginning with the Fiscal Year ending December 31, 1999, at such time and place as the General Partner may designate in a notice to the Limited Partners delivered at least thirty (30) days in advance of the scheduled date of such meeting. The purpose of such meetings shall be to discuss the Partnership's affairs and shall be purely informational in nature. No Limited Partner shall have any right to take part in or control any aspect of the management of the Partnership or its affairs.

9.8 **Advisory Committee.**

(a) The Partnership shall have an advisory committee (the "Advisory Committee") comprised of representatives of no less than three and no more than five limited partners selected by the General Partner from time to time. The Advisory Committee shall be responsible for reviewing the General Partner's determination of the fair market value of the Partnership's assets and liabilities and for this purpose may request such information concerning the Partnership's assets and liabilities as is reasonable. The Advisory Committee shall also provide the Partnership and the General Partner with such counsel and advice as the General Partner shall reasonably request, including advice to the General Partner with respect to any potential conflicts of interest between the General Partner and the Partnership.

(b) The Advisory Committee shall conduct its affairs in such manner and by such procedures as the members unanimously deem appropriate. Special meetings of the Advisory Committee may be called at any time by the General Partner. All actions taken by the Advisory Committee shall be taken by a majority of the members. The Advisory Committee shall not be required to meet more than twice a year. Notices to Advisory Committee members shall be made pursuant to the procedures set forth in paragraph 10.5 hereto.

(c) Subject to the provisions hereof, the General Partner shall have the power at any time to determine, for all purposes of this Agreement, the fair market value of any assets and liabilities of the Partnership. For each such determination, a statement setting forth in writing in reasonable detail the fair market value of the Partnership's portfolio, with necessary explanations thereof, shall be sent to each member of the Advisory Committee, who shall have fifteen (15) business days after the transmittal of such notice to make known any objections to the valuation of specific assets and liabilities. Any such objection shall be made in writing and shall indicate briefly the reasons for such objection. If within fifteen (15) business days of the transmittal of such statement the Advisory Committee fails to notify the General Partner of any objection of such determination, such determination shall be final and conclusive. If within the fifteen (15) business day period the Advisory Committee members unanimously notify the General Partner of their specific objections to such determination, the General Partner shall either submit a new determination in place of the one disapproved or request a meeting with the Committee to discuss a mutually satisfactory valuation. If within fifteen (15) business days of the end of such first-mentioned fifteen (15) day period values satisfactory to the General Partner and the Advisory Committee shall not have been determined, the General Partner shall submit the dispute to arbitration in accordance with Paragraph 10.15 hereof.

(d)    The Advisory Committee shall take no part in the control or management of the Partnership's affairs, nor shall the Advisory Committee have any power or authority to act for or on behalf of the Partnership. No member of the Advisory Committee shall be liable to any Partner for any action taken or omitted to be taken in good faith by it in connection with his participation on the Advisory Committee.

(e)    The General Partner shall promptly notify the Advisory Committee in the event that the SBA takes any action with respect to its rights to remove and replace the General Partner in accordance with SBIC Regulation § 107.1810(i).

ARTICLE X

OTHER PROVISIONS

10.1    Execution and Filing of Documents.  Concurrently with the execution of this Agreement, the General Partner shall execute and file a Certificate of Limited Partnership conforming to the requirements of the Delaware Revised Uniform Limited Partnership Act in the office of the Secretary of State of the State of Delaware and shall execute a fictitious business name statement and file or cause such statement to be filed if required by Delaware law.

10.2    Other Instruments and Acts.  The Partners agree to execute any other instruments or perform any other acts that are or may be necessary to effectuate and carry on the partnership created by this Agreement.

10.3    Binding Agreement.  This Agreement shall be binding upon the transferees, successors, assigns, and legal representatives of the Partners.

10.4    Governing Law.  This Agreement shall be governed by and construed under the laws of the State of Delaware as applied to agreements among Delaware residents made and to be performed entirely within Delaware.

10.5    Notices.

(a)    Procedure.  Any notice or other communication that a Partner desires to give to another Partner shall be in writing, and shall be deemed effectively given upon personal delivery or upon deposit in any United States mail box, by registered or certified mail, postage prepaid, or upon transmission by telegram or telecopy, addressed to the other Partner at the address shown on the Schedule of Partners or at such other address as a Partner may designate by fifteen (15) days' advance written notice to the other Partners.

(b)    Notices With Respect to Representations by Private Limited Partners; Best Efforts to Avoid Change In Status.  Each Private Limited Partner shall use its best efforts to ensure that the representations initially made by such Partner in Sections 4.8(a), (b), (c) and (d) of the SBA Annex (including any separate written representation initially provided by such Partner to the Partnership as provided in such Sections) (i) shall continue to be true and accurate and (ii) as of the date of any transfer in whole or in part of such Partner's interest in the Partnership, can be and are in fact made to the Partnership by any transferee of such interest. In

the event a Limited Partner breaches its obligations provided for in the foregoing sentence, the General Partner may declare such Private Limited Partner (and, in the case of a transfer of an interest, the transferee of such interest) to be in default within the meaning of Paragraph 3.5(b) of this Agreement whereupon such Partner (and such transferee, where applicable) will be treated as an Optionor for all purposes of this Agreement (including for purposes of such Paragraph 3.5) and, accordingly and without limitation, (i) such Partner (and such transferee) will have no right to vote on any matters presented to the Limited Partners for a vote and (ii) some or all of the other Limited Partners and the General Partner shall have the right and option to acquire the Partnership interest of such Limited Partner (and such transferee) as set forth in Paragraph 3.5.

10.6    Power of Attorney.    By signing this Agreement, the Limited Partners designate and appoint the General Partner its true and lawful attorney, in its name, place and stead to make, execute, sign, and file such instruments, documents, or certificates that may from time to time be required of the Partnership by the laws of the United States of America, the laws of the State of Delaware, or any other state in which the Partnership shall conduct its investment activities in order to qualify or otherwise enable the Partnership to conduct its affairs in such jurisdictions; provided, however, that in no event shall the General Partner be deemed to have the authority under this Paragraph 10.6 to take any action that would result in any Limited Partner losing the limitation on liability afforded by Paragraph 10.14 hereunder.  Such attorney is not hereby granted any authority on behalf of the Limited Partner to amend this Agreement except that as attorney for each Limited Partner, the General Partner shall have the authority to amend this Agreement and the Certificate of Limited Partnership as may be required to effect:

(a)    Admissions of additional partners pursuant to Paragraphs 7.6 or 7.7 above;

(b)    Causing the General Partner to bear the economic burden of the management or other fees and the disproportionate profit and loss allocations referred to in Paragraph 7.2(b); or

(c)    Transfers of Limited Partnership interests pursuant to Paragraph 7.7 above.

10.7    Amendment.

(a)    Procedure.  This Agreement may be amended only with the written consent of the General Partner and Two-Thirds in Interest of the Limited Partners, provided that the provisions of Article III, Article IV, Article VI, and Article VIII may not be amended so as to adversely affect any Limited Partner or Limited Partners in a manner different from all Limited Partners without the consent of Two-Thirds in Interest of the Limited Partners so affected.  No term or condition contained in the exhibits to this Agreement or in any note or security agreement entered into pursuant to this Agreement may be waived, discharged, terminated, or modified without the consent of the General Partner and Two-Thirds in Interest of the Limited Partners.  Notwithstanding the foregoing, to the extent required by the SBA for the Partnership to become a Licensee, this Agreement and the SBA Annex may be amended in the sole discretion of the General Partner; provided, however, that no such amendment shall affect the economic rights (including, without limitation, the amount or timing of distributions or allocations) of the

General Partner relative to those of the Limited Partners or the economic rights of any Limited Partner relative to those of any other Limited Partner.

      (b)   Waiver. Notwithstanding the above, the Partnership's or General Partner's (or its partners' or employees') noncompliance with any provision hereof in any single transaction or event may be waived in writing by Two-Thirds in Interest of the Limited Partners. No waiver shall be deemed a waiver of any subsequent event of noncompliance.

      10.8   Effective Date. The Limited Partnership Agreement shall be effective on the date that the Certificate of Limited Partnership of the Partnership is filed with the office of the Secretary of State of the State of Delaware.

      10.9   Entire Agreement. This Agreement constitutes the entire agreement of the Partners and supersedes all prior agreements between the Partners with respect to the Partnership.

      10.10  Titles; Subtitles. The titles and subtitles used in this Agreement are used for convenience only and shall not be considered in the interpretation of this Agreement.

      10.11  Partnership Name. The Partnership shall have the exclusive ownership and right to use the Partnership name (and any name under which the Partnership shall elect to conduct its affairs) as long as the Partnership continues and thereafter the General Partner shall have such ownership and right. No value shall be placed upon the name or the goodwill attached to it for the purposes of determining the value of any Partner's Partnership Capital Account or interest in the Partnership.

