1  Gregory C. Nuti (Bar No. 151754)
   SCHNADER HARRISON SEGAL & LEWIS LLP
2  One Montgomery Street, Suite 2200
   San Francisco, CA 94104-5501
3  Telephone: 415-364-6700
   Facsimile: 415-364-6785
4  E-mail: gnuti@schnader.com

5  Beverley Hazlewood Lewis
   Trial Attorney, Office of General Counsel
6  U.S. Small Business Administration
   409 3rd Street, S.W., Suite 7200
7  Washington, D.C. 20416
   Telephone (202) 619-1605
8  Facsimile (202) 481- 0468

9  Attorneys for Plaintiff,
   United States Small Business Administration in its capacity
10 as Receiver for Aspen Ventures III, L.P.

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14  | |
    | --- |
    | UNITED STATES SMALL BUSINESS ADMINISTRATION IN ITS CAPACITY AS RECEIVER FOR ASPEN VENTURES III, L.P., <br><br> Plaintiff, <br><br> vs. <br><br> REDLEAF GROUP, INC., <br><br> Defendants. <br><br> REDLEAF GROUP, INC., <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> ASPEN VENTURES MANAGEMENT III, LLC, a Delaware Limited Liability Company, ALEXANDER P. CILENTO, a California resident, and DAVID CROCKETT, a California resident, and DOES 1-10, <br><br> Third-Party Defendants. | Case No.: C07-05350 JW/PVT <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RECEIVER TO STRIKE AFFIRMATIVE DEFENSES** <br><br> Date:     April 14, 2008 <br> Time:     10:00 a.m. <br> Location: 280 South First Street, Courtroom 8, 4th Floor, San Jose, CA 95113 <br> Judge:    Hon. James Ware |

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | FACTS | 3 |
| III. | ARGUMENT | 5 |
| | A. Standards for Granting A Motion to Strike | 5 |
| | B. The Affirmative Defenses are Legally Insufficient | 6 |
| | 1. The Statutory Framework of the Act and Regulations Severely Restricts Redleaf's Available Defenses | 6 |
| | 2. Redleaf's Third Affirmative Defense Of Unclean Hands Is Barred as a Matter of Law | 9 |
| | 3. Redleaf's Sixth Affirmative Defense Of Estoppel Is Barred as Matter of Law | 12 |
| | 4. Redleaf's Fifth and Seventh Affirmative Defense For Fraud Is Barred As a Matter of Law | 13 |
| | 5. Redleaf's Eighth Affirmative Defense Based Upon AVM's Breach of Contract Is Barred as a Matter of Law | 14 |
| | 6. Redleaf's Eleventh Affirmative Defense of Failure of Conditions Precedent Is Barred as a Matter of Law | 14 |
| | 7. Redleaf's Fourth Affirmative Defense of Lack of Standing Is Barred as a Matter of Law | 16 |
| IV. | CONCLUSION | 17 |

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

i
MEMO P&A'S MOTION TO STRIKE CASE NO. C07-05350

PHDATA 3068591_1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A. Farber and Partners, Inc. v. Maynard Hal Garber,*
   417 F. Supp 2d 1143 (C.D. Cal. 2006) ..................................................................9

*Cameron v. Graphic Mgmt. Assoc., Inc.,* 817 F. Supp. 19 (E.D. Pa. 1992) ...................6

*De Saracho v. Custom Food Machinery, Inc.,* 206 F.3d 874 (9th Cir. 2000)................16

*Fantasy, Inc. v. Fogerty,* 984 F.2d 1524 (9th Cir. 1993))..................................................7

*Federal Deposit Ins. Co. v. O'Melveny & Myers,* 61 F.3d 17 (9th Cir. 1995).............9,10,11,12,14

*Great West Life Assurance Co. v. Levithan,* 834 F. Supp. 858 (E.D. Pa. 1993)................6

*Harmelin v. Man Fin., Inc.,* 2007 U.S. Dist. LEXIS 73851 (E.D. Pa. 2007) ....................10

*Marder v. Lopez,* 450 F.3d 445 (9th Cir. 2006)..................................................................7

*McInerney v. Moyer Lumber & Hardware, Inc.,* 244 F. Supp. 2d 393 (E.D. Pa. 2002) ..........6

*Official Committee of Unsecured Creditors v. Lafferty & Co.,*
   267 F.3d 340 (3d Cir. 2001)..........................................................................10

*Oregon Laborers-Employers Trust Funds v. Pacific Fence and Wire Co.,*
   726 F. Supp. 786 (D. Or. 1989) .....................................................................5

*Scholes v. Lehmann,* 56 F.3d 750 (7th Cir. 1995).............................................................10

*U.S. Small Business Administration v. Chimicles,* 447 F.3d 207 (2006)..........................8

*U.S. Small Business Administration v. Smith, Stratton, Wise,*
   *Heher, & Brennan, LLP,* 2006 U.S. LEXIS 4765 ..........................................16

