**EXHIBIT 5C**

**EXHIBIT C**

ASPEN VENTURES III, L.P.

FIRST AMENDMENT TO
AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT

This FIRST AMENDMENT TO THE AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT (this "First Amendment") of Aspen Ventures III, L.P., a Delaware limited partnership (the "Partnership"), dated as of August 20, 1999 (the "Partnership Agreement"), is made and entered into as of April 1, 2002, by and among Aspen Venture Management III, L.L.C., a Delaware limited liability company, as general partner (the "General Partner") and the undersigned Limited Partners. Capitalized terms used herein and not otherwise defined in this First Amendment shall have the meanings set forth in the Partnership Agreement.

WHEREAS, the parties desire that the Partnership be permitted to admit additional persons to the Partnership as Limited Partners, which persons shall be set forth on a "Schedule of Series B Limited Partners" attached to the Partnership Agreement, and shall be admitted to the Partnership as Limited Partners in exchange for making capital contributions (any such contributions, the "Series B Contributions") to the Partnership at such times and in such amounts as provided below (such persons, and any other persons admitted to the Partnership as a Limited Partner after the date hereof (other than in connection with the transfer of an interest in the Partnership that is outstanding as of the date hereof), the "Series B Limited Partners");

WHEREAS, the parties desire that, in connection with the admission of the Series B Limited Partners and the contribution by them of the Series B Contributions to the Partnership, (a) the assets and liabilities of the Partnership shall be divided into two separate series for purposes of the Act: (i) "Series A" which shall consist of the assets and liabilities of the Partnership as they existed immediately prior to the execution of this First Amendment, the capital contributions received with respect to each "Series A Limited Partner" (as defined below) and any other assets acquired and liabilities incurred in connection with the holding, management and disposition of such assets, and (ii) "Series B" which shall consist of the Series B Contributions and any other assets acquired and liabilities incurred in connection with the holding, management and disposition of such contributed capital, as well as the Partnership Capital Accounts and Partnership Percentages of each Series B Limited Partner and (b) the Limited Partners of the Partnership shall be divided into two separate groups consisting of (i) Series A Limited Partners, which shall be defined as those Limited Partners who held their interests in the Partnership immediately prior to the date of this First Amendment or who subsequently acquire an interest in the Partnership that was outstanding immediately prior to the date of this First Amendment and (ii) Series B Limited Partners, as defined above; and

WHEREAS, the General Partner and the undersigned Limited Partners holding in the aggregate Partnership Percentages equal to at least Two-Thirds in Interest of Limited Partners desire to amend the Partnership Agreement as set forth below;

NOW, THEREFORE THE PARTIES HERETO AGREE AS FOLLOWS:

1.   Series A and Series B.

GDSVF&H\407448v8

(a)     Except to the extent specifically provided in this First Amendment or required under the SBIC Act, to the maximum extent permitted under the Act, (a) the interests in the Partnership with respect to Series A on the one hand, and Series B on the other hand, shall constitute separate series of partnership interests within the meaning of Section 17-218 of the Act, (b) the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series will be enforceable against the assets of such series only, and not against the assets of the Partnership generally or any other series thereof, and none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to any series shall be enforceable against the assets of such other series, (c) separate and distinct records shall be maintained for Series A and Series B, and assets associated with any particular series shall be accounted for separately from the other assets of the Partnership or any other series of the Partnership, and (d) the assets of one series shall not be commingled with the assets of any other series. The General Partner is hereby authorized to effect any such amendments to the Partnership's Certificate of Limited Partnership as are necessary to cause Series A and Series B to be treated as separate series of partnership interests under the Act. Notwithstanding the foregoing, it is hereby acknowledged that for purposes of the SBIC Act, the Partnership, including Series A and Series B, shall be treated as one Licensee.

(b)     To the extent recommended by the Partnership's tax advisors, the General Partner shall be authorized to take actions to cause Series A and Series B to be treated as separate partnerships for federal income tax purposes.

(c)     The allocation of Leverage (as defined in the SBA annex) and opportunities between Series A and Series B shall be as follows:

(i)     Any Outstanding Leverage as of the time immediately prior to the execution of this First Amendment shall be Leverage associated with Series A. As of the time that any Leverage is provided by the SBA to the Partnership after the execution of this First Amendment, the General Partner shall make a good faith determination as to whether such Leverage is properly allocable to Series A or Series B based on how the proceeds of such Leverage is utilized (e.g., whether such Leverage is utilized to purchase Series A assets or Series B assets), and such determination shall be binding upon the Series A Limited Partners and the Series B Limited Partners.

