1  MATTHEW G. BALL (CA BAR 208881)
   DEIRDRE M. DIGRANDE (CA BAR 199766)
2  **KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP**
   55 Second Street, Suite 1700
3  San Francisco, CA  94105-3493
   Tel:  (415) 882-8200
4  Fax:  (415) 882-8220
   matthew.ball@klgates.com
5  deirdre.digrande@klgates.com

6
   MARTIN D. TECKLER (*pro hac vice*)
7  **KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP**
   1601 K Street, NW
8  Washington, DC  20006-1600
   Tel:  (202) 778-9000
9  Fax:  (202) 778-9100
   martin.teckler@klgates.com
10
   Attorneys for Defendant & Third-Party Plaintiff
11 REDLEAF GROUP, INC.

12
13                        UNITED STATES DISTRICT COURT
14                       NORTHERN DISTRICT OF CALIFORNIA
15                               SAN JOSE DIVISION

16
17 | UNITED STATES SMALL BUSINESS ADMINISTRATION in its capacity as Receiver for Aspen Ventures III, | Case No. C-07-05350 JW (PVT) |
   |---|---|
18 | Plaintiff, | **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF REDLEAF GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT** |
19 | v. | |
20 | REDLEAF GROUP, INC., | |
21 | Defendant & Third-Party Plaintiff, | Date:  April 14, 2008 |
22 | v. | Time:  9:00 a.m.<br>Ctrm:  8<br>Judge:  The Hon. James Ware |
23 | ASPEN VENTURES MANAGEMENT III, LLC, a Delaware limited liability company; ALEXANDER P. CILENTO, a California resident; and DAVID CROCKETT, a California resident; and DOES 1-10, | |
24 | | |
25 | | |
26 | Third-Party Defendants. | |

27
28

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ISSUES TO BE DECIDED ............................................................................................. 2

III. FACTS ............................................................................................................................. 2

    A. Third-Party Defendants Induce Redleaf's Investment Through Fraud. ................ 2

    B. The Series A/Series B Structure Allows Third-Party Defendants To Conceal Facts From Redleaf. .................................................................................. 3

    C. Redleaf Discovers Problems With *Aspen II*, But The Third-Party Defendants Assure Redleaf That Aspen III Is Financially Sound. .............................. 4

    D. Redleaf Gets Its First Indication Of Aspen III's Financial Troubles In June of 2004. ............. 4

    E. The SBA Puts Aspen III Into Liquidation Status, Then Receivership, Announces It Will Not Recognize The Series A/Series B Structure, And Enjoins All Litigation, Including Litigation That Could Have Been Brought Against The Third-Party Defendants. ................... 5

    F. In 2007, Redleaf, Through Discussions With The SBA, Learns About Third-Party Defendants' Fraudulent Concealment, And Other Wrongful Acts. ........................................... 6

    G. The SBA Moves To Lift The Stay On Litigation To Bring This Action Against Redleaf. ...... 7

IV. LEGAL STANDARD ..................................................................................................... 7

V. ARGUMENT ................................................................................................................... 8

    A. Because The Court's Consent Order Tolled The Statutes At Least Until The SBA Lifted The Stay On Litigation, Less Than Three Years Have Elapsed From The Earliest Date The Claims Could Have Accrued. ........................................................................... 8

        1. The Earliest Possible Date Redleaf's Claims Could Have Accrued Is June 30, 2004, And The Accrual Date Is Likely Much Later. ................................................. 8

        2. Redleaf's Claims Are Timely Even If They Accrued On January 1, 2004, Because The Consent Order Equitably Tolled The Statute Of Limitations. ..................... 9

    B. The Claim For Declaratory Relief Is Proper. ........................................................ 11

    C. If The Motion Is Granted, Leave To Amend Is Warranted. .................................. 11

VI. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

Page

**CASES**

**Federal**

Adams v. Johnson, 355 F.3d 1179 (9th Cir. 2004)...................................................................7

Braun v. Sauerwein, 10 Wall. 218, 77 U.S. 218, 19 L. Ed. 895 (1870))............................10

Cook, Perkiss & Liehe v. N. California Collection Service, 911 F.2d 242 (9th Cir. 1990))................11

Doe v. United States, 58 F.3d 494 (9th Cir. 1995)...................................................................11

