Gregory C. Nuti (Bar No. 151754)
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785
E-mail: gnuti@schnader.com

Beverley Hazlewood Lewis
Trial Attorney, Office of General Counsel
U.S. Small Business Administration
409 3rd Street, S.W., Suite 7200
Washington, D.C. 20416
Telephone (202) 619-1605
Facsimile (202) 481- 0468

Attorneys for Plaintiff,
United States Small Business Administration in Its Capacity
as Receiver for Aspen Ventures III, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION in its capacity as Receiver for Aspen Ventures, III, L.P., <br><br> Plaintiff, <br><br> vs. <br><br> REDLEAF GROUP, INC., <br><br> Defendant - Third-Party Plaintiff. <br><br> vs. <br><br> ASPEN VENTURES MANAGEMENT III, LLC, a Delaware Limited Liability Company, ALEXANDER P. CILENTO, a California resident, and DAVID CROCKETT, a California resident, and DOES 1-10, <br><br> Third-Party Defendants. | Case No.: C-07-05350 JW (PVT) <br><br> **REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES** <br><br> Date:  April 14, 2008 <br> Time:  9:00 a.m. <br> Place:  280 South First Street, Courtroom 8, San Jose, CA <br> Judge:  Hon. James Ware |

## I. INTRODUCTION

In its Opposition to Motion to Strike Affirmative Defenses ("Opposition"), Redleaf Group, Inc. ("Redleaf") devotes the first ten pages of its brief making allegations that the SBA, *in its capacity as regulator*, conspired with the Third Party Defendants to defraud Redleaf[1]. It is not until page 11 of the Opposition that Redleaf raises what boils down to two substantive legal arguments. Redleaf argues (1) the First Amendment to the Partnership Agreement renders the SBA Annex unenforceable and (2) the alleged wrongs of SBA, *as regulator*, should be imputed to the Receiver, thus absolving Redleaf of any liability. *See* Opposition, p.11:15-21. Both of these arguments fail as a matter of law.

## II. DISCUSSION

**A.**   The First Amendment to the Partnership Agreement Does Not Negate the Enforceability of the SBA Annex.

Redleaf argues that the First Amendment to the Partnership Agreement makes the SBA Annex unenforceable and imposed conditions upon Redleaf's obligation to fund its commitment, conditions which it claims have not been satisfied. *See* Opposition, p.8, lines 3-7 ("…to the extent the SBA Annex would have ever given the SBA an absolute right to Redleafs unfunded commitment…the SBA's approval of the Series A/Series B structure in the 2002 Amendment prevents them from asserting that position now.") and p. 10:4-9 ("…Aspen III amended its Articles of Limited Partnership…to recognize the Series A/Series B structure - including the limitation on the right to call the capital of Redleaf in connection with debts relating to Series A investments. Thus…the SBA is no longer entitled to an unconditional capital call."). Neither of these arguments have any legal merit.

   1.   <u>The First Amendment Did Not and Cannot Alter the Statutory Scheme or the Enforceability of the SBA Annex.</u>

The terms of the SBA Annex remain in full force and effect. The provisions of the Act and Regulations and the terms of the SBA Annex control over any terms contained in the Partnership Agreement and First Amendment.

---

[1] There is not a shred of evidence to support any of these alleged factual statements.

The Partnership Agreement at paragraph 2.5 provides:

> At any time the Partnership is a Licensee, the provisions of this Agreement shall be subject to the SBIC Act and the SBIC Regulations to the extent applicable. At any time that the Partnership has outstanding Preferred Limited Partnership Interests, the provisions of the SBA Annex PS attached as Annex A to this Agreement (the "SBA Annex") shall be incorporated in this Agreement with the same force and effect as if fully set forth herein…

The SBA Annex provides:

> <u>Conflict with the SBIC Act.</u>  The provisions of this Annex and the Agreement[2] shall be interpreted to the fullest extent possible in a manner consistent with the SBIC Act. In the event of any conflict between any provision of the Agreement or this Annex and the provisions of the SBIC Act (including, without limitation, any conflict with respect to the rights of the SBA or the respective Partners hereunder), *the provisions of the SBIC Act shall control*.
>
> <u>Conflict With Other, Provisions of the Agreement.</u>  The provisions of the Agreement shall be interpreted to the fullest extent possible in a manner consistent with the provisions of this Annex. In the event of any conflict between any provision of this Annex and any other provision of the Agreement, *the provisions of this Annex shall control.*

SBA Annex, ¶¶ 1.2 and 1.3 (emphasis added).

