Gregory C. Nuti (Bar No. 151754)
Schnader Harrison Segal & Lewis LLP
One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

Beverley Hazelwood Lewis
Trial Attorney, Office of General Counsel
U.S. Small Business Administration
409 3rd Street, S.W., Seventh Floor
Washington, D.C. 20416
Telephone (202) 205-6857
Facsimile (202) 481-0325

Attorneys for Plaintiff,
United States Small Business Administration
in its capacity as Receiver for Aspen Ventures III, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION IN ITS CAPACITY AS RECEIVER FOR ASPEN VENTURES III, L.P., <br><br> Plaintiff, <br><br> vs. <br><br> REDLEAF GROUP, INC., <br><br> Defendants. <br><br><br> REDLEAF GROUP, INC., <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> ASPEN VENTURES MANAGEMENT III, LLC, a Delaware Limited Liability Company, ALEXANDER P. CILENTO, a California resident, and DAVID CROCKETT, a California resident, and DOES 1-10, <br><br> Third-Party Defendants. | Case No. C07-05350 JW PVT <br><br> **AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT** <br><br> Date:     April 14, 2008 <br> Time:    9:00 a.m. <br> Location: 280 South First Street, Courtroom 8, 4th Floor, San Jose, CA <br> Judge:   Honorable James Ware |

1

Plaintiff the United States Small Business Administration ("SBA") in its capacity as Receiver for Aspen Ventures III, L.P. ("Aspen Ventures"), defendant and third party plaintiff Redleaf Group, Inc. ("Redleaf"), and third party defendants Aspen Ventures Management III, LLC, a Delaware Limited Liability Company ("AVM"), Alexander P. Cilento ("Cilento"), and David Crockett ("Crockett")[1], hereby submit their Amended Joint Case Management Conference Statement to more fully discuss issues raised in paragraph 20 between Redleaf and AVM.

The SBA, as Receiver for Aspen Ventures, ("Receiver") initiated this action on October 19, 2007 against Redleaf seeking $10.6 million on account of an unpaid capital commitment ("Receiver Complaint"). Redleaf filed an answer to the Receiver Complaint on December 17, 2007 and at the same time filed a third party complaint against the 3rd Party Defendants seeking, among other things, indemnity ("3rd Party Complaint").

1. **Jurisdiction and Service**

   a. **ReceiverComplaint**

The basis for the Court's jurisdiction is 15 U.S.C. § 687c, the Small Business Investment Act of 1958 (the "Act") as implemented by 13 CFR Part 107 (the "Regulations"). The Court has jurisdiction over this action pursuant to 28 U.S.C § 1331, 15 U.S.C. §§ 687c and 687h, 28 U.S.C. §§ 754, 1692 and 1367 and the Stipulation for Consent Order of Receivership dated October 4, 2006 ("Consent Order) issued by this Court in the action captioned *United States of America v. Aspen Ventures III, L.P.* case number C06-04032 JW, pending in this Court ("Receivership Action"). Those causes which arise under the laws of the States of California and Delaware are pendent or ancillary causes under 28 U.S.C. § 1367 to the Receivership Action.

Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391 because Redleaf maintains offices, transacts business, or resides within the District. Venue is also proper pursuant to 28 U.S.C. § 754 as this action is ancillary to this Court's exclusive jurisdiction over the Receivership Estate.

---

[1] AVM, Crockett and Cilento are collectively referred to as the "3rd Party Defendants".

**3rd Party Complaint**

The basis for the Court's jurisdiction is 28 U.S.C. § 1367(a). It is Redleaf's contention that this Court has the power to exercise supplemental subject matter jurisdiction here because Redleaf's claims against AVM, Cilento and Crockett share a common nucleus of operative fact with Receiver claims against Redleaf. Redleaf's Complaint does not raise novel or complex issues of State law and does not substantially predominate over Receiver's claims. This Court has not dismissed all claims over which it has original jurisdiction.

Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) and (c) because a substantial part of the events giving rise to this action occurred in this District and because AVM, Cilento and Crockett are subject to personal jurisdiction in this District.

Redleaf and the 3rd Party Defendants have been served. Redleaf filed its answer to the Complaint on December 17, 2007. The 3rd Party Defendants filed Consolidated Motion to Dismiss the 3rd Party Complaint which is noticed for hearing on April 14, 2008.

