Gregory C. Nuti (Bar No. 151754)
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785
E-mail: gnuti@schnader.com

Beverley Hazlewood Lewis
Trial Attorney, Office of General Counsel
U.S. Small Business Administration
409 3rd Street, S.W., Suite 7200
Washington, D.C. 20416
Telephone (202) 619-1605
Facsimile (202) 481- 0468

Attorneys for Plaintiff,
United States Small Business Administration in its
capacity as Receiver for Aspen Ventures III, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION IN ITS CAPACITY AS RECEIVER FOR ASPEN VENTURES III, L.P., <br><br> Plaintiff, <br><br> vs. <br><br> REDLEAF GROUP, INC., <br><br> Defendants. <br><br> REDLEAF GROUP, INC., <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> ASPEN VENTURES MANAGEMENT III, LLC, a Delaware Limited Liability Company, ALEXANDER P. CILENTO, a California resident, and DAVID CROCKETT, a California resident, and DOES 1-10, <br><br> Third-Party Defendants. | Case No.: C07-05350 JW/PVT <br><br> **DECLARATION OF RICHARD MOSER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION, ON THE RECEIVER'S CLAIM FOR BREACH OF CONTRACT** <br><br> Date:     June 23, 2008 <br> Time:    9:00 a.m. <br> Location: 280 South First Street, Courtroom 8, 4th Floor, San Jose, CA 95113 <br> Judge:   Hon. James Ware |

I, Richard Moser, declare as follows:

1. I am a member of Phoenix Management Partners, LLC ("Phoenix") and authorized to act on its behalf. Phoenix's business address is 250 King Street, #470, San Francisco, California 94107. Phoenix has served as the Principal Agent for the U.S. Small Business Administration ("SBA") in its capacity as the court-appointed receiver ("Receiver") for Aspen Ventures III, LLP ("Aspen Ventures") since October, 2006. This Court placed Aspen Ventures into receivership, and appointed the SBA as receiver of Aspen Ventures pursuant to that Stipulation for Consent Order of Receivership filed October 4, 2006.

2. Phoenix is an independent contractor retained by the Receiver. Phoenix is compensated at an hourly rate. I make this declaration in my capacity as a member of Phoenix and based upon my own personal knowledge and my review of Aspen Ventures' business books and records and, if called as a witness, I could and would testify competently to the matters stated herein.

3. Phoenix's duties, in its capacity as Principal Agent, include, *inter alia*, assisting the Receiver in the marshalling, administration, and orderly liquidation of the assets of Aspen Ventures and satisfying the claims of creditors as determined by this Court and in the preservation and pursuit of Aspen Ventures' claims against third parties. Phoenix is responsible for the maintenance and safekeeping of the books and records of Aspen Ventures, including those obtained by the Receiver from the prior management of Aspen Ventures, some of which are attached hereto. I am informed and believe that books and records of Aspen Ventures were made at or near the time of the events recorded therein from information transmitted by persons with knowledge in the course of its regularly conducted business activities, and it was Aspen Ventures regular practice to make, keep and maintain its books and records.

4. In my capacity as a member of Phoenix, I have read, reviewed, analyzed and have become generally familiar with Aspen Ventures' business books and records, including but not limited to the Consent Order, Aspen Ventures' limited partnership agreement, Aspen Ventures Management III, LLC's corporate documents, the documents evidencing Redleaf Group, Inc.'s $15,000,000.00 capital commitment, and correspondence related thereto.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700
FAX: (415) 364-6785

5. In addition Aspen Venture's books are records, the Receiver and Redleaf Group, Inc. ("Redleaf") engaged in discussions and negotiations over Redleaf's fulfillment of its capital commitment. I personally participated in those negotiations. In connection therewith, the Receiver gave Redleaf access to its records allowing Redleaf to obtain copies. Also part of those discussions and negotiations, Redleaf produced numerous documents to the Receiver, some of which are attached hereto. I am informed and believe that the documents produced by Redleaf were made at or near the time of the events recorded therein from information transmitted by persons with knowledge in the course of its regularly conducted business activities, and it was Redleaf's regular practice to make, keep and maintain its books and records.

6. Aspen Ventures III, L.P. ("Aspen Ventures") is a limited partnership formed under the laws of the State of Delaware pursuant to that certain Amended and Restated Limited Partnership Agreement dated and effective as of August 20, 1999 ("Partnership Agreement"). A copy of the Partnership Agreement, along with its SBA Annex PS are attached hereto as **Exhibits A and B**, respectively.

7. In late 2001, Aspen Ventures was pursuing limited partners that could inject additional capital into the partnership. From the outset, Aspen Ventures contemplated a two tiered arrangement whereby Series A investments, generally, would consist of investments made before Redleaf agreed to invest in Aspen Ventures and Series B investments would consist of investments made after Redleaf agreed to invest. On November 15, 2001, Thad Whalen, a former principal of Aspen Ventures, sent a fax to David Gerogosian, an SBA analyst, proposing a structure for a new equity infusion for Aspen Ventures ("Term Sheet"). The Term Sheet generally outlined the Series A/Series B construction, but made clear that Series B may be required to fund Series A liabilities. A copy of the Term Sheet is attached hereto as **Exhibit C.**:

