EXHIBIT A

PAGES 51-75

(2)    in the event that the Code or the regulations promulgated thereunder are from time to time amended so as to require additional or different restrictions on Partnership activities and investments in order to avoid such taxation, to observe such additional or different restrictions.

Notwithstanding the foregoing, in the event that legislative, judicial or regulatory changes occurring after the date hereof may cause Partners that are not United States Persons to become subject to United States federal, state or local income tax on their respective shares of capital gains realized by the Partnership that are not effectively connected with a trade or business within the United States, within the meaning of Section 864 of the Code, carried on by the Partnership, whether such income taxes are collection by withholding or otherwise, the preceding sentence shall not apply with respect to any such taxes.

(c)    In making temporary investments of idle Partnership funds, the General Partner shall use its best efforts to make such investments so as to minimize withholding of United States income tax at the source with respect to the shares of Partnership income and gains allocable to Partners that are not United States Persons. In this connection, the General Partner shall not invest in regulated investment companies that elect to be subject to Part I of Subchapter M of the Code.

10.20  Taxation as Partnership. The General Partner and each Limited Partner (in their respective capacities as such) agree that such partners shall not undertake any action, including (without limitation) making regular bid or offer quotes to buy or sell interests or derivative interests in the Partnership, that will cause the Partnership to be, or create a substantial risk that the Partnership will be, (i) classified as other than a partnership for federal income tax purpose, or (ii) treated as a "publicly treated partnership" within the meaning of Section 469 or 7704 of the Code. The General Partner (in its capacity as such) further agrees that, at the expense of the Partnership, it shall use commercially reasonable efforts to avoid taking, and to bar the undertaking of, any activity of which it has knowledge, including (without limitation) the public quotation of regular offers to buy or sell interests or derivative interests in the Partnership or causing the Partnership to recognize transfers effected pursuant to a transaction effected on an "established securities market" (within the meaning of Treasury Regulation Section 1.7704-1(b)) or a "secondary market or the equivalent thereof" (within the meaning of Treasury Regulation Section 1.7704-1(c)), that will cause the Partnership to be, or create a substantial risk that the Partnership will be, (i) classified as other than a partnership for federal income tax purposes, or (ii) treated as a "publicly traded partnership" within the meaning of Sections 469 or 7704 of the Code.

10.21  Board Activity. In no event shall any provision of this Agreement be interpreted as preventing (or limiting in any respect) the General Partner or the members of the General Partner from taking an active role in or receiving compensation for founding or serving on the boards of directors of companies.

10.22  Counsel to the Partnership. Counsel to the Partnership may also be counsel to the General Partner. The General Partner may execute on behalf of the Partnership and the Partners any consent to the representation of the Partnership that counsel may request pursuant to the California Rules of Professional Conduct or similar rules in any other jurisdiction

("Rules"). The Partnership has initially selected Gunderson Dettmer Stough Villeneuve Franklin & Hachigian, LLP ("Partnership Counsel") as legal counsel to the Partnership. Each Limited Partner acknowledges that Partnership Counsel does not represent any Limited Partner in its capacity as a Limited Partner in the absence of a clear and explicit written agreement to such effect between the Limited Partner and Partnership Counsel (and then only to the extent specifically set forth in such written agreement), and that in the absence of any such written agreement Partnership Counsel shall owe no duties directly to a Partner. Each Limited Partner further acknowledges that, whether or not Partnership Counsel has in the past represented or is currently representing such Limited Partner with respect to other matters, Partnership Counsel has not represented the interests of any Limited Partner in the preparation and negotiation of this Agreement.

### ARTICLE XI

### MISCELLANEOUS DEFINITIONS

11.1    Affiliate: With reference to a member or employee of the General Partner, any corporation, association, partnership, or other entity of which such person has direct or indirect control or is, directly or indirectly, a general partner, member, officer, or director, and any other person controlling, controlled by, or under direct or indirect common control with such person. With reference to a Limited Partner, any person controlling, controlled by, or under direct or indirect common control with such person.

