EXHIBIT E

## Summary of Key Terms

### Redleaf Group, Inc. Investment in Aspen Ventures III, L.P.

| | |
|---|---|
| **Transaction Overview** | Aspen Ventures III, L.P. ("Aspen") currently operates as a small business investment company ("SBIC") managed by Aspen Venture Management III, L.L.C. (the "General Partner"). In the proposed transaction, |

- the limited partnership agreement of Aspen will be amended to divide Aspen into two distinct portfolios, one consisting of its current assets and liabilities (the "Old Fund") and the other consisting of new investments to be made with Redleaf's investments and those of any other limited partners in the New Fund (together with leverage provided by the SBA) (the "New Fund");

- the General Partner will itself be divided into two series, one generally responsible for management of the Old Fund (the "Old Fund GP") and the other generally responsible for management of the New Fund (the "New Fund GP");

- Messrs. Kohler and Mahaffey will be admitted as managing members of the New Fund GP, each with a 25% economic and voting interest (including a corresponding share of the New Fund GP's carried interest in the New Fund); and

- the New Fund will leverage funds contributed by its limited partners with funds made available through the SBA.

**Legal Structure**     Redleaf funds will be invested into the New Fund, which will be a newly created series of Aspen Ventures III, L.P., a Delaware limited partnership. Redleaf will initially be the sole non-SBA limited partner.

Under Delaware law, a limited partnership may be divided into two or more series, each of which may have distinct sets of assets, liabilities and interest holders. A limited partnership agreement may provide that one series will not be liable for any liabilities of another series. However, the laws and regulations applicable to the Old Fund and the New Fund as SBICs provide for cross-liability between

Confidential Treatment Requested by K&L Gates

these series under certain circumstances.

**Fund Size**   The New Fund will attempt to raise $20 million to $40 million in private investment funds, of which up to $20 million will consist of Redleaf's capital commitment. As an approved SBIC, these private investment funds are expected to be leveraged by SBA funds at a ratio of two dollars in SBA funds to each dollar in private investment funds.

- SBA funds carry an annual simple interest rate, currently 6%, which varies;
- SBA funds receive only 12% of the profits earned by the fund, with the balance of the profits going to the LP's;
- There is an origination fee and fund fee equaling 3% of the leverage paid up front.

**Investment Objectives**   The New Fund's stated investment objectives will be to invest in multi-stage private technology start-ups and roll-ups to achieve superior shareholder return for its Limited Partners. The parties anticipate that the New Fund may also consider investments in selected portfolio companies of Redleaf Group and Aspen Ventures to achieve greater maturity and a faster path to liquidity, but will not be under a contractual commitment to do so. In general, (a) investments in companies that are not currently portfolio companies of the Old Fund will be deemed to be investments of the New Fund and (b) follow-on investments in current portfolio companies of the Old Fund will be made by the Old Fund, although the General Partner may, in its sole discretion, allocate all or any portion of such a follow-on investment to the New Fund. (See "General Partner—Decisions by Fund GP" below for a summary of how such decisions would be made by the General Partner.)


Redacted

2

Confidential Treatment Requested by K&L Gates

RLG-000434

| | |
|---|---|
| **Capital Calls** | The initial limited partners of the New Fund will contribute 20% of their capital commitment to the New Fund as of its initial closing. Except as approved by holders of 2/3 or more of the limited partnership interests in the New Fund, no more than 50% of a limited partner's aggregate capital commitment to the New Fund would be required to be contributed prior to the first anniversary of the formation of the New Fund. |
| **Allocation of SBA Leverage** | SBA leverage of the Old Fund outstanding prior to creation of the New Fund will be allocated to the Old Fund. New leverage will be allocated between the New Fund and the Old Fund as determined in good faith by the managing members of the New Fund GP and the managing members of the Old Fund GP. |
| **Cross-Collateralization of the New Fund and the Old Fund** | Although the New Fund and the Old Fund are generally treated under Delaware law as if they were separate entities, under certain circumstances the New Fund may be required to make payments to the SBA that relate to leverage allocated to the Old Fund (and the Old Fund may have similar obligations in respect of leverage allocated to the New Fund). When this happens, the payment from New Fund (or Old Fund, as the case may be) assets will be treated as a non-recourse loan to the other fund. |
| **Distributions** | Partners of the New Fund are entitled to annual mandatory distributions of net operating income (although it is unclear what would constitute such operating income). In addition, partners of the New Fund are entitled, to the extent cash is available, to mandatory distributions of estimated taxes on such partner's allocated share of the net income and gain of the New Fund to the extent of available cash of the New Fund. Discretionary distributions are also permitted, as determined by the New Fund GP and to the extent permitted by applicable laws and regulations.<br><br>Redleaf management anticipates that, subject to board approval and compliance with applicable law, any such cash [or in-kind] distributions to Redleaf would be disbursed as a dividend to Redleaf stockholders and would not be retained or reinvested by Redleaf. |

