EXHIBIT G

FW: Letter to Aspen LPs                                                Page 1 of 1

**Jim Cummins**

**From:** Thad Whalen [twhalen@aspenventures.com]
**Sent:** Monday, March 04, 2002 11:48 AM
**To:** mtomana@redleaf.com
**Subject:** FW: Letter to Aspen LPs

Mike,

Here is the cover letter I want to send to our limited partners with the amendment. Please take a look and let me know if you see any inaccuracies. Pay particular attention to the "New Managers" section on page 1 and the last page (Exhibit A) which both contain information about Redleaf, John and Lloyd.

Thanks,

Thad

-----Original Message-----
From: Kevin Lucas [mailto:KLucas@gunder.com]
Sent: Wednesday, February 27, 2002 2:37 PM
To: Thad Whalen (E-mail)
Cc: Robert Specker
Subject: Letter to Aspen LPs

　　Thad -

　　Per your comments, attached is a final version of the letter for
the
Aspen III LPs. Please let us know if we can be of further help.

　　Kevin

<<421750_5.DOC>>

3/8/2007

Confidential Treatment Requested by K&L Gates                                RLG-000675

February __, 2002

*CONFIDENTIAL*

TO THE LIMITED PARTNERS OF
ASPEN VENTURES III, L.P.

Dear _____:

I'm pleased to announce that Aspen Ventures III is preparing to accept a $15 million investment from the Redleaf Group. This investment, together with SBA leverage of approximately $30 million will form a new fund, Aspen III-B. Our existing limited partners will also be invited to participate, and I look forward to discussing this opportunity with each you in the coming weeks.

In connection with forming Aspen III-B, we are making important changes at Aspen Ventures. **These changes require the approval of the limited partners of Aspen III, so please read this letter and the attached First Amendment to the Aspen III Limited Partnership Agreement carefully (see Exhibit A), and if you approve, sign and return the attached Amendment. Your prompt attention to this matter is greatly appreciated.**

New Managers

John Kohler and C. Lloyd Mahaffey of the Redleaf Group will be joining Aspen Ventures as additional full-time managing members for the new fund. John and Lloyd founded the Redleaf Group in 1998, and have a combined 12 years experience in venture capital, and 37 years of operating experience in high-technology companies. Redleaf's investors include Safeguard Scientifics, Mellon Ventures, GE Capital Equity Holdings, Silicon Valley Bank, Hewlett Packard and Novell. John has led investments in Netscape and NetGravity, and serves on the boards of Lumicyte and Semio Corporation among others. Lloyd has led investments in WebTV and VeriSign, and serves on the boards of Amperion and RedSiren among others.

I have had the pleasure of working with each of them over the years, and I'm thrilled that they are joining Aspen Ventures. Together with Alex Cilento, David Crockett and myself, I believe the Aspen management team has the expertise and experience to capitalize on today's tremendous market for early and seed-stage technology investing. I've attached additional biographical information about John and Lloyd for your information.

New Fund

The new fund is being formed as a separate class of partnership interests within Aspen III. Current limited partners will be "Series A Limited Partners" in fund "Aspen III-A," and new limited partners will be "Series B Limited Partners" in fund "Aspen III-B."

Confidential Treatment Requested by K&L Gates

RLG-000676

Aspen III-A and Aspen III-B will generally be operated as separate partnerships within the Aspen III limited partnership entity. The current Aspen III portfolio companies will continue to be owned by the existing Series A Limited Partners and general partner in the same percentages as today. New investments made on behalf of the Series B Limited Partners will be owned by the Series B Limited Partners and general partner. To accommodate the fund's new capital, the term of the partnership will be extended by two years (to December 2010).

Generally speaking, the provisions of the Aspen III Partnership Agreement will apply separately to the Series A Limited Partners and the Series B Limited Partners. For example, except as otherwise set forth in the Amendment:

(i) capital calls will be made separately with respect to each series;

(ii) allocations of capital transaction gain or loss and net income or loss will be made separately with respect to each series as though they were separate partnerships;

(iii) distributions will be made to the general partner and the limited partners of each series solely from the assets of such series;

(iv) the management fee with respect to a series will be based solely on the regulatory capital of such series; and

(v) any matters subject to a vote of limited partners that affect only a particular series will require the vote of only the limited partners of such series.

