**<u>EXHIBIT 4</u>**

ASPEN VENTURES MANAGEMENT III, L.L.C.

SECOND AMENDED AND RESTATED

LIMITED LIABILITY COMPANY AGREEMENT

August 20, 1999

# TABLE OF CONTENTS

Page

ARTICLE I  ORGANIZATION .................................................................................... 1
    1.1  Formation ................................................................................................ 1
    1.2  Name ....................................................................................................... 1
    1.3  Offices ..................................................................................................... 1
    1.4  Purpose .................................................................................................... 1
    1.5  Term ........................................................................................................ 1
    1.6  Members .................................................................................................. 2
    1.7  Admission, Expulsion, and Transfer ...................................................... 2

ARTICLE II  DEFINITIONS ..................................................................................... 3
    2.1  Accounting Period .................................................................................. 3
    2.2  Act .......................................................................................................... 3
    2.3  Affiliate .................................................................................................. 3
    2.4  Agreement ............................................................................................... 3
    2.5  Assignee Interest .................................................................................... 3
    2.6  Bankrupt .................................................................................................. 3
    2.7  Book Value .............................................................................................. 4
    2.8  Capital Account ...................................................................................... 5
    2.9  Code ........................................................................................................ 6
    2.10  Death ..................................................................................................... 6
    2.11  Dissolution Event ................................................................................. 6
    2.12  Fiscal Quarter ....................................................................................... 6
    2.13  Fiscal Year ............................................................................................ 6
    2.14  Former Member .................................................................................... 6
    2.15  Fund ...................................................................................................... 6
    2.16  Fund Agreement .................................................................................... 6
    2.17  Fund Contribution ................................................................................. 6
    2.18  LLC Percentage .................................................................................... 7
    2.19  Majority in Interest of the Managing Members .................................... 7
    2.20  Managing Members ............................................................................... 7
    2.21  Members ................................................................................................ 7
    2.22  Parallel Funds ....................................................................................... 7
    2.23  Profit or Loss ........................................................................................ 7
    2.24  Regulations ........................................................................................... 8
    2.25  Retirement ............................................................................................. 8
    2.26  Securities .............................................................................................. 8
    2.27  Term Percentage ................................................................................... 8
    2.28  Transfer ................................................................................................. 8

ARTICLE III MANAGEMENT ..................................................................................9
    3.1  Management by Managing Members ...............................................................9
    3.2  Authority of Managing Members ....................................................................9
    3.3  Approval of a Majority in Interest of Managing Members............................9
    3.4  Differences Among Members .......................................................................10
    3.5  Duties of the Members..................................................................................10
    3.6  Restrictions on the Members .......................................................................10

ARTICLE IV CAPITAL ACCOUNTS ....................................................................11
    4.1  Capital Account ...........................................................................................11
    4.2  Capital Contributions ..................................................................................11
    4.3  Sharing of Lookback Liability to the Funds ...............................................11
    4.4  Limitation on Liability of the Members.......................................................12

ARTICLE V NONCONTRIBUTING MEMBERS AND FORMER MEMBERS .......14
    5.1  Noncontributing Members and Former Members ......................................14
    5.2  Option to Purchase......................................................................................14
    5.3  Price ............................................................................................................14
    5.4  Manner of Exercise .....................................................................................15
    5.5  Payment.......................................................................................................15
    5.6  Additional Contributions ............................................................................15
    5.7  LLC Option to Repurchase .........................................................................15
    5.8  Third Parties................................................................................................16
    5.9  Conversion to Assignee Interest; Other Adjustments .................................16

ARTICLE VI ALLOCATIONS .................................................................................16
    6.1  Allocations of Profit and Loss ....................................................................16
    6.2  Income Tax Distributive Shares....................................................................17

ARTICLE VII DISTRIBUTIONS .............................................................................18
    7.1  Withdrawals by Members ............................................................................18
    7.2  Distributions of Fund Interests and Assets .................................................18
    7.3  Other Distributions......................................................................................18
    7.4  Limitation on Distributions..........................................................................18
    7.5  Payment of Salaries and Bonuses ..............................................................18

ARTICLE VIII FORMER MEMBERS......................................................................19
    8.1  Conversion to Assignee Interest .................................................................19
    8.2  Effect of Becoming a Former Member ........................................................19

ARTICLE IX EXPENSES .........................................................................................21
    9.1  Organizational Expenses.............................................................................21
    9.2  Operating Expenses ....................................................................................21
    9.3  Salaries and Bonuses..................................................................................21

ARTICLE X DISSOLUTION ..................................................................................21
   10.1 Continuance of LLC Upon a Dissolution Event ............................................21
   10.2 Dissolution at Election of Members ..............................................................22
   10.3 Dissolution Procedures ..................................................................................22
   10.4 Payments in Liquidation ................................................................................23

ARTICLE XI REPORTS AND FINANCIAL ACCOUNTING ................................24
   11.1 Financial Records ..........................................................................................24
   11.2 Valuation ........................................................................................................24
   11.3 Annual Reports ..............................................................................................24

ARTICLE XII MISCELLANEOUS ...........................................................................24
   12.1 Addresses .......................................................................................................24
   12.2 Amendment ....................................................................................................24
   12.3 Arbitration ......................................................................................................25
   12.4 Binding Agreement; Law Governing .............................................................25
   12.5 Counterparts ...................................................................................................25
   12.6 Entire Agreement; Captions ...........................................................................25
   12.7 Exculpation by Members ...............................................................................25
   12.8 Indemnification ..............................................................................................26
   12.9 Interest ...........................................................................................................27
   12.10 LLC Name; Goodwill ...................................................................................27
   12.11 Loans .............................................................................................................27
   12.12 Notice ............................................................................................................28
   12.13 Power of Attorney .........................................................................................28
   12.14 Variation of Pronouns ...................................................................................28
   12.15 Waiver of Accounting Upon Death ..............................................................28
   12.16 Counsel to the LLC .......................................................................................28

ARTICLE XIII TAX COMPLIANCE PROVISIONS ................................................29
   13.1 Substantial Economic Effect ..........................................................................29
   13.2 Other Allocations ...........................................................................................29
   13.3 Compliance with Timing Requirements of Regulations .................................31
   13.4 Sharing Arrangement; Interest in LLC Items ................................................33
   13.5 Withholding ....................................................................................................33

## SCHEDULES AND EXHIBITS

SCHEDULE A     Name, Address, and LLC Percentages of the Members

EXHIBIT A     Form of Promissory Note to be Delivered to an Optionor by an Optionee

EXHIBIT B     Form of Security Agreement to be Delivered to an Optionor by an Optionee

ASPEN VENTURES MANAGEMENT III, L.L.C.

SECOND AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

SECOND AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT entered into pursuant to the Act, effective as of August 20, 1999, by and among Alexander P. Cilento ("Mr. Cilento"), E. David Crockett ("Mr. Crockett") and Thaddeus J. Whalen ("Mr. Whalen") as Managing Members, each having duly executed this Agreement or a counterpart intending to be legally bound by the following terms and conditions;

WHEREAS, the Managing Members desire to amend and restate that certain Amended and Restated Limited Liability Company Agreement of Aspen Ventures Management III, L.L.C.,(the "LLC") dated as of January 15, 1999, as amended.

NOW THEREFORE, the Managing Members agree as follows:

ARTICLE I

ORGANIZATION

1.1    Formation.  The Members agree to form the LLC as a limited liability company pursuant to the Act upon the terms and conditions set forth herein.

1.2    Name.  The business of the LLC shall be conducted under the name Aspen Ventures Management III, L.L.C. or such other name as a Majority in Interest of the Managing Members shall designate.

1.3    Offices.  The principal place of business of the LLC shall be located at 1000 Fremont Avenue, Suite 200, Los Altos, California 94024 or such other location as a Majority in Interest of the Managing Members shall designate.  The address of the LLC's registered office in the State of Delaware, and the name of the registered agent for service of process, shall be The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, or such other place or person in the State of Delaware as a Majority in Interest of the Managing Members shall designate.

1.4    Purpose.  The sole purpose of the LLC is to act as the general partner of one or more small business investment companies (each, an "SBIC" and collectively, the "SBICs"), as defined in Section 103 of the Small Business Investment Act of 1958, as amended.

1.5    Term.  The term of the LLC shall commence on the date the Certificate of Formation of the LLC is filed with the Secretary of State of Delaware in accordance with the Act and shall continue until one (1) year after the date that all actions taken in connection with the dissolution of the Fund, and the Parallel Funds (if any) have occurred unless (a) the LLC is sooner dissolved as set forth in Paragraphs 10.1 (Continuance of LLC Upon a Dissolution Event)

or 10.2 (Dissolution at Election of Members), or (b) the term of the LLC is extended by the express written consent of a Majority in Interest of the Managing Members.

      1.6    <u>Members</u>.  The names and addresses of the Members are set forth on Schedule A to this Agreement.  Schedule A shall be amended to reflect (i) the admission of any new Member, (ii) the Retirement or Death or substitution of any Member, (iii) the creation or substitution of any Assignees, or (iv) the receipt by the LLC of notice of any change of address of a Member or Assignee.  Amended Schedule A shall be kept on file at the principal office of the LLC and shall supersede all prior Schedule A's and become part of this Agreement.

      1.7    <u>Admission, Expulsion, and Transfer</u>.

      (a)    Additional persons may be admitted as Members on terms and conditions determined by a Majority in Interest of the Managing Members.  If it is proposed that any person be admitted as a Member pursuant to a Transfer, then such determinations shall be made by a Majority in Interest of the Managing Members excluding as a Managing Member any Managing Member Transferring his interest.  A Person shall be admitted as a member of the LLC at the time such Person executes this Agreement or a counterpart of this Agreement.

      (b)    A Member shall be expelled by the LLC upon demand by a Majority in Interest of the Managing Members (excluding as a Managing Member, for purposes of such determination, any Managing Member to be expelled).  Each Member acknowledges that such expulsion may be with or without cause and shall become effective when written notice of expulsion is served on the expelled Member.

      (c)    No Member or Assignee may Transfer his interest in the LLC, in whole or in part, without the prior written consent of a Majority in Interest of the Managing Members (excluding as a Member, for purposes of such determinations, the Member Transferring his interest).  Any interest in the LLC received by Transfer, and approved as provided in the preceding sentence, shall be an Assignee Interest, and the recipient thereof shall be an Assignee unless such Assignee is otherwise admitted as a Member of the LLC as provided in subparagraph 1.7(a).  If any Member or Assignee shall attempt to Transfer his interest in the LLC, or any portion thereof, in a manner not in accordance with the first sentence of this subparagraph 1.7(c), then (i) such interest shall not be an Assignee Interest and the recipient thereof shall not be an Assignee and (ii) such Transfer shall be null and void and shall not be recognized for any purpose of this Agreement.

      (d)    Notwithstanding the foregoing provisions of this Paragraph 1.7, purchases or sales of LLC interests pursuant to Article V (Noncontributing Members and Former Members) or Article VIII (Former Members) shall be on the terms and conditions set forth therein.

ARTICLE II

DEFINITIONS

2.1    Accounting Period.  Accounting Period shall mean a Fiscal Quarter if there are no changes in the Members' or Assignees' respective interests in Profits or Losses (or items thereof) or LLC Percentages during such Fiscal Quarter (other than on the first day thereof).  If there is a change in the Members' or Assignees' respective interests in Profits or Losses (or items thereof) or LLC Percentages, other than on the first day of a Fiscal Quarter, then the date of such event shall commence an interim Accounting Period.  Such interim Accounting Period shall end on the last day of the Fiscal Quarter in which such interim Accounting Period began or the day immediately preceding the beginning of a new interim Accounting Period, whichever is earlier.

2.2    Act.  The Act is the Delaware Limited Liability Company Act (6 Del. C. Sections 18-101, et seq.) as now in effect or as hereafter amended (or any corresponding provisions of succeeding law).

2.3    Affiliate.  Affiliate shall mean any of the following: (a) an employee of the LLC; (b) a relative (by blood, adoption, or marriage) within the third degree of any Member; (c) a corporation, firm, association, partnership, limited liability company, or other entity of which a Member or any person described in clauses (a) or (b) is a member, general partner, officer, director, or employee; or (d) a person or entity directly or indirectly controlling, controlled by, or under common control of a Member or any person or entity described in clauses (a), (b), or (c).

