**EXHIBIT 6**

## ASPEN VENTURES MANAGEMENT III, L.L.C.

### FIRST AMENDMENT TO
### SECOND AMENDED AND RESTATED
### LIMITED LIABILITY COMPANY AGREEMENT

This FIRST AMENDMENT TO THE SECOND AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (this "First Amendment") of Aspen Ventures Management III, L.L.C., a Delaware limited liability company (the "LLC"), dated as of August 20, 1999 (the "LLC Agreement"), is made and entered into as of April 1, 2002, by and among Alexander P. Cilento ("Mr. Cilento"), E. David Crockett ("Mr. Crockett"), Thaddeus J. Whalen ("Mr. Whalen"), John Kohler ("Mr. Kohler") and C. Lloyd Mahaffey ("Mr. Mahaffey"), each having duly executed this First Amendment or a counterpart of this First Amendment intending to be legally bound by the following terms and conditions. Capitalized terms used herein and not otherwise defined in this First Amendment shall have the meanings set forth in the LLC Agreement.

WHEREAS, the parties acknowledge that pursuant to that certain First Amendment to the Amended and Restated Limited Partnership Agreement of Aspen Ventures III, L.P., dated as of April 1, 2002 (the "Fund Amendment") (the Amended and Restated Limited Partnership Agreement of Aspen Ventures III, L.P., as amended by the Fund Amendment, and as subsequently amended from time to time, the "Fund Agreement"), (i) the Fund was divided into two separate series of assets and liabilities, the "Series A Fund" (which term, for purposes of this First Amendment, shall have the meaning assigned to the term "Series A" in the Fund Amendment) and the "Series B Fund" (which term, for purposes of this First Amendment, shall have the meaning assigned to the term "Series B" in the Fund Amendment), and (ii) the Limited Partners of the Fund were divided into two separate groups, the Series A Limited Partners (as such term is defined in the Fund Amendment) and the Series B Limited Partners (as such term is defined in the Fund Amendment);

WHEREAS, the parties desire that, in connection with the division of the Fund into the Series A Fund and the Series B Fund, and the division of the Limited Partners of the Fund into the Series A Limited Partners and the Series B Limited Partners, (a) the assets and liabilities of the LLC shall be divided into two separate series for purposes of the Act: (i) "Series A" which shall consist of the assets and liabilities of the LLC as they existed immediately prior to the execution of this First Amendment, the capital contributions received with respect to the "Series A Members and Assignees" (as defined below), any allocations of income, gain, loss or deduction received by the LLC with respect its interest in the Fund to the extent attributable to the Series A Fund, any distributions received by the LLC from the Fund pursuant to Articles VI and X of the Fund Agreement to the extent attributable to the Series A Fund, any management fees paid to the LLC by the Fund to the extent attributable to the Series A Fund, and any other assets acquired and liabilities incurred in connection with the holding, management and disposition of such assets, and (ii) "Series B" which shall consist of the capital contributions received with respect to the "Series B Members and Assignees" (as defined below), any allocations of income, gain, loss or deduction received by the LLC with respect its interest in the Fund to the extent attributable to the Series B Fund, any distributions received by the LLC from

the Fund pursuant to Articles VI and X of the Fund Agreement to the extent attributable to the Series B Fund, any management fees paid to the LLC by the Fund to the extent attributable to the Series B Fund, and any other assets acquired and liabilities incurred in connection with the holding, management and disposition of such assets, (b) to the maximum extent possible under this Agreement, Series A and Series B shall generally be treated as two separate limited liability companies, as described more particularly below, (c) the Members and Assignees of the LLC shall be divided into two separate groups consisting of (i) the "Series A Members and Assignees," which shall be defined as those Members and Assignees set forth on Schedule A hereto and (ii) the "Series B Members and Assignees," which shall be defined as those Members and Assignees set forth on Schedule B hereto, and (d) there shall be two separate groups of Managing Members of the LLC consisting of (i) the "Series A Managing Members," which shall be defined as those Series A Members designated as such on Schedule A and (ii) the "Series B Managing Members," which shall be defined as those Series B Members designated as such on Schedule B;

WHEREAS, the parties desire that each of Mr. Kohler and Mr. Mahaffey be hereby admitted to the LLC as Series B Members; and

WHEREAS, the undersigned Members, which constitute a Majority in Interest of the Managing Members, desire to amend the LLC Agreement as set forth below;

NOW, THEREFORE THE PARTIES HERETO AGREE AS FOLLOWS:

1. <u>Series A and Series B</u>.

