MATTHEW G. BALL (CA BAR 208881)
DEIRDRE M. DIGRANDE (CA BAR 199766)
**KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP**
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Tel: (415) 882-8200
Fax: (415) 882-8220
matthew.ball@klgates.com
deirdre.digrande@klgates.com

MARTIN D. TECKLER (*pro hac vice*)
**KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP**
1601 K Street, NW
Washington, DC 20006-1600
Tel: (202) 778-9000
Fax: (202) 778-9100
martin.teckler@klgates.com

Attorneys for Defendant
REDLEAF GROUP, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION in its capacity as Receiver for Aspen Ventures III,<br><br>Plaintiffs,<br><br>v.<br><br>REDLEAF GROUP, INC.,<br><br>Defendant and Third-Party Plaintiff,<br><br>v.<br><br>ASPEN VENTURES MANAGEMENT III, LLC, a Delaware Limited Liability Company, ALEXANDER P. CILENTO, a California resident, and DAVID CROCKETT, a California resident, and DOES 1-10,<br><br>Third-Party Defendants. | Case No. C-07-05350 JW (PVT)<br><br>**DECLARATION OF MICHAEL J. TOMANA IN SUPPORT OF REDLEAF GROUP, INC.'S OPPOSITION TO THIRD PARTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Date: June 23, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. James Ware |

1. I, Michael J. Tomana, am President and Chief Executive Officer of Redleaf Group, Inc. I make this Declaration in support of (1) Redleaf Group, Inc.'s Opposition to Third-Party Defendants' Motion for Summary Judgment and (2) as to Paragraph 2, to Redleaf Group, Inc.'s Opposition to Motion for Summary Judgment, or in the Alternative Summary Adjudication, on the Receiver's Claim for Breach of Contract. I have personal knowledge of the facts stated herein except where stated and, if called as a witness, I could testify competently thereto.

2. I have re-reviewed my Declaration in Support of Redleaf Group, Inc.'s Opposition to Motion for Summary Judgment, or in the Alternative Summary Adjudication, on the Receiver's Claim for Breach of Contract. In Paragraph 16 of that Declaration, the reference to the "<u>Redleaf</u> limited partners" should instead read "<u>Aspen</u> III-A limited partners." In all other respects, my Declaration is correct.

3. I understand that the Third-Party Defendants assert, in Paragraph 36, that Redleaf admits that it discovered that Aspen Ventures West II, L.P. ("Aspen II") was capitally impaired in 2003. Even if someone at Redleaf had found out that Aspen II was capitally impaired in 2003, there still would have been no way for Redleaf to realistically discover whether that impairment status had existed at the time Aspen III's management was in discussions with Redleaf in 2001 and 2002 and no basis to take action against the Third-Party Defendants since Redleaf was not a limited partner in Aspen II. Aspen II was a separately licensed SBIC, Redleaf had no investments in Aspen II, and no right to be given information relative to the operations of Aspen II, including information regarding capital impairment. As set forth in Paragraph 18 of my Declaration in opposition to the SBA's motion, Aspen III's management would not even consent to give Redleaf information about the Series A Investments made by Aspen III, even though Redleaf was a limited partner.

4. Third-Party Defendants also appear to place significance on the statement of Paragraph 36 in the Complaint that Aspen Ventures Management (the general partner of Aspen II and Aspen III) made no efforts to get new investors despite representations to the contrary. Redleaf in 2003 knew that AVM had not obtained new investors, this could have been because Aspen III's management team was unable to get new investors, or Aspen III's management simply changed its

mind about obtaining new investors. It is only with hindsight, within the context of everything else Redleaf learned, that Redleaf now believes that the representations regarding the potential for additional investors were false.

5. I further understand that the Third-Party Defendants are attaching some significance to Redleaf's knowledge of the June 2003 Series B investment in Reasoning, an Aspen II portfolio company. The reason why this was a problem for Redleaf at the time was not the fact that Reasoning was an Aspen II portfolio company, but that Redleaf and Aspen III's management had an understanding that Aspen III's management would seek approval from Redleaf's management for Series B investments in entities other than Redleaf portfolio companies. In this case, Aspen III's management made the investment in Reasoning without doing so.

6. The handling of the Series B investment in Reasoning and Aspen III's management's failure to obtain other investors, as well as other factors, caused Redleaf to lose faith in Aspen III's management. (What was not a factor was the capital impairment of Aspen II, because Redleaf did not know of Aspen II's capital impairment, as described above.) This loss of faith caused Redleaf to seek extrication from its capital commitment as described in paragraph 35.

7. In November and December 2003, I, along with John Kohler and Lloyd Mahaffey, negotiated with Thad Whalen and David Crockett an Operating Plan and budget for the Series B fund. The Operating Plan called for a final Redleaf capital call of $1.5M. The Operating Plan was designed to meet the investment and operating needs of Aspen III to its conclusion. This Plan was agreed to by Messrs. Whalen, Crockett, Cilento and the Redleaf Board of Directors on the basis that it capped Redleaf's capital contributions to the Series B fund and that Aspen would have sufficient assets to successfully run the fund to a conclusion. Mr. Whalen again asserted at this time that Series A assets would be sufficient to repay outstanding Series A leverage and Series A capital. As part of the Operating Plan, in January 2004, John Kohler resigned as an employee of Redleaf and joined Aspen as an employee. In accordance with the Operating Plan, Redleaf made a $1.5 million capital contribution to Aspen III in January 2004.

8. In March of 2004, I received a report for Aspen III investors indicating that the value of the Aspen III's portfolio was $29.2 million. A true and correct copy of this report is attached hereto as Exhibit A.

9. Shortly after June 30, 2004, I received a report dated June 30, 2004, for Aspen III investors indicating that the valuation of the same investments had dropped to $12.9 million. A true and correct copy of this report is attached hereto as Exhibit B.

10. Until I received the information contained in the June 30, 2004, report, I did not have knowledge of the true financial condition of the Series A fund and the magnitude of the devaluation in the Aspen III portfolio. Prior to receiving the information contained in the June 30, 2004, report, the Aspen Series A Managing Members provided Redleaf with inaccurate representations regarding the value of the Series A investments.

11. On October 11, 2005, I met with David Crockett, Alex Cilento, John Kohler and Debby Schilling of Aspen in Saratoga, California. In that meeting, the Aspen representatives, specifically Crockett and Cilento, agreed that Aspen III did not need any additional capital to manage an orderly liquidation of the portfolio and the fund.

12. At no time prior to April of 2007, when Redleaf received certain Aspen III general partner files in a document exchange with the SBA, did anyone at Redleaf ever suspect that Third-Party Defendants Alexander Cilento and David Crockett had not signed off on the valuations of Aspen III investments as provided in the SBIC regulations, valuation guidelines and the 1999 Partnership Agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 6, 2008.

                                          /s/Michael J. Tomana
                                          Michael J. Tomana