MATTHEW G. BALL (CA BAR 208881)
DEIRDRE M. DIGRANDE (CA BAR 199766)
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Tel: (415) 882-8200
Fax: (415) 882-8220
matthew.ball@klgates.com
deirdre.digrande@klgates.com

MARTIN D. TECKLER (*pro hac vice*)
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
1601 K Street, NW
Washington, DC 20006-1600
Tel: (202) 778-9000
Fax: (202) 778-9100
martin.teckler@klgates.com

Attorneys for Defendant
REDLEAF GROUP, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION in its capacity as Receiver for Aspen Ventures III, <br><br> Plaintiffs, <br><br> v. <br><br> REDLEAF GROUP, INC., <br><br> Defendant and Third-Party Plaintiff, <br><br> v. <br><br> ASPEN VENTURES MANAGEMENT III, LLC, a Delaware Limited Liability Company, ALEXANDER P. CILENTO, a California resident, and DAVID CROCKETT, a California resident, and DOES 1-10, <br><br> Third-Party Defendants. | Case No. C-07-05350 JW (PVT) <br><br> **DECLARATION OF RONALD C. CIBOLSKI IN SUPPORT OF REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Date: June 23, 2008 <br> Time: 9:00 a.m. <br> Judge: Hon. James Ware |

1. I, Ronald C. Cibolski, am a paid consultant to Redleaf Group, Inc. I make this Declaration in support of Redleaf Group, Inc.'s Opposition to Third-Party Defendants' Motion for Summary Judgment. I have personal knowledge of the facts stated herein except where stated and, if called as a witness, I could testify competently thereto.

2. Between 1993 and 2003, I was employed by the U.S. Small Business Administration. My title was Director of SBIC Operations. In that position I was responsible through staff for the regulatory oversight, financial oversight, and leveraging of licensed Small Business Investment Companies (SBICs).

3. In that capacity I became totally familiar with the SBA Regulations and Valuation Guidelines governing the valuation of portfolio concerns invested in by SBICs.

4. SBA's Regulations and Valuation Guidelines, which Aspen Ventures III, LP ("Aspen III") adopted in its partnership agreement, provide that the valuation of investments is to be done by the General Partner and agreed to by all of its members, and that appropriate documentation for the valuations both as to sign off and the basis for the valuation be retained in an SBIC's permanent files.

5. It goes without saying that the accuracy of the valuations of the investments of an SBIC by its managers is the cornerstone of the integrity of the SBIC's relationship with its private investors. It is also essential to the preservation of SBA's ability to properly regulate and leverage an SBIC. That is precisely why the SBA Valuation Regulations and Guidelines are explicit as to the necessity for the retention of documentation that supports the valuations as well as appropriate adherence to sign-off procedures. Based upon the information Redleaf has subsequently been provided by SBA as part of its request for documentation, there is no assurance that these requirements were ever met by the members of the General partner of Aspen Ventures West II, LP ("Aspen II") or Aspen III: Whalen, Cilento and Crockett.

6. The SBA's Office of SBIC Examinations performed an examination on Aspen III for the twelve-month period ending December 31, 2000. The on-site review process was completed on February 22, 2001, and the Examination Report was issued on May 4, 2001. The Examination

Report indicated that the portfolio valuations of Aspen III portfolio concerns were not adequately substantiated or confirmed by the members of the General Partner as required by 13 C.F.R. § 107.503(c) or the SBA's Valuation Guidelines

The Examination Report stated:

> 1. <u>Portfolio valuations not adequately confirmed by general partner – Section 107.503(a), (b) and SBA Valuation Guidelines for SBIC's</u>
>
> The licensee's general partner did not adequately confirm that the licensee's portfolio valuation policy was used to value the licensee's investment portfolio.
>
> Section 107.503(a) of the regulations states that licensee's must prepare document and support the valuation of its loans and investments in accordance with the valuation guidelines for SBIC's issued by SBA.
>
> Section 107.503(b) of the regulations states, in part, that the licensee's general partner is solely responsible for using the adopted valuation policy to prepare valuations for submission to SBA.
>
> Section II(H) of the SBA Valuation Guidelines for SBIC's, states that the minutes of meetings of the general partners at which valuations are determined must contain a resolution confirming that the valuations of each portfolio security were determined in accordance with the Licensee's duly adopted valuation procedures and must incorporate by reference the valuation report signed by each general partner along with any dissenting valuation opinions.
>
> <u>The licensee's general partner did not adequately sign off on the valuations.</u> The managing members of the licensee's general partner were Alexander P. Cilento, E. David Crockett, and Thaddeus J. Whalen. The licensee had two valuation reports, 1) A brief report that was sent to the Office of Operations summarizing the portfolio and, 2) a more voluminous report that was attached to the minutes of the advisory committee meetings that were held twice a year.
>
> Report 1) was a one-page summary of the portfolio. It was sent to the office of operations twice during the year along with the 1031A portfolio financing report. A cover letter accompanied these documents and indicated that "enclosed is the valuation report in accordance with sections 107.503 and 107.650 of the regulations". The cover letter was signed by one of the general partners. [Whalen]
>
> Report 2), the more voluminous report, did not contain a resolution statement nor any signatures. The advisory committee minutes stated that the general partners discussed the portfolio. It also stated that the advisory committee accepted

recommendations by the general partners to either increase or decrease certain carrying values, however, it did not contain a resolution that the managing partners confirmed that the valuations were determined in accordance with the licensee's valuation policy.

