EXHIBIT J

U.S. SMALL BUSINESS ADMINISTRATION
INVESTMENT DIVISION - OFFICE OF INVESTMENT
SBIC PROGRAM LEVERAGE ACTION
CONSIDERATION FOR SBA'S ACCEPTANCE OF CONTRIBUTED ASSETS IN
SATISFACTION OF LIMITED PARTNERS UNFUNDED COMMITMENT

**APPLICATION DATA:**

LICENSE NO. 09/79-0420    MONTH/YEAR August 2003
NAME OF SBIC: Aspen Ventures III, L.P.

ADDRESS: 1000 Fremont Avenue Suite V Los Altos, California  94024

FUNDING REQUESTED: $0    DATE LICENSED: 9/30/99

**ELIGIBILITY COMPUTATION:**   AS OF: 6/30/2003 Capital Certificate

Total Regulatory Capital                $31,651,515

Total PPS Leverage Eligibility (2:1)    $63,303,030

Less Outstanding Leverage:
Participating Securities    $32,150,000
Approved Draws              $      -0-
Unused Prior Commitments    $31,150,000     $63,300,000

Remaining PPS Commitment Eligibility:    $     3,030

**COMPLIANCE SUMMARY: AS OF DATE OF LAST EXAM: 12/31/02**
The Licensee and its sister fund Aspen Ventures West II have completed their examinations for the 12-month period ending 12/31/02. Aspen II exam resulted in a no findings exam. Aspen III's report has been issued, and it also reflects no findings. Aspen II was recently transferred to the Office of Liquidation for timely wind down of the fund.

**SBIC FINANCING ACTIVITY SUMMARY**

|  | This Period 3-Months As of 6/30/03 | Last FYE 12-Months As of 12/31/02 | Previous FYE 12-Months As of 12/31/00 |
|---|---|---|---|
| Increase in Portfolio Securities | $2,420,749 | $9,299,239 | $7,939,676 |

## FINANCIAL CONDITION AT June 30, 2003
### ASSETS

| | | |
|---|---:|---:|
| Loans & Invest (cost) | $36,820,110 | |
| Unrealized Depreciation | (8,344,561) | |
| Unrealized Appreciation | 1,321,486 | |
| Loans & Invest (value) | $29,797,035 | |
| Cash & Idle Funds | 1,068,067 | |
| Other Assets | 817,354 | |
| TOTAL ASSETS | | $31,682,456 |

### LIABILITIES

| | | |
|---|---:|---:|
| SBA Guaranteed Debt | $ -0- | |
| Debt Payable to Others | -0- | |
| Total Current Liabilities | -0- | |
| Other Liabilities | -0- | |

Redeemable Securities:

| | | |
|---|---:|---:|
| Participating Sec | $ 32,150,000 | |
| Prioritized Pay Allocated | -0- | |
| SBA Profit Part Allocated | -0- | |
| Total Liabilities | $ 32,150,000 | |

### CAPITAL

| | | |
|---|---:|---:|
| Private Capital | $ 18,790,303 | |
| Unrealized Gain (Loss) | $ (7,023,075) | |
| Non-Cash Gain/Income | $ | |
| Undis Real Earn (Loss) | $(12,234,772) | |
| Total Capital | $ (467,544) | |
| TOTAL LIABILITIES AND CAPITAL | | $ 31,682,456 |

| | |
|---|---:|
| Cash & Idle Funds as a % of Total Assets @cost | 2.76% |
| Capital Impairment | 60.8% |

### OPERATIONS REALIZED

| | |
|---|---:|
| Net Investment Income (Loss) | $ (977,782) |
| Realized Gain (Loss) on Sale of Securities | $(2,048,891) |

===================================================================

## DELINQUENCIES ON SBA GUARANTEED INSTRUMENTS:

The Licensee has no outstanding SBA debentures.

## ADDITIONAL COMMENTS: MATERIAL MATTERS PERTINENT TO GUARANTY APPROVAL OR DISAPPROVAL--JUSTIFICATION FOR ANY DENIAL

### Aspen III Proposal:

The general partners of Aspen III and their largest limited partner (RedLeaf) have approached SBA with a request to allow the remaining unfunded commitment owed to the licensee by RedLeaf totaling $12.0 million be satisfied by a contribution of non-cash assets. This request is allowed pursuant to Section 107.240 *Limitations on including non-cash capital contributions in Private Capital.*

Specifically, non-cash contributions to a Licensee or license applicant may be included only if they fall into one of the following categories:

(a) Direct obligations of, or obligations guaranteed as to principal and interest by, the Unites States.
(b) Services rendered or to be rendered to you, priced at no more than their "fair market value".
(c) Tangible assets used in your operations, priced at no more than their "fair market value".
(d) Shares in a Disadvantaged Business received from its parent Licensee, valued at the lower of cost or "fair value".
(e) Other non-cash assets approved by SBA.

