Gregory C. Nuti (Bar No. 151754)
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785
E-mail: gnuti@schnader.com

Beverley Hazlewood Lewis
Trial Attorney, Office of General Counsel
U.S. Small Business Administration
409 3rd Street, S.W., Suite 7200
Washington, D.C. 20416
Telephone (202) 619-1605
Facsimile (202) 481- 0468

Attorneys for Plaintiff,
United States Small Business Administration in its capacity as Receiver for Aspen Ventures III, L.P.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION IN ITS CAPACITY AS RECEIVER FOR ASPEN VENTURES III, L.P., <br><br> Plaintiff, <br><br> vs. <br><br> REDLEAF GROUP, INC., <br><br> Defendants. <br><br> REDLEAF GROUP, INC., <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> ASPEN VENTURES MANAGEMENT III, LLC, a Delaware Limited Liability Company, ALEXANDER P. CILENTO, a California resident, and DAVID CROCKETT, a California resident, and DOES 1-10, <br><br> Third-Party Defendants. | Case No.: C07-05350 JW/PVT <br><br> **REPLY TO DEFENDANT REDLEAF GROUP, INC.'S OPPOSITION MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION, ON THE RECEIVER'S CLAIM FOR BREACH OF CONTRACT** <br><br> Date: June 23, 2008 <br> Time: 9:00 a.m. <br> Location: 280 South First Street, Courtroom 8, 4th Floor San Jose, CA 95113 <br> Judge: Hon. James Ware |

## I. INTRODUCTION

Redleaf Group, Inc. ("Redleaf") does not dispute that it committed to contribute $15 million in capital to Aspen Ventures III, L.P. ("Aspen Ventures"), *see* Paragraph 2(b)-(d) of the First Amendment to Amended and Restated Limited Partnership Agreement ("First Amendment")[1], and that it actually funded only $4.4 million of that commitment. In response to the Receiver's demand that it fulfill its remaining contractual obligation, Redleaf contends that it is not obligated to pay the balance under the provisions of Paragraphs 1 and 2(a) of the First Amendment ostensibly because those provisions prevent Aspen Ventures from requiring Redleaf to contribute capital to satisfy Leverage and other liabilities associated with Series A. While the Receiver disputes Redleaf's interpretation of the First Amendment, accepting Redleaf's argument in its entirety, there is no dispute that Redleaf is liable to contribute capital to pay Series B Leverage and debts. Here, Aspen Ventures has Series B Leverage of in excess of $8 million. Accordingly, the Receiver is entitled at a minimum to partial summary judgment determining that Redleaf must fund its capital commitment at least to the extent of Series B Leverage and liabilities.

However, as discussed below, the Court should reject Redleaf's interpretation of the First Amendment and enter and order and judgment compelling Redleaf to pay the full amount of its unfunded capital commitment. Paragraph 2(b)-(d) of the First Amendment creates Redleaf's obligation to fund its capital commitment, and no part of the operative language thereof is made subject to Paragraphs 1 or 2(a) of the First Amendment. Had the parties in fact intended to condition Redleaf's obligation in the way Redleaf now contends (an intention, incidentally, that is flatly contradicted by contemporaneous documents demonstrating that Redleaf knew that Series A Leverage would be cross-collateralized by Series B assets) they would have said so, but they did not. Throughout the document, when the terms of one section

---

[1] The Receiver in its Motion for Summary Judgment refers to the First Amendment to Amended and Restated Partnership Agreement as the "First Amendment." Redleaf refers to this document as the "2002 Amendment." The Receiver will continue to refer to it as the "First Amendment" for consistency of its own pleadings.

are made subject to the terms of another, that intention is made express.  *See* First Amendment at ¶1(a) ("Except to the extent specifically provided for in this First Amendment . . . ").  No language anywhere in Paragraph 2(b)-(d) subordinates or conditions Redleaf's obligation to make its capital commitment to Paragraph 1 or Paragraph 2(a).  Hence, that obligation stands alone and may be enforced.  Accordingly, the Receiver is entitled to an order and judgment determining that Redleaf is obligated to fund its entire remaining capital commitment.

