JESSICA L. GRANT (SBN 178138)
NICHOLAS G. CAMPINS (SBN 238022)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California  94111
Telephone:  (415) 788-8200
Facsimile:   (415) 788-8208
E-mail: jgrant@tcolaw.com
E-mail: ncampins@tcolaw.com

Attorneys for Third-Party Defendants
ALEXANDER P. CILENTO and
DAVID CROCKETT

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION in its capacity as Receiver for Aspen Ventures, III,<br><br>Plaintiffs,<br><br>v.<br><br>REDLEAF GROUP, INC.,<br><br>Defendant and Third-Party Plaintiff,<br><br>v.<br><br>ASPEN VENTURES MANAGEMENT III, LLC, a Delaware Limited Liability Company, ALEXANDER P. CILENTO, a California resident, and DAVID CROCKETT, a California resident, and DOES 1-10,<br><br>Third-Party Defendants. | Case No.: C-07-05350 JW (PVT)<br><br>**REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

TAYLOR & CO.
LAW OFFICES, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 2

    A.   Coleman v. PriceWaterhouseCoopers Does Not Apply to This Case ....................... 2

    B.   Under Delaware Law, *Any* Tolling That May Have Applied Ended Once Redleaf Had Inquiry Notice of Its Claims ................................................................. 3

    C.   By Any Reasonable Measure, Redleaf Had Inquiry Notice No Later than June 2003 .................................................................................................................... 6

    D.   Redleaf Cannot Rely On The Highly Prejudicial Hearsay Statements Of A Deceased Witness ....................................................................................................... 7

    E.   The Consent Order Does Not Help Redleaf ............................................................... 8

    F.   Summary Judgment Should Be Granted On Redleaf's Claims For Equitable Indemnity And Declaratory Relief ............................................................................. 9

    G.   Redleaf's Rule 56(f) Request Lacks Merit ............................................................... 10

III. CONCLUSION ............................................................................................................ 11

i.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Jankouskas*,
    452 A.2d 148 (Del. 1982) ............................................................................................. 9

*Albert v. Alex. Brown Mgmt. Servs.*,
    2005 Del. Ch. LEXIS 100 (Del. Ch. 2005) ................................................................... 5

*Ambase Corp. v. City Investing Co.*,
    2001 Del. Ch. LEXIS 16 (Del. Ch. 2001) ..................................................................... 5

*City of Moses Lake v. United States*,
    451 F. Supp. 2d 1233 (E.D. Wash. 2005) ................................................................... 10

*Coleman v. PriceWaterhouseCoopers LLC*,
    854 A.2d 838 (Del. 2004) ............................................................................................. 1

*Fike v. Ruger*,
    752 A.2d 112 (Del. 2000) ............................................................................................. 7

*Harner v. Prudential Secs. Inc.*,
    E.D. Mich., 785 F. Supp. 626 (E.D. Mich. 1992) ........................................................ 5

*In re Dean Witter P'ship Litig.*,
    1998 Del. Ch. LEXIS 133 (Del. Ch. 1998) .......................................................... passim

*Irwin v. Dep't of Veterans Affairs*,
    498 U.S. 89 (1990) ....................................................................................................... 9

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F. 3d 829 (9th Cir. 2002) .................................................................................... 10

*Krahmer v. Christie's Inc.*,
    911 A.2d 399 (Del. Ch. 2006) ...................................................................................... 4

*Pomeranz v. Museum Partners, L.P.*,
    2005 Del. Ch. LEXIS 10 (Del. Ch. 2005) .......................................................... passim

*Sierra Club v. U.S. Dept. of Transp.*,
    245 F.Supp.2d 1109 (D. Nev. 2003) .......................................................................... 10

*Smith v. McGee*,
    2006 Del. Ch. LEXIS 187 (Del. Ch. 2006) .................................................................. 8

*Terr. of the U.S. V.I. v. Goldman, Sachs & Co.*,
    937 A.2d 760 (Del. Ch. 2007) ...................................................................................... 7

