MATTHEW G. BALL (CA BAR 208881)
DEIRDRE M. DIGRANDE (CA BAR 199766)
**KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP**
55 Second Street, Suite 1700
San Francisco, CA  94105-3493
Tel:   (415) 882-8200
Fax:   (415) 882-8220
matthew.ball@klgates.com
deirdre.digrande@klgates.com

MARTIN D. TECKLER (*pro hac vice*)
**KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP**
1601 K Street, NW
Washington, DC  20006-1600
Tel:   (202) 778-9000
Fax:   (202) 778-9100
martin.teckler@klgates.com

Attorneys for Defendant
REDLEAF GROUP, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION in its capacity as Receiver for Aspen Ventures III, | Case No. C-07-05350 JW (PVT) |
| Plaintiffs, | |
| v. | **REDLEAF GROUP, INC.'S RESPONSE TO OBJECTION TO DECLARATION OF RONALD C. CIBOLSKI IN SUPPORT OF REDLEAF GROUP, INC.'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| REDLEAF GROUP, INC., | |
| Defendant and Third-Party Plaintiff, | |
| v. | Date:  June 23, 2008 |
| ASPEN VENTURES MANAGEMENT III, LLC, a Delaware Limited Liability Company, ALEXANDER P. CILENTO, a California resident, and DAVID CROCKETT, a California resident, and DOES 1-10, | Time:  9:00 a.m. Judge:  Hon. James Ware |
| Third-Party Defendants. | |

# I.    **INTRODUCTION**

This Court should overrule the SBA's objection to the Declaration of Ronald C. Cibolski based on the Ethics in Government Act, 18 U.S.C. § 207, et seq. ("EGA"), for three reasons.[1]

First, the EGA does not even apply to Mr. Cibolski's Declaration because this "particular matter" – a proceeding to enforce Redleaf Group, Inc.'s capital commitment – did not exist at the time Mr. Cibolski served as Director, SBIC Operations. See 18 U.S.C. § 207(a)(1) (permanent ban applies only to "a particular matter" in which "the person participated personally and substantially"); 18 U.S.C. § 207(a)(2) (two-year ban applies only to "a particular matter" in which "such person knows or reasonably should know was actually pending under his or her official responsibility . . . .").

Second, even if the EGA does apply, the permanent ban of 18 U.S.C. § 207(a)(1) does not cover him, because he did not participate "personally and substantially as such officer or employee" in the "particular matters" that the SBA raises.  Rather, the two-year ban of 18 U.S.C. § 207(a)(2) applies, since, at most, he knew or reasonably should have known that the particular matters relating to Redleaf and Aspen III were pending under his official responsibility.  Because Mr. Cibolski submitted his declaration more than five years after he left the SBA, his declaration falls outside of this provision.

Third, even if the Ethics in Government Act does apply, and even if the permanent ban in § 207(a)(1) applies to Mr. Cibolski, the EGA does not bar Mr. Cibolski from testifying as to his "personal knowledge as to occurrences which are relevant to the issues in the proceeding, including those in which [he] participated, utilizing his . . . expertise." 5 C.F.R. § 2637.208(b); see also 18 U.S.C. § 207(j)(6) ("Nothing in this section shall prevent an individual from giving testimony under oath, or from making statements required to be made under penalty of perjury . . . .").  Because this

---

[1]  For the key proposition in the Objection, the SBA relies on *U.S. ex rel. Watson v. Connecticut General Life Ins. Co.,* 2003 WL 303142 (E.D.Pa. 2003) (Unpublished). *Watson* was a case interpreting the False Claims Act and did not address Evidence Rule 402. Moreover, the *Watson* case refused to exclude the declaration in that case under the EGA, relying on the exception for testimony under oath, discussed infra.

1  sort of testimony is exactly what is at the heart of Mr. Cibolski's declaration, his testimony is not

2  barred by the EGA.[2]

3  ## II. <u>ARGUMENT</u>

4  **A.    The EGA Does Not Apply, Because This Litigation Is Not The Same "Particular**

5  **Matter" As Any "Particular Matter" That Existed During Mr. Cibolski's Tenure at the SBA.**

6         For the EGA to even apply to Mr. Cibolski's Declaration, the SBA must show that Mr.

7  Cibolski has "knowingly ma[de], with the intent to influence" a "communication to or appearance

8  before any . . . court . . . on behalf of another person, in connection <u>with a particular matter</u>" in which

9  he either "participated personally and substantially" during his time at the SBA, <u>or</u> that he knew or

10 reasonably should have known "was actually pending under his . . . responsibility . . . ." 18 U.S.C.

11 § 207(a)(1), (a)(2) (emphasis added). In other words, the SBA <u>must</u> prove that this "particular

12 matter" is the same as a "particular matter" pending during Mr. Cibolski's tenure as Director of

13 SBIC Operations.

14        The SBA cannot prove that this "particular matter" is the same as a "particular matter"

15 pending during Mr. Cibolski's tenure at the SBA because this Court must construe the term

16 "particular matter" to mean, at its broadest, a proceeding to force Redleaf to pay the balance of its

17 capital commitment. Because no such "particular matter" existed during Mr. Cibolski's tenure at the

18 SBA, the EGA does not apply to him at all.

19        The first point that compels this conclusion is the overall purpose of the EGA:  to prevent ex-

20 Government officials from switching sides on "discrete and isolable transactions between

21 identifiable parties." <u>See</u> B. Manning, <u>Federal Conflict of Interest Law</u> 204 (1964) (quoted in <u>United</u>

22 <u>States v. Medico Industries, Inc.</u>, 784 F.2d 840, 843 (7th Cir. 1986)). Thus, as the SBA points out, a

23 government employee responsible for negotiating a particular contract on behalf of the U.S.

24 Government may not then "change sides" and negotiate a substantially similar contract, this time

---

25  [2]  The SBA also objects to the relevance of Mr. Cibolski's testimony because it ignores the supposed
26  regulator/receiver distinction. <u>See</u> Doc. 97, at 2, 3. As in its Motion, the SBA has utterly failed to
    set forth any legal basis or persuasive argument as to why this supposed distinction should matter.
27  Instead, it simply reprises the argument in the SBA's Motion with conclusory and circular
    statements such as "Even if true, any alleged failures of the SBA as regulator do not affect Aspen
28  Ventures' ability to enforce a capital commitment against its limited partner." <u>Id.</u> at 3-4.

1   representing a private party. <u>See</u> <u>Medico Indus., Inc.</u>, 784 F.2d at 844. Accordingly, to trigger the

2   EGA's prohibitions, there must be a continuous "particular matter" that would implicate this side-

3   switching concern.

4       Bolstering this conclusion is the EGA's definition of the term "particular matter." The EGA

5   defines the term "particular matter" by referring to specific examples of adverse proceedings or

6   negotiations between a government agency and a private party, <u>e.g.</u>: "any investigation, application,

7   request for a ruling or determination, rulemaking, contract, controversy, claim, charge, accusation,

8   arrest, or judicial or other proceeding." 18 U.S.C. § 207(i)(3); <u>see also</u> Office of Government Ethics

9   Opinion 80 x 4, June 13, 1980, attached hereto as Exhibit A ("The term 'particular matter' as used in

10  18 U.S.C. § 207 is restricted to a particular contract, a particular case, a particular proceeding, a

11  particular claim and the like. As noted in the legislative history, the word 'particular' emphasizes

12  that <u>the restriction applies to a specific case or matter and not to a general area of activity</u>.")

13      Third, the very purpose of the phrase "particular matter" is to narrow the scope of the

14  applicability of § 207(a)(1). Indeed, in an interpretive memorandum from the Director of the Office

15  of Governmental Ethics that directed ethics officials how to interpret this particular phrase, the

16  Director stated that: "When this language is used, it reflects 'a deliberate effort to impose a more

17  limited ban and to narrow the circumstances in which the ban is to operate.'" <u>See</u> Memorandum

18  from Director of Office of Governmental Ethics to Agency Ethics Officials, October 4, 2006,

19  attached hereto as Exhibit A (quoting Manning, <u>supra</u>). Therefore, the Office of Governmental

20  Ethics "has emphasized that the term 'typically involves a specific proceeding affecting the legal

21  rights of the parties, or an isolatable transaction or related set of transactions between identified

22  parties.'" <u>Id.</u> (quoting 5 C.F.R. § 2640.102(1)). Examples of "particular matters involving specific

23  parties include contracts, grants, licenses, product approval applications, investigations, and

24  litigation." <u>Id.</u>

25      Finally, this Court is to construe the phrase "particular matter" narrowly, both because the

26  EGA is a criminal statute, and thus should be strictly construed, <u>United States v. Ryberg</u>, 43 F.3d

27  1332, 1334 (9th Cir. 1995).