      10.12  Exculpation. The exculpation provisions applicable to persons dealing with the Partnership shall be as set forth in Article VIII of the SBA Annex; provided, however, that notwithstanding any provision of such Article VIII to the contrary, the provisions thereof shall not be construed so as to relieve (or attempt to relieve) any person of any liability by reason of recklessness, intentional wrongdoing or gross negligence (except that such exclusion for gross negligence shall not apply to liability arising out of or relating to the service of a member or agent of the General Partner as a director or officer (or the equivalent) of a company in which the Partnership has or had an investment) or to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed so as to effectuate the provisions of such Article VIII to the fullest extent permitted by law.

      10.13  Indemnification.

      (a)   Standard of Care.

      (i)   Neither the General Partner, any Investment Advisor/Manager (as defined in the SBA Annex) nor any partner, member, shareholder, director, officer or employee nor any Affiliate of any thereof shall be liable to the Partnership or any Partner for any action taken or omitted to be taken by it or any other Partner or other person in good faith and in a manner they reasonably believed to be in or not opposed to the best interests of the Partnership, and, with respect to any criminal action or proceeding, had no reasonable cause to believe their conduct was unlawful.

(ii)    Neither any Private Limited Partner, nor any member of any Partnership committee or board who is not an Affiliate of the General Partner, shall be liable to the Partnership or any Partner as the result of any decision made in good faith by such Private Limited Partner or member, in his capacity as such.

(iii)    The General Partner and any Investment Advisor/Manager, the stockholders, directors, officers, employees, members and partners of either thereof, any Private Limited Partner and any member of a Partnership committee or board, may consult with reputable legal counsel selected by them and shall be fully protected, and shall incur no liability to the Partnership or any Partner, in acting or refraining to act in good faith in reliance upon the opinion or advice of such counsel.

(iv)    This Paragraph 10.13(a) shall not constitute a modification, limitation or waiver of Section 314(b) of the SBIC Act, or a waiver by the SBA of any of its rights pursuant to such § 314(b).

(b)    Indemnification.

(i)    The Partnership shall indemnify and hold harmless, but only to the extent of Assets Under Management (as defined in the SBA Annex), the General Partner, the members of the General Partner, any Investment Advisor/Manager and any partner, member, shareholder, director, officer, employee or any Affiliate of any thereof from any and all costs, expenses, damages, claims, liabilities, fines and judgments (including the reasonable cost of the defense of any claim or action and any sums which may be paid with the consent of the Partnership in settlement thereof) which may be incurred by or asserted against such person or entity, by reason of any action taken or omitted to be taken on behalf of the Partnership and in furtherance of its interests.

(ii)    The Partnership shall indemnify and hold harmless, but only to the extent of Assets Under Management, the Private Limited Partners, and members of any Partnership committee or board who are not Affiliates of the General Partner or any Investment Advisor/Manager from any and all costs, expenses, damages, claims, liabilities, fines and judgements (including the reasonable cost of the defense of any claim or action and any sums which may be paid with the consent of the Partnership in settlement thereof) which may be incurred by or asserted against such person or entity, by any third party on account of any matter or transaction of the Partnership, which matter or transaction occurred during the time that such person has been a Private Limited Partner or such member.

(iii)    The Partnership shall have power, in the discretion of the General Partner, to agree to indemnify on the same terms as set forth in Paragraph 10.13(b)(ii) any person who is or was serving, pursuant to a prior written request from the Partnership, as a consultant to, agent for or representative of the Partnership as a director, officer, employee, agent of or consultant to another corporation, partnership, limited liability company, joint venture, trust or other enterprise, against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such.

(iv)    No person shall be entitled to claim any indemnity or reimbursement under Paragraphs 10.13(b)(i), (ii), or (iii) in respect of any cost, expense, damage, liability, claim, fine, judgment (including any cost of the defense of any claim, action, suit, proceeding or investigation, by or before any court or administrative or legislative body or authority) that may be incurred by such person which results from the failure of such person to act in accordance with the provisions of this Agreement and the applicable standard of care set forth in Paragraph 10.13(a). The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, preclude a determination that such person acted in accordance with the applicable standard of care set forth in Paragraph 10.13(a).

(v)    To the extent that a person claiming indemnification under Paragraphs 10.13(b)(i), (ii), or (iii) has been successful on the merits in defense of any action, suit or proceeding referred to in Paragraphs 10.13(b)(i), (ii), or (iii) or in defense of any claim, issue or matter therein, such person shall be indemnified with respect to such matter as provided in such Section. Except as provided in the foregoing sentence and as provided in Paragraph 10.13(b)(viii) with respect to advance payments, any indemnification under this Paragraph 10.13(b) shall be paid only upon determination that the person to be indemnified has met the applicable standard of conduct set forth in Paragraphs 10.13(a)(i) or (ii).

(vi)    A determination that a person to be indemnified under this Paragraph 10.13(b) has met the applicable standard set forth in Paragraphs 10.13(a)(i) or (ii) shall be made by (x) the General Partner, with respect to the indemnification of any person other than a person claiming indemnification under Paragraphs 10.13(a)(i), (y) a committee of the Partnership chosen by the Advisory Committee whose members are not affiliated with the General Partner or any Investment Advisor/Manager with respect to indemnification of any person indemnified under Paragraphs 10.13(a)(i) or (z) at the election of the General Partner, independent legal counsel selected by the General Partner, with respect to the indemnification of any person indemnified under Paragraphs 10.13(a), in a written opinion.

(vii)    In making any such determination with respect to indemnification under Paragraphs 10.13(b)(vi), the General Partner, a committee of the Partnership whose members are not affiliated with the General Partner or any Investment Advisor/Manager or independent legal counsel, as the case may be, shall be authorized to make such determination on the basis of its evaluation of the records of the General Partner, the Partnership or any Investment Advisor/Manager to the Partnership and of the statements of the party seeking indemnification with respect to the matter in question and shall not be required to perform any independent investigation in connection with any such determination. Any party making any such determination is authorized, however, in its sole discretion, to take such other actions (including engaging counsel) as it deems advisable in making such determination.

(viii)    Expenses incurred by any person in respect of any such costs, expenses, damages, claims, liabilities, fines, and judgments (including any cost of the defense of any claim, action, suit, proceeding or investigation, by or before any court or administrative or legislative body or authority) may be paid by the Partnership in advance of the final disposition of any such claim or action upon receipt of an undertaking by or on behalf of such person to repay such amount unless it shall ultimately be determined as provided in

Paragraphs 10.13(b)(v) and (vi) that such person is entitled to be indemnified by the Partnership as authorized in this Section.

(ix)    The rights provided by this Paragraph 10.13(b) shall inure to the benefit of the heirs, executors, administrators, successors, and assigns of each person eligible for indemnification hereunder.

(x)    The rights to indemnification provided in this Paragraph 10.13(b) shall be the exclusive rights of all Partners to indemnification by the Partnership. No Partner shall enter into, or make any claim under, any other agreement with the Partnership (whether direct or indirect) providing for indemnification. The General Partner shall not enter into any agreement with any person which is an employee, officer, director, partner or shareholder, or an Affiliate, Associate or Control Person of any of the foregoing, providing for indemnification of any such person unless such agreement provides for a determination with respect to such indemnification as provided under Paragraph 10.13(b)(vi)(y) or (z). The provisions of this Paragraph 10.13(b) shall not apply to indemnification of any person which is not at the expense (whether in whole or in part) of the Partnership.

(xi)    The Partnership may purchase and maintain insurance on its own behalf, or on behalf of any person or entity, with respect to liabilities of the types described in this Paragraph 10.13(b). The Partnership may purchase such insurance regardless of whether such person is acting in a capacity described in this Paragraph 10.13(b) or whether the Partnership would have the power to indemnify such person against such liability under the provisions of this Paragraph 10.13(b).

10.14    Limitation of Liability of the Limited Partners. Except as required by law, no Limited Partner shall be bound by, nor be personally liable for, the expenses, liabilities, or obligations of the Partnership. Each Limited Partner shall be obligated and liable to the Partnership (i) to make capital contributions to the Partnership pursuant to Article III, (ii) for any obligation or liability of such Limited Partner to the Partnership or the General Partner or any Member thereof pursuant to Paragraph 12.7, and (iii) for damages and any other remedies available at law or in equity for a breach of this Agreement by such Limited Partner.

10.15    Arbitration. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, except any controversy or claim arising out of or relating to the SBA's rights under the SBA Annex, the SBIC Act, the SBIC Regulations or the terms of the Participating Securities (as defined in the SBA Annex), shall be settled by arbitration in Palo Alto, California, in accordance with the rules, then obtaining, of the American Arbitration Association. Judgment upon the award rendered may be entered in any court having jurisdiction thereof.

10.16    Passive Income: Prohibited Transaction.

(a)    So long as the Partnership has any ERISA Partner (as defined in Paragraph 10.18), the Partnership shall use its best efforts to conduct its affairs so that all of its gross income is from dividends, interest, and capital gains and losses from the disposition of property, and rents and royalties, but only such rents and royalties as are excluded, pursuant to

Section 512(b)(2) and (3) of the Code in calculating unrelated business taxable income to ensure that no tax-exempt Partner shall be deemed to have unrelated business taxable income. The General Partner shall use its best efforts to ensure that the Partnership shall not enter into any transaction, not otherwise exempt, that would constitute participation by the Partnership or any Limited Partner in a "prohibited transaction" as defined in Section 4975 of the Code.