*In re Sunrise Sec. Litig.,* 818 F. Supp. 830 (E.D. Pa. 1993) ..............................................6

*U.S. Small Business Association v. Propper,* 2004 U.S. Dist LEXIS
   23363 (E.D. Pa. 2004)....................................................................................16

*United States of America v. Acorn Technology Fund,*
   429 F.3d 438 (3rd Cir. 2005).....................................................................13,16

*United States of America v. Chung-Shiang Wang,* 404, F. Supp 2d 1155 (N.D. Cal 2005)............6

*United States v. Marisol, Inc.,* 725 F. Supp. 833 (M.D. Pa. 1989)....................................6

*United States v. Union Gas Co.,* 743 F. Supp. 1144 (E.D. Pa. 1990).................................6

*Walton v. Nalco Chemical Company,* 272 F.3d 13 (1st Cir. 2001) ..................................15

*Waslow v. Grant Thorton LLP (In re Jack Greenberg),*
   240 B.R. 486 (E.D. Pa. 1999) ........................................................................10

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

## STATE CASES

*Camerer v. Cal. Sav. & Commercial Bank of San Diego,*
    4 Cal. 2d 159, 48 P.2d 39 (1935)..................................................................................9

*Skoglund v. Ormand Industries, Inc.*, 372 A.2d 204 (1976).................................................9

*Kousi v. Sugahara*, 1009 Del. Ch. LEXIS 194 (1991)..........................................................9

*Nakahara v. NS 1991 American Trust*, 718 A.2d 518 (1998)............................................11

*Smithkline v. Merck & Co., Inc.*, 766 A.2d 442 (2000).....................................................11

## FEDERAL STATUTES

11 U.S.C. § 541....................................................................................................................10

13 C.F.R. § 107.1500, et. seq................................................................................................2

13 C.F.R. § 107.1820..............................................................................................................2

13 C.F.R. § 107.1820..............................................................................................................7

13 C.F.R. §107.18209b(5)....................................................................................................13

13 C.F.R. § 107.1910............................................................................................................12

13 CFR 107.30.......................................................................................................................7

13 C.F.R. § 107.500..............................................................................................................13

15 U.S.C. § 687c....................................................................................................................2

28 U.S.C. § 1346, 2671 et.seq..............................................................................................12

Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et. seq*................................................13

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

## I. **INTRODUCTION**

Plaintiff, the United States Small Business Administration ("SBA") in its capacity as Receiver for Aspen Ventures III, L.P. ("Aspen Ventures") seeks an order striking Redleaf's Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Affirmative Defenses pursuant to Federal Rule of Civil Procedure 12(f). The asserted affirmative defenses are insufficient as a matter of law, there is no issue of fact that would allow the defenses to succeed, and the Receiver would be prejudiced to allow their inclusion.

Redleaf will likely argue that barring them from raising these affirmative defenses is a harsh result. However, this result is based in part upon a statutory and regulatory framework expressly established to benefit SBA and to prevent private limited partners from evading their obligations. As part of that framework, SBA matches private capital up to 2 for 1, so that SBA often has 66% of the money at risk, versus 33% by the private partners. However, if a Small Business Investment Company ("SBIC") is profitable, SBA does not receive 66% of profits. The private limited partners' profit is thereby increased beyond what their capital contributions would otherwise bring them. *See* 13 C.F.R. § 107.1500, et. seq. Because SBA's upside is limited, Congress and SBA have established a legal framework to protect SBA, especially on the downside when an SBIC is not profitable. That framework, includes, among other things, requiring the use of SBA-approved limited partnership agreements incorporating terms and provisions essentially barring defenses to payment of capital commitments upon exercise of SBA's regulatory remedies under 13 C.F.R. § 107.1820. SBA has already disbursed to Aspen Venture its promised funds, based in part upon the promise by Redleaf to pay its binding unfunded commitment in full. Failure by any private limited partners to fully fund their commitments would upset this express statutory framework, regardless of claims of fraud.

Redleaf will of course assert that Congress and SBA have stacked the cards in the Receiver's favor, especially in the liquidation of SBICs. That is correct. SBA-as-Receiver enjoys advantages and powers of being appointed receiver under 15 U.S.C. § 687c. These are

1  indeed powerful tools that Congress intended to work to the Receiver's advantage, not to its
2  detriment.
3      The private limited partners cannot deny the effect of SBA's regulations. That is the deal
4  they made. All private limited partners are deemed to know this legal framework. The Act and
5  regulations are disclosed in the applicable agreements. Redleaf agreed to bind itself for the
6  potential profit it could make using the SBA leverage. It hoped to enjoy its own special financial
7  advantages over SBA if Aspen Ventures was profitable. On the other hand, when an SBIC goes
8  into receivership and has no profits, the deal is that private limited partners are forced to pay,
9  with few if any defenses. This makes sense because all of SBA's dollars have already been put at
10 risk. Redleaf cannot claim that SBA's regulatory framework only applies to them when an SBIC
11 is a winner and they enjoy extra profits, but not when an SBIC is unsuccessful and they are asked
12 fulfill their commitment. Any other result would violate the statutory and regulatory framework
13 carefully crafted by Congress and SBA, jeopardize the hundreds of millions of federal dollars at
14 stake in the SBIC program, and be contrary to public policy.