(ii)     After the date of this First Amendment, any investments made by the Partnership in a portfolio company, to the extent the Partnership has not previously made an investment in such portfolio company, shall be deemed to be a Series B investment. With respect to any portfolio companies in which the Partnership has made a prior investment, any follow-on investments shall be made by Series A, except that the General Partner in its sole discretion may if it determines in its sole and absolute discretion that it would not be appropriate for Series A to acquire some or all of a follow-on investment, allocate all or any portion of such follow-on investment opportunity to Series B.

(iii)     Expenses that are attributable to the operation of a particular Series shall be allocated to such Series. Any General Partnership Expenses incurred after the date of this First Amendment shall be allocated among Series A and Series B on a pro rata basis in proportion to the respective Capital Commitments of the Limited Partners of each such series.

For purposes of the foregoing, "General Partnership Expenses" shall mean any expenses of the Partnership which, in the good faith determination of the General Partner, are not clearly allocable to Series A or Series B.

2. Application of Partnership Agreement to Series A and Series B.

(a) In General. Except as provided otherwise in this First Amendment, the provisions of the Partnership Agreement (as amended by this First Amendment), shall to the extent practicable apply separately to the Series A Limited Partners with respect to their interests in Series A on the one hand, and the Series B Limited Partners with respect to their interests in Series B on the other hand. For example, and without limiting the foregoing, (i) capital calls shall be made separately with respect to each series, (ii) the determination of Capital Transaction Gain or Loss and Net Income or Loss shall be made separately with respect to each series as though each such series were a separate partnership, (iii) Capital Transaction Gain or Loss (or items thereof) and Net Income or Loss (or items thereof) with respect to a series shall be allocated only to the General Partner and the Limited Partners of such series (except as specifically set forth to the contrary in this First Amendment), (iv) distributions (liquidating and non-liquidating) with respect to each series shall be made to the General Partner and the Limited Partners of such series solely from the assets of such series (except as specifically set forth to the contrary in this First Amendment), (v) the Optionees with respect to the interest of a Limited Partner in a series which has failed to make one of its contributions to such series under Paragraph 3.1 or 3.2 of the Partnership Agreement shall be comprised only of the other Limited Partners of such series, (vi) the determination of the management fee with respect to a series pursuant to Paragraph 5.1 of the Partnership Agreement shall be based solely on the Regulatory Capital with respect to such series, (vii) Paragraphs 4.7 and 4.8 of the Partnership Agreement shall be implemented separately with respect to Series B, (viii) the provisions of Paragraph 10.18 shall be implemented separately with respect to Series A and Series B, and (ix) any matters that affect only a particular series that requires the vote or consent of a specified percentage in interest of the Limited Partners shall require the vote or consent of only such percentage in interest of the Limited Partners of such series.

(b) Schedule A and New Schedule B. Schedule A of the Partnership Agreement sets forth the Series A Limited Partners and their Capital Commitments with respect to their interests in Series A. A new Schedule B in the form attached to this First Amendment is hereby added to the Partnership Agreement, and such Schedule B, as amended form time to time, shall set forth the Series B Limited Partners and their Capital Commitments with respect to their interests in Series B.

(c) Initial Capital Contribution of Series B Limited Partners. The Initial Contribution of each Series B Limited Partner being admitted to the Partnership on the first closing of Series B Limited Partnership interests shall be equal to twenty percent (20%) (or such lesser percentage as shall be specified by the General Partner in writing in the initial Series B Drawdown Notice) of such Series B Limited Partner's Capital Commitment.

(d) Subsequent Capital Contributions of Series B Limited Partners. The last sentence of Paragraph 3.2 of the Partnership Agreement, as applied to Series B only, is hereby amended to read as follows:

Except with the written consent of Two-Thirds in Interest of the Limited Partners, the Limited Partners shall not be required to contribute capital to the Partnership in an aggregate amount greater than fifty percent (50%) of the Limited Partners' aggregate Capital Commitments to the Partnership during the first 12 months after the establishment of Series B.

(e)  <u>Carried Interest Percentage; GP Participation Percentage</u>. The amendments set forth in subparagraphs (i) through (vi) of this Paragraph 2(e) are hereby made to the Partnership Agreement as it applies to Series B only:

(i)  The portion of Paragraph 4.3(a)(i) immediately prior to the semi-colon is hereby amended to read as follows:

> An amount of the Partnership's Capital Transaction Gain equal to the product of such Capital Transaction Gain and the Carried Interest Percentage shall be allocated to the Partnership Capital Account of the General Partner.