In re Application for Order Authorizing Interception of Wire Communications, 413 F. Supp. 1321 (E.D. Pa. 1976) ..........................................................................................10

Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940 (9th Cir. 2005)..............7

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 1999)...........................................................................11

Ostrer v. Aronwald, 434 F. Supp. 379 (S.D.N.Y.) ..................................................................10

Matter of Burger, 125 B.R. 894 (Bankr. D. Del. 1991).........................................................10

Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101 (C.D. Cal. 2003)...........7

Tellabs, Inc. v. Makor Issues & Rights, Ltd,, __ U.S. __, 127 S. Ct. 2499 (2007)................7

**State**

Krahmer v. Christie's, Inc., 911 A.2d 399 (Del. 2007)............................................................8

Mergenthaler v. Asbestos Corporation of America, 500 A.2d 1357 (Del. Super. 1985) ....10

Wilson v. King, 673 A.2d 1228 (Del. Super. 1996)………………………………...10

**STATUTES & RULES**

11 U.S.C. § 108 .......................................................................................................................10

13 C.F.R. § 107.503 …………………………………………………………………………..6

**TREATISES**

54 C.J.S. Limitations of Actions § 156 (2008)........................................................................10

## I. INTRODUCTION

This is a case in which Redleaf Group, Inc. was fraudulently induced to make a multi-million dollar investment – and a promise to invest millions more – in Aspen Ventures III, L.P. ("Aspen III"), what turned out to be a failing Small Business Investment Company ("SBIC").[1] Primarily responsible for the fraud were three managing members of Aspen III's general partner, Aspen Ventures Management III, LLC ("AVM").[2] One of those managing members, Thaddeus Whalen, is deceased. The other two, Alex Cilento and E. David Crockett, are Third-Party Defendants in this action along with AVM.

In their Motion to Dismiss, the Third-Party Defendants attempt to take advantage of a situation they themselves created. Specifically, the Third-Party Defendants AVM through its managing members Whalen, Cilento and Crockett induced Redleaf to invest millions in Aspen Ventures III ("Aspen III"), an enterprise that was failing due to their mismanagement, by (1) concealing Aspen III's true financial condition, and (2) by agreeing to a management structure that they represented would insulate Redleaf from responsibility for former investments, but that actually enabled Third-Party Defendants to further conceal Aspen III's disastrous finances and thereby further defraud Redleaf.

Ultimately, the Third-Party Defendants' financial mismanagement of Aspen III was so severe that the SBA exercised its authority to act as Aspen III's receiver, pursuant to 15 U.S.C. § 687c. As part of the receivership, this Court enjoined all litigation against Aspen III's managers, agents, or general partners. This injunction <u>prevented</u> Redleaf from bringing this complaint against the Third-Party Defendants. Redleaf could not bring this Complaint – at the earliest – until the stay was lifted to allow the SBA to assert the instant claims against it.[3] Now, after having created the situation that led to the injunction in the first place, the Third-Party Defendants are asserting that the statutes of

---

[1] Generally, an SBIC is a private venture capital or private equity fund that is licensed by the United States Small Business Administration ("SBA") and "leveraged" with funds provided by the SBA.

[2] As set forth in the accompanying Opposition to the SBA's Motion to Strike, the SBA was heavily involved in the fraud as well.

[3] In fact, the SBA asserts that the Third-Party Complaint violates this Court's injunction order, but has committed not to make an issue of the injunction – no doubt to allow the Third-Party Defendants to bring this statute of limitations challenge.

limitation governing Redleaf's claims expired while Redleaf was enjoined from bringing the claims. Clearly, this is absurd, and is nothing more than the latest in a long series of wrongful acts that led to Redleaf's current situation. The Motion should be denied.

## II.  ISSUES TO BE DECIDED

(1) Does the Third-Party Defendants' statute of limitations argument lack merit because: (a) Redleaf's claims accrued on or about June 30, 2004 at the absolute earliest, and likely much later; (b) this Court's Consent Order in the receivership action tolled the statutes of limitation on Redleaf's claims at least until the SBA lifted the stay on litigation against Redleaf; and therefore (c) less than three years have elapsed as to each of Redleaf's claims?

(2) Should this Court deny Plaintiffs' Motion to the extent it attacks declaratory relief claim?[4]

## III.  FACTS

Redleaf Group, Inc. here incorporates by reference the detailed statement of facts set forth in its Opposition to the SBA's motion to strike.