The First Amendment is consistent with this hierarchy and does not purport to alter the terms of the SBA Annex. Paragraph 1(a) of the First Amendment qualifies the division of partnership interests into Series A and Series B to the "extent permitted under the Act". Partnership Agreement, ¶1(a) ("Except to the extent specifically provided in this First Amendment *or required under the SBIC Act, to the maximum extent permitted under the Act,* the interests in the Partnership ...shall constitute separate series of partnership interests…")(emphasis added)). In fact, the First Amendment explicitly states that the Partnership Agreement, except as modified, remains in full force and effect as originally constituted, which includes the SBA Annex. First Amendment, ¶ 4. The First Amendment also acknowledges the continued enforceability the SBA Annex by its numerous references to it, including a specific reference to Article VII:

- Paragraph 1(c): referring to the SBA Annex for the definition of "Leverage";
- Paragraph 2(f): referring to the SBA Annex for the definitions of "Net Profit", "Loss" and "Leverage" and to specific provisions in the SBA Annex addressing allocations;

---

[2] The "Agreement" refers to the Limited Partnership Agreement.  SBA Annex, ¶1.1.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

- Paragraph ¶2(h): addressing inter series loans in the event "*the General Partner is required to make a distribution to the Preferred Limited Partner [SBA] pursuant to Article VII of the SBA Annex.*" (emphasis added); and

- Paragraph ¶ 2(p): addressing ability of the General Partner to unilaterally amend the Partnership Agreement, First Amendment or the SBA Annex to comply with the terms of the Act and Regulations.

It is clear from the plain language of the Partnership Agreement, First Amendment and the SBA Annex that the SBA Annex remains in full force and effect, including, but not limited to, the provisions set forth in Article VII.

    2.    <u>The First Amendment Does Not Prevent the Receiver from Enforcing Redleaf's Capital Commitment</u>.

Redleaf concluded that the Receiver cannot enforce Redleaf's Capital Commitment based upon the following provisions in the First Amendment:

> the debts, liabilities, and obligations incurred, contracted for or otherwise existing with respect to a particular series will be enforceable against the assets of such series only. . . and none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to any series shall be enforceable against the assets of such other series.
>
> The allocation of Leverage[3] . . . shall be as follows: Any Outstanding Leverage as of the time immediately prior to the execution of this Amendment shall be Leverage associated with Series A…

Opposition, pp.7:21-8:3 (quoting First Amendment, ¶¶ 1(a) and (1)(c)(i)). Redleaf interprets this to mean that Aspen Ventures could not make a capital call on Redleaf to be used to pay Leverage and debts attributable to Series A. Redleaf glosses over the fact that the above quoted language does not support its conclusion.

The provisions only address how Aspen Ventures was to allocate its assets and liabilities as between Series A and Series B. It says nothing on when and how Redleaf is required to make its capital commitment. These issues are addressed in paragraph 2(c) and (d) of the First

---

[3] The deleted language is a reference to the SBA Annex for the definition of "Leverage". Redleaf chose to eliminate this language, no doubt because the reference tends to undercut it position that the SBA Annex is no longer enforceable.

Amendment[4] which only limited Redleaf's obligation to the extent it was capped at $15 million and it did not have to contribute more than $7.5 million within the first year.

The entire Series A/Series B scheme contemplated by the First Amendment was only enforceable to *the extent permitted under the Act*. Redleaf conveniently ignores this important qualification. The agreement between the Series A and Series B limited partners as to the internal distribution of assets and liabilities is a private agreement; it does not and cannot alter the application of the Act and Regulations. Aspen Ventures is only one SBIC and the entire fund and its capital commitments are subject to the Act and Regulations. Redleaf points to no provision under the Act or the Regulations permitting the Series A and Series B limited partners to be treated as separate SBICs; there are none. In fact, the First Amendment recognizes this reality.

The First Amendment explicitly acknowledges that the SBA Annex may require the General Partner to apply assets attributable to one series to pay Leverage attributable to the other series:

> It is the intent of the parties that all distributions to the Limited Partners of one series shall be made solely from the assets of such series….[n]otwithstanding the foregoing, *the parties acknowledge* that in the event the General Partner makes a distribution to the Limited Partners of one series, or in certain other circumstances, *the General Partner may be required to make a distribution to the Preferred Limited Partners [SBA] pursuant to Article VII of the SBA Annex*. To the extent that any such distribution to the Preferred Limited Partners is made out of the assets of one series…with respect to Leverage attributable to another

---

[4] The First Amendment, at paragraph 2, provides:

> (c) The Initial Contribution of each Series B Limited Partner being admitted to the Partnership on the first closing of Series B Limited Partnership interests shall be equal to twenty percent (20%) (or such lesser percentage as shall be specified by the General Partner in writing in the initial Series B Drawdown Notice) of such Series B Limited Partner's Capital Commitment.
>
> (d) …..Except with the written consent of Two-Thirds Interest of the Limited Partners, the Limited Partners shall not be required to contribute capital to the Partnership in an aggregate amount greater than fifty percent (50%) of the Limited Partners' aggregate Capital Commitment to the Partnership during the first 12 months after establishment of Series B.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

series…the amount of assets…that are so utilized…shall be deemed to be a non-recourse advance [from one series to the other series.]

First Amendment, ¶ 2(h) <u>Inter-Series Loans</u>.  This provision reveals two important points.  It specifically acknowledges that the terms of the SBA Annex are not only in full force and effect, they control.  And, Redleaf knew and agreed that the Act, Regulations and SBA Annex may force Aspen Ventures to ignore the Series A/Series B distinction and use Series B capital to pay Series A Leverage.

Further, if there were to be a restriction on the application of Series B capital to repay only Series B Leverage, one would expect it to be found in paragraph 2(i) of the First Amendment addressing the "Repayment of Outstanding Leverage[5]".  There are no such restrictions.

Finally, even if the First Amendment created a condition precedent to Redleaf's obligation to make its capital commitment (which it did not), such condition became unenforceable under the SBA Annex as merely a "condition set forth in the Agreement".  *U.S. Small Business Administration v. Chimicles*, 447 F.3d 207 (2006); Partnership Agreement, ¶ 2.5, SBA Annex PS, ¶ 7.1 ("SBA requires the General Partner and the Private Limited Partners to contribute any amount of their respective Commitments not previously contributed to the Partnership, the obligation to make such contributions shall not be subject to any conditions set forth in the Agreement…").  Redleaf cannot plausibly argue otherwise.

**B.     Redleaf Cannot Assert Claims Against the SBA as Regulator In Defense of Claims Asserted by the Receiver On Behalf of the Receivership Estate.**

Redleaf reveals that the "the basis of Redleaf's affirmative defenses, generally, is …the extra-contractual fraudulent conduct of Aspen III's management and the SBA's clear collusion therein…." Opposition, p. 11:15-17.  The SBA *as Receiver* is a different entity from SBA *as Regulator*.  Redleaf ignores this critical distinction when it argues that the SBA's alleged failings

---

[5] Paragraph 2(i) of the First Amendment provides:

The parties hereby agree that…the General Partner may in its discretion repay any Outstanding Leverage, whether such Outstanding Leverage is associated with Series A or Series B, prior to making any distributions to the Partners…

as a regulator should be imputed to the Receiver.  Redleaf purposely blurs this distinction because the law is clear that Redleaf may not assert claims against the SBA in an attempt to avoid its obligation to pay its capital commitment.

In *United States v. Acorn Technology Fund*, 429 F.3rd 438 (3rd Cir. 2005) ("*Acorn*"), a case factually similar, the receiver sued two limited partners, the Barracks, for unfunded capital commitments.  The Barracks responded by filing a motion seeking to have the stay of litigation lifted for the purpose of asserting counterclaims against the SBA, the SBIC limited partnership, and its general partner for, among other things, fraud.  Like Redleaf, the Barracks claimed that they had been fraudulently induced into their capital commitment, the SBIC had been mismanaged and that the SBA was complicit in the wrongful acts.  *Id.* at 445 ("The Barracks would like to assert two classes of claims against the SBA: first, against the SBA as a preferred limited partner of Acorn for breach of fiduciary duties allegedly owed to the Barracks as co-limited partners; and second, against the SBA for breach of 'its statutory and regulatory duties as regulator of Acorn, an SBIC.'").  The Third Circuit found these claims without merit as a matter of law.  *Id.*

The Third Circuit cited the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et. seq.*, as the exclusive method for suing an administrative agency in tort for monetary damages.  28 U.S.C. § 2679.  The Barracks' claims were barred by the so-called discretionary function exception, defined as follows:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Acorn,* 429 F.3d at 445 *(citing* 28 U.S.C. § 2680(a)).