2.  **Allegations**

a.  **Receiver Complaint**

SBA is the Receiver for Aspen Ventures pursuant to the terms of this Court's Consent Order in the above referenced Receivership Action. The Receiver was appointed for the purpose of, among other things, investigating, preserving and pursuing claims of Aspen Ventures. The Complaint stems from Redleaf's failure to fulfill its $15 million capital commitment to Aspen Ventures. Redleaf paid $4.4 million of its obligation, leaving $10.6 million due and owing to the Receivership Estate. The Receiver has asserted breach of contract against Redleaf on account of the unfunded capital commitment.

b.  **Redleaf Group, Inc.'s Claims and Defenses**

Redleaf Group, Inc. asserts as a core claim that it was fraudulently induced to invest in Aspen Ventures by Aspen Ventures' principals, and the SBA regulatory officials. This fraudulent inducement claim forms the basis for Redleaf's primary defense against the

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

3

Receiver's claims, as well as providing a basis for recovering against the 3rd Party Defendants.

Redleaf alleges that 3rd Party Defendant AVM, the general partner of Aspen Ventures, Thaddeus J. Whalen, one of the general partner's managing members who is now deceased, and 3rd Party Defendants Cilento and Crockett, the general partner's surviving managing members, fraudulently induced Redleaf to enter into two agreements and invest millions of dollars into Aspen Ventures, an enterprise Third-Party Defendants knew was failing. Redleaf further alleges AVM, Cilento, and Crockett breached the agreements in numerous ways, continued to conceal and misrepresent material facts, and breached their fiduciary duties to Redleaf. For example:

a. critical evidence regarding the state of affairs of Aspen Ventures was intentionally withheld from Redleaf;

b. the true Aspen Ventures portfolio valuations were manipulated intentionally and by misuse of SBA's own regulatory reporting procedures;

c. critical information regarding an SBA examination report finding fault with Aspen Ventures' valuation procedures was withheld from Redleaf;

d. in response to direct questions regarding the health of the Aspen Ventures portfolio, Aspen Ventures managers repeatedly misrepresented the facts;

e. Aspen Ventures made no effort to raise additional capital from its existing investors despite direct representations to Redleaf that it would do so;

f. Aspen Ventures faced regulatory capital impairment at the time it solicited Redleaf's investment and could not survive without Redleaf's capital; and

g. Aspen Ventures created a legal structure in violation of SBA regulatory procedure, depriving Redleaf of an opportunity to participate in the management or even obtain critical information of Aspen Ventures' affairs.

Expanding on this last issue, 3d Party Defendants represented to Redleaf that Aspen Ventures would be divided into two series of investments (the "Series A Investments" and "Series B Investments").

The division of Aspen Ventures into Series A and Series B Investments was important to Redleaf because Redleaf believed the division would insulate Redleaf from risk associated with

4

the Series A Investments, which had been funded with Aspen Ventures' private capital and leverage obtained from SBA before Redleaf's admission to Aspen Ventures.

Redleaf believed the division would insulate Redleaf from risk because this is what Whalen, Cilento, and Crockett represented to Redleaf. In essence, Whalen, Cilento, and Crockett promised that Redleaf would not be forced to contribute its capital to support the existing Series A Investments, or to make SBA whole should the Series A investments fail.

The Series A/Series B structure did not create the expected insulating effect. Redleaf contends the Series A/Series B structure further had the effect of assisting Whalen and the 3rd Party Defendants in their wrongful actions because Whalen, Cilento, and Crockett had complete de facto control of the valuation, purchase, sale, or other acquisition or disposition of both the Series A and Series B Investments at all relevant times.

Redleaf alleges its managing members had no way to participate in decision-making and valuations with regard to the Series A Investments, or the requests for and utilization of SBA leverage that supported those investments. Accordingly, Redleaf claims Whalen and the 3rd Party Defendants were able to conceal the true state of the nature of the Series A investments. Aspen Ventures suffered irreversible regulatory capital impairment, the SBA placed Aspen Ventures into receivership.