8. Consistent with the notion that the limited partners may make private agreements among themselves, but may not alter the terms of the Act or Regulations, on February 13, 2002, the SBA provided preliminary approval of the amendments to Aspen Ventures' partnership agreement. The letter, which was also provided to Redleaf, explicitly states: "Further, its is the understanding of Operations that the new partnership interest (referred

herein as Series B Limited Partners) will also be offered to the existing limited partners (the Series A Limited Partners). Regardless of the internal accounting treatment provided for within the aforementioned amendments for each series, Operations will continue to view the Series A and B limited partners as one fund for purposes of leverage eligibility, management fee structure, distributions and other regulatory matters." A copy of that letter and the transmittal to Redleaf are attached as **Exhibits D.**

9. According to documents produced by Redleaf, Redleaf held a Board Meeting on February 13, 2002 to discuss, among other things, its proposed investment in Aspen. In a document apparently prepared for this Board Meeting titled "Summary of Key Terms: Redleaf Group, Inc. Investment in Aspen Ventures III, L.P. ("Board Analysis"), Redleaf's own analysis acknowledged "the laws and regulations applicable to the Old Fund and the New Fund as SBICs provide for cross-liability between these series under certain circumstances" and the New Fund may be required to make payments to the SBA that relate to leverage allocated to the Old Fund." A copy of the Board Analysis attached as **Exhibit E**. The minutes from that Board Meeting reflect that the "Board heard an overview of the transaction and legal structure. The capital call procedure, allocation of SBA leverage and *cross collateralization* of the new fund and the old fund were described." A copy of the minutes from that meeting is attached as **Exhibit F.**

10. On March 4, 2002, Thad Whalen asked Mike Tomana of Redleaf to comment on a draft cover letter intended to be sent to the existing limited partners of Aspen Ventures. The letter was to obtain approval of the Series A/Series B structure and admission of Redleaf to the partnership. That letter explained that the SBA will treat the partnership, including Aspen III-A and Aspen III-B, as a single entity, meaning SBA will have the right to satisfy liabilities associated with leverage against either series regardless of the fact that the general partner and the limited partners view such liabilities as belonging to a particular series. A copy of that correspondence is attached as **Exhibit G**.

11. Pursuant to the terms of the First Amendment to Amended and Restated Limited Partnership Agreement ("First Amendment"), the existing limited partners of Aspen

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700
FAX: (415) 364-6785

Ventures approved the Series A/Series B amendments and the admission of Redleaf as a new limited partner. A copy of the First Amendment is attached as **Exhibit H**.

12. On April 1, 2002, Redleaf was admitted to Aspen Ventures as "Series B" limited partner pursuant to the terms of the Series B Admission and Amendment Agreement ("Admission Agreement"). Under the Admission Agreement, Redleaf agreed to contribute $15,000,000 to Aspen Ventures. A copy of the Admission Agreement is attached as **Exhibit I**.

13. After Redleaf was admitted, the cross collateralization of outstanding leverage was highlighted in a financial statement prepared by Aspen Ventures' independent accountants. A copy of that financial statement is attached as **Exhibit J**.

14. In October 2005, Redleaf inquired about the cross collateralization provisions. Aspen Ventures directed Redleaf to paragraphs 1(a), 2(h) and 2(p) of the Partnership Agreement. A copy of that correspondence is attached as **Exhibit K**.

15. Under the terms of the Admission Agreement, Redleaf agreed to contribute $15 million in capital to Aspen Ventures. To date, Redleaf has made capital contributions totaling $4.4 million as follows$2.9 million on or about April 10, 2002 and $1.5 million on or about January 6, 2004. Copies of Aspen Ventures bank statement evidencing these payments are attached as **Exhibit L.** Therefore, Redleaf still owes Aspen Ventures $10.6 million.

16. On May 14, 2007, the Receiver made demand upon Redleaf to fulfill its remaining capital commitment of $10.6 million by May 29, 2007. A copy of the demand letter to Redleaf is attached as **Exhibit M.** Redleaf has failed to pay the $10.6 million as demanded.

17. Delaware allows prejudgment interest at the rate of 5% over the Federal Reserve Discount Rate from the time of injury to through judgment. 6 Del. C. § 2301(a), (d). The Federal Discount Rate as of May 29, 2007 was 6.25% which I have determined by consulting the Federal Reserve's web site. Therefore, the Receiver is entitled to interest at the rate of 11.25 % from May 29, 2007 through the date of judgment.

18. As of May 19, 2008, interest has accrued in the amount of $1,163,095.22 on the outstanding principal of $10.6 million. I calculated this amount using simple interest based upon 356 days (May 29, 2007 through May19, 2008) and a 365 day year. Interest

1  continues to accrue at the daily rate of $3,267.1214.  Therefore, as of May 19, 2008, there
2  remains due owing and payable from Redleaf to the Receiver the sum of $11,763,095.22
3  consisting of $10,600.00 in principal and $1,163,095.22 in accrued interest.

4      I declare under penalty of perjury under the laws of the United States of America that the
5  foregoing information is true and correct based upon personal knowledge, information and belief.
6  Executed on this 19th day of May, 2008 in San Francisco, California.

9            /s/ Richard Moser
            Richard Moser

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700
FAX: (415) 364-6785

6
PHDATA 3090539_1            DECLARATION OF RICHARD MOSER ISO MOTION FOR SUMMARY JUDGMENT