11.2    Agreement: This Limited Partnership Agreement of Aspen Ventures III, L.P., a Delaware limited partnership.

11.3    Assets Under Management. As of any specified date, the value (as determined under Paragraph 9.2) of all assets owned by the Partnership, including capital contributions requested and due from the Partners and uncalled capital amounts of the Partner's Capital Commitments less the amount of any liabilities of the Partnership determined in accordance with generally accepted accounting principles.

11.4    Bankruptcy: A person or entity shall be deemed bankrupt if:

(a)    any proceeding is commenced against such person or entity as "debtor" for any relief under bankruptcy or insolvency laws, or laws relating to the relief of debtors, reorganizations, arrangements, compositions, or extensions and such proceeding is not dismissed within ninety (90) days after such proceeding has commenced, or

(b)    such person or entity commences any proceeding for relief under bankruptcy or insolvency laws or laws relating to the relief of debtors, reorganizations, arrangements, compositions, or extensions.

11.5    Certificate of Limited Partnership: The Certificate of Limited Partnership of Aspen Ventures III, L.P., a Delaware limited partnership.

11.6    Code: The Internal Revenue Code of 1986, as amended from time to time (and any corresponding provisions of succeeding law).

11.7    Date of Distribution: The date on which all conditions precedent to making the distribution have been satisfied.

11.8    Holding Company Act: The Bank Holding Company Act of 1956, as amended.

11.9    Limited Partners: Each of the persons the names of which are set forth, as of the date hereof, under the heading "Limited Partners" on the Schedule of Partners attached hereto and each other person duly admitted to the Partnership as a limited partner subsequent to the date hereof. A Preferred Limited Partner shall not be considered a Limited Partner.

11.10   Majority in Interest of the Limited Partners: Limited Partners having Partnership Percentages the sum of which exceeds fifty percent (50%) of the aggregate Partnership Percentages of the Partners (excluding, for the purpose of calculating such requisite percentage, the Partnership Percentage of the General Partner, to the extent attributable to its general partnership interest, and the Partnership Percentage of any Optionor (as defined in Paragraph 3.5)).

11.11   Marketable; Marketable Securities; Marketability: These terms shall refer to Securities that are (a) registered under the Securities Act, (b) traded on a national securities exchange or over-the-counter, (c) currently the subject of an issuer-filed Securities Act registration statement, (d) direct obligations of, or obligations guaranteed as to principal and interest by, the United States, certificates of deposit maturing within one year or less issued by an institution insured by the Federal Deposit Insurance Corporation, or similar Securities, or (e) transferable pursuant to SEC Rules 144 or 145.

11.12   Money-Market Investments: Commercial paper, certificates of deposit, treasury bills, and other money-market investments with maturities of less than twelve (12) months; provided, however, that for any and all periods during which the Partnership is a Licensee, Money-Market Investments shall mean "permitted investments" as defined in SBIC Regulation § 107.530.

11.13   Net Operating Income: The amount of Net Operating Income allocated to the Partnership Capital Account of a Partner for any period shall equal the excess (if any) of the amount of items of book income or gain over the amount of items of book loss or deduction allocated to such Partner's Partnership Capital Account for such period pursuant to Paragraphs 4.4, 4.7 or 4.8 (and Paragraph 4.6, to the extent items allocated pursuant thereto were initially allocated to the Partnership Capital Accounts of the Limited Partners as a group or to all Partners as a group pursuant to Paragraphs 4.4, 4.7 or 4.8).

11.14   Nonmarketable Securities: All Securities other than Marketable Securities.

11.15   Original Managing Members of the General Partner: Alexander P. Cilento, E. David Crockett and Thaddeus J. Whalen.