: : : : : Redacted : : : : :

Confidential Treatment Requested by K&L Gates

RLG-000435

Case 5:07-cv-05350-JW   Document 66-10   Filed 05/19/2008   Page 5 of 7



Redacted

**Term of Fund**  The New Fund will terminate on December 31, 2010, unless earlier terminated pursuant to the terms of its governing documents.



Redacted

**General Partner**

*Legal structure*  The New Fund will be managed the New Fund GP, a newly organized series of the General Partner, which is a Delaware limited liability company. Ownership interests in the New Fund GP will initially consist of an aggregate 50% interest held by certain current members of the GP, a 25% interest held by John Kohler and a 25% interest held by Lloyd Mahaffey.



Redacted

*Decisions by Fund GP*  Generally, decisions of the New Fund GP in respect of the New Fund will require approval by a majority in interest of the managing members of the New Fund GP. As a result, Messrs. Kohler and Mahaffey acting jointly would enjoy a veto on most decisions of the New Fund GP, but would not be able to compel any action (including investments by the New Fund in Redleaf portfolio companies) without the support of at least one other management member of the New Fund. Actions in respect of the New Fund that affect the Old Fund would require approval by both a majority of the managing members of the New Fund GP and a majority of the managing members of the Old Fund GP.



Redacted

4

Confidential Treatment Requested by K&L Gates

RLG-000436



| | |
|---|---|
| *Carried Interest* | The Old Fund's limited partnership agreement provides for the General Partner to have an industry standard carry of 20%. The proposed transaction contemplates that the effective carried interest of the New Fund GP will be reduced by an amount which mirrors the proportion of Redleaf funds invested to total funds invested in, and leverage received by, the New Fund. |
| | As noted above, initially approximately 1/3 of the funds available to the New Fund are expected to be Redleaf funds and the remaining 2/3 are expected to be leverage. Thus, the New Fund GP will have a carried interest in the New Fund equal to the standard carry of 20% multiplied by a percentage equal to (a) 100% minus (b) 33.33% times a fraction, the numerator of which is the Redleaf funds committed to the New Fund and the denominator of which is the total private funds committed to the New Fund. Thus, assuming that Redleaf funds are the only private funds committed to the New Fund, the carried interest of the New Fund GP will be approximately 13 1/3%, of which one-half will be allocable to Messrs. Kohler and Mahaffey. The carried interest will increase as additional limited partners are admitted. |



5

Confidential Treatment Requested by K&L Gates

RLG-000437

| | |
|---|---|
| *Management Fee* | The New Fund GP is to be paid, quarterly, a fee equal to (a) 0.625% of the New Funds drawn down by the New Fund times (b) the result obtained by subtracting from 100% the product of 33 1/3 % and a fraction, the numerator of which is the Redleaf funds committed to the New Fund and the denominator of which is the total private funds committed to the New Fund. Thus, assuming that Redleaf funds are the only private funds committed to the New Fund, the management fee would equal 1.67% on an annual basis. |
| *Capital Contribution of Fund GP* | The New Fund GP will contribute an amount equal to 1 1/99 % of the aggregate private capital contributed to the New Fund, and will be subject to call-downs *pari passu* with the limited partners of the New Fund. Messrs. Kohler and Mahaffey will, in turn, be required to fund one-half of each such contribution by the New Fund GP. |

Confidential Treatment Requested by K&L Gates

RLG-000438