Although we have sought to achieve, wherever possible, strict parallel treatment of the interests of Aspen III-A and Aspen III-B, adjustments will necessarily be made in certain instances.

With regard to SBA leverage, any current outstanding leverage will be leverage associated with Aspen III-A. With respect to future leverage, the General Partner will have discretion to determine whether such leverage is properly allocable to Aspen III-A or Aspen III-B based on how the proceeds of such leverage are utilized (e.g., whether such leverage is utilized to purchase Aspen III-A assets or Aspen III-B assets).

With regard to allocations of capital transaction gain or loss and net income or loss, the general partner will allocate such items with respect to a particular series only to the limited partners of such series, and each limited partner of a series will receive the same amount of allocations of such items as such limited partner would have received if the other series did not exist (the "Target Allocations"). However, items of net profit or loss may be allocated to the SBA pursuant to provisions of the SBA Annex. To the extent that any items of capital transaction gain or loss and net income or loss of one series are allocated to the SBA with respect to leverage attributable to the other series, any such subsequent items of the benefited series will be allocated to the limited partners of the disadvantaged series in such a manner so as to, as quickly as possible, cause the

2

Confidential Treatment Requested by K&L Gates

RLG-000677

cumulative allocations received by each limited partner of each series from all sources to equal such limited partner's Target Allocations. Further, the general partner will have discretion to vary the allocations from those described above so as to ensure, to the maximum extent possible, that the capital account balance of each limited partner of a series is at the same level as it would have been if the other series did not exist.

We intend that all distributions to the limited partners of one series will be made solely from the assets of such series, and that each limited partner of a series will receive the same amount of distributions as such limited partner would have received if the other series did not exist. However, the Aspen III partnership, including Aspen III-A and Aspen III-B, will be treated as a single entity in the eyes of the SBA. If a distribution is made to the limited partners of one series, we may be required to make a distribution to the SBA. To the extent that any such distribution to the SBA is made out of the assets of one series with respect to leverage attributable to another series, the amount of assets of the disadvantaged series so utilized will be deemed to be a non-recourse advance, payable only out of the assets of the benefited series, if any (the "Distribution Advance Amount"). In the event that a Distribution Advance Amount exists at any point in time, subsequent distributions from the assets of the benefited series will be made first to the disadvantaged series in amounts so as to, as quickly as possible, offset any outstanding Distribution Advance Amounts (plus interest on such amounts at an annual rate 7%). We cannot assure you that there will be sufficient assets to satisfy any outstanding Distribution Advance Amounts, and any resulting loss from such failure to satisfy such amounts will be taken into account in determining the net income or net loss of the disadvantaged series. Moreover, the general partner will have discretion to repay any outstanding leverage, whether such outstanding leverage is associated with Aspen III-A or Aspen III-B, prior to making any distributions to the limited partners.

In connection with the establishment of two different series of limited partnership interests, the general partner entity will also be divided into two sets of interests within the same entity. Alex, David and I will manage the Aspen III-A interests, and the same group, with the addition of John and Lloyd, will manage Aspen III-B interests.

Risks

Notwithstanding the division of Aspen III into two distinct series of interests, the SBA will treat the partnership, including Aspen III-A and Aspen III-B, as a single entity. This means that the SBA will have the right to satisfy liabilities associated with leverage against either series, regardless of the fact that the general partner and the limited partners view such liabilities as belonging to a particular series. In short, the SBA will have the right to seek Aspen III-A assets in order to satisfy Aspen III-B leverage liabilities, thereby potentially reducing Aspen III-A returns or delaying the distribution of such returns to the Series A Limited Partners (and vice versa).

In addition, Aspen III-B assets may be used to support follow-on investments in Aspen III-A portfolio companies, and these investments will involve an inherent conflict of interest. As with all successive rounds of private equity financing, the interests of the later investors can be at odds with those of the earlier investors. In today's financing

3

Confidential Treatment Requested by K&L Gates

RLG-000678

environment, later investors often seek terms that can have material adverse effects on the investments of earlier investors. We cannot assure you that follow-on investments in Aspen III-A portfolio companies, negotiated by the Aspen III-B managing members, will be in the best interests of existing Aspen III-A investments.

Moreover, there can be no assurance that any Aspen III-B funds will be used to support Aspen III-A portfolio investments. While we intend to take advantage of opportunities to selectively support existing investments, such opportunities may not avail themselves on terms acceptable to the Aspen III-B managing members.