2.4    Agreement.    Agreement shall mean this agreement as amended or supplemented from time to time.

2.5    Assignee Interest.  Assignee Interest shall mean an economic interest in the LLC acquired by a person that is not, or is no longer, a Member of the LLC.  A person acquiring an Assignee Interest shall be an "Assignee."  An Assignee shall be entitled to the allocations and distributions attributable to the interest assigned to it, and shall be required to make the Capital Contributions attributable to the interests assigned to it, but shall otherwise have no rights or powers (including, without limitation, voting power) to participate in the management of the LLC or otherwise to be treated as a Member under this Agreement or the Act. The term Assignee Interest shall include, but shall not be limited to, any interest in the LLC retained by a Former Member pursuant to Article VIII (Former Members).

2.6    Bankrupt.  A person shall be deemed Bankrupt upon the happening of any of the following events: (a) such person makes an assignment for the benefit of creditors; (b) such person files a voluntary petition in bankruptcy; (c) such person is adjudged bankrupt or insolvent, or has entered against him an order for relief, in any bankruptcy or insolvency proceeding; (d) such person files a petition or answer seeking for himself any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation; (e) such person files an answer or other pleading admitting or failing

to contest the material allegations of a petition filed against him in any proceeding of this nature; (f) such person seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of such person or of all or any substantial part of his properties; or (g) one hundred and twenty (120) days after the commencement of any proceeding against such person seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation if the proceeding has not been dismissed, or if within ninety (90) days after the appointment without his consent or acquiescence of a trustee, receiver, or liquidator of such person or of all or any substantial part of his properties the appointment is not vacated or stayed, or within ninety (90) days after the expiration of any such stay the appointment is not vacated.

    2.7   <u>Book Value</u>. Book Value with respect to any asset shall be the asset's adjusted basis for federal income tax purposes, except as follows:

    (a)   The initial Book Value of any asset contributed by a Member or Assignee to the LLC shall be the fair market value of such asset at the time of contribution as determined by the contributing Member or Assignee and a Majority in Interest of the Managing Members.

    (b)   In the discretion of a Majority in Interest of the Managing Members, the Book Values of all LLC assets and liabilities may be adjusted to equal their respective fair market values, as determined in good faith by a Majority in Interest of the Managing Members, and the resulting unrecognized gain or loss allocated to the Capital Accounts of the Members and Assignees pursuant to Article VI (Allocations) as though such unrecognized gain or loss were recognized pursuant to a sale (or, in the case of liabilities, satisfied through a cash payment by the LLC) of the LLC's assets (and liabilities, including contingent liabilities) at the following times: (i) the acquisition by any new or existing Member or Assignee of an additional interest in the LLC in exchange for more than a <u>de minimis</u> capital contribution, and (ii) the distribution by the LLC to a Member or Assignee of more than a <u>de minimis</u> amount of LLC assets unless all Members and Assignees receive simultaneous distributions of undivided interests in the distributed property in proportion to their interests in the LLC or such assets are distributed ratably to all Members and Assignees in proportion to their interests in the LLC.

    (c)   The Book Values of all LLC assets and liabilities shall be adjusted to equal their respective fair market values, as determined in good faith by a Majority in Interest of the Managing Members, and the resulting unrecognized gain or loss allocated to the Capital Accounts of the Members and Assignees pursuant to Article VI (Allocations) as though such unrecognized gain or loss were recognized pursuant to a sale (or, in the case of liabilities, satisfied through a cash payment by the LLC) of the LLC's assets (and liabilities, including contingent liabilities) at the following times: (i) the date the LLC is liquidated within the meaning of Regulation Section 1.704-1(b)(2)(ii)(g), and (ii) the termination of the LLC pursuant to this Agreement.

(d)    The Book Value of any LLC asset distributed to a Member or Assignee shall be adjusted to equal its fair market value on the date of distribution and the resulting unrecognized gain or loss allocated to the Capital Accounts of the Members and Assignees pursuant to Article VI (Allocations) as though such unrecognized gain or loss were recognized pursuant to a sale of such asset.

(e)    The Book Values of LLC assets shall be increased or decreased to the extent required under Regulations Section 1.704-1(b)(2)(iv)(m) in the event that the adjusted tax basis of LLC assets are adjusted pursuant to Code Sections 732, 734, or 743.

(f)    The Book Value of an LLC asset shall be adjusted by the depreciation, amortization, or other cost recovery deductions, if any, taken into account by the LLC with respect to such asset in computing Profit or Loss.

2.8    Capital Account.    Capital Account shall mean the Capital Account maintained on the LLC's books for each Member and Assignee in accordance with the following provisions:

(a)    The Capital Account of each Member and Assignee shall be increased by:

(i)    the amount of money and the fair market value of any property contributed to the LLC by such Member or Assignee (net of liabilities secured by such contributed property that the LLC is considered to assume or take subject to for purposes of Section 752 of the Code);

(ii)    such Member's or Assignee's share of Profit (or items thereof) allocated to his Capital Account pursuant to this Agreement; and

(iii)    any other amounts required by Regulations Section 1.704-1(b) provided that a Majority in Interest of the Managing Members determine that such increase is consistent with the economic arrangement among the Members and Assignees as expressed in this Agreement; and

(b)    The Capital Account of each Member and Assignee shall be decreased by:

(i)    the amount of money and the fair market value of any property distributed by the LLC to such Member or Assignee pursuant to the provisions of this Agreement (net of any liabilities secured by such property that such Member or Assignee is considered to assume or hold subject to for purposes of Section 752 of the Code);

(ii)    such Member's or Assignee's share of Loss (or items thereof) allocated to his Capital Account pursuant to this Agreement; and

(iii)   any other amounts required by Regulations Section 1.704-1(b) provided that a Majority in Interest of the Managing Members determines that such decrease is consistent with the economic arrangement among the Members and Assignees as expressed in this Agreement.

2.9    Code. The Code is the Internal Revenue Code of 1986 as now in effect or as hereafter amended (or any corresponding provisions of succeeding law).

2.10    Death. A Member shall be deemed to have died if such person dies or becomes incompetent, insane, or permanently disabled. A person shall be deemed incompetent if such person is adjudged incompetent by a decree of a court of competent jurisdiction. A person shall be deemed insane if such person is adjudged insane by a decree of a court of competent jurisdiction.    A person shall be deemed permanently disabled whenever such person is determined by competent medical authority selected by a Majority in Interest of the Managing Members (excluding as a Managing Member for this purpose any Managing Member whose competency is in question) to be permanently incapable of carrying out his functions as a Member of, or a service provider to, the LLC.

2.11    Dissolution Event. A Dissolution Event shall occur if any Member shall be deemed to have died within the meaning of Paragraph 2.10 (Death) other than by reason of permanent disability or if any Member shall be deemed Bankrupt within the meaning of Paragraph 2.6 (Bankrupt).

2.12    Fiscal Quarter. The Fiscal Quarters of the LLC shall begin on January 1, April 1, July 1, and October 1 and shall end on March 31, June 30, September 30, and December 31, respectively.

2.13    Fiscal Year. The fiscal year of the LLC shall be the year ending on the 31st day of December of each year.

2.14    Former Member. Former Member shall mean any Member who ceases to be a Member for any reason. Without limiting the foregoing, a Member shall cease to be a Member, and shall become a Former Member, upon the date of his Retirement or Death. A Former Member shall not have any control over the conduct or management of the affairs of the LLC, the Fund or the Parallel Funds and shall not do any act in contravention of this Agreement or that would make it impossible to carry on the affairs of the LLC.

2.15    Fund. Fund shall mean Aspen Ventures III, L.P., a Delaware limited partnership.

2.16    Fund Agreement. Fund Agreement shall mean the Aspen Ventures III, L.P., Limited Partnership Agreement, as amended or restated from time to time.

2.17    Fund Contribution. Fund Contribution shall mean any contribution by the LLC to the Fund pursuant to Articles III or VI of the Fund Agreement, or to any similar provisions of the Parallel Funds.

2.18  LLC Percentage.  The initial LLC Percentages of the Members and Assignees are set forth on Schedule A.  The sum of the LLC Percentages of the Members and Assignees shall at all times equal one hundred percent (100%).  In the event of (a) the admission of a new Member, (b) the Transfer of all or a portion of a Member's or Assignee's interest in the LLC, (c) the contribution or withdrawal of capital by the Members or Assignees other than in proportion to their LLC Percentages, or (d) in similar circumstances, the LLC Percentages of the Members and Assignees shall be appropriately adjusted as determined in good faith by a Majority in Interest of the Managing Members.  Schedule A shall be amended to reflect any adjustments to the LLC Percentages.

2.19  Majority in Interest of the Managing Members.  Unless otherwise expressly set forth herein, Majority in Interest of the Managing Members shall mean those Managing Members whose aggregate LLC Percentages equal at least a majority of the aggregate LLC Percentages of all Managing Members.

2.20  Managing Members.  Initially Messrs. Cilento, Crockett and Whalen shall be Managing Members.  Each Member admitted to the LLC subsequent to the admission of Messrs. Cilento, Crockett and Whalen shall not for purposes of this Agreement and the Fund Agreements be considered a "Managing Member" unless this Agreement or the documents governing such Member's admission to the LLC specifically provide that such Member is a Managing Member and the SBA consents to the admission of such Member as a Managing Member.

2.21  Members.  Members shall mean the persons who are admitted to the LLC as members of the LLC and whose names are set forth under the designation Members on Schedule A, as amended from time to time.

2.22  Parallel Funds.  Parallel Funds shall mean one or more SBICs formed to invest primarily in tandem with the Fund.

2.23  Profit or Loss.  Profit or Loss shall be the net book income or loss of the LLC for any relevant Accounting Period, determined as of the last day of such Accounting Period, and computed in all material respects in accordance with federal income tax principles (except as specifically modified below) under the method of accounting elected by the LLC for federal income tax purposes.  The net book income or loss of the LLC shall be computed, inter alia, by:

(a)  including as income or deductions, as appropriate, any tax-exempt income and related expenses that are neither properly included in the computation of taxable income nor capitalized for federal income tax purposes;

(b)  including as a deduction when paid or incurred (depending on the LLC's method of accounting) any amount utilized to organize the LLC or to promote the sale of (or to sell) an interest in the LLC, except that amounts for which an election is properly made by the LLC under Section 709(b) of the Code shall be accounted for as provided therein;

(c)    including as a deduction any losses incurred by the LLC in connection with the sale or exchange of property notwithstanding that such losses may be disallowed to the LLC for federal income tax purposes under the related party rules of Code Sections 267(a)(1) or 707(b); and

(d)    calculating the gain or loss on disposition of LLC assets and the depreciation, amortization, or other cost recovery deductions, if any, with respect to LLC assets by reference to their Book Value rather than their adjusted tax basis.

2.24    Regulations.    Regulations shall mean the Income Tax Regulations, including Temporary Regulations, promulgated under the Code as now in effect or as hereafter amended (including corresponding provisions of succeeding Regulations).

2.25    Retirement.    A Member shall be deemed to have retired if such person resigns from the LLC, ceases to perform services for the LLC as provided in Article III (Management), becomes Bankrupt, or is expelled as a Member of the LLC.

2.26    Securities.    Securities shall mean securities of every kind and nature, and rights and options with respect thereto, including stock, warrants, notes, bonds, debentures, evidences of indebtedness, and other business interests of every type, including interests in partnerships, limited liability companies, business trusts, limited liability partnerships, joint ventures, proprietorships, and other business entities.

2.27    Term Percentage.    The Term Percentage for each of Messrs. Cilento, Crockett and Whalen shall mean that amount, determined on the date that such Member, respectively, becomes a Former Member, equal to the sum of (i) the product of one and one-quarter percent (1.25%) and the number of months (rounded to the nearest whole month) between January 15, 1999, and the earlier to occur of (A) January 15, 2004, and (B) the date such Member becomes a Former Member plus, if such Member has not become a Former Member before January 15, 2004, (ii) the product of .4167% and the number of months (rounded to the nearest whole month) between January 15, 2004 and the date such Member becomes a Former Member.