(a) Except to the extent specifically provided in this First Amendment, to the maximum extent permitted under the Act, (a) the interests in the LLC with respect to Series A on the one hand, and Series B on the other hand, shall constitute separate series of limited liability company interests within the meaning of Section 18-215 of the Act, (b) the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series will be enforceable against the assets of such series only, and not against the assets of the LLC generally or any other series thereof, and none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to any series shall be enforceable against the assets of such other series, (c) separate and distinct records shall be maintained for Series A and Series B, and assets associated with any particular series shall be accounted for separately from the other assets of the LLC or any other series of the LLC, (d) the assets of one series shall not be commingled with the assets of any other series, and (e) the interests in the LLC of the Series A Members and Assignees relate only to Series A, and the interests in the LLC of the Series B Members and Assignees relate only to Series B. The Managing Members (defined for such purpose to include all Series A Managing Members and all Series B Managing Members) are hereby authorized to effect any such amendments to the LLC's Certificate of Formation as are necessary to cause Series A and Series B to be treated as separate series of limited liability company interests under the Act.

(b) To the extent recommended by the LLC's tax advisors, the Managing Members (defined for such purpose to include all Series A Managing Members and all Series B

Managing Members) shall be authorized to take actions to cause Series A and Series B to be treated as separate partnerships for federal income tax purposes.

(c) The allocation of the expenses of the LLC between Series A and Series B shall be as follows:

(i) Any expenses incurred by the LLC as of the time immediately prior to the execution of this First Amendment, other than expenses attributable to the preparation of this First Amendment, shall be expenses associated with Series A.

(ii) All other expenses of the LLC, including any expenses attributable to the preparation of this First Amendment, shall be allocated between Series A and Series B in such a manner as both a Majority in Interest of the Series A Managing Members and a Majority in Interest of the Series B Managing Members shall determine.

(iii) Prior to the beginning of a Fiscal Year, (A) the Series A Managing Members shall agree upon a budget for Series A with respect to such Fiscal Year and (B) the Series B Managing Members will agree upon a budget for Series B with respect to such Fiscal Year.

2. <u>Admission of Mr. Kohler and Mr. Mahaffey</u>. Mr. Kohler and Mr. Mahaffey are hereby admitted (the "Admissions") to the LLC as Members, and more particularly as Series B Members. In connection with the Admissions, each of Mr. Kohler and Mr. Mahaffey hereby acknowledges that he (i) has read the LLC Agreement and this First Amendment, (ii) accepts and agrees to be bound by the terms of the LLC Agreement as amended by this First Amendment, and (iii) assumes all of the rights and obligations of a Member of the LLC. In particular but without limitation, each of Mr. Kohler and Mr. Mahaffey hereby agrees to be bound by the provisions of Paragraphs 4.3 and 4.4(b) of the LLC Agreement, as amended hereby, and accordingly agrees to contribute amounts to the LLC to the extent necessary to satisfy his obligation to share the economic burden of the liabilities described in such Paragraph 4.3. The current Managing Members hereby consent to the Admissions.

3. <u>Application of LLC Agreement to Series A and Series B</u>.

(a) <u>In General</u>. Except as provided otherwise in this First Amendment, the provisions of the LLC Agreement (as amended by this First Amendment), shall to the extent practicable apply separately to the Series A Members and Assignees with respect to their interests in Series A on the one hand, and the Series B Members and Assignees with respect to their interests in Series B on the other hand. For example, and without limiting the foregoing, (i) capital calls shall be made separately with respect to each series, (ii) the determination of Profit and Loss shall be made separately with respect to each series as though each such series were a separate limited liability company, (iii) separate Capital Accounts shall be maintained for each Member or Assignee with respect to each series, (iv) Profit or Loss (or items thereof) with respect to a series shall be allocated only to the Members and Assignees of such series, (v) distributions (liquidating and non-liquidating) with respect to each series shall be made to the Members and Assignees of such series solely from the assets of such series, (vi) the Optionees with respect to the interest of a Member or Assignee in a series which has failed to make one of