7. A copy of the Examination Report was provided to Redleaf by SBA as part of a document exchange with SBA on April 10, 2007.

8. I have read the Examination Report.

9. I have personally reviewed all of the evidence that SBA produced for Redleaf as part of the document exchange on April 10, 2007. The documents received from SBA specifically included the files of Aspen Ventures Management III, LLC (the general partner of Aspen III) relating to how Aspen Ventures Management valued the Aspen III portfolio. If Messrs. Cilento or Crockett had participated in the formulation of the valuations of the portfolio concerns of the Aspen III portfolio, as they were required to do, evidence of that should be found there, or at least in among the other document that the SBA produced. However, SBA has provided no evidence that I am aware of that before June of 2004 either third-party defendant Cilento or Crockett ever participated in the formulation of the valuations of the portfolio concerns of Aspen III, or signed off on the valuations, or that any documentation as to the methodology for calculating those valuations or minutes of meetings at which those valuations were discussed exists.

10. In my capacity as Director of SBIC Operations, I also became intimately familiar with SBA Regulations and practices governing Capital Impairment.

11. Capital Impairment is a concept that measures the financial health of an SBIC, and is required to be computed as part of an SBIC's financial statements which are periodically submitted to SBA. The General Partner of an SBIC is required to make those submissions.

12. Capital Impairment is not a static condition in the sense that it can be cured. If it is reported to SBA that an SBIC is Capitally Impaired and the SBIC fails to cure the Capital Impairment, SBA normally may take a number of actions, including forbearance to allow the SBIC to cure the condition over a period of time, or if the Capital Impairment has not been cured, placing

4
DECLARATION OF R. CIBOLSKI ISO OPP'N TO 3rd PARTY DEFENDANTS' MSJ

recommendations by the general partners to either increase or decrease certain carrying values, however, it did not contain a resolution that the managing partners confirmed that the valuations were determined in accordance with the licensee's valuation policy.

7. A copy of the Examination Report was provided to Redleaf by SBA as part of a document exchange with SBA on April 10, 2007.

8. I have read the Examination Report.

9. I have personally reviewed all of the evidence that SBA produced for Redleaf as part of the document exchange on April 10, 2007. The documents received from SBA specifically included the files of Aspen Ventures Management III, LLC (the general partner of Aspen III) relating to how Aspen Ventures Management valued the Aspen III portfolio. If Messrs. Cilento or Crockett had participated in the formulation of the valuations of the portfolio concerns of the Aspen III portfolio, as they were required to do, evidence of that should be found there, or at least in among the other document that the SBA produced. However, SBA has provided no evidence that I am aware of that before June of 2004 either third-party defendant Cilento or Crockett ever participated in the formulation of the valuations of the portfolio concerns of Aspen III, or signed off on the valuations, or that any documentation as to the methodology for calculating those valuations or minutes of meetings at which those valuations were discussed exists.

10. In my capacity as Director of SBIC Operations, I also became intimately familiar with SBA Regulations and practices governing Capital Impairment.

11. Capital Impairment is a concept that measures the financial health of an SBIC, and is required to be computed as part of an SBIC's financial statements which are periodically submitted to SBA. The General Partner of an SBIC is required to make those submissions.

12. Capital Impairment is not a static condition in the sense that it can be cured. If it is reported to SBA that an SBIC is Capitally Impaired and the SBIC fails to cure the Capital Impairment, SBA normally may take a number of actions, including forbearance to allow the SBIC to cure the condition over a period of time, or if the Capital Impairment has not been cured, placing

an SBIC in restricted operations, then placing the SBIC in liquidation or instituting receivership of the SBIC.

13.     The existence of a condition of Capital Impairment is kept confidential by SBA and would not be made public, unless by the General Partner of an SBIC.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 5, 2008, at North Port, Florida.

_____
Ronald C. Cibolski.

an SBIC in restricted operations, then placing the SBIC in liquidation or instituting receivership of the SBIC.

13.  The existence of a condition of Capital Impairment is kept confidential by SBA and would not be made public, unless by the General Partner of an SBIC.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 5, 2008, at North Port, Florida.

*[signature]*

Ronald C. Cibolski.