It has been proposed by Aspen III and RedLeaf that RedLeaf make a conveyance of investments held currently in its portfolio. RedLeaf is a registered '40 Act C-Corporation and currently has eight portfolio investments with a cost basis of approximately $70 million. The proposal is to contribute portfolio investments that have a total fair market value of up to $24 million resulting in a "cushion" of 2:1 of the required $12 million remaining commitment.

In order to satisfy all parties involved regarding the value of the investments, it was proposed and accepted by SBA and Aspen III that an independent valuation firm be contracted to do an independent third-party valuation of RedLeaf's entire portfolio. That valuation process was completed and submitted to Aspen III and SBA for review and comment.

Redleaf, Aspen and SBA met in March 2003 to discuss this issue and lay out the proposal. The consensus at that time was to move forward with the process wherein, RedLeaf's board of directors would need to vote and approve the transaction. On May 6, 2003, David Gerogosian met on site with Aspen III and RedLeaf representatives to refine the proposal further and to answer questions or concerns held by SBA. Subsequent to this meeting and the completion of the valuation, it was recommended to Redleaf/Aspen that a "strip" of the portfolio of Redleaf (a percentage of each investment) be conveyed rather than attempting to transfer a larger dollar amount of just two or three investments to satisfy the commitment. In doing this, it reduces potential overline problems for the licensee on a going forward basis.

As a result of these negotiations, the Licensee submitted by letter dated July 25, 2003 its formal proposal to seek approval for the conveyance of assets from Redleaf in satisfaction of its outstanding commitment to Aspen III. Attached to this report is the summary "strip" of investments proposed for conveyance. It represents the full 2:1 coverage of the remaining unfunded commitment and represents a strip of the entire portfolio of Redleaf.

Basis for approval:

The SBIC regulations afford such a transaction to be submitted for review and approval by SBA. Under the previously cited regulation 107.240 non-cash capital contributions are discussed in the context of current Licensees and license applicants. We have typically looked at this proposal only from the licensing process allowing in certain cases for the transfer of investments at or post-licensing that are fully qualified as Private, Regulatory and Leverageable Capital.

In this case, the proposal should be viewed from a credit perspective. The conveyance of assets at a fair market value could be at or below cost of the investment, in either situation, we (both SBA and Aspen) are provided with comfort of the value, something that is not availed in new investments that are being made by SBICs with their private capital and SBA's leverage. Further, the amount being proffered is well in excess (2:1) of the remaining unfunded commitment of Redleaf to Aspen.

As these assets are going to have a fair market value assigned, SBA should have comfort with a licensee that will have a capital structure as follows:

| | |
|---|---|
| Private Capital: | $43,651,515 |
| Regulatory Capital: | $43,651,515 |
| Leverageable Capital: | $30,790,303 |
| | |
| Outstanding Leverage: | $32,150,000 |
| Remaining SBA Commit.: | $30,790,303 |

SBA will also be able to earmark the entire asset conveyance, thereby allowing the SBA to share in all potential upside through distribution of liquidation proceeds and profits.

Allowing the full contribution at the "market value" assigned by Cogent to be counted as both Regulatory and Private Capital will allow the licensee the ability to recognize full asset value for overline purposes while limiting their leverage to the existing leverage commitment and outstanding. It is understood that no further leverage would granted above the current $63.2 million. Aspen would be allowed unencumbered access to existing commitments outstanding from SBA subject to maintaining leverage eligibility standards pursuant to the regulations and internal operating procedures.

### Summary of Key points related to the Conveyance of assets by RedLeaf (L.P.) to Aspen Ventures III

The question has been raised regarding applicability of both the regulations and the delegation of authority in the review and approval of this proposed transaction. This memo will hopefully answer these questions accordingly.

### Regulatory basis

107.240 Limitations on including non-cash capital contributions in Private Capital.

Non-cash contributions to a Licensee (Aspen III in this case) or license applicant are included in Private Capital only if they fall into one of the acceptable categories cited within the regulations. This request does specifically meet the requirement of 107.240(3) Other non-cash assets approved by SBA.