Alternatively, even if the Court assumes for purposes of this Motion that Aspen Ventures agreed not to enforce Redleaf's obligation to pay the remaining capital into the partnership in circumstances where those funds could be used to pay Series A liabilities and leverage, those provisions are at most merely "conditions set forth in the Agreement" between Redleaf and Aspen.  Under the express language of Paragraph 7.1 of the SBA Annex, when so-called "restricted operations" have occurred: (1) all conditions set forth in the Partnership Agreement on a limited partner's obligation to satisfy its unfunded capital commitment (other than timing and amounts of the contributions) are nullified, and (2) the obligation to make such contributions cannot be delayed, reduced or offset by reason of any counterclaim or right to offset by such limited partner.[2]  When one considers the entire text of Paragraphs 1 and 2(a) of the First Amendment, no intent can be discerned for those provisions to alter the terms of the

---

[2] Paragraph 7.1 of the SBA Annex provides:

(b) Notwithstanding any provision in the Agreement to the contrary (except as expressly provided in this Section 7.1(b)), in the event that the Partnership is subject to restricted operations (as such term is used in the SBIC Act) and prior to the liquidation of the Partnership the *SBA requires the General Partner and the Private Limited Partners to contribute any amount of their respective Commitments not previously contributed to the Partnership, the obligation to make such contributions shall not be subject to any conditions set forth in the Agreement other than limitations on the amount of capital which a Partner is obligated to contribute (i) within any specified time period or (ii) prior to any specified date.*

(c) …No Private Limited Partner or General Partner shall have any right to delay, reduce or offset any capital contribution obligation to the Partnership called under this Section 7.1 by reason of any counterclaim or right to offset by such Partner or the Partnership against SBA or any Preferred Limited Partner.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

SBA Annex, as opposed to the internal accounting and distributional aspects of the Partnership Agreement itself.

### A. The Receiver Is Entitled at a Minimum to Enforce Redleaf's Capital Commitment to the Extent of Series B Leverage and Liabilities.

Redleaf relies upon the following provisions in the First Amendment to argue that the First Amendment, read as a whole, amended the Receiver's right under Paragraph 7.1 of the SBA Annex to call Redleaf's capital commitment:

- Liabilities of each Series will be enforceable only against that particular Series; First Amendment ¶ 1(a);

- Outstanding Leverage as of the time immediately prior to execution of the First Amendment shall be Leverage associated with Series A. First Amendment ¶ 1(c)(i); and

- Capital calls shall be made separately with respect to each series. First Amendment, ¶ 2(a)(i).

Opposition, p. 14:24-28, p. 9:16-26. Its argument is that Redleaf never agreed to be liable for Series A Leverage and liabilities, and the SBA consented to that limitation on Redleaf's capital contribution obligation. The Receiver obviously disagrees with Redleaf's contention for reasons already explained in the Motion – particularly the fact that Redleaf's Board of Directors were specifically advised that while Aspen Ventures would be internally viewed as two separate funds "the laws and regulations applicable to the Old Fund and the New Fund as SBICs provide for cross-liability between these series under certain circumstances" and "under certain circumstances the New Fund may be required to make payments to the SBA that relate to leverage allocated to the Old Fund (and the Old Fund may have similar obligations with respect to leverage allocated to the New Fund)." *See* Moser Decl., ¶ 9, **Exhibit E.** But assuming *arguendo* that Redleaf is entirely correct, it has not come forward with any basis to deny enforcement of its capital commitment to fund *Series B* Leverage and liabilities. That liability alone stands at $8.8 million, plus interest. *See* Declaration of Michael J. Tomana in Support of Redleaf Group, Inc.'s Opposition to Motion for Summary Judgment at ¶21, Exhibit B, p.19 of 28 (Bates# D076). The Receiver is therefore entitled at a minimum to a determination that Redleaf is liable for $8.8 million, plus interest.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

**B.     The Receiver Is Entitled to Enforce Redleaf's Entire Capital Commitment.**

1.     The First Amendment Does Not Modify the SBA Annex

The Partnership Agreement and SBA Annex are quite clear about the obligation of limited partners to fund any remaining capital contributions in the event the entity is placed into restricted operations, and it is equally clear that the provisions of the SBA Annex will be controlling over any contrary provisions in the Partnership Agreement itself. *See* Partnership Agreement at ¶2.5; SBA Annex, ¶¶ 1.2 and 1.3. While the First Amendment is extraordinarily detailed in explaining how specific provisions of the Partnership Agreement are modified by the First Amendment, *see* First Amendment at ¶¶2(e)-(r) and 3, Redleaf does not and cannot point to a single reference anywhere in Paragraph 1 or 2(a) of the First Amendment expressly stating that the provisions of Paragraph 7.1 of the SBA Annex were being modified. Nor does it or can it point to any provision of the First Amendment that purport to alter the provisions of the Partnership Agreement and SBA Annex that make the SBA Annex controlling over any contrary provisions of the Partnership Agreement. Its argument is essentially that the internal accounting and distributional structure created by the First Amendment should be *implied* to modify Paragraph 7.1 of the SBA Annex. But the language of the First Amendment actually undercuts any argument that the SBA Annex was modified by implication.