*Throckmorton v. Holt*,
    180 U.S. 552 (1901) ..................................................................................................... 7

ii.
REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

TAYLOR & CO.
LAW OFFICES, LLP

**RULES**

FED. R. EVID. 802 .................................................................................................................. 7

TAYLOR & CO.
LAW OFFICES, LLP

iii.
REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

## I.   INTRODUCTION

Redleaf's Opposition provides nothing to change the fact that its claims are time-barred. Redleaf's argument is primarily premised on convincing this Court to apply *Coleman v. PriceWaterhouseCoopers LLC*, 854 A.2d 838 (Del. 2004), a case that was decided under the "discovery rule" applicable to professional malpractice cases.  Here, Redleaf was a venture capital fund run by experienced businessmen that decided to invest in Aspen after engaging in its own due diligence process.  The relationship between Redleaf and Defendants was that of sophisticated parties in an arms-length transaction, not the type of layperson/professional relationship that would allow a plaintiff the extra benefit of the discovery rule.

Under Delaware law, the statute of limitations begins to run on the date of the alleged wrongful act, even if the plaintiff is ignorant of the cause of action.  The "wrongful act" is the event that allegedly injured the plaintiff, such as a fraudulently induced investment.  Delaware allows for various theories of tolling, but *any* tolling ends once a plaintiff *suspects* wrongdoing. At that point, a plaintiff is deemed to be on inquiry notice and must diligently investigate and file suit to protect its rights within the statute of limitations period.  Under the correct standard in Delaware, Redleaf was on inquiry notice – if not actual notice – at the very latest by June 2003. Consequently, the statute of limitations elapsed in June 2006.

Another reason to bar Redleaf's equitable claims under the doctrine of laches is its reliance on out of court statements attributed to decedent Thad Whalen.  The fact remains that Redleaf chose to wait until more than three years after Thad Whalen's death from pancreatic cancer to file suit based on his alleged fraudulent misrepresentations. Redleaf's failure to diligently pursue its legal rights within the limitations period is highly prejudicial to Defendants.  In addition, the statements Redleaf conveniently attributes to Thad Whalen are hearsay.

The Consent Order and Redleaf's purported discovery of additional information after June 2003 is completely irrelevant to the fact that it could and should have pursued its claims between June 2003 and June 2006, yet failed to do so.  As a result, Redleaf's Opposition is nothing more than an attempt to obscure the actual timeline of events and completely fails to salvage its claims.

///

1.

Taylor & Co.
Law Offices, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT: CASE NO.  C-07-05350 JW (PVT)

## II. ARGUMENT

### A. Coleman v. PriceWaterhouseCoopers Does Not Apply to This Case

*Coleman v. PriceWaterhouseCoopers LLC*, 854 A.2d 838 (Del. 2004) was not cited in Defendants' opening brief because it is completely inapposite. The *Coleman* case did not define "inquiry notice" under Delaware law, as Redleaf erroneously claims. Opposition at p. 10 n.8. Instead, *Coleman* involves a professional malpractice action against a public accounting firm arising from the firm's negligent failure to uncover fraud during its audit of a seller's financial statements, upon which the buyer detrimentally relied during a transaction. In analyzing whether the plaintiff buyer's suit was timely, the Court determined there were material issues of fact under the "discovery rule" as to whether a "person of ordinary intelligence" would have been put on notice of malpractice by a Big Five accounting firm based on a single email that did not involve anyone from the accounting firm. *Coleman*, 854 A.2d at 842-43. Significantly, the Court specifically noted that none of the parties disputed that the "discovery rule" applied under the circumstances of the case. *Id.* at 842.

Delaware applies the "discovery rule" to cases of accounting and attorney malpractice "because of the special character of the relationship between the professional and the client, and the inability of a layperson to detect the professional's negligence." *Coleman*, 854 A.2d at 842. In *Coleman,* PriceWaterhouseCoopers ("PWC") had performed the due diligence and general auditing work for Lason, Inc. PWC assured plaintiff, who was considering selling its company to Lason, that PWC had furnished an accurate picture of Lason's financial condition. When plaintiff later discovered Lason had engaged in fraudulent accounting practices that PWC failed to uncover, plaintiff sued PWC for accounting malpractice. *Id.* at 840.