28

1    Thus, the analog to the government employee switching sides on a particular contract in

2  Medico Industries would be if the SBA had attempted to enforce Redleaf's capital commitment

3  while Mr. Cibolski headed SBIC Operations, and then Mr. Cibolski left the SBA to begin

4  representing Redleaf in its attempt to resist enforcement of the capital commitment.  This, however,

5  is not the situation before the Court.  Here, Mr. Cibolski left the SBA approximately four years

6  before the SBA began to demand that Redleaf pay its capital commitment.  Compare Declaration of

7  Michael J. Tomana in Support of Redleaf Group, Inc.'s Opposition to Motion for Summary

8  Judgment, or in the Alternative Summary Adjudication, on the Receiver's Claim for Breach of

9  Contract ("Tomana SBA Dec.") ¶ 25,[3] Doc. 79, with Declaration of Ronald C. Cibolski in Support

10  of Redleaf Group, Inc.'s Opposition to Motion for Summary Judgment, or in the Alternative

11  Summary Adjudication, on the Receiver's Claim for Breach of Contract ("Cibolski SBA Dec.") ¶ 2,

12  Doc. 82.

13    The SBA, assumes, without citation of the statute or supporting case authority, that the

14  "particular matter" at issue both then and now is:  generally, the regulation and oversight of Aspen

15  III (not Redleaf per se), including the approval of the 2002 Amendment, which admitted Redleaf to

16  the limited partnership; the approval of the SBA's $30 million leverage commitment to Aspen III,

17  premised on Redleaf's capital commitment; the approval of four leverage draws made by Aspen III;

18  and the approval of Redleaf's request that it be allowed to fulfill its capital commitment with non-

19  cash assets.  Objection, Doc. 97, p. 6.  In other words, the SBA submits that the term "particular

20  matter" should be interpreted to mean the entire relationship between the SBA, Redleaf, and Aspen

21  III.

22    This Court should reject this broad reading of the term, given the EGA's limited purpose of

23  preventing government officials from "switching sides", the definition of "particular matter" as a

24  specific adverse proceeding or negotiation and as interpreted by the Office of Governmental Ethics,

25  and the requirement to construe the term "particular matter" narrowly to acknowledge the purpose of

26  the EGA, as well as the general rule applicable to criminal statutes.

27

---

28  [3]  The SBA has not objected to Mr. Tomana's Declaration, or provided contrary evidence, as to the date therein, and so such dates should be deemed established for the purposes of the Motion.

**B.    Alternatively, the Permanent Ban of Section 207(a)(1) Does Not Apply Because Mr. Cibolski Did Not Personally and Substantially Participate in the "Particular Matter"; Rather, at Most, the Two-Year Ban of Section 207(a)(2) Applies.**

If a government employee does not participate "personally and substantially" in "a particular matter," but merely "knows or reasonably should know [that a particular matter] was actually pending under his or her official responsibility . . . within a period of 1 year before the termination of his . . . employment with the United States" the employee is only banned from making a "communication to or appearance before any . . . court . . . in connection with a particular matter" for two years. 18 U.S.C. § 207(a)(2).[4]

Here, Mr. Cibolski signed his declaration on June 2, 2008, and had left the employ of the SBA five years before, in 2003. Accordingly, if Mr. Cibolski had no "personal and substantial" participation in the "particular matter" (even under the SBA's incorrect understanding of that term), Mr. Cibolski would at most be subject to the two-year ban of Section 207(a)(2). Since approximately five years have passed between the time Mr. Cibolski worked at the SBA and the time Mr. Cibolski filed his declaration, Mr. Cibolski is well outside the two-year ban.

To fir Mr. Cibolski's declaration within the more restrictive permanent § 207(a)(1) prohibition, the SBA asserts that Mr. Cibolski participated personally and substantially in a number of activities. The SBA's assertions, however, are incorrect.

First, the SBA asserts that Mr. Cibolski "was responsible, through staff for the regulatory oversight, financial oversight, and leveraging of Aspen Ventures . . . ." Objection, Doc. 97, p.2. What the SBA is saying, essentially, was that Mr. Cibolski was Director of SBIC Operations and had ultimate responsibility to supervise all SBICs. In other words, the SBA must agree with the conclusion that the Aspen Ventures matter was merely "pending under his . . . official responsibility." 18 U.S.C. § 207(a)(2).

Second, the SBA concedes that it has no evidence that Mr. Cibolski "participated personally and substantially" in the approval of the 2002 Amendment that admitted Redleaf as a limited partner of Aspen III. See Objection, Doc. 97, p. 2. Indeed, the SBA asserts that "Mr. Cibolski, by virtue of

---

[4]    Redleaf finds it notable that the SBA did not even attempt to bring Section 207(a)(2) to this Court's attention.

his role as Director of SBIC Operations and his supervisory position over Walter C. Peterson, the Area Chief at the time, must have been aware of, if not approved" the 2002 Amendment. Id. Given the voluminous Declaration of Marja Maddrie that purports to support the Objection, if the SBA had evidence that Mr. Cibolski was involved in approving the 2002 Amendment, it is certain that this Court would now have such evidence as well. The reason that this Court does not have such evidence is because it does not exist. Since there is no evidence of personal and substantial participation, this, too, clearly falls, at most, under Section 207(a)(2), as it relates to a matter pending under Mr. Cibolski's official responsibility.

Indeed, according to the SBA's official delegations of authority in force at that time, the approval of the 2002 Amendment would not have fallen to Mr. Cibolski, but instead would have been the responsible Area Chief, in this case Walter C. Peterson, with only clearance or signoff by the Director of Operations. Attached hereto as Exhibit C is a copy of the applicable SBA Delegations of Authority which clearly shows at Section B9 that the responsible Area Chief, with only clearance by the Director of Operations, is the responsible party for approval of such a significant post-licensing action.

Third, the SBA asserts that Mr. Cibolski participated personally and substantially by approving the SBA's $30 million leverage commitment based upon Redleaf's admission to Aspen III, and then approved four (4) separate leverage draws by Aspen III. Objection, Doc. 97, p. 3. This activity does not constitute sufficient personal and substantial participation to bring Mr. Cibolski within the § 207(a)(1) prohibition. As Director of SBIC Operations, Mr. Cibolski was officially required to participate in the approval process for leverage commitments for all SBICs, but only the Associate Administrator for Investment was delegated responsibility for the approval of leverage requests. Mr. Cibolski's role was only incidental to that approval. See Exhibit C at Section C1. "Substantial" participation requires more than this sort of official responsibility, knowledge, or perfunctory involvement. 5 C.F.R. § 2637.201(d); see also Kelly v. Brown, 9 Vet. App. 37, 39 (1996) (reviewing, signing, and filing "two minor pleadings" on behalf of appellee was not

1  sufficiently substantial so as to preclude former agency attorney from subsequently representing

2  appellant in same appeal eight months later").[5]

3          Fourth, the SBA asserts that Mr. Cibolski personally approved Redleaf's request that it be

4  allowed to fulfill its capital commitment with non-cash assets. Objection, Doc. 97, p. 3. Again,

5  "substantial" involvement requires more than involvement on an administrative or peripheral issue

6  like this one. 5 C.F.R. § 2637.201(d). Moreover, this type of matter, a special determination with

7  respect to the recapitalization of an SBIC, was delegated to the Area Chief, Walter C. Peterson, with

8  only peripheral clearance or signoff required of Mr. Cibolski, his supervisor. See Exhibit C at

9  Section D11.[6]

10     **C.    Regardless of How the Court Resolves the Previous Two Issues, Nothing in the
       EGA Prohibits Mr. Cibolski from Telling the Truth Under Oath.**

12          Finally, the SBA fails to point out to this Court that the EGA and its regulations both set

13  forth an exception for testifying as to one's personal knowledge under oath and making statements

14  required to be made under penalty of perjury. 18 U.S.C. § 207(j)(6) ("Nothing in this section shall

15  prevent an individual from giving testimony under oath, or from making statements required to be

16  made under penalty of perjury . . . ."); 5 C.F.R. § 2637.208. In fact, although the EGA does not

17  allow an employee otherwise barred under the EGA from testifying as an expert witness, the

---

[5]  The SBA claims that the leverage draws were based on the enforceability of Redleaf's commitment, and insinuates that Mr. Cibolski believed that Redleaf's capital commitment was enforceable. That general statement has little relevance to the questions before the Court. One question before the Court is whether the 2002 Amendment limited the SBA's right to seek Redleaf's Series B commitment to repay Series A leverage. Mr. Cibolski, as well as anyone else, could believe both that Redleaf's capital commitment was enforceable and that the SBA's rights to seek Redleaf's unpaid commitment were limited. Another question before the Court is whether the SBA's collusion in the wrongful conduct of Aspen III's management – which apparently came to light much later, and of which Mr. Cibolski was clearly ignorant – now prevents the SBA from seeking the balance of Redleaf's commitment.