(b)    Notwithstanding subparagraph (a) of this Paragraph 10.16, each Limited Partner hereby acknowledges that the Partnership will be issuing interests to Preferred Limited Partners and incurring other indebtedness as provided in this Agreement and, as a result, the Limited Partners may be allocated unrelated business taxable income by reason of Section 514 of the Code.

10.17    Tax Matters Partner.    The General Partner shall be the Partnership's Tax Matters Partner ("TMP"). The TMP shall have the right to resign by giving thirty (30) days' written notice to the Limited Partners. Upon the resignation, dissolution or bankruptcy of the TMP, a successor TMP shall be elected by Two-Thirds in Interest of the Limited Partners. The TMP shall employ experienced tax counsel to represent the Partnership in connection with any audit or investigation of the Partnership by the Internal Revenue Service ("IRS") and in connection with all subsequent administrative and judicial proceedings arising out of such audit. The fees and expenses of such, and all expenses incurred by the TMP in serving as the TMP, shall be Partnership expenses pursuant to Paragraph 5.2 and shall be paid by the Partnership. Notwithstanding the foregoing, it shall be the responsibility of the General Partner and of each Limited Partner, at their expense, to employ tax counsel to represent their respective separate interests. If the TMP is required by law or regulation to incur fees and expenses in connection with tax matters not affecting each of the Partners, then the TMP may, in its sole discretion, seek reimbursement from or charge such fees and expenses to the Partnership Capital Accounts of those Partners on whose behalf such fees and expenses were incurred. The TMP shall keep the Limited Partners informed of all administrative and judicial proceedings, as required by Section 6223(g) of the Code, and shall furnish a copy of each notice or other communication received by the TMP from the IRS to each Limited Partner, except such notices or communications as are sent directly to such Partner by the IRS. The relationship of the TMP to the Limited Partners is that of a fiduciary, and the TMP has a fiduciary obligation to perform its duties as TMP in such manner as will serve the best interests of the Partnership and all of the Partnership's partners. To the fullest extent permitted by law, the Partnership agrees to indemnify the TMP and its agents and save and hold them harmless, from and in respect to all (i) reasonable fees, costs and expenses in connection with or resulting from any claim, action, or demand against the TMP, the General Partner or the Partnership that arise out of or in any way relate to the TMP's status as TMP for the Partnership, and (ii) all such claims, actions, and demands and any losses or damages therefrom, including amounts paid in settlement or compromise of any such claim, action, or demand; provided that this indemnity shall not extend to conduct by the TMP adjudged (i) not to have been undertaken in good faith to promote the best interests of the Partnership or (ii) to have constituted recklessness or intentional wrongdoing by the TMP.

10.18  ERISA Matters.

(a)    The General Partner, on behalf of the Partnership, shall use reasonable best efforts to ensure that the Partnership qualifies as a "venture capital operating company" and that none of the assets of the Partnership shall be deemed to be "plan assets" (within the meaning of the DOL Regulation) of any Limited Partner that is (i) an "employee benefit plan" subject to Part 4 of Subtitle B of Title I of ERISA or (ii) an entity whose underlying assets are considered "plan assets" of an employee benefit plan (an "ERISA Partner"). As used in the remainder of this Paragraph 10.18, all terms in quotation marks have the meanings assigned to them in the DOL Regulation.

(b)    In the event that either (i) the General Partner shall determine that it has become necessary for any ERISA Partner to withdraw from the Partnership or (ii) any ERISA Partner shall determine that it is necessary for it to withdraw from the Partnership, in either case (i) because there is a material risk of a material violation of, or breach of the fiduciary duties of any person (other than a breach of the fiduciary duties of any such person based upon the investment strategy or performance of the Partnership) under ERISA or the related provisions of the Code if such ERISA Partner continues as a Limited Partner of the Partnership, or (ii) because there is a material likelihood that the assets of the Partnership are or may be deemed to be "plan assets" of such ERISA Partner within the meaning of the DOL Regulation; then the General Partner or such ERISA Partner, as the case may be, shall deliver to the other a notice to that effect, accompanied by an opinion of counsel (which may be counsel retained or employed by the General Partner or such ERISA Partner, as the case may be, so long as such counsel shall be reasonably acceptable to such ERISA Partner and the General Partner) to that effect, which opinion shall be reasonably acceptable to such ERISA Partner and the General Partner and shall explain in reasonable detail the reasons therefor. In the case of such notice from the ERISA Partner, unless within 90 days after the date on which such notice was given, the General Partner, using reasonably practicable efforts, is able to eliminate the necessity for such withdrawal to the reasonable satisfaction of such ERISA Partner and its counsel, whether by correction of the condition giving rise thereto or amendment of this Agreement or otherwise, such ERISA Partner shall be entitled, at its election, upon written notice to the General Partner, to withdraw from the Partnership on the terms set forth in Paragraph 10.18(c) below. In that event, the effective date of withdrawal of the ERISA Partner shall be the date following the expiration of the ninety (90) day period referred to in the preceding sentence, or such other date as agreed to by the ERISA Partner and the General Partner and its counsel. In the case of such notice from the General Partner, such ERISA Partner shall be required to withdraw from the Partnership pursuant to Paragraph 10.18(c) below unless, within 90 days after the date on which notice was given, the General Partner, using reasonably practicable efforts, or the ERISA Partner, using reasonably practicable efforts, as appropriate, shall eliminate the necessity for such withdrawal to the reasonable satisfaction of the General Partner and its counsel whether by correction of the condition giving rise thereto or an amendment to this Agreement or otherwise. In the event of a withdrawal pursuant to the preceding sentence, the effective date of withdrawal of the ERISA Partner shall be the date following the expiration of the ninety (90) day period referred to in the preceding sentence, or such other date as agreed to by the ERISA Partner and the General Partner and its counsel. The obligation of the ERISA Partner to make additional capital contributions pursuant to Paragraph 3.2 shall be suspended during the above-referenced

ninety (90) day period and shall be terminated if such ERISA Partner withdraws pursuant to Paragraph 10.18(c).

(c)    The withdrawing Limited Partner shall be entitled to receive within ninety (90) days after the effective date of such withdrawal an amount equal to the excess, if any, of the positive closing Partnership Capital Account balance the Limited Partner would have had (computed as provided in Paragraph 8.2(b)) if such effective date had constituted a Date of Termination (as defined in Paragraph 8.2(a)) over the aggregate amount of distributions (with such distributions valued at fair market value pursuant to Paragraph 9.2 as of the date of such distribution) made to such Limited Partner from and after such effective date. The General Partner shall provide the withdrawing Limited Partner with a written explanation of its determination of the Partnership Capital Account of such withdrawing Limited Partner as computed pursuant to the preceding sentence within sixty (60) days of the effective date of such withdrawal. The withdrawing Limited Partner shall thereafter have ten (10) business days from the date of receipt of such notice to make known any objections to such determination. Any such objection made shall indicate briefly the reasons for such objection. If within ten (10) business days of the date of receipt of such determination, the withdrawing Limited Partner fails to notify the General Partner of any objection to such determination, such determination shall be final and conclusive. If within the ten (10) day period the withdrawing Limited Partner notifies the General Partner of its objection to such determination, the General Partner and the withdrawing Limited Partner shall attempt to agree upon a mutually acceptable determination. If within ten (10) days of the first-mentioned ten (10) day period a determination satisfactory to the General Partner and the withdrawing Limited Partner shall not have been agreed to, the General Partner shall submit the dispute between the General Partner and the withdrawing Limited Partner to arbitration in accordance with Paragraph 9.7(e). The fees and expenses of any arbitrators retained in accordance with the provisions hereof shall be borne equally by the Partnership and the withdrawing Limited Partner.

Any distribution or payment to a withdrawing Limited Partner pursuant to this subparagraph (c) may, in the sole discretion of the General Partner, be made in cash, in Securities (in which event the withdrawing Limited Partner shall not, without its express written consent, be distributed more than its pro rata interest in any type, class or portion of the Partnership's Securities), in the form of a promissory note, the terms of which shall be mutually agreed upon by the General Partner and the withdrawing Limited Partner, or any combination thereof. Notwithstanding anything in the foregoing sentence, if the distribution of any Security to the withdrawing Limited Partner would result in a violation of a law or regulation applicable to the Limited Partner or a tax penalty to the Limited Partner and the Limited Partner delivers a notice to such effect to the General Partner, such Limited Partner may designate a different entity to receive the distribution or designate, subject to the approval of the General Partner, an alternative distribution procedure. In the event that an ERISA Partner shall provide an opinion reasonably acceptable to the General Partner by counsel reasonably acceptable to the General Partner (which counsel may be employed by the ERISA Partner so long as such counsel is reasonably acceptable to the General Partner) that there is a material likelihood that the acceptance or retention of a promissory note by such ERISA Partner pursuant to this Paragraph 10.18 would result in a violation of ERISA or the related provision of the Code, then the General Partner shall use its reasonable best efforts to use an alternative means of making such payment or distribution.