## II.    FACTS

16     Aspen Ventures is a limited partnership formed under the laws of the State of Delaware
17 pursuant to that certain Amended and Restated Limited Partnership Agreement dated and
18 effective as of August 20, 1999, ("Partnership Agreement") and First Amendment to Amended
19 and Restated Limited Partnership Agreement ("First Amendment"). Complaint, ¶¶ 3, 11,
20 **Exhibits B and C.**
21     Aspen Ventures was formed for the purpose operating as a venture capital fund licensed
22 as a SBIC under the Small Business Investment Act of 1958 (the "Act") as implemented by 13
23 CFR Part 107 (the "Regulations").
24     Aspen Ventures Management III, LLC ("AVM") was Aspen Ventures' managing general
25 partner. The management and operations of Aspen Ventures, including without limitation, the
26 formulation of the investment policy vested exclusively in AVM, which authority was governed
27 and regulated by the Act and Regulations. Partnership Agreement, ¶ 7.1.
28

Pursuant to the terms of the Partnership Agreement, First Amendment and Series B Admission and Amendment Agreement ("Admission Agreement"), Redleaf was admitted to the partnership as a Series B limited partner. Under the Admission Agreement, Redleaf committed to contribute $15,000,000 to Aspen Ventures. Complaint, ¶ 12, **Exhibit D**.

The SBA is the duly appointed Receiver for Aspen Ventures pursuant to the terms of the Stipulation for Consent Order of Receivership dated October 4, 2006 ("Consent Order) issued by this Court in the action captioned *United States of America v. Aspen Ventures III, L.P.* case number C06-04032 JW ("Receivership Action"). The Receiver was appointed for the purpose of, among other things, preserving and pursuing claims of Aspen Ventures.

Under the terms of the Consent Order, the Receiver was given all power, authority, right and privilege possessed by the general partner, officers and directors of Aspen Ventures under applicable state and federal law, the applicable limited partnership agreements, all powers and authority of a receiver at equity, including to assume and control the operations of Aspen Ventures and pursue and preserve all of its claims. Complaint, **Exhibit A**.

On July 20, 2007, the Receiver filed its Motion of Receiver to Reopen Case and For an Order Modifying Stay of Proceedings for Limited Purpose ("Motion to Lift Stay"). Redleaf did not oppose the Motion to Lift Stay. On August October 2, 2007, this Court issued its Order Modifying Stay of Proceedings for Limited Purpose ("Order Lifting Stay") specifically authorizing the SBA to assert claims against Redleaf for its unfunded capital commitment. On October 19, 2007, the SBA filed the Complaint in this matter asserting a single claim against Redleaf for breach of contract for failing to make its capital contribution in the amount of $10.6 million to Aspen Ventures.

On December 17, 2007, Redleaf filed its Answer of Defendant Redleaf Group, Inc. ("Answer"). The Answer contained, among others, the following affirmative defenses:

> **THIRD AFFIRMATIVE DEFENSE:** The complaint is barred by the equitable doctrine of unclean hands.
>
> **FOURTH AFFIRMATIVE DEFENSE:** The Receiver lacks standing to bring a claim for breach of contract against Defendant.

**FIFTH AFFIRMATIVE DEFENSE:** The complaint is barred because Defendant was fraudulently induced to enter into the contract(s).

**SIXTH AFFIRMATIVE DEFENSE:** The complaint is barred by the doctrine of estoppel.

**SEVENTH AFFIRMATIVE DEFENSE:** Defendant is entitled to rescind the contrtact.

**EIGHTH AFFIRMATIVE DEFENSE:** The complaint is barred due to material breach(es) of the Partnership Agreement, the AVM LLC Agreement, the First Amendment, and the Admission Agreement by Aspen Ventures Management III, L.L.C.

**ELEVENTH AFFIRMATIVE DEFENSE**: The Complaint is barred because of Aspen Ventures Management III, L.L.C.'s failure to perform conditions precedent.

Also on December 17, 2007, Redleaf filed Defendant Redleaf Group, Inc.'s Third Party Complaint (Jury Trial Demanded) ("Third Party Complaint") against AVM, Alexander Cilento and David Crockett ("Third Party Defendants")[1]. The gist of the Third Party Complaint is that Redleaf was fraudulently induced into agreeing to invest in Aspen Ventures.

### III. ARGUMENT

#### A. Standards for Granting A Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike insufficient affirmative defenses may be made at almost any time. The time limits of *Rule 12(f)* are not rigidly enforced. Whether a motion to strike is advanced in a timely or untimely motion under 12(f) is of little practical importance because Rule 12(h) permits an attack on the pleadings even if the time for moving under 12(f) has expired. *Oregon Laborers-Employers Trust Funds v. Pacific Fence And Wire Co.*, 726 F. Supp.