(ii)  Paragraph 4.3(a)(ii) is hereby amended to read as follows:

> The remaining Capital Transaction Gain of the Partnership shall be allocated to the Partnership Capital Accounts of all Partners as a group.

(iii)  Paragraph 4.3(b)(i) is hereby amended to read as follows:

> An amount of the Partnership's Capital Transaction Loss equal to the product of such Capital Transaction Loss and the Carried Interest Percentage shall be allocated to the Partnership Capital Account of the General Partner.

(iv)  Paragraph 4.3(b)(ii) is hereby amended to read as follows:

> The remaining Capital Transaction Loss of the Partnership shall be allocated to the Partnership Capital Accounts of all Partners as a group.

(v)  The portion of Paragraph 6.4(j) immediately following the last parenthetical is hereby amended to read as follows:

> will not be less than an amount equal to the product of (i) the aggregate Partnership Capital Account balances of all the Partners and (ii) the GP Participation Percentage.

(vi)  The first sentence of Paragraph 8.3(a)(1)(A) is hereby amended to read as follows:

> "First, the Partnership's aggregate Capital Transaction Gain for all accounting periods shall be netted against the Partnership's aggregate

Capital Transaction Loss for all accounting periods and the result shall be multiplied by the GP Participation Percentage."

(vii)   For purposes of the foregoing amendments, the term "Carried Interest Percentage" shall mean twenty percent (20%).

(viii)   For purposes of the foregoing amendments, the term "GP Participation Percentage" shall be equal to the sum of (a) the Carried Interest Percentage and (b) the product of (A) the result obtained by subtracting the Carried Interest Percentage from one hundred percent (100%) and (B) one percent (1%).

(f)   <u>Allocations of Capital Transaction Gain or Loss and Net Income or Loss</u>. It is the intent of the parties that allocations of Capital Transaction Gain or Loss (or items thereof) and Net Income or Loss (or items thereof) with respect to a particular series shall be made only to the Limited Partners of such series, and that each Limited Partner of a series shall receive the same amount of allocations of such items as such Limited Partner would have received if the other series did not exist (the "Target Allocations"). Notwithstanding the foregoing, the parties acknowledge that items of Net Profit or Loss (as such terms are defined in the SBA Annex) may be allocated to the Preferred Limited Partners pursuant to Paragraph 4.3(c) and Article VI of the SBA Annex. To the extent that any items of Net Profit or Loss (as such terms are defined in the SBA Annex) which are allocated to the Preferred Limited Partners contain items of Capital Transaction Gain or Loss or Net Income or Loss, as applicable, of one series (the "Allocation Disadvantaged Series"), and such allocations are made to such Preferred Limited Partners pursuant to Paragraph 4.3(c) and Article VI of the SBA Annex with respect to Leverage (as such term is defined in the SBA Annex) attributable to the other series (the "Allocation Benefitted Series"), any subsequent items of Capital Transaction Gain or Loss or Net Income or Loss, as applicable, of the Allocation Benefitted Series shall be allocated to the Limited Partners of the Allocation Disadvantaged Series in such a manner so as to, as quickly as possible, cause the cumulative allocations received by each Limited Partner of each series from all sources to equal such Limited Partner's Target Allocations. To the extent that the General Partner determines that there are likely to be insufficient amounts of certain items of income, gain, loss and deduction so as to cause the cumulative allocations received by each Limited Partner of each series from all sources to equal such Limited Partner's Target Allocations, then the General Partner may vary the allocations from those described above so as to ensure, to the maximum extent possible, that the Capital Account balance of each Limited Partner of a Series is at the same level as it would have been had such Limited Partner would have received if the other series did not exist.