### A.  Third-Party Defendants Induce Redleaf's Investment Through Fraud.

In mid-2001, Third-Party Defendants approached Redleaf with a scheme by which Redleaf would become a limited partner in Aspen III in exchange for a $15 million commitment ("Commitment"). Defendant Redleaf Group, Inc.'s Third-Party Complaint ("Complaint") ¶ 17.[5] Although Redleaf had concerns about risking such a substantial sum in light of the $33 million in leverage that the SBA had committed to Aspen ($23 million of which Aspen III had already drawn), the assurances of AVM and its members Cilento and Crockett assuaged Redleaf's concerns. Id. at ¶ 19-22.

The Third-Party Defendants represented generally that Aspen III was a good investment. The Third-Party Defendants further represented that the value of Aspen's investments at the time (the "Series A Investments") was sufficient to repay the $23 million in leverage that Aspen III had

---

[4] Redleaf Group hereby withdraws its claim for equitable indemnity.
[5] See accompanying Request for Judicial Notice ¶ 6 and Exh. 6, Third-Party Complaint filed December 17, 2007.

drawn, that the Series A Investments would realize a profit, and that those limited partners who had previously invested in Aspen III would receive a complete return of their original capital. Complaint ¶ 20.

Additionally, Third-Party Defendants assured Redleaf that as a means to insulate it from any detrimental effect of the Series A Investments – particularly as to the outstanding SBA leverage – Aspen's future investments, to be known as "Series B Investments", would be treated separately and the documents governing the operations of AVM and Aspen would be amended to reflect their separate nature. Complaint ¶¶ 23-25. Specifically, Redleaf sought an agreement, to which the Third-Party Defendants assented, that would limit Redleaf's liability for SBA leverage to <u>only</u> that drawn to support Series B Investments. Id.

Based on Third-Party Defendants' representations, Redleaf agreed to make a $15 million commitment to Aspen III. Id. at ¶ 26. Effective April 1, 2002, the relevant agreements were amended to reflect this Series A/Series B structure, and admit Redleaf into the Aspen III limited partnership. Id. at ¶¶ 27-28.

**B.    The Series A/Series B Structure Allows Third-Party Defendants To Conceal Facts From Redleaf.**

Although the Third-Party Defendants presented the Series A/Series B structure as beneficial to Redleaf, in effect it allowed Third-Party Defendants to conceal material information from Redleaf. For example, the separation between the Redleaf managing members and the Series A Investments meant that the Redleaf Series B managing members had no way to participate in decision-making and valuations with regard to the Series A Investments, or the requests for and utilization of SBA leverage. Complaint ¶ 31. In fact, Redleaf's managing members were excluded from Series A partnership meetings. Id. Moreover, between April 2002, and January 2004, the Third-Party Defendants failed to provide Redleaf with any reports regarding the value of the Series A Investments. Id. at ¶ 34. Instead, Third-Party Defendants provided Redleaf with inaccurate representations regarding the value of the Series A Investments. Id.

**C.   Redleaf Discovers Problems With *Aspen II*, But The Third-Party Defendants Assure Redleaf That Aspen III Is Financially Sound.**

Third-Party Defendants make much of Redleaf's allegation in Paragraph 36 of the Complaint that "Redleaf discovered irregularities and problems at Aspen in 2002-2003." M'tn at 3:13-21. The implication – although Third-Party Defendants do not come out and say so – is that Redleaf should have known of Third-Party Defendants' fraud in that time period.

However, the allegations in that paragraph do not primarily concern Aspen III, the fund that is the subject of this litigation, but rather, Aspen II. Id. at ¶ 36. It is true that these issues concerned Redleaf sufficiently to try to obtain a release from its capital commitment in 2003, but, at the end of the day, Redleaf continued to rely on Third-Party's representations concerning Aspen III. For example, Redleaf relied on Third-Party Defendants' representations in January 2004 that a further capital call would "be sufficient to meet all outstanding obligations relative to both Series A and Series B Investments for the remaining term of Aspen" and that "the value of the Series A portfolio would be sufficient to repay all of SBA leverage drawn to that point." Id. at ¶ 37.