The court thereafter concluded:

> The Barracks' claims against the SBA for breaching "statutory and regulatory duties" obviously fall within the discretionary function exception and cannot be maintained. The Barracks argue that their other claims against the SBA were not based on the SBA's actions as regulator, but on the SBA's actions as a preferred limited partner of and investor in Acorn.  The SBA supposedly learned that the Torkelsens were looting and otherwise mismanaging Acorn, but failed to tell the other investors, thereby depriving them of this superior information and the

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

opportunity to stop investing. The SBA also, according to the Barracks, erred by not imposing sanctions after these misdeeds were discovered. These actions allegedly breached a fiduciary duty owed by the SBA to co-limited partners. Therefore, the Barracks claim, the suit is not barred by the discretionary function exception. Unfortunately, the Barracks have shown no support for this distinction, nor can we find any.

*Id.,* at 445-446; *see also United States Small Business Administration v. Propper*, 2004 U.S. Lexis 23363 (2004)(dismissing claims of fraud in the inducement as both derivative and as barred by the Federal Tort Claims Act).

Redleaf's claims in this case are the same as asserted by the Barracks in *Acorn*. Redleaf argues that "the SBA discovered potentially serious violations of the regulations designed to ensure the financial soundness of Aspen III, but chose simply to ignore those violations" (Opposition, p. 4:1-3.), ostensibly absolving Redleaf from its obligations. However, as set forth in *Acorn*, these claims are barred by the Federal Tort Claims Act. Redleaf provides no explanation as to how barred claims provide a defense.

Redleaf fares no better when it complains that Aspen Ventures persuaded Redleaf to invest by agreeing to a structure seemingly designed to insulate Redleaf from risk but that actually allowed Aspen Ventures to further defraud Redleaf. *See* Opposition, III.C., pp.5-7. In other words, Redleaf claims the entire structure was a fraudulent, illegal scheme. This same argument was rejected by the Third Circuit in *Acorn*:

> The Barracks next seek permission to sue Acorn and Acorn Partners for mismanagement, alleging that if Acorn had not been mismanaged by Torkelsen, and if Torkelsen had not told them that Acorn was being managed in accordance with federal and state laws, they would not have invested or continued to invest. The District Court concluded that these claims could only be brought in a derivative suit by the SBA as receiver for Acorn, and therefore the receivership stay should not be lifted to allow their assertion by the Barracks individually. We agree.
>
> The Barracks' claim, despite creative characterization, reduces to an allegation that they would not have invested, or have lost money on capital already invested, if the company had been properly managed or had disclosed the mismanagement. In this, the Barracks suffered the same wrong as all other investors in Acorn-management misled them as to how the company was being run, and its compliance with various laws, and as an indirect result their investments lost value.

*Acorn*, 429 F.3d at 447.

Redleaf's allegations against the SBA, as regulator, fail as matter of law. Redleaf attempts to get around this fact by pointing out that it has not asserted affirmative *claims*, but only affirmative *defenses*. Opposition, p.13:25-26, p.16:23-27. Redleaf cites several cases for

1  the proposition that it may assert breach of contract as an affirmative defense without having to
2  assert a counter claim. *Id.,* at p. 16:23-27. None of the cases cited supports what Redleaf is
3  attempting here: resurrection of legally deficient claims against SBA *as regulator* for the purpose
4  of asserting them as affirmative defenses against the SBA *as Receiver*.

     Perhaps realizing this, Redleaf argues that it has no obligation to plead its fraud and failure of conditions precedent allegations with any particularity because the Receiver should know Redleaf's position based upon previous negotiations. This is absurd. In reality, Redleaf hesitates to clearly articulate its claims because their infirmities will become immediately evident. Despite Redleaf's attempts to convince the Court otherwise, this case is nothing more than a breach of contract involving Redleaf's unfulfilled promise to pay $15 million. The Receiver is simply fulfilling its obligation to garner the assets of Aspen Ventures, and contrary to Redleaf's assertions that "the SBA will use this $10.6 million to repay the leverage funds extended to Aspen III," no payment can be made by the Receiver to anyone until this Court approves such payment.

     The Receiver's Motion to Strike should be granted.

Dated: March 31, 2008

SCHNADER HARRISON SEGAL & LEWIS LLP

By: /s/ Gregory C. Nuti
Gregory C. Nuti
Attorneys for Plaintiff, the United States Small Business Administration in its capacity as Receiver for Aspen Ventures III, L.P.

Dated: March 31, 2008

U.S. Small Business Administration

By: /s/ Beverley Hazlewood Lewis
Beverley Hazlewood Lewis
Office of General Counsel
Attorneys for Plaintiff,
United States Small Business Administration in its capacity as Receiver for Aspen Ventures III, L.P.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

PHDATA 3075773_1

9

REPLY TO OPPOSITION TO MOTION TO STRIKE
C-07-05350 JW (PVT)