Redleaf claims the SBA bears responsibility for the situation that Redleaf now finds itself in. Specifically, it is Redleaf's position that it was the responsibility of the SBA regulators to oversee the actions of Aspen Ventures, Whalen, and the 3rd Party Defendants. The SBA failed to do so, and its failure to act ultimately assisted Whalen and the 3rd Party Defendants to commit the wrongful acts against Redleaf discussed above. Furthermore, SBA failed to follow its own regulations and procedures in countenancing a methodology for valuing Aspen Ventures' portfolio concerns which was inconsistent with those regulations and procedures. Although Redleaf has not brought a claim against the SBA based on the SBA's conduct, these facts support Redleaf's defense of the SBA's claim for the $10.6 million unfunded commitment.

The 3rd Party Defendants and Receiver deny Redleaf's contentions as set forth above and contend they contain new allegations and arguments, while misstating both facts and law. The

5

Receiver is pursuing Redleaf on behalf of the receivership estate. The Receiver contends that any alleged claims against the SBA as regulator are barred by the Federal Tort Claims Act, 28 U.S.C. § 2680, et. seq. and as being derivative. *See United States of America v. Acorn Technologies,* 429 F.3d 438 (3rd Cir. 2005).

The 3rd Party Defendants assert that Redleaf's 3rd Party Complaint, and each cause of action alleged therein, is legally deficient as a matter of law. Thus, on February 26, they filed a Consolidated Motion to Dismiss pursuant to Rule 12(b)(6) to be heard on April 14, 2008. Moreover, 3rd Party Defendants believe the claims are factually without merit as well.

3. **Legal Issues**

a. **Receiver Complaint**

The Receiver asserts a breach of contract claim. Redleaf has denied liability, asserting numerous affirmative defenses, the essence of which is that Redleaf was fraudulently induced into agreeing to invest in Aspen Ventures. Although the claim is not novel, the regulatory framework within which it arises imposes restrictions and limits upon Redleaf's available defenses. Receiver intends to file a motion to strike a number of Redleaf's defenses based upon the Act, Regulations and other applicable authorities. The Receiver is coordinating with the other parties such its motion to strike may be heard at the same time as the 3rd Party Defendants' motion to dismiss, discussed below.

The Receiver also points out that the Consent Order provides that "[a]ll parties and prospective parties to any civil legal proceedings of any nature involving Aspen Ventures are enjoined from commencing or continuing any legal proceeding and further enjoined from taking any further action with respect to pursuing such claims until further order of this Court. Further, the Order Lifting Stay authorizing the Receiver Complaint did not authorize Redleaf to file the Third Party Complaint. Nor did Redleaf seek a modification of the Consent Order allowing the Third Party Complaint. Therefore, it is the Receiver's contention that Redleaf' filed its Third Party Complaint in violation of the Consent Order.

Redleaf generally denies the factual and legal assertions of the Plaintiff. Further, Redleaf asserts that the core legal issues in the defense of Receiver's claim are as follows:

Whether the Receiver's claim is barred by unclean hands. Redleaf asserts that Receiver stands in the shoes of the 3rd Party Defendants and Thaddeus Whalen, who engaged in various wrongful acts in conjunction with the Redleaf investment;

Whether the Receiver's claim is barred because Redleaf's investment was fraudulently induced by the 3rd Party Defendants and Thaddeus Whalen, with the SBA's assistance, unwitting or otherwise;

Whether the Receiver is estopped to seek the balance of the commitment given its actions, which assisted the 3rd Party Defendants and Thaddeus Whalen's wrongful conduct;

Whether Redleaf is entitled to rescind the contracts at issue due to SBA's and 3rd Party Defendants' wrongful conduct;

Whether various contractual defenses, including breach, performance, failure to perform conditions precedent, and failure to mitigate damages bars the claim.

**b. 3rd Party Complaint**

The legal issues involved in Redleaf's third-party complaint are:

Whether the 3rd Party Defendants breached the contracts and/or the implied covenant of good faith and fair dealing therein;

Whether the 3rd Party Defendants committed fraud, concealed, or negligently misrepresented facts;

Whether Redleaf is entitled to indemnity from the 3rd Party Defendants;

Whether Redleaf is entitled to declaratory relief; and

Whether the 3rd Party Defendants breached fiduciary duties owed to Redleaf.

The 3rd Party Defendants believe Redleaf's claims are legally deficient and factually without merit. Accordingly, the 3rd Party Defendants filed a motion to dismiss in response to the 3rd Party Complaint.

7

4. **Motions**

The Receiver believes that a motion to strike certain of Redleaf's affirmative defenses, in conjunction with the 3rd Party Defendants' motion to dismiss, will greatly narrow the disputed issues. Plaintiff and 3rd Party Defendants will coordinate the filing of their motions for hearing by the Court on the same calendar.