11.16  Original Limited Partners:  Each of the persons the names of which are set forth, as of the commencement of the term of the Partnership, under the heading "Limited Partners" on the Schedule of Partners attached hereto, and any transferee of all or any portion of such Limited Partner's interest in the Partnership.

11.17  Preferred Limited Partner:  Preferred Limited Partner shall have the meaning set forth in the SBA Annex.

11.18  Preferred Limited Partnership Interest:  Preferred Limited Partnership Interest shall have the meaning set forth in the SBA Annex.

11.19  Private Limited Partner:  Private Limited Partner shall have the meaning set forth in the SBA Annex.

11.20  Securities:  Securities of every kind and nature and rights and options with respect thereto, including stock, notes, bonds, debentures, evidences of indebtedness, and other business interests of every type, including interests in partnerships, joint ventures, proprietorships, and other business entities.

11.21  Securities Act:  The Securities Act of 1933, as amended.

11.22  Treasury Regulations:  Treasury Regulations shall be the Income Tax Regulations promulgated under the Code, as such Regulations may be amended from time to time (including corresponding provisions of succeeding Regulations).

11.23  Two-Thirds in Interest of the Limited Partners:  Limited Partners having Partnership Percentages the sum of which equals at least sixty-six and two-thirds percent (66-2/3%) of the aggregate Partnership Percentages of the Partners (excluding, for the purpose of calculating such requisite percentage, the Partnership Percentage of the General Partner, to the extent attributable to its General Partnership Interest, and the Partnership Percentage of any Optionor (as defined in Paragraph 3.5).

11.24  United States Person:  The meaning set forth in Section 7701(a)(30) of the Code.

ARTICLE XII

MISCELLANEOUS TAX COMPLIANCE PROVISIONS

12.1  Substantial Economic Effect.  The provisions of Article IV and the other provisions of this Agreement relating to the maintenance of Partnership Capital Accounts and procedures upon liquidation of the Partnership are intended to comply generally with the provisions of Treasury Regulation Section 1.704-1, and shall be interpreted and applied in a manner consistent with such Regulation and, to the extent the subject matter thereof is otherwise not addressed by this Agreement, the provisions of Treasury Regulations Section 1.704-1 are hereby incorporated by reference unless the General Partner shall determine that such incorporation will result in economic consequences inconsistent with the economic arrangement

of the partners expressed in this Agreement. In the event the General Partner shall determine that it is prudent to modify the manner in which the Partnership Capital Accounts, or any debits or credits thereto, are computed or allocated or the manner in which distributions and contributions upon liquidation (or otherwise) of the Partnership (or any partner's interest therein) are effected in order to comply with such Regulations and other applicable tax laws, or to assure that the Partnership is treated as a partnership for tax purposes, or to achieve the economic arrangement of the partners as expressed in this Agreement, then notwithstanding Paragraph 10.7 hereof, the General Partner may make such modification, provided that it is not likely to have more than an insignificant detrimental effect on the tax consequences and total amounts distributable to any Limited Partner pursuant to Articles VI and VIII as applied without giving effect to such modification. The General Partner shall also (i) make any adjustments that are necessary or appropriate to maintain equality between the Partnership Capital Accounts of the partners and the amount of Partnership capital reflected on the Partnership's balance sheet, as computed for book purposes pursuant to this Agreement, in accordance with Regulations Section 1.704-1(b)(2)(iv)(g), and (ii) make any appropriate modifications in the event unanticipated events (such as the incurrence of partner nonrecourse debt within the meaning of Treasury Regulation Section 1.704-2(b)(4)) might otherwise cause the allocations under this Agreement to not comply with Treasury Regulations Section 1.704-1(b) (and in the case of the incurrence of partner nonrecourse indebtedness, Treasury Regulation Section 1.704-2) provided in each case that the General Partner determines that such adjustments or modifications shall not result in economic consequences inconsistent with the economic arrangement among the partners as expressed in this Agreement.