Benefits

The addition of John and Lloyd will add tremendous depth to the Aspen Ventures management team. I believe that Aspen Ventures will be well positioned to capitalize on the tremendous early and seed-stage high-tech investment opportunities today. The changes we are implementing will enable Aspen Ventures to invest in this robust market, and to offer existing Aspen Ventures limited partners an opportunity to participate.

Further, the addition of Redleaf capital and increased SBA leverage will enable Aspen Ventures to support, where appropriate, existing Aspen Ventures III portfolio companies. Support from Aspen Ventures may be critical to the success of promising companies in the Aspen Ventures portfolio, thereby potentially benefiting both Aspen III-A and Aspen III-B investors. Without additional capital in Aspen Ventures, promising Aspen Ventures III portfolio companies could fail, resulting in losses to our existing Aspen III investors.

Required Approval

The Amendment must be approved by the general partner and limited partners holding partnership percentages equal to at least two-thirds in interest of all limited partners. The general partner has approved the Amendment and we recommend that the limited partners also approve the Amendment.

Actions Requested

**Please carefully review and execute the attached Amendment (Exhibit A). Fax a copy of the executed Amendment on or before Friday, March 8, 2002 using the enclosed fax cover sheet, and return your original executed Amendment by mail in the enclosed envelope.**

General questions regarding the Amendment should be directed to Thad Whalen at (650) 917-5670. Questions regarding the specific contents of the Amendment and other questions of a legal nature may be directed to Steve Franklin of Gunderson Dettmer at (650) 321-2400.

Yours truly,

Confidential Treatment Requested by K&L Gates

RLG-000679

---
Thaddeus J. Whalen

5

Confidential Treatment Requested by K&L Gates

RLG-000680

## EXHIBIT A

Partnership Amendment

A-1

Confidential Treatment Requested by K&L Gates

RLG-000681

## Redleaf Group, Inc.

Redleaf is a technology operating company that provides services and capital for pre-seed and seed-stage technology companies. Leveraging its network of people and resources, Redleaf provides its partner companies with market access, strategic counsel and operational support from a team of seasoned professional managers whose specialties include finance, engineering, product development, systems integration, marketing and human capital management. Redleaf is located in key technology centers, throughout the United States.

In selecting partner companies, Redleaf looks for those companies with the potential to be market leaders in very large and developing markets. By creating a closely integrated group of partner companies that have the potential to be dominant in their respective markets, Redleaf is developing a platform that leverages the collective domain knowledge of the entire network. For more information, see www.redleaf.com.

### Principals

*John Kohler*

John brings over 26 years of technology industry and business experience to Redleaf. He has been heavily involved in technology product formation and has been concentrating on Internet startups since 1994. John's background includes twelve years of executive level positions in sales operations, product division general management and worldwide customer support organizations at Hewlett Packard, Convergent Technologies/Unisys and Silicon Graphics. He was one of the founding executives at Netscape Communications. John is currently chairman of the board at RedCreek Communications and on the board of Internet startups Lumicyte, Semio Corporation, Startups.com and Wireless OnLine. John received his bachelor's degree from UCLA and has served on advisory committees to the U.S. Department of Commerce and the Council on Foreign Relations.

*C. Lloyd Mahaffey*

Lloyd is a seasoned high tech executive who brings 23 years of proven sales, marketing and operating experience spanning both the public and private business sectors. Prior to Redleaf, he served as senior vice president and chief operating officer at VeriFone where he was responsible for developing global Internet payment and smart card solutions for Microsoft, Netscape and Oracle. He also led VeriFone's strategic investments in both WebTV and Verisign. In 1997, Lloyd was responsible for the company's acquisition by Hewlett Packard for $1.3 billion. Before VeriFone, he served as chairman of Dynamis Group, a Washington-based international consulting firm whose clients included IBM, Kodak, Motorola and Highway 1. Earlier, he spent many years at Apple Computer holding a variety of senior executive positions including regional manager, Southeastern United States; general manager, Apple Education; and general manager, Apple Federal Systems Group. Lloyd is a director on the board of Moai Technologies. He is a 1978 honor graduate from The Citadel, The Military College of South Carolina.

Confidential Treatment Requested by K&L Gates

RLG-000682