2.28    Transfer.    Transfer or Transferring shall mean any sale, assignment, encumbrance, pledge, mortgage, hypothecation, or other disposition of an interest in the LLC. The recipient of any interest in the LLC received by Transfer shall be a "Transferee;" provided, however, that any Transferee shall be an Assignee only if such Transfer is approved by the Members in accordance with the first sentence of subparagraph 1.7(c). Any Member, Former Member, Assignee or Transferee that Transfers an interest in the LLC is a "Transferor," and such interest shall be a "Transferred Interest"; provided, however, that such Transferred Interest shall be an Assignee Interest only if such Transfer is approved by the Members in accordance with the first sentence of subparagraph 1.7(c). Notwithstanding the foregoing, purchases or sales of LLC interests pursuant to Article V (Noncontributing Members and Former Members) or Article VIII (Former Members) shall be on the terms and conditions set forth therein.

ARTICLE III

MANAGEMENT

3.1    Management by Managing Members.  The Managing Members shall have exclusive control of the management of the LLC and shall manage the LLC exclusively in their capacity as Managing Members.  The Managing Members shall be "Managers" within the meaning of Section 18-101(10) or Subchapter IV of the Act.  Members other than Managing Members shall have no control of the management of the LLC, and shall have no rights or powers to carry on the affairs of the LLC.  Except with the approval of the SBA, no person shall become an officer, director or manager of the LLC.

3.2    Authority of Managing Members.  The rights and powers of the Managing Members to carry on the affairs of the LLC are intended, subject to any limitations expressly set forth herein, to be coextensive with the rights of a partner to manage a partnership formed under Delaware law.  Subject to the provisions of this Agreement, the Members shall have the authority to do any and all acts on behalf of the LLC.

3.3    Approval of a Majority in Interest of Managing Members.

(a)    Notwithstanding Paragraph 3.2, the following acts shall require approval, and be on the terms and conditions established, by a Majority in Interest of the Managing Members:

(i)    Incurring indebtedness or entering into contracts on behalf of the LLC, the Fund or the Parallel Funds;

(ii)    Guaranteeing indebtedness of others on behalf of the LLC, the Fund or the Parallel Funds;

(iii)    Loaning money to any of the Members or Assignees;

(iv)    Designating (i) securities firms, banks, or depositories to be used by the LLC, the Fund or the Parallel Funds in the conduct of their businesses, and (ii) signatories authorized to make withdrawals or issue instructions with respect to the entities designated in clause (i);

(v)    To the extent permitted by the applicable governing documents of the Fund or the Parallel Funds, entering into agreements (upon terms and conditions appropriate to the management of the Fund or the Parallel Funds) delegating to an entity or entities the power to (i) manage the Fund or the Parallel Funds and (ii) receive management fees with respect thereto.  Such agreements may be entered into with business entities controlled by, or comprised of, one or more of the Members or Assignees or their Affiliates; and

(vi)    Performing all acts deemed by a Majority in Interest of the Managing Members (except as to matters for which this Agreement requires the approval or consent of a different percentage in interest of the Members) appropriate or incidental to the foregoing and to carry out the purposes of the LLC.

(b)    Purchasing, selling, or otherwise acquiring or disposing of Securities or other investments by, or for, the LLC, the Fund or the Parallel Funds shall require the approval of all of the Managing Members.

3.4    <u>Differences Among Members</u>.  Any differences among the Members as to matters connected with the business of the LLC, including, without limitation, the management of the Fund or the Parallel Funds shall be decided by a Majority in Interest of the Managing Members except as to matters requiring the consent of a different percentage in interest of the Members under this Agreement.

3.5    <u>Duties of the Members</u>.  Each Member shall devote the substantial portion of his business time to the conduct of the business of the LLC and shall engage in other business activities only to the extent permitted by the Fund Agreement and with the consent of a Majority in Interest of the Managing Members.

3.6    <u>Restrictions on the Members</u>.

(a)    Except with the consent of a Majority in Interest of the Managing Members, or such other level of consent as may be required pursuant to Paragraph 1.7 (Admission, Expulsion, and Transfer), no Member or Assignee shall Transfer his interest in the LLC, or any portion thereof, or mortgage, encumber, pledge, or otherwise dispose of the LLC's capital assets or property, or any portion thereof, or enter into any agreement as a result of which any other person shall have rights as a Member, Assignee, or creditor of the LLC, or as a partner of the Fund or the Parallel Funds; provided, however, that purchases or sales of LLC interests pursuant to Article V (Noncontributing Members and Former Members) or Article VIII (Former Members) shall be on the terms and conditions set forth therein.

(b)    Except with the consent of a Majority in Interest of the Managing Members, no Member shall delegate his management responsibilities hereunder.

(c)    No Member may buy from, or sell to, the LLC any Securities without the prior written consent of all of the Members; provided, however, that purchases or sales of LLC interests pursuant to Article V (Noncontributing Members and Former Members) or Article VIII (Former Members) shall be on the terms and conditions set forth therein.

(d)    Each Member, for so long as he remains a Member of the LLC, agrees that he shall not enter into any transaction that might be viewed, at the time of the transaction, as trading against, or in any way contrary to, the best interest of the LLC, the Fund or the Parallel Funds or that would make it impossible to carry on the affairs of the LLC, the Fund or the Parallel Funds.

(e)    No Member, Former Member or Assignee shall violate the terms of the Fund Agreement that are applicable to the LLC or its Members, Former Members or Assignees.

## ARTICLE IV

## CAPITAL ACCOUNTS

4.1    <u>Capital Account</u>.  A Capital Account shall be maintained on the LLC's books for each Member and Assignee.  If any Transferee of an interest in the LLC is approved as an Assignee in accordance with the terms of subparagraph 1.7(c), then such Assignee shall succeed to the Capital Account of the Transferor to the extent it relates to the Transferred Interest.

4.2    <u>Capital Contributions</u>.

(a)    On any date on which the LLC makes a Fund Contribution, each Member and Former Member shall, upon at least thirty (30) days prior written notice thereof, be required to make a concurrent cash contribution ("Concurrent Contribution") to the capital of the LLC in an amount equal to the product of such Member's or Former Member's LLC Percentage (expressed as a decimal) and the Fund Contribution.  The Concurrent Contribution shall be effected the later of (i) immediately before the LLC is required to effect the Fund Contribution, or (ii) thirty (30) days after receipt by such Member or Former Member of written notice specifying the amount of the Concurrent Contribution.

(b)    Solely for the purposes of determining the amount of the Concurrent Contribution, there shall be added to the LLC Percentage of any Member or Former Member who is also a Transferor the LLC Percentage associated with such Transferred Interest; provided, however, that a Majority in Interest of the Managing Members (excluding as a Member, for purposes of such determination, such Transferor) may provide otherwise in writing.  Accordingly, except to the extent provided otherwise as set forth in the preceding sentence, such Transferor shall be liable to make Capital Contributions to the LLC to the same extent as such Transferor would have been liable in the event that such Transferor had retained the Transferred Interest.  As a condition to relieving such Transferor of such liability, the LLC may (i) require the Transferee of such Transferred Interest to assume such liability, and (ii) subject such Transferred Interest to the provisions of Article V (Noncontributing Members and Former Members), Article VIII (Former Members), and this Article IV as though such Transferee were a Former Member.

4.3    <u>Sharing of Lookback Liability to the Funds</u>.  If (i) upon dissolution of the Fund the LLC is required to restore amounts to the Fund pursuant to Paragraph 8.3 of the Fund Agreement or any similar provision of the Limited Partnership Agreements of the Parallel Funds (hereinafter the "Lookback Liability"), then the Members, Former Members, Assignees (except to the extent that a Majority in Interest of the Managing Members determine otherwise) and former Assignees (except to the extent that a Majority in Interest of the Managing Members

determine otherwise) shall share the economic burden of such recontribution (and any loss or expense that caused such recontribution obligation) in proportion to the aggregate amounts of distributions (net of any recontributions) they have each received from the LLC for all periods (such proportions hereinafter referred to as the "Distribution Proportions"). To the extent the management fees received by the LLC (net of operating expenses paid by the LLC) are paid or distributed to the Members, Former Members, Assignees or former Assignees, such amounts shall not, for purposes of this Paragraph 4.3, be considered to have been distributed to the Members, Former Members, Assignees or former Assignees. For purposes of this Paragraph 4.3, a Member, Former Member, Assignee or former Assignee who is also a Transferor shall be deemed to have received any amounts distributed with respect to an interest in the LLC that was Transferred by such Transferor to a non-Member, except to the extent a Majority in Interest of the Managing Members (excluding as a Member, for purposes of such determination, such Transferor) provide otherwise in writing. As a condition to agreeing that such Transferor will not be deemed for purposes of this Paragraph 4.3 to have received distributions made with respect to the Transferred Interest that was Transferred by such Transferor, the LLC may require the Transferee of such Transferred Interest to subject himself to the provisions of this Paragraph 4.3 to the same extent as though such Transferee were a Former Member. Notwithstanding the foregoing, (i) with respect to a Limited Contribution Obligor (as defined in Paragraph 4.4(b)) the allocation of economic burden provided for in this Paragraph 4.3 shall in no event exceed the sum of such Limited Contribution Obligor's share of the assets of the LLC plus the amount that such Limited Contribution Obligor is required to contribute to the LLC (pursuant to Paragraph 4.4(b) or otherwise) and (ii) any amount of economic burden not allocated to a Limited Contribution Obligor solely by reason of the operation of clause (i) of this sentence will be allocated, to the maximum extent possible without contravening the provisions of such clause (i), to the other Members, Former Members, Assignees and former Assignees in proportion to their respective Distribution Proportions. The foregoing allocation of economic burdens is intended to specify the manner in which the Capital Accounts of Members, Former Members, Assignees and former Assignees will be charged with respect to any Lookback Liability and is not intended to, and shall not be interpreted as, creating an obligation on the part of such Members, Former Members, Assignees or former Assignees to contribute amounts to the LLC or the Funds except as otherwise provided in subparagraphs 4.4(b), 4.4(c) and 4.4(d).

4.4    Limitation on Liability of the Members.

(a)    Except as provided in Paragraphs 4.2 and 4.4(b) hereof, no Member or Former Member shall be liable for any debts or obligations of the LLC.

(b)    Notwithstanding the provisions of subparagraph 4.4(a), to the extent necessary so that each Member, Former Member, Assignee and former Assignee bears the economic burden (whether of by reason of a reduction in such person's share of the LLC's assets, a contribution by such person to the LLC or direct payment by such person to one of the Funds) of the Lookback Liability in proportion to their respective Distribution Proportions (as defined in Paragraph 4.3), each such Member, Former Member, Assignee and former Assignee agrees to contribute to the LLC up to the amount by which their share of the Lookback Liability (i.e., their Distribution Proportion of the Lookback Liability), as set forth in Paragraph 4.3, exceeds their

share of the available assets of the LLC as of such dates. Notwithstanding the foregoing, in no event will Messrs. Cilento, Crockett or Whalen, or, to the extent determined by a Majority in Interest of the Managing Members, Members (other than Managing Members) or Assignees (each of Messrs. Cilento, Crockett, or Whalen and each such other Member or Assignee is referred to herein as a "Limited Contribution Obligor") be required to contribute to the LLC with respect to the Lookback Liability an amount in excess of the amount of distributions received from the LLC over the entire life of the LLC (regardless of whether such distributions are received before or after the date that the Lookback Liability is incurred or satisfied, and if distributions are received after such liability is incurred or satisfied, such receipt shall nevertheless be taken into account in determining the Limited Contribution Obligor's share of such liability pursuant to the penultimate sentence of Paragraph 4.3 hereof). The obligations provided for in this subparagraph (b) with respect to a Member, Former Member, Assignee and former Assignee are intended to apply solely for the benefit of the other Members, Former Members, Assignees and former Assignees and shall in no way be construed or interpreted as inuring to the benefit of any other person or entity.