its contributions to such series under Paragraph 4.2 of the LLC Agreement shall be comprised only of the other Members and Assignees of such series, (vii) the application of Paragraphs 4.3 and 4.4 of the LLC Agreement shall apply separately with respect to Series A and the Series A Fund on the one hand, and Series B and the Series B Fund on the other hand (provided that each Member and Assignee hereby acknowledges that although he or she may be a Member of Assignee, as the case may be, of one series only (or have a larger relative interest in such series), he or she may become liable to contribute amounts to the LLC as provided in Paragraph 4.4 of the LLC Agreement with respect to such series solely as a result of the financial performance of the other series), (viii) in the event of a purchase by the LLC of the Unvested Interest of a Former Member or Former Assignee in a series, only the interests and the capital account balances of the Members of such series shall be correspondingly increased pursuant to Paragraph 8.2 of the LLC Agreement (in the event a Majority in Interest of the Managers of such series elect to allow the Members to purchase such Unvested Interest in lieu of the LLC, only the Members of such series shall participate in such purchase), and (ix) any matters which clearly affect only a particular series that requires the vote or consent of a specified percentage in interest of the Managing Members shall require the vote or consent of only such percentage in interest of the Managing Members of such series.

(b) <u>Schedule A and New Schedule B</u>. Schedule A of the LLC Agreement sets forth the Series A Members and Assignees and their LLC Percentages with respect to their interests in Series A. A new Schedule B in the form attached to this First Amendment is hereby added to the LLC Agreement, and such Schedule B, as amended form time to time, shall set forth the Series B Members and Assignees and their LLC Percentages with respect to their interests in Series B. Schedule B shall be amended to reflect (i) the admission of any new Series B Member, (ii) the Retirement or Death or substitution of any Series B Member, (iii) the creation or substitution of any Series B Assignees, or (iv) the receipt by the LLC of notice of any change of address of a Series B Member or Series B Assignee. Amended Schedule B shall be kept on file at the principal office of the LLC and shall supersede all prior Schedule B's and become part of this Agreement.

(c) <u>Managing Members</u>.

(i) Any matters which clearly affect only a particular series shall require the vote or consent of only the Managing Members of such series, and any action by the LLC in its capacity as General Partner of the Fund, to the extent such action affects only a particular series of the Fund, shall require the vote or consent of only the Managing Members of the corresponding series of the LLC (*e.g.*, actions by the LLC in its capacity as General Partner of the Fund, to the extent such action affects only the Series A Fund, shall require the vote or consent of only the Series A Managing Members).

(ii) Notwithstanding the general rule set forth in Paragraph 3(c)(i) above, any matters which affect both Series A and Series B, and any action of the LLC in its capacity as General Partner of the Fund, to the extent such action affects both the Series A Fund and the Series B Fund, shall require the vote or consent of both a Majority in Interest of the Series A Managing Members and a Majority in Interest of the Series B Managing Members. Without limiting the foregoing, the following actions shall require the vote or consent of both a

Majority in Interest of the Series A Managing Members and a Majority in Interest of the Series B Managing Members:

 (A) Taking any action pursuant to Paragraphs 1.2 or 1.3 of the LLC Agreement, or extending the term of the LLC pursuant to Paragraph 1.5 of the LLC Agreement;

 (B) Electing to dissolve the LLC pursuant to Paragraph 10.1(b) of the LLC Agreement (as amended by this First Amendment); and

 (C) Allocating expenses of the LLC between Series A and Series B pursuant to Paragraph 1(c) above.

 (iii) Notwithstanding anything to the contrary in Paragraph 3(c)(ii) above, (1) the determination by the LLC in its capacity as General Partner of the Fund to draw down Leverage (as such term is defined in the Fund Agreement) which is attributable to the Series A Fund shall require the vote or consent of only a Majority in Interest of the Series A Managing Members and (2) the determination by the LLC in its capacity as General Partner of the Fund to draw down Leverage (as such term is defined in the Fund Agreement) which is attributable to the Series B Fund shall require the vote or consent of only a Majority in Interest of the Series B Managing Members.