RedLeaf meets the requirement as an institutional investor pursuant to 107.230 Permitted sources of Private Capital for Licensees.

### Qualification as Leverageable Capital

Leverageable Capital is defined as Regulatory Capital, excluding unfunded commitments. The acceptance of this contribution totaling $24 million of assets at value should be granted full consideration as Regulatory Capital giving the effect of not just fully funding the remaining $12 million unfunded commitment, but should be recognized fully as Regulatory Capital. This will alleviate two potential operational and conveyance issues. A larger Regulatory Capital base in recognition of the full amount transferred will allow for add-on investments at a higher overline limit level, reducing the administrative burden of overline requests and fully recognizes the true size of the fund post-conveyance and would presented a "fair and correct" Capital Impairment Calculation for Aspen III.

The approval will clearly state however, that none of the amount of the conveyance in excess of $12 million will qualify as Leverageable Capital for purposes of seeking additional leverage commitments from SBA. This position should stay in effect for the duration of the partnership's life unless it is specifically requested by the general partner (with evidence of LP approval or GP's authority) that SBA approve any further increases in Leverageable Capital either from additional capital contributions or from cash contributions from liquidity events that are capitalized as permitted by the partnership agreement and approved by SBA.

In the case of any conveyed asset, the formula for increasing Leverageable Capital would be as follows:

**Investment 1**

| | |
|---|---|
| Conveyed Value assigned: | $5,000,000 |
| Portion recognized as Regulatory Capital: | $5,000,000 |
| Portion recognized as Leverageable Capital: | $2,500,000 |

EXAMPLE LIQUIDITY EVENT

Investment 1 is sold for $5,000,000 (for SBA purposes this is a return of cost of investment no gain), there could be $5,000,000 available for distribution, but only $2,500,000 available for increasing Leverageable Capital (should they choose to recapitalize the fund) as the initial conveyance recognized 50% of the investment value conveyed.

**Authority for approving the transaction**

The Delegation of Authority dated May 26, 1994 provides guidance for application of decision making within the Investment Division. Specifically, it is broken down between four sub-schedules as follows: General Applicablity, Licensing and Delicensing, SBIC Leverage and SBIC Regulation.

As a operating SBIC in good standing, this measure falls within the general applicability section of the Delegation of Authority. This is further reinforced by the fact that this transaction is contemplated within the regulatory frame work of the SBIC regulations (see regulatory cites above) thereby negating the need for this matter to be considered a General Applicability issue that would fall under policy decisions or first impression.

This said, applicability of either Code D-1. *Prior approval requests in unique and/or unprecented situations* for which the Approving/Signing Official is designated as the Director/OI (OSO), or, D-13 *Special determinations, prior approvals not included elsewhere herein* for which the Approving/Signing Official is the Area Chief (with Director Clearance) provides the OSO with clear authority to approve this request.

**Associate Financing 107.730**

Given that RedLeaf is a '40 Act company and as such has invested pursuant to their exempt status requirements. Specifically, all investments that are made by RedLeaf are in a "control" position. As such any investments that are conveyed in part or in whole to Aspen in satisfaction of RedLeaf's unfunded commitment will result in Associate relationships between Aspen III, RedLeaf and the small business concerns.

It is recognized as part of this approval (verified by supporting schedules) that there will be funding needs anticipated for at least six of the eight conveyed investments. As such, future investments made by Aspen III will require the prior approval pursuant to SBA regulations and SBA Technote Number 8 Guideline for SBA Approval of Conflict of Interest Transactions due to the Associate relationship at the time of conveyance.

**Recommendation:**

Upon review of the facts presented and special circumstances related to RedLeaf's registered investment company charter, SBA should approve the conveyance of the assets as proposed by Redleaf in full satisfaction of their outstanding unfunded commitment to Aspen III. Conditional approval should be provided in order to allow the final approvals to be completed by RedLeaf's board of directors, and upon providing representations of no material adverse change in the investments proffered for conveyance and evidence of the completion of the transfer to Aspen III, including an updated Capital Certificate, SBA will provide final approval of the conveyance to satisfy RedLeaf's remaining commitment to Aspen as Regulatory and Leverageable Capital.

_____  8/14/03            _____
David B. Gerogosian         Date               Approval/~~Denial~~
Area IV
Office of SBIC Operations

_____  8/14/03            _____
Marja Maddrie               Date               Approval/Denial
Chief, Area IV
Office of SBIC Operations

_____  8-14-03            _____
Ronald C. Cibolski          Date               Approval/~~Denial~~
Director
Office of SBIC Operations