While Redleaf overlooks it, Paragraph 1 of the First Amendment contains key language making clear that "notwithstanding the [Series A/Series B structure]" Aspen Ventures would be viewed as a unified entity for regulatory purposes.[3] One aspect of the regulation of SBIC

---

[3]     Paragraph 1(a) of the First Amendment reads in full:

*Except to the extent specifically provided in this First Amendment or required under the SBIC Act, to the maximum extent permitted under the Act*, (a) the interests in the Partnership with respect to Series A on the one hand, and Series B on the other hand, shall constitute separate series of partnership interests within the meaning of Section 17-218 of the Act, (b) the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series will be enforceable against the assets of such series only, and not against the assets of the Partnership generally or my other series thereof, and none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to any series shall be enforceable against the

*...Continued*

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT CASE NO. C07-05350
5

PHDATA 3098986_1

1. licensees concerns placing the licensee in "restricted operations" when they fail to meet certain
2. criteria under the Act.[4]  Hence, Paragraph 1 preserves the Receiver's ability to disregard the
3. Series A/Series B structure and treat Aspen Ventures as one entity when carrying out his
4. responsibilities under the Act (including carrying out 13 C.F.R. 107.1820(f)), and such language
5. is at odds with the suggestion that the First Amendment impliedly amends the SBA Annex to
6. diminish the Receiver's powers and obligations in this regard or otherwise.
7.           It bears noting that the SBA's consent to the Series A/Series B structure was
8. expressly conditioned upon its ability to treat Aspen Ventures as a single entity with consolidated
9. obligations and assets from a regulatory standpoint.  Moser Decl., ¶ 8, Exhibit D ("Regardless of
10. the internal accounting treatment provided for within the aforementioned amendments for each
11. series, Operations will continue to view the Series A and Series B limited partners as one fund
12. for purposes of leverage eligibility, management fee structure, distributions and other regulatory

---

*Continued from previous page*

assets of such other series, (c) separate and distinct records shall be maintained for Series A and Series B, and assets associated with any particular series shall be accounted for separately from the other assets of the Partnership or any other series of the Partnership, and (d) the assets of one series shall not be commingled with the assets of any other series. The General Partner is hereby authorized to effect any such amendments to the Partnership's Certificate of Limited Partnership as are necessary to cause Series A and Series B to be treated as separate series of partnership interests under the Act. *Notwithstanding the foregoing, it is hereby acknowledged that for purposes of the SBIC Act, the Partnership, including Series A and Series B, shall be treated as one Licensee.*

20. First Amendment, ¶ 1(a).

21. [4]       As pointed out in the Receiver's Motion, 13 C.F.R. § 107.1820(f) provides:

>  Upon the occurrence of any Restricted Operations Condition, and until such condition(s) are cured to SBA's satisfaction within a time period determined by SBA (but not less than 15 days), upon written notice SBA shall have the following rights, and you consent to SBA's exercise of any or all of such rights:
>
>     . . .
>
>     (3) To require all your commitments from investors to be funded at the earliest time(s) permitted in accordance with your Articles;

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

matters."); *see also* Moser Decl., ¶¶ 9-14, Exhibits E-K.  Thus, Paragraph 1 of the First Amendment read as a whole actually undermines the notion that the SBA Annex was being altered in a way that reduced the Receiver's rights and obligations in the event Aspen Ventures was placed into restricted operations.

### 2. Redleaf is Obligated for Its Entire Capital Commitment Regardless of Whether Aspen Ventures Was "Successful" or "Unsuccessful."

Redleaf admits that paragraph 2(h) of the First Amendment provides "that a <u>distribution</u>…may have to be made out of the assets of one series with respect to leverage attributable to another series…."  Opposition, p. 10:19-22 (emphasis original).  However, Redleaf thereafter attempts to create an artificial distinction under the First Amendment arguing "distributions" which ignore the Series A/Series B scheme can only be made if Aspen Ventures was "successful" and that different rules apply for making capital calls in the event Aspen Venture was "unsuccessful[5]".

> The [First Amendment] amended the 1999 Agreement in different ways, depending on whether Aspen III was successful or unsuccessful, and whether the question was what could happen to Redleaf s capital commitment if Aspen III was unsuccessful, or how distributions would be paid is Aspen III was successful. [sic]

Opposition, p. 9:11-14.  The implication being that a "distribution" can only be made out of profits or retained earnings and that capital calls could not be source of payment for the partnership's obligations.  Again, Redleaf fails to reveal the provisions within the First Amendment that support this conclusion.  Not surprising, the Act, the Regulations, the SBA Annex and the negotiations leading to Redleaf's commitment prove just the opposite.

Neither the First Amendment nor SBA Annex define the term "distribution".  However, as used in the Act and Regulations, a "distribution" is defined as "any transfer of cash or non-cash assets" to the SBA or any partner.  13 CFR § 107.50.  Thus, a distribution therefore is not limited to payments of profits or retained earnings, and so the provisions of Paragraph 2(h)

---

[5] Redleaf fails to explain what might be considered "successful" or "unsuccessful."

of the First Amendment acknowledging Aspen Ventures' obligation to make distributions to the SBA can and should be interpreted to come from sources of cash other than retained earnings.