Redleaf would have this Court believe the Defendants stood in the same position in relation to Redleaf that an independent auditor holds when it certifies to a layperson that it has accurately portrayed a company's financial position. The problem with this argument (besides the obvious fact that the Defendants are not accountants) is that Redleaf is not an ordinary "layperson" allowed to benefit from the extra protection of the discovery rule. *See id.* at 842. Instead, unlike the layperson in *Coleman* who relied on the advice and superior knowledge of a Big Five

2.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

accounting firm, Redleaf is a private investment fund run by sophisticated and experienced businessmen and backed by first-tier investors. *See* Crockett Decl. ¶7. Equally significant is the fact that Redleaf conducted its *own* due diligence prior to investing in Aspen and was advised about the transaction by counsel at Kirkpatrick & Lockhart LLP, the same law firm that now represents Redleaf in this litigation. *See* Declaration of Debra Schilling in Support of Third-Party Defendants' Reply, ¶¶ 5 and 6. The relationship between Redleaf and Defendants was that of sophisticated parties, represented by counsel, in an arms-length transaction.

Moreover, the primary expertise of an investment firm like Redleaf is deciding what investments to make based on an analysis of the risk involved in such transactions. Redleaf went through an extensive due diligence process, made an informed decision to invest, and cannot now complain that it was somehow in the position of a layperson being advised by a professional such as an accountant or an attorney. *See* Compl. ¶¶ 18, 26. The *Coleman* decision, upon which Redleaf relies throughout its Opposition, is simply inapposite to this case.

Finally, even if the discovery rule from *Coleman* were to apply, which it does not, Redleaf's claims are still time-barred because *any* tolling – including tolling based on *Coleman's* discovery rule – ended once Redleaf had inquiry notice of its claims by June 2003. *See* Section B, below. Consequently, the statute of limitations expired in June 2006, *at the latest*.

**B.  Under Delaware Law, *Any* Tolling That May Have Applied Ended Once Redleaf Had Inquiry Notice of Its Claims**

Redleaf contends that the applicable three-year statute of limitations should be tolled under Delaware's "relatively generous" approach to tolling doctrines due to Defendants' alleged fraudulent concealment. It also appears to claim that equitable tolling should apply because the Defendants were allegedly fiduciaries of Redleaf. *See* Opposition at p. 18. Redleaf has produced no evidence nor proffered any law to support its conclusory allegation that the Defendants owe a fiduciary duty to Redleaf. *In re Dean Witter P'ship Litig.*, 1998 Del. Ch. LEXIS 133 at *23 (Del. Ch. 1998) ("*Dean Witter*") ("[P]laintiffs bear the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled."). Regardless, *any* tolling that might have occurred ended once Redleaf was on inquiry notice. *Id.; Krahmer v. Christie's Inc.*, 911 A.2d

3.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

1  399, 407 (Del. Ch. 2006).

2  Redleaf conveniently ignores that "the general law in Delaware is that the statute of
3  limitations begins to run, *i.e.*, the cause of action accrues, at the time of the alleged wrongful act,
4  even if the plaintiff is ignorant of the cause of action." *Dean Witter*, 1998 Del. Ch. LEXIS 133 at
5  *15. As the Court noted in *Pomeranz v. Museum Partners, L.P.*, 2005 Del. Ch. LEXIS 10 at *55-
6  56 (Del. Ch. 2005) ("*Pomeranz*"), "the courts of this state have repeatedly emphasized that this is
7  the prevailing rule." Under Delaware law, courts measure the "wrongful act" by the date of the
8  event that allegedly injured the plaintiff. For instance, in *Dean Witter*, plaintiffs alleged that
9  defendants misrepresented or failed to disclose to them at the time of purchase the nature of the
10 risks involved in investing in certain partnerships; that defendants misrepresented or failed to
11 disclose the true financial condition of the partnerships in order to conceal losses,
12 mismanagement, fraud and self-dealing; and that defendants were engaged in a systematic scheme
13 to sell and operate high risk, speculative limited partnerships in order to enrich themselves at the
14 expense of plaintiffs. *See Dean Witter*, 1998 Del. Ch. LEXIS 133 at *8-9. In analyzing when the
15 statute of limitations began to run, the Court determined that "plaintiffs' injuries occurred *when*
16 *they purchased* their Partnership interests as a result of defendants' misrepresentations. Thus,
17 plaintiffs' cause of action accrued when they invested in the allegedly fraudulent Partnerships." *Id.*
18 at *16. (original emphasis.) The Court held that "*absent tolling*, therefore, all of plaintiffs' claims
19 fall outside the statutory period and would be time-barred." *Id.* at *17-18 (original emphasis.)