[6]  The SBA also relies on CNA Corp. v. U.S., __ Fed.Cl. __, 2008 WL 1956260 (Fed. Cl. 2008) (Slip Opinion). However, in that case the former government employee barred by the agency from participating as a principal investigator for a 2007 National Children's Study was determined on review to not have participated "substantially" in the program during her previous employment (for purposes of the prohibition bar of Section 207) despite her former title as the "team leader" of the group assisting in making recommendations for certain sections of the National Children's Study. Id. at 3. The opinion therefore does not assist the SBA.

regulations contain an important exception allowing a former employee to "testify from personal knowledge as to occurrences which are relevant to the issues in the proceeding, including those in which the former Government employee participated, utilizing his or her expertise . . . ." This is exactly the kind of testimony Mr. Cibolski has given.

## III. CONCLUSION

For the foregoing reasons, Redleaf Group, Inc. respectfully submits that this Court should overrule the SBA's objection to the Cibolski declaration.

Dated:  June 17, 2008                    KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP


By:  Matthew G. Ball /s/
     Matthew G. Ball, Esq. (CA Bar 208881)
     55 Second Street, Suite 1700
     San Francisco, CA 94105
     Telephone: (415) 882-8200
     Facsimile: (415) 882-8220
     (matthew.ball@klgates.com)

     Martin D. Teckler (*pro hac vice*)
     martin.teckler@klgates.com
     Kirkpatrick & Lockhart Preston Gates Ellis LLP
     1601 K Street, NW Washington, DC, 20006-1600
     Telephone: (202) 778-9000
     Facsimile: (202) 778- 9100
     (martin.teckler@klgates.com)

     Attorneys for Defendant/Third-Party Plaintiff
     Redleaf Group, Inc.

# EXHIBIT A

# Office of Government Ethics
## 80 x 4 -- 06/13/80

### Letter to an Attorney for a Private Corporation
### dated June 13, 1980

This [advice] is rendered in response to your letter request of November 7, 1979, as further refined by the opinion of the General Counsel, [of a] Department, letter of February 14, 1980, and your letter of March 17, 1980.

In this opinion, we have occasion to decide whether or not a former Government employee who is now an employee of [a corporation] is barred from representing [the corporation] in conjunction with any of the four phases of [a] Government program relating to the delivery of [certain] aircraft to [a foreign air force]. More specifically, we are called on to decide whether the [third phase of this Government] program, "Phase III," was a "particular matter involving a specific party or parties" at the time the former Government employee worked on it [in his former Department]1 and whether or not his participation in the matter rose to the level of "personal and substantial" participation within the meaning of 18 U.S.C. § 207. We conclude that at the time your employee worked on the [third phase of the] program, it was a particular matter involving specific parties and that his work constituted "personal and substantial" participation so as to trigger the restrictions of 18 U.S.C. § 207 (Pub. L. No. 87-849).2 We further conclude, however, for the reasons set forth below, that such findings do not necessarily preclude all contacts or communications by the former Government employee on behalf of [the corporation] as those contacts or communications relate to the [third phase of the] program or contracts flowing therefrom. We further conclude that the former employee would not be barred from acting as [the corporation's] agent in regard to the other three phases of [this particular program].

### Facts

[The former Government employee involved] is currently an employee of [a corporation]. Prior to his retirement, effective May 1, 1979, he served as a Staff Assistant to the Chief of the Acquisition Division [of a subordinate command within a Department]. In early 1978, [the employee] was designated the [Department's] foreign military sales monitor, a term synonymous with program manager, for one phase of [a] four phase [Government]

program. In that capacity he was responsible for developing and recommending an appropriate technical support plan for [certain] aircraft subsequent to their delivery to the [foreign air force]. The program for technical support of the aircraft in [the foreign country] has been designated as [Phase III of this] program.

The [complete] program is a comprehensive program whereby the United States, through the agencies of [the former employee's] Department and subject to certain requisite approvals of [another] Department and the United States Congress, plans to equip [a particular foreign air force] with 60 aircraft and necessary support by way of aircraft spare parts, ground support equipment, training and other services so as to enable the [foreign air force] to effectively utilize the aircraft. The program is divided into four phases. [Phase I] covers the actual sale and furnishing of 60 aircraft together with related support hardware and data. [Phase II] covers the construction at several sites in [the foreign country] of aircraft hangars and associated air base improvements. [Phase III] involves the in-country maintenance of the aircraft in [the foreign country] for a period of approximately three years and the training of [that country's] personnel in aircraft maintenance and repair so that at the end of the three year period the aircraft can be maintained and repaired in large part by [the country's own] personnel. [Phase IV] consists of pilot training of [the foreign country's own] pilots within the United States and the training of ground personnel in certain aspects of aircraft maintenance.

[Phase I] is covered by a government-to-government agreement entered into by the United States and [the foreign country] in July 1978. [Phase I] will be implemented in its essential elements by a contract entered into between the United States and [the corporation] for the manufacture of 60 aircraft. A contract calling for the commencement of efforts leading to the manufacture of the 60 aircraft was entered into between the United States acting through the [a subordinate command of the Department] and [the corporation] on February 26, 1979, prior to [the subject employee's] leaving Government service. [The employee] was not involved in establishing the contract requirements but did, however, have knowledge of the activity. His participation in matters involving [Phase I] of the program was limited to overall cognizance of major program requirements and coordination of the [total program's] Provisioning Policy as dictated by standard policies and procedures [of the former employee's Department]. [The corporation] and [the employee] assert that he did not have

"official responsibility" as defined in 18 U.S.C. § 202(b) for the program. The [Department's] General Counsel does not take issue with that assertion and this Office finds nothing to contradict it.

During July 1978, a United States team including approximately 18 [Department] personnel, 2 [of the corporation's] personnel and others visited [the foreign country] to brief the [country's air force] on plans for the program, including all four segments of the program. [The employee] was a member of the [Department's] team which also included a number of representatives from [two ancillary commands of the Department]. [The employee] also participated during February 1979, in a program review conducted at [the foreign country]. During both visits, [the employee's] personal participation was limited to [Phase III] matters.

During the period July-September 1978, a team consisting of personnel from the Production Management branch [within the] Acquisition Division and others at [the subordinate command] was formed to prepare a program description for the [Phase II] program. [The corporation] asserts that [the employee] was not a member of that team. He did, however, review various drafts of the program description and offered comments thereon. The program description was completed during January 1979, prior to [the employee's] retirement, for submission to and approval by the [ancillary command] and the [foreign government]. This same team prepared a Statement of Work for use in the contemplated Request for Proposal issued by [the subordinate command]. [The employee] also reviewed and commented on various portions and drafts of the Statement of Work. The Statement of Work was incomplete as of the date of [the employee's] retirement.

It should be noted that either in June or July 1979, [the Department] determined that the Request for Proposal for [Phase III] should be limited to a proposal from [the corporation], the designer and manufacturer of the aircraft [in question]. [The corporation] was, in effect, thereby designated the "sole source" for Phase III of the program.