(d)    In the event that either (i) the General Partner shall determine that it has become necessary for any ERISA Partner to discontinue making additional capital contributions pursuant to Paragraph 3.2 or (ii) any ERISA Partner shall determine that it is necessary for it to discontinue making such additional capital contributions, in either case (i) because there is a material risk of violation of, or breach of the fiduciary duties of any person (other than a breach of the fiduciary duties of any such person based upon the investment strategy or performance of the Partnership) under ERISA or the related provisions of the Code if the ERISA Partner were to make additional capital contributions to the Partnership, or (ii) because there is a material risk that the assets of the Partnership are or will be deemed to be "plan assets" of such ERISA Partner within the meaning of the DOL Regulation; then the General Partner or such ERISA Partner, as the case may be, shall deliver to the other a notice to that effect, accompanied by an opinion of counsel (which may be counsel retained or employed by the General Partner or such ERISA Partner, as the case may be, so long as such counsel shall be reasonably acceptable to such ERISA Partner and General Partner) to that effect, which opinion shall be reasonably acceptable to such ERISA Partner and the General Partner and shall explain in reasonable detail the reason therefor. In the case of such notice from the ERISA Partner, unless within ninety (90) days after the date on which such notice was given, the General Partner, using reasonably practicable efforts, is able to eliminate the necessity for such discontinuance to the reasonable satisfaction of such ERISA Partner and its counsel, whether by correction of the condition giving rise thereto or amendment of this Agreement or otherwise, such ERISA Partner shall be entitled to, at its election, upon written notice to the General Partner, be released from its obligation to make additional capital contributions pursuant to Paragraph 3.2. In the case of such notice from the General Partner, such ERISA Partner shall be required to discontinue making additional capital contributions pursuant to Paragraph 3.2 unless, within ninety (90) days after the date on which the notice was given, the General Partner, using reasonably practicable efforts, or the ERISA Partner, using reasonably practicable efforts, as appropriate, shall eliminate the necessity for such discontinuance of its obligation to make additional capital contributions to the reasonable satisfaction of the General Partner and its counsel, whether by correction of the condition giving rise thereto or an amendment to this Agreement or otherwise. The obligation of the ERISA Partner to make additional capital contributions pursuant to Paragraph 3.2 shall be suspended during the above referenced ninety (90) day period. An ERISA Partner who has been released of its obligation to make additional contributions shall not be treated as in default of its obligation to make such contributions, in which case such ERISA Partner's capital contribution obligation set forth in Paragraph 3.2 shall be reduced to the amount of capital actually contributed by such ERISA Partner to the Partnership.

(e)    In lieu of the procedures for redemption of an interest set forth in this Paragraph 10.18, the General Partner may cause some or all of the interest of the withdrawing Limited Partner to be sold to any other persons or entities in accordance with the procedures set forth in Paragraph 3.5, and the proceeds thereof to be remitted to the withdrawing Limited Partner; provided, however, that (i) the price at which such interest or any portion thereof may be sold shall be based on the amount due to the withdrawing Limited Partner as set forth in Paragraph 10.18(c), and (ii) the entire interest of the withdrawing Limited Partner must be sold and/or redeemed prior to ninety (90) days from the effective date of the withdrawal as provided in this Paragraph 10.18.

GRSVFA4D107708 10                                        42

(f)    If the General Partner shall so elect, the General Partner and the Partnership shall no longer be required to comply with Paragraph 10.18(a) at any time after the General Partner determines (i) that the equity participation in the Partnership by "benefit plan investors" is not "significant" as such terms are defined in the DOL Regulation, and (ii) not to admit additional Limited Partners pursuant to Paragraph 7.6(b) or permit a transfer of interest in the Partnership or an interest in the Partnership's capital assets or property pursuant to Paragraph 7.7 if such admission or transfer would result in the equity participation in the Partnership by "benefit plan investors" being "significant". If the General Partner so elects to discontinue compliance of its obligations under Paragraph 10.18(a), then thereafter, notwithstanding any other provision of the Agreement, no transfer of Limited Partner interests to, or admission of, a "benefit plan investor" shall be permitted if the General Partner shall determine that such transfer or admission shall cause the equity participation of "benefit plan investors" to be "significant".

10.19  Avoidance of Trade or Business Status; Service-Related Income.

(a)    Except to the extent inconsistent with its obligations under this Agreement, (i) the General Partner will use its best efforts to conduct the affairs of the Partnership so as to avoid having the Partnership treated as engaged in a trade or business within the United States for purposes of Sections 875, 882, 884 and 1446 of the Code and (ii) shall cause the Partnership to be operated as follows:

(1)    the Partnership shall conduct its affairs in a manner that limits the Partnership's operations to investments and other related activities which, taken together, would not cause the Partnership to be treated for United States federal income tax purposes as engaged in a "trade or business within the United States," within the meaning of Section 864(b) of the Code, during any taxable year of the Partnership;

(2)    the Partnership shall not acquire either any direct interest in United States real estate or any other interest, including an interest in a corporation, which would be treated as a "United States real property interest" within the meaning of Section 897(c) of the Code at the time of its acquisition by the Partnership; provided, however, that in determining whether an interest in an entity would be treated at the time of acquisition as such a United States real property interest, the General Partner may reasonably rely (without any independent investigation or review) solely on representations provided to the General Partner by such entity and; provided, further, that in no event shall the foregoing be interpreted as preventing or limiting in any respect the Partnership from investing in Securities of companies operating primarily in the cable, communications, media, entertainment and related industries;

(3)    the Partnership shall not acquire an interest in any partnership, trust or other non-corporate entity, unless (A) the General Partner determines, after consultation with counsel to the Partnership, that such proposed acquisition will not cause the Partnership to be treated as engaged in a trade or business within the United States for United States tax purposes, and (B) such entity agrees to be bound contractually by restrictions substantially similar to those set forth in this Paragraph 10.19;

(4)    the Partnership shall not acquire and dispose of securities or other assets on a regular and frequent basis with a view to realizing short-term gains

from market fluctuations; provided, however, that the Partnership (A) may make temporary investments of its funds not yet invested in securities of Portfolio Companies or used to pay Partnership expenses, and (B) shall attempt to minimize the frequency of such investment transactions and otherwise to conduct such temporary investment activity in a prudent and conservative manner consistent with the Partnership's objectives as set forth in Paragraph 1.2.

(5)      the Partnership shall not invest in or enter into contracts for the purchase or sale of commodities;

(6)      the Partnership shall not invest in options or futures, including currency futures, except that the Partnership may invest in options or other contracts for the acquisition of securities of a portfolio company (including a company that would become a portfolio company upon the exercise of such options or other contracts) provided that such investment is permitted under applicable SBIC Regulations;

(7)      the Partnership shall not make any investment with borrowed funds; provided however, that the limitation set forth in this Section shall not preclude the Partnership from borrowing from the SBA or others as expressly authorized in this Agreement and thereafter investing such borrowed funds or guaranteeing the obligations of a portfolio company to the extent expressly authorized in this Agreement; and

(8)      the Partnership shall not engage in or hold itself out as engaging in the performance of services for compensation, or otherwise carry on directly a trade or business. Accordingly, the amount, if any, of any compensation for services paid to the General Partner or partners of the General Partner from any company or entity in which the Partnership may have an interest shall not be included in Partnership income or otherwise be payable to the Partnership. In no event shall the General Partner be liable for monetary damages resulting from or arising out of its breach of this Paragraph 10.19. In no event shall this Paragraph 10.19 or any other provision of this Agreement be interpreted as preventing (or limiting in any respect) the General Partner or the members of the General Partner from taking an active role in or receiving compensation for founding or serving on the boards of directors of companies.

(b)      The restrictions set forth in the preceding subparagraph (a) are intended to ensure that the activities of the Partnership will be conducted so as to avoid United States federal income taxation on the income of the Partnership allocated to any non-United States Limited Partner (other than withholding tax on dividends and certain interest payments, original issue discount payments and similar types of payments received from United States sources). To this end, in addition to complying with the specific restrictions set forth in Section (a) above, the Partnership shall use its best efforts, to the extent practicable and consistent with its investment program (including without limitation its plans to issue Preferred Limited Partnership Interests as set forth in the SBA Annex):

(1)      not to engage in any activity that would subject the income of the Partnership allocated to any non-United States Limited Partner to United States federal income taxation (other than withholding tax on dividends and certain interest payments received from United States sources); and

(2)    in the event that the Code or the regulations promulgated thereunder are from time to time amended so as to require additional or different restrictions on Partnership activities and investments in order to avoid such taxation, to observe such additional or different restrictions.

Notwithstanding the foregoing, in the event that legislative, judicial or regulatory changes occurring after the date hereof may cause Partners that are not United States Persons to become subject to United States federal, state or local income tax on their respective shares of capital gains realized by the Partnership that are not effectively connected with a trade or business within the United States, within the meaning of Section 864 of the Code, carried on by the Partnership, whether such income taxes are collection by withholding or otherwise, the preceding sentence shall not apply with respect to any such taxes.

(c)    In making temporary investments of idle Partnership funds, the General Partner shall use its best efforts to make such investments so as to minimize withholding of United States income tax at the source with respect to the shares of Partnership income and gains allocable to Partners that are not United States Persons. In this connection, the General Partner shall not invest in regulated investment companies that elect to be subject to Part I of Subchapter M of the Code.