---

[1] The Consent Order provides that "[a]all parties and prospective parties to any civil legal proceedings of any nature involving Aspen Ventures are enjoined from commencing or continuing any legal proceeding and further enjoined from taking any further action with respect to pursuing such claims until further order of this Court. Further, the Order Lifting Stay did not authorize Redleaf to file the Third Party Complaint. Nor did Redleaf seek a modification of the Consent Order allowing the Third Party Complaint. Redleaf's Third Party Complaint was filed in violation of the Consent Order. Although the Receiver will not make an issue of this violation, it is the Receiver's position that the Consent Order is still in full force and effect, including, without limitation, with respect to claims Redleaf may attempt to assert in the future.

786, 788 (D. Or. 1989); *United States of America v. Chung-Shiang Wang*, 404 F. Supp.2d 1155 (N.D. Cal. 2005).

While motions to strike are generally disfavored, they "do serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues that would not affect the outcome of the case." *United States v. Union Gas Co.*, 743 F. Supp. 1144, 1150 (E.D. Pa. 1990); *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (finding that "the purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."); *Cameron v. Graphic Mgmt. Assoc., Inc.*, 817 F. Supp. 19, 22 (E.D. Pa. 1992) (holding that "the court may grant a motion to strike a legally insufficient defense so the parties to the suit do not needlessly waste time and money in preparation of trial.") A motion to strike under Rule 12(f) is the "primary procedure" for objecting to an insufficient affirmative defense. *Union Gas*, 743 F. Supp. at 1150; *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989). An affirmative defense is insufficient "if as a matter of law it cannot succeed under any circumstances," *In re Sunrise Sec. Litig.*, 818 F. Supp. 830, 840 (E.D. Pa. 1993), and "the moving party is prejudiced by the presence of the allegations in the pleading." *Great West Life Assurance Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993).

**B.    The Affirmative Defenses are Legally Insufficient.**

   **1.    The Statutory Framework of the Act and Regulations Severely Restricts Redleaf's Available Defenses.**

Before addressing the merits of the motion to strike, it is essential to summarize the statutory and regulatory framework in which Readleaf's obligations to Aspen arise, and to explain the importance of that framework to the SBA's lending program. Congress and SBA specifically established a federal legal framework to prevent private limited partners from evading their payment obligations to SBA's licensees under the Act. Limited partners, such as Redleaf, agree to abide by these rules and regulations in order to participate in a SBIC.

The SBA makes decisions involving literally hundreds of millions of dollars based upon the consistent application and enforcement of the Act and Regulations, and so much more is at

stake in this case than Redleaf's liability. SBA commits federal funds to leverage SBIC investments based upon the unconditional enforceability of the promises by a private limited partner to pay its commitment to the SBIC. Congress and SBA have gone to great lengths to construct a regime that prevents private limited partners from evading their obligations to pay. SBA, as Receiver, must assert and preserve this framework, which far outweigh the fate of any one case or unfunded limited partner commitment. If these safeguards seem draconian, constitute "overkill" or appear to leave Redleaf essentially barred from avoiding its obligation to pay that is precisely the objective of the Act and Regulations. Accepting arguments and affirmative defenses made by Redleaf would stand these safeguards on their heads and put hundreds of millions of dollars of the SBA's federal funds at risk.

Once SBA invoked its right to place Aspen Ventures in restricted operations pursuant to 13 C.F.R. § 107.1820, Redleaf's obligation to pay its unfunded commitment became absolute. The Act and Regulations make sure of this by requiring all relevant documents to be consistent with the regulatory framework.

Aspen Ventures' Partnership Agreement is subject to all existing and future provisions of the Act and its Regulations. Partnership Agreement, ¶¶ 1.2 and 2.5; 13 CFR 107.30. Paragraph 7.1 of the SBA Annex[2], incorporated into the Partnership Agreement pursuant to paragraph 2.5, provides:

> (b) Notwithstanding any provision in the Agreement to the contrary (except as expressly provided in this Section 7.1(b)), in the event that the Partnership is subject to restricted operations (as such term is used in the SBIC Act) and prior to the liquidation of the Partnership the **SBA requires the General Partner and the Private Limited Partners to contribute any amount of their respective Commitments not previously contributed to the Partnership, the obligation to make such contributions shall not be subject to any conditions set forth in the Agreement other than limitations on the amount of capital**

---

[2] A copy of the SBA Annex is attached to the accompanying Declaration of Gregory C. Nuti In Support of Motion to Strike, ¶ 2, **Exhibit A**. The SBA Annex is referred to and incorporated in the Partnership Agreement. The Court may treat any agreement necessarily relied on in the Complaint as a "part of the[C]omplaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006), see also *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993)(court may properly consider matters within the pleadings in deciding a motion to strike).

which a Partner is obligated to contribute (i) within any specified time period or (ii) prior to any specified date.