(g)   <u>Series B Management Fee</u>. Notwithstanding anything in Paragraph 5.1 of the Partnership Agreement to the contrary, (i) the management fee with respect to Series A shall be determined for each Fiscal Quarter in the manner set forth in Paragraph 5.1 taking into account the Series A Regulatory Capital only and (ii) the management fee with respect to Series B for each Fiscal Quarter shall be equal to the management fee determined for such Fiscal Quarter in the manner set forth in Paragraph 5.1 taking into account the Series B Regulatory Capital only and after giving effect to the following amendments to Paragraph 5.1(b) of the Partnership Agreement:

(i) The portion of Paragraph 5.1(b) of the Partnership Agreement immediately preceding the semi-colon, as it relates to Series B only, is hereby amended to read as follows:

"The management fee for each of the Partnership's Fiscal Quarters shall be an amount equal to the product of (i) 0.625% and (ii) the Regulatory Capital (as defined in the SBA Annex) of the Partnership as of the first day of each such Fiscal Quarter plus, if as of the first day of such Fiscal Quarter the Partnership is a Licensee, two times the Regulatory Capital of the Partnership as of the first day of such Fiscal Quarter"

(ii) Paragraph 5.1(c) of the Partnership Agreement, as it relates to Series B only, is hereby amended by replacing the date "January 1, 2005" each time it appears with the date "January 1, 2008."

(iii) Paragraph 5.1(c)(ii) of the Partnership Agreement, as it relates to Series B only, is hereby amended by replacing the date "January 1, 2006" with the date "January 1, 2009."

(iv) Paragraph 5.1(c)(iii) of the Partnership Agreement, as it relates to Series B only, is hereby amended by replacing the date "January 1, 2007" with the date "January 1, 2010."

(v) Paragraph 5.1(c)(iv) of the Partnership Agreement, as it relates to Series B only, is hereby amended by replacing the date "January 1, 2008" with the date "January 1, 2011."

(vi) The portion of Paragraph 5.1(c)(v) of the Partnership Agreement immediately preceding the comma, as it relates to Series B only, is hereby amended to read as follows:

"In the event that the Partnership Term is extended beyond December 31, 2011 pursuant to Paragraph 8.1(e)"

(vii) Paragraph 5.1(d) of the Partnership Agreement, as it relates to Series B only, is hereby replaced with the following:

"Notwithstanding the foregoing provisions of this Paragraph 5.1, if the Partnership is a Licensee on March 1, 2007, then commencing on such date, the management fee for such Fiscal Quarter and all subsequent Fiscal Quarters that the Partnership is a Licensee shall not exceed 0.625% of the sum of (i) the Series B Regulatory Capital, plus (ii) the amount of outstanding Leverage which is allocable to Series B."

(h) Inter-Series Loans. It is the intent of the parties that all distributions to the Limited Partners of one series shall be made solely from the assets of such series, and that each Limited Partner of a series shall receive the same amount of distributions as such Limited Partner would have received if the other series did not exist. Notwithstanding the foregoing, the parties

acknowledge that in the event the General Partner makes a distribution to the Limited Partners of one series, or in certain other circumstances, the General Partner may be required to make a distribution to the Preferred Limited Partners pursuant to Article VII of the SBA Annex. To the extent that any such distribution to the Preferred Limited Partners is made out of the assets of one series (the "Distribution Disadvantaged Series") with respect to Leverage attributable to another Series (the "Distribution Benefited Series), the amount of assets of the Distribution Disadvantaged Series that are so utilized shall be referred to herein as the "Distribution Advance Amount," which amount shall be deemed to be a non-recourse advance (payable only out of the assets of the Distribution Benefitted Series, if any) from the Distribution Disadvantaged Series to the Distribution Benefited Series. In the event that a Distribution Advance Amount or Distribution Advance Interest Accrual Amount (as defined below) exists at any point in time, subsequent distributions to be made to the General Partner and Limited Partners from the assets of the Distribution Benefited Series shall be made first to Distribution Disadvantaged Series in amounts so as to, as quickly as possible, offset any outstanding Distribution Advance Amounts and Distribution Interest Accrual Amount. Distributions pursuant to the preceding sentence shall be deemed to reduce on a dollar-for-dollar basis first any outstanding Distribution Interest Accrual Amount and then any outstanding Distribution Advance Amount due to the Distribution Disadvantaged Series. In addition, if at any time there exists with respect to both Series A and Series B an outstanding Distribution Interest Accrual Amount and/or an outstanding Distribution Advance Amount, such amounts due to one series shall be immediately offset on a dollar-for-dollar basis against amounts due to the other series in the same manner of priority as set forth in the preceding sentence. As used herein, the "Distribution Interest Accrual Amount" shall be an amount of interest equal to seven percent per annum, compounded as of December 31st of each calendar year, on the daily outstanding Distribution Advance Amount balance. Notwithstanding Paragraph 4.2(b) of the Partnership Agreement, the accrual/payment or receipt of payment of Distribution Interest Accrual Amounts shall be deemed to be an item of interests expense or interest income, as the case may be, of each series that shall be taken into account in computing Net Income or Loss but shall not be taken into account in computing Capital Transaction Gain or Loss. The amount of Distribution Advance Amount and Distribution Interest Accrual Amount shall not be considered as indebtedness for purposes of the limitations contained in Paragraph 7.2(a). Each Limited Partner acknowledges that there may not be sufficient assets to satisfy any outstanding Distribution Interest Accrual Amounts and Distribution Advance Amounts. Any resulting loss from such failure to satisfy such amounts shall be taken into account in determining the Net Income or Net Loss of the Distribution Disadvantaged Series.