**D.   Redleaf Gets Its First Indication Of Aspen III's Financial Troubles In June of 2004.**

In March of 2004, Redleaf received a report for investors indicating that the value of the Aspen III's portfolio was $29.2 million. Complaint ¶ 41. On or about June 30, 2004, Redleaf had its first indication of the financial disaster at Redleaf. Id. at ¶¶ 39, 41. "For reasons unknown to Redleaf, and solely within Whalen, Cilento, and Crockett's knowledge, by June 30, 2004, the valuation of the same investments had dropped to $12.9 million." Id. at ¶ 41. Again, although Redleaf had some indication of the financial condition of Aspen II, and knew that Third-Party Defendants had authorized an investment in an Aspen II portfolio concern, the first indication Third-Party Defendants had of Aspen III's financial condition – because Third-Party Defendants had fraudulently concealed it – was the June 30, 2004 knowledge of the precipitous 56 percent decline in Aspen III's portfolio. Id. at ¶ 41.

////

////

////

**E.    The SBA Puts Aspen III Into Liquidation Status, Then Receivership, Announces It Will Not Recognize The Series A/Series B Structure, And Enjoins All Litigation, Including Litigation That Could Have Been Brought Against The Third-Party Defendants.**

Having found that Aspen had a capital impairment of 123.19 percent, the SBA placed it on restricted status on March 16, 2005.[6] As Aspen III could not cure its capital impairment during the 15 days provided, the SBA then placed it into liquidation status on April 19, 2005[7] and thereafter filed Case No. C06-4032 JW against Aspen III seeking imposition of receivership and injunction against disbursing or encumbering its assets ("Receivership Action").[8] After that time, SBA announced – for the first time – that it would not recognize the protection that Third-Party Defendants represented the Series A/Series B structure would provide to Redleaf. Complaint ¶ 42.

As part of the Receivership Action, the parties stipulated to an order that, among other things, appointed the SBA as a receiver and enjoined the commencement or continuation of any civil proceedings involving Aspen by or against its partners ("Consent Order").[9] Paragraph 7 of the Consent Order entered October 4, 2006 provides in relevant part:

> The parties to any and all civil legal proceedings of any nature . . . involving the Licensee [Aspen] or any assets of the Licensee . . . involving the Licensee, the Receiver, or any of the Licensee's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature . . . are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding or any such asset. All civil legal proceedings of any nature . . . involving the Licensee or any assets of the Licensee involving the Licensee, the Receiver, or any of the Licensee's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. . . .

---

[6] Paragraphs ¶¶ 19-20 of Complaint for Receivership and Injunction filed June 29, 2006 ("Receivership Complaint"). See the RJN ¶ 5 and the Receivership Complaint attached as Exh. 5 thereto.

[7] RJN ¶ 5 and Exh. 5, Receivership Complaint ¶¶ 20-21.

[8] RJN ¶ 5 and Exh. 5, Receivership Complaint at pp. 6-7.

[9] RJN ¶ 2 and Exh. 2, Stipulation to Consent Order ("Consent Order") entered October 04, 2006 in the Receivership Action.

**F.   In 2007, Redleaf, Through Discussions With The SBA, Learns About Third-Party Defendants' Fraudulent Concealment, And Other Wrongful Acts.[10]**

Shortly after Aspen III was put into liquidation, Redleaf entered into discussions with the SBA regarding Redleaf's unfunded capital commitment. These discussions ultimately led to an exchange of documents during the spring and summer of 2007. In the documents, Redleaf learned the following facts, which Redleaf had not known up to that point, and had no way of discovering.

In early 2001, an SBA examiner conducted an on-site examination of Aspen III for the twelve-month period ending December 31, 2000. The Examination Report, issued on May 4, 2001, indicated that Aspen had not adequately substantiated or confirmed Aspen III's portfolio valuations – a violation of SBA regulations 13 C.F.R. § 107.503(a), (b), as well as the SBA's valuation Guidelines for SBICs which were incorporated in the Aspen III Limited Partnership Agreement. These violations were serious. Proper portfolio valuation procedures are essential for understanding the financial health and stability of any SBIC. However, the SBA analyst responsible for overseeing both Aspen II and Aspen III excused the violation of SBA regulations.

In late 2001, and after the SBA's casual excuse of the Aspen III regulatory violations, Thaddeus Whalen, one of the managing members of AVM, disclosed to the same analyst that Aspen III was in serious financial trouble, and could not survive without new private capital that could be further leveraged with funds from the SBA. Redleaf did not, and could not have obtained this information, because Third-Party Defendants concealed the information from Redleaf.