Redleaf anticipates filing a motion for summary judgment directed at the Receiver's claim, as well as on its own claim against the 3rd Party Defendants.

5. **Amendments of Pleadings**

The parties do not at this time anticipate any amendments to the pleadings, although the parties reserve their right to amend the pleadings based upon further information, investigation, or research.

6. **Evidence Preservation**

Aspen Ventures is in receivership. Under the Consent Order, the 3rd Party Defendants turned over possession of Aspen Ventures' books and records to the Receiver. The Receiver has preserved the books and records it has received.

7. **Disclosures**

The parties have agreed, subject to this Court's approval, to wait until after the parties engage in an early settlement conference under this Court's ADR program to exchange the disclosures required by Federal Rule of Civil Procedure 26. A proposed Stipulation and Order is filed herewith.

Redleaf Group, Inc. is cognizant of its duty to preserve evidence potentially relevant to this litigation, and has taken steps to ensure that no potentially relevant evidence is destroyed, whether that potentially relevant evidence be in hard copy or electronic form.

8. **Discovery**

The parties will be better able to gauge the scope of discovery after the Court's rulings on the procedural motions. In addition, the parties have agreed to refer this matter to a Magistrate under this Court's ADR program after rulings on these motions. Until then, the

parties do not anticipate the need for formal discovery. The Parties believe that this Court should set a further Case Management Conference to take place 30 days after the judicial settlement conference, with a further Case Management Conference Statement to address discovery issues in more detail.

### 9. Class Action

This is not a class action.

### 10. Related Cases

This Court also presides over the Receivership Action. This Court has issued a related case order for the Receivership Action and Aspen Ventures West II receivership, case number C 06-04034. Both receiverships involve the same principals. However, no order has issued regarding whether the Receiver Complaint and 3rd Party Complaint are deemed "related" to the Receivership Action under the local rules as Judge Ware is already presiding over all the matters.

### 11. Relief Sought

The Receiver seeks money damages of $10.6 million against Redleaf based upon the amount of Redleaf's unfunded capital commitment. Redleaf has not asserted any affirmative claims against the SBA or the Receivership Estate.

Redleaf seeks a judgment that it is not liable on the Receiver's claim, and from the 3rd Party Defendants, damages according to proof, indemnity from the 3rd Party Defendants in the event it is found liable for the unfunded capital commitment and a declaratory judgment that the 3rd Party Defendants are obliged to fully indemnify Redleaf, its attorneys' fees and costs, prejudgment interest, and such other relief, including equitable relief, as this Court deems Redleaf is entitled.

### 12. Settlement and ADR

The Receiver and Redleaf engaged for almost a year in unsuccessful settlement negotiations prior to the filing of the Complaint. The allegations, issues and positions taken by the SBA as receiver and Redleaf during these negotiations are embodied in the current pleadings and will again be raised in the anticipated motions. It is hoped that rulings on the motions will

change the dynamics such that the parties can engage in meaningful settlement negotiations. Therefore, the parties have agreed to submit this matter to a Magistrate for a judicial settlement conference pursuant to this Court's ADR Procedures after a ruling on the motions.

13. **Consent to Magistrate Judge for All Purposes**

The parties do not at this time consent to a Magistrate Judge for all purposes.

14. **Other References**

The parties do not at this time see a need for any other reference.

15. **Narrowing of Issues**

As set forth above, the parties believe rulings on the anticipated motions may narrow issues and position the parties for a meaningful ADR process.

16. **Expedited Schedule**

The parties do not at this time see a need for any expedited or streamlined procedures.

17. **Scheduling**

The parties propose the Court schedule a continued Case Management Conference sometime after the ruling on the parties' motions.

18. **Trial**

Plaintiff did not request a jury trial on claims asserted in the Complaint. Redleaf did not request a jury trial in its answer. Redleaf has requested a jury trial on claims asserted in the 3rd Party Complaint.

Receiver takes the position that Redleaf waived its right to jury trial on the claim Receiver brought against Redleaf. Redleaf disagrees with that position.