        12.2    _Other Allocations_. Notwithstanding the provisions of Article IV and Paragraph 8.2(d), the allocations provided therein shall be subject to the following exceptions:

        (a)    _Qualified Income Offset; Prophylactic Offset Minimum-Gain Chargeback_. The following special allocations shall be made in the following order:

        (i)    Except as otherwise provided in Treasury Regulation Section 1.704-2(f), if there is a net decrease in Partnership Minimum Gain (as defined in Treasury Regulations 1.704-2(b)(2) and 1.704-2(d)) during any Partnership fiscal year, each partner shall be specially allocated items of Partnership income and gain for such year (and, if necessary, subsequent years) in an amount equal to such Partner's share of the net decrease in Partnership Minimum Gain, determined in accordance with Treasury Regulations Section 1.704-2(g). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each partner pursuant thereto. The items to be so allocated shall be determined in accordance with Treasury Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2). This paragraph 6.3(a) is intended to comply with the minimum gain chargeback requirement in Treasury Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

        (ii)    In the event any partner's Partnership Capital Account has an Unadjusted Excess Negative Balance (as defined in clause (viii) of this subparagraph (a)) at the end of any Fiscal Year such partner will be reallocated items of Net Income and Capital Transaction Gain for such Fiscal Year (and, if necessary, future Fiscal Years) in the amount necessary to eliminate such Unadjusted Excess Negative Balance as quickly as possible.

(iii)    In the event any partner unexpectedly receives any adjustments, allocations or distributions described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4) through (d)(6), items of Net Income and Capital Transaction Gain shall be specially allocated to such partner's Partnership Capital Account in an amount and manner sufficient to eliminate, to the extent required by Treasury Regulations Section 1.704-1(b)(2)(ii)(d), the Excess Negative Balance (as defined in clause (vii) of this subparagraph (a)) in such partner's Partnership Capital Account created by such adjustments, allocations or distributions as quickly as possible. This clause (iii) is intended to and shall in all events be interpreted so as to constitute a "qualified income offset" within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(d).

(iv)    A partner's Partnership Capital Account shall not be allocated any item of Net Loss or Capital Transaction Loss to the extent such allocation would cause such Partnership Capital Account to have an Excess Negative Balance (as defined in clause (vii) of this subparagraph (a)).

(v)    For any period (i) Nonrecourse Deductions (as defined in Treasury Regulations Section 1.704-2(b)(1)) that are treated as an item of Net Income or Loss shall be allocated to the partners as a component of such Net Income or Loss (and accordingly shall be allocated to the partners in the same proportion as such Net Income or Loss is allocated) and (ii) Nonrecourse Deductions (as defined in Treasury Regulations Section 1.704-2(b)(1)) that are treated as an item of Capital Transaction Gain or Loss shall be allocated to the partners as a component of such Capital Transaction Gain or Loss (and accordingly shall be allocated to the partners in the same proportion as such Capital Transaction Gain or Loss is allocated).

(vi)    Notwithstanding any provision of this Agreement to the contrary other than the foregoing provisions of this subparagraph (a), any allocations pursuant to this subparagraph (a) shall be taken into account as soon as possible in computing subsequent allocations, so that over the term of the Partnership the net amount of any items so allocated and the profit, gain, loss, income and expense and all other items allocated to each partner shall, to the extent possible, be equal to the net amount that would have been allocated to each such partner if such original allocations pursuant to this subparagraph (a) had not occurred. The General Partner shall have the discretion to effect allocations pursuant to this clause (vi) in such manner as the General Partner may deem appropriate to achieve the objective specified in the preceding sentence. In exercising its discretion under this clause (vi), the General Partner shall take into account future allocations under the foregoing provisions of this subparagraph (a) that, although not yet made, are likely to offset other allocations previously made thereunder.