(c)     To the extent that a Member, Former Member, Assignee or former Assignee is required to contribute amounts to the LLC or pay amounts to Fund or the limited partners of the Fund (or to the limited partners of any Parallel Fund) in connection with the Lookback Liability which in the aggregate are greater than the amount by which such Member's, Former Member's, Assignee's or former Assignee's share of such Lookback Liability as determined pursuant Paragraph 4.3 exceeds such Member's, Former Member's, Assignee's or former Assignee's share of the assets of the LLC (such excess payment may result, for example, by reason of the insolvency of another Member, Former Member, Assignee or former Assignee), such Member, Former Member, Assignee or former Assignee shall be entitled to reimbursement from the remaining Members, Former Members, Assignees and former Assignees such that to the maximum extent possible all Members, Former Members, Assignees and former Assignees share the economic burden of the Lookback Liability pro rata to their respective Distribution Proportions.

(d)     Any debts, obligations, or liabilities to the LLC of any Member or Former Member, Assignee or former Assignee, if not paid when due, shall be collectible by any legal means and shall bear interest at the maximum rate then permitted from the date due until satisfied in full. The LLC shall also be entitled to collect the amount of any attorneys' fees, costs, and expenses incurred by the LLC in the collection of such debts, obligations, or liabilities (the "Collection Expense") and the amount of such Collection Expense shall immediately become part of such debts, obligations, or liabilities and shall bear interest at the maximum rate then permitted by law. The LLC is authorized, in addition to any other remedies at law or in equity, to apply any amounts otherwise distributable or payable by the LLC to such person to satisfy such debts, obligations, or liabilities.

## ARTICLE V

## NONCONTRIBUTING MEMBERS AND FORMER MEMBERS

5.1     Noncontributing Members and Former Members.    The LLC shall be entitled to enforce the obligations of each Member, Former Member and Assignee to make the contributions to capital specified in Paragraph 4.2 (Capital Contributions), and the LLC shall have all remedies available at law or in equity in the event any such contribution is not so made. Additionally, should any Member, Assignee or Former Member fail to make the contributions required of him under Paragraph 4.2 (Capital Contributions) the nondefaulting Members shall have the right and option to acquire all of such Member's, Former Member's or Assignee's LLC interest as set forth in this Article V.

5.2     Option to Purchase.    Should any Member or Assignee (the "Defaulting Party") fail to comply with the provisions of Paragraph 4.2 (Capital Contributions) after timely receipt of notice thereunder, the nondefaulting Members (the "Optionees") shall have the right and option to acquire the Defaulting Party's entire LLC interest on the terms and conditions set forth in this Article V.   The portion of the Defaulting Party's LLC interest available to each Optionee shall be that portion which bears the same ratio to the Defaulting Party's entire interest as each Optionee's LLC Percentage bears to the aggregate LLC Percentages of all of the Optionees.

5.3     Price.

(a)     The price for the Defaulting Party's entire interest shall be the lesser of (i) the excess, if any, of (x) the amount of the credit balance, if any, that would exist in the Defaulting Party's Capital Account as of the close of the due date of the additional contribution if (A) such due date were treated as the last day of an Accounting Period, (B) immediately prior to such due date the Fund and the Parallel Funds (and any other partnership in which the LLC is a partner) had liquidated pursuant to the expiration of its stated term, (C) immediately prior to such due date all LLC liabilities (including contingent liabilities) had been satisfied by the LLC by payment of an amount of cash equal to the fair market value of such liabilities, and (D) immediately prior to such due date all notes contributed by such Defaulting Party to the capital of the LLC pursuant to Article IV (Capital Accounts) had been satisfied by such Defaulting Party by means of a cash payment, over (y) the fair market value of any distributions (valued pursuant to Paragraph 11.2 (Valuation)) as of the date of such distributions) made to the Defaulting Party from the LLC after the due date of such additional contribution to the date of purchase, or (ii) the aggregate amount of any cash plus the outstanding balance of any notes contributed by the Defaulting Party to the LLC pursuant to Article IV (Capital Accounts) with respect to the interest in the LLC then held by such Member less the aggregate fair market value of any distributions (valued pursuant to Paragraph 11.2 (Valuation) as of the date of such distributions) made to the Defaulting Party from the LLC with respect to such interest through the date of purchase from the Defaulting Party hereunder, but in no event less than zero.

(b)    The price for each Optionee's portion of the Defaulting Party's LLC interest shall be prorated according to the portion of the Defaulting Party's interest purchased by the Optionee.

    5.4    <u>Manner of Exercise</u>.

(a)    Should any Member or Assignee be in default under Paragraph 4.2 (Capital Contributions) of this Agreement for more than ten (10) days after the due date of a required capital contribution, or payment to capital, the LLC shall notify the Optionees of such default within twenty (20) days of such date. Such notice shall advise each Optionee of the portion of the Defaulting Party's interest available to him and the price therefor. The option granted hereunder shall be exercisable at any time within thirty (30) days of receipt of the notice from the LLC by delivery to the Defaulting Party (in care of the LLC) of a notice of option exercise, which notice the LLC shall promptly forward to the Defaulting Party after examination. Each Optionee may elect to acquire all or any portion of the Defaulting Party's LLC interest available to him.

(b)    Should any Optionee not exercise his option as provided herein, the other Optionees shall have the right and option ratably among them to acquire the portion of the Defaulting Party's interest not so acquired within sixty (60) days after notice of such right and option on the same terms as provided above.

    5.5    <u>Payment</u>. The price due from each of the Optionees shall be payable by (a) assumption by such Optionee of the Purchased Percentage (as defined in Paragraph 5.6) of any promissory notes (if any) of the Defaulting Party which were contributed to the LLC pursuant to Article IV (Capital Accounts) and are held by the LLC at the date of default hereunder; provided, however, that in no event shall an Optionee assume an amount hereunder which exceeds the price due from such Optionee, and (b) any remaining price due shall be payable by a noninterest bearing, nonrecourse promissory note in the form of Exhibit A to this Agreement secured by the portion of the Defaulting Party's LLC interest purchased by such Optionee pursuant to a security agreement in the form of Exhibit B to this Agreement, and shall be enforceable by the Defaulting Party only against such security. No provision hereof shall be interpreted as relieving such Defaulting Party of any liability to the LLC including, without limitation, any liability with respect to any note contributed by such Defaulting Party to the capital of the LLC pursuant to Article IV (Capital Accounts).

    5.6    <u>Additional Contributions</u>. Upon exercise of any option hereunder, each Member so exercising the option shall be obligated to contribute to the LLC that portion of the additional contributions of capital then and thereafter due from the Defaulting Party pursuant to Paragraph 4.2 (Capital Contributions) equal to the percentage of the Defaulting Party's LLC interest purchased by such Optionee (the "Purchased Percentage").

    5.7    <u>LLC Option to Repurchase</u>. Upon approval of all of the remaining Members, the LLC may elect to acquire the Defaulting Party's interest on the terms set forth in this Article V to the extent that such interest has not been acquired by the Optionees or other persons. In such event the LLC Percentage and Capital Account balance of the Defaulting Party

(less the amount paid by the LLC for such Defaulting Party's interest) shall be allocated among all remaining Members in proportion to their respective LLC Percentages.

     5.8   <u>Third Parties</u>.  The amount of the Defaulting Party's LLC interest not acquired by the Optionees may, if all of the Optionees deem it in the best interest of the LLC, be (a) sold to any other person or persons on terms not more favorable to such parties than those applicable to each Optionee's option, or (b) acquired by the LLC on the terms set forth in this Article V, provided that the LLC shall immediately after such acquisition issue to any other person or persons (including an Optionee) an LLC interest substantially identical in all respects to the interest acquired by the LLC from the Defaulting Party pursuant to this Paragraph 5.8 (except that such LLC interest may have a Capital Account balance that reflects the price paid by such other person or persons).  Any consideration received by the LLC in excess of the price payable under this Article V to the Defaulting Party shall be retained by the LLC.

     5.9   <u>Conversion to Assignee Interest; Other Adjustments</u>.  In the case of a Defaulting Party that is a Member, to the extent that such Defaulting Party's interest in the LLC is not fully acquired pursuant to the provisions of this Article V, the interest in the LLC of such Defaulting Party shall become an Assignee Interest ninety (90) days after the date ("Conversion Date") the notice of default is issued pursuant to Paragraph 5.4 (Manner of Exercise), and such Defaulting Party shall become a Former Member and an Assignee.  A Defaulting Party's Capital Account and LLC Percentage immediately subsequent to any acquisition pursuant to this Article V shall be the portion of such Defaulting Party's Capital Account and LLC Percentage, respectively, as of the Conversion Date not purchased pursuant hereto.  Such LLC Percentage shall be subject to change by reason of subsequent events as provided in Paragraph 2.18 (LLC Percentage).  A Defaulting Party shall not have any control over the conduct or management of the LLC business from and after the Conversion Date.

     Notwithstanding the foregoing, any payment (or deemed payment) by the Defaulting Party of a promissory note that was contributed by such Defaulting Party to the LLC pursuant to Article IV (Capital Accounts) prior to the date of any purchase of such Defaulting Party's interest in the LLC pursuant to the terms of this Article V shall be allocated among the Capital Accounts of the Defaulting Party and any purchaser of the Defaulting Party's interest pursuant to this Article V in a manner that causes such Capital Account balances (as computed after accounting for any actual and scheduled payments of any portions of such promissory note assumed by such other Members) to be at the same levels they would have been had such payment been effected by the Defaulting Party immediately prior to any purchase of his or her interest pursuant to this Article V.

ARTICLE VI
ALLOCATIONS

6.1   <u>Allocations of Profit and Loss</u>.

     (a)   Except as provided in Article XIII (Tax Compliance Provisions), or in Paragraph 10.3 (Dissolution Procedures) allocations shall be made as follows: for each

Accounting Period, any items of LLC Profit or Loss shall be allocated to the Capital Accounts of all of the Members and Assignees in proportion to their respective LLC Percentages as of the end of such period; provided, however, any item of Profit or Loss (including any income, gain, loss, expense, deduction, or credit) attributable either (i) to the receipt by the LLC of the management fee payable by the Fund pursuant to the Fund Agreement, or by the Parallel Funds, (ii) to the payment of any salaries or bonuses pursuant to Paragraph 9.3 (Salaries and Bonuses), or (iii) to any normal and recurring operating expenses of the LLC shall be allocated solely to the Managing Members in proportion to their respective LLC Percentages.

(b)    Notwithstanding the foregoing provisions of this Paragraph 6.1, in the event that all or a portion of a Member's interest in the LLC is converted to that of an Assignee, such Assignee shall continue to be allocated items of LLC operating expense (but not operating income) as though such Assignee were a Member until such time as such Assignee has been allocated pursuant to this provision aggregate items of LLC operating expense equal to the amount, if any, of undistributed Net Operating Income (as defined below) reflected in the Capital Account of such Assignee immediately after becoming an Assignee (and, in the event of a conversion to an Assignee Interest pursuant to Articles V (Noncontributing Members and Former Members) or VIII (Former Members) hereof, immediately after all purchases of such Former Member's interest pursuant to such Articles are completed). In no event will (i) income attributable to the receipt of management fees by the LLC from the Fund or the Parallel Funds, or (ii) items of income, gain, loss, or deduction attributable to the investment of such management fees be allocated pursuant to the preceding sentence. For purposes of the foregoing, the term "Net Operating Income" shall mean the excess of (x) any management fees earned by the LLC (plus any net investment income or minus any net investment loss generated with respect to that portion of the management fees available for investment, as determined after applying such management fees to satisfy the operating expenses of the LLC), over (y) any operating expenses of the LLC (including payments of salaries and/or bonuses to the Members pursuant to Paragraph 9.3 (Salaries and Bonuses) hereof).

(c)    Notwithstanding the foregoing provisions of this Paragraph 6.1, appropriate allocations shall be effected to reflect the sharing of LLC liabilities and obligations as set forth in Paragraph 4.3 (Sharing of Lookback Liability to the Fund).