 (iv) Paragraph 3.3(b), as it relates to actions taken with respect to the Securities or other investments of Series B or the Series B Fund only, is hereby replaced with the following:

> "Purchasing, selling, or otherwise acquiring or disposing of Securities or other investments by, or for, the LLC, the Fund or the Parallel Funds shall require the approval of a Majority in Interest of the Managing Members."

 (v) Paragraph 2.20 of the LLC Agreement, as applied to Series B only, is hereby replaced with the following:

> "Initially, Messrs. Cilento, Crockett, Kohler, Mahaffey and Whalen shall be Managing Members. Each Member admitted to the LLC subsequent to the admission of Messrs. Cilento, Crockett, Kohler, Mahaffey and Whalen shall not for purposes of this Agreement and the Fund Agreements be considered a "Managing Member" unless this Agreement or the documents governing such Member's admission to the LLC specifically provide that such Member is a Managing Member and the SBA consents to the admission of such Member as a Managing Member."

 (d) <u>Admission, Expulsion and Transfer</u>.

      (i)    The first two sentences of Paragraph 1.7(a) of the LLC Agreement, as applied to Series B only, are hereby replaced with the following:

> "Additional persons may be admitted as Members on such terms and conditions as are unanimously determined by the Managing Members. If it is proposed that any person be admitted as a Member pursuant to a Transfer, then such terms and conditions shall be determined by excluding as a Managing Member any Managing Member Transferring his interest."

      (ii)    The first sentence of Paragraph 1.7(b) of the LLC Agreement, as applied to Series B only, is hereby replaced with the following:

> "A Member shall be expelled by the LLC upon the demand of all Managing Members (excluding as a Managing Member, for purposes of such determination, the Managing Member to be expelled)."

      (iii)    The first sentence of Paragraph 1.7(c) of the LLC Agreement, as applied to Series B only, is hereby replaced with the following:

> "No Member or Assignee may Transfer his interest in the LLC, in whole or in part, without the prior unanimous written consent of the Managing Members (excluding as a Managing Member, for purposes of such determination, the Managing Member Transferring his interest)."

      (e)    <u>LLC Percentage</u>. Paragraph 2.18, as applied to Series B only, is hereby replaced with the following:

> "The initial LLC Percentages of the Members and Assignees are set forth on Schedule B. The sum of the LLC Percentages of the Members and Assignees shall at all times equal one hundred percent (100%). In the event of (a) the admission of a new Member, (b) the Transfer of all or a portion of a Member's or Assignee's interest in the LLC, (c) the contribution or withdrawal of capital by the Members or Assignees other than in proportion to their LLC Percentages, or (d) in similar circumstances, the LLC Percentages of the Members and Assignees shall be appropriately adjusted as determined in good faith by a Majority in Interest of the Managing Members. Schedule B shall be amended to reflect any adjustments to the LLC Percentages."

      (f)    <u>Term Percentage of Series B Members</u>. Paragraph 2.27 of the LLC Agreement, as applied to Series B only, is hereby replaced with the following:

"The Term Percentage for each of Messrs. Cilento, Crockett, Kohler, Mahaffey and Whalen shall mean that amount, determined on the date that such Member, respectively, becomes a Former Member, equal to the lesser of (i) the product of one and one thousand nine hundred and five ten thousandths percent (1.1905%) and the number of months (rounded to the nearest whole month) between [Insert Date of Agreement] and the date such Member becomes a Former Member and (ii) one hundred percent (100%)."

    (g)    <u>Capital Contributions</u>.

        (i)    <u>Series A</u>. The first sentence of Paragraph 4.2(a) of the LLC Agreement, as applied to Series A only, is hereby replaced with the following:

"On any date on which the LLC makes a Fund Contribution that is attributable to the Series A Fund, each Series A Member and Assignee shall, upon at least thirty (30) days prior written notice thereof, be required to make a concurrent cash contribution ("Concurrent Contribution") to the capital of the LLC in an amount equal to the product of such Series A Member's or Assignee's LLC Percentage (expressed as a decimal) and the Fund Contribution."