### C. Redleaf's Allegations of Fraud and Malfeasance Against the SBA as Regulator Are Legally Insignificant and Irrelevant to These Proceedings.

Redleaf argues that it has introduced evidence sufficient to raise triable issues with respect to Redleaf's affirmative defenses, including fraud and rescission, based on the fraudulent conduct by Aspen Ventures' management, and the SBA's collusion therein. Opposition, p.20:12-27. Even assuming, *arguendo*, these allegations are true, they do not give rise to a legally valid defense.

Redleaf continues to ignore the legal distinction between the SBA *as Receiver* and the SBA *as Regulator*. In this case, the Receiver is pursuing a derivative claim owned by Aspen Ventures for the benefit of Aspen Venture's estate and its creditors. The Receiver is standing in the shoes of the general partner of Aspen Ventures. The SBA in its capacity as a governmental entity and regulator is not a party to this action. The recovery by the Receiver against Redleaf will be placed into the receivership estate and distributed according to the statutory and contractual priorities set forth in the Act, Regulations and Partnership Documents. Consent Order, ¶ 1. This Court will review and approve any such distribution. *Id.* The Receiver is simply collecting a debt owed to the estate. It would be clear error to allow Redleaf to assert claims directed at the SBA as regulator as offsets or affirmative defenses against the claims now being asserted on behalf of Aspen Ventures. The Receiver and SBA as regulator are legally distinct entities.

Further, any claims against the SBA as regulator are barred by the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2671 *et. seq.*; *United States v. Acorn Technology Fund*, 429 F.3rd 438 (3rd Cir. 2005).

Redleaf relies on *Cox v. Kurt's Marine Diesel of Tampa, Inc.*, 785 F.2d 935 (11th Cir. 1986)("*Cox*") for the proposition that the Federal Tort Claims Act does not bar a defense of misrepresentation raised to avoid liability. Opposition, p. 21:11-17. In *Cox*, the U.S. Marshall took custody of an arrested ship. *Cox*, at 935-936. The marshal erred in estimating the custodial

charges by neglecting to include insurance expense of $1,144.26 when it settled up the account. *Id.* at 936. The marshal brought suit seeking to recover from the defendant the insurance expense. *Id.* The defendant asserted the defenses of waiver and estoppel and negligent misrepresentation. *Id.* The 11th Circuit in allowing the affirmative defense based upon misrepresentation held that the "alleged misrepresentation arises out of the same transaction that is the subject matter of the *government's suit*. The only relief that Kurt's seeks is to defeat *the government's claim*." *Id. (*emphasis added).

*Cox* is distinguishable in that, unlike here, the *government* was pursuing a claim on its own account. As set forth above, the *government* is not asserting the claim against Redleaf. The Receiver is asserting a breach of contract claim on behalf of Aspen Ventures. Any alleged malfeasance on the part of the SBA as regulator surely cannot be properly asserted against Aspen Ventures, either by way of direct claim or affirmative defense. Aspen Ventures is not the party to have allegedly engaged in the conduct giving rise to the claim. Any alleged fraud committed by the SBA is immaterial to the Receiver's claims.

Redleaf fares no better by asserting fraud on the part of Aspen Ventures' management. Any such claims, *even if true,* are derivative in nature and can only be brought by the Receiver on behalf of Aspen Venture' estate. *Acorn*, 429 F.3d at 447.

Redleaf's allegations of fraud against either the SBA, as regulator, or Aspen Venture's management fail as matter of law even assuming they are true. Therefore, these allegations fail to raise any triable issue of material fact.

## II.   CONCLUSION

In essence, Redleaf's capital commitment to Aspen Ventures is an asset of the partnership. There are no provisions within the Partnership Documents preventing Aspen Ventures, and now the Receiver, from liquidating this asset by making a capital call. To the contrary, Aspen Ventures, and now the Receiver, is *required* to make a capital call against Redleaf. 13 CFR 107.820(f)(3); SBA Annex Art. VII, ¶ 7.1 (a), (b).

1         Wherefore, the Receiver prays for an order:

2         1.    Granting summary judgment for breach of contract in favor of the Receiver and against Redleaf in the amount of $11,163,095.22, plus $3,267.12 per day after May 20, 2008 until entry of the Judgment;

        2.    Alternatively, determining that Redleaf is liable at a minimum to fund its unpaid capital contribution up to the amount of Series B Leverage and liabilities in an amotn not less than $8.8 million, plus interest, according to proof; and

        3.    For such further relief the Court deems just and proper.

Dated: June 9, 2008        SCHNADER HARRISON SEGAL & LEWIS LLP

By: /s/ Gregory C. Nuti
Gregory C. Nuti
Attorneys for Plaintiff, the United States Small Business Administration in its capacity as Receiver for Aspen Ventures III, L.P.