20 Here, Redleaf alleges that it was fraudulently induced to make a multi-million dollar
21 investment by becoming a limited partner of Aspen. *See* Opposition. at p. 1; *see also* Complaint
22 ¶¶ 27-28, 32, 38. Under Delaware law, the "wrongful act" that allegedly injured Redleaf therefore
23 occurred on April 1, 2002, when it became a limited partner of Aspen and invested in Aspen. *See*
24 Grant Decl., Exhs. 3, 5-7. Thus, *absent tolling*, the three-year statute of limitations expired on
25 April 1, 2005.

26 Delaware's approach to tolling doctrines is not "relatively generous," as Redleaf
27 disingenuously claims. In fact, courts have repeatedly emphasized that under Delaware law, the
28 "[e]quitable exceptions to statutes of limitations are narrow and designed to prevent injustice." *Id.*

4.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

(citing *Ambase Corp. v. City Investing Co.,* 2001 Del. Ch. LEXIS 16 at *17 (Del. Ch. 2001) ("Equitable tolling doctrines are an exception to the normal rule, and should not be lightly invoked.").

Various theories exist under which a plaintiff may seek tolling of the statute of limitations, one of which is to allege that a defendant engaged in fraudulent concealment of relevant facts. *See Halpern v. Barran*, 313 A.2d 139, 143 (Del. Ch. 1973). "But any possible tolling exception to the strict application of the statute of limitations tolls the statute '*only until* the plaintiff discovers (or by exercising reasonable diligence should have discovered) his injury. When plaintiffs are on inquiry notice, the statute of limitations begins to run." *Pomeranz,* 2005 Del. Ch. LEXIS 10 at *10 (original emphasis); *Albert v. Alex. Brown Mgmt. Servs.,* 2005 Del. Ch. LEXIS 100 at *64-65 (Del. Ch. 2005) (same).

The standard for inquiry notice is that "[o]nce a plaintiff is on notice of facts that ought to make her suspect wrongdoing, she is obliged to diligently investigate and to file within the limitations period as measured from that time." *Pomeranz*, 2005 Del. Ch. LEXIS 10 at *47; *see also Harner v. Prudential Secs. Inc*, 785 F. Supp. 626, 633 (E.D. Mich. 1992) ("Once a plaintiff is in possession of facts sufficient to make him suspicious, or that ought to make him suspicious, he is deemed to be on inquiry notice."). Plaintiffs "may not simply wait until the details of the harm are provided to them before the statute begins to run." *Pomeranz,* 2005 Del. Ch. LEXIS 10 at *44; *Dean Witter*, 1998 Del. Ch. LEXIS 133 at *30. Whether or not Redleaf had additional information that it discovered later is irrelevant to the fact that as of June 2003, it had *sufficient* information to be on inquiry notice of its claims. Under Delaware law, plaintiffs are expected "to act with reasonable alacrity once they have reason to suspect that their rights were injured." *Pomeranz*, 2005 Del. Ch. LEXIS 10 at *57. Moreover, once on inquiry notice, the law requires a plaintiff to diligently investigate its claims, which necessarily presumes that additional facts will be discovered *after* the statute of limitations has started to run – a fact Redleaf consistently overlooks throughout its Opposition.

Thus, even assuming *arguendo* that Redleaf is entitled to the benefit of equitable tolling for any of the reasons it alleges, it is clear that Redleaf had inquiry notice of its claims and that the

5.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

statute of limitations began running no later than June 2003.