[The corporation] desires to utilize [the former employee] to provide coordination between a division of [the corporation] and the [the subordinate command] on matters involving [this] program. Specifically, [the corporation] has described his typical duties to this Office as follows:

1.  Apprise appropriate [corporation] personnel of current events involving [the] program, performance, customer organizational changes and/or reorganizations, customer requirements, and ensure that communications between [the corporation] and the customer are directed to the proper authority.

2.  Communicate with the customer's [the subordinate command's] personnel to coordinate and effect implementation of subject program.

3.  Provide intercommunication between [the corporation] and the customer's organization to assure that program activities are properly coordinated, both procedurally and technically.

4.  Participate in appropriate customer activities involving briefings, reviews, and meetings.

5.  Be responsible for logistic support of [the corporation] personnel while attending conferences, meetings or briefings at customer facilities.

In August 1979, [the employee] attempted to obtain contractor credentials so that he could represent [the corporation] before [the subordinate command's] personnel in relation to [the program].  He was denied such credentials premised upon the duties he had performed for the [Department] at [the subordinate command] in connection with the program.  An opinion issued by the [counsel for the subordinate command] concluded that his personal and substantial involvement in the programs forever barred him from acting as an agent or attorney for anyone other than the United States (18 U.S.C. § 207(a)).

It was the issuance of the aforesaid opinion which prompted the request for this opinion.

**Issues**

Whether or not [the former employee] is precluded from representing [the corporation] in regard to [the program's] matters generally or [Phase III]  matters specifically turns on the resolution of several threshold issues.

As previously noted, [the former employee] retired on

April 30, 1979, which was prior to the effective date of the amendments to 18 U.S.C. § 207 enacted by the passage of the Ethics in Government Act of 1978 (Pub. L. No. 95-521).3  Accordingly, the prohibitions which apply to him are those found in 18 U.S.C. § 207 as it read at the time of his retirement.4

Based upon our analysis of the program as described at pages 2 and 3 above, it is the opinion of this Office that [Phase I, II and IV] are separate "particular matters" and that [the former employee's] peripheral involvement in those phases of the program other than [Phase III] did not rise to a level that would trigger the prohibitions of 18 U.S.C. §§ 207(a) or (b).  Accordingly, he would not be prohibited from acting as [corporation's] agent or representative as to matters evolving from and limited to Phases I, II or IV.



There are, however, two issues the resolution of which will determine whether [the employee] may at any time and in any way act to represent [the corporation] as to [Phase III] or any matters evolving therefrom.  Those issues are as follows:

1.  Was the [Phase III] program a "particular matter involving a specific party or parties" in which [the employee] "participated personally and substantially" while a Government employee, and, if so,

2.  Would [the former employee's] duties, as described by [the corporation], violate  section 207?

**Discussion**

1.  Was the [Phase III] program a "particular matter involving a specific party or parties" in which [the former employee] "participated personally and substantially" while a Government employee?

The applicable statute provides, in relevant part, as follows:

(a) Whoever, having been an officer or employee of the executive branch of the United States Government. . ., after his employment has ceased, knowingly acts as agent or attorney for anyone other than the United States in connection with any judicial or

other proceeding, application, request for a
ruling or other determination, contract,
claim, controversy, charge, accusation,
arrest, or other particular matter involving a
specific party or parties in which the United
States is a party or has a direct and
substantial interest and in which he
participated personally and substantially as
an officer or employee, through decision,
approval, disapproval, recommendation, the
rendering of advice, investigation, or
otherwise while so employed. . . [S]hall be
fined not more than $10,000, or imprisoned not
more than two years, or both.5

[The corporation] argues that its contemplated proposal and
the anticipated contract for furnishing services to the [foreign
air force] under the [Phase III of the] program were not, at the
time [the former employee] left Government service, "particular
matters involving a specific party or parties."

In support of its argument [the corporation] cites the
Memorandum of the Attorney General regarding Conflict of Interest
Provisions of Pub. L. No. 87-849, 28 F.R. 985, (Feb. 1, 1963) as
follows:

Subsections (a) and (b) describe the
activities they forbid as being in connection
with 'particular matter(s) involving a
specific party or parties' in which the former
officer or employee had participated.  The
quoted language does not include general
policy or standards, or other similar
matters.  Thus past participation in or
official responsibility for a matter of this
kind . . . does not disqualify a former
employee from representing another person in a
proceeding which is governed by the rule or
other result of such matter.

[The corporation] further refers to language in the
introduction to the Interim Regulations on Post Employment
Conflict of Interest, 5 C.F.R. Part 737, 44 F.R. 19974,
(Apr. 3, 1979), issued by the Office of Personnel Management, as
follows:

Under both subsections (a) and (b) a
former employee is limited only with respect
to a 'particular matter involving a specific
party or parties' in which the United States
is a 'party or has a direct and substantial
interest' -- and in which the employee had the
prior involvement specified by the statute.
This is an important qualification, and means,
for example, that an employee can participate
in formulating a general program or
regulation, but not be restricted later as to
specific cases involving the application of
that program or regulation. (pp. 19974-19975).

We, of course, do not question the validity of these
quotations. The term "particular matter" as used in 18 U.S.C.
§ 207 is restricted to a particular contract, a particular case, a
particular proceeding, a particular claim and the like.6  As noted
in the legislative history, the word "particular" emphasizes that
the restriction applies to a specific case or matter and not to a
general area of activity.7



Insofar as the meaning of the limiting phrase "involving a
specific party or parties" is concerned, we concur in Manning's
comment as follows:

Where this language is used, it is clear that
the statute is concerned with discrete and
isolatable transactions between identifiable
parties . . . . A close standard of
specificity is required in two different
respects under subsection (a); for a matter to
be swept under the subsection, it must involve
a specific party or parties both at the time
the government employee acted upon it in his
official capacity and at the subsequent time
when he undertakes to act as an agent or
attorney following termination of his
government service.8

It is the opinion of this Office that [the corporation] was
involved in the program and, more specifically, [Phase III], as a
"specific party" from the time that the decision was made by the
U. S. Government to approve the sale of the aircraft to [the
foreign country]. As early as July 1978, representatives of [the

corporation] attended meetings in [the foreign country] together with [Department] personnel, including [the employee], to discuss the entire program with [representatives of the foreign government]. During the same time that [the employee] was deeply involved in [Phase III] (from early 1978 until his retirement in April 1979), it became clear that [the corporation] was identified as the likely contractor for [Phase III] because of its familiarity with its own aircraft. As noted previously, this identification was formalized in July 1979, when [the corporation] was named "sole source" for Phase III.

This Office concurs in the opinion of the General Counsel of the [former employee's Department] that the question of when a particular matter involves a specific party is not to be determined mechanically by dates of contract documents, but more realistically by the degree of interest expressed and contacts made with, in this case, the [Department] by private parties as contractual requirements evolve. We further concur in the conclusion of the [Department's] General Counsel that [the corporation] was clearly identified with the entire program, including Phase III, long before [the employee] left Government service. We have no doubt that [Phase III] was a "particular matter" before his departure.

Having determined that [Phase III] was a particular matter involving specific parties at the time [the employee] worked thereon, we must now determine whether his participation therein was personal and substantial. As Foreign Military Sales Monitor for [Phase III] he had a direct and important role in formulating the plan for technical support of the aircraft to be purchased by [the foreign country]. He also made trips to [the foreign country], participated in briefings on [Phase III] and commented on and had an input into the review and formulation of a 150 page Statement of Work for [Phase III of the program].

While it may be argued that his activity consisted of participation in stages of what would later become a formal contract, we are, nevertheless, of the opinion that section 207 covers such participation. Much of the work with respect to a particular matter is accomplished before the matter reaches its final stage. For example, an employee may personally participate in an investigation to determine whether the Government should file a formal action. Further, he might recommend, based upon his investigation, that the formal action be undertaken. If such an employee could at that point, before the actual filing of the

action, leave the Government and contend that he was not barred by section 207 because his work did not extend to participation in an actual "judicial or other proceeding," the purpose of section 207 would be undermined. The same holds true with respect to the preliminary steps leading to a contract. Thus, if its purposes are to be served, section 207 must be read as including personal and substantial participation in the formative stages of particular matters.

Indeed, the express terms of section 207 deal with preliminary aspects of particular matters. The language covers participation through decision, approval, disapproval, recommendation, the rendering of advice, investigation, etc. Such activity is frequently associated with the preliminary aspects of a particular matter.