10.20    Taxation as Partnership. The General Partner and each Limited Partner (in their respective capacities as such) agree that such partners shall not undertake any action, including (without limitation) making regular bid or offer quotes to buy or sell interests or derivative interests in the Partnership, that will cause the Partnership to be, or create a substantial risk that the Partnership will be, (i) classified as other than a partnership for federal income tax purpose, or (ii) treated as a "publicly treated partnership" within the meaning of Section 469 or 7704 of the Code. The General Partner (in its capacity as such) further agrees that, at the expense of the Partnership, it shall use commercially reasonable efforts to avoid taking, and to bar the undertaking of, any activity of which it has knowledge, including (without limitation) the public quotation of regular offers to buy or sell interests or derivative interests in the Partnership or causing the Partnership to recognize transfers effected pursuant to a transaction effected on an "established securities market" (within the meaning of Treasury Regulation Section 1.7704-1(b)) or a "secondary market or the equivalent thereof" (within the meaning of Treasury Regulation Section 1.7704-1(c)), that will cause the Partnership to be, or create a substantial risk that the Partnership will be, (i) classified as other than a partnership for federal income tax purposes, or (ii) treated as a "publicly traded partnership" within the meaning of Sections 469 or 7704 of the Code.

10.21    Board Activity. In no event shall any provision of this Agreement be interpreted as preventing (or limiting in any respect) the General Partner or the members of the General Partner from taking an active role in or receiving compensation for founding or serving on the boards of directors of companies.

10.22    Counsel to the Partnership. Counsel to the Partnership may also be counsel to the General Partner. The General Partner may execute on behalf of the Partnership and the Partners any consent to the representation of the Partnership that counsel may request pursuant to the California Rules of Professional Conduct or similar rules in any other jurisdiction

("Rules"). The Partnership has initially selected Gunderson Dettmer Stough Villeneuve Franklin & Hachigian, LLP ("Partnership Counsel") as legal counsel to the Partnership. Each Limited Partner acknowledges that Partnership Counsel does not represent any Limited Partner in its capacity as a Limited Partner in the absence of a clear and explicit written agreement to such effect between the Limited Partner and Partnership Counsel (and then only to the extent specifically set forth in such written agreement), and that in the absence of any such written agreement Partnership Counsel shall owe no duties directly to a Partner. Each Limited Partner further acknowledges that, whether or not Partnership Counsel has in the past represented or is currently representing such Limited Partner with respect to other matters, Partnership Counsel has not represented the interests of any Limited Partner in the preparation and negotiation of this Agreement.

## ARTICLE XI

### MISCELLANEOUS DEFINITIONS

11.1  <u>Affiliate</u>: With reference to a member or employee of the General Partner, any corporation, association, partnership, or other entity of which such person has direct or indirect control or is, directly or indirectly, a general partner, member, officer, or director, and any other person controlling, controlled by, or under direct or indirect common control with such person. With reference to a Limited Partner, any person controlling, controlled by, or under direct or indirect common control with such person.

11.2  <u>Agreement</u>: This Limited Partnership Agreement of Aspen Ventures III, L.P., a Delaware limited partnership.

11.3  <u>Assets Under Management</u>. As of any specified date, the value (as determined under Paragraph 9.2) of all assets owned by the Partnership, including capital contributions requested and due from the Partners and uncalled capital amounts of the Partner's Capital Commitments <u>less</u> the amount of any liabilities of the Partnership determined in accordance with generally accepted accounting principles.

11.4  <u>Bankruptcy</u>: A person or entity shall be deemed bankrupt if:

(a)  any proceeding is commenced against such person or entity as "debtor" for any relief under bankruptcy or insolvency laws, or laws relating to the relief of debtors, reorganizations, arrangements, compositions, or extensions and such proceeding is not dismissed within ninety (90) days after such proceeding has commenced, or

(b)  such person or entity commences any proceeding for relief under bankruptcy or insolvency laws or laws relating to the relief of debtors, reorganizations, arrangements, compositions, or extensions.

11.5  <u>Certificate of Limited Partnership</u>: The Certificate of Limited Partnership of Aspen Ventures III, L.P., a Delaware limited partnership.

11.6    Code:  The Internal Revenue Code of 1986, as amended from time to time (and any corresponding provisions of succeeding law).

11.7    Date of Distribution:   The date on which all conditions precedent to making the distribution have been satisfied.

11.8    Holding Company Act:   The Bank Holding Company Act of 1956, as amended.

11.9    Limited Partners:  Each of the persons the names of which are set forth, as of the date hereof, under the heading "Limited Partners" on the Schedule of Partners attached hereto and each other person duly admitted to the Partnership as a limited partner subsequent to the date hereof.  A Preferred Limited Partner shall not be considered a Limited Partner.

11.10    Majority in Interest of the Limited Partners:   Limited Partners having Partnership Percentages the sum of which exceeds fifty percent (50%) of the aggregate Partnership Percentages of the Partners (excluding, for the purpose of calculating such requisite percentage, the Partnership Percentage of the General Partner, to the extent attributable to its general partnership interest, and the Partnership Percentage of any Optionor (as defined in Paragraph 3.5)).

11.11    Marketable; Marketable Securities; Marketability:  These terms shall refer to Securities that are (a) registered under the Securities Act, (b) traded on a national securities exchange or over-the-counter, (c) currently the subject of an issuer-filed Securities Act registration statement, (d) direct obligations of, or obligations guaranteed as to principal and interest by, the United States, certificates of deposit maturing within one year or less issued by an institution insured by the Federal Deposit Insurance Corporation, or similar Securities, or (e) transferable pursuant to SEC Rules 144 or 145.

11.12    Money-Market Investments:  Commercial paper, certificates of deposit, treasury bills, and other money-market investments with maturities of less than twelve (12) months; provided, however, that for any and all periods during which the Partnership is a Licensee, Money-Market Investments shall mean "permitted investments" as defined in SBIC Regulation § 107.530.

11.13    Net Operating Income:  The amount of Net Operating Income allocated to the Partnership Capital Account of a Partner for any period shall equal the excess (if any) of the amount of items of book income or gain over the amount of items of book loss or deduction allocated to such Partner's Partnership Capital Account for such period pursuant to Paragraphs 4.4, 4.7 or 4.8 (and Paragraph 4.6, to the extent items allocated pursuant thereto were initially allocated to the Partnership Capital Accounts of the Limited Partners as a group or to all Partners as a group pursuant to Paragraphs 4.4, 4.7 or 4.8).

11.14    Nonmarketable Securities:    All  Securities  other than  Marketable Securities.

11.15    Original Managing Members of the General Partner:   Alexander P. Cilento, E. David Crockett and Thaddeus J. Whalen.

11.16 <u>Original Limited Partners</u>: Each of the persons the names of which are set forth, as of the commencement of the term of the Partnership, under the heading "Limited Partners" on the Schedule of Partners attached hereto, and any transferee of all or any portion of such Limited Partner's interest in the Partnership.

11.17 <u>Preferred Limited Partner</u>: Preferred Limited Partner shall have the meaning set forth in the SBA Annex.

11.18 <u>Preferred Limited Partnership Interest</u>: Preferred Limited Partnership Interest shall have the meaning set forth in the SBA Annex.

11.19 <u>Private Limited Partner</u>: Private Limited Partner shall have the meaning set forth in the SBA Annex.

11.20 <u>Securities</u>: Securities of every kind and nature and rights and options with respect thereto, including stock, notes, bonds, debentures, evidences of indebtedness, and other business interests of every type, including interests in partnerships, joint ventures, proprietorships, and other business entities.

11.21 <u>Securities Act</u>: The Securities Act of 1933, as amended.

11.22 <u>Treasury Regulations</u>: Treasury Regulations shall be the Income Tax Regulations promulgated under the Code, as such Regulations may be amended from time to time (including corresponding provisions of succeeding Regulations).

11.23 <u>Two-Thirds in Interest of the Limited Partners</u>: Limited Partners having Partnership Percentages the sum of which equals at least sixty-six and two-thirds percent (66-2/3%) of the aggregate Partnership Percentages of the Partners (excluding, for the purpose of calculating such requisite percentage, the Partnership Percentage of the General Partner, to the extent attributable to its General Partnership Interest, and the Partnership Percentage of any Optionor (as defined in Paragraph 3.5).

11.24 <u>United States Person</u>: The meaning set forth in Section 7701(a)(30) of the Code.