(c) ...**No Private Limited Partner or General Partner shall have any right to delay, reduce or offset any capital contribution obligation to the Partnership called under this Section 7.1 by reason of any counterclaim or right to offset** by such Partner or the Partnership against SBA or any Preferred Limited Partner.

Partnership Agreement, ¶ 2.5, SBA Annex PS, ¶ 7.1 (emphasis added.)

The language used in the SBA Annex is unequivocal. Redleaf is required to contribute any amount of its commitments not previously contributed and the obligation "shall not be subject to any conditions set forth in the Agreement" other than limitations on the amount of capital within any specified time period or prior to any specified date. Further, Redleaf has no right to "delay, reduce or offset any capital contribution obligation...by reason of any counterclaim or right to offset".

The Third Circuit in *U.S. Small Business Administration v. Chimicles*, 447 F.3d 207 (2006) ("*Chimicles*") held this provision prevented limited partners from using an arbitration provision contained in the partnership agreement to delay their payment obligations. In *Chimicles*, SBA as receiver of a failed SBIC sought to enforce payment of unfunded capital commitments from several limited partners. *Chimicles,* 447 F.3d at 209-210. The limited partners sought to stay the proceedings pending mandatory arbitration. *Id.* The Third Circuit found that even if the claims for the unfunded commitments were subject to arbitration, it was no longer enforceable after the receiver had been appointed:

> Now that the SBA has been appointed as receiver and is attempting to marshal Acorn's assets, appellants' obligations to make contributions are no longer 'subject to any conditions set forth in the Agreement,' which we hold includes the arbitration provision set forth in section 13.10. Thus, even if imported into the subscription agreements, the arbitration provision of the partnership agreements would not apply to these disputes over unpaid investor commitments.

*Chimicles*, 447 F.3d at 211. The provision relied upon by the court in *Chimicles* is the same as set forth in the Aspen Ventures' Partnership Agreement[3]. With this background the Receiver will now turn to Redleaf's affirmative defenses.

        2.    <u>Redleaf's Third Affirmative Defense Of Unclean Hands Is Barred as a Matter of Law.</u>

Redleaf asserts that the Receiver's claims are barred by the equitable doctrine of unclean hands. The defense of unclean hands, or *in pari delicto*, "derives from the equitable maxim that 'one who comes into equity must do so with clean hands.'" *Kousi v. Sugahara*, 1009 Del. Ch. Lexis 194, *5 (1991)[4]. "'The purpose of the clean hands maxim is to protect the public and the court against misuse by one who, because of his conduct, has forfeited his right to have the court consider his claims, regardless of their merit. As such it is not a matter of defense to be applied on behalf of a litigant; rather it is a rule of public policy.'" *Id., quoting Skoglund v. Ormand Industries, Inc.*, 372 A.2d 204, 213 (1976). Although the Receiver has not found Delaware authority directly on point, several jurisdictions hold that equitable defenses, including unclean hands, are not applicable to a receiver.

Under California law, "defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's receiver." *A. Farber and Partners, Inc. v. Maynard Hal Garber*, 417 F. Supp 2d 1143, 1147 (C.D. Cal. 2006); *citing Federal Deposit Ins. Co. v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995) ("*O'Melveney*") and *Camerer v. Cal. Sav. &*

---

[3] The full text of the provision relied upon by the court in *Chimicles* is as follows:

    Notwithstanding any provision in the Agreement to the contrary (except as expressly provided in this Section 5.1.2), in the event that the Partnership is subject to restricted operations (as such term is used in the SBIC Act)2 and prior to the liquidation of the Partnership the SBA requires the General Partner and the Private Limited Partners to contribute any amount of their respective Commitments not previously contributed to the Partnership, **the obligation to make such contributions shall not be subject to any conditions set forth in the Agreement** other than limitations on the amount of capital which a Partner is obligated to contribute (a) within any specified time period or (b) prior to any specified date. *Chimicles*, 447 F.3d at 211 (emphasis added).

[4] Delaware law applies under the Partnership Agreement. Partnership Agreement, ¶ 10.4

*Commercial Bank of San Diego,* 4 Cal. 2d 159, 170-71, 48 P.2d 39 (1935). The Ninth Circuit in *O'Melveny* discussed the issue as follows:

> [W]e nevertheless conclude that the FDIC [a receiver] is not barred by certain equitable defenses O'Melveny could have raised against ADSB. We recognize that, in general, "[a] receiver occupies no better position than that which was occupied by the person or party for whom he acts . . . and any defense good against the original party is good against the receiver." However, this rule is subject to exceptions; defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's receiver. While a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on a trustee, receiver or similar innocent entity that steps into the party's shoes pursuant to court order or operation of law. Moreover, when a party is denied a defense under such circumstances, the opposing party enjoys a windfall. This is justifiable as against the wrongdoer himself, not against the wrongdoer's innocent creditors.
>
> ***
>
> Also significant is the fact that the receiver becomes the bank's successor as part of an intricate regulatory scheme designed to protect the interests of third parties who also were not privy to the bank's inequitable conduct. That scheme would be frustrated by imputing the bank's inequitable conduct to the receiver, thereby diminishing the value of the asset pool held by the receiver and limiting the receiver's discretion in disposing of the assets.
>
> In light of these considerations, we conclude that the equities between a party asserting an equitable defense and a bank are at such variance with the equities between the party and a receiver of the bank that equitable defenses good against the bank should not be available against the receiver. To hold otherwise would be to elevate form over substance - something courts sitting in equity traditionally will not do....