(i) *Repayment of Outstanding Leverage*. The parties hereby agree that, notwithstanding anything in Article XI of the Partnership Agreement to the contrary, as such Article XI is applied to both Series A and Series B, the General Partner may in its discretion repay any Outstanding Leverage, whether such Outstanding Leverage is associated with Series A or Series B, prior to making any distributions to the Partners pursuant to Paragraph 6.4 of the Partnership Agreement.

(j) *New Paragraph 6.4(k)*. The following subparagraph (k) is hereby added to Paragraph 6.4 of the Partnership Agreement, as applied to both Series A and Series B:

> "In the event that a certain class of Securities of a portfolio company are held by both Series A and Series B, and that the General Partner makes a

distribution of the Securities of such class held by one series to the Partners of such series, the General Partner shall also make a simultaneous distribution of the Securities of such class held by the other series to the Partners of such series."

(k)  Admission of Additional Series B Limited Partners. The first sentence of Paragraph 7.6(b) of the Partnership Agreement, as applied to Series B only, is hereby replaced with the following:

"On or before June 30, 2002, the General Partner may admit additional persons as additional Series B Limited Partners without the consent of any of the then Limited Partners. After June 30, 2002, but on or before December 31, 2002, the General Partner may admit additional persons as additional Series B Limited Partners upon the consent of a Majority in Interest of the Series B Limited Partners. An additional Series B Limited Partner shall only be admitted pursuant to the preceding two sentences of this Paragraph 7.6(b) to the extent that the effect of such admission does not cause the Series B Limited Partners' total Capital Commitments to exceed $40,000,000."

(l)  Combined LP Voting. Notwithstanding the general rule that any matters with respect to a particular series requiring the vote or consent of the Limited Partners shall require the vote or consent of only the Limited Partners of such series, the following items shall require the vote of Two-Thirds in Interest of the Limited Partners (for such purpose, the Limited Partners shall include all Series A Limited Partners and Series B Limited Partners):

(i)  the termination of the Partnership pursuant to Paragraph 2.2(a) of the Partnership Agreement;

(ii)  the admission of an additional general partner pursuant to Paragraph 7.6(a) of the Partnership Agreement;

(iii)  the sale, assignment, pledge, mortgage or other disposition or transfer by the General Partner of its interest in the Partnership or in its capital assets or property (whether such interest relates to Series A or Series B), or the withdrawal by the General Partner from the Partnership, pursuant to Paragraph 7.7(a) of the Partnership Agreement;

(iv)  the extension of the Partnership Term; and

(v)  the election of a successor TMP pursuant to Paragraph 10.17 of the Partnership Agreement.

(m)  Paragraph 7.8(b). The provisions of Paragraph 7.8(b) shall apply separately with respect to Series A on the one hand and Series B on the other hand. Paragraph 7.8(b), as applied to Series A, is hereby amended to clarify that, notwithstanding anything to the contrary in such Paragraph, the members of the General Partner shall not be in violation of the terms of such Paragraph in connection with carrying out the duties and obligations of the General Partner in its capacity as General Partner of Series B.

GDSVF&H\407448v8                                    8

Paragraph 7.8(b), as applied to Series B, is hereby amended to clarify that, notwithstanding anything to the contrary in such Paragraph, the members of the General Partner shall not be in violation of the terms of such Paragraph in connection with carrying out the duties and obligations of the General Partner in its capacity as General Partner of Series A.

(n)  <u>Advisory Committee</u>. Series B shall have an Advisory Committee which is separate and distinct from the Series A Advisory Committee. Accordingly, the provisions of Paragraph 9.8 shall apply separately with respect to Series A on the one hand and Series B on the other hand.