Additionally, the documents received from the SBA revealed that, during the time Third-Party Defendants kept information from Redleaf regarding the Series A/Series B investments, Third-Party Defendants failed to follow proper SBIC portfolio valuation procedures. For example, the Third-Party Defendants failed to observe the SBA valuation guidelines as required by the regulations and the Aspen III Partnership Agreement. Not all managing members participated in the portfolio valuations or signed off on the portfolio valuations, as the regulations and the Agreement required. Moreover, the documents revealed that certain of the Series A Investments were co-investments with

---

[10] Please note that this paragraph contains facts that Redleaf did not plead in its Third-Party Complaint against the Third-Party Defendants. Redleaf could plead them in an amended complaint, if need be.

Aspen II – a blatant act of self dealing that is particularly reprehensible given the concerns Redleaf raised concerning the single Series B Investment in Aspen II. Complaint ¶ 35.[11] These facts which, again, were concealed from Redleaf, are critical to Redleaf's claims for fraud, breach of fiduciary duty, and breach of contract.

### G. The SBA Moves To Lift The Stay On Litigation To Bring This Action Against Redleaf.

The injunction imposed by the Consent Order remained in effect until October 3, 2007, when this Court, in response to the SBA's stipulated motion, issued an order modifying it to allow the SBA to bring the present action against Redleaf ("Modified Stay Order").[12]

The SBA brought the present case in its capacity as receiver for Aspen on October 19, 2007.[13] Redleaf answered the Complaint on December 17, 2007, and at the same time filed the Complaint against Third-Party Defendants.

### IV. LEGAL STANDARD

A motion to dismiss for failure to state a claim shall be denied unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling plaintiff to relief." Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005). "The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1151 (C.D. Cal. 2003) (internal citations omitted). Accordingly, when ruling on a motion to dismiss, the court must "accept all factual allegations in the complaint as true" Tellabs, Inc. v. Makor Issues & Rights, Ltd., __ U.S. __, 127 S. Ct. 2499, 2509 (2007), and construe them "in the light most favorable to the non-moving party." Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004).

---

[11] Redleaf had been aware prior to 2004 (but after Redleaf agreed to invest) that the first Series B Investment that AVM authorized was in an Aspen II portfolio concern. However, until it obtained documents from the SBA in 2007, it was not aware that Third-Party Defendants were continuing to invest Series A Investments together with a capitally impaired SBIC.

[12] RJN ¶ 3 and Exh. 3, Order Modifying Stay of Proceedings for Limited Purpose ("Modified Stay Order") entered October 3, 2007 in the Receivership Action.

[13] See RJN ¶ 5 and Exh. 5, SBA's Complaint filed October 19, 2007.

## V. ARGUMENT

**A. Because The Court's Consent Order Tolled The Statutes At Least Until The SBA Lifted The Stay On Litigation, Less Than Three Years Have Elapsed From The Earliest Date The Claims Could Have Accrued.**

Third-Party Defendants first argue that Redleaf's First, Second, Third, Fourth, Seventh, and Eighth Causes of Action are time-barred because more than three years passed between June 30, 2004, which according to Third-Party Plaintiffs is the latest date Redleaf's claims could have accrued. This argument lacks merit.

    **1. The Earliest Possible Date Redleaf's Claims Could Have Accrued Is June 30, 2004, And The Accrual Date Is Likely Much Later.**

First, the <u>earliest</u> possible date Redleaf's claims could have accrued is on or about June 30, 2004, when Third-Party Defendants revealed the 56% writedown in the value of the Aspen III's portfolio. The Third-Party Defendants' fraudulent concealment tolled the running of the statute for each of Redleaf's claims at least until then.

To prevail on fraudulent concealment under Delaware law, a plaintiff must prove that the defendant "knowingly acted to prevent [the] plaintiff from learning facts or otherwise made misrepresentations intended to 'put the plaintiff off the trail of inquiry." <u>See</u> <u>Krahmer v. Christie's, Inc.</u>, 911 A.2d 399, 407 (Del. 2007). The statute of limitation is suspended until the plaintiff's "rights are discovered or until they could have been discovered by the exercise of reasonable diligence." <u>Id.</u>

Here, Redleaf has sufficiently alleged that the Third-Party Defendants concealed their wrongdoing at least until June 30, 2004, when the drastic portfolio decline was announced. Before that, the combination of Third-Party Defendants' misrepresentations, the effect of the Series A/Series B structure, and the failure to provide Redleaf with information on the disastrous performance of the Series A investments kept Redleaf wholly ignorant of the true state and history of Third-Party Defendants' regulatory violations and fraud.