Redleaf for its part asserts that, although the jury demand is contained in the 3rd Party Complaint, and not the Answer, the jury demand relates to the same factual issues as does Redleaf's defense against the Receiver's claim. See Fed. R. Civ. P. 38(d). Redleaf asserts the demand should control not only to the same factual issues as against the 3rd Party Defendants, but against the Receiver as well. Accordingly, should Receiver persist in its position, Redleaf will bring an appropriate motion before the Court to address the issue.

For its part, Receiver believes the issue of jury trial waiver should be addressed only after the 3rd Party Defendants' motion to dismiss has been ruled upon.

19. **Disclosure of Non-Party Interested Entities or Persons**

The SBA as a federal agency is deemed to be a separate entity from SBA acting as Receiver for Aspen Ventures. The SBA, in its role as a federal agency, has contributed funds to Aspen Venture pursuant to the Act and Regulations. Like any of the other investors or creditors of Aspen Ventures, the SBA as a financial interest in the outcome of these proceedings because, ultimately, the purpose of the receivership action is to liquidate and marshal the assets of Aspen Ventures to satisfy the claims of creditors of the receivership estate.

Redleaf has filed its Disclosure of Non-Party Interested Entities or Persons

**20.   Other Matters**

Redleaf and AVM have a dispute concerning their respective rights to contact John Kohler and Lloyd Mahaffey. Mr. Kohler is a current director of Redleaf and a managing member of AVM. Mr. Mahaffey is a former director and employee of Redleaf and a former managing member of AVM. After this case was filed, counsel for AVM attempted to conduct interviews with Messrs. Kohler and Mahaffey. Counsel for Redleaf advised Messrs. Kohler and Mahaffey of its position that Mr. Kohler's current fiduciary duties to Redleaf prevented him from providing assistance to AVM, and Mr. Mahaffey was prevented by his fiduciary duties as a former director from assisting AVM as to matters relating to his service as a director of Redleaf. Redleaf's counsel further informed counsel for AVM that counsel were not to contact Mr. Kohler without consent, and requested Counsel not to contact Mr. Mahaffey.

Given the important ethical issue involved, and its implications for trial preparation, Redleaf and AVM seek the Court's guidance and have outlined their respective positions below.

**Redleaf's Position on the Legality and Ethics of Direct Communications
with John Kohler and C. Lloyd Mahaffey[2]**

At the time of the incidents alleged in Redleaf's Third-Party Complaint, John Kohler and

---

[2] This is an issue that Third-Party Defendant AVM raises. It is unclear to what extent Messrs. Cilento and Crockett join in the positions of AVM.

C. Lloyd Mahaffey[3] both sat on Redleaf's board of directors. Mr. Kohler remains as a Redleaf director while Mr. Mahaffey resigned his directorship and employment in 2006.

As current and former directors, Messrs. Kohler and Mahaffey are Redleaf's fiduciaries and, therefore, are obligated to act in Relief's best interests. Cal. Corp Code § 309; see also <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal.2d 327, 345, 49 Cal. Rptr. 825, 838–839 (1966) citing <u>Guth v. Loft, Inc</u>., 23 Del.Ch. 255, 270, 5 A.2d 503, 510 (1939) (the corporate director has a duty "not only to affirmatively protect the interest of the corporation committed to his chart, but also to refrain from doing anything that would work injury to the corporation or to deprive it of profit or advantage"). Among their duties is to maintain the confidentiality of Redleaf's internal affairs, which include matters pertaining to Redleaf's prosecution of its Third-Party Complaint against AVM, Mr. Cilento, and Mr. Crockett. Messrs. Kohler and Mahaffey were privy to aspects of Redleaf's transactions with Aspen and Third-Party Defendants, including the decision to invest in Aspen and the discovery of Third-Party Defendants' misrepresentations, concealments, and malfeasance concerning Aspen. Consequently, the attorney-client privilege that exists between Redleaf and its counsel extends to them. <u>Upjohn Co. v. U.S.</u>, 449 U.S. 383, 397, 101 S.Ct. 677, 686 (1981).

Moreover, in accordance with Rule 2-100 of the California State Bar Rules of Professional Conduct, counsel for Third Party Defendants may not communicate with Mr. Kohler, the current director, without the consent by Redleaf's counsel. Rule 2-100(A) of the California State Bar Rules of Professional Conduct mandates that an attorney may not communicate directly or indirectly about the subject of the representation with a party the [attorney] knows to be represented by another lawyer in the matter, unless the [attorney] has the consent of the other lawyer.[4]

---

[3] Mr. Mahaffey was also a Redleaf employee.