(vii)    For purposes of this subparagraph (a), "Excess Negative Balance" shall mean the excess of the negative balance in a partner's Partnership Capital Account (computed with any adjustments which are required for purposes of Treasury Regulations Section 1.704-1(b)(2)(ii)(d)) over the amount such partner is obligated to restore to the Partnership (computed under the principles of Treasury Regulations Section 1.704-1(b)(2)(ii)(c)) inclusive of any addition to such restoration obligation pursuant to application of the provisions of Treasury Regulations Section 1.704-2 or any successor provisions thereto.

(viii)  For purposes of this subparagraph (a) "Unadjusted Excess Negative Balance" shall have the same meaning as Excess Negative Balance, except that the Unadjusted Excess Negative Balance of a partner shall be computed without effecting the reductions to such partner's Partnership Capital Account which are described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d).

(b)  Imputed Income. To the extent the Partnership has taxable interest income or expense imputed with respect to any promissory note or other obligation between any partner and the Partnership, as maker and holder respectively, pursuant to Section 483, Sections 1271 through 1288, or Section 7872 of the Code, such imputed interest income shall be specially allocated to the partner to whom such promissory note or other obligation relates, and such partner's Partnership Capital Account shall be adjusted as appropriate to reflect the recharacterization as interest of a portion of the principal amount of such promissory note or other obligation and to reflect any deemed contribution or distribution of such interest income. The foregoing provision of this Paragraph 12.2(b) shall not apply to any interest or original issue discount expressly provided for in any such promissory note or other obligation.

12.3  Income Tax Allocations.

(a)  Except as otherwise provided in this Paragraph or as otherwise required by the Code and the rules and Treasury Regulations promulgated thereunder, Partnership income, gain, loss, deduction, or credit for income tax purposes shall be allocated in the same manner the corresponding book items are allocated pursuant to this Agreement (including the SBA Annex).

(b)  In accordance with Code Section 704(c) and the Treasury Regulations thereunder, income, gain, loss and deduction with respect to any asset contributed to the capital of the Partnership shall, solely for tax purposes, be allocated between the partners so as to take account of any variation between the adjusted basis of such property to the Partnership for federal income tax purposes and its initial Book Value.

(c)  In the event the Book Value of any Partnership asset is adjusted pursuant to the terms of this Agreement, subsequent allocations of income, gain, loss and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as under Code Section 704(c) and the Treasury Regulations thereunder.

(d)  If a distribution to a Partner results in taxable income or gain to the Partnership, then such taxable income or gain shall be allocated, to the extent permitted pursuant to Section 704(b) of the Code and the regulations promulgated thereunder, to the Partner who received the distribution.

12.4  Compliance with Timing Requirements of Regulations.

(a)  Notwithstanding any other provision of this Agreement, in the event the Partnership is "liquidated" within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g), (i) distributions shall be made pursuant to Article VIII to the partners who have positive Partnership Capital Accounts in compliance with Treasury

Regulations Section 1.704-1(b)(2)(ii)(b)(2) and (ii) if the General Partner's Partnership Capital Account has a deficit balance (after giving effect to all contributions, distributions and allocations for all taxable years, including the year during which such liquidation occurs), the General Partner shall contribute to the capital of the Partnership the amount required pursuant to Paragraph 8.3 hereof. Except as set forth in the immediately preceding sentence, the General Partner shall have no obligation at any time to repay or restore to the Partnership all or any part of any distribution made to it from the Partnership in accordance with the terms of Articles VI or VIII or make any contribution to the capital of the Partnership with respect to such deficit and such deficit shall not be considered a debt owed to the Partnership or to any other Person for any purpose whatsoever. If any Limited Partner has a deficit balance in his Partnership Capital Account (after giving effect to all contributions, distributions and allocations for all taxable years, including the year during which such liquidation occurs), then other than required by law or Paragraph 10.14, such Limited Partner shall have no obligation to repay or restore to the Partnership any distribution made to it from the Partnership in accordance with Article VI or VIII or make any contribution to the capital of the Partnership with respect to such deficit, and such deficit shall not be considered a debt owed to the Partnership or to any other Person for any purpose whatsoever. In the discretion of the General Partner, a pro rata portion of the distributions that would otherwise be made to the partners pursuant to this Paragraph 12.4 or Article VIII may be:

(i)    distributed to a trust established for the benefit of the partners for the purposes of liquidating Partnership assets, collecting amounts owed to the Partnership, and paying any contingent or unforeseen liabilities or obligations of the Partnership arising out of or in connection with the Partnership. The assets of any such trust shall be distributed to the partners from time to time, in the reasonable discretion of the General Partner, in the same proportions as the amount distributed to such trust by the Partnership would otherwise have been distributed to the partners pursuant to this Agreement; or

(ii)    withheld to provide a reasonable reserve for Partnership liabilities (contingent or otherwise) and to reflect the unrealized portion of any installment obligations owed to the Partnership, provided that such withheld amounts shall be distributed to the partners as soon as practicable.

(b)    Notwithstanding the provisions of Paragraph 12.4(a), in the event the Partnership is liquidated within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g) but a distribution of the Partnership's assets is not otherwise required pursuant to Article VIII hereof, the Partnership's assets shall not be distributed to the partners as set forth in Paragraph 12.4(a) and the General Partner shall not contribute any amount to the Partnership with respect to any deficit balance in its Partnership Capital Account as set forth in Paragraph 12.4. Instead, the Partnership shall be deemed to have contributed all of its assets and liabilities to a new partnership and distributed interests in the new partnership to the Partners and thereafter such new partnership will be treated as the Partnership. Notwithstanding any provision of this Agreement to the contrary, in no event shall such deemed contribution and distribution affect the economic arrangement among the Partners as expressed in this Agreement (including, without limitation, their Partnership Capital Account balances or rights to receive distributions).

12.5   Recharacterizations of Transactions.  Any income, gain, loss or deduction (collectively, the "Recharacterization Items") realized as a direct or indirect result of the issuance (the "Issuance") of a Partnership interest by the Partnership to a partner or the recharacterization (the "Recharacterization") of a distribution as a payment for tax purposes shall be allocated among the partners so that (after effecting appropriate adjustments to the Partnership Capital Accounts of the partners to reflect the tax treatment of the Issuance or the Recharacterization) the aggregate amount (including any distributions recharacterized as payments for tax purposes and any amounts received upon liquidation of the Partnership) that each partner is entitled to receive from the Partnership over the life thereof (and each accounting period thereof) is equal to the aggregate amount that each such partner would have been entitled to receive had the Issuance resulted in no income, gain, loss or deduction to either the Partnership or any of its partners (including the recipient of the Partnership interest) or had the Recharacterization not occurred, as the case may be.  In addition, to the extent possible without contravening the preceding sentence, the Recharacterization Items shall be allocated in a manner that puts each partner, as soon as possible, in the same after-tax position as they would have been in had the Issuance resulted in no income, gain, loss or deduction to either the Partnership or any of its partners (including the recipient of the Partnership interest) or had the Recharacterization not occurred, as the case may be.  In no event shall the provisions of this Paragraph 12.5 be interpreted so as to alter in any manner the amount that a Preferred Limited Partner is entitled to receive pursuant to the SBA Annex.

12.6   Sharing Arrangement; Interest in Partnership Items.  The Partners agree that the allocation and distribution provisions contained in this Agreement (including, without limitation, the SBA Annex) represent the sharing arrangement as between the Partners and represent their interests in such allocated items and, therefore, in the event that any transaction or relationship between the parties to this Agreement is recharacterized, allocations and adjustments hereunder shall be made in a manner which maintains the Partnership Capital Account balances of the Partners and the rights of the Partners to receive distributions at the same levels they would have been had no such recharacterization occurred.  Accordingly, among other things, in the event the allocations of Net Income or Loss or Capital Transaction Gain or Loss, or items thereof, pursuant to Article IV and Paragraph 8.2(d) or any other provision of this Agreement are reallocated among the partners by the Internal Revenue Service for any reason, such reallocation shall have no effect on the distributions to the Partners pursuant to Paragraph 8.1 and 12.4 and the partners shall receive distributions pursuant to Paragraphs 8.1 and 12.4 based solely upon final Partnership Capital Account balances resulting from allocations as determined without regard to any Internal Revenue Service reallocation.