6.2    Income Tax Distributive Shares.

(a)    Except as otherwise provided in this Paragraph 6.2 or Article XIII (Tax Compliance Provisions), or as otherwise required by the Code and Regulations, LLC income, gain, loss, deduction, or credit for income tax purposes shall be allocated in the same manner as the corresponding book items are allocated pursuant to this Agreement.

(b)    In accordance with Code Section 704(c) and the Regulations thereunder, income, gain, loss, and deduction with respect to any asset contributed to the capital of the LLC shall, solely for tax purposes, be allocated among the Members and Assignees so as to take account of any variation between the adjusted basis of such property to the LLC for federal income tax purposes and its initial Book Value.

(c)    In the event the Book Value of any LLC asset is adjusted pursuant to the terms of this Agreement, subsequent allocations of income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as under Code Section 704(c) and the Regulations thereunder.

## ARTICLE VII

## DISTRIBUTIONS

7.1    <u>Withdrawals by Members</u>.    Except as expressly provided in this Agreement, no Member, Former Member or Assignee may withdraw any amount from the LLC without the consent of a Majority in Interest of the Managing Members.

7.2    <u>Distributions of Fund Interests and Assets</u>.  The LLC's interest in the Fund or the Parallel Funds, and all cash or property received by the LLC (a) from the Fund or the Parallel Funds as a distribution (but not as a payment of management fees), (b) from the investment, holding, sale, or other disposition of items referred to in clause (a) of this Paragraph 7.2, or (c) from the sale or other disposition of the LLC's interest in the Fund or the Parallel Funds shall be distributed to the Members and Assignees pro rata in proportion to their respective LLC Percentages at such time or times and subject to such conditions as a Majority in Interest of the Managing Members determine, provide that no distribution shall be made to a Member or Assignee that is in default of his or her obligations to make capital contributions to the LLC under Paragraph 4.2 or otherwise.  Any such distribution shall be made upon such other terms and conditions as a Majority in Interest of the Managing Members shall determine, including, without limitation, causing such distribution to constitute an advance or draw against the recipient Member's or Assignee's distributive share of income or profit.

7.3    <u>Other Distributions</u>.    In addition to distributions made pursuant to Paragraph 7.2 (Distributions of Fund Interests and Assets), the LLC may, at the option of a Majority in Interest of the Managing Members, distribute cash or ratably distribute Securities to the Members and the Assignees of the LLC in proportion to their respective LLC Percentages at the time of such distribution.  Any such distribution shall be made upon such other terms and conditions as a Majority in Interest of the Managing Members shall determine, including, without limitation, causing such distribution to constitute an advance or draw against the recipient Member's or Assignee's distributive share of income or profit.

7.4    <u>Limitation on Distributions</u>.  Notwithstanding the foregoing provisions of this Article VII, in no event will a Member or Assignee have a right to receive a distribution to the extent such distribution will cause such Member or Assignee to have a negative balance in its Capital Account or increase the amount by which such balance is negative.

7.5    <u>Payment of Salaries and Bonuses</u>.  The provisions of Paragraphs 7.1 (Withdrawal by Members), 7.2 (Distributions of Fund Interests and Assets), and 7.3 (Other

Distributions) shall not apply to salaries or bonuses payable to Members pursuant to the provisions of Paragraph 9.3 (Salaries and Bonuses).

ARTICLE VIII

FORMER MEMBERS

8.1    Conversion to Assignee Interest.

(a)    In the event that any Member becomes a Former Member, the interest in the LLC of such Member shall, to the extent not purchased as set forth in Paragraph 8.2 (Effect of Becoming a Former Member) (or as otherwise provided in Article V (Noncontributing Members and Former Members)), become an Assignee Interest, and such Former Member, or the legal representative or estate thereof, as the case may be, shall become an Assignee.

(b)    Immediately after the repurchase, if any, provided for in Paragraph 8.2 (Effect of Becoming a Former Member) has been made (or as otherwise provided in Article V (Noncontributing Members and Former Members)), a Former Member shall have an Assignee Interest with a LLC Percentage and a Capital Account determined pursuant to Paragraph 8.2 (Effect of Becoming a Former Member).  Schedule A shall be amended to reflect the new LLC Percentages.  Thereafter, all items of LLC Profit and Loss shall be allocated among (and, as appropriate, distributed to) the Members and Assignees based upon such revised LLC Percentages.

(c)    The provisions of this Article VIII shall not apply in the case of any Dissolution Event that causes the LLC to dissolve, or to any event that occurs on or after the date of dissolution of the LLC.

8.2    Effect of Becoming a Former Member.

(a)    Allocation of Interests.  A Former Member shall have an Assignee Interest with (i) a Capital Account equal to the product of (x) his Term Percentage (expressed as a decimal), and (y) his Capital Account on the date he became a Former Member, and (ii) a LLC Percentage (subject to change as provided in Paragraph 2.18 (LLC Percentage)) equal to the product of (x) his Term Percentage (expressed as a decimal), and (y) his LLC Percentage immediately prior to any repurchase under this Paragraph 8.2.  The portion of the LLC Percentage and Capital Account of a Member, who becomes a Former Member, not allocated to such Former Member as an Assignee Interest pursuant to the preceding sentence shall be referred to, collectively, as the "Unvested Interest," and, individually, as the "Unvested LLC Percentage" and the "Unvested Capital Account," respectively.

The Unvested Interest (if any), or any portion thereof, may be purchased by the LLC, or, if a Majority in Interest of the Managing Members so elect, by the Members.  In the event of a purchase by the LLC, (i) the Unvested LLC Percentage, to the extent purchased, shall be

allocated among all Members in proportion to their respective LLC Percentages, and (ii) an amount equal to the Unvested Capital Account balance reduced by the amount paid for the Unvested Interest pursuant to subparagraph 8.2(b) shall be allocated among the Capital Accounts of all of the Members in proportion to their respective LLC Percentages.

Notwithstanding the foregoing, to the extent the full amount of the Unvested Interest is not repurchased pursuant to this Paragraph 8.2, the Capital Account balance and LLC Percentage of the Former Member immediately after the repurchase (if any) shall be adjusted as appropriate to reflect such Former Member's retention of such portion of the Unvested Interest.

(b)    Price.  The price for the Unvested Interest purchasable pursuant to this Paragraph 8.2 shall be equal to the product of (x) the lesser of (1) the aggregate amount of cash capital plus the outstanding balance of any notes contributed by the Former Member to the LLC pursuant to Article IV (Capital Accounts) with respect to the interest in the LLC then held by such Former Member less the aggregate fair market value of any distributions made to such Former Member for all periods through the date of the purchase from such Former Member (valued as of the date of such distribution pursuant to Paragraph 11.2 (Valuation)) with respect to such interest, or (2) the excess, if any, of the amount of the credit balance, if any, that would exist in such Former Member's Capital Account as of the close of business on the date such Former Member became a Former Member if (A) such date were treated as the last day of an Accounting Period, (B) as of such date all LLC liabilities (including contingent liabilities) had been satisfied by the LLC by payment of an amount of cash equal to the fair market value of such liability, and (C) as of such date notes contributed by such Former Member to the capital of the LLC pursuant to Article IV (Capital Accounts) had been satisfied by such Former Member by means of a cash payment, over the aggregate fair market value of any distributions made to such Former Member after the date such Member became a Former Member (valued as of the date of such distribution pursuant to Paragraph 11.2 (Valuation)), and (y) the difference between 100% and such Former Member's Term Percentage.  The purchase price determined as set forth herein may equal zero but in no event shall be less than zero.  In the event the purchase price calculated hereunder shall equal zero (or be deemed to equal zero) such Former Member shall be deemed to have forfeited to the LLC pursuant to Paragraph 8.2(a) a portion of such Former Member's LLC interest that is equal to the Unvested Interest.  Such Former Member shall not, however, as a result thereof be relieved of any other obligation to the LLC, either as set forth herein or as provided by law, as a result of such forfeiture.

(c)    Payment.  Payment for the Unvested Interest purchased pursuant to this Paragraph 8.2 shall be made, without interest, by cancellation of all or a portion of any notes of such Former Member then outstanding, with the balance of such payment to be made in cash. Payment shall be effected within ninety (90) days of the date such Former Member becomes a Former Member.  In the event of a purchase by one or more Members, each such Member shall be obligated to contribute to the LLC that portion of the additional contributions of capital that could have been due then and thereafter from the Former Member pursuant to Paragraph 4.2 (Capital Contributions) with respect to the portion of the Unvested Interest purchased by each such Member.  Except in the event of the express cancellation by the LLC of an obligation of a Member or Former Member as provided herein, no provision hereof shall be interpreted as

relieving a Former Member of any liability to the LLC including, without limitation, any liability with respect to any note contributed by such Former Member to the Capital of the LLC pursuant to Article IV (Capital Accounts).

(d)    Subsequent Payments of Capital Notes. Any payment (or deemed payment pursuant to Article X (Dissolution)) by the Former Member of a promissory note that was contributed by such Former Member (or such Former Member's predecessor in interest) to the LLC pursuant to Article IV (Capital Accounts) prior to the date of any purchase of such Former Member's interest in the LLC pursuant to the terms of this Paragraph 8.2 shall be allocated among the Capital Accounts of the Former Member and the Members (as computed after accounting for any actual and scheduled payments of any portion of such promissory note assumed by such other Members) in a manner that causes such balances to be at the same levels they would have been had such payment been effected by the Former Member immediately prior to any purchase of his interest pursuant to this Paragraph 8.2.

## ARTICLE IX

## EXPENSES

9.1    Organizational Expenses.    All organizational expenses incurred in connection with the formation and organization of the LLC shall be borne by the LLC.

9.2    Operating Expenses.  All operating expenses of the LLC shall be payable by the LLC.

9.3    Salaries and Bonuses.  A Majority in Interest of the Managing Members shall determine the amount, if any, of salary and/or bonus payable to each Member hereunder; provided, however, that at no time shall the aggregate amount paid to the Members and Former Members pursuant to this Paragraph 9.3, plus all other operating expenses of the LLC, exceed an amount equal to the aggregate management fees received by the LLC from the Fund or the Parallel Funds (plus any net investment income or minus any net investment loss generated with respect to that portion of the management fees available for investment, as determined after applying such management fees to satisfy the operating expenses of the LLC). The amount of any salary and/or bonus shall be reviewed at such times as a Majority in Interest of the Managing Members shall from time to time determine.  Notwithstanding the foregoing, each Member hereby understands and agrees that he or she shall not be entitled to compensation for services rendered to the LLC.

## ARTICLE X

## DISSOLUTION

10.1    Continuance of LLC Upon a Dissolution Event.  Except as set forth in the following sentence, a Dissolution Event shall dissolve the LLC unless either (A) there remains, after such event, at least two (2) Members, and within ninety (90) days after the Dissolution

Event those Members having (i) aggregate Capital Account balances that exceed fifty percent (50%) of the aggregate Capital Account balances of all Members (excluding as a Member, for this purpose, the Member that has triggered the Dissolution Event), and (ii) a right to receive allocations of future Profits (and items thereof) that exceed fifty percent (50%) of the share of future Profits (and items thereof) allocable to all Members (excluding as a Member, for this purpose, the Member that has triggered that Dissolution Event) consent to the continuation of the LLC, or (B) there is, after such event, only one (1) remaining Member and within ninety (90) days after the Dissolution Event (i) one (1) or more additional Members are admitted and (ii) the remaining Member and all such additional Members unanimously consent to the continuation of the LLC. Determinations as to the relative interests of the Members under this Paragraph 10.1 shall be made by a Majority in Interest of the Managing Members in a manner consistent with the principles of Revenue Procedure 94-46, 1994-28 I.R.B. 129. If the LLC continues following any Dissolution Event, then the business of the LLC shall be continued by the remaining Members in accordance with the terms of this Agreement, subject to the provisions of Article VIII (Former Members).

      10.2   <u>Dissolution at Election of Members</u>.  The LLC may be dissolved at any time with the written consent of a Majority in Interest of the Managing Members.