        (ii)    <u>Series B</u>. The first sentence of Paragraph 4.2(a) of the LLC Agreement, as applied to Series B only, is hereby replaced with the following:

"On any date on which the LLC makes a Fund Contribution that is attributable to the Series B Fund, each Series B Member and Assignee shall, upon at least thirty (30) days prior written notice thereof, be required to make a concurrent cash contribution ("Concurrent Contribution") to the capital of the LLC in an amount equal to the product of such Series B Member's or Assignee's LLC Percentage (expressed as a decimal) and the Fund Contribution."

    (h)    <u>Dissolution of LLC</u>.

        (i)    Paragraph 10.1 of the LLC Agreement, as applied to both Series A and Series B, is hereby replaced with the following:

"<u>Dissolution at Election of Members</u>.

    (a)    The LLC shall dissolve in accordance with Paragraph 1.5 and this Paragraph 10.1.

    (b)    The LLC may be dissolved at any time upon the written consent of both a Majority in Interest of the Managing Members of Series A and a Majority in Interest of the Managing Members of Series B.

(c) The LLC shall be dissolved upon the entry of a decree of judicial dissolution under Section 18-802 of the Act."

(ii) The text of Paragraph 10.2 of the LLC Agreement, as applied to both Series A and Series B, is hereby deleted in its entirety and replaced with the following:

"[Reserved]."

(iii) The portion of Paragraph 10.3 immediately preceding the first colon, as applied to both Series A and Series B, is hereby replaced with the following:

"Upon dissolution of the LLC at the expiration of the LLC term pursuant to Article I (Organization), or pursuant to Paragraph 10.1 (Dissolution at Election of Members), the following shall occur"

(i) <u>Amendment of LLC Agreement</u>. With respect to any amendments to the LLC Agreement (or any waivers of noncompliance with any provision of the LLC Agreement) which affect only the Members of a particular series, the first sentence of Paragraph 12.7 of the LLC Agreement shall be applied so as to require the approval of only a Majority in Interest of the Managing Members of such series. In the case of any amendments to the LLC Agreement (or any waivers of noncompliance with any provision of the LLC Agreement) which would affect both the Series A Members and the Series B Members, the first sentence of Paragraph 12.7 of the LLC Agreement shall be applied so as to require the approval of both a Majority in Interest of the Managing Members of Series A and a Majority in Interest of the Managing Members of Series B of the Members.

(j) <u>Indemnification</u>. It is the intent of the parties to provide, to the maximum extent permitted under the Act, that the assets of one series shall not be available to indemnify any party pursuant to Paragraph 12.8 of the LLC Agreement for any liability associated with the actions of such party on behalf of the other series. Accordingly, to the maximum extent permitted under the Act, the provisions of Paragraph 12.8 of the LLC Agreement shall be applied separately with respect to Series A on the one hand and Series B on the other hand as though each series were a separate partnership.

(k) <u>Power of Attorney</u>. The provisions of Paragraph 12.13 shall apply separately with respect to Series A and the Series A Members on the one hand, and Series B and the Series B Members on the other hand.

(l) <u>Exhibit B of LLC Agreement</u>. Exhibit B of the LLC Agreement, as applied to Series A and Series B, is hereby replaced in its entirety by Exhibit B to this First Amendment.

4. <u>Counsel to the LLC</u>. The LLC has initially selected Gunderson Dettmer Stough Villeneuve Franklin & Hachigian, LLP ("LLC Counsel") as legal counsel to the LLC. Each Series A Member and each Series B Member hereby acknowledges that LLC Counsel does not represent any such Member in its capacity as a Member in the absence of a clear and explicit written agreement to such effect between the Member and LLC Counsel (and then only to the

extent specifically set forth in such written agreement), and that in the absence of any such written agreement LLC Counsel shall owe no duties directly to a Member. Each Series A Member and each Series B Member hereby further acknowledges that, whether or not LLC Counsel has in the past represented or is currently representing such Member with respect to other matters, LLC Counsel has not represented the interests of any Member in the preparation and negotiation of the LLC Agreement or this First Amendment.

5. <u>Continued Validity of LLC Agreement</u>. Except for the amendments set forth in this First Amendment, the LLC Agreement shall continue in full force and effect as originally constituted.