### C. By Any Reasonable Measure, Redleaf Had Inquiry Notice No Later than June 2003

Redleaf now attempts to minimize the significance of the admissions in its own Complaint to the effect that Redleaf was aware of significant "irregularities and problems" at Aspen in 2002-2003. Opposition at p. 5. In *Dean Witter*, plaintiffs were deemed to have inquiry notice based on the fact that there were contradictions between the defendants' reassurances and the information plaintiffs were receiving about their investments. *Dean Witter*, 1998 Del. Ch. LEXIS 133 at *32-34. Similarly, as discussed in Defendants' opening brief, Redleaf knew that a related fund (Aspen II) was capitally impaired and placed into liquidation by the SBA in April 2003. *See* Grant Decl. ¶ 2, Exh. 1. It also knew that the very first Series B Investment that AVM authorized was in an Aspen II portfolio company, conduct that Redleaf characterizes as a blatant act of "self-dealing." Complaint. ¶¶ 35, 36. During this same time period, Redleaf alleges that despite Defendants' representations to the contrary, it discovered that AVM was making "no efforts to solicit any further investment in Aspen." *Id*. Finally, Redleaf alleges that in 2002 and 2003, Defendants failed to provide Redleaf with any quarterly financial reports regarding the value of the Series A investments or the operating budget for AVM. Complaint ¶ 34. These "irregularities and problems" obviously made Redleaf suspicious, because in March 2003 it sought the SBA's approval to be released from its capital commitment. Complaint. ¶ 36.

If Redleaf's request to be released from its capital commitment is not enough evidence of its knowledge, on June 29, 2003 John Kohler, Co-CEO of Redleaf, sent an email to Lloyd Mahaffey, Co-CEO of Redleaf, stating that Defendants viewed Aspen III(b) as a failed "initiative that didn't work out" which should be wrapped up professionally. The email also makes it clear Redleaf knew Defendants were not looking to raise any additional investments for Aspen III(b) because of its failure. Crockett Decl. at ¶ 15.

In its Opposition, Redleaf also acknowledges that due to the "irregularities and problems" at Aspen, it had "lost faith" in Aspen's management. *See* Opposition. at p. 15. At the same time, it claims to have relied on the assurances of Defendants throughout its involvement with Aspen.

6.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

*See* Opposition at p. 3-4, 6.  Under Delaware law, investors are not allowed to blindly rely on the assurances of a company they are investing in when there are alleged indicators of mismanagement or other discrepancies.  *Dean Witter*, 1998 Del. Ch. LEXIS 133 at *38.  Nor do they need to have identified the "causal link" or know the "full economic impact" to have inquiry notice.  *Pomeranz*, 2005 Del. Ch. LEXIS 10 at *43, 46.  Like the plaintiffs in *Pomeranz*, they need only have seen something that "should have raised their eye-brows."  *Pomeranz*, 2005 Del. Ch. LEXIS 10 at *37.

Redleaf's own admissions make it clear that although it had actual knowledge of material facts suggesting alleged self-dealing and mismanagement by June 2003, Redleaf sat idly by and did nothing.

### D.    Redleaf Cannot Rely On The Highly Prejudicial Hearsay Statements Of A Deceased Witness

With nothing else to rely on, Redleaf shamelessly attempts to build its case on the hearsay of a deceased man – Thad Whalen.  *See* FED. R. EVID. 802; *Throckmorton v. Holt*, 180 U.S. 552, 573 (1901) (declarations of a deceased person are inadmissible hearsay).  This hearsay, highly prejudicial to Defendants, adds yet another reason for this Court to bar Redleaf's equitable claims and its request for equitable tolling under the doctrine of laches.  *See Fike v. Ruger*, 752 A.2d 112, 114 (Del. 2000); *Terr. of the U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760, 809 (Del. Ch. 2007) (finding prejudice from death of a witness).