For the foregoing reasons we are of the opinion that [the former employee's] activities in regard to [Phase III] while [working for the Department] constituted personal and substantial participation in a particular matter involving specific parties and are, therefore, covered by section 207.

2. Would [the former employee's] proposed duties, as described by [the corporation] violate section 207?

The Office of Legal Counsel, Department of Justice, in an unpublished opinion issued in December 1978, had occasion to address the question concerning what types of representation are proscribed by section 207.**9**  That opinion, which also dealt with the application of the pre-amended section 207 (Pub. L. No. 87-849), took the position that not all communications between a former Government employee and his or her agency necessarily constitute acting as an "agent" within the proscriptions of section 207. It expressed the more limited view, in which this Office concurs, that "in the context of a contract, a former employee acts as the 'agent' of a nonfederal person or entity where he urges or requests the Government to take or refrain from taking action or otherwise acts on behalf of that person or entity in dealing with the Government pertaining to the provisions or performance of the contract as to which the contractor and the Government may have differing or potentially differing views."

The foregoing interpretation "requiring an ingredient of at least inchoate adversariness," is, as the opinion points out, reflected in the list of particular matters to which the ban in

section 207 specifically applies: "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter involving a specific party or parties," in which the United States is a party or has a direct and substantial interest.

The opinion further points out that "[a] contract between the Government and a private person or entity . . . may extend over a long period of time and involve numerous contacts between governmental and contractor personnel that jointly facilitate performance of the contract and have no adversarial aspect." (emphasis added.) This Office and the Department of Justice, do not believe that the use of the term "contract" in section 207 was intended to apply to all such communications or contacts. The foregoing interpretation is essentially embodied in the regulations concerning Post Employment Conflict of Interest recently issued by this Office interpreting section 207(a), as amended by Title V of the Ethics in Government Act of 1978.**10**

Our review of the legislative history of section 207, like the review by the Department of Justice, revealed nothing to suggest that the prohibitions of section 207(a) were intended to cover contacts or communications  with the Government that do not involve potentially adversarial or controversial matters with respect to a contract or other particular matter.

On the other hand, quoting again from the Department of Justice opinion:

This does not, of course, mean that the restriction in § 207 is limited to formal appearances or proceedings. The provision . . . does reach informal meetings, correspondence, or conversations with agency officials in which the former employee urges the position of a contractor with respect to an aspect of the contract in which the position of the contractor and that of the employee's former agency are potentially divergent. Moreover, the prohibition against acting as the contractor's 'agent' should not be confined to major disputes, renegotiations, or the like. Requests for extensions of interim deadlines or work orders, non-routine

requests for instructions or information from
the agency, suggestions about new directions
or even relatively minor portions of the
contract, and explanation or justification of
the manner in which the contractor has
proceeded or intends to proceed would all
appear to be barred; they involve at least
potentially divergent views of the Government
and the contractor on subsidiary issues or an
implicit representation by the agent that the
contractor is in compliance with contract
requirements.

This Office does not have a full appreciation or
understanding of exactly what it is intended that [the former
employee] do on behalf of [the corporation] as set forth in [the
corporation's] generalized  description of his typical duties
envisioned, supra, p.  4-5.  However, insofar as  his activities
in relation to [Phase III] do not involve his urging the position
of [the corporation] relative to any aspect of the proposal or
contract, as described in the preceding paragraph, it is the
opinion of this Office that he may undertake such duties without
violating the prohibitions of section 207.

This opinion does not address the question of whether or not
[the former employee's] proposed employment violates the
provisions of either 18 U.S.C. § 281 or 37 U.S.C. § 801(c) as such
violations will depend on his particular conduct, not his
employment status.  If it subsequently appears that his particular
conduct violates the provisions of those statutes, it would be
appropriate to refer the matter to the proper authorities for
investigation and disposition.

Sincerely,

J. Jackson Walter
Director

--------------------

1 Early 1978 through April 30, 1979, at which time he retired
from the [Department].

2 18 U.S.C. § 207 (Pub. L. No. 87-849) was amended in 1978
by the Ethics in Government Act (Pub. L. No. 95-521) but the

effective date of the section 207 amendments was July 1, 1979, two months after the former Government employee's retirement.

**3** Section 502 of Pub. L. No. 95-521 provides: "The amendments made by section 501 shall not apply to those individuals who left government service prior to the effective date such amendments...."

Section 503 provides: "The amendments made by section 501 shall become effective on July 1, 1979."

**4** 18 U.S.C. § 207 (Pub. L. No. 87-849).

**5** 18 U.S.C. § 207(a) (Pub. L. No. 87-849).

**6** B. Manning, Federal Conflict of Interest Law 55 (1964)

**7** H.R. Rep. No. 748, 87th Cong., 1st Sess. 20 (1961).

**8** B. Manning, supra at 204.  See also 5 C.F.R. § 737.5(c)(4).

**9** Letter from Leon Ulman, Deputy Assistant Attorney General, to James L. Kelly, Acting General Counsel, Nuclear Regulatory Commission (December 28, 1978).

**10** See 5 C.F.R. § 737.5(b)(5).

# EXHIBIT B

06 x 9

Memorandum dated October 4, 2006,
from Robert I. Cusick, Director,
to Designated Agency Ethics Officials
Regarding "Particular Matter Involving
Specific Parties," "Particular Matter," and "Matter"

Perhaps no subject has generated as many questions from ethics officials over the years as the difference between the phrases "particular matter involving specific parties" and "particular matter." These phrases are used in the various criminal conflict of interest statutes to describe the kinds of Government actions to which certain restrictions apply. Moreover, because these phrases are terms of art with established meanings, the Office of Government Ethics (OGE) has found it useful to include these same terms in various ethics rules. A third term, "matter," also has taken on importance in recent years because certain criminal post-employment restrictions now use that term without the modifiers "particular" or "involving specific parties."

It is crucial that ethics officials understand the differences among these three phrases. OGE's experience has been that confusion and disputes can arise when these terms are used in imprecise ways in ethics agreements, conflict of interest waivers, and oral or written ethics advice. Therefore, we are issuing this memorandum to provide guidance in a single document about the meaning of these terms and the distinctions among them.

Because the three phrases are distinguished mainly in terms of their relative breadth, the discussion below will proceed from the narrowest phrase to the broadest.

### PARTICULAR MATTER INVOLVING SPECIFIC PARTIES

The narrowest of these terms is "particular matter involving specific parties." Depending on the grammar and structure of the particular statute or regulation, the wording may appear in slightly different forms, but the meaning remains the same, focusing primarily on the presence of specific parties.

## 1. *Where the Phrase Appears*

This language is used in many places in the conflict of interest laws and OGE regulations. In the post-employment statute, the phrase "particular matter . . . which involved a specific party or parties" is used to describe the kinds of Government matters to which the life-time and two-year representational bans apply. 18 U.S.C. § 207(a)(1), (a)(2). Occasionally, ethics officials have raised questions because section 207 includes a definition of the term "particular matter," section 207(i)(3), but not "particular matter involving specific parties"; however, it is important to remember that each time "particular matter" is used in section 207(a), it is modified by the additional "specific party" language.[1]

In addition to section 207(a), similar language is used in 18 U.S.C. §§ 205(c) and 203(c). These provisions describe the limited restrictions on representational activities applicable to special Government employees (SGEs) during their periods of Government service.[2]

As explained below, 18 U.S.C. § 208 generally uses the broader phrase "particular matter" to describe the matters from which employees must recuse themselves because of a financial interest. However, even this statute has one provision, dealing with certain Indian birthright interests, that refers to particular matters involving certain Indian entities as "a specific party or parties." 18 U.S.C. § 208(b)(4); *see* OGE Informal Advisory Letter 00 x 12. Moreover, OGE has issued certain regulatory exemptions, under section 208(b)(2), that refer to particular matters involving specific parties. 5 C.F.R. § 2640.202(a), (b). Likewise, the distinction between particular matters involving specific parties and broader types of particular matters (i.e., those that have general applicability to an entire class of persons) is crucial to several other regulatory exemptions issued by OGE under section 208(b)(2). 5 C.F.R. §§ 2640.201(c)(2), (d); 2640.202(c); 2640.203(b), (g).