ARTICLE XII

MISCELLANEOUS TAX COMPLIANCE PROVISIONS

12.1 <u>Substantial Economic Effect</u>. The provisions of Article IV and the other provisions of this Agreement relating to the maintenance of Partnership Capital Accounts and procedures upon liquidation of the Partnership are intended to comply generally with the provisions of Treasury Regulation Section 1.704-1, and shall be interpreted and applied in a manner consistent with such Regulation and, to the extent the subject matter thereof is otherwise not addressed by this Agreement, the provisions of Treasury Regulations Section 1.704-1 are hereby incorporated by reference unless the General Partner shall determine that such incorporation will result in economic consequences inconsistent with the economic arrangement

of the partners expressed in this Agreement. In the event the General Partner shall determine that it is prudent to modify the manner in which the Partnership Capital Accounts, or any debits or credits thereto, are computed or allocated or the manner in which distributions and contributions upon liquidation (or otherwise) of the Partnership (or any partner's interest therein) are effected in order to comply with such Regulations and other applicable tax laws, or to assure that the Partnership is treated as a partnership for tax purposes, or to achieve the economic arrangement of the partners as expressed in this Agreement, then notwithstanding Paragraph 10.7 hereof, the General Partner may make such modification, provided that it is not likely to have more than an insignificant detrimental effect on the tax consequences and total amounts distributable to any Limited Partner pursuant to Articles VI and VIII as applied without giving effect to such modification. The General Partner shall also (i) make any adjustments that are necessary or appropriate to maintain equality between the Partnership Capital Accounts of the partners and the amount of Partnership capital reflected on the Partnership's balance sheet, as computed for book purposes pursuant to this Agreement, in accordance with Regulations Section 1.704-1(b)(2)(iv)(g), and (ii) make any appropriate modifications in the event unanticipated events (such as the incurrence of partner nonrecourse debt within the meaning of Treasury Regulation Section 1.704-2(b)(4)) might otherwise cause the allocations under this Agreement to not comply with Treasury Regulations Section 1.704-1(b) (and in the case of the incurrence of partner nonrecourse indebtedness, Treasury Regulation Section 1.704-2) provided in each case that the General Partner determines that such adjustments or modifications shall not result in economic consequences inconsistent with the economic arrangement among the partners as expressed in this Agreement.

        12.2   <u>Other Allocations</u>. Notwithstanding the provisions of Article IV and Paragraph 8.2(d), the allocations provided therein shall be subject to the following exceptions:

        (a)   <u>Qualified Income Offset; Prophylactic Offset Minimum Gain Chargeback</u>. The following special allocations shall be made in the following order:

        (i)   Except as otherwise provided in Treasury Regulation Section 1.704-2(f), if there is a net decrease in Partnership Minimum Gain (as defined in Treasury Regulations 1.704-2(b)(2) and 1.704-2(d)) during any Partnership fiscal year, each partner shall be specially allocated items of Partnership income and gain for such year (and, if necessary, subsequent years) in an amount equal to such Partner's share of the net decrease in Partnership Minimum Gain, determined in accordance with Treasury Regulations Section 1.704-2(g). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each partner pursuant thereto. The items to be so allocated shall be determined in accordance with Treasury Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2). This paragraph 6.3(a) is intended to comply with the minimum gain chargeback requirement in Treasury Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

        (ii)   In the event any partner's Partnership Capital Account has an Unadjusted Excess Negative Balance (as defined in clause (viii) of this subparagraph (a)) at the end of any Fiscal Year such partner will be reallocated items of Net Income and Capital Transaction Gain for such Fiscal Year (and, if necessary, future Fiscal Years) in the amount necessary to eliminate such Unadjusted Excess Negative Balance as quickly as possible.

(iii)    In the event any partner unexpectedly receives any adjustments, allocations or distributions described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4) through (d)(6), items of Net Income and Capital Transaction Gain shall be specially allocated to such partner's Partnership Capital Account in an amount and manner sufficient to eliminate, to the extent required by Treasury Regulations Section 1.704-1(b)(2)(ii)(d), the Excess Negative Balance (as defined in clause (vii) of this subparagraph (a)) in such partner's Partnership Capital Account created by such adjustments, allocations or distributions as quickly as possible. This clause (iii) is intended to and shall in all events be interpreted so as to constitute a "qualified income offset" within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(d).

(iv)    A partner's Partnership Capital Account shall not be allocated any item of Net Loss or Capital Transaction Loss to the extent such allocation would cause such Partnership Capital Account to have an Excess Negative Balance (as defined in clause (vii) of this subparagraph (a)).

(v)    For any period (i) Nonrecourse Deductions (as defined in Treasury Regulations Section 1.704-2(b)(1)) that are treated as an item of Net Income or Loss shall be allocated to the partners as a component of such Net Income or Loss (and accordingly shall be allocated to the partners in the same proportion as such Net Income or Loss is allocated) and (ii) Nonrecourse Deductions (as defined in Treasury Regulations Section 1.704-2(b)(1)) that are treated as an item of Capital Transaction Gain or Loss shall be allocated to the partners as a component of such Capital Transaction Gain or Loss (and accordingly shall be allocated to the partners in the same proportion as such Capital Transaction Gain or Loss is allocated).

(vi)    Notwithstanding any provision of this Agreement to the contrary other than the foregoing provisions of this subparagraph (a), any allocations pursuant to this subparagraph (a) shall be taken into account as soon as possible in computing subsequent allocations, so that over the term of the Partnership the net amount of any items so allocated and the profit, gain, loss, income and expense and all other items allocated to each partner shall, to the extent possible, be equal to the net amount that would have been allocated to each such partner if such original allocations pursuant to this subparagraph (a) had not occurred. The General Partner shall have the discretion to effect allocations pursuant to this clause (vi) in such manner as the General Partner may deem appropriate to achieve the objective specified in the preceding sentence. In exercising its discretion under this clause (vi), the General Partner shall take into account future allocations under the foregoing provisions of this subparagraph (a) that, although not yet made, are likely to offset other allocations previously made thereunder.

(vii)    For purposes of this subparagraph (a), "Excess Negative Balance" shall mean the excess of the negative balance in a partner's Partnership Capital Account (computed with any adjustments which are required for purposes of Treasury Regulations Section 1.704-1(b)(2)(ii)(d)) over the amount such partner is obligated to restore to the Partnership (computed under the principles of Treasury Regulations Section 1.704-1(b)(2)(ii)(c)) inclusive of any addition to such restoration obligation pursuant to application of the provisions of Treasury Regulations Section 1.704-2 or any successor provisions thereto.

(viii)   For purposes of this subparagraph (a) "Unadjusted Excess Negative Balance" shall have the same meaning as Excess Negative Balance, except that the Unadjusted Excess Negative Balance of a partner shall be computed without effecting the reductions to such partner's Partnership Capital Account which are described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d).

(b)   Imputed Income.   To the extent the Partnership has taxable interest income or expense imputed with respect to any promissory note or other obligation between any partner and the Partnership, as maker and holder respectively, pursuant to Section 483, Sections 1271 through 1288, or Section 7872 of the Code, such imputed interest income shall be specially allocated to the partner to whom such promissory note or other obligation relates, and such partner's Partnership Capital Account shall be adjusted as appropriate to reflect the recharacterization as interest of a portion of the principal amount of such promissory note or other obligation and to reflect any deemed contribution or distribution of such interest income. The foregoing provision of this Paragraph 12.2(b) shall not apply to any interest or original issue discount expressly provided for in any such promissory note or other obligation.

12.3   Income Tax Allocations.

(a)   Except as otherwise provided in this Paragraph or as otherwise required by the Code and the rules and Treasury Regulations promulgated thereunder, Partnership income, gain, loss, deduction, or credit for income tax purposes shall be allocated in the same manner the corresponding book items are allocated pursuant to this Agreement (including the SBA Annex).

(b)   In accordance with Code Section 704(c) and the Treasury Regulations thereunder, income, gain, loss and deduction with respect to any asset contributed to the capital of the Partnership shall, solely for tax purposes, be allocated between the partners so as to take account of any variation between the adjusted basis of such property to the Partnership for federal income tax purposes and its initial Book Value.

(c)   In the event the Book Value of any Partnership asset is adjusted pursuant to the terms of this Agreement, subsequent allocations of income, gain, loss and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as under Code Section 704(c) and the Treasury Regulations thereunder.

(d)   If a distribution to a Partner results in taxable income or gain to the Partnership, then such taxable income or gain shall be allocated, to the extent permitted pursuant to Section 704(b) of the Code and the regulations promulgated thereunder, to the Partner who received the distribution.

12.4   Compliance with Timing Requirements of Regulations.

(a)   Notwithstanding any other provision of this Agreement, in the event the Partnership is "liquidated" within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g), (i) distributions shall be made pursuant to Article VIII to the partners who have positive Partnership Capital Accounts in compliance with Treasury

Regulations Section 1.704-1(b)(2)(ii)(b)(2) and (ii) if the General Partner's Partnership Capital Account has a deficit balance (after giving effect to all contributions, distributions and allocations for all taxable years, including the year during which such liquidation occurs), the General Partner shall contribute to the capital of the Partnership the amount required pursuant to Paragraph 8.3 hereof. Except as set forth in the immediately preceding sentence, the General Partner shall have no obligation at any time to repay or restore to the Partnership all or any part of any distribution made to it from the Partnership in accordance with the terms of Articles VI or VIII or make any contribution to the capital of the Partnership with respect to such deficit and such deficit shall not be considered a debt owed to the Partnership or to any other Person for any purpose whatsoever. If any Limited Partner has a deficit balance in his Partnership Capital Account (after giving effect to all contributions, distributions and allocations for all taxable years, including the year during which such liquidation occurs), then other than required by law or Paragraph 10.14, such Limited Partner shall have no obligation to repay or restore to the Partnership any distribution made to it from the Partnership in accordance with Article VI or VIII or make any contribution to the capital of the Partnership with respect to such deficit, and such deficit shall not be considered a debt owed to the Partnership or to any other Person for any purpose whatsoever. In the discretion of the General Partner, a pro rata portion of the distributions that would otherwise be made to the partners pursuant to this Paragraph 12.4 or Article VIII may be:

      (i)    distributed to a trust established for the benefit of the partners for the purposes of liquidating Partnership assets, collecting amounts owed to the Partnership, and paying any contingent or unforeseen liabilities or obligations of the Partnership arising out of or in connection with the Partnership. The assets of any such trust shall be distributed to the partners from time to time, in the reasonable discretion of the General Partner, in the same proportions as the amount distributed to such trust by the Partnership would otherwise have been distributed to the partners pursuant to this Agreement; or

      (ii)    withheld to provide a reasonable reserve for Partnership liabilities (contingent or otherwise) and to reflect the unrealized portion of any installment obligations owed to the Partnership, provided that such withheld amounts shall be distributed to the partners as soon as practicable.