*O'Melveny*, 61 F.3d at 19 (citations omitted). The Seventh Circuit, applying Illinois law, is of the same view as the Ninth Circuit. In *Scholes v. Lehmann,* 56 F.3d 750 (7th Cir. 1995), the court declined to impute to a receiver the principal's wrongdoing where the receiver sought to maximize the value of the corporation for the benefit of investors and creditors. *Id.* at 754; *see also Official Committee of Unsecured Creditors v. Lafferty & Co.,* 267 F.3d 340, 354-355 (3d Cir. 2001) (upholding *in pari delicto* doctrine as applied to creditors committee suing under 11 U.S.C. § 541 but noting different result often reached in receivership context); *Waslow v. Grant Thorton LLP (In re Jack Greenberg),* 240 B.R. 486, 517-518 (E.D. Pa. 1999) (holding bankruptcy trustee not subject to imputation defenses applying Pennsylvania law); *Harmelin v.*

*Man Fin., Inc.*, 2007 U.S. Dist. LEXIS 73851 (E.D. Pa. 2007) (refusing to bar recovery by receiver based upon prior fraud of agent of fund now in receivership).

These cases are consistent with the notion held by Delaware courts that they enjoy broad discretion in applying equitable doctrines:

> While it is true that cases turning on matters related to unclean hands are infrequent as a matter of course, that infrequency has little to do with the lack of judicial power to invoke the doctrine. In fact, the decisional authority is almost universal in its acceptance that courts of equity have extraordinarily broad discretion in application of the doctrine. The most oft-cited statement of the applicable standard is the United States Supreme Court's opinion in *Keystone Driller Co. v. General Excavator Co.*, where Justice Butler stated "[in consideration of unclean hands, courts] are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Presumably, courts in Delaware are governed by the same wide latitude.

*Nakahara v. NS 1991 American Trust*, 718 A.2d 518, 522-523 (1998); *see also Smithkline v. Merck & Co., Inc.*, 766 A.2d 442 (2000).

Delaware courts will not invoke equitable defenses in contravention of public policy.

> The greatest limitation on the doctrine is the widely accepted exception that since it is ultimately based on public policy, countervailing public policy which points in the direction of reaching the case on the merits can preclude its operation. In other words, a stronger public policy may be at work giving the unclean litigant fortuitous reprieve from the doctrine's otherwise potentially preclusive effect. As one astute commentator put it "the doctrine should not be invoked when the only party losing is the public."

*Nakahara*, 718 A.2d at 523.

The instant case is one where Redleaf should not be allowed to invoke its equitable defenses. The Receiver is an innocent entity that stepped into Aspen Ventures' shoes pursuant to court order and an elaborate statutory scheme aimed at protecting public funds. *See O'Melveny*, 61 F.3d at 19. The Receiver's obligation to collect unfunded capital commitments serves the two-fold purpose of maximizing the value of the Aspen Ventures for the benefit of investors and creditors and upholding the public policy at the foundation of the Act and its Regulations. This purpose would be frustrated by imputing the alleged inequitable conduct to the Receiver. The public is the only party to lose if Redleaf is allowed to invoke an unclean hands defense against

the Receiver. This is not the proper purpose of an equitable defense. *Nakahara,* 718 A.2d at 523.

Further, to the extent that Redleaf may be alleging that SBA, in its capacity as federal agency, has unclean hands, the defense must likewise fail. SBA as federal agency is not a party to this action, nor has Redleaf asserted any claims against SBA with respect to these matters. Indeed, such claims by Redleaf may be barred by the Federal Tort Claims Act. 28 U.S.C. § 1346, 2671 et.seq.

Redleaf, in agreeing to the terms of the Partnership Agreement, First Amendment and Admission Agreement, waived its right to delay, reduce or offset its obligation by reason of any counterclaim or right to offset. SBA Annex, ¶ 7.1, *Chimicles,* 447 F.3d at 211. Redleaf's redress for any alleged wrong committed lies with those that committed the acts, in this case, AVM and its principals[5].

3. <u>Redleaf's Sixth Affirmative Defense Of Estoppel Is Barred as Matter of Law.</u>

Redleaf asserts that the Receivers claims are barred by the equitable doctrine of estoppel. For the same reasons set forth immediately above, estoppel cannot be asserted against a receiver. *O'Melveny,* 61 F.3d at 19 ("[W]e conclude that the equities between a party asserting an equitable defense and a bank are at such variance with the equities between the party and a receiver of the bank that equitable defenses good against the bank should not be available against the receiver.").