(o)  <u>Indemnification</u>. It is the intent of the parties to provide, to the maximum extent permitted under the Act and the SBIC Act, that the assets of one series shall not be available to indemnify any party pursuant to Paragraph 10.13 of the Partnership Agreement for any liability associated with the actions of such party on behalf of the other series. Accordingly, to the maximum extent permitted under the Act and the SBIC Act, the provisions of Paragraph 10.13 shall be applied separately with respect to Series A on the one hand and Series B on the other hand as though each series were a separate partnership.

(p)  <u>Amendments</u>. With respect to any amendments to the Partnership Agreement (or any waivers of noncompliance with any provision of the Partnership Agreement) which affect only the Series A Limited Partners or only the Series B Limited Partners, Paragraph 10.7 shall be applied so as to require the approval of only Two-Thirds in Interest of the Series A Limited Partners or Two-Thirds in Interest of the Series B Limited Partners, as applicable. Any amendments to the Partnership Agreement (or any waivers of noncompliance with any provision of the Partnership Agreement) which would affect the Series A Limited Partners and the Series B Limited Partners shall require the approval of Two-Thirds in Interest of the Limited Partners (for such purpose, the Limited Partners shall include all Series A Limited Partners and Series B Limited Partners, voting as a single class). Notwithstanding anything to the contrary in the Partnership Agreement or in this First Amendment, the Partnership Agreement, the SBA Annex and/or this First Amendment may be amended in the sole discretion of the General Partner to the extent required (i) by the SBA in order for the SBA to approve this First Amendment, (ii) by the SBA in order for the Partnership to continue to be a Licensee or (iii) to comply with the SBIC Act or the SBIC Regulations; provided, however, that no such amendment shall affect the economic rights (including, without limitation, the amount or timing of distributions or allocations) of the General Partner relative to the those of the Limited Partners or the economic rights of any Limited Partner relative to those of any other Limited Partner.

(q)  <u>Original Managing Members of the General Partner</u>. The definition set forth in Paragraph 11.15, as applied to Series B, is hereby amended to include only Alexander P. Cilento, David Crockett, John Kohler, Lloyd C. Mahaffey and Thaddeus Whalen.

(r)  <u>Exhibit B of Partnership Agreement</u>. Exhibit B of the Partnership Agreement, as applied to Series A and Series B, is hereby replaced in its entirety by Exhibit B to this First Amendment.

3.  <u>Term of Partnership</u>.

(a) <u>Paragraph 2.1</u>. The portion of the first sentence of Paragraph 2.1 immediately prior to the semicolon is hereby amended to read as follows:

> "The term of the Partnership shall commence upon the filing with the office of Secretary of State of the State of Delaware of the Certificate of Limited Partnership of the Partnership (the "Commencement Date") and shall continue until December 31, 2011, unless sooner terminated as provided in Paragraph 22 or extended as provided in Paragraph 8.1(e) (the "Partnership Term")"

(b) <u>Paragraph 2.2</u>. Paragraph 2.2 is hereby amended to replace the date "December 31, 2008" with the date "December 31, 2011."

(c) <u>Paragraph 8.1(e)</u>. The first sentence of Paragraph 8.1(e) is hereby amended to read as follows:

> "With the written consent of Two-Thirds in Interest of the Limited Partners, the General Partner may extend the Partnership term beyond December 31, 2011 by up to two (2) successive one (1) year periods if, at the end of the year immediately preceding each such one (1) year period, more than ten percent (10%) of the value of the assets of the Partnership (valued pursuant to Paragraph 9.2 hereof) consists of Nonmarketable Securities."

4. <u>Continued Validity of Partnership Agreement</u>. Except for the amendments set forth in this First Amendment, the Partnership Agreement shall continue in full force and effect as originally constituted.

5. <u>Restatement of Partnership Agreement</u>. The General Partner and each Limited Partner hereby consent to the restatement of the Partnership Agreement to incorporate the amendments made hereby.

6. <u>Governing Law</u>. Delaware law shall govern the validity of this First Amendment, the construction of its terms and the interpretation of the rights and duties of the parties.

7. <u>Counterparts</u>. This First Amendment may be executed in two or more counterparts, each which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this First Amendment as of the date first set forth above.

| GENERAL PARTNER: | SERIES A LIMITED PARTNERS: |
|---|---|
| Aspen Venture Management III, L.L.C.: | |
| By: *[signature]* Managing Member | Name: _____ <br> By: _____ <br> Its: _____ |