Even as of June 30, 2004, the most that can be said of Redleaf's knowledge of Third-Party Defendants' wrongful conduct is that Redleaf could be forgiven for thinking that Third-Party Defendants <u>may</u> have misrepresented the value of Aspen III's portfolio given the drastic decline over

one quarter. As discussed below in more detail, it took Redleaf until 2007 to obtain sufficient evidence of Third-Party Defendants' fraud to bring a claim, and, given the fact that the Consent Order barred Redleaf from suing the Third-Party Defendants and getting discovery from them, the information was available only through informal discovery with the SBA.

Additionally, Redleaf did not find out that the SBA would not recognize the Series A/Series B structure until after the SBA placed Aspen III into liquidation status in April 19, 2005. Even without the tolling effect of the Consent Order, a misrepresentation claim would still be timely if Redleaf had waited to file its claim until the hearing on this motion.

Third-Party Defendants posit a number of other dates for the accrual of Redleaf's causes of action, such as "shortly after January, 2004" (M'tn at 7:19-23), and Spring 2004 (Id. at 7:24 – 8:7). Even though the earliest possible accrual date is June 30, 2004, as discussed above, it does not really matter whether the accrual date is January 1, 2004, or June 30, 2004. As discussed in the next section, the tolling effect of the Consent Order means that Redleaf's Third-Party Complaint was timely, even if Redleaf's claims accrued on January 1, 2004.

2. **Redleaf's Claims Are Timely Even If They Accrued On January 1, 2004, Because The Consent Order Equitably Tolled The Statute Of Limitations.**

The effect of the Consent Order was to toll the statute of limitations on Redleaf's claims and provide Redleaf with an additional 364 days in which to bring its action against Third-Party Defendants. Even using January 1, 2004, as a hypothetical accrual date, the time that elapsed until Redleaf's filing of the Third-Party Complaint is still under the three-year limit:

| Date | Event | Time Accrual |
|---|---|---|
| • January 1, 2004 | Redleaf's claims hypothetically accrue | 0 |
| • October 4, 2006 | Entry of Consent Order in Case No. C06-4032 JW enjoining all litigation against Aspen and its partners, agents, managers, etc.[14] | 2 years, 9 months, 3 days (1007 days) |
| • October 3, 2007 | Entry of Modified Stay Order in Case No. C06-4032 JW lifting injunction against commencing civil actions against | 2 years, 9 months, 3 days (1007 days) – no time elapsed because |

---
[14] RJN ¶ 2 & Exh. 2.

|   |   | Aspen's partners | the statute is tolled |
|---|---|---|---|
| • | October 19, 2007 | The SBA as appointed receiver for Aspen files the instant action against Redleaf alleging breach of contract. | 2 years, 9 months, 19 days (1023 days) |
| • | December 17, 2007 | Redleaf files the Third-Party Complaint | **2 years, 11 months, 18 days (1083 days)** |

The equitable tolling doctrine is recognized in Delaware. <u>See</u>, <u>e.g.</u>, <u>Mergenthaler v. Asbestos Corporation of America</u>, 500 A.2d 1357, 1365 (Del. Super. 1985) (defining equitable tolling as when a court uses its inherent authority to "engraft implied exceptions upon the statute of limitations where the legislative purpose of the statute is not contravened"); <u>Wilson v. King</u>, 673 A.2d 1228, 1232 (Del. Super. 1996). The rationale for application of equitable tolling "hinges on the concept that statutes of limitations should be tolled where a paramount authority prevents the exercise of a legal remedy by a plaintiff." <u>Wilson</u>, 673 A.2d at 1232. Thus, "the time during which the plaintiff is . . . precluded from exercising [its] legal remedy is not to be counted against [it] in determining whether the applicable statute of limitations has barred the plaintiff's right of action." 54 C.J.S. <u>Limitations of Actions</u> § 156 (2008) (citing, <u>inter alia</u>, <u>Wilson</u>, 673 A.2d at 1232). <u>See also</u>, <u>Matter of Burger</u>, 125 B.R. 894 (Bankr. D. Del. 1991) (Delaware's three-year statute of limitations for breach of contract actions will be tolled until the termination of the automatic stay imposed by 11 U.S.C. § 108 if the prescribed statutory period has not yet expired prior to the bankruptcy filing); <u>Ostrer v. Aronwald</u>, 434 F. Supp. 379, 388-89 (S.D.N.Y.), aff'd, 567 F.2d 551 (2d Cir. 1977) (limitations period governing right of action to recover damages for government's unlawful electronic surveillance is tolled during period when "claimant is prevented by court order from discovering the wiretap materials he needs in order to pursue such a claim") (quoting <u>In re Application for Order Authorizing Interception of Wire Communications</u>, 413 F. Supp. 1321, 1335 (E.D. Pa. 1976) (citing <u>Braun v. Sauerwein</u>, 10 Wall. 218, 77 U.S. 218, 19 L. Ed. 895 (1870)).