[4] Rule 2-100 states in full: "(A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer. [¶] (B) For purposes of this rule, a 'party' includes: [¶] (1) An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership; or [¶] (2) An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or
...Continued

PHDATA 3078507_1                                                                                JOINT CMC STATEMENT

1  Rule 2-100(B) defines "party" as an "officer, director, or managing agent of a corporation."
2  This prohibition against *ex parte* contact applies despite the fact that Redleaf's counsel,
3  Kirkpatrick & Lockhart Preston Gates Ellis LLP ("K&L Gates"), does not represent Mr. Kohler
4  in his individual capacity.  Third-Party Defendants disagree and cite to <u>La Jolla Cove Motel and
5  Hotel Apartments, Inc. v. Superior Court</u>, 121 Cal. App. 4th 773, 17 Cal. Rptr. 3d 467 (2004) as
6  authority.  Their reliance is misplaced.  The <u>La Jolla</u> court articulated a narrow exception to Rule
7  2-100 based upon different facts not present in this case.

   <u>La Jolla</u>, 121 Cal. App. 4th 773, concerned two directors whose interests were deemed adverse to the corporation and who were each represented by separate counsel.  Because the directors' separate counsel gave permission for them to communicate with the attorney representing the minority shareholders in a suit against the corporation and no confidential information was disclosed by the directors, the court found no violation of Rule 2-100.  <u>Id</u>. at 784.

   In contrast to the facts of <u>La Jolla</u>, 121 Cal. App. 4th 773, Mr. Kohler and Mahaffey do not have separate counsel.  Additionally, K&L Gates has instructed Third-Party Defendants' counsel not to communicate with Mr. Kohler, and has requested Third-Party Defendants not to communicate with Mr. Mahaffey.  Furthermore, AVM has shown no adversity between Redleaf and Messrs. Kohler or Mahaffey with respect to this action, their former positions as managing members of AVM notwithstanding.

   In addition to the <u>La Jolla</u> case discussed above, Third-Party Defendants' position appears to be based on Messrs. Kohler and Mahaffey's position as managing members of AVM.[5]  If so, this position is without merit.

---

*Continued from previous page*
   omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. [¶] (C) This rule shall not prohibit:  (1) Communications with a public officer, board, committee, or body; (2) Communications initiated by a party seeking advice or representation from an independent lawyer of the party's choice; or (3) Communications otherwise authorized by law."

[5] Mr. Kohler is still a managing member of AVM.  Mr. Mahaffey is no longer a managing member.

Messrs. Kohler and Mahaffey were admitted to AVM pursuant to the Aspen Ventures Management III, LLC First Amendment to Second Amended and Restated Limited Liability Company Agreement. ("2002 Amendment to LLC Agreement"). The 2002 Amendment to LLC Agreement was part of the documentation that established the Series A/Series B investment and management structure discussed at length in Redleaf's opposition papers. Briefly, the Series A/Series B structure an investment structure that they represented would limit Redleaf's risk on pre-existing investments. Specifically, Redleaf was concerned about previous illiquid investments that Aspen III had made, together with the liability for associated SBA leverage that was outstanding, and wished to avoid a situation in which Redleaf's multi-million dollar commitment could be used to repay SBA leverage that Aspen III used to make previous investments.

Accordingly, to assuage Redleaf's concerns about prior investments, Redleaf and Aspen III agreed to divide the Aspen III investments into Series A and Series B investments. Series A investments, generally, would consist of investments made before Redleaf agreed to invest in Aspen III. Series B investments would consist of investments made after Redleaf agreed to invest. Among other terms, Aspen III and Redleaf agreed that its commitment would not be used to support or repay SBA leverage drawn in connection with Series A investments.[6]

> The intent of the 2002 Amendment to LLC Agreement was to separate Series A and Series B investments as much as possible. In fact, the agreement even provides that "to the maximum extent possible under this Agreement, Series A and Series B shall generally be treated as *two separate limited liability companies* . . . ." 2002 Amendment to LLC Agreement, attached to the CMC Statement as Exhibit ___ (Preamble); id. at ¶ 3(a). Kohler and Mahaffey did not even vote together with other the AVM managing members except in the most limited of circumstances. Id. at ¶ 3(c)(i).