12.7   Withholding.  The Partnership shall at all times be entitled to make payments with respect to any Partner in amounts required to discharge any obligation of the Partnership to withhold or make payments to any governmental authority with respect to any federal or state, tax liability of such Partner arising as a result of such Partner's interest.  To the extent each such payment satisfies an obligation of the Partnership to withhold with respect to any distribution to a Partner on which the Partnership did not withhold or with respect to any Partner's allocable share of the income of the Partnership, each such payment shall be deemed to be a loan by the Partnership to such Partner (which loan shall be deemed to be immediately due and payable) and shall not be deemed a distribution to such Partner.  The amount of such payments made with respect to such Partner, plus interest at an interest rate per annum equal to

the prime rate, from time to time in effect, of the Bank of California, San Francisco, California, on each such amount from the date of each such payment until such amount is repaid to the Partnership shall be repaid to the Partnership by (i) deduction from any distributions made to such Partner pursuant to this Agreement or (ii) earlier payment by such Partner to the Partnership, in each case as determined by the General Partner in its discretion. The General Partner may, in its discretion, defer making distributions to any Partner owing amounts to the Partnership pursuant to this Paragraph 12.7 until such amounts are paid to the Partnership and shall in addition exercise any other rights of a creditor with respect to such amounts. Each Partner agrees to indemnify the Partnership and the General Partner and each of the members of the General Partner, for any liability incurred for taxes, interest or penalties which may be asserted by reason of the failure to deduct and withhold tax on amounts distributable or allocable to said Partner. Any amount payable hereunder by a Partner shall be paid promptly to the Partnership upon request for such payment from the General Partner, and if not so paid, the General Partner and the Partnership shall be entitled to claim against and deduct from the Partnership Capital Account of, or from any distribution due to, the affected Partner for all such amounts.

IN WITNESS WHEREOF, the Partners have agreed to and executed this Agreement as of the date first above written.

GENERAL PARTNER:

Aspen Venture Management III, L.L.C.

By    _____

Alexander P. Cilento, Managing Member

By    _____

E. David Crockett, Managing Member

By    _____

Thaddeus J. Whalen, Managing Member

LIMITED PARTNER:

_Pauline Lo Alker_

Type or Print Name of Limited Partner

Social Security #

Taxpayer I.D. Number: 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

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        _X_ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        _X_ No

By: _Pauline Lo Alker_

Title: _President, CEO  Amplify.net, Inc._

Capital Commitment: _$100,000.00_

LIMITED PARTNER:

_JAMES G. BASS_
Type or Print Name of Limited Partner

Taxpayer I.D. Number: _542 38 4193_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        _X_ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        _X_ No

By: _James M Bass_

Title: _____

Capital Commitment: _$60,000_

LIMITED PARTNER:

_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number:_____

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

    _____ Yes    _____ No

    (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

    _____ Yes    _____ No

By:_____

Title:_____

Capital Commitment:_____

LIMITED PARTNER:

_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number:_____

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes          _____ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes          _____ No

By:_____

Title:_____

Capital Commitment:_____

LIMITED PARTNER:

THE VALERIE COOK GARDENER TRUST DATED 7/25/97

Type or Print Name of Limited Partner

Taxpayer I.D. Number: 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

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        ___ No

(ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes.       ✓ No

By: Valerie Al Carp Sr, TRUSTEE

Title: TRUSTEE, THE VALERIE COOK CARDENER TRUST DATED 7/25/97

Capital Commitment: $100,000

LIMITED PARTNER:

_R. J. Ch_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number:  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

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes_____ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes_____ No

By:_____

Title:_____

Capital Commitment:  $500,000

GDSVF&H\107709.10

LIMITED PARTNER:

_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number:_____

The undersigned hereby executes this
Agreement on behalf of the Limited Partner and
represents as follows:

    (i)  Is such Limited Partner (a) an
"employee benefit plan," as defined in
Section 3(3) of ERISA, (b) a plan described in
Section 4975(e)(1) of the Internal Revenue
Code of 1986, as amended, or (c) an entity
whose underlying assets include plan assets by
reason of a plan's investment in such Limited
Partner?

    _____ Yes    _____ No

    (ii)  Is such Limited Partner (a) an
employee benefit plan subject to Part 4 of
Subtitle B of Title I of ERISA or (b) an entity
whose underlying assets are considered "plan
assets" of an employee benefit plan which is
subject to Part 4 of Subtitle B of Title I of
ERISA and which invested in such entity?

    _____ Yes    _____ No

By:_____

Title:_____

Capital Commitment:_____

LIMITED PARTNER:

_____

Type or Print Name of Limited Partner

Taxpayer I.D. Number: *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*

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

    _____ Yes     _____ No

    (ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

    _____ Yes     _____ No

By: _____

Title: _____

Capital Commitment: *$250,000*

Signature Page to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

*COMPU DATA , INC*

Type or Print Name of Limited Partner

Taxpayer I.D. Number: *77 - 0225877*

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        $\sqrt{}$ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        $\sqrt{}$ No

By: _____ *ROGER KOO*

Title: *PRESIDENT*

Capital Commitment: $ *1 MILLION*

LIMITED PARTNER:

_Robert L. Corey_
Type or Print Name of Limited Partner

Taxpayer I.D. Number: 556 - 50 - 8347

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

   (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes          ✓ No

   (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes          ✓ No

By: _____

Title: _____

Capital Commitment: $100,000

LIMITED PARTNER:

*E DAVID CROCKETT AND*
*ANN RAE CROCKELT, CO-TRS*
*CROCKETT LIVING TR UTD MAY 24, 1991*
Type or Print Name of Limited Partner

Taxpayer I.D. Number: *521- 50 -871 5*

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

    (i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

    \_\_\_\_\_ Yes    \_\_\_\_\_ No

    (ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

    \_\_\_\_\_ Yes    \_\_\_\_\_ No

By:_____

Title:_____

Capital Commitment:_____

Signature Page to Aspen Ventures III, L.P. Agreement

LIMITED PARTNER:

*CrossFire Ventures, LLC*

Type or Print Name of Limited Partner

Taxpayer I.D. Number: *77-0495332*

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i) Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        ___✓___ No

(ii) Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        ___✓___ No

By: *John D Dunning*

Title: *General Partner*

Capital Commitment: *250,000*

LIMITED PARTNER:

_William J. Del Biaggio III_
Type or Print Name of Limited Partner

Taxpayer I.D. Number: _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_

The undersigned hereby executes this Agreement on behalf of the Limited Partner and represents as follows:

(i)  Is such Limited Partner (a) an "employee benefit plan," as defined in Section 3(3) of ERISA, (b) a plan described in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, or (c) an entity whose underlying assets include plan assets by reason of a plan's investment in such Limited Partner?

_____ Yes        ✓___ No

(ii)  Is such Limited Partner (a) an employee benefit plan subject to Part 4 of Subtitle B of Title I of ERISA or (b) an entity whose underlying assets are considered "plan assets" of an employee benefit plan which is subject to Part 4 of Subtitle B of Title I of ERISA and which invested in such entity?

_____ Yes        ✓___ No

By: _____

Title: _____

Capital Commitment: _300,000___