      10.3   <u>Dissolution Procedures</u>.  Upon dissolution of the LLC at the expiration of the LLC term pursuant to Article I (Organization), or pursuant to Paragraphs 10.1 (Continuance of LLC Upon a Dissolution Event) or 10.2 (Dissolution at Election of Members), the following shall occur:

      (a)    The affairs of the LLC shall be wound up and terminated under the direction of the remaining Members.  All matters relating to the liquidation of the LLC shall be determined by a Majority in Interest of the Managing Members.  In the alternative, a Majority in Interest of the Managing Members may approve a Person or Persons to carry out the winding up of the LLC (in such capacity, the "Liquidating Trustee") who may be responsible for winding up the LLC's affairs.

      (b)    The Capital Accounts (the "Closing Capital Accounts") of all the Members and Assignees shall be computed as of the date of termination as if the date of termination were the last day of an Accounting Period in accordance with Article VI (Allocations) and then adjusted in the following manner:

      (i)    All assets and liabilities (including contingent liabilities) of the LLC shall be valued as of the date of termination.

      (ii)    The LLC's assets (and liabilities, including contingent, conditional and unmatured liabilities) as of the date of termination shall be deemed to have been sold (or, in the case of liabilities, satisfied through a cash payment by the LLC) at their fair market values and the resulting Profit or Loss shall be allocated to the Member's and Assignee's Capital Accounts in accordance with the provisions of Article VI (Allocations).  In addition, (A) solely for purposes of calculating such Member's or Assignee's Closing Capital Accounts, all notes contributed by a Member or Assignee to the capital of the LLC pursuant to Article VI

(Allocations) shall, to the extent not then due and payable, be deemed to have been paid in full, and (B) allocations of Profit and Loss shall be adjusted (and corresponding adjustments made to the Capital Accounts of the Partners), to the extent necessary, if any, so that over the life of the LLC aggregate allocations of items of Profit and Loss shall have been effected in the manner specified in this Agreement.

(c)    Subject to Paragraph 10.4 (Payments in Liquidation), upon dissolution of the LLC, distributions in liquidation of the LLC may be made in cash or in kind or partly in cash and partly in kind.  A Majority in Interest of the Managing Members, or the Liquidating Trustee, as the case may be, shall use its best judgment as to the most advantageous time for the LLC to sell investments or to make distributions in kind; provided, however, that in lieu of effecting an actual distribution to a Member or Assignee the LLC may instead apply the amount of such distribution as an offset against the balance due the LLC by such Member or Assignee pursuant to any promissory note or other liability.  Any security so distributed shall be valued at fair market value and shall be subject to reasonable conditions and restrictions necessary or advisable in order to preserve the value of such security or for legal reasons.

(d)    All allocations to the Members and Assignees of Profit or Loss (or items thereof) for all periods after the Closing Capital Accounts are determined as set forth above shall be made as provided in Article VI (Allocations).

10.4    <u>Payments in Liquidation</u>.  The assets of the LLC shall be applied to satisfy liabilities of the LLC and distributed to the Members and Assignees in liquidation of the LLC in the following order:

(a)    to creditors of the LLC, other than Members and Assignees, in the order of priority established by law, either by payment or by establishment of reserves;

(b)    to the Members and Assignees, in repayment of any loans made to, or other debts owed by, the LLC to such Members and Assignees; and

(c)    to the Members and Assignees in respect of the positive balances in their Capital Accounts; and if any of the Members' or Assignees' Capital Accounts have a deficit balance (after giving effect to all contributions, distributions, and allocations for all taxable years, including the year in which such liquidation occurs), then except to the extent expressly required pursuant to Paragraph 4.4 (Limitation of Liability of the Members), the Members and Assignees having such deficit balances shall not be required to contribute any amount to the LLC and such deficit shall not be considered a debt owed to the LLC for any purpose.

## ARTICLE XI

### REPORTS AND FINANCIAL ACCOUNTING

11.1 _Financial Records_. The financial records of the LLC shall be kept in accordance with the provisions of this Agreement, and, unless specified to the contrary herein, with tax accounting principles consistently applied. The records and books of account of the LLC shall be kept at the principal place of business of the LLC and shall be open to inspection by any Member, or his accredited representative, at any reasonable time during business hours.

11.2 _Valuation_. For purposes of determining the value of the assets of the LLC, Securities and other LLC assets shall be valued at their market value as determined by a Majority in Interest of the Managing Members.

11.3 _Annual Reports_.

(a)    Upon request by any Member or any person (or his legal representative) who was a Member during any part of the Fiscal Year in question the LLC shall transmit to such Member or other person within a reasonable time after the end of each Fiscal Year of the LLC the following items: (i) a balance sheet for the LLC as of the close of the Fiscal Year, and a profit and loss statement for the year then ended, all in reasonable detail; and (ii) a report setting forth the Capital Account balances, if any, of each Member computed as of the close of such Fiscal Year.

(b)    The LLC shall also transmit within such period to each Member then a Member of the LLC, and to each person (or his legal representative) who was a Member during any part of the Fiscal Year in question, a copy of the LLC's federal income tax return for such Fiscal Year and a copy of such member's Schedule K-1.

## ARTICLE XII

### MISCELLANEOUS

12.1 _Addresses_. Any change of a Member's or Assignee's address as listed on Schedule A hereto shall become effective ten (10) days after receipt of notice thereof by the LLC.

12.2 _Amendment_. This Agreement may be amended only with the written consent of a Majority in Interest of the Managing Members (except as to matters for which this Agreement requires the approval or consent of a higher percentage in interest or number of the Members, which amendment shall require the written consent of such higher percentage in interest or number of the Members). Notwithstanding the above, no amendment of the Agreement may effect any of the following, unless each Member adversely affected thereby has expressly consented in writing to such amendment (provided, however, that for this purpose

increasing the Term Percentage of a Member or Assignee shall not be deemed to adversely affect another Member):

    (a)     reduce a Member's Capital Account,

    (b)    amend any provision of this Agreement requiring a greater majority to consent to specified actions before such actions may be taken (unless such amendment is approved by the greater majority specified by such provision),

    (c)    amend Paragraphs 2.8 (Capital Account), 2.18 (LLC Percentage), 2.27 (Term Percentage), 8.1 (Conversion to Assignee Interest) or 8.2 (Effect of Becoming a Former Member) or

    (d)    change the restrictions contained in this Paragraph 12.2.

    12.3    <u>Arbitration</u>.  Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in Palo Alto, California, in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

    12.4    <u>Binding Agreement; Law Governing</u>.  This Agreement shall survive the formation of the LLC, shall be binding on the Assignees and legal successors of the Members and Former Members, and shall be governed by, and construed in accordance with the laws of the State of Delaware (without regard to conflict of laws principles).

    12.5    <u>Counterparts</u>.  This Agreement may be executed in more than one counterpart with the same effect as if the Members executing the several counterparts had all executed one counterpart.

    12.6    <u>Entire Agreement; Captions</u>.  This Agreement constitutes the entire agreement of the parties and supersedes all prior written and verbal agreements among the Members with respect to the LLC.  Descriptive titles are used herein for convenience only and shall not be considered in the interpretation of this Agreement.

    12.7    <u>Exculpation by Members</u>.  No Member or Former Member shall be liable to any other Member or Former Member, or to any Assignee, for (a) honest mistakes in judgment, or action or inaction, undertaken in good faith and for purposes reasonably believed to be in the best interests of the LLC, (b) losses due to such mistakes, action, or inaction, or (c) the negligence, dishonesty, or bad faith of any employee, broker, or other agent of the LLC provided that such employee, broker, or agent was selected and engaged with reasonable care.  Each Member and Former Member may consult with legal counsel and accountants on matters relating to the affairs of the LLC and shall not be liable to any other Member or Former Member, or to any Assignee, for action or inaction undertaken in accordance with the advice of legal counsel or accountants selected by such Member or Former Member with reasonable care.  Notwithstanding the foregoing, the provisions of this Paragraph 12.7 shall not relieve any person of liability arising by reason of recklessness or intentional wrongdoing, or to the extent (but only to the

extent) that such liability may not be waived, modified, or limited under applicable law. This Agreement shall be construed to effect the provisions of this Paragraph 12.7 to the fullest extent permitted by law.

    12.8    Indemnification.

        (a)    Except as otherwise provided herein, the LLC agrees to indemnify, out of the assets of the LLC only, the Members and Former Members, and any of their agents, to the fullest extent permitted by law and to save and hold them harmless from and in respect of all (i) reasonable fees, costs, and expenses paid in connection with or resulting from any claim, action, or demand against the Members or Former Members, the LLC, or any of their agents, that arise out of, or in any way relate to, the LLC, its properties, business, or affairs (including, without limitation, claims, actions, or demands arising out of service as a director, officer, employee, or agent of another entity (a "Portfolio Company") at the request of the LLC ("Requested Service")) (other than reasonable fees, costs and expenses of the type described in Paragraph 10.13(a) of the Fund Agreement, in which case the indemnitee shall seek indemnification from the Fund, and indemnification shall be available hereunder only to the extent that the indemnification available from the Fund, together with any other source of available indemnification, is not sufficient to fully pay such reasonable fees, costs and expenses), and (b) such claims, actions, and demands and any losses or damages resulting from such claims, actions, and demands, including amounts paid in settlement or compromise (if recommended by attorneys for the LLC) of any such claim, action, or demand (other than claims, actions and demands and losses or damages resulting from such claims, actions and demands of the type described in Paragraph 10.13(b) of the Fund Agreement, in which case the indemnitee shall seek indemnification from the Fund, and indemnification shall be available hereunder only to the extent that the indemnification available from the Fund, together with any other source of available indemnification, is not sufficient to fully pay the amounts described herein).

        (b)    Prior to seeking indemnification hereunder each indemnitee shall use its best efforts to seek indemnification from all other sources including, in the case of liability arising from Requested Service, from the Portfolio Company or its insurance company. Only if indemnification is not available from other sources shall indemnitee seek indemnification pursuant to this Paragraph 12.8. No indemnity shall be paid or payable by the LLC to a Member or Former Member or its agents (i) if it shall be determined by final judgment or other final adjudication that such Member's or Former Member's or agent's conduct (A) was not undertaken in good faith to promote the best interests of the LLC, or (B) constituted recklessness or intentional wrongdoing; (ii) with respect to any claim, action, or demand resulting from or attributable to service as a director, officer, employee, or agent of a Portfolio Company ten (10) days after the date on which the LLC has requested, in writing, that the Member or Former Member resign from such position and the Member or Former Member has not resigned such position within such ten (10) day period; or (iii) with respect to any action or proceeding instituted by the indemnitee against the LLC or other party without the approval of a Majority in Interest of the Managing Members (excluding as a Member, for purposes of such calculation, the Member requesting indemnification) other than an action or proceeding for the purpose of

obtaining indemnification hereunder where such indemnitee prevails by a final, non-appealable judgment or award in such action or proceeding.

(c)    Promptly, but not later than thirty (30) days after receipt by any Member or Former Member of notice of the commencement of any action, suit, or proceeding with respect to which a claim is to be made against the LLC under this Paragraph 12.8, such Member or Former Member will notify the LLC of the commencement thereof.    No indemnification shall be available if the LLC is prejudiced by the failure to give such notice. With respect to any such action, suit or proceeding:

(i)    the LLC will be entitled to participate therein at its own expense;

(ii)    except as otherwise provided below, to the extent that it may wish, the LLC will be entitled to assume the defense thereof, with counsel reasonably satisfactory to the Member or Former Member.  After notice from the LLC to the Member or Former Member of its election to assume the defense thereof, the LLC will not be liable to the Member or Former Member under this Paragraph 12.8 for any legal or other expenses subsequently incurred by the Member or Former Member in connection with the defense other than as provided below.  The Member or Former Member shall have the right to employ counsel, but the fees and expenses of such counsel incurred after notice from the LLC of its assumption of the defense shall be at the expense of the Member or Former Member unless (A) the employment of counsel by the Member or Former Member has been authorized by the LLC, (B) the Member or Former Member shall have reasonably concluded that there may be a conflict of interest between the LLC and the Member or Former Member in the conduct of the defense of such action, or (C) the LLC shall not in fact have employed counsel to assume the defense of such action, in each of which cases the fees and expenses of the Member's or Former Member's separate counsel shall be at the expense of the LLC.  The LLC shall not be liable to indemnify the Member or Former Member for any amounts paid in settlement of any action or claim effected without the LLC's written consent.  The LLC shall be permitted to settle any action, except that it shall not settle any action or claim in any manner which would impose any penalty or limitation on the Member or Former Member without such Member's or Former Member's written consent.  Neither the LLC nor the Members or Former Member will unreasonably withhold its consent to any proposed settlement.