6. <u>Restatement of LLC Agreement</u>. Each Member hereby consents to the restatement of the LLC Agreement to incorporate the amendments made hereby.

7. <u>Governing Law</u>. Delaware law shall govern the validity of this First Amendment, the construction of its terms and the interpretation of the rights and duties of the parties.

8. <u>Counterparts</u>. This First Amendment may be executed in two or more counterparts, each which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this First Amendment as of the date first set forth above.

MANAGING MEMBERS:

_____
Alexander P. Cilento

_____
E. David Crockett

_____
John Kohler

_____
C. Lloyd Mahaffey

_____
Thaddeus J. Whalen

IN WITNESS WHEREOF, the undersigned have executed this First Amendment as of the date first set forth above.

MANAGING MEMBERS:

_____
Alexander P. Cilento

_____
E. David Crockett

_____
John Kohler

_____*[signature]*_____
C. Lloyd Mahaffey

_____
Thaddeus J. Whalen

GDSVF&H\#4111474v4

       IN WITNESS WHEREOF, the undersigned have executed this First Amendment as of the date first set forth above.

MANAGING MEMBERS:

_____
Alexander P. Cilento

_____
E. David Crockett

_____*[signature]*_____
John Kohler

_____
C. Lloyd Mahaffey

_____
Thaddeus J. Whalen

GDSVF&H\4111474v4

## SCHEDULE A

## SCHEDULE OF SERIES A MEMBERS

| Name | LLC Percentage |
|---|---|
| **Series A Managing Members** | |
| Alexander P. Cilento<br>1198 Jefferson Way<br>Laguna Beach, CA 92651 | 31.56233% |
| E. David Crockett<br>1000 Fremont Avenue, Suite 200<br>Los Altos, CA 94024 | 31.56233% |
| Thaddeus J. Whalen<br>15930 Romita Court<br>Monte Sereno, CA 95030 | 31.56233% |
| **Series A Assignees** | |
| Stephen J. Fowler<br>216 27th Street<br>San Francisco, CA 94131 | 4.06300% |
| Debra Schilling<br>671 Giralda Drive<br>Los Altos, Ca 94025 | 1.00000% |
| Sharon Bay<br>755 Arroyo Road<br>Los Altos, CA 94024 | 0.25001% |
| Total of All Members and Assignees | 100.00000% |

## SCHEDULE B

## SCHEDULE OF SERIES B MEMBERS

| Name | LLC Percentage |
|---|---|
| **Series B Managing Members** | |
| Alexander P. Cilento<br>1198 Jefferson Way<br>Laguna Beach, CA 92651 | 12.5% |
| E. David Crockett<br>1000 Fremont Avenue, Suite 200<br>Los Altos, CA 94024 | 12.5% |
| John Kohler<br>14395 Saratoga Avenue<br>Suite 130<br>Saratoga, CA 95070 | 25.0% |
| C. Lloyd Mahaffey<br>14395 Saratoga Avenue<br>Suite 130<br>Saratoga, CA 95070 | 25.0% |
| Thaddeus J. Whalen<br>15930 Romita Court<br>Monte Sereno, CA 95030 | 25.0% |
| **Series B Assignees** | |
| Total of All Members and Assignees | 100.000% |

## EXHIBIT B

## SECURITY AGREEMENT

In order to secure payment of all obligations of [_____] (the "Borrower") to [_____] (the "Pledgee"), under the promissory note dated [_____], 200_, in the original principal amount of [$_____.__] (the "Note"), Borrower hereby grants to Pledgee a security interest in that portion of Borrower's limited liability company interest in Aspen Ventures Management III, L.L.C., a Delaware limited liability company (the "LLC"), purchased by Borrower from Pledgee, not including that portion of such purchased interest for which Borrower has made, or has assumed the obligation to make, capital contributions (such security interest, along with the assets described in Section 2 below shall collectively be referred to as the "Collateral").