Redleaf knew Whalen was the person who negotiated with Redleaf.  Redleaf also knew that Whalen was dying of pancreatic cancer, yet it waited until more than three years after his death to bring a claim.  Defendants' Opening Brief. at p. 8-9.  It is convenient for Redleaf that Whalen cannot appear to rebut the myriad statements it attributes to him in an attempt to resurrect its time-barred claims.  Opposition pp. 3-4, 6, 9.

Besides the fact that the alleged statements are inadmissible hearsay, they do nothing to relieve Redleaf of its duty to pursue its claims in a timely manner.  Like the plaintiffs in *Pomeranz,* Redleaf is not entitled to rely on the optimistic and reassuring statements of a general partner made either before or after it had other information available.  *Pomeranz,* 2005 Del. Ch.

7.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

LEXIS 10 at *52-3 ("Plaintiffs must remain alert to red-flags that should prompt an inquiry by plaintiffs into the health of their investments even when those red-flags are accompanied by optimistic projections."). If anything, the contradiction between Whalen's alleged statements and the actual financial information Redleaf received in 2002-2003 should have, and evidently did, raise red flags. *See* Section C, *supra*; *Pomeranz*, 2005 Del. Ch. LEXIS 10 at *52-53.

### E. The Consent Order Does Not Help Redleaf

Because Redleaf's entire argument rests on tolling the statute of limitations through the October 4, 2006 Consent Order, Redleaf tries to shift the timeline by claiming that the cause of action accrued on June 30, 2004, when it understood the full extent of the "financial disaster" at Aspen. This argument, however, misstates the test for inquiry notice, which is not whether or not plaintiff had full knowledge of an impending disaster, but simply whether plaintiff should have suspected wrongdoing.[1] *See* Section B, *supra*.

Redleaf's own brief reconfirms what they alleged in the Complaint – that by 2003 "Redleaf became disillusioned with Aspen III Management and attempted to extricate itself from its $15 million commitment." Opposition p. 5:1-2. It does not matter that "hindsight" has now made the entire situation "clear" to Redleaf, because the standard for starting the clock does not require 20/20 vision. Opposition p. 5:11-12. Nor does it matter that, at various other times, there were other theories that might have explained the information Redleaf was receiving. Opposition p. 5:13-15. That argument goes to whether or not there actually was fraud, not whether Redleaf should have suspected wrongdoing on the part of Defendants. *Pomeranz*, 2005 Del. Ch. LEXIS 10 at *47; *see also Smith v. McGee*, 2006 Del. Ch. LEXIS 187, at *8-9 (Del. Ch. 2006). By June 2003, Redleaf *knew* it allegedly had a failed investment on its hands, *knew* there were "irregularities and problems" at Aspen, and *knew* it had "lost faith" in Aspen's management. Complaint. ¶ 36. Under Delaware law, Redleaf was therefore obligated to diligently act to protect its legal rights within the limitations period.

---

[1] Redleaf's claim that Defendants are required to show that a "more diligent investigation" would have uncovered sufficient facts is entirely based on the discovery rule as applied in *Coleman*, 854 A.2d at 842-43. Opposition at pp. 15-16. Again, this is not the correct standard, so this entire argument is irrelevant.

8.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

Accordingly, the nine pages of Redleaf's Opposition brief devoted to events occurring *after* June 2003, including the Consent Order and the purported discovery of new information through exchanging documents with the SBA, are completely irrelevant to this case. Opposition pp. 6-9, 17-21. They are simply verbose attempts at obfuscating the actual timeline of events surrounding Redleaf's knowledge of potential claims against Defendants.

Redleaf did not need to know all facts necessary to fully articulate each and every wrongdoing. *See Dean Witter,* 1998 Del. Ch. LEXIS 133 at *31 n.49. What Redleaf did need to do was act with "reasonable alacrity" to file a claim within the limitations period. *Pomeranz*, 2005 Del. Ch. LEXIS 10 at *47, 57. Redleaf failed to so act and, given its dilatory and unreasonable conduct, Redleaf is not entitled to claim the benefit of equitable tolling. *See Adams v. Jankouskas*, 452 A.2d 148, 157 (Del. 1982) ("Equity aids the vigilant, not those who slumber on their rights."); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies … We have generally been much less forgiving…where the claimant failed to exercise due diligence in preserving his legal rights.").

There was absolutely nothing barring Redleaf from pursuing its claims in the three years between June 2003 and June 2006. Redleaf was "not entitled to sit idly by, blindly relying on defendants' assurances" when there allegedly were such clear indicators of alleged mismanagement. *Dean Witter*, 1998 Del. Ch. LEXIS at *38. Thus, Redleaf's claims are time barred and this Court should grant summary judgment for Defendants.

### F. Summary Judgment Should Be Granted On Redleaf's Claims For Equitable Indemnity And Declaratory Relief

In opposing Defendants' Motion to Dismiss, Redleaf conceded that it failed to plead the requisite elements for equitable indemnity and withdrew its claim. *See* Docket No. 46 at p. 2, n.4. Redleaf also conceded that if its other claims fail, its declaratory relief cause of action, which is wholly derivative of Redleaf's other claims, must be dismissed as well. *See* Docket No. 46 at p. 11. Moreover, since Redleaf had inquiry notice – if not actual notice – of Defendants' alleged

9.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)

1  wrongdoing by June 2003, its claims for equitable indemnity and declaratory relief are barred by
2  the statute of limitations.  Finally, Redleaf's claims for equitable indemnity and declaratory relief
3  are also barred under the doctrine of laches.  *See, e.g., Sierra Club v. U.S. Dept. of Transp.*, 245 F.
4  Supp. 2d 1109, 1114 (D. Nev. 2003).  Summary judgment is thus warranted on Redleaf's
5  previously withdrawn equitable indemnity claim and its declaratory relief cause of action.

**G.    Redleaf's Rule 56(f) Request Lacks Merit**

7  Redleaf claims it needs additional discovery from several witnesses that would supposedly
8  enable it to "successfully" oppose Defendants' summary judgment motion.  *See* Declaration of
9  Matthew Ball in Support of Redleaf's Opposition at ¶ 10.  However, no amount of discovery
10 would change the fact that Redleaf's *own* admissions and the undisputed evidentiary record
11 establish that it was on inquiry notice by June 2003, *at the latest*.  Thus, the statute of limitations
12 expired by June 2006.  Accordingly, Redleaf's Rule 56(f) request is groundless and should be
13 denied.  *See City of Moses Lake v. United States*, 451 F. Supp. 2d 1233, 1250 (E.D. Wash. 2005)
14 (finding no basis to grant a Rule 56(f) request when additional discovery would not change the
15 applicability of the statute of limitations); *see also Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
16 304 F. 3d 829, 842 (9th Cir. 2002) (Rule 56(f) request was properly denied when "laundry list" of
17 additional information plaintiff wished to discover was not necessary to defend against laches).
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

TAYLOR & CO.
LAW OFFICES, LLP

10.
REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT: CASE NO.  C-07-05350 JW (PVT)

...

## III. CONCLUSION

For the foregoing reasons, Third-Party Defendants respectfully request that their motion for summary judgment be granted and judgment entered in favor of the Third-Party Defendants.

Dated: June 11, 2008                Respectfully submitted,

TAYLOR & COMPANY LAW OFFICES, LLP

By:  /s/ Jessica L. Grant
     Jessica L. Grant
Attorneys for Third-Party Defendants
ALEXANDER P. CILENTO and DAVID CROCKETT

Dated: June 11, 2008                COBLENTZ, PATCH, DUFFY & BASS LLP

By:  /s/ William H. Orrick, III
     William H. Orrick, III
Attorneys for Third-Party Defendant
ASPEN VENTURES MANAGEMENT III, LLC

WILLIAM H. ORRICK, III (SBN 113252)
COBLENTZ, PATCH, DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, California 94111
Telephone: (415) 391-4800
Facsimile:   (415) 989-1663
E-mail: who@cpdb.com

TAYLOR & CO.
LAW OFFICES, LLP

REPLY TO REDLEAF GROUP, INC.'S OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT: CASE NO. C-07-05350 JW (PVT)