---

[1] For a full discussion of the post-employment restrictions, see OGE DAEOgram DO-04-023A [OGE Informal Advisory Memorandum 04 x 11], at http://www.usoge.gov/pages/daeograms/dgr_files/2004/do04023a.pdf.

[2] These restrictions on SGEs are discussed in more detail in OGE DAEOgram DO-00-0003A [OGE Informal Advisory Memorandum 00 x 1], at http://www.usoge.gov/pages/daeograms/dgr_files/2000/do00003a.pdf.)

Finally, OGE has used similar language in various other rules. Most notably, the provisions dealing with impartiality and extraordinary payments in subpart E of the Standards of Ethical Conduct for Employees of the Executive Branch (Standards of Conduct) refer to particular matters in which certain persons are specific parties. 5 C.F.R. §§ 2635.502; 2635.503. OGE also uses the phrase to describe a restriction on the compensated speaking, teaching and writing activities of certain SGEs. 5 C.F.R. § 2635.807(a)(2)(i)(4).

### 2. What the Phrase Means

When this language is used, it reflects "a deliberate effort to impose a more limited ban and to narrow the circumstances in which the ban is to operate." Bayless Manning, *Federal Conflict of Interest Law* 204 (1964). Therefore, OGE has emphasized that the term "typically involves a specific proceeding affecting the legal rights of the parties, or an isolatable transaction or related set of transactions between identified parties." 5 C.F.R. § 2640.102(1).[3] Examples of particular matters involving specific parties include contracts, grants, licenses, product approval applications, investigations, and litigation. It is important to remember that the phrase does not cover particular matters of general applicability, such





---

[3] This definition, found in OGE's regulations implementing 18 U.S.C. § 208, differs slightly from the definition found in the regulations implementing a now-superseded version of 18 U.S.C. § 207, although this is more a point of clarification than substance. Specifically, the old section 207 regulations referred to "identifiable" parties, 5 C.F.R. § 2637.201(c)(1), whereas the more recent section 208 rule refers to "identified" parties. As explained in the preamble to OGE's proposed new section 207 rule: "The use of 'identified,' rather than 'identifiable,' is intended to distinguish more clearly between particular matters involving specific parties and mere 'particular matters,' which are described elsewhere as including matters of general applicability that focus 'on the interests of a discrete and *identifiable* class of persons' but do not involve specific parties. [citations omitted] The use of the term 'identified,' however, does not mean that a matter will lack specific parties just because the name of a party is not disclosed to the Government, as where an agent represents an unnamed principal." 68 *Federal Register* 7844, 7853-54 (February 18, 2003).

3

as rulemaking, legislation, or policy-making of general applicability.[4]

Ethics officials sometimes must decide when a particular matter first involves a specific party. Many Government matters evolve, sometimes starting with a broad concept, developing into a discrete program, and eventually involving specific parties. A case-by-case analysis is required to determine at which stage a particular matter has sufficiently progressed to involve specific parties. The Government sometimes identifies a specific party even at a preliminary or informal stage in the development of a matter. *E.g.*, OGE Informal Advisory Letters 99 x 23; 99 x 21; 90 x 3.

In matters involving contracts, grants and other agreements between the Government and outside parties, the general rule is that specific parties are first identified when the Government first receives an expression of interest from a prospective contractor, grantee or other party. As OGE explained recently in Informal Advisory Letter 05 x 6, the Government sometimes may receive expressions of interest from prospective bidders or applicants in advance of a published solicitation or request for proposals. In some cases, such matters may involve specific parties even before the Government receives an expression of interest, if there are sufficient indications that the Government actually has identified a party. *See* OGE Informal Advisory Letter 96 x 21.

## PARTICULAR MATTER

Despite the similarity of the phrases "particular matter" and "particular matter involving specific parties," it is necessary to distinguish them. That is because "particular matter" covers a broader range of Government activities than "particular matter involving specific parties." Failure to appreciate this distinction can lead to inadvertent violations of law. For example, the financial conflict of interest statute, 18 U.S.C. § 208, generally refers to particular matters, without the specific party limitation. If an employee

---

[4] Usually, rulemaking and legislation are not covered, unless they focus narrowly on identified parties. *See* OGE Informal Advisory Opinions 96 x 7 ("rare" example of rulemaking that involved specific parties); 83 x 7 (private relief legislation may involve specific parties).

is advised incorrectly that section 208 applies only to particular matters that focus on a specific person or company, such as an enforcement action or a contract, then the employee may conclude it is permissible to participate in other particular matters, even though the law prohibits such participation.

1.  *Where the Phrase Appears*

In addition to 18 U.S.C. § 208, several other statutes and regulations use the term "particular matter."[5]    The representational restrictions applicable to current employees (other than SGEs), under 18 U.S.C. §§ 203 and 205, apply to particular matters.[6]    As mentioned above, section 207 also contains a definition of "particular matter."[7]    However, where the phrase is used in the post-employment prohibitions in

---

[5] The relevant language in 18 U.S.C. § 208(a) is "a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, *or other particular matter*" (emphasis added).

[6] The prohibition in 18 U.S.C. § 205(a)(2) actually uses the phrase "covered matter," but that term is in turn defined as "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest *or other particular matter*," 18 U.S.C. § 205(h)(emphasis added).

[7] The definition in 18 U.S.C. § 207(i)(3) provides: "the term 'particular matter' includes any investigation, application, request for a ruling or determination, rulemaking, contract, controversy, claim, charge, accusation, arrest, or judicial or other proceeding."    This language differs slightly from other references to "particular matter" in sections 203, 205 and 208, in part because the list of matters is not followed by the residual phrase "or other particular matter."    However, OGE does not believe that the absence of such a general catch-all phrase means that the list of enumerated matters exhausts the meaning of "particular matter" under section 207(i)(3).    The list is preceded by the word "includes," which is generally a term of enlargement rather than limitation and indicates that matters other than those enumerated are covered.    *See* Norman J. Singer, 2A *Sutherland on Statutory Construction* 231-232 (2000).

5

section 207(a)(1) and (a)(2), it is modified by the "specific parties" limitation.[8]

The phrase "particular matter" is used pervasively in OGE's regulations. Of course, the term appears throughout 5 C.F.R. part 2640, the primary OGE rule interpreting and implementing 18 U.S.C. § 208. Similarly, it is used in 5 C.F.R. § 2635.402, which is the provision in the Standards of Conduct that generally deals with section 208. The phrase also is used throughout subpart F of the Standards of Conduct, which contains the rules governing recusal from particular matters affecting the financial interest of a person with whom an employee is seeking non-Federal employment. 5 C.F.R. §§ 2635.601-2635.606. Moreover, the phrase appears in the "catch-all" provision of OGE's impartiality rule, 5 C.F.R. § 2635.502(a)(2). *See also* 5 C.F.R. 2635.501(a).[9] Various other regulations refer to "particular matter" for miscellaneous purposes. *E.g.*, 5 C.F.R. § 2635.805(a)(restriction on expert witness activities of SGEs); 5 C.F.R. § 2634.802(a)(1)(written recusals pursuant to ethics agreements).

2. *What the Phrase Means*

Although different conflict of interest statutes use slightly different wording, such as different lists of examples of particular matters, the same standards apply for determining what is a particular matter under each of the relevant statutes and regulations. *See* 18 Op. O.L.C. 212, 217-20 (1994). Particular matter means any matter that involves "deliberation,

---

[8] At one time, the post-employment "cooling-off" restriction for senior employees in 18 U.S.C. § 207(c) applied to particular matters, but the language was amended (and broadened) in 1989 when Congress removed the adjective "particular" that had modified "matter." *See* 17 Op. O.L.C. 37, 41-42 (1993).

[9] Generally, section 2635.502 focuses on particular matters involving specific parties, as noted above. However, section 2635.502(a)(2) provides a mechanism for employees to determine whether they should recuse from other "particular matters" that are not described elsewhere in the rule. In appropriate cases, therefore, an agency may require an employee to recuse from particular matters that do not involve specific parties, based on the concern that the employee's impartiality reasonably may be questioned under the circumstances.

decision, or action that is focused upon the interests of specific persons, *or* a discrete and identifiable class of persons." 5 C.F.R. § 2640.103(a)(1)(emphasis added). It is clear, then, that particular matter may include matters that do not involve parties and is *not* "limited to adversarial proceedings or formal legal relationships." *Van Ee v. EPA*, 202 F.3d 296, 302 (D.C. Cir. 2000).

Essentially, the term covers two categories of matters: (1) those that involve specific parties (described more fully above), and (2) those that do not involve specific parties but at least focus on the interests of a discrete and identifiable class of persons, such as a particular industry or profession. OGE regulations sometimes refer to the second category as "particular matter of general applicability." 5 C.F.R. § 2640.102(m). This category can include legislation and policymaking, as long as it is narrowly focused on a discrete and identifiable class. Examples provided in OGE rules include a regulation applicable only to meat packing companies or a regulation prescribing safety standards for trucks on interstate highways. 5 C.F.R. §§ 2640.103(a)(1)(example 3); 2635.402(b)(3)(example 2). Other examples may be found in various opinions of OGE and the Office of Legal Counsel, Department of Justice. *E.g.*, OGE Informal Advisory Letter 00 x 4 (recommendations concerning specific limits on commercial use of a particular facility); 18 Op. O.L.C. at 220 (determinations or legislation focused on the compensation and work conditions of the class of Assistant United States Attorneys).

Certain OGE rules recognize that particular matters of general applicability *sometimes* may raise fewer conflict of interest concerns than particular matters involving specific parties.[10] Therefore, while both categories are included in the

---

[10] As noted above, OGE's impartiality rule generally focuses on particular matters involving specific parties. *See* OGE Informal Advisory Letter 93 x 25 (rulemaking "would not, except in unusual circumstances covered under section 502(a)(2), raise an issue under section 502(a)"). Furthermore, as also discussed above, several of the regulatory exemptions issued by OGE under 18 U.S.C. § 208(b)(2) treat particular matters of general applicability differently than those involving specific parties. The preamble to the original proposed regulatory exemptions in 5 C.F.R. part 2640 explains: "The regulation generally contains more expansive exemptions for participation in 'matters of general applicability not involving specific parties' because it
(continued)

term "particular matter," it is often necessary to distinguish between these two kinds of particular matters. Of course, in many instances, the relevant prohibitions apply equally to both kinds of particular matters. This is the case, for example, in any application of 18 U.S.C. § 208 where there is no applicable exemption or waiver that distinguishes the two.

It is important to emphasize that the term "particular matter" is not so broad as to include every matter involving Government action. Particular matter does not cover the "consideration or adoption of broad policy options directed to the interests of a large and diverse group of persons." 5 C.F.R. § 2640.103(a)(1). For example, health and safety regulations applicable to all employers would not be a particular matter, nor would a comprehensive legislative proposal for health care reform. 5 C.F.R. § 2640.103(a)(1) (example 4), (example 8). *See also* OGE Informal Advisory Letter 05 x 1 (report of panel on tax reform addressing broad range of tax policy issues). Although such actions are too broadly focused to be particular matters, they still are deemed "matters" for purposes of the restrictions described below that use that term.

A question that sometimes arises is when a matter first becomes a "particular matter." Some matters begin as broad policy deliberations and actions pertaining to diverse interests, but, later, more focused actions may follow. Usually, a particular matter arises when the deliberations turn to specific actions that focus on a certain person or a discrete and identifiable class of persons. For example, although a legislative plan for broad health care reform would not be a particular matter, a particular matter would arise if an agency later issued implementing regulations focused narrowly on the prices that pharmaceutical companies could charge for prescription drugs. 5 C.F.R. § 2640.102(a)(1)(example 8). Similarly, the formulation and implementation of the United States response to the military invasion of an ally would not be a particular matter, but a particular matter would arise once

---

is less likely that an employee's integrity would be compromised by concern for his own financial interests when participating in these broader matters." 60 *Federal Register* 47207, 47210 (September 11, 1995). Of course, Congress itself has limited certain conflict of interest restrictions to the core area of particular matters that involve specific parties. *E.g.*, 18 U.S.C. § 207(a)(1), (a)(2).

discussions turned to whether to close a particular oil pumping station or pipeline operated by a company in the area where hostilities are taking place.     5 C.F.R. § 2640.102(a)(1) (example 7).

## MATTER

The broadest of the three terms is "matter."  However, this term is used less frequently than the other two in the various ethics statutes and regulations to describe the kinds of Government actions to which restrictions apply.

### 1.  *Where the Phrase Appears*

The most important use of this term is in the one-year post-employment restrictions applicable to "senior employees" and "very senior employees."  18 U.S.C. § 207(c), (d).  In this context, "matter" is used to describe the kind of Government actions that former senior and very senior employees are prohibited from influencing through contacts with employees of their former agencies (as well as contacts with Executive Schedule officials at other agencies, in the case of very senior employees).  The unmodified term "matter" did not appear in these provisions until 1989, when section 207(c) was amended to replace "particular matter" with "matter" and section 207(d) was first enacted.    Pub. L. No. 101-194, § 101(a), November 30, 1989.   OGE also occasionally uses the term "matter" in ethics regulations, for example, in the description of teaching, speaking and writing that relates to an employee's official duties.  5 C.F.R. § 2635.807(a)(2)(i)(E)(1).

### 2.  *What the Phrase Means*

It is clear that "matter" is broader than "particular matter."   *See* 17 Op. O.L.C. at 41-42.   Indeed, the term is virtually all-encompassing with respect to the work of the Government.[11]   Unlike "particular matter," the term "matter"

---

[11] A now-repealed statute, 18 U.S.C. § 281 (the predecessor of 18 U.S.C. § 203), used the phrase "any proceeding, contract, claim, controversy, charge, accusation, arrest, *or other matter*" (emphasis added).  One commentator noted that the term "matter" in section 281 was "so open-ended" that it raised questions as to what limits there might be on the scope.  Manning, at 50-51. Manning postulated that some limits might be inferred from the character of the matters listed before the phrase "or other (continued)

covers even the consideration or adoption of broad policy options that are directed to the interests of a large and diverse group of persons. Of course, the term also includes any particular matter or particular matter involving specific parties.

Nevertheless, it is still necessary to understand the context in which the term "matter" is used, as the context itself will provide some limits. In 18 U.S.C. § 207(c) and (d), the post-employment restrictions apply only to matters "on which [the former employee] seeks official action." Therefore, the only matters covered will be those in which the former employee is seeking to induce a current employee to make a decision or otherwise act in an official capacity.

---

matter." *Id.* at 51. Whatever the force of this reasoning with respect to former section 281, the same could not be said with respect to 18 U.S.C. § 207(c) or (d), as neither of these current provisions contains an exemplary list of covered matters.

# EXHIBIT C



INVESTMENT DIVISION
SUITE 6600
U. S. SMALL BUSINESS ADMINISTRATION
WASHINGTON, DC 20416

M E M O R A N D U M

DATE:      MAY 26 1994

TO:        Director, OI
           Area Chiefs
           Account Executives

FROM:      Robert D. Stillman
           Associate Administrator for Investment

SUBJECT:   I. Delegation of Authority
           II. Authorization to Sign Correspondence for
           the Office of Investment, Investment Division


The April 4, 1984 delegation of authority covering the Office of
Investment has been updated to reflect certain organizational
changes.

Effective immediately, the following delegations and
authorizations are to be followed until changed in writing by me
or other higher authority.  (References in this memorandum to
SBICs includes Section 301(d) SBICs.)

Final Approvals Operating Functions

The Administrator will grant final approvals of applications for
Licenses and Transfers of Control. The Associate Administrator
for Investment will grant final approvals (or denials) of
Leverage, Surrenders and Preferred Stock Redemptions.  All
recommendations for approval as above must include clearances
(sign off) of the Financial Analyst, Area Chief, Director, and
other agency jurisdictions (Legal etc.), as appropriate.

Federal Register Notices

All Federal Register Notices will be signed by the AA/I.

Office of Investment Correspondence

Attached is a schedule which lists all significant correspondence
of the Office of Investment.  This schedule is divided into four
sub-schedules as follows:  General Applicability, Licensing and
Delicensing, SBIC Leverage, and SBIC Regulation.

Effective immediately, this schedule must be followed for all

written correspondence and oral (meetings and phone calls)
communications on SBIC program matters.  All written
correspondence must continue to include clearances beginning with
the preparer and continuing through appropriate oversight or
supervisory levels and including clearances for other required
agency jurisdictions (Legal, etc.).

All written correspondence, and the memoranda which documents
oral communications must be coded on the left hand bottom portion
of the signatory page with the applicable authority being used.
For example, a letter signed by an Area Chief which follows-up
for a response to a prior SBA letter would carry the code "A-11".
One approving a transfer of control would be coded "B-5".

The coding will be used to insure compliance with the
authorization and to provide for indexing or cataloging agency
decisions.

Documentation of meetings and phone calls is essential.
Effective immediately, all meetings must be documented in
writing, such documentation to include date, time, attendees,
agenda, and a summary of the meeting including decisions made,
agreements reached, information requested, and all material
issues discussed.  Phone calls of a significant nature, where
decisions were made or agreements reached or information
requested, should followed up with written correspondence.

Thank you for your continuing cooperation.


Attachment

A. GENERAL APPLICABILITY

| Correspondence or Action | To | Approving/Signing Official |
|---|---|---|
| 1. Correspondence designated by the Administrator | Any Person/Org. | AA/I |
| 2. New policy or matters of special importance as determined by the AA/I | Any Person/Org. | AA/I |
| 3. All matters of first impression or unique situations without precedent | Any Person/Org. | AA/I |
| 4. Federal Register Notices | Federal Register (Public Notice) | AA/I |
| 5. Extensions of time where formal agreements are involved or where unique or unprecedented matter is involved | SBICs/Other Persons | Dir/OI |
| 6. Signature on SBA legal agreements with SBICs | SBICs | Dir/OI |
| 7. Federal, State, or Local government correspondence not specifically reserved by, or delegated to other SBA officials | Gov't Agencies | AA/I |
| 8. Request for legal opinions on cases | General Counsel | Area Chief** |
| 9. Transfer of investigations to legal | General Counsel | Area Chief** |
| 10. Comments to SEC on registrations or other SBIC filings with SEC (except for conflicts of interests) | SEC | Area Chief** |
| 11. Follow-up letters | SBICs | Acnt. Exec. * |
| 12. Acknowledgements | SBICs | Acnt. Exec. |
| 13. Transmittal of forms, etc. | SBICs/Proponents | Acnt. Exec. |
| 14. Transfer of checks to cashier | Program Support | Acnt. Exec. |
| 15. Requests for current payment status | Fiscal Operations | Acnt. Exec. |

* Clearance of Area Chief    ** Clearance of Dir/OI

16. Freedom of Information Requests    Public    Area Chief**

99. Miscellaneous    Any Person    Area Chief

## B. LICENSING AND DELICENSING

| Correspondence or Action | To | Approving/Signing Official |
|---|---|---|
| 1. Approvals or denials of new license applications | SBIC/Proponents | Administrator |
| 2. Letters to proposed licensees advising of approval or denial | SBIC/Proponents | AA/I |
| 3. Request for surrender of licenses | SBICs | Area Chief** |
| 4. Request for revocation of license | General Counsel | Dir/OI |
| 5. Approvals or denials of transfers of control | SBICs | Administrator |
| 6. Transfer of SBICs to OL pursuant to Pre-Liquidation Conference | OL/OGC | Dir/OI |
| 7. Special determinations on transfers of control | SBICs | Dir. Lic. |
| 8. Comments on new or amended license applications | SBICs/Proponents | Dir. Lic. |
| 9. Approvals of significant post-licensing amendments | SBICs | Area Chief** |
| 10. Approvals of non-significant post-licensing amendments | SBICs | Acnt. Exec. * |
| 11. All memos to Office of Liquidation | OL | Acnt. Exec. * |
| 12. Approval of Branch Offices and/or new Officers, Directors Stockholders | SBICs | Acnt. Exec. * |
| 13. Transmittal of license applica-tions for legal comment | General Counsel | Acnt. Exec. |
| 14. Request for legal comments on transfer of control | General Counsel | Acnt. Exec. |
| 15. Approvals of name changes and fiscal years | SBICs | Acnt. Exec. * |

* Clearance of Area Chief    ** Clearance of Dir/OI

4

| | | | |
|---|---|---|---|
| 16. | Request for S&I clearances and follow-ups thereon | IG | Acnt. Exec. |
| 17. | Requests for Field Office comments on licensing | SBA Field Offices | Area Chief |
| 99. | Miscellaneous | Any Person | Dir/OI |

## C. SBIC LEVERAGE

| | Correspondence or Action | To | Approving/Signing Official |
|---|---|---|---|
| 1. | Approvals or denials of debenture, preferred stock, and participating security leverage applications; preferred stock redemptions | SBICs | AA/I |
| 2. | Correspondence with other agencies or outside groups involving funding and leveraging mechanisms | Other Agencies Other Groups | Dir/OI |
| 3. | Approval letters on leverage applications | SBICs | Acnt. Exec. * |
| 4. | Denial letters on leverage applications | SBICs | Area Chief** |
| 5. | Additional information requests on funding application when significant | SBICs | Acnt. Exec. |
| 6. | Return of incomplete or withdrawn drawn leverage applications | SBICs | Area Chief |
| 99. | Miscellaneous | Any Person | Dir/OI |

* Clearance of Area Chief   ** Clearance of Dir/OI

D.  SBIC REGULATION

| | Correspondence or Action | To | Approving/Signing Official |
|---|---|---|---|
| 1. | Prior approval requests in unique and/or unprecedented situations | SBICs | Dir/OI |
| 2. | Sale of portfolio securities to associates | SBICs | Area Chief** |
| 3. | Request for Pre-Liquidation Conference (SOP 50 53) | OGC/OL | Dir/OI |
| 4. | Acceptance of cures of violations in unique and/or unprecedented situations | SBICs | Dir/OI |
| 5. | Requests for legal action against SBICs | General Counsel | Dir/OI |
| 6. | Spec. determ. capital impairment | SBICs | Area Chief** |
| 7. | Spec. determ. control and divestiture situations | SBICs | Area Chief** |
| 8. | Spec. determ. Mgmt. and Inv. Advisory Agreements | SBICs | Area Chief** |
| 9. | Spec. determ. conflicts of interest | SBICs | Area Chief** |
| 10. | Spec. determ. cost of money matters | SBICs | Area Chief** |
| 11. | Spec. determ. recapitalizations | SBICs | Area Chief** |
| 12. | Spec. determ. salary and compensation increases for leveraged SBICs | SBICs | Area Chief** |
| 13. | Spec. determ. prior approvals not included elsewhere herein | SBICs | Area Chief** |
| 14. | Spec. determ. dividends and distributions in excess of 0% | SBICs | Area Chief** |
| 15. | All memos to Inspector General involving SBIC cases (cleared by AA/I) | IG | Dir/OI |

** Clearance of Director/OI

| 16. | Except those reserved for AA/I, all acceptances of licensee's cures of violations on significant matters | SBICs | Area Chief** |
|---|---|---|---|
| 17. | Extensions of time when involving impairment, control, cost of money, conflicts of interest, license appl. | SBICs | Area Chief** |
| 18. | Examination letters to SBICs | SBICs | Area Chief** |
| 19. | Request for additional information on regulatory matters | SBICs | Acnt. Exec. * |
| 20. | Spec. determ. overline approvals | SBICs | Area Chief |
| 21. | Spec. determ. size standards | SBICs | Acnt. Exec. * |
| 22. | Spec. determ. capital increases | SBICs | Acnt. Exec. * |
| 23. | Spec. determ. accounting treatment and regulations | SBICs | Acnt. Exec. * |
| 24. | Comments on Fin. Statements (SBA 468) | SBICs | Acnt. Exec. * |
| 25. | Extensions of time on routine matters | SBICs | Acnt. Exec. * |
| 26. | Memos to files on reasons for exam findings not being cited | Files | Area Chief Dir/OI Office of Exams |
| 27. | All other reg. matters not of significant nature | SBICs | Acnt. Exec. * |
| 28. | §107.1201 Exemptions | SBICs | AA/I |
| 29. | Plans of divestiture | SBICs | Acnt. Exec. * |
| 30. | Inactivity | SBICs | Acnt. Exec. * |
| 31. | §107.1004 Changes | SBICs | Acnt. Exec. * |
| 99. | Miscellaneous | Any Person | Dir/OI |

* Clearance of Area Chief          ** Clearance of Director/OI