      (b)    Notwithstanding the provisions of Paragraph 12.4(a), in the event the Partnership is liquidated within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g) but a distribution of the Partnership's assets is not otherwise required pursuant to Article VIII hereof, the Partnership's assets shall not be distributed to the partners as set forth in Paragraph 12.4(a) and the General Partner shall not contribute any amount to the Partnership with respect to any deficit balance in its Partnership Capital Account as set forth in Paragraph 12.4. Instead, the Partnership shall be deemed to have contributed all of its assets and liabilities to a new partnership and distributed interests in the new partnership to the Partners and thereafter such new partnership will be treated as the Partnership. Notwithstanding any provision of this Agreement to the contrary, in no event shall such deemed contribution and distribution affect the economic arrangement among the Partners as expressed in this Agreement (including, without limitation, their Partnership Capital Account balances or rights to receive distributions).

12.5   <u>Recharacterizations of Transactions</u>.  Any income, gain, loss or deduction (collectively, the "Recharacterization Items") realized as a direct or indirect result of the issuance (the "Issuance") of a Partnership interest by the Partnership to a partner or the recharacterization (the "Recharacterization") of a distribution as a payment for tax purposes shall be allocated among the partners so that (after effecting appropriate adjustments to the Partnership Capital Accounts of the partners to reflect the tax treatment of the Issuance or the Recharacterization) the aggregate amount (including any distributions recharacterized as payments for tax purposes and any amounts received upon liquidation of the Partnership) that each partner is entitled to receive from the Partnership over the life thereof (and each accounting period thereof) is equal to the aggregate amount that each such partner would have been entitled to receive had the Issuance resulted in no income, gain, loss or deduction to either the Partnership or any of its partners (including the recipient of the Partnership interest) or had the Recharacterization not occurred, as the case may be.  In addition, to the extent possible without contravening the preceding sentence, the Recharacterization Items shall be allocated in a manner that puts each partner, as soon as possible, in the same after-tax position as they would have been in had the Issuance resulted in no income, gain, loss or deduction to either the Partnership or any of its partners (including the recipient of the Partnership interest) or had the Recharacterization not occurred, as the case may be.  In no event shall the provisions of this Paragraph 12.5 be interpreted so as to alter in any manner the amount that a Preferred Limited Partner is entitled to receive pursuant to the SBA Annex.

12.6   <u>Sharing Arrangement; Interest in Partnership Items</u>.  The Partners agree that the allocation and distribution provisions contained in this Agreement (including, without limitation, the SBA Annex) represent the sharing arrangement as between the Partners and represent their interests in such allocated items and, therefore, in the event that any transaction or relationship between the parties to this Agreement is recharacterized, allocations and adjustments hereunder shall be made in a manner which maintains the Partnership Capital Account balances of the Partners and the rights of the Partners to receive distributions at the same levels they would have had no such recharacterization occurred.  Accordingly, among other things, in the event the allocations of Net Income or Loss or Capital Transaction Gain or Loss, or items thereof, pursuant to Article IV and Paragraph 8.2(d) or any other provision of this Agreement are reallocated among the partners by the Internal Revenue Service for any reason, such reallocation shall have no effect on the distributions to the Partners pursuant to Paragraph 8.1 and 12.4 and the partners shall receive distributions pursuant to Paragraphs 8.1 and 12.4 based solely upon final Partnership Capital Account balances resulting from allocations as determined without regard to any Internal Revenue Service reallocation.

12.7   <u>Withholding</u>.  The Partnership shall at all times be entitled to make payments with respect to any Partner in amounts required to discharge any obligation of the Partnership to withhold or make payments to any governmental authority with respect to any federal or state, tax liability of such Partner arising as a result of such Partner's interest.  To the extent each such payment satisfies an obligation of the Partnership to withhold with respect to any distribution to a Partner on which the Partnership did not withhold or with respect to any Partner's allocable share of the income of the Partnership, each such payment shall be deemed to be a loan by the Partnership to such Partner (which loan shall be deemed to be immediately due and payable) and shall not be deemed a distribution to such Partner.  The amount of such payments made with respect to such Partner, plus interest at an interest rate per annum equal to

the prime rate, from time to time in effect, of the Bank of California, San Francisco, California, on each such amount from the date of each such payment until such amount is repaid to the Partnership shall be repaid to the Partnership by (i) deduction from any distributions made to such Partner pursuant to this Agreement or (ii) earlier payment by such Partner to the Partnership, in each case as determined by the General Partner in its discretion. The General Partner may, in its discretion, defer making distributions to any Partner owing amounts to the Partnership pursuant to this Paragraph 12.7 until such amounts are paid to the Partnership and shall in addition exercise any other rights of a creditor with respect to such amounts. Each Partner agrees to indemnify the Partnership and the General Partner and each of the members of the General Partner, for any liability incurred for taxes, interest or penalties which may be asserted by reason of the failure to deduct and withhold tax on amounts distributable or allocable to said Partner. Any amount payable hereunder by a Partner shall be paid promptly to the Partnership upon request for such payment from the General Partner, and if not so paid, the General Partner and the Partnership shall be entitled to claim against and deduct from the Partnership Capital Account of, or from any distribution due to, the affected Partner for all such amounts.

IN WITNESS WHEREOF, the Partners have agreed to and executed this
ent as of the date first above written.

GENERAL PARTNER:

Aspen Venture Management III, L.L.C.

By _____
Alexander P. Cilento, Managing Member

By _____
E. David Crockett, Managing Member

By _____
Thaddeus J. Whalen, Managing Member

LIMITED PARTNER:

_Pauline Lo Alker_
Type or Print Name of Limited Partner

Social Security #
Taxpayer I.D. Number: _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_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        _X_ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        _X_ No

By: _Pauline Lo Alker_

Title: _President CEO Amplify.net, Inc._

Capital Commitment: _$100,000.00_

LIMITED PARTNER:

_JAMES G. BASS_
Type or Print Name of Limited Partner

Taxpayer I.D. Number: _542 38 4193_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        _X_ No

(ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        _X_ No

By: _James G Bass_

Title: _____

Capital Commitment: _$60,000_

LIMITED PARTNER:

_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number:_____

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

(i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

_____ Yes        _____ No

(ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

_____ Yes        _____ No

By:_____

Title:_____

Capital Commitment:_____

Ann to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number:_____

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

     (i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

_____ Yes      _____ No

     (ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

_____ Yes      _____ No

By: _____

Title:_____

Capital Commitment:_____

LIMITED PARTNER:

THE VALORIE COOK CARPENTER TRUST DATED)
_____  7|29|9?
Type or Print Name of Limited Partner

Taxpayer I.D. Number: 356 - 48 - 9617

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

    (i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

    _____ Yes    ___/ No

    (ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

    _____ Yes.    __/ No

By: Valorie Al Carp Jr, TRUSTEE

Title: TRUSTEE, THE VALORIE COOK
CARPENTER TRUST DATED 7/29/9?
Capital Commitment: $100,000

LIMITED PARTNER:

_R. J. Ch_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number: _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_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes_____ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes_____ No

By:_____

Title:_____

Capital Commitment: _$500,000_____

7709.10

LIMITED PARTNER:

_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number: _____

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

    (i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

    _____ Yes       _____ No

    (ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

    _____ Yes       _____ No

By: _____

Title: _____

Capital Commitment: _____

LIMITED PARTNER:

_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number: *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*

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

    (i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

       _____ Yes      _____ No

    (ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

       _____ Yes      _____ No

By: *Louis C. Cole* _____

Title: _____

Capital Commitment: *$250,000* _____

ge to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

_COMPUDATA , INC_

Type or Print Name of Limited Partner

Taxpayer I.D. Number: _77 - 0225877_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        _V_ No

(ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        _V_ No

By: _____ ROGER KOO

Title: _PRESIDENT_

Capital Commitment: _$ 1 MILLION_

LIMITED PARTNER:

_Robert L. Corey_
Type or Print Name of Limited Partner

Taxpayer I.D. Number: 556 - 50 - 8347

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

    _____ Yes    ✓ No

    (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

    _____ Yes    ✓ No

By: _____

Title: _____

Capital Commitment: $100,000

LIMITED PARTNER:

*E DAVID CROCKETT AND ANN RAE CROCKETT, CO-TRS CROCKETT LIVING TR UTD MAY 24, 1991*

Type or Print Name of Limited Partner.

Taxpayer I.D. Number: *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*

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

\_\_\_\_\_ Yes    \_\_\_\_\_ No

    (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

\_\_\_\_\_ Yes    \_\_\_\_\_ No

By: _____

Title: _____

Capital Commitment: _____

LIMITED PARTNER:

_CrossFire VENTURES, LLC_
Type or Print Name of Limited Partner

Taxpayer I.D. Number: _77-0495332_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

    \_\_\_\_\_ Yes      ✓ No

    (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

    \_\_\_\_\_ Yes      ✓ No

By: _John D Dunning_

Title: _General Partner_

Capital Commitment: _250,000_

.spen Ventures III, L.P. Agreement

LIMITED PARTNER:

_William J. Del Biaggio III_
Type or Print Name of Limited Partner

Taxpayer I.D. Number: _547 · 57 - 9960_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

    _____ Yes     ✓ No

    (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

    _____ Yes     ✓ No

By: _____

Title: _____

Capital Commitment: _300,000_

Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

_Eugene C. Y DUH_
Type or Print Name of Limited Partner

Taxpayer I.D. Number:_____

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

    (i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

    _____ Yes    ✓ No

    (ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

    _____ Yes    ✓ No

By: _Eugene C. Y. Duh_

Title:_____

Capital Commitment:_____

LIMITED PARTNER:

FAIRWAY VENTURES
Type or Print Name of Limited Partner

Taxpayer I.D. Number: 77- 04979 17

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

(i) Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

_____ Yes      ✓ No

(ii) Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

_____ Yes      ✓ No

By: _____

Title: _____

Capital Commitment: 150,000

LIMITED PARTNER:

Harold V. Feeney

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 485·48·6221

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

    \_\_\_\_\_ Yes    ✓ No

    (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

    \_\_\_\_\_ Yes    ✓ No

By: Harold V. Feeney

Title: _____

Capital Commitment: $50,000

LIMITED PARTNER:

_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number: _____

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes          _____ No

    (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes          _____ No

By: _____

Title: _____

Capital Commitment: _____

ge to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

ALLAN R FERGUSON

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 332 36 8189

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

    (i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

    _____ Yes      X No

    (ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

    _____ Yes      X No

By: _____

Title: _____

Capital Commitment: $ 100,000—

;e to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:
FIRST TRUST CORP
F.B.O. JEROME W. CARLSON IRA

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 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

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes  X  No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes  X  No

By: Jerome W. Carlson

Title: Individual IRA

Capital Commitment: 100,000

1709.10

LIMITED PARTNER:

FRANKENBERG FAMILY TRUST
ROBERT J. FRANKENBERG, TTE

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 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

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

    (i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

      \_\_\_\_\_ Yes     X  No

    (ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

      \_\_\_\_\_ Yes     X  No

By: _____

Title: ROBERT J FRANKENBERG, TTE

Capital Commitment: $100,000

LIMITED PARTNER:

FRANKENBERG FAMILY TRUST
ROBERT J. FRANKENBERG, TTE
Type or Print Name of Limited Partner

Taxpayer I.D. Number: 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

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

(i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

_____ Yes      X   No

(ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

_____ Yes      X   No

By: _____

Title: ROBERT J FRANKENBERG, TTE

Capital Commitment: $100,000

ge to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

_The Fuller Foundation_
Type or Print Name of Limited Partner

Taxpayer I.D. Number: 95-4124436

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

    _____ Yes     __X__ No

    (ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

    _____ Yes     __X__ No

By: _____

Title: Executive Director

Capital Commitment: $100,000

LIMITED PARTNER:

KILLEA FAMILY REVOCABLE TRUST
DATED 12-19-94

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 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

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        ✓ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        ✓ No

By: John W. Killea

Title: TTEES KILLEA FAMILY REVOCABLE TRUST, DTD 12/19/94

Capital Commitment: $100,000

Page to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

_ROGER KOO_

Type or Print Name of Limited Partner

Taxpayer I.D. Number: _566 - 83 - 1070_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        √ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        √ No

By: _____
              ROGER KOO

Title: _____

Capital Commitment: _$ 1 MILLION_

age to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

Jean A. Kovacs + Brooks Stough, as community property

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 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    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

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        X No

(ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        X No

By: _Jean Kovacs / Brooks Stough_____

Title:_____

Capital Commitment:_____

Signature Page to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

*Donald A. Lee*

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 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

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes    ____/____ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes    ____/____ No

By: *Donald G. Lee*

Title:_____

Capital Commitment:_____

LIMITED PARTNER:

_Salvador A. Liccardo_

Type or Print Name of Limited Partner

Taxpayer I.D. Number: _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_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes _✓_ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes _✓_ No

By: _____

Title: _____

Capital Commitment: _$100,000.00_

7709.10

LIMITED PARTNER:

_Love Living Trust Agreement DTD 3/3/83_

Type or Print Name of Limited Partner

Taxpayer I.D. Number: _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_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_✓_ Yes _____ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_✓_ Yes _____ No

By: _____

Title: _Trustee_

Capital Commitment: $ _100,000_

Page to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

*Jeffrey M. Nash and Kathleen L. Nash Trustees of The Jeffrey M. Nash and Kathleen L. Nash Declaration of Trust dated 5/8/86*

Type or Print Name of Limited Partner

Taxpayer I.D. Number: *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*

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

    _____ Yes    ✓ No

    (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

    _____ Yes    ✓ No

By: *Jeffrey M. Nash  Kathleen L. Nash*

Title: *Trustees*

Capital Commitment: *$100,000.—*

Signature Page to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

CRAIG D. NORRIS

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 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

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

(i) Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

_____ Yes     λ   No

(ii) Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

_____ Yes     x   No

By: _____

Title: _____

Capital Commitment: 100K

LIMITED PARTNER:

SANTA CLARA UNIVERSITY
_____
Type or Print Name of Limited Partner

Taxpayer I.D. Number:___94-1156617_____

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

(i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

_____ Yes        ✓ No

(ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

_____ Yes        ✓ No

By:_____

Title:___Vice Pres. for Finance and Administration

Capital Commitment:___$1,000,000_____

LIMITED PARTNER:

DALE G. and MARGO D. SEYMOUR
Type or Print Name of Limited Partner

Taxpayer I.D. Number: 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

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        X  No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        X  No

By: Dale G Seymour   Margo D Seymour

Title: partner

Capital Commitment: _____

re Page to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

SILICON VALLEY BANCSHARES

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 91 - 1962278

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        ✗  No

(ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        ✗  No

By: _____

Title: EVP CFO

Capital Commitment: $250,000

 are Page to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

John R. Simoneaux

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 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

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        ✓ No

(ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        ✓ No

By: John R Simoneaux

Title: Investor

Capital Commitment: $200,000.00

LIMITED PARTNER:

_1988 Small Living Trust_

Type or Print Name of Limited Partner

Taxpayer I.D. Number: _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_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

    \_\_\_\_\_ Yes    \_\_\_X\_\_ No

    (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

    \_\_\_\_\_ Yes    \_\_\_X\_\_ No

By: _Martha S. Small_

Title: _Trustee_

Capital Commitment: _100,000_

LIMITED PARTNER:

*John M. and Linda C. Stedman*
Type or Print Name of Limited Partner

Taxpayer I.D. Number: 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

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

(i) Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

_____ Yes        ✓ No

(ii) Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

_____ Yes        ✓ No

By: *J. M. Stedman  Linda C. Stedman*

Title:_____

Capital Commitment: $100,000.⁰⁰

LIMITED PARTNER:

_Kevin Sullivan_

Type or Print Name of Limited Partner

Taxpayer I.D. Number:_____

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

(i) Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

_____ Yes          _____ No

(ii) Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

_____ Yes          _____ No

By:_____

Title:_____

Capital Commitment:_____

LIMITED PARTNER:

_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number:_____

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes       _____ No

(ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes       _____ No

By: _____

Title: _____

Capital Commitment:_____

LIMITED PARTNER:

*Don R.E. Thomas and Jeannie K.A. Thomas*

Type or Print Name of Limited Partner

Taxpayer I.D. Number: *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*

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        X No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        X No

By: *Dan R.E. Thomas / Jeannie K.A. Thomas*

Title: _____

Capital Commitment: *$100,000*

LIMITED PARTNER:

_DAVID E VAUGHN_
Type or Print Name of Limited Partner

Taxpayer I.D. Number: _567 - 62 - 5115_

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

    (i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

    _____ Yes    _X_ No

    (ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

    _____ Yes    _X_ No

By: _____

Title: _____

Capital Commitment: _100,000_

LIMITED PARTNER:

VENKATESH FAMILY LIVING TRUST

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 025 - 58 - 4375

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

    _____ Yes    ✓ No

    (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

    _____ Yes    ✓ No

By: _____

Title: TRUSTEE

Capital Commitment: $100,000

Signature Page to Aspen Ventures III, L.P. Agreement