Further, the Act and Regulations expressly prevent Redleaf from attempting to assert waiver or estoppel based upon a failure by SBA, as a federal agency to act. 13 C.F.R. § 107.1910 ("SBA's failure to exercise or delay in exercising any right or remedy under the Act or the regulations in this part does not constitute a waiver of such right or remedy.").

//

---

[5] In fact, Redleaf has done just that in filing the Third Party Complaint. The Receiver has not taken issue with this despite the fact Redleaf filed it in violation of this Court's Consent Order. Redleaf will get its day in Court, just not against the Receiver.

### 4. Redleaf's Fifth and Seventh Affirmative Defenses For Fraud and Rescission Are Barred As a Matter of Law.

Redleaf claims it was fraudulently induced to enter into the Partnership Agreement, First Amendment and Admission Agreement.[6] Redleaf then claims it is entitled to rescind these agreements. There are numerous defects in these affirmative defenses. As an initial matter, it fails to plead fraud with specificity as required by Federal Rule of Civil Procedure 9(c). Depending upon Redleaf's specific allegations, the claims may be barred by the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et. seq.* or because they are derivative in nature. *United States of America v. Acorn Technology Fund*, 429 F.3d 438 (3rd Cir. 2005). However, without specificity, the Receiver is left to guess what facts and circumstances give rise to its claimed defense. On that basis alone, it should be stricken. However, amending the answer is futile.

Fraud is unavailable to Redleaf as a defense to payment of its unfunded commitment. Once an SBIC has been placed in restricted operations, the obligation of private limited partners to fulfill their capital commitments shall not be subject to any conditions set forth in the agreement other than those relating to amount and time of payment. An SBIC is subject to the condition that it not commit fraudulent acts. This condition is set forth in the Partnership Agreement. Paragraph 2.5 of the Partnership Agreement states "at any time that the Partnership is a Licensee, the provisions of this Agreement shall be subject to the SBIC Act and the SBIC Regulations to the extent applicable". As recognized by the Third Circuit, an SBIC must conduct its activities in accordance with federal law-the Act and Regulations. *Chimicles*, 447 F.3d at 208 (*citing* 13 C.F.R. § 107.500). Fraud is a regulatory violation for which SBA may impose restricted operations remedies, triggering an absolute obligation to pay. 13 C.F.R. §107.18209b(5). In signing the Partnership Agreement and related documents, Redleaf agreed its "obligation to make such contribution [capital commitment] shall not be subject to any

---

[6] Redleaf uses the generic term "contract(s)" in its Answer. Given the Partnership Agreement, First Amendment and Admission Agreement are the contracts at issue, the Receiver assumes these are the contracts to which Redleaf refers.

conditions [failure to comply with the Regulations] set forth in the agreement." SBA Annex, ¶ 7.1(a).

Redleaf waived its defenses and offsets when it entered into the Partnership Agreement, First Amendment and Admission Agreement. *Chimicles*, 447 F.3d at 211. Redleaf's obligation to the Receiver for its capital commitment is absolute and unconditional. In addition, any wrongs committed by Aspen Ventures' previous management may not be imputed to the Receiver. *O'Melveny*, 61 F.3d at 19. The Receiver and its estate cannot provide redress for Redleaf's claims. If Redleaf cannot establish fraud against the Receiver, it may not rescind its contracts. Redleaf's Fifth and Seventh Affirmative Defenses should be stricken without leave to amend.

5. **Redleaf's Eighth Affirmative Defense Based Upon AVM's Breach of Contract Is Barred as a Matter of Law.**

Redleaf's Eighth Affirmative Defense asserts that the complaint is barred due to AVM breaching the Partnership Agreement, First Amendment and the Admission Agreement. In other words, Redleaf claims it has counter claims or offsets against AVM that relieves it of its obligation to pay its capital commitment. This is precisely the type of argument that the Act and Regulations prevent and that were addressed in the paragraph 7.1 of the SBA Annex. Further, there is no provision in the Partnership Agreement, First Amendment or Admission Agreement stating that Redleaf is absolved of its obligations upon a breach by AVM. And even if there were such a provision, it would not be enforceable under terms of the SBA Annex. *Chimicles*, 447 F.3d at 211. Redleaf's Eighth Affirmative Defense should be stricken without leave to amend.

6. **Redleaf's Eleventh Affirmative Defense of Failure of Conditions Precedent Is Barred as a Matter of Law.**

Redleaf's Eleventh Affirmative Defense asserts that the complaint is barred because AVM failed to perform conditions precedent. This affirmative defense suffers the same fatal flaws as the Eighth Affirmative Defense. There are no conditions precedent to Redleaf's obligation to make its capital commitment and even if there were, they are no longer enforceable. SBA Annex, ¶ 7.1, *Chimicles*, 447 F.3d at 211.

14

Any limitations on the timing and amount of Redleaf's capital commitment expired long ago. The Admission Agreement incorporates the Partnership Agreement and First Amendment and provides that Redleaf agrees to be bound by all the terms and conditions of the Partnership Agreement and First Amendment. The Partnership Agreement, First Amendment and Admission Agreement are fully integrated agreements. *See* Partnership Agreement, ¶ 10.9. The Admission Agreement was effective as of April 1, 2002 and committed Redleaf to pay $15,000,000.00. There are no other conditions set for the in the Admission Agreement.

The Partnership Agreement and First Amendment do not create any conditions precedent applicable here. The First Amendment, at paragraph 2, provides:

> (c) The Initial Contribution of each Series B Limited Partner being admitted to the Partnership on the first closing of Series B Limited Partnership interests shall be equal to twenty percent (20%) (or such lesser percentage as shall be specified by the General Partner in writing in the initial Series B Drawdown Notice) of such Series B Limited Partner's Capital Commitment.
>
> (d) .....Except with the written consent of Two-Thirds Interest of the Limited Partners, the Limited Partners shall not be required to contribute capital to the Partnership in an aggregate amount greater than fifty percent (50%) of the Limited Partners' aggregate Capital Commitment to the Partnership during the first 12 months after establishment of Series B.

Thus, Redleaf's obligation was only limited to the extent it was capped at $15 million and it did not have to contribute more than $7.5 million within the first year. As of April 1, 2003, Redleaf was obligated to pay its entire committed amount upon request by Aspen Ventures, and now, by the Receiver.

Further, Redleaf must plead with specificity and particularity the conditions precedent to its obligation to pay its capital commitment. Federal Rule Civil Procedure 9(c); *Walton v. Nalco Chemical Company*, 272 F.3d 13, n.15 (1st Cir. 2001); *citing* 5 Wright & Miller § 1304 ("A party who intends to controvert the claimant's general allegation of performance [of a condition precedent] thus is given the burden of identifying those conditions he believes are unfulfilled and wishes to put into issue..."). Redleaf has failed to identify conditions in the integrated agreements that have been left unfulfilled because there are none. Redleaf's Eleventh Affirmative Defense should be stricken without leave to amend.

### 7. Redleaf's Fourth Affirmative Defense of Lack of Standing Is Barred as a Matter of Law.

Redleaf's Fourth Affirmative Defense asserts that the Receiver lacks standing to bring a claim of breach of contract against Redleaf. The claims asserted are brought by the Receiver under the terms of the Consent Order. Under the terms of the Consent Order, the Receiver was given all power, authority, right and privilege possessed by the general partner, officers and directors of Aspen Ventures, under applicable state and federal law, the applicable limited partnership agreements, all powers and authority of a receiver at equity, including to assume and control the operations of Aspen Ventures and pursue and preserve all its claims. Complaint, Exhibit A, Consent Order, ¶ 2; *see U.S. Small Business Association v. Propper*, 2004 U.S. Dist Lexis 23363, *14-*15 (E.D. Pa. 2004) (Finding that the SBA as Receiver for a failed SBIC was appointed for the specific purpose of pursuing any an all claims and causes of action available to the SBIC); *Chimicles*, 447 F.3d. 207,; *Acorn Technology Fund*, 429 F.3d 438; *U.S. Small Business Administration v. Smith, Stratton, Wise, Heher, & Brennan, LLP*, 2006 U.S. Lexis 4765 2006. The Receiver has the rights and authority under the Consent Order to vindicate the rights of Aspen Ventures. The Receiver is the proper party and has standing to bring this claim against Redleaf.

In addition, Redleaf has waived any objections to the Receiver's standing by failing to oppose the Motion to Lift Stay, which clearly stated the Receiver's intention of bringing this claim.

Finally, Federal Rule of Civil Procedure 9(a) requires that a party must specifically raise a party's lack of standing by stating any supporting facts that are within the party's knowledge. *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 878 (9th Cir. 2000). Redleaf's Fourth Affirmative Defense should be stricken without leave to amend.

## IV. CONCLUSION

Wherefore, the Receiver prays for an order:

1. Striking without leave to amend Redleaf's Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Affirmative Defenses; and

2. For such further relief the Court deems just and proper.

Dated: March 10, 2008

SCHNADER HARRISON SEGAL & LEWIS LLP

By: /s/ Gregory C. Nuti
    Gregory C. Nuti
    Attorneys for Plaintiff, the United States Small Business Administration in its capacity as Receiver for Aspen Ventures III, L.P.

Dated: March 10, 2008

U.S. Small Business Administration

By: /s/ Beverley Hazlewood Lewis
    Beverley Hazlewood Lewis
    Office of General Counsel
    Attorneys for Plaintiff,
    United States Small Business Administration in its capacity as Receiver for Aspen Ventures III, L.P.