Delaware recognizes two elements necessary to the application of equitable tolling, both of which are met here: the action of the court itself prevented the exercise of Redleaf's legal remedies and Redleaf has acted with due diligence. See <u>Wilson</u>, 73 A.2d at p. 1232. Here, the Consent Order prevented Redleaf from bringing suit after October 4, 2006. Indeed, the SBA takes the position in its

brief that the Complaint is a violation of the Consent Order. M'tn to Strike at 12:26, n.5; Joint Case Management Conference Statement at 6:19-26.

It is further apparent that Redleaf has exercised diligence. Redleaf did not have clear evidence of Third-Party Defendants' misconduct until the first part of 2007. It discovered the evidence during the pendency of the Consent Order. When the SBA obtained an order lifting the stay and filed its complaint, Redleaf promptly filed the Third-Party Complaint. The statutes were tolled, and Third-Party Defendants' Motions should be denied.[15]

**B.     The Claim For Declaratory Relief Is Proper.**

Third-Party Defendants' admit that their argument directed towards Redleaf's declaratory relief claim succeeds only if the balance of Redleaf's claim is dismissed. M'tn at 11:2-5. Since Redleaf's complaint survives, so does this cause of action.

**C.     If The Motion Is Granted, Leave To Amend Is Warranted.**

It has long been the rule in the Ninth Circuit that, "[i]n dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) (citing Cook, Perkiss & Liehe v. N. California Collection Service, 911 F.2d 242, 247 (9th Cir. 1990)); see also Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 1999). Accordingly, Redleaf respectfully requests that if the Court is inclined to grant the Motion, it also allow Redleaf leave to amend the Third-Party Complaint and remedy its perceived defects.

////

////

////

---

[15] Third-Party Defendants appear to suggest – without explicitly arguing – that Redleaf's allegation concerning its discovery of "irregularities and problems in 2002-2003" is the date from which Redleaf's claims began to accrue. E.g., M'tn at 3:15-21. A careful reading of the actual facts pled, however, shows that the "irregularities and problems" alluded to in this time period concern the capital impairment of *Aspen II*, a separate fund in which Redleaf was not a partner, and a Series B co-investments made in the Aspen II portfolio. The "irregularities and problems" do not relate to the allegations discussed here – the fraud regarding the valuation of Aspen III's portfolio and the efficacy of the Series A/Series B structure.

## VI. CONCLUSION

For the foregoing reasons, Redleaf Group, Inc. respectfully requests that this Court deny the Third-Party Defendants' motion to dismiss.

Respectfully submitted,

Dated: March 21, 2007

KIRKPATRICK & LOCKHART PRESTON GATES ELLIS

By: Matthew G. Ball /s/
Matthew G. Ball (CA Bar 208881)
Deirdre M. Digrande (CA Bar 199766)
55 Second Street, Suite 1700
San Francisco, CA 94105
Telephone: (415) 882-8200
Facsimile: (415) 882-8220
(matthew.ball@klgates.com)

Martin D. Teckler (*pro hac vice*)
martin.teckler@klgates.com
Kirkpatrick & Lockhart Preston Gates Ellis LLP
1601 K Street, NW Washington, DC, 20006-1600
Telephone: (202) 778-9000
Facsimile: (202) 778- 9100

Attorneys for Defendant/Third-Party Plaintiff
REDLEAF GROUP, INC.