Thus, Messrs. Kohler and Mahaffey were admitted as AVM managing members solely in order to represent Redleaf's Series B interests in Aspen and they had access to information solely relevant to those Series B investments. Indeed, as alleged in the Third Party Complaint, and as discussed at length in Redleaf's opposition to the SBA and Third-Party Defendants' motions,

---

[6] Such a two tiered structure for an SBIC is unprecedented. Indeed, SBA may never have approved such a structure prior to this one, or since.

Third-Party Defendants specifically excluded Messrs. Kohler and Mahaffey from decision-making with regard to the Series A Investment so that the latter could engage questionable investments detrimental to Aspen, and, ultimately, Redleaf.  There is, therefore, a significant question whether Messrs. Kohler and Mahaffey possess any significant confidential information of AVM.  However, their knowledge of Redleaf's confidential information, is substantial.

**Aspen Ventures Management III, LLC's Position on the Legality and Ethics of Direct Communications with John Kohler and C. Lloyd Mahaffey**

AVM seeks the Court's authorization to communicate with two of its current or former managing members.  Astoundingly, counsel for Redleaf has instructed John Kohler (a current managing member of AVM and director of Redleaf) that he may not communicate with counsel for AVM, and has instructed C. Lloyd Mahaffey (a former managing member of AVM and former director of Redleaf) that he should not communicate with counsel for AVM.  Counsel for Redleaf has further threatened that any attempt by counsel for AVM to contact these managing members is an ethical breach.  The glaring error in Redleaf's position, which it ignores in the foregoing argument, is that Mr. Kohler and Mr. Mahaffey owe fiduciary duties to AVM as well as Redleaf.

Redleaf has correctly pointed out that Messrs. Kohler and Mahaffey are fiduciaries of Redleaf in light of their positions as current or former directors of that corporation, and thus have an obligation to protect Redleaf's confidential information.  *See, e.g.*, Cal. Corp. Code § 309; *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 345, 49 Cal. Rptr. 825 (1966).  Based on their positions as current or former managing members of AVM, Messrs. Kohler and Mahaffey have the same type of fiduciary obligations to AVM.  *See* Cal. Corp. Code § 17153 (managing members of a limited liability corporation owe that entity the same obligations that a partner owes to a partnership); Cal. Corp. Code § 16404 (noting that a partner owes a partnership a duty of loyalty and, amongst other things, should not deal with the partnership on behalf of a party having an adverse interest to the partnership).  Messrs. Kohler and Mahaffey owe fiduciary duties to *both* Redleaf and AVM, two adverse parties on opposite sides of this litigation.

Accordingly, the ethical rules cited by Redleaf in its argument above apply with equal

force to counsel for both Redleaf and AVM.  Redleaf has cited Rule 2-100 of the California State Bar Rules of Professional Conduct, which prohibits an attorney from communicating about the subject of the representation with a party whom the attorney knows is represented by another attorney, without that other attorney's consent.  Redleaf argues that this provision means that counsel for AVM may not communicate with Messrs. Kohler and Mahaffey, given that: (1) Rule 2-100 includes within its definition of "party" a director of a corporation; (2) Messrs. Kohler and Mahaffey are directors of Redleaf; and (3) Redleaf is represented by counsel.[7]  Redleaf neglects to mention, however, that Rule 2-100 also includes within its definition of "party" the "managing agent" of a corporation or association.  According to Redleaf's own line of reasoning, because Messrs. Kohler and Mahaffey are also managing members of AVM and because AVM is also represented by counsel, counsel for Redleaf is likewise barred from communicating with them.

Counsel for Redleaf and AVM each have a conflict of interest in representing or advising either Mr. Kohler or Mr. Mahaffey as individuals.  As stated in *La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court (Jackman)*, 121 Cal. App. 4th 773, 784, 17 Cal. Rptr. 3d 467 (2004), "the individual shareholders or directors cannot presume that corporate counsel is protecting their interests."  That is particularly true of Mr. Kohler and Mr. Mahaffey because by virtue of their dual loyalties their interests are not squarely aligned with either party.  Because of this conflict, counsel for Redleaf may not advise Messrs. Kohler and Mahaffey with respect to their obligations in this litigation, and it was inappropriate for counsel for Redleaf to advise Messrs. Kohler and Mahaffey not to cooperate with AVM's counsel in this litigation.  *See* Cal. R. Prof. Conduct 3-310(C), 3-600(E).

Redleaf has attempted to discount any conflict of interest between it and Messrs. Kohler and Mahaffey because they were admitted to AVM membership for the purpose of protecting Redleaf's interests.  Even if that is true, it does not relieve Messrs. Kohler and Mahaffey of the fiduciary duties to AVM that they assumed under California law.  As a result of these duties

---

[7] Of course, Rule 2-100 does not apply at all to communications with Mr. Mahaffey, who is no longer a director of Redleaf nor a managing member of AVM.  *See* Cal. R. Prof. Coduct 2-100, Discussion (citing *Triple A Machine Shop, Inc. v. State of California*, 213 Cal. App. 3d 131 (1989)).

Messrs. Kohler and Mahaffey's interests are not aligned with Redleaf's interests in this litigation.

Redleaf also supports its argument that only its counsel should have access to Messrs. Kohler and Mahaffey by arguing, erroneously, that they probably do not have any confidential information of AVM's. But as managing members of AVM beginning in April, 2002, Mr. Kohler and Mr. Mahaffey attended limited partner meetings and had access to all documents and to company management. Each had one vote concerning investments made from Redleaf funds held by AVM in Redleaf, AVM or other companies, or in making capital calls from Redleaf. (Mr. Whalen also had one vote, while Messrs. Crockett and Cilento had ½ vote each.) In fact, all decisions were made unanimously. In order to gain a complete picture of the internal operations of AVM, AVM's counsel is entitled to discuss with Mr. Kohler and Mr. Mahaffey their involvement with AVM.

Redleaf also asserts that Messrs. Kohler and Mahaffey have significant confidential information belonging to Redleaf.[8] But that fact, if true, means only that Mr. Kohler and Mr. Mahaffey have confidential information belonging to both sides and therefore that any limitations on the activities of counsel flowing from their possession of such information should fall equally on AVM and Redleaf.

Given the dual affiliations of Mr. Kohler and Mr. Mahaffey and the conflicting fiduciary duties resulting therefrom, AVM asks the Court to allow counsel for both Redleaf and AVM to contact Messrs. Kohler and Mahaffey regarding those witnesses' nonprivileged observations. AVM has never sought to discover any privileged information that Messrs. Kohler and Mahaffey may know regarding Redleaf, and Redleaf should not seek any privileged information about AVM. Both AVM and Redleaf are entitled to any *nonprivileged* information from these

---

[8] Redleaf is incorrect in assuming that Messrs. Kohler and Mahaffey would necessarily have knowledge of Redleaf's confidential information regarding this suit. Mr. Kohler has been barred from all Redleaf meetings relating to Redleaf's claim against AVM, apparently because of the perceived conflict of interest arising from his role at AVM. This means that there is no chance that he might inadvertently provide litigation strategy or attorney-client privileged information with respect to this case. Likewise, as Mr. Mahaffey is no longer with Redleaf, there is little chance that he would reveal such confidential information.

potentially important fact witnesses. *See Triple A Machine Shop, Inc. v. State of California*, 213 Cal. App. 3d 131, 143, 261 Cal. Rptr. 493 (1989). Accordingly, AVM respectfully requests that the Court authorize AVM (and Redleaf) to communicate with Messrs. Kohler and Mahaffey with respect to their nonprivileged observations regarding the underlying facts of this lawsuit.

Dated: April 4, 2008                     SCHNADER HARRISON SEGAL & LEWIS LLP


By: /s/ Gregory C. Nuti
    Gregory C. Nuti
    Attorneys for Plaintiff, the United States
    Small Business Administration in its
    capacity as Receiver for Aspen Ventures
    III, L.P.

Dated: April 4, 2008                     KIRKPATRICK & LOCKHART PRESTON
                                         GATES ELLIS LLP


By: /s/ Matthew Ball
    Matthew Ball
    Attorneys for Defendant and 3rd Party
    Plaintiff Redleaf Group, Inc.

Dated: April 4, 2008

                                         TAYLOR & COMPANY LAW OFFICES, LLP


By: /s/ Jessica L. Grant
    Jessica L. Grant
    Attorneys for 3rd Party Defendants David
    Crockett and Alexander Cilento

Dated: April 4, 2008                     COBLENTZ, PATCH, DUFFY & BASS, LLP


By: /s/ William Orrick, III
    William Orrick, III
    Attorneys for 3rd Party Defendant Aspen
    Ventures Management