12.9    Interest.  Members and Assignees shall not be entitled to interest on their capital contributions.

12.10    LLC Name; Goodwill.  The LLC shall have the exclusive ownership and right to use the LLC name as long as the LLC continues notwithstanding (i) the Retirement or Death of any Member.  No value shall be placed upon the books, records, and databases, or the name or the goodwill attached thereto, for the purpose of determining the value of a Member's Capital Account or interest in the LLC.

12.11    Loans.  Members may make loans to the LLC upon such terms and conditions as a Majority in Interest of the Managing Members may prescribe.

12.12  Notice.  All notices given shall be in writing.  Any notice required to be given to the LLC by any of the Members, Former Members, or Assignees shall be deemed to have been given when delivered by hand or deposited in any United States mailbox, addressed to the LLC at the address set forth in Paragraph 1.3 (Offices) and sent certified or registered mail, first-class postage prepaid.  Any written notice required to be given to a Member, Former Member, or Assignee shall be deemed to have been given when delivered by hand or deposited in any United States mailbox, addressed to such Member, Former Member, or Assignee at his address listed on Schedule A hereto and sent by certified or registered mail, first-class postage prepaid.

12.13  Power of Attorney.  Each Member hereby designates and appoints each Member, and each other Member, his true and lawful attorney, in his name, place, and stead, to make, execute, sign, and file the Certificate of Formation of the LLC, and any amendment thereto, and such other instruments, documents, or certificates that may from time to time be required by the laws of the United States of America, the State of California, the State of Delaware, or any other state in which the LLC shall conduct its affairs.

12.14  Variation of Pronouns.  All references to the masculine herein shall include both the feminine and the neuter.

12.15  Waiver of Accounting Upon Death.  Each Member expressly agrees that in the event of his Retirement or Death he waives on behalf of himself and his estate, and he directs the legal representative of his estate and any person interested therein, to waive the furnishing of any inventory, accounting, or appraisal of the assets of the LLC and any right to any audit or examination of the books of the LLC.

12.16  Counsel to the LLC.  Counsel to the LLC may also be counsel to a Member or Assignee with respect to matters related to or unrelated to the LLC.  Any Managing Member may execute on behalf of the LLC and the Members any consent to the representation of the LLC that counsel may request pursuant to the California Rules of Professional Conduct or similar rules in any other jurisdiction ("Rules").  The LLC has initially selected Gunderson Dettmer Stough Villeneuve Franklin & Hachigian, LLP ("LLC Counsel") as legal counsel to the LLC.  Each Member and Assignee acknowledges that LLC Counsel does not represent any Member or Assignee in its capacity as a Member or Assignee in the absence of a clear and explicit written agreement to such effect between the Member and LLC Counsel (and then only to the extent specifically set forth in such agreement), and that in the absence of any such agreement LLC Counsel shall owe no duties directly to a Member or Assignee.  In the event any dispute or controversy arises between any Member or Assignee and the LLC, or between any Member or Assignee or the LLC, on the one hand, and any other Member or Assignee that LLC Counsel represents, on the other hand, then each Member and Assignee agrees that LLC Counsel may represent such Member or Assignee or the LLC (and in the case where the dispute is between any Member or Assignee ("LLC Challenging Members") on one hand, and both the LLC and one or more other Members or Assignees ("LLC Position Members") on the other hand, LLC Counsel may represent both the LLC and such LLC Position Members or, alternatively, the LLC Challenging Member) in any such dispute or controversy to the extent

permitted by the Rules, and each Member and Assignee hereby consents to such representation. Each Member and Assignee further acknowledges that, whether or not LLC Counsel has in the past represented or is currently representing such Member or Assignee with respect to other matters, LLC Counsel has not represented the interests of any Member or Assignee in the preparation and negotiation of this Agreement.

ARTICLE XIII

TAX COMPLIANCE PROVISIONS

13.1    Substantial Economic Effect.    The provisions of Article II (Definitions), and the other provisions of this Agreement relating to the maintenance of Capital Accounts and procedures upon liquidation of the LLC, are intended to comply generally with the provisions of Regulations Section 1.704-1, and shall be interpreted and applied in a manner consistent with such Regulations and, to the extent the subject matter thereof is otherwise not addressed by this Agreement, the provisions of Regulations Section 1.704-1 are hereby incorporated by reference unless the Members shall determine that such incorporation will result in economic consequences inconsistent with the economic arrangement among the Members and Assignees as expressed in this Agreement. In the event the Managing Members shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed or allocated or the manner in which distributions and contributions upon liquidation (or otherwise) of the LLC (or any Member's or Assignee's interest therein) are effected in order to comply with such Regulations and other applicable tax laws, or to ensure that the LLC is treated as a partnership for tax purposes, or to achieve the economic arrangement of the Members and Assignees as expressed in this Agreement, then notwithstanding Paragraph 12.2 (Amendment), the Managing Members may make such modification, provided that it is not likely to have more than an insignificant detrimental effect on the total amounts distributable pursuant to Article VII (Distributions) and Article X (Dissolution) as applied without giving effect to such modification. The Managing Members shall also (a) make any adjustments that are necessary or appropriate to maintain equality between the Capital Accounts of the Members and Assignees and the amount of LLC capital reflected on the LLC's balance sheet, as computed for book purposes pursuant to this Agreement, in accordance with Regulations Section 1.704-1(b)(2)(iv)(g), and (b) make any appropriate modifications in the event unanticipated events (such as the incurrence of nonrecourse indebtedness) might otherwise cause the allocations under this Agreement to not comply with Regulations Section 1.704-1(b) (and in the case of the incurrence of nonrecourse indebtedness, Regulation Section 1.704-2), provided in each case that the Managing Members determine that such adjustments or modifications shall not result in economic consequences inconsistent with the economic arrangement among the Members and Assignees as expressed in this Agreement.

13.2    Other Allocations.    Notwithstanding the provisions of Article VI (Allocations) and Paragraph 10.3 (Dissolution Procedures), the allocations provided therein shall be subject to the following exceptions:

(a)     Qualified Income Offset; Prophylactic Offsets; Minimum-Gain Chargeback.

(i)     In the event any Member's or Assignee's Capital Account has an Unadjusted Excess Negative Balance (as defined in clause (vi) of this subparagraph 13.2(a)) at the end of any Fiscal Year, such Member or Assignee will be reallocated items of LLC book income or gain for such Fiscal Year (and, if necessary, future Fiscal Years) in the amount necessary to eliminate such Unadjusted Excess Negative Balance as quickly as possible.

(ii)     In the event any Member or Assignee unexpectedly receives any adjustments, allocations or distributions described in Regulations Sections 1.704-1(b)(2)(ii)(d)(4) through (d)(6), items of LLC book income and gain shall be specially allocated to such Member's or Assignee's Capital Account in an amount and manner sufficient to eliminate, to the extent required by Regulations Section 1.704-1(b)(2)(ii)(d), the Excess Negative Balance (as defined in clause (v) of this subparagraph 13.2(a)) in such Member's or Assignee's Capital Account created by such adjustments, allocations or distributions as quickly as possible. This clause (ii) is intended to and shall in all events be interpreted so as to constitute a "qualified income offset" within the meaning of Regulations Section 1.704-1(b)(2)(ii)(d).

(iii)     A Member's or Assignee's Capital Account shall not be allocated any item of book deduction or loss to the extent such allocation would cause such Capital Account to have an Excess Negative Balance (as defined in clause (v) of this subparagraph 13.2(a)).

(iv)     Any special allocations pursuant to this subparagraph 13.2(a) shall be taken into account as soon as possible in computing subsequent allocations, so that over the term of the LLC the net amount of any items so allocated and the profit, gain, loss, income, and expense and all other items allocated to each Member and Assignee shall, to the extent possible, be equal to the net amount that would have been allocated to each such Member or Assignee if such original allocations pursuant to this subparagraph 13.2(a) had not occurred.

(v)     For purposes of this subparagraph 13.2(a), "Excess Negative Balance" shall mean the excess of the negative balance in a Member's or Assignee's Capital Account (computed with any adjustments which are required for purposes of Regulations Section 1.704-1(b)(2)(ii)(d)) over the amount such Member or Assignee is obligated to restore to the LLC (computed under the principles of Regulations Section 1.704-1(b)(2)(ii)(c)) inclusive of any addition to such restoration obligation pursuant to application of the provisions of Regulation Sections 1.704-2, or any successor provision thereto).

(vi)     For purposes of this subparagraph (a) "Unadjusted Excess Negative Balance" shall have the same meaning as Excess Negative Balance, except that the Unadjusted Excess Negative Balance of a Member or Assignee shall be computed without effecting the reductions to such Member's or Assignee's Capital Account which are described in Regulations Section 1.704-1(b)(2)(ii)(d).

(b)    Imputed Income.    To the extent the LLC has taxable interest income or expense imputed with respect to any promissory note or other obligation between any Member or Assignee and the LLC, as maker and holder respectively, pursuant to Section 483, Sections 1271 through 1288, or Section 7872 of the Code, such imputed interest income or expense shall be specially allocated to the Member or Assignee to whom such promissory note relates, and such Member's or Assignee's Capital Account shall be adjusted as appropriate to reflect the recharacterization as interest of a portion of the principal amount of such promissory note and to reflect any deemed contribution or distribution of such interest income.    The foregoing provisions of this subparagraph 13.2(b) shall not apply to any interest or original issue discount expressly provided for in any such promissory note or other obligation.

(c)    Section 754 Elections.    Notwithstanding the provisions of Article VI (Allocations), to the extent an adjustment to the adjusted tax basis of any LLC asset pursuant to Code Section 734(b) or Code Section 743(b) is required, pursuant to Regulations Section 1.704-1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of Profit (if the adjustment increases the basis of the asset) or Loss (if the adjustment decreases such basis) and such Profit or Loss shall be specially allocated to the Members and Assignees in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations.

(d)    Recharacterizations of Certain Transactions.    Any income, gain, loss, or deduction (collectively, the "Recharacterization Items") realized as a direct or indirect result of the issuance or transfer (collectively, the "Issuance") of an LLC interest by the LLC to a Member or Assignee or the recharacterization (the "Recharacterization") of a distribution as a payment for tax purposes shall be allocated among the Members and Assignees so that (after effecting appropriate adjustments to the Capital Accounts of the Members and Assignees to reflect the tax treatment of the Issuance or the Recharacterization) the aggregate amount (including any distributions recharacterized as payments for tax purposes and any amounts received upon liquidation of the LLC) that each Member and Assignee is entitled to receive from the LLC over the life thereof (and, to the extent possible, each Accounting Period thereof) is equal to the aggregate amount that each such Member or Assignee would have been entitled to receive had the Issuance resulted in no income, gain, loss, or deduction to the LLC or any of its Members or Assignees (including the recipient of the LLC interest) or had the Recharacterization not occurred, as the case may be.    In addition, to the extent possible without contravening the preceding sentence, the Recharacterization Items shall be allocated in a manner that puts each Member and Assignees, as soon as possible, in the same after-tax position as they would have been in had the Issuance resulted in no income, gain, loss, or deduction to either the LLC or any of its Members or Assignees (including the recipient of the LLC interest) or had the Recharacterization not occurred, as the case may be.

13.3.    Compliance with Timing Requirements of Regulations.

(a)    Notwithstanding any other provision of this Agreement, in the event the LLC is "liquidated" within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g), (i)

distributions shall be made pursuant Article X (Dissolution) to the Members or Assignees who have positive Capital Accounts in compliance with Regulations Section 1.704-1(b)(2)(ii)(b)(2), and (ii) if any Member or Assignee has a deficit balance in his or her Capital Account (after giving effect to all contributions, distributions, and allocations for all taxable years, including the year during which such liquidation occurs), such Member or Assignee shall have no obligation to make any contribution to the capital of the LLC with respect to such deficit, and such deficit shall not be considered a debt owed to the LLC or to any other person for any purpose whatsoever. In the discretion of a Majority in Interest of the remaining Members, a pro rata portion of the distributions that would otherwise be made to the Members pursuant to this Paragraph 13.3 or Article X (Dissolution) may be:

(i)    distributed to a trust established for the benefit of the Members or Assignees for the purposes of liquidating LLC assets, collecting amounts owed to the LLC, and paying any contingent liabilities or obligations of the LLC arising out of or in connection with the LLC. The assets of any such trust shall be distributed to the Members or Assignees from time to time, in the reasonable discretion of a Majority in Interest of the remaining Members, in the same proportions as the amount distributed to such trust by the LLC would otherwise have been distributed to the Members or Assignees pursuant to this Agreement; or

(ii)    withheld to provide a reasonable reserve for LLC liabilities (contingent or otherwise) and to reflect the unrealized portion of any installment obligations owed to the LLC, provided that such withheld amounts shall be distributed to the Members or Assignees as soon as practicable.

(b)    Notwithstanding the provisions of subparagraph (a) hereof, in the event the LLC is liquidated within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g) but a distribution of the LLC's assets is not otherwise required pursuant to Article X (Dissolution), the LLC's assets shall not be distributed to the Members or Assignees. Instead, the LLC shall be deemed to have contributed all of its assets and liabilities to a new limited liability company and distributed interests in the new limited liability company to the Members and Assignees and thereafter such new limited liability company will be treated as the LLC. Notwithstanding any provision of this Agreement to the contrary, in no event shall such deemed contribution and distribution affect the economic arrangement among the Members and Assignees as expressed in this Agreement (including, without limitation, their Capital Account balances or rights to receive distributions).

(c)    In the event any Member's or Assignee's interest in the LLC is "liquidated" within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g) at a time when such Member's Capital Account has a deficit balance (after giving effect to all contributions, distributions, and allocations for all taxable years, including the year during which such liquidation occurs), then except to the extent necessary to effect the intent of the Members, Former Members, Assignees and former Assignees to share LLC liabilities and other obligations in the proportions set forth in Paragraph 4.3 (Sharing of Lookback Liability to the Fund) and except to the extent expressly required pursuant to Paragraph 4.4 (Limitation on Liability of the

Members), such Member or Assignee shall have no obligation to make any contribution to the capital of the LLC with respect to such deficit, and such deficit shall not be considered a debt owed to the LLC or to any other person for any purpose whatsoever.

(d)    In no event shall this Paragraph 13.3 be construed to alter the manner in which the LLC liabilities and other obligations are to be shared among the Members and Assignees as set forth in Paragraph 4.3 (Sharing of Lookback Liability to the Fund).

13.4    Sharing Arrangement; Interest in LLC Items. The Members agree that the allocation and distribution provisions contained in this Agreement represent the sharing arrangement as between the Members and Assignees and represent their interests in such allocated items and, therefore, in the event that any transaction or relationship between the parties to this Agreement is recharacterized and the provisions of this Agreement do not specifically address the effect such recharacterization should have on the allocations provided for herein, such allocations hereunder shall be made in a manner which maintains the Capital Account balances of the Members and Assignees at the same levels they would have been had no such recharacterization occurred.

13.5    Withholding. The LLC shall at all times be entitled to make payments with respect to any Member or Assignee in amounts required to discharge any obligation of the LLC to withhold or make payments to any governmental authority with respect to any federal, state, local, or other jurisdictional tax liability of such Member or Assignee arising as a result of such Member's or Assignee's interest in the LLC. To the extent each such payment satisfies an obligation of the LLC to withhold, with respect to any distribution to a Member on which the LLC did not withhold or with respect to any Member's or Assignee's allocable share of the income of the LLC, each such payment shall be deemed to be a loan by the LLC to such Member or Assignee (which loan shall be deemed to be immediately due and payable) and shall not be deemed a distribution to such Member or Assignee. The amount of such payments made with respect to such Member or Assignee, plus interest, on each such amount from the date of each such payment until such amount is repaid to the LLC at an interest rate per annum equal to the prime rate, from time to time in effect, of the Wells Fargo Bank, N.A., San Francisco, California, shall be repaid to the LLC by (a) deduction from any cash distributions made to such Member or Assignee pursuant to this Agreement, or (b) earlier payment by such Member or Assignee to the LLC, in each case as determined by the LLC in its discretion. The LLC may, in its discretion, defer making distributions to any Member or Assignee owing amounts to the LLC pursuant to this Paragraph 13.5 until such amounts are paid to the LLC and shall in addition exercise any other rights of a creditor with respect to such amounts. Each Member and Assignee agrees to indemnify and hold harmless the LLC and each of the Members and Assignees, from and against liability for taxes, interest, or penalties which may be asserted by reason of the failure to deduct and withhold tax on amounts distributable or allocable to said Member or Assignee. Any amount payable as indemnity hereunder by a Member or Assignee shall be paid promptly to the LLC upon request for such payment from the LLC, and if not so paid, the LLC shall be entitled to claim against and deduct from the Capital Account of, or from any distribution due to, the affected Member or Assignee for all such amounts.

IN WITNESS WHEREOF, the Members have executed this Agreement as of the date first set forth above.

MANAGING MEMBERS:

_____
Alexander P. Cilento

_____
E. David Crockett

_____
Thaddeus J. Whalen

<u>SCHEDULE A</u>

SCHEDULE OF MEMBERS

<u>Members:</u>

| Name | LLC Percentage |
|------|----------------|
| **Managing Members** | |
| Alexander P. Cilento | 31.979% |
| 1198 Jefferson Way | |
| Laguna Beach, CA 92651 | |
| | |
| E. David Crockett | 31.979% |
| 1000 Fremont Avenue, Suite 200 | |
| Los Altos, CA 94024 | |
| | |
| Thaddeus J. Whalen | 31.979% |
| 15930 Romita Court | |
| Monte Sereno, CA 95030 | |
| | |
| **Assignees** | |
| Stephen J. Fowler | 4.063% |
| 216 27th Street | |
| San Francisco, CA 94131 | |
| | |
| Total of All Members and Assignees | 100.000% |

EXHIBIT A

NOTE

$_____                                                    Date: _____

      For value received, the undersigned ("Optionee") hereby promises to pay to _____, (the "Defaulting Party"), at its principal office at _____ without interest, the sum of _____ Dollars ($_____), according to the following terms and conditions:

      1.    This Note is secured by the grant of a security interest in that portion of Optionee's limited liability company interest (the "Interest") in _____ _____ Aspen Ventures Management III, L.L.C., a Delaware limited liability company (the "LLC") that has been acquired by Optionee from the Defaulting Party.

      2.    This Note and the Interest pledged to secure it are subject to all of the terms and conditions of a security agreement of the same date between the Defaulting Party and Optionee, a copy of which agreement is attached hereto (the "Security Agreement").

      3.    <u>Date of Payment</u>.  This Note shall become due and payable as follows:

      (a)    <u>In full</u>:  thirty (30) days after termination of the LLC, including any extensions thereof.

      (b)    <u>In part</u>:  pursuant to the provisions of Paragraph 2(b)(2) of the Security Agreement.

      4.    <u>Remedies</u>.  The Defaulting Party, by acceptance hereof, agrees for itself, its representatives, successors, and assigns that neither Optionee, his heirs, executors, administrators, nor assigns shall be personally liable on this Note, it being intended that Optionee's obligation to pay the principal amount of this Note is included for the sole purpose of establishing the existence of the indebtedness represented hereby, and that in the event of default, the Defaulting Party and any successor or assign shall look for payment solely to the Interest and will not make claim or institute any action or proceeding against Optionee, his heirs, executors, administrators, representatives, successors, or assigns for the payment of this Note or for any deficiency remaining after application of the Interest, or otherwise; provided, however, that nothing herein contained shall be construed (i) to release or impair the indebtedness evidenced by this Note, or of the right of the Defaulting Party to enforce its rights with respect to the Interest, or (ii) to preclude the application of the Interest to the payment of the Note in accord with its terms.

OPTIONEE:

_____

Accepted:

DEFAULTING PARTY:

_____

EXHIBIT B

SECURITY AGREEMENT

This Agreement, made and entered into this ___ day of _____, 19___,
by and between _____ ("Optionee") and _____ (the "Defaulting Party") sets forth the
terms and conditions governing the nonrecourse secured note (the "Note") executed this date by
the parties to this Agreement.

1.    As security for the indebtedness evidenced by said Note, Optionee has
granted to the Defaulting Party a security interest in that portion of Optionee's limited liability
company interest that has been acquired by Optionee from the Defaulting Party (the "Interest") in
Aspen Ventures Management III, L.L.C., a Delaware limited liability company (the "LLC").

2.    Optionee shall retain and have at all times the following rights and
obligations with respect to the Interest:

(a)    General:  Optionee shall retain and have full legal and beneficial
ownership of the Interest and shall have the benefit of any increase and bear the risk of any
decrease in the value of the Interest.  Optionee shall have the sole right to vote with respect to the
Interest and to any income therefrom or any distributions from the LLC.  Optionee shall pay all
taxes or other charges assessable against him or her upon or with respect to the Interest or any
income or distributions therefrom.

(b)    Sales of the Interest:  Optionee shall have the right at any time to
direct the sale of any or all of the Interest provided that:

(i)    If all of the Interest is sold, the net proceeds of such sale
shall first be used to pay the indebtedness evidenced by the Note, and the balance, if any, shall be
paid promptly by the Defaulting Party to Optionee.

~~(ii)    If only part of the Interest is sold, the Defaulting Party shall
retain in part or full payment of the indebtedness that percentage of the net proceeds from such
sale that the balance due on the Note before such sale bears to the total value of the Interest~~
before such sale, valued in accordance with the LLC's Amended and Restated Limited Liability
Company Agreement dated as of January 15, 1999 (the "LLC Agreement").

(c)    Release of Security Interest.  Optionee shall have the right at any
time to pay in cash to the Defaulting Party the entire indebtedness evidenced by the Note to
release the Interest from the security interest granted hereunder concurrently with such payment.

3.    Upon payment of the indebtedness in full, the Defaulting Party shall
endorse the Note as discharged and satisfied in full, and shall file a termination statement relating
to the Interest or take such other steps as may be necessary to release the Interest from the
security interest granted hereunder.

GDSVF&H\180791.1

4.    As holder of the Note and holder of a security interest in the Interest, the Defaulting Party shall have the right, if the Note is not paid or satisfied on the date for payment set forth in the Note, to liquidate the Interest and to apply the proceeds of such liquidation in payment in whole or in part, of the indebtedness evidenced by the Note.

(a)    Any such liquidation may be effected in any manner, including a sale or sales for cash or an exchange for other securities of any kind, or in any other manner, at a public or private sale, with or without notice or advertisement, as the Defaulting Party may in its sole discretion determine.

(b)    The purchaser of any securities at any such sale shall take the same free of any right of redemption and any other right or claim on the part of the undersigned, all of which rights and claims are hereby waived and released.

(c)    The Defaulting Party may be the purchaser at such sale but only at fair market value thereof determined in accordance with Articles V and XI of the LLC Agreement.

5.    <u>Miscellaneous Provisions</u>.

(a)    The Defaulting Party, as secured party, may file a financing statement or statements covering its security interest in the Interest and take such other steps as may be necessary to perfect its security interest in the Interest and Optionee shall fully cooperate with the Defaulting Party in connection therewith. Title to the Interest shall remain in Optionee until the Interest is liquidated by the Defaulting Party in accordance with the terms hereof. All of the right and interest of the Defaulting Party in the Interest shall terminate upon payment in full of all indebtedness evidenced by the Note.

(b)    This Agreement and Note shall be governed by the laws of the State of Delaware as applied to agreements between Delaware residents made and to be performed entirely within the State of Delaware.

OPTIONEE:

Address: _____

_____

_____

ACCEPTED this _____ day of _____, 19__

DEFAULTING PARTY:

_____

By: _____

GDSVF&H\180791.1                                    E-5