Borrower shall hold the Collateral in accordance with the following terms and provisions:

1.  Rights and Powers.

    (a) As long as there exists no event of default under Section 5 of this Agreement, Borrower shall have the following rights:

    (i) The right to vote with respect to the Collateral;

    (ii) The right to sell the securities or other assets included in the Collateral, provided the proceeds of such sale shall become part of the Collateral;

    (iii) The right to direct investment of the proceeds of a sale of the securities or other assets included in the Collateral;

    (iv) The right at any time to pay in cash to Pledgee all or any portion of indebtedness evidenced by the Note, which payment shall be applied to the payment of the principal of the Note;

    (v) The right to withdraw any portion of the Collateral and thereby release it from the security interest hereunder, provided, however that no such partial withdrawal may be made if it would reduce the value of the remaining Collateral below one hundred thirty-five percent (135%) of the balance of the Note remaining unpaid after any payment made by Borrower. The value of the Collateral shall be calculated pursuant to the valuation provisions of the LLC Agreement; and

    (vi) Notwithstanding Section 1(a)(v) above, the right to withdraw an amount of cash from the Collateral which may be necessary to satisfy any income tax liabilities arising out of ownership of the Collateral and/or the transaction generating the cash.

(b) All proxy statements and other stockholder materials pertaining to the Collateral shall be delivered to Borrower at the address indicated below.

2. **Duty to Deliver**. Any new, additional or different securities or cash that are distributed to Borrower with respect to the Collateral including (i) any distribution by the LLC, (ii) any stock dividend, stock split or reclassification of the capital stock of any corporation whose shares are secured hereunder or (iii) any merger, consolidation or other reorganization affecting the capital structure of any corporation whose shares are secured hereunder shall, upon receipt by Borrower, become part of the Collateral hereunder.

3. **Payment of Taxes and Other Charges**. Borrower shall pay out of the Collateral, prior to the delinquency date, all taxes, liens, assessments and other charges against the Collateral.

4. **Release of Collateral**. Provided that all indebtedness secured hereunder has at the time been paid in full or cancelled, the Collateral shall be immediately released from the security interest hereunder.

5. Event of Default.

(a) If the Note is not paid or satisfied on the date for payment set forth in the Note, such event shall constitute an event of default under this Agreement. Upon the occurrence of such event of default, Borrower shall give the Collateral to Pledgee and Pledgee may, at its election, declare the Note to be immediately due and payable and may exercise any or all of the rights and remedies granted to a secured party under the provisions of the Uniform Commercial Code (as now or hereafter in effect), including (without limitation) the power to dispose of the Collateral by public or private sale or to accept the Collateral in full payment of the Note.

(b) Any proceeds realized from the disposition of the Collateral pursuant to the foregoing power of sale shall be applied first to the payment of any income tax liabilities generated by such disposition, then applied to any reasonable expenses incurred by Pledgee in connection with the disposition, and finally to the payment of the Note. Any surplus proceeds shall be paid over to Borrower. In the event such proceeds prove insufficient to satisfy all obligations of Borrower under the Note, Borrower shall nevertheless have no further obligations under the Note.

6. **Applicable Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (except their choice-of-law provisions) and shall be binding upon the executors, administrators, heirs and assigns of the parties hereto.

7. **Arbitration**. Any controversy between the parties hereto involving the construction or application of any terms, covenants or conditions of this Agreement or the Note, or any claims arising out of or relating to this Agreement or the Note, or the breach hereof or thereof, will be submitted to and settled by final and binding arbitration in Palo Alto, California, in accordance with the rules of the American Arbitration Association then in effect, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. In the event of any arbitration under this Agreement or the Note, the

prevailing party shall be entitled to recover from the losing party reasonable expenses, attorneys' fees and costs incurred therein or in the enforcement or collection of any judgment or award rendered therein. The "prevailing party" means the party determined by the arbitrator to have most nearly prevailed, even if such party did not prevail in all matters, not necessarily the one in whose favor a judgment is rendered.

        8.     **Severability.** If any provision of this Agreement is held to be invalid under applicable law, then such provision shall be ineffective only to the extent of such invalidity, and neither the remainder of such provision nor any other provisions of this Agreement shall be affected thereby.

        9.     **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, this Agreement has been executed by the duly authorized representatives of the parties effective as of the date first written above.

[BORROWER]

By:_____
Name:_____
Title:_____

Address:

Agreed to and Accepted by:

[PLEDGEE]

By:_____
Name:_____
Title:_____

Address: